## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

SMARTMATIC USA CORP.,
SMARTMATIC INTERNATIONAL
HOLDING B.V. and SGO
CORPORATION LIMITED,

                                    Plaintiffs,

                v.

MICHAEL J. LINDELL and MY
PILLOW, INC.,

                                    Defendants.

Case No. 0:22-cv-00098-WMW-JFD

### JOINT REPLY MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTIONS TO DISMISS

Defendants' motions to dismiss the Complaint arise out of the Constitution's protection of free speech particularly in cases concerning matters of public concern. Smartmatic's Opposition to the motions, ECF #41 ("Opp."), relies on civil procedure rule 12(b)(6)'s generous pleading standard. The procedural rule must be construed consistent with the constitutional rule.

The First Amendment, as articulated in *New York Times v. Sullivan*, demands that speech concerning matters of public concern not be chilled, punished, or burdened by government action in the form of a defamation lawsuit, unless the defendant acted with "actual malice." 376 U.S. 254 (1964). Smartmatic argues that a plaintiff subject to the actual malice standard may avoid dismissal of her defamation claim simply by *alleging* the

1

defendant "knew" his statements were false, or by pleading that evidence available to the defendant contradicted the statements. This view eviscerates *New York Times v. Sullivan*, for any plaintiff can allege a defendant "knew" he spoke falsely or that contrary evidence was available to the defendant. Smartmatic's argument would subject essentially all defamation defendants to the burden of discovery, notwithstanding that "[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Arpaio v. Zucker*, 414 F.Supp.3d 84, 89 (D.D.C. 2019); *Fairbanks v. Roller*, 314 F.Supp.3d 85, 89 (D.D.C. 2018).

Smartmatic's roadmap is erroneous. To plead actual malice sufficient to survive a motion to dismiss, the First Amendment (and *Iqbal/Twombly*) require a plaintiff to allege words or conduct by the defendant that give rise to a plausible inference the defendant knew he spoke falsely or harbored serious doubts as to the truthfulness of his statements. Unsupported conclusory allegations are insufficient to survive a motion to dismiss. The Constitution protects the freedom to speak publicly about matters of public concern while permitting suit in the limited circumstance where the plaintiff can specifically assert that defendant knew he spoke falsely or seriously doubted the truth of his statements. Judged by the constitutional standard, Smartmatic's Complaint fails to plead actual malice and should be dismissed.[1]

---

[1] Smartmatic asserts, "Courts across the country have already found these allegations sufficient to plead actual malice." Opp. 2. No court has addressed Smartmatic's Complaint. This Court confronts a different set of factual allegations than other courts that have been presented with related complaints.

## I.     The Complaint Does Not Plausibly Plead Actual Malice.

In its opening memorandum, MyPillow advanced a three-step argument that Smartmatic's claims are constitutionally barred: (1) the statements alleged in the Complaint address issues of public concern; (2) Smartmatic is subject to the actual malice standard, and (3) because of the public concern for the matters of which Michael Lindell spoke, the Complaint does not adequately allege facts showing Lindell believed his statements false or entertained serious doubts as to their truthfulness, and therefore the Complaint is constitutionally barred for failure to plead actual malice. ECF #26 at 8, 9, 17 ("MyPillow Mem."). Lindell argued similarly. ECF #20 at 27-30 ("Lindell Mem.").

Smartmatic does not dispute the first of these three steps; it does not deny that Lindell's statements addressed elections or that elections are matters of public concern. *See* Opp. Smartmatic also accepts the second step, for purposes of these motions, and does not deny that it is subject to the actual malice standard. Opp. 15 n.5.

Rather, Smartmatic bases its opposition to dismissal on an assertion that its Complaint pleads actual malice, and it proposes five different theories of how the Complaint pleads actual malice. *Id*. at 17-31. These theories were anticipated and refuted in MyPillow's opening memorandum. MyPillow Mem. 18-31. Having now been expressly articulated by Smartmatic, they still fail.

