UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>Michael J. Lindell and My Pillow, Inc.,<br><br>　　　　　　Defendants. | Case No. 22-cv-0098 (WMW/JFD)<br><br>**ORDER** |

Before the Court are Defendants' motions to dismiss. (Dkts. 18, 23.) Plaintiffs oppose Defendants' motions. For the reasons addressed below, the Court denies the motions.

## BACKGROUND

Plaintiffs SGO Corporation Limited, Smartmatic International Holding B.V., and Smartmatic USA Corp. (collectively, Smartmatic) are a parent company and its subsidiaries, which provide election technology, support and services. Smartmatic provided election technology, support and services to Los Angeles County, California, during the 2020 United States election. Defendant Michael J. Lindell, a political commentator and resident of Minnesota, is the founder and CEO of Defendant MyPillow, Inc. MyPillow is a Minnesota manufacturing company with its principal place of business in Chaska, Minnesota.

Los Angeles County engaged Smartmatic for the use of Smartmatic's technology, software, equipment and services to count and report the votes cast in Los Angeles County in the 2020 election. Smartmatic did not provide election support to any other United States county or state during the 2020 election. Los Angeles County allegedly experienced no serious problems during the 2020 election, and no questions were raised about security or the reliability or auditability of the results in Los Angeles County. Between the 2016 presidential election and the 2020 presidential election, there was no material change in voting patterns in Los Angeles County.[1] President Joe Biden and Vice President Kamala Harris won the United States general election in November 2020, securing 306 electoral votes. President Donald Trump and Vice President Mike Pence secured 232 votes and lost the election.

Smartmatic alleges that, beginning in 2016, Lindell aligned himself with President Trump and his allies and eventually secured President Trump's endorsement of Lindell's MyPillow products. President Trump's support of MyPillow and Lindell increased Lindell's fame as well as the success of MyPillow. According to Smartmatic, when President Trump lost the 2020 election and began to contest its result, Lindell began to publicly promote the false narrative that the 2020 election was stolen, announcing that the voting machines had been hacked and rigged in favor of President Biden and Vice President Harris. Lindell claimed to have scientific, mathematical and forensic "100%

---

[1] In 2020, the Democratic candidates for President and Vice President won more than 71 percent of the vote in Los Angeles County. In 2016, the Democratic candidates for President and Vice President won more than 72 percent of the vote in Los Angeles County.

proof" that the voting machines were used to perpetrate election fraud. Lindell created and published a series of documentary videos that purported to provide evidence and facts substantiating his theory that the voting technology of Smartmatic and two other election technology companies, ES&S and Dominion, stole the 2020 election. Lindell advertised and provided election-related promotional codes for his products to viewers and listeners during internet, television and radio show segments in which Lindell allegedly defamed Smartmatic and promoted his documentaries. Lindell also sponsored a "March for Trump" bus tour to twenty cities promoting the January 6, 2021 rally in Washington, D.C., during which Lindell rode in a bus bearing the MyPillow logo and endorsed the false narrative that former President Trump won the 2020 election. Lindell held an in-person and live-streamed "Cyber Symposium" from August 10, 2021, to August 12, 2021, during which he purported to uncover additional evidence that election voting machines—including Smartmatic products—rigged the 2020 election.

Count I of the complaint alleges that Lindell and MyPillow defamed Smartmatic when Lindell published false and inaccurate statements regarding Smartmatic's involvement in the 2020 election and election hacking conspiracy theories. Count II alleges that Lindell's false and defamatory statements constitute deceptive trade practices, in violation of Minnesota Statutes Section 325D.44(8), and that Lindell is MyPillow's agent. Lindell moves to dismiss Smartmatic's complaint, arguing that Smartmatic fails to plead its defamation claim adequately and that Smartmatic's claim for deceptive trade practices fails because it mirrors Smartmatic's defamation claim and pertains to statements

made by Lindell in his personal, rather than professional, capacity. MyPillow separately moves to dismiss Smartmatic's complaint, arguing that MyPillow is shielded by the First Amendment to the United States Constitution, MyPillow did not make any statements about Smartmatic, and Lindell's statements cannot be imputed to MyPillow.

