## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>                    Defendants. | Case No. 22-cv-0098-WMW-JFD |

## MEMORANDUM IN SUPPORT OF SMARTMATIC'S MOTION TO COMPEL

**Table of Contents**

Page

TABLE OF AUTHORITIES ...............................................................................................iii

INTRODUCTION .............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 3

I.      Smartmatic Sued Defendants For Falsely Accusing It Of Rigging
        The 2020 U.S. Presidential Election. ...................................................................... 3

II.     Defendants Failed To Satisfy Their Discovery Obligations. .................................. 4

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT...................................................................................................................... 7

I.      The Court Should Order Defendants To Comply With Rule 34. ............................ 7

        A.      Defendants Served Insufficient Responses To Many Of
                Smartmatic's RFPs. ...................................................................................... 7

        B.      Smartmatic Is Entitled To RFP Responses That Comply with
                Rule 34(b)(2)(C). .......................................................................................... 9

II.     The Court Should Compel Defendants To Produce Documents
        Related To Dominion. ........................................................................................... 12

        A.      Defendants Are Improperly Withholding Documents Related
                To Dominion. .............................................................................................. 12

        B.      Documents Related To Dominion Are Relevant And
                Discoverable. .............................................................................................. 14

III.    Defendants Have Failed To Properly Respond to Smartmatic's
        Interrogatories........................................................................................................ 16

        A.      Lindell's Roles and Responsibilities At MyPillow Are
                Relevant And Discoverable (Interrogatory No. 22). ................................. 16

                1.      MyPillow Refuses To Properly Respond To
                        Interrogatory No. 22. ....................................................................... 17

                2.      The Court Should Compel MyPillow To Respond To
                        Interrogatory No. 22. ....................................................................... 17

B.     Information Related To MyPillow's Advertising During The Disinformation Campaign Is Relevant And Discoverable (Interrogatory Nos. 18(a) and 19). ............................................................ 18

     1.     MyPillow Refuses To Properly Respond To Interrogatory Nos. 18(a) and 19. .................................................... 19

     2.     The Court Should Compel MyPillow To Respond To Interrogatory Nos. 18(a) and 19. .................................................... 20

C.     Defendants Should Be Required To Disclose Information Regarding Their Defamatory Publications (Interrogatory Nos. 1 and 15). ................................................................................................... 22

     1.     Defendants Refuse To Properly Respond To Interrogatory Nos. 1 and 15. ........................................................... 23

     2.     The Court Should Compel Defendants To Respond To Interrogatory Nos. 1 and 15. ........................................................... 25

D.     Defendants Must Identify Their Oral Communications With President Trump, The Trump Administration, And The Trump Campaign (Interrogatory No. 9). .................................................... 27

     1.     Defendants Refuse To Properly Respond To Interrogatory No. 9. ....................................................................... 28

     2.     The Court Should Compel Defendants To Respond To Interrogatory No. 9. ....................................................................... 29

CONCLUSION ............................................................................................. 31

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Bepex Int'l, LLC v. Hosokawa Micron BV*,
No. 19-CV-2997, 2022 WL 3701406 (D. Minn. Feb. 8, 2022) ............................................................ 6

*Beyond Blond Prods., LLC v. Hall*,
No. 22-MC-0037 (JFD), 2022 WL 3444039 (D. Minn. Aug. 17, 2022) ............................................. 6

*Firstcom, Inc. v. Qwest Corp.*,
No. 04-0995(ADM/JJG), 2006 WL 8443647 (D. Minn. Feb. 16, 2006) ............................................. 26

*GAF Materials LLC v. Lipinskiy*,
No. 20-CV-2194, 2020 WL 6867412 (D. Minn. Nov. 23, 2020) ......................................................... 25

*Marco Techs. v. Midkiff*,
No. 19-cv-2323, 2020 WL 12442103 (D. Minn. Oct. 8, 2020) .................................................... 29, 30

*Nunes v. Lizza*,
12 F.4th 890 (8th Cir. 2021) .............................................................................................................. 14

*Owens v. CBS, Inc.*,
173 Ill. App. 3d 977 (5th Dist. 1988) ............................................................................................ 25, 26

*Ramirez-Cruz v. Chipotle Servs., LLC*,
No. 15-cv-4514-ADM-KMM, 2017 WL 8947191 (D. Minn. May 11, 2017) ........................ 10, 11, 12

*Schneider v. Buckman*,
433 N.W.2d 98 (Minn. 1988) .............................................................................................................. 17

*Stokes v. CBS, Inc.*,
25 F. Supp. 2d 992 (D. Minn. 1998) .............................................................................................. 22, 29

*US Dominion, Inc. v. MyPillow, Inc.*,
No. 1:21-cv-0445 (CJN), 2022 WL 1597420 (D.D.C. May 19, 2022) ................................................ 1

*US Dominion, Inc. v. Powell*,
554 F. Supp. 3d 42 (D.D.C. 2021) ...................................................................................................... 14

**Statutes**

Minnesota Deceptive Trade Practices Act, MSA § 325D.44(8) ............................................................. 4

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ......................................................................................................................... 6

Fed. R. Civ. P. 33(d) ............................................................................................................................ 29

iii

Fed. R. Civ. P. 34 ................................................................................................ 2, 5, 7, 8, 9, 10, 11, 12

Fed. R. Civ. P. 34(b)(2)(B) .................................................................................................. 9

Fed. R. Civ. P. 34(b)(2)(C) ......................................................................................... 8, 9, 11, 12

**INTRODUCTION**

For over two years now, Defendants Michael J. Lindell and My Pillow, Inc. ("MyPillow") have been spreading the lie that Smartmatic[1] conspired with its competitors, the federal government, state governments, and foreign nations, to "rig" the 2020 U.S. Presidential Election in favor of President Joe Biden and "steal" it from President Donald Trump. They have disseminated their lies about Smartmatic through every medium available to them, including documentaries, symposiums, podcasts, and even pleadings in federal court. *See US Dominion, Inc. v. MyPillow, Inc*., No. 1:21-cv-0445 (CJN), 2022 WL 1597420, at *14 (D.D.C. May 19, 2022) (sanctioning Lindell for bringing "groundless claims" against Smartmatic in a third-party complaint). And there is no end in sight to their disinformation campaign—just weeks ago, Defendants published a video regarding "Updates on the Smartmatic Lawsuit" in which they falsely claimed that Smartmatic "computer-manipulated" votes in Los Angeles County, *i.e.,* the only jurisdiction in which Smartmatic had a role in the 2020 election.[2]

Based on Defendants' ongoing mission to destroy Smartmatic's reputation, it is unsurprising that they refuse to comply with basic discovery requests served by Smartmatic in this case. For example, Smartmatic served its requests for production of documents ("RFPs") and interrogatories on October 17, 2022, yet for many of Smartmatic's RFPs,

---

[1] Plaintiffs Smartmatic USA Corp., Smartmatic International Holding, B.V., and SGO Corporation Limited are collectively referred to herein as "Smartmatic."

