

Michael E. Bloom
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial: 312.212.4946
Fax: 312.767.9192
mbloom@beneschlaw.com

December 14, 2022

Matthew Eslick
888 Colwell Building
123 North Third Street, Suite 888
Minneapolis, MN 55401
Email: eslick@parkerdk.com

   Re:  *Smartmatic USA Corp., et al. v. Lindell, et al.*; Case No. 22-cv-00098

Dear Mr. Eslick:

  We write in response to Defendants' Responses to Plaintiffs' First Set of Requests for Production of Documents, Defendant My Pillow, Inc.'s ("MyPillow") Responses to Plaintiffs' Second Set of Requests for Production of Documents (collectively, the "RFP Responses"), Defendant My Pillow, Inc's Answers and Objections to Plaintiffs' First Set of Interrogatories, Defendant Michael J. Lindell's Answers to Plaintiffs' First Set of Interrogatories, and Defendant My Pillow, Inc.'s Answers and Objections to Plaintiffs' Second Set of Interrogatories (collectively, the "Interrogatory Responses" and, together with the RFP Responses, the "Discovery Responses"). We also write to address deficiencies in Defendants' December 5, 2022 production of documents (the "Document Production"). Having reviewed and considered the Discovery Responses and Document Production, we write in the interest of resolving the deficiencies contained therein without the need for motion practice.

  **I. Deficiencies Common to All Discovery Responses.**

  As an initial matter, Defendants' objections to Smartmatic's Discovery Requests are misplaced for a number of reasons, including the following.

  ***Clarification of objections.*** In response to many Discovery Requests, Defendants have provided objections and then stated that they would produce documents "subject to" those objections. This includes Defendants' responses to RFP Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 17, 18, 21, 25, 27, and 29 and Interrogatory Nos. 1, 2, 3, 4, 5, 7, 8, 9, 12, 14, 18, 18(a)[1], and 20. For those Discovery Responses, Smartmatic seeks clarification as to whether Defendant is standing on any of those objections and will not be producing documents that may be excluded by those objections. Smartmatic also seeks clarification as to the meaning of Defendants' uniform response, "Discovery continues."

---

[1] Smartmatic refers to Interrogatory No. 18 in its Second Set of Interrogatories as "Interrogatory No. 18(a)" to distinguish that request from Interrogatory No. 18 in its First Set of Interrogatories.

*Identification of individuals with discoverable information.* In their Discovery Responses and Rule 26 disclosures, Defendants have represented that Mr. Lindell is the only MyPillow employee with discoverable information in this case. This position is factually unsupported and legally indefensible.

*First,* the Federal Rules of Civil Procedure require the disclosure of "*the name . . .* of each individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). Thus far in their Initial Disclosures and Supplemental Initial Disclosures, Defendants have only identified one individual by name—a direct violation of the letter of the Rule. Defendants do not (and cannot) argue that Mr. Lindell is the only person likely to have discoverable information. Indeed, in their Disclosures and in their Discovery Responses, Defendants refer to people employed by MyPillow: "[v]arious employees" (Defendants' Initial Disclosures, Defendants' Supplemental Disclosures), "[o]ther individuals" (Interrogatory Response Nos. 2, 3), and an anonymous "My Pillow employee" (Interrogatory Response No. 18). Defendants must identify these unnamed individuals, as well as the identities of any other MyPillow employees required to be disclosed under Rule 26 or who are responsive to Smartmatic's Discovery Requests, and supplement their Initial Disclosures and Discovery Responses accordingly.

*Second*, Defendants further attempt to avoid discovery obligations by taking the position that Mr. Lindell's role in the defamation campaign was "in his personal capacity and not as a My Pillow, Inc., employee." (Interrogatory Response Nos. 2, 3.) The Court has already ruled that Smartmatic's vicarious liability claims against MyPillow may proceed to discovery. *See* ECF No. 52 at 15 ("The Court, therefore, concludes that Smartmatic's allegations state a plausible claim that MyPillow may be vicariously liable for Lindell's actions.") Defendants cannot ignore the Court's ruling and refuse to participate in discovery of information regarding the involvement of MyPillow personnel other than Lindell. For example, Smartmatic is entitled to discover exactly how "MyPillow associated itself with Lindell's bus tour by having its logo emblazoned on Lindell's bus, and MyPillow provided Lindell with promotional codes to relay to audiences during his appearance." (ECF No. 52 at 14–15.) Smartmatic is similarly permitted to take discovery on MyPillow's involvement in any other publication or matter described in Smartmatic's Complaint.

