

Julie M. Loftus
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial:  312.624.6341
Fax:  312.767.9192
jloftus@beneschlaw.com

December 27, 2022

Matthew Eslick
888 Colwell Building
 Minneapolis, MN 55401
Email: eslick@parkerdk.com

Re:     *Smartmatic USA Corp., et al. v. Lindell, et al.*; Case No. 22-cv-00098

Dear Mr. Eslick:

I write to memorialize our meet-and-confer held on December 23, 2022 from 3:30 p.m. to 5:00 p.m. Central Time concerning (1) Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents, (2) Defendant My Pillow, Inc.'s ("MyPillow") Responses to Plaintiffs' Second Set of Requests for Production of Documents (collectively, the "RFP Responses"), (3) Defendant My Pillow, Inc.'s Answers and Objections to Plaintiffs' First Set of Interrogatories, (4) Defendant Michael J. Lindell's Answers and Objections to Plaintiffs' First Set of Interrogatories, (5) Defendant My Pillow, Inc.'s Answers and Objections to Plaintiffs' Second Set of Interrogatories (collectively, the "Interrogatory Responses"), and (6) Defendants' December 5, 2022 production of documents (the "Document Production").

## Defendants' Interrogatory Responses

During the meet-and-confer, the parties discussed many of Defendants' Interrogatory Responses. The following memorializes the parties' discussions.

- **Interrogatory No. 11:** Smartmatic explained that this Interrogatory is probative of Defendants' actual malice because it relates to Defendants' motive, improper purpose, and ill will in defaming Smartmatic. Case law also makes clear that this type of evidence is relevant and discoverable. *See Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 668 (1989) (plaintiffs are entitled to prove the defendant's state of mind through circumstantial evidence, such as "evidence of motive"); *Herbert v. Lando*, 441 U.S. 153, 161 (1979) (recognizing "plaintiffs will rarely be successful in proving awareness of falsehoods from the mouths of the defendant himself" and noting actual malice may be proved "by objective evidence from which the ultimate fact could be inferred."); *Stokes v. CBS, Inc.*, 25 F. Supp. 2d 992, 1003 (D. Minn. 1998) ("a showing of ill will 'is nevertheless relevant and admissible as evidence in the determination of whether defendant possessed a state of mind highly conducive to reckless disregard of falsity.'"). Smartmatic further explained that this Interrogatory is relevant to Smartmatic's vicarious liability claim against MyPillow. The Court has already ruled, based on the parties' arguments in briefing on Defendants' motions to dismiss, that such evidence is relevant to Smartmatic's vicarious liability claims. (ECF

Matthew Eslick
December 27, 2022
Page 2

No. 52 at 14–15) ("MyPillow did not distance itself from Lindell's statements. Indeed, MyPillow associated itself with Lindell's bus tour by having its logo emblazoned on Lindell's bus"); *see also Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 733 (D. Minn. 2010). <u>Defendants stated that, based on Smartmatic's authorities, they will supplement their answers to these Interrogatories with complete responses.</u>

- **Interrogatory Nos. 12 and 14:** Smartmatic explained that these Interrogatories seek information regarding Defendants' knowledge that Lindell's statements were false, which is relevant to Defendants' actual malice. <u>Defendants stated they will respond in writing and supplement their answers with any additional relevant information.</u>

- **Interrogatory No. 15:** <u>Defendants stated they will supplement their answer and comply with this Interrogatory.</u>

- **Interrogatory Nos. 16 and 24:** <u>Defendants stated they will supplement their answers and comply with these Interrogatories.</u>

- **Interrogatory No. 18:** Smartmatic noted that Defendants' answers do not identify communications as contemplated by the Interrogatory. Smartmatic explained that communications regarding the use of promotional codes are probative of MyPillow's vicarious liability and Defendants' actual malice, particularly because this Interrogatory is limited to communications regarding the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, DEFAMATORY STATEMENTS, the LINDELL APPEARANCES, and the "March for Trump" bus tour. <u>Defendants stated that, based on Smartmatic's clarification, they will review RFP No. 28, which relates to similar topics, and clarify in writing whether they will amend their responses.</u>

