IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V. and SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | Case No. 22-cv-00098- WMW-JFD |

**MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL**

Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited ("Smartmatic") claim that My Pillow, Inc. and Michael Lindell ("Defendants") "refuse to comply with basic discovery requests." Mem. in Supp. of Smartmatic's Mot. to Compel 1, ECF No. 80 ("Smartmatic Mem."). In reality, Defendants have produced large numbers of documents in response to Smartmatic's discovery requests, are continuing to produce additional documents, and have sought to provide Smartmatic with all the information Smartmatic is entitled to receive. Smartmatic's Motion is unnecessary and unfounded, and should be denied.

**I.      Factual Background**

Smartmatic's Complaint runs 380 paragraphs in 136 pages. Compl., ECF No. 1. It attaches 142 exhibits comprising 2,434 pages, ECF Nos. 1-2 through -143. Such lengthy allegations implicate a broad expanse of documents in discovery. After the Court entered its Pretrial Scheduling Order on October 12, 2022, ECF No. 64, and Order Regarding

Production of Electronically Stored Information, ECF No. 69, the parties served discovery requests on each other. Smartmatic Mem. at 12-13 & n.4. Both sides have provided interrogatory answers (and supplements), responses to requests for production (and supplements), and produced thousands of documents.

Smartmatic provided Defendants with a lengthy list of search terms on December 2, 2022, asking Defendants to run these search terms across Defendants' database of electronically stored information. Eslick Decl. ¶ 2 & Ex. A. The search term list was more than two pages long. *Id.* Defendants ran this list of search terms, as well as some of their own, across the database of My Pillow's archived emails. The electronic database searched consists of more than 26 million emails and more than 13.8 million individual files. Defendants pulled from the database an initial set of documents containing the search terms and reviewed those documents, producing groups of documents to Smartmatic as the review of them was completed. Defendants have now pulled from the database additional documents containing the search terms and are in the process of reviewing those documents for production. According to Archer Hall, the e-discovery vendor performing the searches, there is a high volume of search term hits for the search terms provided by Smartmatic, so the exportation of those documents into Defendants' document review platform is taking time.

To date, Defendants have produced the following documents from the email server:

| Date of Production | Documents Produced (Including Native Files) | Approximate Number of Pages (Excluding Native Files) |
|---|---|---|
| **December 5, 2022** | 1,604 | 24,826 |
| **January 19, 2023** | 1,456 | 18,362 |

| | | |
|---|---|---|
| **January 27, 2023** | 6,262 | 64,457 |
| **February 7, 2023** | 16,746 | 134,050 |

Eslick Decl. ¶¶ 5-8.

Defendants have also engaged in significant discussion with Smartmatic concerning the scope of Smartmatic's discovery requests. Counsel for the parties held lengthy meet-and-confer conferences on December 21, 2022, December 23, 2022, January 4, 2023, and January 11, 2023.

On December 14, 2022, Smartmatic's counsel sent a thirteen-page letter purportedly identifying deficiencies in Defendants' discovery responses. Bloom Decl. Ex. 10, ECF No. 81-10, at 11. The letter specifically alleged deficiencies in Defendants responses to Interrogatories 1-16, 18(a), and 8-24 and Requests for Production 7, 14, 16, 22, and 25-29. *Id.* at 3-10, 10-13.

On December 21, 2022, Defendants' counsel responded with a five-page letter "designed to focus the discussion for some of the items for our meet and confer conference." Bloom Decl. Ex. 11, ECF No. 81-11, at 1. The letter explained, among other things, that

> Many of these concerns can be addressed by recalling the parties' agreement that our document production will be occurring on a rolling basis and any interrogatory answers informed by those productions supplemented thereafter. . . . Once Defendants have completed their review, they will be better positioned to identify which (if any) objections they are withdrawing, and which documents (if any) will be withheld because of an applicable objection or on the basis of an applicable privilege. Until then, responding to this issue is not possible.

*Id.* at 2.

On January 3, 2023, Defendants served supplemental responses to Smartmatic's first and second sets of requests for production of documents. Bloom Decl. Exs. 14-15, ECF Nos. 81-14, 81-15.