The standard that Smartmatic's Complaint must satisfy is crystal clear. To avoid dismissal, it must plead "facts sufficient to give rise to a reasonable inference of actual malice," meaning the allegedly defamatory statements were made "knowing they were false or with reckless disregard for whether they were false or not." *Nelson Auto Ctr., Inc.*

3

*v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (quotation omitted). Smartmatic's Opposition muddles the standard by failing to explain whether it maintains that Lindell spoke with knowledge of falsity or with reckless disregard. But the Court must analyze the Complaint by determining whether it asserts facts that would satisfy either prong. It does not.

### A. Smartmatic Fails to Plead Facts Showing Lindell Knew He Spoke Falsely.

The closest Smartmatic comes to arguing that Lindell knew he spoke falsely is its assertion it has pleaded Lindell knowingly "fabricated" his statements. Opp. 17. The only support Smartmatic offers for this assertion is a list of evidence that is allegedly *lacking*. *Id*. 17-18 (repeating "Defendants had no evidence" six times). A defamation plaintiff may not clear the hurdle of actual malice by accusing the defendant of lacking evidence. *See* MyPillow Mem. 19-20; *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 879 n.7 (Minn. 2019); *Britton v. Koep*, 470 N.W.2d 518, 524 (Minn. 1991); *Drotzmanns, Inc. v. McGraw-Hill, Inc.*, 500 F.2d 830, 834 (8th Cir. 1974). *See also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth.").

Unable to deny the holdings of *Maethner*, *Britton*, *Drotzmanns*, and *Pippen*, Smartmatic attempts to escape them by arguing these were not motion-to-dismiss cases. Opp. 22. The substantive law is the same at the pleadings stage as at summary judgment: "mere failure to investigate is not dispositive of actual malice; rather, to meet the actual malice standard, [t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Maethner*,

4

929 N.W.2d at 878 n.7 (quotations omitted). The difference between the pleadings stage and summary judgment is that a plaintiff may *allege* evidence at the pleadings stage and must *provide* evidence at summary judgment. Here, Smartmatic fails even to *allege* any evidence (other than the insufficient purported lack of evidence) to show that Lindell knowingly spoke falsely. Accordingly, the Complaint fails to meet the requirement of *Maethner*, *Britton*, *Drotzmanns*, and *Pippen*. *See also Nelson Auto Ctr.*, 951 F.3d at 954 (dismissing complaint at pleadings stage for failing to plausibly allege actual malice).

Smartmatic also attempts to elude *Maethner* and the other cases cited above by obfuscating the meaning of "fabrication." Opp. 17-19. For purposes of actual malice, fabrication means a defendant made a statement *known to the defendant to be false* – not that the defendant made a statement for which he lacked sufficiently specific evidence. As one of the cases cited by Smartmatic explains, "[I]f the defendant is an eyewitness to an *unambiguous* event which he or she then misreports, a finding of actual malice may arise from testimony of other witnesses establishing that the event did not happen as described: It follows that the description was fabricated." *Ventura v. Kyle*, 8 F. Supp. 3d 1115, 1122 (D. Minn. 2014) (quoting Robert D. Sack, Sack on Defamation, § 5.52, at 5-83-84). The statements alleged in Smartmatic's complaint are not of the type described in *Ventura*. The Complaint does not allege Lindell was an eyewitness to an unambiguous event that he misdescribed with fabricated details. The Complaint alleges he made statements about a disputed matter of public controversy and concern, unsupported by information he gathered from various sources. Assuming Smartmatic's characterization is true, the First Amendment still protects speakers whose conclusions overreach their information when

5

addressing matters of public concern. "To persuade others to his own point of view, the pleader, as we know, at times resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained, in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy." *New York Times v. Sullivan*, 376 U.S. at 271. The Complaint alleges no eyewitness experience, nor any other word or deed by Lindell, which would show he fabricated a statement he knew to be false.