## ANALYSIS

A complaint must be dismissed if it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether a complaint states such a claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff, however, must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions that are couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 678–79. The Court addresses, in turn, Smartmatic's defamation claim, MyPillow's alleged vicariously liability for Lindell's statements and Smartmatic's deceptive-trade-practices claim.

## I. Defamation

The parties dispute whether Smartmatic alleges facts sufficient to state a defamation claim against Lindell and MyPillow. Defendants contend that, because Smartmatic is a public figure, it must demonstrate actual malice to state a defamation claim. Smartmatic disagrees.

To state a defamation claim, a plaintiff must allege that the defendant made a statement that was false, the statement was communicated to someone besides the plaintiff, and the statement "tended to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community." *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410 (Minn. 1994). To recover damages for a defamatory falsehood, a public figure also must prove that the defamatory statement was made with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 162 (1967) (Warren, C.J., concurring in result) (extending the *New York Times* standard to "public figures"). Three categories of public figures exist. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). The first category is "involuntary public figures," which pertains to those who "become a public figure through no purposeful action of [their] own." *Id.* The second category is "all purpose[ ]" public figures, which pertains to those who "have assumed roles of especial prominence in the affairs of society." *Id.* This category "contain[s] celebrities and prominent social figures." *Jadwin v. Minneapolis Star & Trib. Co.*, 367 N.W.2d 476, 484 (Minn. 1985). The third category is limited-purpose public figures, which pertains to people who "have thrust themselves to the forefront of particular

5

controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345. Under Minnesota law, a corporation is a public figure and must "show that a statement was made with actual malice to establish a defamation." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997). Here, as Smartmatic comprises three corporate entities, Smartmatic is a public figure under Minnesota law.

A public figure must prove, by clear-and-convincing evidence, that the defendant made the allegedly defamatory statement with actual malice—"that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279–80; *accord Gertz*, 418 U.S. at 342. If the contested statements involve matters of public concern, a plaintiff also must present "evidence of actual harm to reputation." *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 879 (Minn. 2019). Speech involves "matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal citations and quotation marks omitted). That the statement is inappropriate or controversial is irrelevant to the determination of whether it deals with a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 387 (1987). Here, Smartmatic challenges statements that Lindell made pertaining to purported hacking of the 2020 election results. The invalidity of a presidential election as a result of hacking is a matter of public concern. Smartmatic must, therefore,

allege both malice and actual reputational harm to state a defamation claim. The Court addresses, in turn, each element of Smartmatic's defamation claim.

### A. False Statements

Smartmatic alleges that Lindell made false statements about Smartmatic's involvement in, and purported interference with, the 2020 election. Defendants argue that Lindell never believed his statements to be false and that his statements are not inherently improbable.

"A statement or communication is false if it is not substantially accurate," and a "statement or communication is not substantially accurate if its essence is not true." 4 Minn. Dist. Judges Ass'n, Minnesota Practice Jury Instruction Guides, Civil, CIVJIG 50.25 (6th ed. 2014); *accord LeDoux v. Nw. Publ'g, Inc.*, 521 N.W.2d 59, 67 (Minn. Ct. App. 1994) (explaining that a statement may be false if it is "not substantially accurate"); *Statement*, *Black's Law Dictionary* (11th ed. 2019) (defining a false statement as "[a]n untrue statement knowingly made with the intent to mislead"). Smartmatic alleges that Lindell made false statements about Smartmatic from February 2021 through June 2021, suggesting that: (1) Smartmatic was widely used in the 2020 election, (2) Smartmatic conspired with other election technology companies, (3) Smartmatic stole the 2020 election, (4) Smartmatic's technology or software was compromised by the People's Republic of China, (5) the Smartmatic technology used in the 2020 election was connected to the internet to enable hacking, (6) Smartmatic is involved in a widespread criminal enterprise, and (7) Smartmatic's technology was designed to steal elections.