[2] *See* Updates on the Smartmatic Lawsuit and the Cast Vote Records, Frank Speech (January 4, 2023), *available at* https://frankspeech.com/video/updates-smartmatic-lawsuit-and-cast-vote-records (last visited January 26, 2023).

Defendants *still* refuse to identify the documents that they will produce and the documents they believe are objectionable. Defendants' tactics violate Rule 34 of the Federal Rules of Civil Procedure, and they also prevent Smartmatic from determining, as a threshold matter, whether discovery disputes even exist.

Defendants also refuse to disclose information that is fundamental to this case. For example, they refuse to produce documents related to Smartmatic's competitor, Dominion, even though they have falsely claimed time and again that Smartmatic and Dominion are "cousins" who conspired to rig the 2020 election. Defendants refuse to disclose information that is clearly relevant to Smartmatic's vicarious liability claim, including the MyPillow employees who assisted Lindell with his defamatory documentaries or who help him generate "promo codes" that he uses to market MyPillow products while he defames Smartmatic. And Defendants claim that they have never used any data to ascertain the number of people who viewed their defamatory programs even though Lindell has publicly boasted that "100 million people worldwide" viewed *Absolute Proof*, and he somehow knew that they watched it on average for "1 hour and 53 minutes."

Smartmatic tried to resolve these deficiencies and others without the Court's assistance, but Defendants would not comply. Accordingly, in the interest of keeping discovery on track in this case, Smartmatic requests that the Court compel Defendants to comply with the requests discussed in this motion.

## FACTUAL AND PROCEDURAL BACKGROUND

I.   **Smartmatic Sued Defendants For Falsely Accusing It Of Rigging The 2020 U.S. Presidential Election.**

Smartmatic alleges that, starting in or around January 2021, Defendants repeatedly published and broadcast false statements about Smartmatic and its role in the 2020 U.S. election. (ECF No. 1, Compl. ¶¶ 134–80.)  Smartmatic had no role in the 2020 election outside of providing some technology, support, and services to Los Angeles County, California.  (*Id.* ¶¶ 8, 40.)  Given Smartmatic's limited role in the 2020 U.S. election, it was literally impossible for Smartmatic to "steal" the 2020 election from President Trump in favor of President Biden.  Yet, Defendants have repeatedly stated that Smartmatic was the "mothership" of a grand conspiracy involving Smartmatic, Dominion, other voting technology companies, the federal government, state governments, and foreign nations, to "flip" votes cast for President Trump to President Biden.  (*See, e.g., id.* ¶ 102.)

Smartmatic has alleged that Defendants' disinformation campaign was a thinly veiled attempt to curry favor with President Trump and to sell MyPillow products to his loyal followers.  Indeed, Lindell is the founder and CEO of MyPillow, and he has strategically used his disinformation campaign to grow and promote the MyPillow brand.  (*Id.* ¶¶ 327–39.)  For example, while he defames Smartmatic, Lindell uniformly identifies himself as the CEO of MyPillow and presents his audiences with "promo codes" that they can use to obtain discounts on MyPillow products.  (*See, e.g., id.* ¶ 331.)  Defendants strategically publish "promo codes" that will appeal to President Trump's supporters, such as "FightforTrump" and "Proof."  (*Id.* ¶ 19.)

3

On January 18, 2022, Smartmatic sued Lindell and MyPillow for defamation and violations of the Minnesota Deceptive Trade Practices Act, MSA § 325D.44(8)). On March 21, 2022, Defendants moved to dismiss Smartmatic's Complaint, arguing that it failed to state a claim upon which relief could be granted. On September 19, 2022, the Court denied Defendants' motions. (ECF No. 52, Order Denying Defendants Motions to Dismiss.) It ruled that Smartmatic had plausibly alleged that Defendants published false statements regarding Smartmatic with "actual malice," *i.e.*, with knowledge that their statements were false or with reckless disregard for the truth. (*Id.* at 7–12.) Further, it ruled that Smartmatic sufficiently alleged that MyPillow could be held vicariously liable for Lindell's misconduct because it alleged: (i) Lindell promoted MyPillow while defaming Smartmatic; (ii) Lindell used the MyPillow logo during defamatory appearances; (iii) Lindell provided audiences with MyPillow promotional codes while he defamed Smartmatic; (iv) Lindell rode a bus that bore the MyPillow logo while he toured the country to promote the January 6, 2021 rally and the false narrative that the 2020 election was hacked; and (v) MyPillow did not distance itself from Lindell's statements. (*Id.* at 14.)

## II. Defendants Failed To Satisfy Their Discovery Obligations.

On October 17, 2022, Smartmatic served the following sets of discovery requests (the "Discovery Requests") on Defendants:

- First Set of Requests for Production to Defendants (Declaration of Michael E. Bloom in Support of Smartmatic's Motion to Compel ("Bloom Decl.") ¶ 3, Ex. 1),

- Second Set of Requests for Production to MyPillow (*Id.* ¶ 4, Ex. 2)

- First Set of Interrogatories to Defendants (*Id.* ¶ 5, Ex. 3), and

- Second Set of Interrogatories to MyPillow (*Id.* ¶ 6, Ex. 4)

On December 5, 2022, Defendants served their Responses to Smartmatic's Discovery Requests.[3] On December 14, 2022, Smartmatic informed Defendants that their responses to the Discovery Requests were deficient for many reasons and it asked to meet-and-confer with them concerning their responses. (*Id.* ¶ 12, Ex. 10, Letter from M. Bloom to M. Eslick Dated December 14, 2022.) Smartmatic thereafter met-and-conferred with Defendants four times—on December 21, 2022; December 23, 2022; January 4, 2023; and January 11, 2023—regarding Defendants' responses to the Discovery Requests. (*Id.* ¶¶ 14, 15, 18, 19, Exs. 12, 13, 16, 17.) During the same time, Defendants also served multiple sets of supplemental responses to Smartmatic's Discovery Requests. (*Id.* ¶¶ 16–17, 21–23, Exs. 14–15, 19–21.)

Defendants' supplemental responses did not cure many of the deficiencies in their initial responses and the parties were unable to resolve their disagreements. *First*, Defendants served many RFP responses that do not comply with Rule 34 of the Federal Rules of Civil Procedure to the extent they fail to identify the categories of documents that Defendants will produce and the categories that they deem objectionable. (*Id.* ¶¶ 16–17, Exs. 14–15, RFP Nos. 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, 28, and 29.) *Second*, Defendants refuse to produce non-privileged documents related to Dominion. (*Id.* ¶ 16,

---

[3] Defendants' responses and objection are attached to the Bloom Decl. as follows: Defendants' Responses to Plaintiffs' First Set of Requests for Production (Ex. 5); MyPillow's Responses to Plaintiffs' Second Set of Requests for Production (Ex. 6); MyPillow's Answers and Objections to Plaintiffs' First Set of Interrogatories) (Ex. 7); Lindell's Answers to Plaintiffs' First Set of Interrogatories (Ex. 8); MyPillow's Answers and Objections to Plaintiffs' Second Set of Interrogatories (Ex. 9).