*Third*, as you are aware, Mr. Lindell sued Smartmatic as a third-party defendant in the lawsuit *US Dominion, Inc., et al. v. My Pillow, Inc. et al.*, Case No. 21-cv-445-CJN (D.D.C.). In that litigation, Lindell produced documents to all defendants, including Smartmatic (the "Dominion Production"). The Dominion Production contains many examples of MyPillow employees working with Mr. Lindell in connection with his defamatory statements, which undermines any claim that he is the only MyPillow employee with discoverable information and that he acted exclusively in his "personal capacity." For example:

- ML-001483–91 is an email chain between Kate Dalley, a radio host, and Katelyn Gamlin, a MyPillow employee. In this document, Gamlin handles scheduling Lindell's media appearances from the mediainquiry@mypillow.com email account. Gamlin coordinates defamatory appearances, telling the recipient, "we just switched to only accepting interviews if Mike is allowed to discuss Dominion and Smartmatic machines."

Matthew Eslick
December 14, 2022
Page 3

- ML-001961–65 is an email exchange between Dawn Curtis, MyPillow's Marketing Director, and Mark Blatterfein, a contact asking for approval of a promotional code. Curtis works directly with Blatterfein, activating a promotional code at Blatterfein's request.

Other MyPillow employees, including but not limited to Bobbi Anderson, Bill Bienemann, Todd Carter, Christina Cole, Sarah Cronin, Jerry Johnson, Jessica Maskovich, Mark Schabert, and Shannon Smith, appear in the Dominion Production in connection to Defendants' disinformation campaign. Thus, Defendants cannot credibly argue, as they did in their Supplemental Initial Disclosures, that Mr. Lindell is "[t]he only employee of My Pillow, Inc., believed to have discoverable information."

*Finally*, Smartmatic adduced further evidence of MyPillow's involvement in Mr. Lindell's disinformation campaign through its November 19, 2022 inspection of a MyPillow warehouse. Smartmatic observed and documented several pallets of *Absolute Proof* DVDs at MyPillow's warehouse. Moreover, the pallets each bore a label reading "Ship To: MyPillow.com, 2101 4th Ave, East Ste 100, Shakopee, MN 55379, Tel: 612-419-6396, ATTN: Todd Taylor." Mr. Taylor is yet another MyPillow employee implicated in Defendants' defamation campaign. His exclusion from Defendants' Disclosures and Discovery Responses is an additional deficiency.

Smartmatic is willing to meet and confer with respect to Defendants' position on individuals likely to have discoverable information. If the parties cannot come to an agreement with respect to this issue, Smartmatic will seek relief from the Court.

## II. Defendants' Interrogatory Responses.

As set forth below, Defendants' responses and objections to Smartmatic's Interrogatories are deficient for many reasons.

### Interrogatory No. 1

This Interrogatory seeks the identification of every statement Defendants have published about SMARTMATIC, including the date of the statement and the place it was published, including all republications. Defendants objected to the relevance and breadth of the Interrogatory before generically referring to their Document Production.

Smartmatic does not agree that Defendants' objections have any merit. In the spirit of compromise, however, Smartmatic will agree to narrow the scope of Interrogatory No. 1 to instances in which Defendants published the ACCUSED PROGRAMS.

Defendants' other responses lack merit and are deficient. First, Defendants' reference to their production is improper under Federal Rule 33(d). *Speed RMG Partners, LLC v. Arctic Cat Sales, Inc.*, 2021 WL 5087362, at *6 (D. Minn. Jan. 5, 2021) ("Parties may not simply refer generically to past or future production of documents. They must identify in their answer to the interrogatories specifically which documents contain the answer.  Otherwise they must completely answer the interrogatories without referring to the documents."). Defendants must either revise

their responses to include actual answers or identify the documents in their Production responsive to Interrogatory No. 1 with specificity.