- **Interrogatory No. 18(a):** Smartmatic explained that this Interrogatory is probative of MyPillow's vicarious liability for Lindell's statements. Smartmatic explained that the Court has already ruled, based on the parties' arguments in briefing on Defendants' motions to dismiss, that such evidence is relevant to MyPillow's vicarious liability. *See* ECF No. 52 at 14–15 ("MyPillow provided Lindell with promotional codes to relay to audiences during his appearances. The Court, therefore, concludes that Smartmatic's allegations state a plausible claim that MyPillow may be vicariously liable for Lindell's actions."). Smartmatic further clarified that the identities of MyPillow employees and third parties involved in the creation, development, naming, and usage of the referenced promotional codes are probative of (1) the extent of MyPillow's involvement in the promotional code process, and (2) MyPillow's knowledge of Lindell's use of company resources in carrying out the defamation campaign. <u>Defendants stated that, based on Smartmatic's clarification, they will clarify in writing whether they will amend their responses.</u>

- **Interrogatory No. 19:** Smartmatic clarified that it seeks identification of instances of MyPillow advertising related to Defendants' disinformation campaign, and the corresponding revenue earned from each instance. Smartmatic explained that this information is squarely relevant to MyPillow's vicarious liability and resulting enrichment of both Defendants. To that end, the revenue produced by each referenced advertisement,

product deal, or promotional code is relevant to Defendants' motive, improper purpose, and ill will in defaming Smartmatic. *See Harte-Hanks*, 491 U.S. at 668; *Herbert v. Lando*, 41 U.S. at 161. <u>Defendants stated that they will determine whether a responsive business record exists and clarify in writing whether they will comply with this Interrogatory.</u>

- **Interrogatory No. 20:** <u>Defendants stated they will supplement their answer and comply with this Interrogatory.</u>

- **Interrogatory No. 21:** Smartmatic explained that the identity of MyPillow's executives and board members is relevant to MyPillow's vicarious liability. The Court has ruled that that MyPillow's knowledge of and reaction to Lindell's defamatory statements is relevant. *See* ECF No. 52 at 14–15 ("MyPillow did not distance itself from Lindell's statements. Indeed, MyPillow associated itself with Lindell's bus tour by having its logo emblazoned on Lindell's bus . . ."); *see also Hartford Fire Ins. Co.*, 727 F. Supp. 2d at 773. Moreover, Smartmatic must be permitted to determine which custodians and email recipients are board members and executives when reviewing Defendants' produced documents in order to be able to ascertain MyPillow's knowledge of the defamation campaign, the foreseeability of the campaign, and whether the company took actions to distances itself or align itself with the campaign—all of which are relevant to MyPillow's vicarious liability. <u>Defendants stated that they will follow up with their client and clarify in writing whether they will comply with this Interrogatory</u>.

- **Interrogatory No. 22:** <u>Defendants stated they will supplement their answer and comply with this Interrogatory.</u>

- **Interrogatory No. 23:** Smartmatic clarified that it seeks identification of any loans MyPillow made to Lindell, or MyPillow's co-signing of an obligation of Lindell's, related to the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, and DEFAMATORY STATEMENTS. <u>Defendants stated that they will follow up with their client and clarify in writing whether they will comply with this Interrogatory</u>.

**Defendants' RFP Responses**

During the meet-and-confer, the parties also discussed some of Defendants' RFP Responses:

- **RFP No. 7:** Smartmatic stated that this Request seeks information relevant to issues of actual malice, such as information provided to Lindell concerning the security of the 2020 U.S. Presidential Election, Smartmatic, Dominion, and the credibility of Lindell's sources. To the extent MyPillow employees communicated with GUESTS, Giuliani, Powell, Wood, or the RNC, responsive communications would additionally be relevant to MyPillow's vicarious liability. <u>Based on this clarification, Defendants stated they will clarify in writing the extent to which they intend to comply with this Request.</u>

- **RFP No. 14:** Smartmatic explained that this Request seeks information relevant to Lindell's actual malice and MyPillow's vicarious liability. For example, any compensation received