On January 4, 2023, Defendants' counsel sent Smartmatic's counsel a letter specifically addressing Smartmatic's Requests for Production 1, 2, and 7. Bloom Decl. Ex. 23, ECF No. 81-23.

On January 11, 2023, Defendants served supplemental responses to Smartmatic's first and second sets of interrogatories to My Pillow, Inc. and to Smartmatic's first set of interrogatories to Michael Lindell. Bloom Decl. Exs. 20-21, ECF Nos. 81-20, 81-21.

On January 13, 2023, Smartmatic's counsel send Defendants' counsel a letter purportedly identifying deficiencies in Defendants' responses to Interrogatories 1-7, 9, 11, 13-15. Bloom Decl. Ex. 17, ECF No. 81-17.

Smartmatic now brings a motion to compel focusing on two overarching matters related to its Requests for Production, and six interrogatories.

**II.     Argument.**

Smartmatic's Motion to Compel raises three broad issues: (1) whether Defendants must state whether they are withholding any responsive documents, prior to completing their review and production of documents; (2) whether Defendants must produce documents that relate only to Smartmatic's competitor Dominion and do not relate to Smartmatic, the 2020 Presidential Election, or voting machines generally; and (3) Defendants' responses to six specific interrogatories (nos. 22, 18(a), 19, 1, 15, 9), which either asserted that the requested information is not discoverable or advised Smartmatic

4

that the answers it seeks are found in documents Defendants have produced (or will produce). Smartmatic Mem. at 7, 12, 16. Portions of Smartmatic's motion are meritless, and other portions are premature. The motion should be denied.

### A. Applicable Legal Principles.

Plaintiffs correctly note that *part* of Federal Rule of Civil Procedure 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1), *quoted at* ECF No. 80, at 11. *See also Lynch v. Experian Info. Sols., Inc.*, 569 F. Supp. 3d 959, 963 (D. Minn. 2021) (observing that "'[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'") (quoting *Hofer v. Mack Trucks*, 981 F.3d 377, 380 (8th Cir. 1992)). But Plaintiffs omit the rest of the Rule, which, in part, places limits on the type of discovery a party may obtain. This Court has previously noted that "[b]eyond being relevant, Rule 26 requires that information sought in discovery also be 'proportional to the needs of the case.'" *Lynch,* 569 F. Supp. 3d at 963 (quoting Fed. R. Civ. P. 26(b)(1)). Proportionality requires consideration of

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). This is a strict limit on discovery. *See, e.g.*, *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) ("'[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case . . . and the court must do so

even in the absence of a motion.'") (quoting *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015)). Fed. R. Civ. P. 26(b)(2)(C) permits the Court to limit the frequency or extent of discovery if the discovery is unreasonably cumulative or duplicative, can be obtained from another more convenient or less burdensome source, or is outside the scope of Rule 26(b)(1).

### B. Defendants Have Complied with Federal Rule of Civil Procedure 34.

Smartmatic's first dispute with Defendants' discovery responses is the assertion that Defendants have violated Fed. R. Civ. P. 34 by postponing the disclosure of whether Defendants are withholding any non-privileged documents subject to their objections until after Defendants complete their review of the documents. Smartmatic Mem. at 7-9; December 21, 2022 Eslick Letter at 1-2 (Bloom Decl. Ex. 11, ECF no. 81-11). Smartmatic argues that Defendants have not complied with Federal Rule of Civil Procedure 34 because Defendants have not yet identified specific documents that will be withheld because of an objection other than one asserted on the basis of an asserted privilege. Smartmatic Mem. at 9-10. Smartmatic contends this is a "backward-looking approach." *Id.* at 11.

To be clear, Defendants have not refused to respond to Smartmatic's requests for production; Defendants have provided responses, and then supplemented those responses. *See* Bloom Decl. Exs. 5, 6, 14, 15. Defendants have produced hundreds of thousands of pages of documents responsive to Smartmatic's own search terms over a two-month period. *See* Eslick Decl. ¶¶ 5-8. And Defendants have agreed to provide Smartmatic with an explanation of whether they intend to withhold any documents, after the document review

is completed. December 21, 2022 Eslick Letter at 2 (Bloom Decl. Ex. 11); January 4, 2023 Eslick Letter at 4 (Bloom Decl. Ex. 23).