Smartmatic's "fabrication" argument that no evidence supported Lindell's statements, aside from being legally inadequate to plead actual malice, is also incorrect *according to the Complaint.* The Complaint pleads that a multitude of sources and evidence supported Lindell's statements. *See* Part I.B.1, *infra*.

The daunting standard of pleading actual malice is not met by alleging an absence of evidence. Smartmatic argues no other basis on which the Court could conclude that Lindell knew he spoke falsely. The Complaint fails to plead Lindell knowingly spoke falsely.

### B. Smartmatic Fails to Plead Facts Showing Lindell Spoke with Reckless Disregard.

Aside from actual knowledge of falsity, the only way to plead actual malice is to plead reckless disregard. Smartmatic acknowledges that "reckless disregard" means a defendant "must have made the false publication with a high degree of awareness of . . .

probable falsity, or must have entertained serious doubts as to the truth of his publication."
Opp. 14 (quoting *Nunes v. Lizza*, 12 F.4th 890, 899 (8th Cir. 2021).

While the Complaint is rife with conclusory assertions about Lindell's allegedly culpable mental state, it does not plead facts to support these assertions. Smartmatic instead argues in substance that Lindell *must have* doubted the truth of his statements because of the existence of other information and sources that Smartmatic says contradict the statements. While such an argument might, hypothetically, suffice in a situation where the defendant's statements about a private matter lacked any arguable support whatsoever, that is not the case here. The allegations in the Complaint set forth numerous sources and types of information that support Lindell's statements about matters of public concern. Accordingly, the inference that Smartmatic seeks to draw – he *must have* doubted his words because he had *no reason* to believe otherwise – cannot be drawn, leaving Smartmatic without any allegations to show Lindell doubted his statements.

### 1. The Complaint Pleads Sources and Information That Support Lindell's Statements.

The Complaint seeks to impose defamation liability for speech that Lindell – according to the Complaint – based on a multitude of pleaded sources and data. The Complaint states that Lindell's documentary series "was premised on the claim that he was uncovering groundbreaking evidentiary proof of voting machines' vulnerability and fraud and exposing that evidentiary proof for the general public." Compl., ECF #1 ¶130.[2] The Complaint identifies categories of sources and information that Lindell relied upon. "It's

---

[2] Bolding and italics have been removed from the quotations from the Complaint.

like a print-out of inside the machine of the timestamp that showed another country, other countries, attacking us, hacking into our election through these machines." *Id*. ¶130(a). "Mr. Lindell presented and endorsed other speakers with alleged scientific cybersecurity, mathematics, and military operation credentials . . . . Mr. Lindell claimed that the statements he made about Smartmatic were supported by these 'experts.'" *Id*. ¶131. The Complaint identifies Lindell's sources as including a named "PhD scientist" with "about 60 scientific publications," an "anonymous cybersecurity expert" with "over 20 years of experience," a named colonel with military background in "influence operations, information operations, information warfare" who "looked for vulnerabilities and ways to attack systems," a named cyber forensics and security operator, and a named computer system designer with four degrees from MIT. *Id*. The Complaint quotes another source relied upon by Lindell, University of Michigan professor J. Alex Halderman, "I know America's voting machines are vulnerable, because my colleagues and I have hacked them repeatedly. We've created attacks that can spread from machine to machine like a computer virus and silently change election outcomes. And in every single case, we've found ways for attackers to sabotage machines and to steal votes." *Id*. ¶150(m).

The Complaint shows that Lindell's statements were based upon information he obtained from a variety of sources that a person might defensibly believe. While Smartmatic argues some of Lindell's sources lacked credibility, Opp. 28-29, the First Amendment does not protect speech which aligns with a defamation plaintiff's assignment of credibility. It protects speech. Speakers are entitled to weigh credibility differently. A speaker's crediting of one set of evidence and information over another does not show

8

actual malice; it shows difference in judgment. Contrary to Smartmatic's suggestion, Opp. 19-21, a defamation plaintiff may not simply announce its view of the evidence to the defendant, and then file suit if the defendant does not accept the plaintiff's view. A speaker who disagrees with the majority, who finds more compelling the ideas and evidence cited by individuals with less prominence, does not lose his constitutional protection by espousing a contrarian position that criticizes the way public business – an election – was administered. *See* MyPillow Mem. 19-23.