Defendants contend that Smartmatic does not sufficiently plead falsity because Smartmatic does not allege sufficient facts to support the allegation that Lindell doubts the veracity of his statements and that Lindell's statements are inherently improbable. But the complaint relies on a wealth of information that was publicly available at the time Lindell made his allegedly defamatory statements and that contradicts Lindell's statements. For example, the complaint cites to individual states' election reports and audit reports, media reporting, the websites of election technology companies, testimony and public statements by election officials and election security experts, election reports from monitoring organizations, and litigation brought by Smartmatic against other alleged defamers in February 2021. The Court concludes that Smartmatic has alleged sufficient facts to support its allegation that Lindell's statements were false.[2]

### B. Communication to Third Parties

Although the parties dispute the falsity of Lindell's statements, the parties do not dispute that the challenged statements were communicated to members of the public and entities other than Smartmatic. Smartmatic alleges that Defendants promulgated defamatory statements at a January 5, 2021 "Save the Republic" rally at the United States

---

[2] In the complaint, Smartmatic references and relies on publicly available information. Defendants do not object to the authenticity of this information. The Court, therefore, considers this information. *See Dittmer Props., L.P. v. Fed. Deposit Ins. Corp.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (recognizing that courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" in ruling on a Rule 12(b)(6) motion to dismiss (internal quotation marks omitted)).

8

Capitol, in a defamatory documentary video series about the 2020 election, during at least thirteen media appearances, and through an in-person and livestreamed "Cyber Symposium" in August 2021. Therefore, Smartmatic has alleged sufficient facts to support its allegation that Lindell's defamatory statements were communicated to parties besides Smartmatic.

### C. Actual Malice

The parties disagree as to whether Smartmatic has alleged facts sufficient to establish that Defendants acted with "actual malice" in defaming Smartmatic.

A corporation alleging defamation based on a statement addressing a matter of public concern must prove that the defendant made the defamatory statement with "actual malice." *Maethner*, 929 N.W.2d at 879. The "actual malice" standard requires a plaintiff to prove that a defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279–80. To defame with reckless disregard, "the defendant must have made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of [the defendant's] publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks and citations omitted); *accord St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (concluding that "recklessness may be found where there are obvious reasons to doubt the veracity" of the information); *Nunes v. Lizza*, 12 F.4th 890, 900–01 (8th Cir. 2021) (explaining that "[a] speaker who repeats a defamatory statement or implication after being informed of its falsity does so at

9

the peril of generating an inference of actual malice" and that such republication "may be treated as evidence of reckless disregard" (internal quotation marks omitted)). Recklessness also may be found when "a story is fabricated by the defendant" or "is the product of [the defendant's] imagination." *St. Amant*, 390 U.S. at 732.

Here, Smartmatic alleges that Lindell knew the falsity of his claims about Smartmatic, Smartmatic's involvement in the 2020 election, the operation of Smartmatic technology, the hacking of Smartmatic technology, and Smartmatic's participation in a conspiracy to steal the 2020 election. Smartmatic alleges that publicly available information contradicted Lindell's statements and those made by Lindell's docuseries guests. Smartmatic cites various sources of information disproving Lindell's statements, including individual states' election reports and audits, media reports, the websites of election technology companies, the testimony and public statements of election officials and election security experts, election monitoring organizations' reports, and litigation brought by Smartmatic against other alleged defamers in February 2021. Smartmatic alleges that this publicly available information contradicts Lindell's statements that Smartmatic's election technology was connected to the internet and deployed in locales outside Los Angeles County. And, according to Smartmatic, this publicly available information establishes that Smartmatic and its competitors are separate companies, that the 2020 election was secure, and that there was no basis to believe that hacking, fraud or rigging had occurred. Smartmatic also alleges that Defendants continued to make defamatory statements about Smartmatic even after receiving contradictory information,

including retraction letters Dominion sent to Lindell and a copy of the February 4, 2021 lawsuit that Smartmatic filed against other proponents of election interference theories. Smartmatic contends that Lindell knew of and/or purposefully avoided this prevalent, publicly available information that refuted Lindell's false statements about election interference and Smartmatic. Smartmatic also alleges that Lindell made and promoted his defamatory statements for his own profit. For example, Smartmatic alleges that on several occasions Lindell told audiences to purchase MyPillow products after making claims of election fraud and supplying audiences with MyPillow promotional codes related to Lindell's election-hacking theories.