Ex. 14, at 4.)  *Finally*, Defendants refuse to provide complete answers to clearly relevant interrogatories related to: (i) Lindell's roles and responsibilities at MyPillow (*id.* ¶ 23, Ex. 21, at 4); (ii) MyPillow's advertising related to programs in which Defendants defamed Smartmatic (*id.* ¶ 11, Ex. 9, at 3); (iii) Defendants' defamatory broadcasts (*id.* ¶¶ 21–22, Exs. 19–20, at 3, 9); and (iv) Defendants' oral communications with President Trump, his administration, and his campaign (*id.* ¶¶ 21–22, Exs. 19–20, at 7.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case." *Beyond Blond Prods., LLC v. Hall*, No. 22-MC-0037 (JFD), 2022 WL 3444039, at *2 (D. Minn. Aug. 17, 2022) (Docherty, J.) (citation omitted).  Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Id.* (citation omitted).  In other words, "once a threshold showing of relevance has been made by the requesting party, the burden of demonstrating why information need not be provided—and thus, why a court should deny a motion to compel—is on the party resisting disclosure." *Bepex Int'l, LLC v. Hosokawa Micron BV*, No. 19-CV-2997 (KMM/JFD), 2022 WL 3701406, at *3 (D. Minn. Feb. 8, 2022) (Docherty, J.) (citation omitted).

**ARGUMENT**

## I. The Court Should Order Defendants To Comply With Rule 34.

In response to Smartmatic RFP Nos. 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, 28, and 29, Defendants asserted several objections and they refuse to state whether they intend to withhold any non-privileged responsive documents pursuant to their objections. Defendants' failure to disclose that information violates Rule 34 of the Federal Rules of Civil Procedure and is preventing Smartmatic from meet-and-conferring with Defendants about those RFPs.

### A. Defendants Served Insufficient Responses To Many Of Smartmatic's RFPs.

In response to many of Smartmatic's RFP's, Defendants asserted several objections and then stated, "[s]ubject to the foregoing, Defendants will produce responsive documents." (*See id.* ¶¶ 3–4, Exs. 1–2, RFP Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 17, 18, 21, 25, 27, 29.) Defendants did not state whether, for those RFPs, they intended to comply with the RFP as written or whether they intended to withhold any non-privileged documents subject to their objections. (*Id.*)

In its letter dated December 14, 2022, Smartmatic asked Defendants to clarify whether, for those RFPs, they intended to withhold any categories of non-privileged documents pursuant to their objections. (*Id.* ¶ 12, Ex. 10, at 1.) In response, Defendants refused to state whether they intended to comply with Smartmatic's RFP's as written, or whether they believed that certain categories of requested documents were objectionable and beyond the scope of permissible discovery. (*See id.* ¶ 13, Ex. 11, December 21, 2022

Letter from M. Eslick to M. Bloom, at 1–2.) According to Defendants, they would not be able to identify the categories of documents that they deemed objectionable until they had completed their review of all potentially responsive documents. (*Id.*, at 2)

At a meet-and-confer and in subsequent correspondence, Smartmatic informed Defendants that Federal Rule of Civil Procedure 34(b)(2)(C) requires them to identify any categories of documents that they intend to withhold. (*See id.* ¶ 14, Ex. 12, December 22, 2022 Letter from J. Loftus to M. Eslick, at 1–2.) Defendants thereafter agreed at a meet-and-confer that they would comply with Rule 34 and serve proper RFP responses. (*See id.* ¶ 15, Ex. 13, December 27, 2022 Letter from J. Loftus to M. Eslick, at 4.) Defendants served supplemental responses on January 3, 2023, but the responses they served did not cure the deficiencies.[4] Indeed, for many of Smartmatic's RFPs, Defendants either did not supplement their responses at all or they merely provided: "Without waiving a previously asserted objection, Defendants will produce responsive documents." (*Id.* ¶¶ 16–17, Exs. 14–15, RFP Nos. 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, 28, and 29.)

Smartmatic again explained to Defendants at a meet-and-confer and in correspondence that their RFP responses were deficient under Rule 34, and it requested that Defendants supplement their RFP responses by January 11, 2023. (*Id.* ¶ 18, Ex. 16, January 6, 2023 Letter from J. Loftus to M. Eslick, at 1–2.) Defendants did not do so. Finally, on January 13, 2023, nearly three months after Smartmatic served its RFPs,

_____

[4] Defendants' supplemental RFP responses are attached to the Bloom Decl. as follows: Defendants' Supplemental Responses to Plaintiffs' First Set of Requests for Production (Bloom Decl. ¶ 16, Ex. 14) and MyPillow's Supplemental Responses and Objections to Plaintiffs' Second Set of Requests for Production (*id.* ¶ 17, Ex. 15).

Smartmatic requested that Defendants supplement their RFP responses by close of business on Tuesday, January 17, 2023.  (*See id.* ¶ 19, Ex. 17, January 13, 2023 Letter from J. Loftus to M. Eslick, at 4.)  Defendants did not comply or otherwise identify a date by which they would comply.  Accordingly, on January 19, 2023, Smartmatic informed Defendants that it understood the parties to be at an impasse on this issue.  (*Id.* ¶ 20, Ex. 18, January 19, 2023 email exchange between J. Loftus to M. Eslick.)  Defendants responded on the same date that they would attempt to "narrow the scope" of the impasses that Smartmatic identified, but Smartmatic did not receive any further correspondence from Defendants related to this topic.  (*Id.*)

## B. Smartmatic Is Entitled To RFP Responses That Comply with Rule 34(b)(2)(C).

A party responding to a document request "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  To the extent the responding party objects to a request, its response "must state whether any responsive materials are being withheld on the basis of that objection," and "[a]n objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).  The Advisory Committee Notes to Rule 34 further explain that "[a]n objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad."  2015 Adv. Comm. Notes to Rule 34.  Thus, a responding party fails to comply with Rule 34 when it objects to a request and does not identify the categories of documents that it

intends to withhold pursuant to its objection. *Ramirez-Cruz v. Chipotle Servs., LLC*, No. 15-cv-4514-ADM-KMM, 2017 WL 8947191, at *9 (D. Minn. May 11, 2017).

Defendants refuse to comply with this rule. In their initial responses to many of Smartmatic's RFPs, they asserted objections and then stated "[s]ubject to the foregoing, Defendants will produce responsive documents." (*See* Bloom Decl. ¶¶ 7–8, Exs. 5–6, RFP Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 17, 18, 21, 25, 27, 29.) After the parties met-and-conferred regarding this deficiency, for most of Defendants' responses, they either did not supplement their responses at all or they merely rephrased their previous deficient responses, stating, "[w]ithout waiving a previously asserted objection, Defendants will produce responsive documents." (*Id.* ¶¶ 16–17, Exs. 14–15, RFP Nos. 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, 28, and 29.)