### Interrogatory Nos. 2 and 3

These interrogatories seek the identification of all Persons who drafted, edited, reviewed, developed, investigated, approved, produced, direction, made any decision regarding, appeared on, or otherwise contributed to, any aspect of the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, LINDELL APPEARANCES, the "March for Trump" tour, or any segment, interview, statement, post, or article published on any LINDELL WEBSITE, MYPILLOW.COM account, or personal/professional social media account regarding SMARTMATIC, DOMINION, or the election technology used during the 2020 PRESIDENTIAL ELECTION. The Interrogatories requested that all individuals be identified by name, title, contact information, and nature of involvement. Defendants objected to the Interrogatories as irrelevant and overbroad. They also responded that Mr. Lindell was the only person involved in any of the statements mentioned in the Interrogatories.

Even a cursory look at just one of the ACCUSED PROGRAMS, *Absolute Proof*, shows that Defendants' answer is deficient. Indeed, among many other individuals involved in *Absolute Proof*, Brannon Howse, Mary Fanning, Phil Waldron, and Matthew DePerno are all responsive to these Interrogatories based on their involvement. The identities of these individuals are relevant for at least two reasons. *First*, many of them are sources of information for the ACCUSED PROGRAMS or they otherwise conveyed information to Mr. Lindell concerning the subject matter of the ACCUSED PROGRAMS. Smartmatic is entitled to discover their identities and the information that they provided Lindell so it can show that he knew his statements were false and he had obvious reasons to doubt his sources, *i.e.,* he acted with actual malice. *Second*, Defendants' responses will be probative of MyPillow's vicarious liability to the extent that responsive individuals include MY PILLOW EMPLOYEES.

### Interrogatory Nos. 4, 5, and 7

These Interrogatories seek information related to the sources of information Defendants relied upon regarding the defamatory statements at issue and the actions they took to corroborate the information provided by their sources. Defendants state that Mr. Lindell utilized information from a variety of sources, but they fail to identify any of them, instead making a generic reference to their Document Production.

Defendants' answers to these Interrogatories are deficient. Smartmatic is clearly entitled to discover the sources and information that Defendants relied upon when they published their false and defamatory statements so it can establish that Defendants knew their statements were false, had obvious reasons to doubt their sources, and knew that the statements they were making were inherently improbable. Smartmatic will use all of that evidence to establish Defendants' actual malice. In their responses, Defendants tacitly admit that they possess the information requested by the Interrogatories, but they refuse to provide it in their answers and they refer (again) to their Document Production. As discussed above, Defendants' generic reference to their Production is

improper. *Speed RMG*, 2021 WL 5087362, at *6. Defendants must provide substantive and specific responses to Interrogatory Nos. 4, 5, and 7.

### Interrogatory Nos. 6, 8, and 13

These Interrogatories seek information regarding the compensation and financing related to the ACCUSED PROGRAMS and DEFAMATORY BROADCASTS, as well as their associated GUESTS. Defendants objected to Interrogatory Nos. 8 and 13 as irrelevant and further object to Interrogatory No. 13 to the extent it seeks privileged material or is protected by "another limitation on Defendant's discovery obligations." In response to Interrogatory No. 6, Mr. Lindell states that a fee was paid to Mary Fanning in connection with *Absolute Proof* and *Absolute Interference*.

Defendants' answers are deficient. Smartmatic is entitled to discover details regarding the financing of the ACCUSED PROGRAMS as well as any related compensation paid to GUESTS and other contributors. The financing of the ACCUSED PROGRAMS, whether it came from Lindell, MyPillow, or any other source is probative of Defendants' investigation related to their defamatory statements, the amount of money they spent in order to spread their disinformation about Smartmatic, all of which goes towards their actual malice.