- by Lindell from Trump, and the extent to which Lindell's compensation from MyPillow increased as he defamed Smartmatic, would be relevant evidence of Defendants' motive in defaming Smartmatic. <u>Based on this clarification, Defendants stated they will clarify in writing the extent to which they intend to comply with this Request.</u>

- **RFP No. 16:** Smartmatic explained that this Request seeks information relevant to Defendants' actual malice and MyPillow's vicarious liability. Smartmatic further noted that Defendants' outright refusal to produce documents is improper because, by definition, an individual or entity *must have* financed the ACCUSED PROGRAMS and/ or DEFAMATORY BROADCASTS. <u>Based on this clarification, and Smartmatic's proposal to narrow the scope of this request in its letter dated December 14, 2022, Defendants stated they will clarify in writing the extent to which they intend to comply with this Request</u>.

The parties additionally discussed metadata deficiencies in Defendants' December 5, 2022 Document Production. Defendants stated that they are working to understand how metadata fields were missing from the Document Production and that they will supplement the production to comply with the Order Regarding Production of Electronically Stored Information (the "ESI Order"). Defendants also agreed to ensure that custodians are properly identified per the ESI Order.

In the interest of moving discovery forward, Smartmatic respectfully requests that Defendants respond in writing to the issues discussed above by December 30, 2022. As I mentioned in my letter dated December 22, 2022, to the extent Defendants intend to supplement their interrogatory responses, Smartmatic requests that they serve their supplemental responses by January 6, 202.

### *Dominion* Protective Order

The parties also discussed Defendants' objection to Smartmatic's references in its letter dated December 14, 2022, to Defendants' production of documents to Smartmatic and other defendants in the lawsuit *US Dominion, Inc., et al. v. My Pillow, Inc. et al.,* Case No. 21-cv-445-CJN (D.D.C.) (the "*Dominion* Production"). Defendants stated that the Protective Order Governing the Production and Exchange of Confidential Information entered in that case on December 6, 2022, ECF No. 152 (the "*Dominion* Protective Order") bars Smartmatic from "using" the *Dominion* Production in this case. The *Dominion* Production, which Defendants produced many months before the *Dominion* Protective Order was entered, has never been designated confidential by Defendants. Defendants' objection is also not well taken for several reasons.

*First*, by its own terms, the *Dominion* Protective Order does not apply to Smartmatic. *See* Dominion Protective Order at 3 n.1 ("This Order does not cover Third-Party Defendants Smartmatic USA Corp., Smartmatic International Holding B.V., or SGO Corporation Ltd."). Accordingly, Smartmatic is not bound by the *Dominion* Protective Order and could not have violated it.

*Second*, even if Smartmatic had negotiated and agreed to be bound by the *Dominion* Protective Order, it would not have improperly "used" Defendants' discovery material. Defendants are obligated under the Federal Rules of Civil Procedure to participate in discovery,

produce all relevant documents requested by Smartmatic, and provide truthful responses to Smartmatic's discovery requests. Smartmatic referenced some documents produced by Defendants in *Dominion* for no purpose other than to show Defendants that they had fallen short of their obligations. Defendants know that particular documents and information responsive to Smartmatic's discovery requests exist, yet they are pretending otherwise.

***Finally***, Defendants have suffered no prejudice whatsoever. As stated above, Defendants have never designated the *Dominion* Production confidential. Moreover, the *Dominion* Protective Order expressly permits Dominion to produce discovery material received from Defendants, including *confidential* and *attorneys' eyes only* discovery material, in cases in which Defendants are not even a party. *Id.* ¶ 1. In this case, Smartmatic merely referenced documents produced by Defendants in the *Dominion* Production in a letter to Defendants. Defendants cannot credibly claim that they have suffered any harm from Smartmatic's letter, particularly after they agreed that Dominion can produce all of their discovery material in separate proceedings.

Very truly yours,

BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP

*Julie M. Loftus*

Julie M. Loftus

JML:

cc:   Michael E. Bloom