Defendants have repeatedly told Smartmatic that Defendants will advise Smartmatic of any withheld documents when their review of potentially responsive documents was complete, and Smartmatic acknowledges this. Smartmatic Mem. at 11. The *only* issue disputed between the parties on this point, as Defendants understand Smartmatic's position, is whether Defendants must specifically identify documents they intend to withhold from production on the basis of an objection other that privilege immediately, or after the document review is complete.

The reason for Defendants' position is straightforward. If Defendants had *not* asserted objections and instead waited to complete their review of documents before asserting them, Smartmatic would undoubtedly claim that Defendants had waived all objections to Smartmatic's requests. *See, e.g.*, *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012) ("This Court agrees that the same waiver provision found in Rule 33(b)(4) applies to document requests under Rule 34.") (collecting authorities). Consistent with *Cargill*, Defendants "decided to serve [their] discovery responses and interpose [their] objections to that discovery on whatever grounds [they] deemed prudent." *See id.* at 427.

At the parties' several meet and confer conferences, Defendants made their position abundantly clear: Defendants would produce non-privileged and responsive documents, and would identify which documents were being withheld on the basis of an objection when their review of potentially responsive documents was complete. This is a reasonable

7

– indeed, necessary – approach, for Defendants will not be in a position to withdraw any objections lodged or identify categories of documents being withheld until the review process is either complete or nearly complete.

The parties agreed to produce documents through a rolling production approach. December 21, 2022 Eslick Letter at 2 (Bloom Decl. Ex. 11); January 4, 2023 Eslick Letter at 4 (Bloom Decl. Ex. 23). Until that process is complete, Defendants cannot know whether their objections to Smartmatic's requests for production will result in the withholding from production of any documents.

### C. Defendants' Slight Limitations on Their Production of Documents Related to Dominion Are Proper.

The second issue raised by Smartmatic is whether Defendants are obligated to produce to Smartmatic certain documents that relate to U.S. Dominion, Inc., Smartmatic's business competitor. This issue implicates two separate subparts. First, whether Defendants are obligated to produce to Smartmatic discovery materials from a separate lawsuit between Defendants and Dominion, which are governed by a federal court's discovery protective order, and whether Defendants are obligated to produce to Smartmatic documents that do *not* relate to Smartmatic, to the 2020 Presidential Election, or voting machines generally.

### 1. Defendants Cannot Produce Documents and Deposition Transcripts in *U.S. Dominion, Inc., et al. v. My Pillow, Inc., et al.*, Civil Action No. 1:21-cv-445 (CJN) (D.D.C.), Without Violating a Federal Court's Protective Order.

Dominion has brought claims against Defendants in an action pending in the United States District Court for the District of Columbia captioned *U.S. Dominion, Inc., et al. v. My Pillow, Inc., et al.*, Civil Action No. 1:21-cv-445 (CJN) (D.D.C) (the "DC Action"). In

its Request for Production Number 22, Smartmatic demanded Defendants produce "[a]ll documents produced by [Defendants] or received by [Defendants], including transcripts of any testimony other than testimony provided by [Dominion] employees, in connection with" the DC Action. Bloom Decl. Ex. 6, ECF No. 81-5, at 11.

On December 6, 2022, United States District Judge Nichols entered a protective order in the DC Action that sharply restricted the use of discovery materials[1] in that case. Eslick Decl. ¶ 3 & Ex. B. As it pertained to Defendants, the protective order provided, with some immaterial exceptions, as follows:

> Any Discovery Material produced in the Litigation will be used, except by the Producing Party, ***solely for purposes of this Litigation*** and no ***Receiving Party will provide Discovery Material to any person or entity*** (including for any other litigation) ***or make any Discovery Material public*** except as permitted by this Order and in this Litigation.

Ex. B, p. 3 (emphasis added). Smartmatic was excused from compliance with this provision, but Defendants were not. *Id.* at 3 n.1.