> **2. In Light of the Complaint's Allegations and the Contested, Public-Interest Subject Matter, Smartmatic Does Not Plead Lindell Spoke Recklessly Merely by Pleading That Contrary Evidence Existed.**

Smartmatic argues that Lindell's sources and information could not be relied upon because *other* sources and information, which Smartmatic alleges are more numerous and more credible, contradicted Lindell's sources and information. Opp. 19 (Lindell "receiv[ed] information contradicting" his statements); Opp. 23 ("dozens of sources, articles, and reports contradicting" Lindell). Smartmatic's argument shows, at most, that *contradictory evidence, pointing both directions,* existed concerning Lindell's statements, and that *people disagreed* about these matters. When contradictory evidence exists concerning a matter of public concern, about which people disagree, the First Amendment protects both sides from liability for speaking out in favor of one side or the other. "The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions." *New York Times v. Sullivan*, 376 U.S. at 269. "[D]ebate on public issues should be uninhibited, robust, and wide-open." *Id.*

at 270. A defamation plaintiff cannot recover damages for statements made by a defendant espousing the opposing side of a controversy over a matter of public concern.

Smartmatic relies on four cases to support its assertion that the Court can infer Lindell doubted the truth of his statements by weighing Smartmatic's evidence against the sources and information that Lindell relied upon. *See* Opp. 29, 16. None of the four cases provides the support Smartmatic claims. Two – *Stokes v. CBS, Inc.*, 25 F.Supp.2d 992, 1004 (D. Minn. 1998) and *Mahnke v. Nw. Publ'ns, Inc.*, 160 N.W.2d 1, 9 (Minn. 1968) – concerned defamation claims arising out of individual criminal investigations. These did not implicate comparable public debate over matters of public concern. Further, in *Stokes*, the court did not address actual malice as a requirement to show liability, but instead as part of its analysis whether the plaintiff could recover presumed and punitive damages. 25 F. Supp. 2d at 1003. *Mahnke* applied an unconstitutional definition of "recklessness," so it provides no reliable guidance concerning what qualifies as pleading recklessness for purposes of a defamation claim. *See* 160 N.W.2d at 15 ("*A reckless disregard means a conduct which is heedless and shows a wanton indifference to consequences. It is a conduct which is far more than negligent.*"); *cf. Nunes*, 12 F.4th at 899. Additionally, in *Mahnke* the defendant "had little, if any, evidence which would indicate that any of the contested parts of the story were true," because its only source was statements from an individual not present at the meeting in question. 160 N.W.2d at 8-9. Similar to *Mahnke*, *Harte-Hanks Communications, Inc. v. Connaughton* addressed a newspaper article based on a single source's allegations, where all the other evidence was contrary and the newspaper made no attempt to interview the one witness whom both the source and the plaintiff claimed would

10

corroborate their own version of what had happened. 491 U.S. 657, 683 (1989). Finally, in *St. Amant v. Thompson*, the Supreme Court held that actual malice was **not** present, notwithstanding the plaintiff's attacks on the credibility of the single source relied upon by the defendant, and the Court noted that other facts provided reasons the defendant might have believed the source. 390 U.S. 727, 733 (1968).

The cases Smartmatic relies upon, then, are not on point. The Court should be guided instead by *Nelson Auto Ctr.*, 951 F.3d at 958; *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 242 (D.C. Cir. 2021); and *Speer v. Ottaway Newspapers, Inc.*, 828 F.2d 475, 478 (8th Cir. 1987) ("A publisher's failure accurately to guess which of two conflicting accounts a jury might later believe does not demonstrate actual malice. A newspaper may not constitutionally be required to determine truth by counting the number of witnesses on each side.").