Lindell counters that Smartmatic has failed to allege actual malice because Lindell has never expressed doubt as to the truthfulness of his challenged statements, Lindell's statements were not inherently improbable, Lindell has relied on publicly available information, and some voting machines have flaws.[3] And Lindell contends that allegations of a defendant's ill will or profit motive, without more, do not satisfy the actual malice standard. Lindell's arguments, however, address the merits of the case and not whether Smartmatic has alleged a viable cause of action. On a motion to dismiss, the court must construe the facts in the light most favorable to the non-moving party. *Blankenship*, 601 F.3d at 853. Construing the facts in the light most favorable to Smartmatic, the Court concludes that Smartmatic has alleged facts sufficient to suggest that Lindell knew or

---

[3]   Most of the sources to which Defendants cite appear to be generalized commentary about the weakness of voting machines and allegations of interference in prior elections rather than evidence of interference with the 2020 election.

should have known that his statements were false and acted with actual malice in promoting the challenged statements.

### D. Actual Reputational Harm

Defendants do not dispute Smartmatic's claim that Lindell's statements have harmed Smartmatic. When a defendant's defamatory remark pertains to a matter of public concern, the plaintiff must "present[ ] evidence of actual harm to reputation." *Maethner*, 929 N.W.2d at 879. Here, Lindell stated that Smartmatic was one of several election technology companies that rigged the 2020 election, which caused people to believe that Smartmatic's technology could not be trusted. Smartmatic alleges that Lindell's defamatory statements made Smartmatic's name and brand synonymous with election fraud in the minds of members of the public and government officials. Smartmatic also alleges that, as a result of Lindell's defamatory remarks, Smartmatic's officers and employees have been threatened and the company has expended over one million dollars on public relations, crisis management, cybersecurity, and employee retention and recruitment efforts. Smartmatic alleges that its business depends on its reputation for safety, accuracy and auditability, and that Lindell's defamatory statements have tarnished Smartmatic's reputation. Construing the facts in the light most favorable to Smartmatic, and recognizing that the parties do not dispute Smartmatic's reputational harm, the Court concludes that Smartmatic has alleged facts sufficient to support a claim of reputational harm resulting from Lindell's defamatory statements.

For these reasons, the Court concludes that Smartmatic has alleged sufficient facts to support a defamation claim. The Court, therefore, denies Defendants' motions to dismiss Smartmatic's defamation claim.

## II. Vicarious Liability

The parties disagree as to whether Smartmatic has adequately alleged that MyPillow is vicariously liable for Lindell's defamatory statements. Smartmatic alleges that Lindell used the platform he gained making defamatory statements about Smartmatic as a means for promoting MyPillow such that MyPillow should be held vicariously liable for Lindell's defamation. MyPillow maintains that Smartmatic fails to allege that Lindell made the defamatory remarks in the scope of Lindell's employment duties and in furtherance of MyPillow's business.

The doctrine of *respondeat superior* is a common-law doctrine under which an employer may be vicariously liable for the torts of an employee committed within the course and scope of employment. *Urban v. Am. Legion Dep't. of Minn.*, 723 N.W.2d 1, 4 (Minn. 2006); *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 535 (Minn. 1992). Defamation is a tort. *See Ferrell v. Cross*, 557 N.W.2d 560, 562 (Minn. 1997). A corporation can be held liable for defamatory statements made by the corporation's employees. *See, e.g.*, *Cognex Corp. v. VCode Holdings, Inc.*, No. 06-1040 (JNE/JJG), 2008 WL 2113661, at *36 (D. Minn. May 19, 2008) (denying summary judgment on business defamation claim based on defendant's employee's false statements about plaintiff corporation). Courts will impose liability when "there is some connection between

13

the tort and the business such that the employer in essence assumed the risk when it chose to engage in the business." *Hagen v. Burmeister & Assocs., Inc.*, 633 N.W.2d 497, 504 (Minn. 2001). But "[a] plaintiff need not prove that an employer actually foresaw that the particular employee would commit the particular tortious act." *Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 772 (D. Minn. 2010). Instead, a plaintiff merely must show that "an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Hagen*, 633 N.W.2d at 505.