Defendants' responses to RFP No. 6 are instructive. In RFP No. 6, Smartmatic requested, in pertinent part: "Documents and communications relating to any materials used to prepare, produce, edit, film, and/or publish the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, or LINDELL APPEARANCES." (*Id.* ¶ 3, Ex. 1, at 11.) In response, Defendants asserted several objections and then stated, "[s]ubject to the foregoing, Defendants will produce responsive documents." (*Id.* ¶ 7, Ex. 5, at 6.) Smartmatic explained in correspondence and at the parties' meet-and-confers that Defendants' responses were deficient under Rule 34 because they neither identified the categories of documents Smartmatic requested in RFP No. 6 that they believe are discoverable or the categories of documents that they believe are objectionable. (*See, e.g. id.* ¶ 14, Ex. 12, at 2; *id.* ¶ 18, Ex. 16, at 1–2; *id.* ¶ 24, Ex. 22, December 30, 2022 Letter

from J. Loftus to M. Eslick, at 1–2.) As such, three months after Smartmatic served RFP No. 6, it still does not know whether Defendants intend to produce non-privileged documents related to the production of their defamatory programs or whether they intend to withhold those documents based on an objection.

Defendants argue that they need to review all of their documents before they can identify objectionable categories of documents. (*Id.* ¶ 13, Ex. 11, at 2.) But their argument is misplaced for multiple reasons. *First*, Rule 34 does not countenance Defendants' backward-looking approach. It requires Defendants to object to the part of the request that they deem objectionable when they serve their responses and to "permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Defendants' vague responses that they "will produce responsive documents" do not satisfy Rule 34. *See Ramirez-Cruz*, 2017 WL 8947191, at *9.

*Second*, even if Rule 34 permitted defendants to respond that they will "produce responsive documents" and subsequently determine *which* "responsive documents" they will produce, it does not allow them to wait several months to identify the documents they intend to withhold. Indeed, although Smartmatic served its RFPs on *October 17, 2022*, it still does not know which categories of documents Defendants intend to withhold in response to many of its requests. (*See* Bloom Decl., ¶¶ 16–17, Exs. 14–15, RFP Nos. 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, 28, and 29.) Nor have Defendants been willing to identify a date by which they will provide proper responses. (Bloom Decl. ¶ 13, Ex. 11; *id.* ¶ 25, Ex. 23, January 4, 2023 Letter from M. Eslick to M. Bloom.) If Defendants are not compelled to comply with Rule 34, then—even assuming that they serve proper responses

at some point—Smartmatic may not have sufficient time to meet-and-confer with Defendants about deficiencies in their responses, seek relief from the Court, and use responsive documents in depositions of fact witnesses.

Accordingly, the Court should compel Defendants to serve RFP responses that comply with Rule 34.  Specifically, for Defendants' responses to RFP Nos. 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, 28, and 29, it should require Defendants to identify the portion of the RFP that they deem objectionable and will not comply with, if any, and agree to permit inspection of the remainder of the requested documents.  *See* Fed. R. Civ. P. 34(b)(2)(C); *Ramirez-Cruz*, 2017 WL 8947191, at *9.

## II.     The Court Should Compel Defendants To Produce Documents Related To Dominion.

Defendants also improperly refuse to produce documents that relate to Smartmatic's competitor and alleged "co-conspirator," Dominion.

### A.     Defendants Are Improperly Withholding Documents Related To Dominion.

Based on Defendants' false and defamatory statements that Smartmatic and Dominion conspired to rig the 2020 election, and that they are "cousins" and "interchangeable," Smartmatic served the following RFP:

- RFP No. 1: Documents and communications concerning SMARTMATIC, DOMINION, and/or the security of voting in the 2020 PRESIDENTIAL ELECTION. (*Id.* ¶ 3, Ex. 1, at 10.)

After a meet-and-confer regarding deficiencies in Defendants' response to RFP No. 1, Defendants supplemented their response and agreed to produce "documents containing a reference to Smartmatic or the 2020 Presidential election, as defined in the Requests for

Production, that are dated on or after January 1, 2020." (*Id.* ¶ 16, Ex. 14, at 4.) Defendants stated they would not produce "documents dated before that date or documents that do not relate in whole or in part to [] Smartmatic, the 2020 Presidential Election, or voting machines generally." (*Id.*) In other words, Defendants refuse to produce any document that relates to Dominion but does not also relate to Smartmatic or "voting machines generally." (*Id.*)

Smartmatic met-and-conferred with Defendants again concerning their responses to RFP No. 1 on January 11, 2023, at which time Defendants did not agree to produce documents related to Dominion, but they represented that they were "reconsidering" their position. (*Id.* ¶ 19, Ex. 17, January 13, 2023 Letter from J. Loftus to M. Eslick, at 4–5.) In the interest of moving the case forward, Smartmatic requested that Defendants provide their final position on RFP No. 1 by January 17, 2023. (*Id.*) Defendants failed to respond. Accordingly, on January 19, 2023, Smartmatic informed Defendants that it understood the parties to be at an impasse on RFP No. 1. (*Id.* ¶ 20, Ex. 18.)[5] Defendants responded on the same date that they would attempt to "narrow the scope" of the impasses that Smartmatic identified, but Smartmatic did not receive any further correspondence from Defendants related to this topic. (*Id.*)

_____

[5] Even as to the documents that Defendants have agreed to produce in response to RFP No. 1, Smartmatic does not accept Defendants' proposal to produce documents only from January 1, 2020 to the present. Smartmatic intends to further meet-and-confer with Defendants about that issue.

## B. Documents Related To Dominion Are Relevant And Discoverable.

In Defendants' disinformation campaign, they claimed (and continue to claim) that Smartmatic and its competitor, Dominion, are interchangeable and conspired with other nefarious actors, including foreign governments, to rig the 2020 U.S. election. (ECF No. 1, Compl. ¶¶ 142–48.) In fact, Dominion sued Defendants for defamation based on many of the same false statements at issue in this lawsuit. *See US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 63 (D.D.C. 2021). To establish that Defendants knew their statements about Smartmatic and Dominion were false, Smartmatic requested that Defendants produce all documents related to "SMARTMATIC, DOMINION, and/or the security of voting in the 2020 PRESIDENTIAL ELECTION." (Bloom Decl. ¶ 3, Ex. 1, at 10.)

In response to RFP No. 1, Defendants refuse to product documents that relate to Dominion but which do not also reference Smartmatic or voting machines generally. (*Id.* ¶ 16, Ex. 14, at 4.) Documents that relate exclusively to Dominion, however, are clearly relevant because Lindell's knowledge related to Dominion is at issue in this case. Indeed, Smartmatic has alleged that Defendants asserted *sixteen* false statements in which they represented that a corrupt relationship existed between Smartmatic and Dominion, including statements that Dominion is "the same" as Smartmatic, the companies use the same hardware, and Dominion's software is "related directly back to" Smartmatic's "software core." (ECF No. 1, Compl. ¶ 143.) Any truthful information that Lindell received about Dominion would have put him on notice of the falsity of his statements, even if the information did not also mention Smartmatic. *See Nunes v. Lizza*, 12 F.4th 890,

899 (8th Cir. 2021) (actual malice established where defendant "made the false publication with a high degree of awareness of . . . probable falsity . . .").