To that end, Defendants' answer to Interrogatory No. 8 is deficient as it merely indicates a monetary contribution to the "March for Trump" tour and does not provide any information regarding the amount of financing and the identity of the financiers for the ACCUSED PROGRAMS or DEFAMATORY BROADCASTS. Defendants likewise provide a deficient answer to Interrogatory No. 13, as they provide no answer at all. To the extent Defendants argue "another limitation on Defendant's discovery obligations" are preventing disclosure of responsive information, Smartmatic requests that Defendants identify that limitation with specificity. Furthermore, the requested information—a total amount of money spent on the identified actions—cannot be covered by the attorney-client privilege, as it is not a communication, and it cannot be covered by the work-product doctrine, as it is not a document prepared by an attorney in anticipation of litigation.

Finally, with respect to Interrogatory No. 6, Mr. Lindell provided an incomplete answer, as it fails to identify the amount of the fee paid to Ms. Fanning, the date of the payment, and from whom the payment was issued to Ms. Fanning.

### Interrogatory Nos. 9 and 10

These Interrogatories seek the identification of communications and interactions between Defendants and DONALD TRUMP, the TRUMP ADMINISTRATION, the TRUMP CAMPAIGN, or the RNC, as well as any donations or contributions made by Defendants to those persons/entities or others. Both Interrogatories requested specifics as far as the date, time, location, and substance of any communication or interactions, and the date, cause, and amount of any donation or contribution. Defendants objected to the relevance of each request, refused to answer Interrogatory No. 10, and merely pointed to its Document Production as its answer to Interrogatory No. 9.

Matthew Eslick
December 14, 2022
Page 6

Defendants' responses to these Interrogatories are deficient. As an initial matter, it is literally impossible for Defendants' Document Production to answer the entirety of Interrogatory No. 9. The Interrogatory—which includes a request for interactions in addition to communications—would include in-person meetings and phone conversations, such as any interactions between Mr. Lindell and President Trump at the White House. (*See, e.g.,* Philip Bump, *A pillow salesman apparently has some ideas about declaring martial law*, Washington Post (Jan. 15, 2021), *available at* https://www.washingtonpost.com/politics/2021/01/15/pillow-salesman-apparently-has-some-ideas-about-declaring-martial-law/). Even if the documents produced by Defendants could fully answer Interrogatory No. 9—which they cannot—Defendants' mere reference to their production is an improper use of Federal Rule 33(d). *Speed RMG*, 2021 WL 5087362, at *6. Defendants must either revise their responses to include actual answers or identify the documents in its production responsive to Interrogatory No. 9 with specificity.

Furthermore, Defendants' relevance objections lack merit. Smartmatic has alleged that Defendants defamed Smartmatic because, among other reasons, they wanted to curry favor with Donald Trump and the Trump Administration. The Court has recognized that evidence related to their motive is probative of their actual malice. (ECF No. 52 at 11.) *See also Stokes v. CBS, Inc.*, 25 F. Supp. 2d 992, 1003 (D. Minn. 1998) ("[A] showing of ill will is nevertheless relevant and admissible as evidence in the determination of whether defendant possessed a state of mind highly conducive to reckless disregard of falsity.") (internal citations omitted). Thus, Defendants are required to provide complete responses to Interrogatories No. 9 and 10.

**Interrogatory No. 11**

This Interrogatory seeks the identification of all individuals involved in the preparation, planning, and/or execution of the "March for Trump" tour and tour bus reference in paragraph 76 of the COMPLAINT. Defendants objected on relevance grounds and otherwise refused to answer.

Defendants' relevance objections are meritless. Defendants have already admitted that MyPillow financed the "March for Trump" tour and tour bus. It is relevant to Smartmatic's claim for vicarious liability to know who was involved in any aspect of the tour, including any employees of MyPillow. This Interrogatory is also probative of any sources who provided information to Lindell related to defamatory statements he published during the tour, including the reliability of those sources and the information they provided him.

**Interrogatory No. 12**

This Interrogatory seeks the identification of all instances in which Defendants received, heard, or otherwise acquired information providing that SMARTMATIC contracted only with Los Angeles County in connection with the 2020 PRESIDENTIAL ELECTION. Defendants answered that they have no non-privileged information responsive to this Interrogatory.

Defendants' answers are deficient because, at minimum, Defendants received Smartmatic's complaint against Fox News Network, which included information stating that Smartmatic only contracted with Los Angeles County for the 2020 U.S. election. (*See* Compl. ¶¶

253–54.) This on its own contradicts Defendants' claim of a lack of responsive non-privileged information.