Defendants do not contend—and they never have—that a document produced in the DC Action would be excluded from discoverability in this matter simply because it was produced in the DC Action. Defendants' position has consistently been that (1) Defendants will produce materials in this action if they are discoverable in this litigation, except (2)

---

[1] Judge Nichols defined "discovery materials" as all "documents, testimony (in any form whether by affidavit, declaration, or deposition), exhibits, transcripts, written discovery requests, interrogatory responses, responses to requests for admission, responses to requests for documents, and any other information or material produced, given, or exchanged, including any information contained therein or derived therefrom." Ex. B, pp. 2-3.

9

Defendants cannot produce materials in this litigation if they were produced to Defendants by someone else as part of the DC Action.

### 2. Documents Relating Solely to Dominion Are Not Discoverable.

Smartmatic argues that Defendants should be compelled to produce documents that solely relate to Dominion, one of Smartmatic's competitors, and which do *not* relate to the 2020 Presidential Election or voting machines generally. Smartmatic Mem. 14. Such materials are not relevant or discoverable in this action for two reasons. They appear to be merely an effort by Smartmatic to use this action to obtain intelligence about its competitor.

First, the scope of the documents relating to Dominion that Defendants have declined to produce is not broad. Defendants have agreed to produce non-privileged documents relating to the 2020 General Election and companies—like Smartmatic—that manufacture, license, and sell election software and hardware. Defendants have agreed to produce documents that (1) relate to Smartmatic, (2) relate to Smartmatic *and* another voting machine manufacturer (including Dominion), and (3) relate to voting machine manufacturers generally but do not identify a specific company. Defendants have agreed to produce non-privileged families of documents even if any family member contains a responsive document.[2] The subject matter of documents mentioning Dominion but not touching upon one of these other subjects is quite narrow.

---

[2] Defendants have construed a document "family" as a document and any of its attachments. Thus, Defendants have agreed to produce a document that refers only to Dominion if another member of the document family references Smartmatic, another voting technology manufacturer, or voting technology manufacturers generally.

Second, any documents actually relevant to Smartmatic's claims will be responsive to one of the categories described above, and therefore will be produced. Any document that proves—either directly or "by inference"—that Smartmatic and Dominion were separate companies would necessarily refer to both companies. Those documents are within the group Defendants have agreed to produce. The allegedly defamatory statements identified in the Complaint on this point show a consistent pattern: the statements that Smartmatic has placed at issue do not show any way in which information about Dominion (but not mentioning another voting machine company, the 2020 Presidential Election, or voting machines generally) could be relevant to Smartmatic's claims. Compl. ¶ 143. None of the statements mentions Dominion without some other context that would make information about the statement discoverable within the framework that Defendants have followed in responding to Smartmatic's discovery requests. Nor could statements about Dominion, but not about any of these other topics, conceivably affect Smartmatic's damages claims.

Smartmatic's hypothetical examples of information only relating to Dominion do not show that such information would be discoverable in this case. *See* Smartmatic Mem. 15. Information "regarding the software in Dominion's voting technology systems," *id.*, would not show a link or lack of link between Dominion and Smartmatic, if the information did not concern Smartmatic, the 2020 Presidential Election, or voting machines generally. Information that "discussed Dominion's origin and/or its role in the 2020 U.S. election but which did not also mention Smartmatic," *id.*, would not show a lack of connection between

11

the two companies; it would merely show that the purpose or author of that document was not concerned with Smartmatic.

Smartmatic's attempt to obtain information from Defendants in discovery about its competitor Dominion, when that information does not relate to Smartmatic or another voting machine company, the 2020 Presidential Election, or voting machines generally, appears to be an effort to use discovery to obtain information not relevant to the case that Smartmatic can use for some other purpose. Defendants are not obligated to search for or produce such information. And the Court should not order Defendants to violate the protective order in the DC Action by producing information received in discovery from other persons in that case.

### D. Defendants Have Adequately Responded to Smartmatic's Interrogatories.

Smartmatic's third issue is a set of claimed deficiencies in six of Defendants' interrogatory answers and supplemental interrogatory answers. For each of these interrogatories, Defendants have either taken the position that responsive information is not discoverable, or Defendants have advised Smartmatic that the responsive information can be found in documents Defendants have either produced or will produce. Defendants have met their obligations to answer the interrogatories.