The Court need not, and should not, weigh evidence or make any factual determinations to conclude whether actual malice is adequately pleaded. Where, as here, the question is whether a speaker spoke with actual malice about a matter of public concern, the mere *existence* of multiple sources and information to support both sides of the controversy is dispositive. The First Amendment allows a speaker to choose which side of the question to believe and protects him against liability for speaking out in favor of his chosen side. In these circumstances, the constitutional requirement to plead facts showing Lindell made a false publication with a high degree of awareness of probable falsity or entertained serious doubts as to the truth of his publication is not met.

### 3. In Light of the Complaint's Allegations, Smartmatic Does Not Plead Reckless Disregard by Alleging Reasons Lindell Might Have Doubted His Sources.

Smartmatic suggests many reasons that, it says, should have caused Lindell to doubt his sources and information. Opp. 19-30. But the actual malice standard for speaking recklessly is not a question of the preponderance of the evidence, or whether the defendant's assessment of his sources satisfies a plaintiff's post hoc scrutiny. "Reckless conduct is not measured by whether a reasonably prudent man would have published." *Nunes*, 12 F.4th at 899 (quoting *St. Amant*, 390 U.S. at 731). Rather, "the defendant must have made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of his publication." *Id.* (quoting *Harte-Hanks*, 491 U.S. at 667). The First Amendment, as construed by the Supreme Court, grants defamation defendants the freedom to disagree with plaintiffs concerning the veracity of their sources. Because the Complaint pleads that Lindell based his statements on sources and information for which some reason to believe exists, Smartmatic's arguments seeking to infer that Lindell *must have* doubted his sources and information simply because Smartmatic doubts them fail to show actual malice.[3]

Smartmatic argues Lindell made defamatory statements "after receiving accurate information from Dominion," and that he made defamatory statements after Smartmatic sued Fox. Opp. 20, 21. While a plaintiff's denial might carry weight concerning an

---

[3] Smartmatic falsely asserts that Defendants "do not dispute that they published false and defamatory statements." Opp. 13. Defendants do dispute that. However, Defendants' arguments concerning the pending motion are framed in accordance with Rule 12(b)(6)'s requirement to assume the allegations in the Complaint are true.

allegedly defamatory statement about a personal or private matter, a plaintiff's denial or contradiction carries no weight toward pleading actual malice when the statements in question address contested matters of public concern. "A publisher need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" *Tah*, 991 F.3d at 242 (quoting *Harte-Hanks*, 491 U.S. at 691 n.37 and *Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003)).

Smartmatic's arguments attempting to show awareness of probable falsity presume that courts can intervene in an essentially political debate to declare one side correct and the other side liable. But that is precisely what *New York Times v. Sullivan* proclaimed constitutionally impermissible. Framing the question before it as whether an advertisement concerning "one of the major public issues of our time" necessarily "forfeits" its "constitutional protection" because of "falsity of some of its factual statements," the Supreme Court answered with a resounding **no**, because the First Amendment permits no "burden of proving truth on the speaker," does not "turn upon" any measure of "truth, popularity, or social utility of the ideas and beliefs which are offered," and even presumes "[s]ome degree of abuse" of the freedom. 376 U.S. at 271, 273 (quotations omitted). The Court included "exaggeration," "vilification," and "false statement" within the "excesses and abuses" that are part of the "liberties . . . essential to enlightened opinion and right conduct on the part of the citizens of a democracy." *Id*. at 271 (quotation omitted). It affirmed, "erroneous statement is inevitable in free debate" and "must be protected if the freedoms of expression are to have the 'breathing space' that they need . . . to survive." *Id*.

13

at 271-72 (quotation omitted). A defamation plaintiff does not plead actual malice by alleging that, in the hurly-burly of a contested issue of public concern, the defendant contradicted the consensus of polite society and mainstream publications.