Lindell, the CEO of MyPillow, intentionally promoted MyPillow while allegedly defaming Smartmatic in media and other public appearances. Lindell used the MyPillow logo during media appearances in which he allegedly defamed Smartmatic. During these appearances, Lindell promoted the MyPillow business and provided audiences with promotional codes to use when buying MyPillow products. The MyPillow promotional codes Lindell relayed to audiences used words and phrases that correlated to Lindell's allegedly defamatory statements (*e.g.*, "FightforTrump" and "Proof"). Riding a bus that bore the MyPillow logo, Lindell sponsored a twenty-city "March for Trump" bus tour to promote the January 6, 2021 rally in Washington, D.C., the false narrative that President Trump had won the 2020 election and the allegation that the 2020 election was hacked. In doing so, Lindell expressly associated his defamatory statements with the MyPillow brand. MyPillow did not distance itself from Lindell's statements. Indeed, MyPillow associated itself with Lindell's bus tour by having its logo emblazoned on Lindell's bus, and MyPillow

provided Lindell with promotional codes to relay to audiences during his appearances. The Court, therefore, concludes that Smartmatic's allegations state a plausible claim that MyPillow may be vicariously liable for Lindell's actions. For this reason, the Court denies MyPillow's motion to dismiss on the issue of vicarious liability.

### III.     Deceptive Trade Practices

Defendants move to dismiss Smartmatic's claim under the Minnesota Deceptive Trade Practice law (MDTPL), arguing that Smartmatic's MDTPL claim is impermissibly duplicative of Smartmatic's defamation claim. Lindell also argues that the MDTPL does not apply to him because he made the allegedly defamatory statements as part of "personal activities." Smartmatic disagrees.

Under the MDTPL, "[a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person . . . disparages the goods, services, or business of another by false or misleading representation of fact." Minn. Stat. § 325D.44, subdiv. 1(8). A court that finds that a defendant violated the MDTPL may grant injunctive relief and award costs and attorneys' fees. Minn. Stat. § 325D.45. The MDTPL expressly contemplates that conduct might be actionable as both a common law tort and under the MDTPL by providing relief "in addition to remedies otherwise available against the same conduct under the common law." Minn. Stat. § 325D.45, subdiv. 3; *accord US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 65 (D.D.C. 2021).

Here, Smartmatic alleges that Lindell disparaged Smartmatic's goods, services and business through Lindell's false and misleading representations of fact regarding

15

Smartmatic and the 2020 election. Smartmatic alleges that Lindell acted in his capacity as CEO and spokesperson for MyPillow when Lindell made these false statements. Smartmatic further alleges that Smartmatic has suffered irreparable harm and will continue to suffer such harm as a result of Lindell's false statements. As addressed above, Smartmatic has alleged sufficient facts to support Smartmatic's claim that Lindell's statements were made, in part, to promote MyPillow and that MyPillow is vicariously liable for those statements. The Court concludes that Smartmatic's allegations, accepted as true, also are actionable under the MDTPL. Because the MDTPL expressly contemplates that a plaintiff may pursue claims under both the MDTPL and the common law, Smartmatic's MDTPL claim is not impermissibly duplicative of its defamation claim.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Michael J. Lindell's motion to dismiss, (Dkt. 18), is **DENIED**.

2. Defendant My Pillow, Inc.'s motion to dismiss, (Dkt. 23), is **DENIED**.

Dated: September 19, 2022         s/Wilhelmina M. Wright
                                  Wilhelmina M. Wright
                                  United States District Judge