For example, if Lindell received information regarding the software in Dominion's voting technology systems, he would have known that Dominion did not, as he falsely claimed, use Smartmatic's software. (ECF No. 1, Compl. ¶ 143(d).) Similarly, if Lindell received documents that discussed Dominion's origin and/or its role in the 2020 U.S. election but which did not also mention Smartmatic, he would have known by inference that Smartmatic was not, as he claimed, "cousins" with Dominion or the "mothership" of a conspiracy with Dominion to undermine the election. (*Id.* ¶ 143(a), 143(b).) The Court has already recognized that these types of documents are probative of Defendants' actual malice. (*See* ECF No. 52 at 10–11 (Smartmatic sufficiently alleged actual malice based, in part, on its allegations that Defendants knew their statements were false through information they obtained in Dominion's retraction demand letters).) Accordingly, Smartmatic is entitled to inspect Defendants' documents related to Dominion.

Defendants' attempts to evade this discovery are meritless. *First*, they claim that discovery related to Dominion is irrelevant because Dominion is a different company that has asserted different claims against them. (Bloom Decl. ¶ 13, Ex. 11, at 3.) As discussed above, though, whether or not Smartmatic and Dominion are different companies litigating different lawsuits, documents related to Dominion are relevant to this case because they are probative of Lindell's knowledge of the falsity of his statements that Smartmatic and Dominion conspired to rig the election and that they are "cousins" who are "interchangeable."

*Second*, Defendants claim that Smartmatic "cannot have it both ways" by claiming, on the one hand, that it has no connection to Dominion, but on the other hand, seeking documents related to Dominion. (*Id.* ¶ 25, Ex. 23, at 3.) Defendants' argument is predicated on a misunderstanding of defamation law and Smartmatic's burden at trial. Smartmatic is not attempting to "have it both ways." Rather, it alleged that Defendants falsely stated that it had a corrupt relationship with Dominion and now it seeks documents that will show that Lindell knew his statements were false when he published them. (*See* ECF No. 52, Order Denying Defendants' Motions to Dismiss, at 6 (ruling that Smartmatic is a public figure and must establish "actual malice" to prevail at trial).)

## III. Defendants Have Failed To Properly Respond to Smartmatic's Interrogatories.

Finally, the Court should order Defendants to provide complete responses to Smartmatic's interrogatories related to: (i) Lindell's roles and responsibilities at MyPillow; (ii) MyPillow's advertising related to programs in which Defendants defamed Smartmatic; (iii) Defendants' defamatory broadcasts; and (iv) Defendants' oral communications with President Trump, his administration, and his campaign.

### A. Lindell's Roles and Responsibilities At MyPillow Are Relevant And Discoverable (Interrogatory No. 22).

In support of its claim that MyPillow is vicariously liable for Lindell's defamatory statements, Smartmatic served the following interrogatory on MyPillow:

- Interrogatory No. 22: Identify LINDELL'S positions or roles at MY PILLOW from January 1, 2018 to the present. For each position or role, state LINDELL'S corresponding responsibilities. (*Id.* ¶ 6, Ex. 4, at 10.)

MyPillow, however, refuses to identify Lindell's responsibilities at MyPillow.

Accordingly, the Court should compel it to provide a complete response.

**1.     MyPillow Refuses To Properly Respond To Interrogatory No. 22.**

MyPillow answered Interrogatory No. 22 with the response: "At all relevant times, Mr. Lindell was My Pillow's chief executive officer and chairman of the board of directors." (*Id.* ¶ 11, Ex. 9, at 4.)  In response, Smartmatic explained that MyPillow's answer was deficient because it did not identify Lindell's responsibilities related to his positions at MyPillow, which are clearly relevant to Smartmatic's vicarious liability claim. (*Id.* ¶ 12, Ex. 10, at 9.)  At a meet-and-confer, MyPillow stated that it would supplement its response. (*Id.* ¶ 15, Ex. 13, at 3.)  But Interrogatory No. 22 was not among the Interrogatories for which MyPillow served supplemental answers. (*Id.* ¶ 23, Ex. 21.) Based on MyPillow's refusal to supplemental its answer to Interrogatory No. 22, on January 19, 2023, Smartmatic informed MyPillow that it understood that the parties were at an impasse on that request. (*Id.* ¶ 20, Ex. 18.)  Defendants responded on the same date that they would attempt to "narrow the scope" of the impasses that Smartmatic identified in its correspondence, but Smartmatic did not receive any further correspondence from Defendants related to this topic. (*Id.*)

**2.     The Court Should Compel MyPillow To Respond To Interrogatory No. 22.**

Interrogatory No. 22 asks MyPillow to identify Lindell's positions or roles at MyPillow, *including the responsibilities associated with each role*. (*Id.* ¶ 6, Ex. 4, at 10.) Lindell's responsibilities at MyPillow are probative of whether he acted in the course and scope of his employment when he defamed Smartmatic. *See Schneider v. Buckman*, 433

N.W.2d 98, 101 (Minn. 1988) (under the "well-established principle" of respondeat superior, "an employer is vicariously liable for the torts of an employee committed within the course and scope of employment."). (*See also* ECF No. 52, Order Denying Defendants' Motions to Dismiss, at 14 ("Lindell, the CEO of MyPillow, intentionally promoted MyPillow while allegedly defaming Smartmatic in media and other public appearances.").)

In response to Interrogatory No. 22, MyPillow stated only that "Mr. Lindell was My Pillow's chief executive officer and chairman of the board of directors," and it refused to identify his corresponding responsibilities. (Bloom Decl. ¶ 11, Ex. 9, at 4.) During meet-and-confers, MyPillow indicated that it would supplement its response to Interrogatory No. 22 to include Lindell's responsibilities. (*See id.* ¶ 15, Ex. 13, at 3.) It even stated that "Mr. Lindell is prepared to describe the duties he engages in as a part of his course and scope of employment at My Pillow, Inc." (*Id.* ¶ 13, Ex. 11, at 5.) But MyPillow has inexplicably refused to provide this basic information. (*See id* ¶ 23, Ex. 21, at 4.) The Court should compel it to provide a complete answer to Interrogatory No. 22.

### B. Information Related To MyPillow's Advertising During The Disinformation Campaign Is Relevant And Discoverable (Interrogatory Nos. 18(a) and 19).

Smartmatic served the following interrogatories that relate to MyPillow's efforts to capitalize on Defendants' defamatory broadcasts by simultaneously marketing MyPillow products:

- Interrogatory No. 18(a)[6]: Identify all MY PILLOW EMPLOYEES or third parties involved in the creation, development, or use of the MY PILLOW

---

[6] Smartmatic inadvertently included an "Interrogatory No. 18" in its First and Second Sets of Interrogatories. Accordingly, Smartmatic refers to Interrogatory No. 18 in its Second

promotional codes "FightforTrump," "Proof," "Eric," "ML66," "ML33," and any other MY PILLOW promotional codes used in the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, DEFAMATORY STATEMENTS and/or LINDELL APPEARANCES. (*Id.* ¶ 6, Ex. 4, at 9.)