### Interrogatory No. 14

This Interrogatory seeks any facts or documents that Defendants believe support a contention that any of the DEFAMATORY STATEMENTS are true or otherwise not defamatory. Instead of answering, Defendants make a generic reference to their Document Production. Defendants' answers are deficient because mere reference to their production is an improper use of Federal Rule 33(d). *Speed RMG*, 2021 WL 5087362, at *6. Defendants must either revise their responses to include actual answers or identify the documents in its Production responsive to Interrogatory No. 14 with specificity.

### Interrogatory No. 15

This Interrogatory seeks all metrics Defendants used to quantify the number of individuals who viewed any of the ACCUSED PROGRAMS or any DEFAMATORY BROADCAST, and it seeks any corresponding data for each. Defendants do not object to the Interrogatory, but state that they did not utilize metrics to quantify the number of individuals who viewed the referenced media.

Defendants' response is patently false. For example, Mr. Lindell's production in *Dominion* revealed a text message providing, "Absolute Proof has now been seen by 97million [sic] people . . . ." (ML-000032, Mar. 13, 2021 text exchange between Mr. Lindell and Sebastian Gorka). Mr. Lindell and his associates have also made other claims regarding the number of people who have viewed the ACCUSED PROGRAMS and DEFAMATORY BROADCASTS. (ML-001771, Apr. 23, 2021 email from RJ Johnston to Mr. Lindell discussing "initial data usage stats for Absolute Interference" and observing that "[w]e have a good start with metrics.") Thus, Smartmatic requests that Defendants supplement their erroneous response.

### Interrogatory Nos. 16 and 24

These Interrogatories seek the identification of everyone who provided information to answer both sets of Smartmatic's Interrogatories. Defendants answered that Mr. Lindell, with assistance from counsel, completed the answers. Smartmatic would like to meet and confer regarding the efforts Defendants undertook to comply with their discovery obligations as to the Interrogatories, including, but not limited to, whether Defendants inquired with any MyPillow employees other than Mr. Lindell when they investigated their responses to Smartmatic's requests.

### Interrogatory No. 18

This Interrogatory seeks the identification of communications regarding LINDELL's promotion of MY PILLOW or its products in connection with the ACCUSED PROGRAMS, DEFMATORY BROADCASTS, DEFAMATORY STATEMENTS, the LINDELL APPEARANCES, or the "March for Trump" tour. Defendants state that promotional codes were used and then improperly referred to their Document Production. *See Speed RMG*, 2021 WL 5087362, at *6. In this instance, Defendants' generic reference to their Document Production is

Matthew Eslick
December 14, 2022
Page 8

particularly egregious because MyPillow claims in its response to Request for Production No. 28 that no responsive documents exist. In light of these contradictions, Smartmatic would like to meet and confer regarding Defendants' efforts to locate responsive documents.

**Interrogatory No. 18(a)**

This Interrogatory seeks the identification of all MY PILLOW EMPLOYEES or third parties involved in the creation, development, or use of various MY PILLOW promotional codes used in the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, DEFAMATORY STATEMENTS, and/or LINDELL APPEARANCES. MyPillow answered that Mr. Lindell was responsible for approving the codes in conjunction with other unnamed individuals. MyPillow further answered that an unidentified MyPillow employee was responsible for inputting the codes into the system.

MyPillow's response is deficient because it blatantly ignores the Interrogatory's request to "identify" the individuals. The answer admits that such individuals do in fact exist, yet it improperly fails to identify those individuals. Furthermore, MyPillow's answer merely identifies the individuals who approved and subsequently inputted the promotional codes without any mention of individuals involved with the creation of the codes, the naming of the codes, or any other aspect of the promotional codes. The Court has already indicated that this kind of information is relevant to Smartmatic's claim for vicarious liability. *See* ECF No. 52 at 14–15 ("MyPillow provided Lindell with promotional codes to relay to audiences during his appearances. The Court, therefore, concludes that Smartmatic's allegations state a plausible claim that MyPillow may be vicariously liable for Lindell's actions."). For example, Lindell's March 30, 2021 defamatory appearance on the *Eric Metaxas Radio Show* included an image of Lindell hugging a pillow printed with the text "use code: ERIC" behind the host:



(ECF No. 1, Compl. Ex. 21.) Furthermore, documents in the Dominion Production indicate that this information is readily available. *See* ML-000147 (Mary Fanning telling Lindell about a request for a promotional code); ML-001961–65 (Dawn Curtis working with a third party to create a promotional code). Smartmatic requests that Defendants supplement their responses with complete information.