#### 1. Mr. Lindell's Responsibilities at My Pillow, Inc. (Interrogatory 22)

In Interrogatory Number 22, Plaintiffs requested that Defendant My Pillow, Inc, identify Mr. Lindell's "positions or roles" at My Pillow, Inc., and state his "corresponding responsibilities" for each role. Bloom Decl. Ex. 4, ECF No. 81-4, at 10. My Pillow responded that Mr. Lindell was My Pillow's chief executive officer and chairman of the

board of directors at all relevant times. *Id.* Ex. 9, 81-9, at 4. This is a sufficient answer to the interrogatory, for the role of a chief executive officer and chairman of the board of directors is a familiar one. It is not a position that is obscure or unique to My Pillow, Inc.

### 2. Use of Promotional Codes (Interrogatories 18(a) and 19)

In Interrogatory 18(a)[3] and Interrogatory 19, Smartmatic asked My Pillow to produce broad swaths of information related to the use of promotional codes used during certain broadcasts identified in the Complaint. My Pillow provided a complete answer to Interrogatory 18(a). Interrogatory 19 is unreasonably overbroad, but My Pillow will produce information responsive to that piece of the interrogatory that is reasonable.

**Interrogatory 18(a).** Interrogatory 18(a) demanded that My Pillow identify every My Pillow employee who was responsible for the "creation, development, or use" of a series of promotional codes. Bloom Decl. Ex. 4, ECF 81-4, at 9. My Pillow responded by stating that "Mr. Lindell was responsible for approving the promotional codes which were developed in conjunction with influencers and hosts" of various broadcasts. *Id.* Ex. 9, ECF 81-9, at 3. My Pillow then stated that one of its employees would enter the code into the My Pillow ordering system so a customer wishing to purchase a product using a particular code could receive a discount. *Id.* Other than knowing that it was in fact a My Pillow employee who entered that information into the My Pillow ordering system for each code, My Pillow has no additional information to provide.

---

[3] Defendants agree with the explanation for designating this Interrogatory as "Interrogatory 18(a)" stated in footnote 6 on page 18 of Smartmatic's Memorandum.

Smartmatic argues that it is entitled to obtain "the identities of the MyPillow employees involved with the promotional codes." Smartmatic Mem. 21. My Pillow's answer to the Interrogatories provides that information. The employees who performed the data entry task of inputting the promotional codes into the My Pillow systems had no meaningful involvement in the creation, development, or use of the promotional codes. Those individuals performed a task that had nothing to do with the creation or development of the promotional codes. My Pillow provided a complete answer to Interrogatory 18(a).

As an additional point, Smartmatic's Interrogatory 18(a) does not clearly specify all promotional codes it seeks information about. Rather, it generally describes a vast body of information which Smartmatic apparently expects Defendants to sift through in order to ascertain which promotional codes Interrogatory 18(a) relates to. This is not a reasonable or proper use of an interrogatory. While My Pillow's answer to Interrogatory 18(a) is complete without specific identification of affected promotional codes, this issue does affect My Pillow's responses to Interrogatory 19.

**Interrogatory 19.** Interrogatory Number 19 first asks My Pillow to identify every advertisement, product deal, or promotional code "related to the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, LINDELL APPEARANCES, 2020 PRESIDENTIAL ELECTION, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN." The second part of Interrogatory 19 asks My Pillow to identify the revenue My Pillow earned from purchases that arose from every single one of those advertisements, product deals, or promotional codes. *Id.* Ex. 4, ECF 81-4, at 10.

Interrogatory 19 is unreasonable procedurally. The interrogatory demands that My Pillow review many hours of programs to identify the information requested by Smartmatic. Smartmatic is equally capable of reviewing the programs to identify the promotional codes that it is interested in. My Pillow is not obligated to do that work for Smartmatic. If Smartmatic wants to obtain information about revenue related to promotional codes or deals, Smartmatic must identify the promotional codes or deals that it is placing at issue.