### C.    The Complaint Fails to Plead Lindell's Statements Were Inherently Implausible.

Smartmatic asserts that Lindell's statements demonstrate actual malice because they were "inherently improbable." Opp. 18-19, 33-34. Yet the Complaint contains numerous allegations showing Lindell's statements were *not* inherently improbable. The clearest is a statement by Professor Halderman, noted above, that "I know America's voting machines are vulnerable, because my colleagues and I have hacked them repeatedly. We've created attacks that can spread from machine to machine like a computer virus and silently change election outcomes. And in every single case, we've found ways for attackers to sabotage machines and to steal votes." Compl. Ex. 7 p.17. Professor Halderman's statement goes even further: "I'm pretty sure **my undergrad computer security class at Michigan could have changed the outcome of the 2016 Michigan election if we wanted to**, it is that bad. And we have a combination of very powerful adversaries, and unfortunately, quite vulnerable and obsolete systems. **That's, that's why I say it's only a matter of time.**" *Id*. at 17-18 (emphasis added).  Lindell's statements arguing that the 2020 election was hacked were not inherently improbable. If something is "only a matter of time," it is not inherently improbable.

Smartmatic also argues that Lindell's statements were inherently improbable because "state and federal agencies and courts have confirmed the results of the 2020

election." Opp. 34. Smartmatic's view that a citizen may be punished with defamation liability for contradicting the government is breathtakingly contrary to the First Amendment, which is "not only about protecting the rights of individual speakers, but also about 'constraining the collective authority of temporary political majorities to exercise their power by determining for everyone what is true and false, as well as what is right and wrong.'" *281 Care Comm. v. Arneson*, 638 F.3d 621, 636 (8th Cir. 2011) (quotation omitted). The core of *New York Times v. Sullivan* is the citizen's right to disagree with and criticize the official workings of the government. Actual malice cannot be pleaded by alleging a defendant spoke out contrary to government pronouncements.

### D. Smartmatic's Bald Speculations About Lindell's Motivations Do Not Plead Actual Malice.

The cases cited in MyPillow's opening memorandum make clear that allegations of ill will, political motivation, profit motivation, and animosity do not suffice to plead actual malice, because knowledge of falsity and reckless disregard for the truth are the only two permissible ways of showing actual malice. *See* MyPillow Mem. 24-25. Smartmatic acknowledges that "evidence of ill will or improper purpose, alone, does not establish actual malice," but argues "it is relevant." Opp. 31. In *Moreno v. Crookston Times Printing Co.*, the Minnesota Supreme Court concluded otherwise: "The Supreme Court provided a technical definition of 'actual malice' as a knowing or reckless disregard for the truth or falsity of a statement that has nothing to do with motive or ill will in the publishing of otherwise defamatory statements." 610 N.W.2d 321, 329 (Minn. 2000). Lindell quoted *Moreno* for this proposition in his opening memorandum, Lindell Mem. 27, and

15

Smartmatic has no response to *Moreno* in its Opposition. In Minnesota, at least, motive or ill will are not part of the "actual malice" equation.[4] But even if motive or ill will was relevant, Smartmatic's speculative imputation of ill motive to Lindell would not cause its Complaint to plead actual malice. The Complaint's allegations of ill will and profit motive are of the same kind as the allegations held inadequate in *Campbell v. Citizens for an Honest Government, Inc.*, 255 F.3d 560, 569 (8th Cir. 2002).