- Interrogatory No. 19: Identify (1) all MY PILLOW advertisements, product deals, or promotional codes used by MY PILLOW related to the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, LINDELL APPEARANCES, 2020 PRESIDENTIAL ELECTION, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN and (2) the revenue MY PILLOW earned from purchases that arose from each advertisement, product deal, or promotional code. (*Id.*, at 10.)

MyPillow, however, refuses to identify relevant employees in response to Interrogatory No. 18(a) and it refuses to respond to Interrogatory No. 19 altogether. Accordingly, the Court should compel MyPillow to provide complete responses.

### 1. MyPillow Refuses To Properly Respond To Interrogatory Nos. 18(a) and 19.

In response to Interrogatory No. 18(a), MyPillow answered, in pertinent part: "Mr. Lindell was responsible for approving the promotional codes" and "[a] My Pillow employee was responsible for inputting the promotional codes into the My Pillow system." (*Id.* ¶ 11, Ex. 9, at 3.) MyPillow provided no answer in response to Interrogatory No. 19. (*Id.*)

On December 14, 2022, Smartmatic informed MyPillow that its answers were deficient because, among other reasons, it failed to identify a single MyPillow employee involved in the creation of the relevant promotional codes other than Lindell. (*Id.* ¶ 12, Ex. 10, at 8.) MyPillow represented in a meet-and-confer that it would supplement its answers.

---

Set of Interrogatories as "Interrogatory No. 18(a)" to distinguish that request from Interrogatory No. 18 in its First Set of Interrogatories.

(*See id.* ¶ 18, Ex. 16, at 3.) But Interrogatory Nos. 18(a) and 19 were not among the Interrogatories for which MyPillow served supplemental answers. (*Id.* ¶ 23, Ex. 21.) Based on MyPillow's refusal to supplemental its answers to Interrogatory Nos. 18(a) and 19, on January 19, 2023, Smartmatic informed MyPillow that it understood that the parties were at an impasse on these requests. (*Id.* ¶ 20, Ex. 18.) Defendants responded on the same date that they would attempt to "narrow the scope" of the impasses that Smartmatic identified in its correspondence, but Smartmatic did not receive any further correspondence from Defendants related to this topic. (*Id.*)

### 2. The Court Should Compel MyPillow To Respond To Interrogatory Nos. 18(a) and 19.

Smartmatic alleged that MyPillow is vicariously liable for Lindell's disinformation campaign because, among other reasons, it allowed him to use promotional codes and other advertising to sell MyPillow products while he was defaming Smartmatic. (*See, e.g.* ECF No. 1, Compl. Ex. 11, 33:22–24; *Id.*, Ex. 20 at 3:4–7.) The Court subsequently denied MyPillow's motion to dismiss based, in part, on those allegations. (*See* ECF No. 52, Order Denying Defendants' Motions to Dismiss, at 14–15 ("MyPillow provided Lindell with promotional codes to relay to audiences during his appearances. The Court, therefore, concludes that Smartmatic's allegations state a plausible claim that MyPillow may be vicariously liable for Lindell's actions.").)

Smartmatic now seeks information concerning MyPillow's advertising related to Lindell's disinformation campaign, but MyPillow has refused to comply. With Interrogatory No. 18(a), Smartmatic asked MyPillow to identify "all MY PILLOW

EMPLOYEES or third parties involved in the creation, development, or use of the MY PILLOW promotional codes "FightforTrump," "Proof," "Eric," "ML66," "ML33," and any other MY PILLOW promotional codes used in the ACCUSED PROGRAMS . . . ." (Bloom Decl. ¶ 6, Ex. 4, at 9.) Although Smartmatic asked MyPillow to identify "all" MyPillow employees who were involved with the promotional codes, MyPillow answered only:

> . . . Mr. Lindell was responsible for approving the promotional codes which were developed in conjunction with influencers and hosts, where applicable. A My Pillow employee was responsible for inputting the promotional codes into the My Pillow systems so purchasers could apply the codes and receive discounts on products.

(*Id.* ¶ 11, Ex. 9, at 3.) The identities of the MyPillow employees involved with the promotional codes are relevant and discoverable because Smartmatic is permitted to gather evidence to support its vicarious liability claim, including evidence that MyPillow was aware of Lindell's disinformation campaign, participated in his disinformation campaign, and did nothing to distance itself from the disinformation campaign. (*See* ECF No. 52, Order Denying Defendants' Motions to Dismiss, at 14–15 ("MyPillow provided Lindell with promotional codes to relay to audiences during his appearances. The Court, therefore, concludes that Smartmatic's allegations state a plausible claim that MyPillow may be vicariously liable for Lindell's actions.").) Accordingly, the Court should compel MyPillow to provide a complete answer to Interrogatory No. 18(a).

The Court should compel MyPillow to respond to Interrogatory No. 19 for similar reasons. Interrogatory No. 19 asks MyPillow to identify "(1) all advertisements, product deals, or promotional codes used by MY PILLOW related to the ACCUSED PROGRAMS

. . . 2020 PRESIDENTIAL ELECTION, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN and (2) the revenue MY PILLOW earned from purchases that arose from each advertisement, product deal, or promotional code." (*Id.* ¶ 6, Ex. 4, at 10.) This evidence will show the extent to which Defendants benefitted from Lindell's disinformation campaign, including revenue they generated by tying their product promotions to their defamation of Smartmatic. This is probative of their ill will and motive to defame Smartmatic, *i.e.,* their actual malice. (*See* ECF No. 52, Order Denying Defendants' Motions to Dismiss, at 11 (Smartmatic adequately alleged actual malice because it alleged, among other facts, "Lindell made and promoted his defamatory statements for his own profit.").) *See also Stokes v. CBS, Inc.*, 25 F. Supp. 2d 992, 1003 (D. Minn. 1998) ("[A] showing of ill will is nevertheless relevant and admissible as evidence in the determination of whether defendant possessed a state of mind highly conducive to reckless disregard of falsity.") Accordingly, the Court should compel MyPillow to respond to Interrogatory No. 19.

### C. Defendants Should Be Required To Disclose Information Regarding Their Defamatory Publications (Interrogatory Nos. 1 and 15).

Smartmatic served the following interrogatories that relate to Defendants' defamatory publications and the amount of people who viewed them:

- Interrogatory No. 1: Identify every statement about SMARTMATIC that you have published and state the date of the statement and where it was published, including all republications. (*Id.* ¶ 5, Ex. 3, at 10.)