Matthew Eslick
December 14, 2022
Page 9

**Interrogatory No. 19**

This Interrogatory seeks MY PILLOW advertisements, product deals, or promotional codes it used related to the complained-of publications, as well as the revenue earned from each. MyPillow objected to the Interrogatory as irrelevant and overbroad. MyPillow's objections are without merit. This Interrogatory is relevant as to the vicarious liability of MyPillow and the resulting enrichment of Defendants, and it is limited to the complained-of publications in the Complaint. Thus, Defendants are required to respond.

**Interrogatory No. 20**

This Interrogatory seeks the identification and quantification of MY PILLOW financial resources or other monetary support MyPillow provided for the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, LINDELL APPEARANCES, LINDELL WEBSITES, or the "March for Trump" tour. MyPillow answered that it contributed $100,000 to the "March for Trump" tour and also "loaned sums of money to FrankSpeech.com." MyPillow's answer to this Interrogatory is deficient because it does not identify the amount of the loan(s) to FrankSpeech.com, nor does it identify the date of the loan(s), purpose of the loan(s), or interest rate on the loan(s).

**Interrogatory No. 21**

This Interrogatory seeks the identification of all MY PILLOW executives and board members from January 1, 2020 to the present. MyPillow objected to the relevance of the Interrogatory because Mr. Lindell did not require the approval of any company executive or board member to make the appearances identified in the Complaint.

MyPillow's relevance objection lacks merit. Whether Mr. Lindell needed approval of company executives or board members misses the point. The company's knowledge of the disinformation campaign, the foreseeability of the campaign, and whether the company took any actions to distance itself or align itself with the campaign are all relevant to vicarious liability. *See* ECF No. 52 at 14–15 ("MyPillow did not distance itself from Lindell's statements. Indeed, MyPillow associated itself with Lindell's bus tour by having its logo emblazoned on Lindell's bus . . . ."); *see also Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 773 (D. Minn. 2010). Accordingly, Defendants must supplement their responses.

**Interrogatory No. 22**

This Interrogatory seeks the identification of LINDELL'S positions or roles at MY PILLOW, including the responsibilities associated with each role. Defendant MyPillow did not object to any of the Interrogatory, but it merely answered that Mr. Lindell was MyPillow's chief executive officer and chairman of the board of the directors, and it otherwise ignored the remainder of the Interrogatory. This Interrogatory is relevant to Smartmatic's claim for vicarious liability because it is probative of the extent to which Lindell acted within the scope of his employment when he defamed Smartmatic. Thus, Defendants' responses are obviously deficient.

Matthew Eslick
December 14, 2022
Page 10

**Interrogatory No. 23**

This Interrogatory seeks the identification of any loans MY PILLOW made to LINDELL or any instance of MY PILLOW cosigning an obligation of LINDELL, as well as the details of any such instance. MyPillow objected to the Interrogatory as irrelevant and overbroad. Smartmatic does not believe that Defendants' objections have any merit, but in the spirit of compromise, Smartmatic agrees to narrow the scope of this Interrogatory to loans and obligations related to the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, and DEFAMATORY STATEMENTS. Smartmatic expects that this compromise will alleviate any concerns Defendants have related to the relevance and scope of this request.

### III. Defendants' RFP Responses and Document Production

Smartmatic also would like to meet and confer with Defendants concerning their Document Production and responses to Smartmatic's RFP's.