Second, Interrogatory 19 is also unreasonably overbroad. Each of the words in all capital letters in the interrogatory is a defined term in Smartmatic's Interrogatories. To even understand what the interrogatory seeks requires reference to each of these eight definitions, which are themselves extremely broad and which incorporate *other* defined terms. For example:

- "MY PILLOW" is defined to mean "Defendant My Pillow and its past or present subsidiaries, affiliates, attorneys, agents, representatives, officers, directors, employees, or other persons acting on its behalf, including any regional affiliates or contributors, whether paid or unpaid, including all radio and television appearances made by persons acting as spokespersons for MY PILLOW." *Id.* at 5-6.

- "ACCUSED PROGRAMS" is defined to mean "the Internet programs, radio programs, television programs, and documentaries identified in paragraph 81-108, 110-116, and 117-126 of the COMPLAINT, including, but not limited to, the programs entitled *Absolute Proof*, *Scientific Proof*, *Absolute Interference*, and *Absolutely 9-0*, and the Cyber Symposium broadcasted on LindellTV.com and Frankspeech.com." *Id.* at 2.

- "DEFAMATORY BROADCASTS" is defined to mean "any broadcast and the complete program in which any of the DEFAMATORY STATEMENTS appeared, including without limitation, the broadcasts and rebroadcasts identified in the COMPLAINT." *Id.* at 3. "DEFAMATORY STATEMENT(S)" has its own definition, which is "all statements the COMPLAINT alleges are defamatory, including without limitation the

15

> statements identified in Paragraphs 76-78, 80-108, 110-113, 114-115, 117-127, 130-133, 137, 143, 150, 158, 165, 170, and 176 of the COMPLAINT." *Id.*

- "LINDELL APPEARANCES" is defined to mean "the in-person appearances made by LINDELL, including without limitation the appearances identified in paragraphs 76, 77, 78, 82, and 117-126 of the COMPLAINT." *Id.* at 5.

The burden imposed by Interrogatory 19 to even fully understand the interrogatory, much less identify and provide information responsive to it, is unreasonable, where Smartmatic is capable of specifying the information it is interested in without abstruse catch-all descriptions of documents in which the information might be hidden.

The second part Interrogatory 19 asks My Pillow to identify the revenue My Pillow earned from purchases that arose from every single one of those advertisements, product deals, or promotional codes in the overbroad interrogatory. *Id.* Defendants have conducted a business records search for responsive documents showing My Pillow's revenue for the specific promotional codes listed in Interrogatory 18(a) prior to that interrogatory's broad catch-all reference to the string of defined terms. That information should be produced prior to the hearing on this motion.

My Pillow's responses to Interrogatories 18(a) and 19 meet its obligation with respect to the interrogatories.

### 3. "Defamatory Publications" (Interrogatories 1 and 15)

Next, Smartmatic argues that Defendants have not properly responded to two interrogatories requesting information about the broadcasts identified in the Complaint.

**Interrogatory 1.** Interrogatory 1 asks the Defendants to identify statements about Smartmatic that they have published, including the date and location of publication.

16

Smartmatic later "clarified in the meet-and-confer process that it was only asking the Defendants to identify publications of the ACCUSED PROGRAMS that occurred at their direction." Smartmatic Mem. 25. Defendants' answer directed Smartmatic to the documents produced in the litigation and attached to the Complaint. *Id*. at 23.

It is not reasonable for Smartmatic to demand that Defendants watch the "ACCUSED PROGRAMS" and identify each statement about Smartmatic within those programs. Smartmatic is capable of doing that work itself. That is the process contemplated by Fed. R. Civ. P. 33(d). The case cited by Smartmatic, *Firstcom, Inc. v. Qwest Corp.*, Civil Action No. 04-0995(ADM/JJG), 2006 U.S. Dist. LEXIS 107079, at *10 (D. Minn. Feb. 16, 2006), is not to the contrary, for the issue in that case was identification of the business records that contained the information responsive to the interrogatory. Here, there is no question which records contain the statements about Smartmatic, because Smartmatic has identified them – the "ACCUSED PROGRAMS."