### E. Smartmatic Misunderstands the Law Concerning Claims of Allegedly Intentional False Speech.

Smartmatic's Opposition, attempting to describe First Amendment principles, fundamentally misunderstands a central doctrine. The issue presented by Defendants' motions is not whether "calculated falsehoods," Opp. 11, have value. Rather, the issue is whether permitting a plaintiff to bring a lawsuit based on the defendant's speech about a matter of public concern would unconstitutionally infringe the public's right to speak freely without worrying about being *accused* of calculated falsehood. Addressing that question, the Eighth Circuit in 2011 analyzed the relevant Supreme Court precedents and expressly rejected the proposition that "knowingly false speech" is "a category of unprotected speech." *281 Care Comm.*, 638 F.3d at 635. Smartmatic's contrary argument is not the law. Noting that the speech at issue in *281 Care Comm.*, "speech about ballot initiatives," was "quintessential political speech, which is at the heart of the protections of the First Amendment," the Eighth Circuit concluded that Minnesota's regulation of "knowingly

---

[4] Smartmatic cites *Stokes v. CBS, Inc.*, 25 F.Supp.2d 992, 1003 (D. Minn. 1998) for the assertion that it can use ill will to prove actual malice in Minnesota, Opp. 30, but *Stokes* came before *Moreno* and therefore is not good law to the extent it contradicts *Moreno*.

false speech" was not permissible, because the disputed regulation "puts the Minnesota state government in the unseemly position of being the arbiter of truth about political speech." *Id*. at 635-36. When it comes to debate on public issues, as *New York Times v. Sullivan* explained, "Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth . . . . The constitutional protection does not turn upon 'the truth, popularity, or social utility of the ideas and beliefs which are offered.'" 376 U.S. at 271 (quotation omitted). "[T]o insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones." *St. Amant*, 390 U.S. at 732. This Court should not take on the unseemly position of arbiting whether Lindell's political speech is true.

## II.     The Complaint Does Not Plausibly Plead MyPillow Is Vicariously Liable.

Concerning its attempt to impose vicarious liability on MyPillow for statements made by Lindell, Smartmatic cites various courts outside of Minnesota, Opp. 36, but Minnesota has law on this issue, so no purpose is served by cherry-picking foreign authority. Smartmatic plays up Lindell's reputation as "the MyPillow Guy," and relies upon his identification as CEO of MyPillow in media appearances. Opp. 37-42. The descriptive use of his job title, as an identifier to help audiences understand who was talking on the screen, does not make MyPillow liable for everything Lindell chooses to say. Lindell, a private individual, leveraged his MyPillow public profile to gain attention for his political views. The law permits him to have a personal political life apart from his role at

the company, and permits the company to disregard his personal political life. Nowhere does the Complaint allege that MyPillow endorsed his statements.

Smartmatic argues, citing the summary-judgment case *Hartford Fire Ins. Co. v. Clark*, 727 F.Supp.2d 765, 772 (D. Minn. 2010) and an unpublished decision, that "Whether an act was foreseeable is a question of fact that cannot be resolved on a motion to dismiss." Opp. 43. No such rule governs. It is elementary that a complaint must plead sufficient facts to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1004 (D. Minn. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Here, Smartmatic relies, Opp. 43, upon *Hagen v. Burmeister & Assocs*., which explains, "a question of fact is raised, when a party establishes that the type of tortious conduct involved is a well-known industry hazard." 633 N.W.2d 497, 505 (Minn. 2001); *see also Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1076-77 (D. Minn. 2021). For its vicarious liability claims against MyPillow to survive a motion to dismiss, Smartmatic must plead facts to show it is plausible that defamation in the context of political commentary is a well-known hazard in the pillow and bedding industry, which it does not (and cannot) do. This Court dismisses, at the pleadings stage, vicarious liability claims which fail to plead facts necessary to establish vicarious liability. *Davis v. Dollar Tree, Inc.*, No. 18-cv-1118 (WMW/HB), 2019 U.S. Dist. LEXIS 5565, *7 (D. Minn. Jan. 11, 2019); *Murrin v. Fischer*, No. 07-1295, 2008 U.S. Dist. LEXIS 112366, *53 (D. Minn. Jan.

18, 2008).[5] More generally, it dismisses, at the pleadings stage, claims which fail to plead facts necessary to establish a relationship giving rise to liability. *Aquilar*, 289 F. Supp. 3d at 1006-07.