- Interrogatory No. 15: Identify all metrics You use to quantify the number of individuals who viewed an ACCUSED PROGRAM or DEFAMATORY

BROADCAST and provide the corresponding data for each ACCUSED PROGRAM or DEFAMATORY BROADCAST. (*Id.* ¶ 5, Ex. 3, at 13.)

Defendants refuse to identify any of their publications regarding Smartmatic in response to Interrogatory No. 1 and they refuse to identify the data they have used to track the viewership of their defamatory programs. Accordingly, the Court should compel them to provide complete responses.

### 1. Defendants Refuse To Properly Respond To Interrogatory Nos. 1 and 15.

Defendants objected to Interrogatory No. 1 and refused to answer it except to the extent that they directed Smartmatic to documents produced in this litigation and attached to Smartmatic's complaint. (*Id.* ¶ 9–10, Exs. 7–8, at 3.) After a meet-and-confer, Defendants supplemented their response to Interrogatory No. 1, but they merely doubled down on their initial refusal to provide a substantive answer, stating "[t]he programs identified by Smartmatic are as readily available to Smartmatic as they are to [Defendants]." (*Id.* ¶¶ 21–22, Exs. 19–20, Lindell's and MyPillow's Supplemental Answers and Objections to Plaintiffs' First Set of Interrogatories, at 3.)

On January 13, 2023, Smartmatic informed Defendants that, based on their refusal to change their position, it understood that the parties were at an impasse on this request. (*Id.* ¶ 19, Ex. 17, at 1–2.) On January 19, 2023, Smartmatic sent additional correspondence to Defendants informing them that it understood the parties to be at an impasse on this issue. (*Id.* ¶ 20, Ex. 18.) Defendants responded on the same date that they would attempt to "narrow the scope" of the impasses that Smartmatic identified in its correspondence, but Smartmatic did not receive any further correspondence from Defendants related to this

topic.  (*Id.*)

In their answer to Interrogatory No. 15, Defendants stated that they "did not utilize metrics to quantify the number of individuals who viewed the media referenced." (*Id.* ¶ 9–10, Exs. 7–8, at 7–8.)  In response, Smartmatic cited documents in which Defendants referenced metrics related to the viewership of the programs, including metrics showing that 97 million people had watched *Absolute Proof*. (*Id.* ¶ 12, Ex. 10, at 7; ¶ 19, Ex. 17, at 3–4.)  After a meet-and-confer, Defendants did not disclose additional information related to the viewership numbers that Smartmatic cited.  Instead, they argued that a portion of the data that Smartmatic cited was "inaccurate and incomplete and not 'used' by Defendant." (*Id.* ¶ 21, Ex. 19, at 9.)  On January 13, 2023, Smartmatic informed Defendants that their answer was evasive because, as Smartmatic had previously pointed out, it ignored that Lindell had stated that *Absolute Proof* had been seen by 100 million people worldwide. (*Id.* ¶ 19, Ex. 17, at 3–4.)

Based on Defendants' supplemental response, Smartmatic determined that additional meet-and-confers would be futile, and on January 19, 2023, it informed Defendants that it understood that the parties were at an impasse on this issue.  (*Id.* ¶ 20, Ex. 18.)  Defendants responded on the same date that they would attempt to "narrow the scope" of the impasses that Smartmatic identified in its correspondence, but Smartmatic did not receive any further correspondence from Defendants related to this topic.  (*Id.*)

### 2. The Court Should Compel Defendants To Respond To Interrogatory Nos. 1 and 15.

Smartmatic is entitled to complete responses to Interrogatory Nos. 1 and 15. *First*, Interrogatory No. 1 asks Defendants to "[i]dentify every statement about SMARTMATIC that you have published and state the date of the statement and where it was published, including all republications." (Bloom Decl. ¶ 5, Ex. 3, at 10.) Smartmatic clarified in the meet-and-confer process that it was only asking Defendants to identify publications of the ACCUSED PROGRAMS that occurred at their direction. (*Id.* ¶ 12, Ex. 10, at 3; *id.* ¶ 14, Ex. 12, at 2.) Smartmatic is not asking Defendants to identify, for example, every instance in which an internet user unaffiliated with Defendants retweeted a video clip of Lindell defaming Smartmatic. (*See id.*)

The requested information is relevant because it will show the pervasiveness of Defendants' disinformation campaign, which is relevant to Smartmatic's damages. *See Owens v. CBS, Inc.*, 173 Ill. App. 3d 977, 997 (5th Dist. 1988) (sustaining defamation damages award because CBS defamed plaintiff in "two separate broadcasts which were viewed by a total viewership estimated to be in excess of 800,000 people"); *see also GAF Materials LLC v. Lipinskiy*, No. 20-CV-2194 (PJS/TNL), 2020 WL 6867412, at *6 (D. Minn. Nov. 23, 2020) (plaintiff clearly suffered harm because defamatory publications "reach[ed] tens of thousands of viewers"). Smartmatic cannot ascertain the full reach of Defendants' disinformation campaign if it does not know all the mediums they used to publish their lies and the audiences that received their messages. Accordingly, Defendants' refusal to comply with Interrogatory No. 1 is improper.

For their part, Defendants argue that they do not need to answer Interrogatory No. 1 because their defamatory statements "are as readily available to [Smartmatic] as they are to [Defendants]," and "[t]he statements referring specifically to Smartmatic can be derived by viewing or listening to the alleged programs." (Bloom Decl. ¶¶ 21–22, Exs. 19–20, at 3.) Defendants' argument is misplaced for multiple reasons. *First,* their objection is improper because "[t]he rules of discovery do not permit a party to withhold materials simply because the opponent could discover it on his or her own." *Firstcom, Inc. v. Qwest Corp.*, No. 04-0995(ADM/JJG), 2006 WL 8443647, at *4 (D. Minn. Feb. 16, 2006). *Second*, even if that were a valid argument, it would not apply here because Defendants are clearly in a better position than Smartmatic to identify the instances in which they published content about Smartmatic. For example, Smartmatic has alleged that Defendants worked with One America News Network ("OANN") to broadcast their defamatory documentaries on OANN. (ECF No. 1, Compl. ¶¶ 85, 94, 105.) Defendants can identify the dates and times of those broadcasts, as well as all other instances in which they caused their defamatory content about Smartmatic to be published, whether on OANN or through a different medium. Smartmatic needs this information and only Defendants can provide it. Thus, the Court should order Defendants to comply with Interrogatory No. 1.

*Second*, with Interrogatory No. 15, Smartmatic asks Defendants to identify all metrics they use to quantify the number of individuals who viewed any of the ACCUSED PROGRAMS or any DEFAMATORY BROADCAST, and it asks them to provide the corresponding data. (*Id.* ¶ 5, Ex. 3, at 13.) As discussed above, evidence related to the viewership and reach of Defendants' defamatory programming is relevant to the harm

Smartmatic has suffered.  *See Owens*, 173 Ill. App. 3d at 997.