#### A. Concerns Related To Defendants' Initial Production.

*Metadata Deficiencies.* Defendants' Production fails to adhere to the Order Regarding Production of Electronically Stored Information, Dkt. No. 69 (the "ESI Order") by failing to produce agreed-upon metadata information. Specifically, in Paragraph 18 of the ESI Order, the parties agreed to produce certain categories of metadata information with "each production." Here, Defendants have failed to do so. The Document Production was missing the following required metadata fields: (1) redacted; (2) all custodians; (3) all paths; (4) confidentiality; (5) custodian; (6) date created; (7) date modified; (8) date received; (9) message ID; (10) file type; (11) file size; and (12) number of attachments. Twelve missing categories of metadata information is an egregious violation of the ESI Order. Accordingly, Smartmatic respectfully requests that Defendants supplement their Document Production with appropriate metadata via a metadata cross-reference file (.dat). Smartmatic is willing to meet and confer with respect to a date certain by which Defendants' Document Production will be complete.

*Custodian Identification.* As described above, the Document Production fails to properly identify custodians. And Defendants' Initial Disclosures and Supplemental Initial Disclosures seemingly take the position that Mr. Lindell is the only relevant MyPillow employee. Thus, it is not clear to Smartmatic which custodians MyPillow is using to search for relevant documents. Smartmatic would like to meet and confer regarding the custodians that MyPillow is using so it can determine whether additional custodians are necessary.

#### B. Deficiencies In Defendants' RFP Responses.

Defendants' RFP Responses are also deficient for the reasons discussed below, and Smartmatic would like to meet and confer with Defendants regarding their improper responses.

**RFP No. 7**

This RFP seeks documents and communications with or concerning any of the GUESTS, Rudolph Giuliani, L. Lin Wood, Sidney Powell, or the RNC, from January 1, 2018 to the present. Defendants objected that the RFP seeks information about statements that are not alleged to be defamatory or inside the timeframe of Plaintiffs' claims.

Defendants' objections are without merit. The documents and communications Defendants are required to identify in response to this Request are relevant to the issues of actual malice. For example, these documents and communications will show information provided to Mr. Lindell concerning the security of the 2020 U.S. election, Smartmatic, and Dominion, and the credibility of his sources. (*Supra* at 4, Interrogatory Nos. 4, 5, and 7.) Further, responsive communications will evidence the involvement of MY PILLOW EMPLOYEES in Mr. Lindell's investigation, which will further evidence MyPillow's vicarious liability. (*Supra* at 4, Interrogatory Nos. 2 and 3.)

**RFP No. 14**

This RFP seeks documents sufficient to show all compensation and components thereof, including but not limited to salary, wages, bonuses, retirement plans, stock and stock options, and company perquisites, that LINDELL received from MY PILLOW, OTHER NEWS ORGANIZATIONS, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN from January 1, 2016 to the present. Defendants objects that this RFP seeks information about companies other than Plaintiffs and objects to the RFP's time frame.

Defendants' objections are without merit. As discussed above, these types of documents and information are relevant to Smartmatic's allegations that Mr. Lindell defamed Smartmatic in order to curry favor with the Trump administration and improve MyPillow's performance. (*Supra* at 5–6, Interrogatory Nos. 9 and 10.) The requested documents will show the extent to which Mr. Lindell received compensation from Trump and the extent to which his compensation from MyPillow increased as he defamed Smartmatic. In the spirit of compromise, Smartmatic will agree to narrow the time frame of this request to responsive documents from January 1, 2018 to the present.

**RFP No. 16**

This RFP seeks documents and communications relating to the budget, amount of money invested, or amount of money expended by You or any third party relating to the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, or any other content You published concerning SMARTMATIC. Defendants object that this RFP seeks information about companies other than Plaintiff and about subjects unrelated to Plaintiffs' claims, and that whether a statement "concerns" Smartmatic is subject to varying interpretations.

Regarding Defendants' objection based on the breadth of the Interrogatory, Smartmatic agrees to narrow RFP No. 16 to documents and communications related to the ACCUSED PROGRAMS and DEFAMATORY BROADCASTS. With respect to Defendants' remaining objections, as discussed above, documents and information related to the financing of the ACCUSED PROGRAMS and DEFAMATORY BROADCASTS is probative of Defendants'

Matthew Eslick
December 14, 2022
Page 12

actual malice and MyPillow's vicarious liability. (*Supra* at 5, Interrogatory Nos. 6, 8, and 13.) Defendants' refusal to produce responsive documents is improper.