**Interrogatory 15.** Smartmatic's Interrogatory 15 requests Defendants "identify all metrics You use to quantify the number of individuals who viewed an ACCUSED PROGRAM or DEFAMATORY BROADCAST and provide the corresponding data for each ACCUSED PROGRAM or DEFAMATORY BROADCAST." The definitions of "ACCUSED PROGRAM" and "DEFAMATORY BROADCAST" include the broadcast of any program or media in which alleged defamatory statements appeared, including without limitation, the broadcasts and rebroadcasts identified in the Complaint, and media that is hosted on third-party servers.

To the extent that Defendants have "metrics" data, that data is contained in the documents Defendants have produced or will produce. However, as stated in Defendants' supplemental answers to Interrogatory 15, Defendants do not accept that data they received from a third party is accurate or complete, and accordingly they do not "use" the data. Bloom Decl. Ex. 19 at 9, ECF no. 81-19; Bloom Decl. Ex. 20 at 9, ECF no. 81-20.

### 4.     Donald Trump (Interrogatory 9)

Interrogatory 9 asks Defendants to "identify all communications or interactions You had with DONALD TRUMP, the TRUMP ADMINISTRATION, the TRUMP CAMPAIGN, or the RNC, between January 1, 2020 and the filing of the COMPLAINT, and for each communication or interaction, identify the substance of the communication or interaction, who the communication was with, and the date, time, and location of each communication or interaction." Smartmatic theorizes that one or more Defendants attempted to enrich themselves by currying favor with Donald Trump, the Trump administration, and the Donald Trump 2020 election campaign. Smartmatic Mem. at 29 ("Smartmatic's request that Defendants identify their communications with President Trump … is clearly relevant because it relates to their motive to curry favor with Trump and sell pillows to his followers while defaming Smartmatic."). Defendants have produced or will produce any responsive written communications. However, Smartmatic seeks to compel a response concerning any oral communications. Smartmatic Mem. 27-30.

It is too much to expect that someone could prepare a log of such communications from so long ago. This kind of inquiry would only be appropriate, if at all, at a deposition. Moreover, the burden imposed by attempting to provide a response to Interrogatory 9

18

concerning oral communications outweighs any marginal benefit that a response might yield. Interrogatory 9 is not limited to any specific subject matter relevant to Smartmatic's claims. The interrogatory requests "all communications" between the listed parties. At most Smartmatic might seek information about communications between the listed parties that are relevant to the claims and defenses in this lawsuit. *See Marco Techs. v. Midkiff*, No. 19-cv-2323 (PJS/LIB), 2020 U.S. Dist. LEXIS 259978, at *59 (D. Minn. Dec. 7, 2020) (narrowing party's request for "all communications" to only permit discovery on specific and relevant communications). Smartmatic offers no explanation why "all communications" between the listed parties (even communications that do not relate to Smartmatic, election machines, or "selling pillows to [Mr. Lindell's] followers") are relevant. The interrogatory is plainly overbroad. And while it is one thing for Defendants to search written records for communications, it is quite another to demand that Mr. Lindell try to reconstruct, long after the fact, any and all responsive oral communications regardless of their subject matter. Any relevance of the information sought by Interrogatory 9 to the issues in this litigation is outweighed by the burden and imposed on Mr. Lindell by trying to respond to the interrogatory.

### III. Conclusion.

Smartmatic's Motion to Compel should be denied. Portions of its motion should be denied on the merits. The remainder should be denied as premature because Defendants are producing the documents and information that Smartmatic has requested.

DATED: February 17, 2023.                    **PARKER DANIELS KIBORT LLC**

                                                                  By */s/ Andrew D. Parker*
                                                                  Andrew D. Parker (MN Bar No. 195042)
                                                                  Matthew R. Eslick (MN Bar No. 388494)
                                                                  888 Colwell Building
                                                                  123 N. Third Street
                                                                  Minneapolis, MN 55401
                                                                  Telephone: (612) 355-4100
                                                                  Facsimile: (612) 355-4101
                                                                  parker@parkerdk.com
                                                                  eslick@parkerdk.com

                                                            **ATTORNEYS FOR DEFENDANTS**