Smartmatic argues that it was not required to plead that political speech defamation is a well-known hazard in the pillow and bedding industry "Where, as here, the employer is aware of the employee's misconduct." Opp. 48. This argument fails because the Complaint does not plead that MyPillow was aware of any "misconduct" by Lindell. Even assuming MyPillow was aware of Lindell's speaking activities, MyPillow had no obligation to conclude that Lindell's personal political speech was wrongful. As a pillow and bedding company, it has no obligation to form opinions about electronic election equipment or to control Lindell's expression of ideas on matters of public concern. Accordingly, the Complaint fails to plead that MyPillow was aware that Lindell was engaged in any misconduct.

### III.   Smartmatic Fails to Address Lindell's Argument Concerning Defamation by Implication.

Lindell's opening memorandum argued that the Complaint does not state a claim for defamation by false implication from true statements of fact, and that a defamation by implication claim is not available to public figures like Smartmatic. Lindell Mem. 30-32.

---

[5] Questions of fact like foreseeability are, if properly pleaded and supported with evidence, for the jury to resolve. However, if the evidence is such that a reasonable jury could only reach one conclusion, the question is properly resolved on summary judgment. *E.g. Willis v. Centennial Mortg. & Funding, Inc.*, No. 03-3641, 2004 U.S. Dist. LEXIS 1476, at *36 (D. Minn. Feb. 2, 2004). For the same reason, if the question is not pleaded with factual content sufficient to satisfy the *Iqbal/Twombly* standard, it may be resolved on a motion to dismiss.

In response, Smartmatic argues that defamation by implication is "a well-settled doctrine under Minnesota Law," and "need not be specifically pleaded." Opp. 14 n.4. Neither of these assertions respond to Lindell's arguments. Lindell did not deny that defamation by implication is a theory of liability under Minnesota law. Lindell argued that the Complaint does not *plead facts* that would support a defamation by implication theory, and that defamation by implication *is not available to public figures like Smartmatic*. Smartmatic fails to rebut either of these arguments. Smartmatic's footnote sleight-of-hand in substance concedes Lindell's arguments concerning defamation by implication. Smartmatic's attempt to pursue a defamation by implication theory should be dismissed.

## CONCLUSION

When conclusory speculations about Lindell's state of mind are stripped away, Smartmatic's Complaint alleges that a public controversy over the reliability of electronic voting equipment erupted, that people with academic and military credentials marshalled evidence and opinions to support the conclusion that the equipment was compromised and election results changed, that *more* people and people with *better* credentials rejected these conclusions, that the public debate became intense and vitriolic, and that Lindell spoke out vociferously on the minority side. These allegations do not plead constitutional "actual malice." The First Amendment does not permit an electronic voting equipment manufacturer, through a defamation action, to squash the minority side of this debate and silence its critic on a matter of public interest. The Complaint should be dismissed.

DATED: April 25, 2022                    **PARKER DANIELS KIBORT LLC**

By */s/   Andrew D. Parker*
    Andrew D. Parker (MN Bar No. 195042)
    Jesse Kibort (MN Bar No. 0328595)
    Joseph A. Pull (MN Bar No. 0386968)
    Ryan Malone (MN Bar No. 0395795)
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com
    kibort@parkerdk.com
    pull@parkerdk.com
    malone@parkerdk.com

**LEWIN & LEWIN, LLP**

By */s/ Nathan Lewin*
    Nathan Lewin (D.C. Bar No. 38299)*
    888 17th Street NW
    Fourth Floor
    Washington, DC 20006
    Telephone: (202) 828-1000
    nat@lewinlewin.com

*Counsel for Defendant My Pillow, Inc.*
 * Admitted *pro hac vice*

**PARKER DANIELS KIBORT LLC**

By */s/   Andrew D. Parker*
    Andrew D. Parker (MN Bar No. 195042)
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com

*Counsel for Defendant Michael Lindell*