Defendants did not object to this request.  (*Id.* ¶¶ 9–10, Exs. 7–8, at 7–8.)  Instead, they stated that they "did not utilize metrics to quantify the number of individuals who viewed the media referenced."  (*Id.* ¶ 9, Ex. 7, at 7–8.)  But Lindell's public statements contradict Defendants' answers.  Indeed, on February 19, 2021, Lindell stated on Rudy Giuliani's podcast that "100 million people worldwide" had watched *Absolute Proof*, with an "average view time" of 1 hour and 53 minutes.[7]  He even referenced a specific "site that we track" for data related to the viewership.[8]  As such, Defendants cannot credibly claim that they have never used any metrics to measure the viewership of their defamatory programs, and the Court should compel them to provide complete answers to Interrogatory No. 15.

> **D.      Defendants Must Identify Their Oral Communications With President Trump, The Trump Administration, And The Trump Campaign (Interrogatory No. 9).**

As discussed above, Smartmatic alleges that Defendants defamed (and continue to defame) Smartmatic, in substantial part, because they want to curry favor with President Trump and sell pillows to his followers.  As such, Smartmatic served the following interrogatory on Defendants related to their communications with President Trump, his administration, and his campaign:

---

[7] CANCEL CULTURE: Return Of The Salem Witch Trials? at 27:13-41, Rudy Giuliani's Common Sense (Feb. 19, 2021), available at https://chartable.com/podcasts/rudy-giulianis-common-sense/episodes/78055994-cancel-culture-return-of-the-salem-witch-trials-rudy-giuliani-and-mike-lindell-ep-113

[8] *Id.*

- Interrogatory No. 9: Identify all communications or interactions You had with DONALD TRUMP, the TRUMP ADMINISTRATION, the TRUMP CAMPAIGN, or the RNC, between January 1, 2020 and the filing of the COMPLAINT, and for each communication or interaction, identify the substance of the communication or interaction, who the communication was with, and the date, time, and location of each communication or interaction. (*Id.* ¶ 5, Ex. 3, at 12.)

In response, Defendants referred Smartmatic to their document production, but they refuse to identify any responsive oral communications. Accordingly, the Court should compel them to provide complete responses that reflect their oral communications with President Trump, his administration, and his campaign.

### 1. Defendants Refuse To Properly Respond To Interrogatory No. 9.

Defendants responded, in pertinent part: "Defendant directs Plaintiffs to the documents produced in response to Plaintiffs' Requests for Production of Documents for additional information." (*Id.* ¶ 9–10, Exs. 7–8, at 6.) Smartmatic explained to Defendants that their reliance on their document productions is not sufficient because documents may not reflect responsive oral communications, including communications exchanged between Lindell and President Trump during Lindell's visit to the White House on January 15, 2021. (*Id.* ¶ 12, Ex. 10, at 5–6.) After a meet-and-confer, Defendants supplemented their responses, but they doubled down on their reliance on their document productions, stating: "Without waiver of a previously stated objection, Defendant states that it will provide a supplemental response identifying documents produced when its review of potentially responsive documents is complete." (*Id.* ¶¶ 21–22, Exs. 19–20, at 7.) On January 13, 2023, Smartmatic informed Defendants that their answer remained deficient

because it did not address Smartmatic's concerns related to oral communications. (*Id.* ¶ 19, Ex. 17, at 3.) Smartmatic also stated that, based on Defendants' failure to address Smartmatic's concerns, it understood that the parties were at an impasse on this issue. (*Id.*)

On January 19, 2023, Smartmatic sent additional correspondence to Defendants informing them that it understood the parties to be at an impasse on this issue. (*Id.* ¶ 20, Ex. 18.) Defendants responded on the same date that they would attempt to "narrow the scope" of the impasses that Smartmatic identified in its correspondence, but Smartmatic did not receive any further correspondence from Defendants related to this topic. (*Id.*)

### 2. The Court Should Compel Defendants To Respond To Interrogatory No. 9.

Smartmatic's request that Defendants identify their communications with President Trump, his administration, and his campaign, is clearly relevant because it relates to their motive to curry favor with Trump and sell pillows to his followers while defaming Smartmatic. *See Stokes*, 25 F. Supp. 2d at 1003. But Defendants inexplicably agree only to produce documents in response to Interrogatory No. 9, and they refuse to identify their oral communications.

Defendants' offer to produce documents is not sufficient because documents will not reflect responsive oral communications between them and President Trump, his administration, or his campaign. Parties are only permitted to produce documents in response to an interrogatory when "the answer . . . may be determined by examining . . . a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed.

R. Civ. P. 33(d).  A party cannot rely upon Rule 33(d) when oral communications are responsive to the request and not memorialized in the documents.  *Marco Techs. v. Midkiff*, No. 19-cv-2323 (PJS/LIB), 2020 WL 12442103, at *16 (D. Minn. Oct. 8, 2020) ("To the extent that oral communications . . . took place that are not identified in the documents Heartland refers Plaintiff to in its Answers . . . Heartland must identify such communications, if any.").  Instead, the responding party "must provide a brief summary of the communications, including the individuals who participated in the communication, when the communication took place, and the topics discussed."  *Id.* at *16 n.12.

That is the case here.  Defendants' document production is unlikely to contain a memorialization of every discussion, whether in-person or on the phone, between Defendants and President Trump, his administration, and his campaign.  For example, it was widely reported that Lindell visited the White House on January 15, 2021, following the January 6, 2021 insurrection at the Capitol, to recommend that President Trump implement "martial law."[9]  Smartmatic is entitled to know the nature of all of Lindell's and Defendants' communications with President Trump and his staff during that visit, including the individuals involved in the communications and the topics discussed.  *Marco Techs.*, 2020 WL 12442103, at *16.  The same holds true for all other oral communications between Lindell or MyPillow and President Trump, his administration, and his campaign.  *See id.*  Accordingly, the Court should compel Defendants to identify their oral

---

[9] (*See, e.g.*, Philip Bump, A pillow salesman apparently has some ideas about declaring martial law, Washington Post (Jan. 15, 2021), *available at* https://www.washingtonpost.com/politics/2021/01/15/pillow-salesman-apparently-has-some-ideas-about-declaring-martial-law/) (last visited January 31, 2023.)

communications with President Trump, his administration, and his campaign, in response to Interrogatory No. 9.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion. Defendants should be compelled to (i) identify the categories of documents, if any, that they deem objectionable and will not produce in response to RFP Nos. 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, 28, and 29; (ii) produce all non-privileged documents in their possession, custody, or control that are responsive to RFP No. 1; and (iii) fully and completely answer Interrogatory Nos. 1, 9, 15, 18(a), 19, and 22.

Dated: February 1, 2023

Respectfully submitted,

/s/ *Michael E. Bloom*

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske
   Minnesota Bar No. 0392348
   WManske@robinskaplan.com
Emily J. Tremblay
   Minnesota Bar No. 0395003
   ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
   EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Michael E. Bloom (admitted *pro hac vice*)

MBloom@beneschlaw.com
Illinois ARDC No. 6302422
Julie M. Loftus (admitted *pro hac vice*)
JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for the Plaintiffs*