### RFP No. 22

This RFP seeks all documents produced by or received by Defendants in connection with the lawsuit *US Dominion, Inc., et al. v. My Pillow, Inc. et al.*, Case No. 21-cv-445-CJN (D.D.C.). MyPillow objected that this RFP seeks information about companies other than Plaintiff and about subjects unrelated to Plaintiffs' claims. MyPillow's objections are without merit. Nevertheless, in the spirit of compromise, Smartmatic will narrow its request to all documents that Defendants have produced in *Dominion*. Defendants have already agreed to produce documents related to Dominion and use "Dominion" as a search term. Thus, they have agreed that Dominion is relevant to this case. As such, they should produce all documents that they have produced in *Dominion*.

### RFP No. 25

This RFP seeks documents sufficient to show the corporate structure of MY PILLOW. MyPillow responds that it has produced "Articles of Organization" in the Document Production. Smartmatic respectfully requests that MyPillow supplement its response to RFP No. 25 to include the Bates ranges of these documents.

### RFP No. 26

This RFP seeks MY PILLOW'S income statements, profit and loss statements, balance sheets, statements of cash flow, and statements of retained earnings for the past five (5) years. MyPillow objects to this RFP on relevance grounds. Its objection is improper because its financial information is probative of Smartmatic's allegations that MyPillow and Mr. Lindell defamed Smartmatic to increase their profits. Indeed, the Court ruled that Smartmatic plausibly alleged Defendants' actual malice based, in part, on Smartmatic's allegations that they were motivated by profit. (ECF No. 52 at 11.) The requested information is also relevant to Smartmatic's claim that punitive damages are warranted.

### RFP No. 27

This RFP seeks MY PILLOW'S strategic and business planning documents for the past five (5) years, including financial projections, analyses, budgets, and forecasts. MyPillow objects to the RFP's time frame and claim it has no documents to produce. MyPillow's response strains credulity, given the size and scope of MyPillow's operations. Accordingly, Smartmatic respectfully requests that MyPillow clarify whether it claims it has no strategic and business planning documents or it simply refuses to produce them.

### RFP No. 28

This RFP seeks documents and communications regarding any MY PILLOW advertisements or promotions related to DONALD TRUMP, the TRUMP ADMINISTRATION, the TRUMP CAMPAIGN, the 2020 PRESIDENTIAL ELECTION, or the security of voting in

Matthew Eslick
December 14, 2022
Page 13

the 2020 PRESIDENTIAL ELECTION, including, but not limited to, MY PILLOW'S advertisements on LINDELL WEBSITES. MyPillow objects that this RFP seeks documents not related to this litigation, and claims MyPillow has no documents to produce. But, as explained above, Smartmatic already knows of several documents that are squarely responsive to this Request. (*Supra* at 8, Interrogatory No. 18(a); *see, e.g.* ML-000147; ML-001961–65.) Accordingly, Smartmatic requests that MyPillow amend its response and produce responsive documents.

**RFP No. 29**

This RFP seeks documents and communications related to LINDELL'S political activism or other support for political candidates, campaigns, or causes, from January 1, 2018 to the present. MyPillow responded that it would produce "documents relating to the statements claimed to be defamatory by Plaintiffs."

MyPillow's limitation is improper. As discussed above, Lindell's political activities are relevant to whether Defendants acted with actual malice by defaming Smartmatic in order to curry favor with Donald Trump and/or the Republican Party. (*Supra* at 6, Interrogatory Nos. 9 and 10.) Similarly, the extent to which Lindell's political activities involved MyPillow employees, resources, or funds bears directly on Smartmatic's vicarious liability claims. In the spirit of compromise, Smartmatic will agree to limit the scope of its request to documents from January 1, 2020 to the present.

\*\*\*

As mentioned at the outset of this letter, Smartmatic is hopeful that Defendants will remedy the deficiencies contained in its Discovery Responses and Document Production to avoid unnecessary motion practice. To that end, please provide your availability to meet and confer on December 19–21, 2022.

Very truly yours,

BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP

Michael E. Bloom