# EXHIBIT A

Preliminary Search Terms
***Smartmatic USA Corp., et al. v. Michael J. Lindell, et al.*, Case No. 22-cv-00098-WMW-JFD**

Smartmatic provides this list of preliminary search terms to facilitate discussions between the parties concerning Defendants' production of ESI in the above-referenced case. Smartmatic reserves the right to request that Defendants run additional search terms to comply with their discovery obligations.

| |
|---|
| Smartmatic! OR Smart-matic! OR "Smart Matic" OR SGO OR SMMT OR SMT OR !@smartmatic.com OR !@sgo.com or !@smartmatic.usa |
| Sidney! OR Sydney! OR Powell! |
| Giuliani! OR Rudy! OR !@giulianipartners.com OR !@cgbstrategies.com |
| General! OR Flynn! |
| Lin OR Wood! |
| Waldron! |
| Oltmann! |
| Deperno! OR Depurno! |
| Colbeck! |
| "Dr. Frank" OR Frank! OR Douglas OR Doug |
| "Dr. Shiva" OR Ayyadurai! |
| Merritt OR spyder OR spider |
| Conan! OR Hayes! |
| Montgomery! OR Dennis! |
| "ES&S!" OR "Election Systems & Software!" |
| Hart OR Interciv! OR "Inter Civic" |
| Diebold! |

| |
|---|
| Dominion! OR !@dominionvoting.com |
| Bannon! OR "war room" |
| Ramsland! |
| Fanning! |
| "American Report" OR "The American Report" |
| Alan! OR Jones! |
| Brannon w/5 Howse! OR Howes! |
| Metaxas! OR Metaxes! |
| (Pearson! OR Kemp! OR King! OR Witmer! OR Feehan! OR Bowyer! OR Ducey! Or Wolf! OR Raffensperger! OR Cegavske! OR Benson! OR Wolfe!) and (lawsuit! OR case! OR judge! OR court! OR elect! OR vot! OR fraud! OR suit! OR evid! OR Powell!) |
| (Trump! OR "White House" OR POTUS! OR Presiden! OR DJT OR Biden!) AND (elect! OR vote! OR voti! OR fraud! OR steal! OR stol! OR hack! OR rigg! OR flip! OR fix! OR alter! OR delet! OR manip! OR switch! OR Venezuela OR Chavez OR Maduro OR dictat! OR prov! OR proof OR evid OR misinform! OR disinform!) |
| OANN! or OAN! or "One America News" OR (Herring! OR (Robert! OR Charles!) OR !@oann.com |
| ("Los Angeles" or "L.A." or "LA County" or VSAP!) AND (elect! OR vote! OR voti! OR fraud! OR steal! OR stol! OR hack! OR rigg! OR flip! OR audit! OR investig! OR comprom! OR tamp! OR vulnerab! OR breach! OR backdoor! OR "back door!" OR secur! OR manip! OR switch! OR evidence! OR tabulat! OR cyber! OR secure! OR securit!) |
| (Elect! OR fraud! OR vot! OR software! OR machine! OR ~~glitch!~~ OR eviden! OR algorithm! OR tabulat! OR ~~code~~ OR backdoor! OR "back door!" OR "source code") w/50 (fraud! OR rig! OR fix! OR steal! OR stol! OR security! OR alter! OR accura! OR audit! OR proof! OR prov! OR debunk! OR lawsuit! OR eviden! OR bann! OR cyber! OR vulnerab!) |
| DOJ! OR "Department of Justice!" OR Barr OR "Attorney! General" OR "Homeland Security" OR "DHS" OR CISA! |
| "tour bus" OR "bus tour" OR "March for Trump" OR "March 4 Trump" |
| Absolut!  OR "Absolute Proof" |
| Scientif! AND proof! |

| |
|---|
| Absolut! AND interf! |
| Absolut! AND ("9-0" OR "90" OR 9 OR 0) |
| Dobbs OR Bartiromo OR Pirro OR "Judge Jeanine" |
| Cybersymposiu! OR "cyber symposium" |

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

U.S. DOMINION, INC., et al.,

       *Plaintiffs*,

   v.

MY PILLOW INC., et al.,

       *Defendants*.

   v.

SMARTMATIC USA CORP.,
SMARTMATIC INT'L HOLDING B.V.,
SGO CORPORATION LIMITED, and
HAMILTON PLACE STRATEGIES, LLC,

       *Third-Party Defendants*.

Civil Action No. 1:21-cv-445 (CJN)

U.S. DOMINION, INC., et al.,

       *Plaintiffs*,

   v.

RUDOPLH W. GIULIANI,

       *Defendant*.

Civil Action No. 1:21-cv-213 (CJN)

U.S. DOMINION, INC., et al.,

      *Plaintiffs*,

      v.

SIDNEY POWELL, et al.,

      *Defendants*.

Civil Action No. 1:21-cv-40 (CJN)

## PROTECTIVE ORDER GOVERNING THE PRODUCTION AND EXCHANGE OF CONFIDENTIAL INFORMATION

Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion"), Third-Party Defendant Hamilton Place Strategies, and Defendants Michael J. Lindell, MyPillow, Inc., Rudolph W. Giuliani, Sidney Powell, Sidney Powell, P.C., and Defending the Republic, Inc. ("Parties") are engaged in discovery proceedings, which include, among other things, taking depositions, answering interrogatories, and producing documents. The Parties believe that certain information they have produced or will produce may contain information that is proprietary, commercially sensitive, or non-public. Under Rules 5.2 and 26(c) of the Federal Rules of Civil Procedure, this Order Governing the Production and Exchange of Confidential Information (the "Order") will govern the handling of documents, testimony (in any form whether by affidavit, declaration, or deposition), exhibits, transcripts, written discovery requests, interrogatory responses, responses to requests for admission, responses to requests for documents, and any other information or material produced, given, or exchanged, including any information contained therein or derived therefrom

2

("Discovery Material"), by or among any Party or non-Party providing Discovery Material (each a "Producing Party") in the Litigation[1] to the party receiving the Discovery Material ("Receiving Party"). It is **HEREBY ORDERED THAT**:

1. Any Discovery Material produced in the Litigation will be used, except by the Producing Party, solely for purposes of this Litigation and no Receiving Party will provide Discovery Material to any person or entity (including for any other litigation) or make any Discovery Material public except as permitted by this Order and in this Litigation. Notwithstanding the limitations in the preceding sentence, (i) any Party may use Discovery Material lawfully obtained independently of this Litigation for any purpose consistent with any other limitations placed on that Discovery Material; (ii) Dominion may produce Defendants' Discovery Material in *US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corp. v. Fox News Network, LLC*, Case No. N21C-03-257 EMD, pending in the Superior Court of the State of Delaware, *US Dominion, Inc. v. Fox Corporation,* Case No. N21C-11-082 EMD, pending in the Superior Court of the State of Delaware, and *US Dominion, Inc. v. Newsmax Media Inc.,* Case No. N21C-08-063 EMD, pending in the Superior Court of the State of Delaware, in response to third-party subpoenas lawfully issued and served on Defendants in those cases; and (iii) Sidney Powell may produce Discovery Material in the Texas

---

[1] "Litigation" refers to the three related actions: *US Dominion Inc., et al. v. My Pillow, Inc., et al.*, No. 1:21-cv-00445-CJN (D.D.C.), *US Dominion, Inc., et al. v. Powell, et al.*, No. 1:21-cv-00040-CJN (D.D.C.), and *US Dominion, Inc., et al. v. Giuliani*, No. 1:21-cv-00213-CJN (D.D.C.). This Order does not cover Third-Party Defendants Smartmatic USA Corp., Smartmatic International Holding B.V., or SGO Corporation Ltd.

The parties reserve the right to move the Court to expand this Order to include the parties in *US Dominion, Inc., et al. v. Byrne*, No. 1:21-cv-02131-CJN (D.D.C.) and *US Dominion, Inc., et al. v. Herring Networks, et al.*, No 1:21-cv-02130-CJN (D.D.C.), if the Court orders the parties in the *Byrne* and *Herring* cases to coordinate for discovery purposes with the parties in the Litigation.

Bar case brought against her, *Commission for Lawyer Discipline v. Sidney Powell*, No. DC-22-02562 (Dist. Ct., Dallas County, TX), but if such Discovery Material is designated "Confidential" or "Attorneys' Eyes Only," then Powell must notify the Court that she intends to produce such Discovery Material and certify in writing that she will not use or produce the Discovery Material for any other purpose.

2.      Any Producing Party may designate any Discovery Material as "Confidential Discovery Material" under the terms of this Order where such Party in good faith believes that such Discovery Material contains Confidential Discovery Material. Confidential Discovery Material is defined as material that consists of non-public customer information or information that is proprietary or otherwise commercially sensitive.

3.      Any Producing Party may designate any Discovery Material as "Attorneys' Eyes Only Discovery Material" under the terms of this Order where such Party in good faith believes that such Discovery Material contains Attorneys' Eyes Only Discovery Material. Attorneys' Eyes Only Discovery Material is defined as material that contains extremely Confidential information such that disclosure other than as permitted under Paragraph 9 of this Order is likely to cause substantial injury to the Producing Party.  The Attorneys' Eyes Only designation includes, but is not limited to, the following categories of information:  (i) non-public damages-related and financial information, including confidential pricing, customer, profit, sales, or other financial information; (ii) confidential business, marketing, or strategic plans, including business, marketing, and technical information regarding the future provision of services; and (iii) confidential and commercially sensitive trade secrets or technical information.  To the extent source code is determined to be relevant and discoverable, the Parties will agree to terms and entry of a separate protective order for the source code before any is produced.

4.     Notwithstanding any other provision of this Agreement, no Receiving Party may provide Discovery Material designated as Confidential Material or Attorneys Eyes Only Material to any person or entity involved in the Litigation unless and until that person or entity confirms their understanding of, and agreement to, abide by the terms of this Order.

5.     The designation of Discovery Material as Confidential Discovery Material or Attorneys' Eyes Only Discovery Material will be made in the following manner:

    a.  In the case of documents or other written materials, including affidavits and declarations but not pre-trial deposition or other pre-trial testimony: (i) by affixing the legend "Confidential" or "Attorneys' Eyes Only" to each page containing any Confidential or Attorneys' Eyes Only Discovery Material; or (ii) in the case of electronically stored information produced in native format by affixing the legend "Confidential" or "Attorneys' Eyes Only" to the media containing the Discovery Material (e.g., CD, DVD, thumb drive, external hard drive, or secure file transfer).

    b.  In the case of testimony: (i) by a statement on the record, by counsel, at the time of such disclosure or, in the case of a deposition or other pre-trial oral testimony, before the conclusion of the deposition or pre-trial testimony; or (ii) by written notice, sent to all Parties within 15 business days of receipt of the final deposition transcript or other pre-trial testimony; provided that only those portions of the transcript designated as Confidential or Attorneys' Eyes Only Discovery Material will be deemed Confidential or Attorneys' Eyes Only Discovery Material. Each deposition will be deemed to be Attorneys' Eyes Only Discovery Material until 15 business days after counsel receive a copy of the final transcript,

after which the deposition will be treated in accordance with its confidentiality designation, if any. The Parties may modify this procedure for any particular deposition, through agreement in writing before, or on the record at, such deposition, without further order of the Court.

    c. In the case of any other Discovery Material, by written notice that the Discovery Material constitutes Confidential or Attorneys' Eyes Only Discovery Material.

6.    The designation of Discovery Material as Confidential or Attorneys' Eyes Only Discovery Material will constitute a representation that such Discovery Material has been reviewed by an attorney representing the Party making the designation, and that there is a good faith basis for such designation.

7.    Inadvertent failure to designate Discovery Material as Confidential or Attorneys' Eyes Only Discovery Material does not constitute a waiver of such claim and may be corrected. A Producing Party may designate as Confidential or Attorneys' Eyes Only any Discovery Material that has already been produced, including Discovery Material that the Producing Party inadvertently failed to designate as Confidential or Attorneys' Eyes Only, (i) by notifying in writing the Receiving Party to whom the production has been made that the Discovery Material constitutes Confidential or Attorneys' Eyes Only Discovery Material, and (ii) providing a replacement copy of the Discovery Material marked in a manner consistent with Paragraph 5. After receiving such supplemental notice, the Parties will treat the Discovery Material so designated as Confidential or Attorneys' Eyes Only Discovery Material, and such Discovery Material will be fully subject to this Order from the date of such supplemental notice forward. The Party receiving such notice will make a reasonable, good-faith effort to ensure that any analyses, memoranda, notes, or other such materials generated that include or are based upon

such newly designated information are immediately treated as containing Confidential or Attorneys' Eyes Only Discovery Material. In addition, after receiving such supplemental written notice, any receiving Party that disclosed the Discovery Material before its designation as "Confidential" or "Attorneys' Eyes Only" will exercise its best efforts to ensure (i) the return or destruction of such Discovery Material, if it was disclosed to anyone not authorized to receive it under Paragraph 8 or Paragraph 9 of this Order, (ii) that any documents or other materials derived from such Discovery Material are treated as if the Discovery Material had been designated as "Confidential" or "Attorneys' Eyes Only" when originally produced, (iii) that such Discovery Material is not further disclosed except in accordance with the terms of this Order, and (iv) that any such Discovery Material, and any information derived therefrom, is used solely in accordance with this Order.

8.      Except as otherwise provided in this Order, Confidential Discovery Material may be disclosed, summarized, described, characterized, or otherwise communicated, orally or in writing, or made available in whole or in part, only to the following persons for use in connection with the Litigation and in accordance with this Order:

      a. The Parties' current employees who are assisting with or making decisions concerning this Litigation, to the extent deemed reasonably necessary by counsel of record for the purpose of assisting in the prosecution or defense of the Litigation;

      b. Counsel for the Parties in the Litigation (including in-house counsel), and the partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such counsel (including outside copying and litigation support services) who are assisting with the Litigation;

7

c.  Subject to Paragraph 4, experts, consultants, or independent litigation support services assisting counsel for the Parties, and partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such experts or consultants (including outside copying services and outside support services) who are assisting with the Litigation;

d.  As to persons not otherwise covered by Subparagraphs 8(a)–(c), a party may disclose material designated as "Confidential" to persons (1) who appear as an author or recipient on the face of the document to be disclosed; or (2) for which a good faith basis exists to believe the potential witness or deponent has knowledge of the contents of a document;

e.  Subject to Paragraph 4, witnesses or deponents, and their counsel, but only to the extent necessary to conduct or prepare for depositions or testimony in the Litigation;

f.  The Court, persons employed by the Court, translators, and videographers and court reporters who are recording and transcribing any hearing, trial, or deposition in the Litigation or any appeal therefrom; and

g.  Any other person only upon (i) order of the Court entered upon notice to the Parties, or (ii) written stipulation or statement on the record of agreement by the Producing Party who provided the Discovery Material being disclosed, provided that such person signs an undertaking in the form attached as Exhibit A hereto.

h.  Any videographer, translator, court reporter, or transcriber who reports, tapes, translates, or transcribes testimony in this Litigation at a deposition will agree by a statement on the record, before recording or transcribing any such testimony

constituting Confidential Discovery Materials, that all such testimony and information revealed at the deposition is and will remain confidential and will not be disclosed by such translator, videographer, reporter, or transcriber except to the attorneys for each Party and any other person who is present while such testimony is being given, and that copies of any transcript, reporter's notes or any other transcription records of any such testimony will be retained in confidentiality and safekeeping by such videographer, translator, reporter, or transcriber or will be delivered to the undersigned attorneys.

9. Except as otherwise provided in this Order, Attorneys' Eyes Only Discovery Material may be disclosed, summarized, described, characterized, or otherwise communicated, orally or in writing, or made available in whole or in part, only to the following persons for use in connection with the Litigation and in accordance with this Order:

    a.   Counsel for the Parties in the Litigation (including in-house counsel), and the partners, associates, paralegals, secretaries, clerical, regular and temporary employees of counsel ("Counsel");

    b.   Service vendors of Counsel for the Parties (including outside copying and litigation support services) who are assisting with the Litigation;

    c.   No more than five corporate designees for the Receiving Party;

    d.   Subject to Paragraph 4, experts, consultants, or independent litigation support services assisting counsel for the Parties, and partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such experts or consultants (including outside copying services and outside support services) who are assisting with the Litigation;

e. Subject to Paragraph 4, witnesses or deponents, and their counsel, but only to the extent necessary to conduct or prepare for depositions or testimony in the Litigation;

f. Any person indicated on the face of a document or accompanying covering letter, email, or other communication to be the author, addressee, or an actual or intended recipient of the document, or, in the case of meeting minutes and presentations, anyone identified on the document as an attendee of the meeting;

g. The Court, including any clerk, translator, stenographer, videographer, or other person having access to Attorney's Eyes Only Information by virtue of his or her position with the Court, and including the jury at trial or as exhibits to motions; and

h. Any other person only upon (i) order of the Court entered upon notice to the Parties, or (ii) written stipulation or statement on the record of agreement by the Producing Party who provided the Attorneys' Eyes Only Discovery Material being disclosed, and provided that such person signs an undertaking in the form attached as Exhibit A hereto.

i. Any videographer, translator, court reporter, or transcriber who reports, tapes, translates, or transcribes testimony in this Litigation at a deposition will agree by a statement on the record, before recording or transcribing any such testimony constituting Attorneys' Eyes Only Discovery Materials, that all such testimony and information revealed at the deposition is and will remain confidential and will not be disclosed by such translator, videographer, reporter, or transcriber except to the attorneys for each Party and any other person who

10

is present while such testimony is being given, and that copies of any transcript, reporter's notes or any other transcription records of any such testimony will be retained in confidentiality and safekeeping by such videographer, translator, reporter, or transcriber or will be delivered to the undersigned attorneys.

10.    Confidential Discovery Material may be provided to persons listed in Paragraph 8(c) and Attorneys' Eyes Only Discovery Material may be provided to persons listed in Paragraph 9(d) only to the extent necessary for such expert or consultant to prepare a written opinion, to prepare to testify, or to assist counsel in the Litigation, provided that such expert or consultant (i) is not a current or former employee of Dominion subject to a non-disclosure agreement, (ii) is not a current competitor of Dominion, an employee of a current competitor of Dominion, or advising or discussing employment with, or a consultant to, a current competitor of Dominion, (iii) agrees to use, and does use, the Discovery Material solely in connection with the Litigation and (iv) agrees to be bound by the terms of this Order by signing an undertaking in the form attached as Exhibit A hereto. Subparagraph (i) above does not apply to any expert or consultant of Dominion. Counsel for the Party showing, providing, or disclosing Confidential or Attorneys' Eyes Only Discovery Material to any person required to execute an undertaking under this Paragraph will be responsible for obtaining such signed undertaking and retaining the original, executed copy thereof. "Competitors" are persons or entities endeavoring to engage in the same or similar lines of business, who provide the same or similar services, who sell the same or similar products, or who operate in the same markets, as well as any persons who are engaged in any of these activities.

11.    Every person to whom Confidential or Attorneys' Eyes Only Discovery Material is disclosed, summarized, described, characterized, or otherwise communicated or made

available, orally or in writing, in whole or in part, will be advised that the information is being disclosed subject to the terms of this Order and may not be disclosed or used for purposes other than those permitted hereunder. Each such person will maintain the Confidential or Attorneys' Eyes Only Discovery Material, or information derived therefrom, in a manner reasonably calculated to prevent unauthorized disclosure. Any Party issuing a subpoena to a non-Party will enclose a copy of this Order and notify the non-Party that the protections of this Order will apply to Discovery Materials of such non-Party.

12.     Any pleading, brief, memorandum, motion, letter, affidavit, declaration, or other document filed with the Court that discloses, summarizes, describes, characterizes, or otherwise communicates Confidential or Attorneys' Eyes Only Discovery Materials (a "Confidential Filing") must be filed with the Court under seal in accordance with Local Rule 5.1(h), along with a cover page bearing the caption of the Litigation and the title of the Confidential Filing and stating:

> **YOU ARE IN POSSESSION OF A DOCUMENT FILED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA THAT IS CONFIDENTIAL AND FILED UNDER SEAL.**
>
> **If you are not authorized by Court Order to view or retrieve this document read no further than this page. You should contact the following person:**
>
> **[Filing Attorney's or Party's Name]**
> **[Filing Attorney's Law Firm Name]**
> **[Filing Attorney's or Party's Address]**
> **[Filing Attorney's or Party's Telephone Number]**

No other information should appear on the cover page. Every page of a Confidential Filing will have a footer stating "THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER." A Party may omit this footer for voluminous exhibits.

13.     A Party making a Confidential Filing must file a copy of the Confidential Filing for public inspection that omits only the information that the Party has good cause to believe should continue to be sealed.  Notwithstanding the foregoing, the Parties have no obligation to file public versions of any exhibits or attachments to a Confidential Filing, unless otherwise ordered by the Court.

14.     All materials filed pursuant to Paragraph 13 will be released from confidential treatment only upon further order of this Court, either on its own motion or pursuant to the procedure set forth in Paragraph 15 below. The provisions of this paragraph may be waived only with the written consent of the Producing Party.

15.     Any Party who objects to the continued restriction on public access to any Confidential or Attorneys' Eyes Only Filing, or any portion thereof, will give written notice of the objection to the Party that designated the Discovery Material as Confidential or Attorneys' Eyes Only ("the Designating Party"). To the extent that the Designating Party seeks to continue the restriction on public access to the Confidential or Attorneys' Eyes Only Filing, or any portion thereof, the Designating Party will file an application with the Court within seven (7) days for a judicial determination as to whether good cause exists for continued restricted access to the Confidential Filing, or any portion thereof.

16.     If a Party objects to the designation of Discovery Material as Confidential or Attorneys' Eyes Only Discovery Material, that Party ("the Objecting Party") will send written notice to the Designating Party that includes a date and time for a meet and confer to discuss the disputed designation. The Objecting Party and the Designating Party will thereafter meet and confer either at the suggested date and time or, to the extent the Designating Party is unavailable at the suggested date and time, at some other agreed date and time. If the meet and confer

procedure does not resolve the dispute, the Objecting Party will, within twenty-one (21) days of the meet and confer, file a motion with the Court to strike the designation. The Producing Party will, within fourteen (14) days, file a response, and the Objecting Party will file a reply within seven (7) days, after which the matter will be fully briefed and ripe for the Court to resolve the dispute. A hearing may be held at the discretion of the Court. While such an application is pending, the Discovery Material or testimony in question will be treated as Confidential or Attorneys' Eyes Only Discovery Material pursuant to this Order. The burden of establishing that any Discovery Material was properly designated as Confidential or Attorneys' Eyes Only Discovery Material is on the Designating Party. If an Objecting Party seeking to challenge any designation of Discovery Material or testimony as Confidential or Attorneys' Eyes Only fails to object and propose a meet and confer as described in Paragraph 16, then the Objecting Party will be deemed to have permanently waived its right to challenge the designation of the disputed Discovery Material as Confidential or Attorneys' Eyes Only.

17. The Parties reserve the right to apply, under Rules 5.2(e) and 26 of the Federal Rules of Civil Procedure and Local Rule 5.1(h), for an order seeking additional safeguards with respect to the use and handling of Discovery Material or to modify the terms of this Order.

18. Entering into this Order, or agreeing to or producing or receiving Discovery Material or otherwise complying with the terms of this Order, will not:

    a. prejudice in any way the rights of any Party to (i) seek production of any documents or information in discovery, or (ii) object to the production of any documents or information on the ground that it is not subject to discovery;

    b. operate as an admission by any Party that any particular Discovery Material constitutes Confidential or Attorneys' Eyes Only Discovery Material or contains

or reflects trade secrets or any other type of confidential information;

c.  prejudice in any way the rights of any Party to (i) petition the Court for a further protective order relating to any purportedly Confidential or Attorneys' Eyes Only Discovery Material, or (ii) seek a determination by the Court whether any Discovery Material or Confidential or Attorneys' Eyes Only Discovery Material should be subject to the terms of this Order;

d.  prevent any Producing Party from agreeing in writing to alter or waive the provisions or protections provided herein with respect to their designation of any particular Discovery Material;

e.  prejudice in any way the rights of any Party to object to the relevance, authenticity, use, or admissibility into evidence of any document, testimony, or other evidence subject to this Order;

f.  preclude any Party from objecting to discovery that it believes to be otherwise improper; or

g.  operate as a waiver of any attorney-client, work product, business strategy, trade secret or other privilege.

19.  This Order has no effect upon, and will not apply to, a Producing Party's use or disclosure of its own Discovery Material for any purpose. Nothing herein will prevent a Producing Party from disclosing its own Discovery Material.

20.  If Discovery Material that is subject to a claim of attorney-client privilege, attorney work product, or any other applicable privilege or ground on which production of that information should not be made to any Party ("Inadvertent Production Material") is inadvertently produced by a Producing Party or Parties, such inadvertent production will in no way prejudice

or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, work product, or other applicable privilege.

    a. A claim of inadvertent production will constitute a representation by the Party claiming inadvertent production that the Inadvertent Production Material has been reviewed by an attorney for the Party claiming inadvertent production and that there is a good faith basis for the claim of inadvertent production.

    b. If a claim of inadvertent production is made under this Order, with respect to Discovery Material then in the custody of another Party, the Party possessing the Inadvertent Production Material will: (i) refrain from any further examination or disclosure of the claimed Inadvertent Production Material; and (ii) if requested, promptly make a good faith effort to destroy all such claimed Inadvertent Production Material (including summaries and excerpts) and all copies thereof, and certify in writing to that fact. Once a claim of inadvertent production is made, no Party may use the Inadvertent Production Material for any purpose until further order of the Court.

    c. The Party claiming inadvertent production and a Receiving Party will follow the same procedure set forth in Paragraphs 15 and 16 for challenging the designation of Inadvertent Production Material; while any motion relating to the Inadvertent Production Material is pending, the Inadvertent Production Material in question will be treated in accordance with Paragraph 7. A Receiving Party may not assert as a ground for challenging privilege the fact of the inadvertent production, nor may it include or otherwise disclose in any filing relating to the challenge, as an attachment, exhibit, or otherwise, the Inadvertent Production Material (or any

portion thereof).

21.    Nothing herein will be deemed to waive any applicable common law or statutory privilege or work product protection.

22.    In the event additional Parties join or are joined in the Litigation, they will not have access to Confidential or Attorneys' Eyes Only Discovery Material until the newly joined Party by its counsel has executed this Order and filed with the Court its agreement to be fully bound by it.

23.    Subject to the requirements of Rules 5.2(e) and 26 of the Federal Rules of Civil Procedure and Local Rule 5.1(h), the provisions of this Order will, absent written permission of the Designating Party or further order of the Court, continue to be binding throughout and after the conclusion of the Litigation, including, without limitation, any appeals therefrom, except as provided in Paragraph 24.

24.    In the event that any Confidential or Attorneys' Eyes Only Discovery Material is used in open court during any court proceeding or filed, marked, or lodged as a trial exhibit, the material will lose its confidential status and become part of the public record, unless the Designating Party applies for and obtains an order from this Court specifically maintaining the confidential status of particular material. Before any court proceeding in which Confidential or Attorneys' Eyes Only Discovery Material is to be used, counsel will confer in good faith on such procedures that may be necessary or advisable to protect the confidentiality of any such Discovery Material.

25.    Within 60 days after receiving notice of the entry of an order, judgment, or decree finally disposing of the Litigation, or any other proceeding in which Confidential or Attorneys' Eyes Only Discovery Material is permitted to be used, including the exhaustion of all possible

appeals, and upon the written request of the Designating or Producing Party, all persons having received Confidential or Attorneys' Eyes Only Discovery Material will either (i) make a good-faith and reasonable effort to return such material and all copies thereof (including summaries, excerpts, and derivative works) to counsel for the Producing Party; or (ii) make a good-faith and reasonable effort to destroy all such Confidential or Attorneys' Eyes Only Discovery Material, and certify to that fact in writing to counsel for the Designating or Producing Party.  However, counsel for the Parties will be entitled to retain court papers, trial transcripts, and attorney work product containing Confidential or Attorneys' Eyes Only Discovery Material, provided that such counsel, and employees of such counsel, will maintain the confidentiality thereof and will not disclose such court papers, trial transcripts, or attorney work product containing Confidential or Attorneys' Eyes Only Discovery Material to any person except under a court order or agreement by the Designating and Producing Party or except as otherwise required by law. All materials returned to the Parties or their counsel by the Court likewise will be disposed of in accordance with this paragraph.

26.      If any person in possession of Confidential or Attorneys' Eyes Only Discovery Material receives a subpoena or other compulsory process seeking the production or other disclosure of Confidential or Attorneys' Eyes Only Discovery Material the person neither produced nor designated  (collectively, a "Demand"), the person will give written notice (by hand, email, or facsimile transmission) to counsel for the Designating and Producing Parties within three business days of receipt of such Demand (or if a response to the Demand is due in less than three business days, at least 24 hours prior to the deadline for a response to the Demand), identifying the Confidential or Attorneys' Eyes Only Discovery Material sought and enclosing a copy  of  the Demand, and must object to the production of the Confidential or

Attorneys' Eyes Only Discovery Material on the grounds of the existence of this Order. The burden of opposing the enforcement of the Demand will fall on the Designating Party. Nothing herein will be construed as requiring the person receiving the Demand or anyone else covered by this Order to challenge or appeal any order requiring production of Confidential or Attorneys' Eyes Only Discovery Material covered by this Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court or any other court. Compliance by the person receiving the Demand with any court order directing production under a Demand of any Confidential or Attorneys' Eyes Only Discovery Material will not constitute a violation of this Order.

27.     Absent court order, no person who is not a party to the Litigation who receives Confidential or Attorneys' Eyes Only Discovery Material as permitted under the terms of this Order ("a Non-Party") will reveal any Confidential or Attorneys' Eyes Only Discovery Material, or the information contained therein, to anyone not entitled to receive such Confidential or Attorneys' Eyes Only Discovery Material under the terms of this Order. In the event that Confidential or Attorneys' Eyes Only Discovery Material is disclosed to any person other than in the manner authorized by this Order, or that any information comes to the Non-Party's attention that may indicate there was or is likely to be a loss of confidentiality of any Confidential or Attorneys' Eyes Only Discovery Material, the Non-Party responsible for the disclosure or loss of confidentiality will immediately inform the Designating and Producing Party of all pertinent facts relating to the disclosure or loss of confidentiality, including, if known, the name, address, and employer of each person to whom the disclosure was made. The Non-Party responsible for the disclosure or loss of confidentiality will also make reasonable efforts to prevent disclosure of Confidential or Attorneys' Eyes Only Discovery Material by

each unauthorized person who receives the information.

28.     The Parties agree that the production of any Discovery Material by any non-Party is subject to and governed by the terms of this Order.

29.     If a Party violates this Order by releasing, leaking, or otherwise disclosing Confidential or Attorneys' Eyes Only Discovery Material to persons or entities not entitled to such Discovery Material under this Order, the Court will have authority to impose sanctions under Rule 37(b)(2)(A)(i)-(vi).

30.     This Court will retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

        **IT IS SO ORDERED**.

                                             _____
                                             CARL J. NICHOLS
                                             United States District Judge

DATE: December 6, 2022

**Exhibit A to Protective Order**

***U.S. Dominion, Inc., et al. v. Powell, et al.*, No. 1:21-cv-00040 (CJN)**
***U.S. Dominion, Inc., et al. v. Giuliani*, No. 1:21-cv-00213 (CJN)**
***U.S. Dominion, Inc., et al. v. Lindell, et al.*, No. 1:21-cv-00445 (CJN)**

## <u>UNDERTAKING</u>

I have read the Protective Order of _____, ___, 2022, in this action (the

"Order") and undertake to access and use Discovery Material, Confidential Material, and

Attorneys Eyes Only Material only as the Order permits.


Signed this ___ day of _____, 2022.

_____

[Name]

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | Case No. 22-cv-0098-WMW-JFD |
| Plaintiffs, | |
| v. | |
| MICHAEL J. LINDELL and MY PILLOW, INC., | |
| Defendants. | |

## PLAINTIFFS' SUPPLEMENTAL ANSWERS AND OBJECTIONS TO DEFENDANT MY PILLOW, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33(b), Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited (collectively, "Smartmatic"), by and through undersigned counsel, hereby provide the following answers and objections to Defendant My Pillow Inc.'s ("MyPillow") First Set of Interrogatories (the "Interrogatories" and, individually, each an "Interrogatory"). Smartmatic's answers are hereby provided without waiver of any questions or objections to relevancy or admissibility as evidence. These answers are specifically made subject to objection during any part of these proceedings.

## GENERAL OBJECTIONS

The following General Objections are incorporated into Smartmatic's responses as though fully set forth herein. The Specific Objections identified for the Interrogatories further identify additional objections specific to that Interrogatory. The General Objections are not waived, or in any way limited, by the Specific Objections. Smartmatic's agreement to provide any responsive and non-privileged information or documents in response to the Interrogatories shall not be

1

construed as a waiver of any right or objections to the Interrogatories or other discovery procedures. The production of any information or documents by Smartmatic shall be without prejudice to any objections Smartmatic may have as to the relevance or admissibility of any information or document at any hearing or trial.

1. Smartmatic objects to the Interrogatories to the extent that they might be interpreted as requiring Smartmatic to concede the relevance, materiality, or admissibility of the information sought by the Interrogatories. All of the following objections, answers, and responses are given without prejudice to and with the express reservation of Smartmatic's right to supplement or modify its objections, answers, and responses to the extent required and permitted by applicable law, to incorporate later discovered information, and to rely upon any and all such information and documents at trial or otherwise.

2. Smartmatic objects to the Interrogatories, including the Instructions and Definitions, to the extent that they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure, applicable case law, and the Court's orders in this case. Smartmatic specifically objects to the Interrogatories, including the Instructions and Definitions, to the extent that they purport to impose obligations different than or beyond those required by the Order Regarding Production of Electronically Stored Information (Dkt. 69).

3. Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, joint defense privilege, or by any other applicable privilege or immunity from production. Nothing contained in Smartmatic's responses to these Interrogatories is intended to be, or in any way should be deemed to be, a waiver of any such privilege or immunity. Any inadvertent production of information protected by the attorney-client privilege, prepared in anticipation of litigation or trial,

or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or other basis for objecting to the production of such material or its subject matter. Smartmatic expressly reserves the right to object to the use or introduction of such information.

4.      Smartmatic objects to the Interrogatories to the extent that they seek information that is confidential or proprietary to Smartmatic or its customers. If Smartmatic provides confidential or proprietary information in response to the Interrogatories, such production will be subject to the protective order entered by the Court.

5.      Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure under any confidentiality or protective order, or under any other order or stipulation that Smartmatic has entered into or is subject to with respect to any past or present litigation or other matter.

6.      Smartmatic objects to the Interrogatories to the extent that they seek information of third parties protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. An agreement to produce documents or information does not constitute an agreement to produce documents or information protected from disclosure under confidentiality, non-disclosure, or other agreements with third parties.

7.      Smartmatic objects to the Interrogatories to the extent that they seek information, the disclosure of which is prohibited by law, regulation, or order of a court or other authority of a foreign jurisdiction in which such information is located.

8.      Smartmatic objects to the Interrogatories to the extent that they are overbroad, unduly burdensome, vague, and ambiguous, and/or fail to describe the information sought with reasonable particularity. Smartmatic further objects to the Interrogatories as overbroad and unduly burdensome to the extent that they fail to specify reasonable time limitations. When Smartmatic

responds to an Interrogatory that it will produce documents sufficient to show the requested information subject to its objections and a reasonable search, that reasonable search will be governed by the objections and conditions set forth in Smartmatic's Responses and Objections to MyPillow's First Set of Requests for Production.

9.      Smartmatic objects to the Interrogatories to the extent that they seek "any" or "all" information on the grounds that such Interrogatories are overbroad and unduly burdensome.

10.      Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is either irrelevant to the subject matter of this lawsuit or not reasonably calculated to lead to the discovery of relevant or admissible evidence.

11.      Smartmatic objects to the Interrogatories as overbroad and unduly burdensome to the extent they essentially require Smartmatic to provide information on the entire history of Smartmatic's business operations as it relates to its voting systems and technologies.

12.      Smartmatic objects to the Interrogatories to the extent that they call for a legal conclusion.

13.      Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is not in Smartmatic's possession, custody, or control.

14.      Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is already in MyPillow's possession, custody, or control, or is equally available to MyPillow.

15.      Smartmatic objects to the Interrogatories to the extent that the burden or expense of the proposed discovery outweighs its likely benefit.

16.      Smartmatic objects to the definition of "Smartmatic," "You" and "Your" as vague, ambiguous, overbroad, and unduly burdensome to the extent that it includes persons and entities

that are not parties to this Action and who do not possess responsive information. Smartmatic further objects to the definition of these terms as vague and ambiguous. Smartmatic will construe the terms "Smartmatic," "You" and "Your" to mean SGO Corporation Limited, Smartmatic International Holding B.V., and Smartmatic USA Corp., and their subsidiaries.

17.     Smartmatic objects to the Interrogatories to the extent that they use phrases or terms that have specific or technical definitions under state or federal regulations, and such phrases or terms are not specifically defined.

18.     Smartmatic's use of a given term in its Responses does not mean that the term is not vague and ambiguous, as used in the Interrogatories, or that Smartmatic endorses the use of the term.

19.     An agreement in Smartmatic's response to produce certain documents is not meant to state or imply that such documents exist.

20.     Smartmatic objects to the time frame for these Interrogatories as overbroad and overly burdensome.

21.     Smartmatic objects to the Interrogatories to the extent they are premature contention interrogatories. *See, e.g., In re Hardieplank Fiber Cement Siding Litig.*, 2014 WL 5654318, at *5 (D. Minn. Jan. 28, 2014) (deferring contention interrogatory responses until the end of discovery); *Frank v. Gold'n Plump Poultry, Inc.*, 2006 WL 8444696, at *3 (D. Minn Aug. 16, 2006) (same).

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**     In Paragraph 16 of the Complaint, You allege that "[a]t all relevant times hereto, Mr. Lindell was acting as MyPillow's agent and within the scope of his employment, including during and each and every appearance he made defaming Smartmatic." Set forth every fact and identify every person with knowledge supporting this allegation.

**ANSWER:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to the phrase "[s]et forth every fact" as used in this Interrogatory as overbroad and unduly burdensome to the extent this Interrogatory seeks information that is not material to any claim or defense. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the individuals likely to have discoverable information related to the claims asserted in Paragraph 16 are listed in Smartmatic's Rule 26 Initial Disclosures served on October 21, 2022 ("Smartmatic's Initial Disclosures"). Responding further, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 16 are listed in Complaint Paragraphs 3, 7, 14–19, 23, 54–55, 68–69, 71, 74, 76–77, and 81 and pages 36–51 of Plaintiffs' Omnibus Brief in Opposition to Michael J. Lindell and My Pillow, Inc.'s Motions to Dismiss, ECF Dkt. No. 41.

**INTERROGATORY NO. 2:** In Paragraph 26 of the Complaint, You allege that "[s]ince 2003, Smartmatic's election technology has processed more than 5 billion secure votes worldwide without a single security breach. Smartmatic has provided election services and implemented election technologies for election commissions in more than 25 countries on five continents." Identify each of the "more than 25 countries on five continents," and set forth every fact and identify every person with knowledge supporting the allegation that there has not been "a single security breach" in the more than 5 billion votes processed by Smartmatic since 2003.

**ANSWER:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds

6

that it is a premature contention interrogatory. Smartmatic objects to the scope of this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to the phrase "[s]et forth every fact" as used in this Interrogatory as overbroad and unduly burdensome to the extent this Interrogatory seeks information that is not material to any claim or defense. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic states that it has previously provided or is currently under contract to provide voting machines, technology, or services to jurisdictions in the following countries: Albania, Argentina, Armenia, Australia, Belgium, Bolivia, Brazil, Bulgaria, Canada, Chile, Colombia, Curacao, Ecuador, El Salvador, Estonia, Georgia, Germany, Haiti, Honduras, Italy, Kenya, Mali, Mexico, Nigeria, Norway, Oman, Pakistan, the Philippines, Sierra Leone, Singapore, the United Kingdom, the United States, Uganda, Venezuela, and Zambia. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 26 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**     Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 26: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 3:**       In Paragraph 35 of the Complaint, You allege that Los Angeles County has a "high bar for certification requirements." For each Smartmatic product or service used in Los Angeles County in the 2020 Presidential Election, identify each certification requirement and set forth how Smartmatic met each requirement.

**ANSWER:**     Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce the certification Consultant's Testing Reports issued in connection with the technology Smartmatic developed for use in Los Angeles County in the 2020 Presidential Election.

**INTERROGATORY NO. 4:**    Explain how "Smartmatic machines are 'airgapped,'" but were capable of connection to a secure private network. *See Compl.*¶¶ 38(c), 50.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory on the grounds that it seeks premature expert discovery. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic states that this Interrogatory is counterfactual because it conflates allegations related to Smartmatic's Ballot Marking Device ("BMD") with allegations related to a new electronic pollbook manufactured by a different company. Responding further, Smartmatic states that it did not manufacture the electronic pollbook referenced in Paragraph

8

38(c). As Smartmatic alleged in Complaint Paragraph 50, its BMD is "air-gapped" and does not connect to the internet.

**INTERROGATORY NO. 5:**        In Paragraph 69 of the Complaint, You allege that "Smartmatic was to one of the voting machine companies at the center of" a false narrative that included the following: "voting election technology is not secure, was hacked by China, and the voting election companies stole the election."  Identify all material facts showing the falsity of the statements alleged by Paragraph 69 to be false, and identify all material facts showing that Mr. Lindell knew those statements were false when the statements were made.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the individuals likely to have discoverable information related to the claims asserted in Paragraph 16 are listed in Smartmatic's Initial Disclosures. Smartmatic further responds that based upon its current knowledge, the facts supporting the falsity of the referenced statements in Paragraph 69 are listed in Complaint Paragraphs 136–180.

**INTERROGATORY NO. 6:**        Provide the factual basis for basis for every allegation contained in Paragraph 134 of the Complaint and identify every person with knowledge about each such factual basis.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other

applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 134 are listed in Complaint Paragraphs 136–180. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 134 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 134: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 7:**    Provide the factual basis for every allegation contained in Paragraphs 138 through 141 of the Complaint and identify every person with knowledge about each such factual basis.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic

further objects to the phrase "identify every person with knowledge about each such factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraphs 138–141 are listed in Complaint Paragraphs 140–141 and 349. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraphs 138–141 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**      Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraphs 138–141: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 8:**      In Paragraph 137(b) of the Complaint, you allege that Mr. Lindell's alleged statement that Dominion, Smartmatic, and ES&S are "cousins" is false and defamatory. State all material facts that tend to show this statement is false and identify every person with knowledge about each such fact.

**ANSWER:**      Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such fact," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and

11

without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 137(b) are listed in Complaint Paragraphs 145–148.  Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 137(b) are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 137(b): Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 9:**    You allege several times in the Complaint that "individuals were led to believe," did believe, or "reasonable persons would believe" certain statements You attribute to Mr. Lindell. *See, e.g., Compl.* ¶¶ 91, 113, 114, 151, 159, 166, 171, 177, 349(a)-(d)), 349(c), 349(d). State the factual basis for these allegations and identify every person with knowledge about each such factual basis.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory on the grounds that it seeks premature expert discovery. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current

12

knowledge, the facts supporting the referenced Smartmatic allegations are listed in Complaint Paragraphs 349–357. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the referenced statements are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the referenced Smartmatic allegations: Antonio Mugica, Chief Executive Officer, Smartmatic; Roger Piñate Jr., President, Smartmatic; Pedro Mugica, Global Sales President, Smartmatic; and Samira Saba, Communications Director, Smartmatic.

**INTERROGATORY NO. 10:**    State the factual basis for your allegation that Mr. Lindell "intended" for those who heard or read his statements to reach the conclusions alleged in Paragraphs 138, 144, 151, 159, 166, 171, and 177 of the Complaint, and identify every person with knowledge about each such factual basis.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting its allegations that Lindell "intended" to convey the falsehoods set forth in Paragraphs 138, 144, 151,

13

159, 166, 171, and 177 are listed in Complaint Paragraphs 3–5, 7–8, 15–19, 23, 53–55, 67–69, 71, 74, 76, 81, and 327–339. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraphs 138, 144, 151, 159, 166, 171, and 177 are listed in Smartmatic's Initial Disclosures.

**INTERROGATORY NO. 11:**     State the factual basis for your allegation that Mr. Lindell tried to "convince the general public that all voting technology machines are interchangeable and that they all participated in a criminal conspiracy to overturn the 2020 U.S. election," as alleged in Paragraph 142 of the Complaint, and identify every person with knowledge about each such factual basis.

**ANSWER:**     Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the contention that Mr. Lindell attempted to "convince the general public that all voting technology machines are interchangeable and that they all participated in a criminal conspiracy to overturn the 2020 election" are set forth in Paragraph 143. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 142 of the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 142: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; Roger Piñate Jr., President, Smartmatic; Pedro Mugica, Global Sales President, Smartmatic; and Samira Saba, Communications Director, Smartmatic.

**INTERROGATORY NO. 12:**    Is Smartmatic or has Smartmatic been "connected to Dominion or ES&S?" *See Compl.* ¶ 142. If it is not, state all material facts that tend to show the falsity of the statement and identify every person with knowledge about each such fact.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and overly burdensome to the extent it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic states that as it alleged in Paragraphs 145–148: (i) Smartmatic and Dominion have no corporate, business, or other relationship; (ii) Smartmatic and ES&S have no corporate, business, or other relationship; (iii) Smartmatic does not own Dominion or ES&S; (iv) Neither Dominion nor ES&S owns Smartmatic; (v) Dominion, Smartmatic, and

ES&S are competitors; (vi) Smartmatic's election technology, hardware, and software was not used by Dominion or ES&S during the 2020 U.S. election; and (vii) Smartmatic's election technology and software were only used in Los Angeles County during the 2020 U.S. election, and it has never leased, sold, assigned, licensed, or sub-licensed any intellectual property owned by Smartmatic to Dominion. Smartmatic further states that it has never leased, sold, assigned, licensed, or sub-licensed any intellectual property owned by Smartmatic to ES&S. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 142 of the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**     Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 142: Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 13:**     For each of Your parent, subsidiary, or affiliate entities, anywhere in the world, identify (a) the complete legal name of such entity, (b) its place of organization, (c) its principal place of business, and (d) its relationship to each of the Plaintiffs in this litigation. Your answer must include, at minimum, the subsidiaries referenced in footnote 9 of the Complaint and each entity identified in Paragraph 11 of the Complaint, including the identity of every entity "operating under the Smartmatic brand in" the two dozen countries referenced in Paragraph 11.

**ANSWER:**     Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the unlimited timeframe for information sought with respect to this Interrogatory as overbroad and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not

relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic objects to this Interrogatory as overbroad and unduly burdensome to the extent that it seeks information regarding "each of Your parent, subsidiary, or affiliate entities, anywhere in the world," regardless of that entity's relevance to the claims and defenses in this Action. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce organizational charts sufficient to show the corporate structure of Smartmatic from January 1, 2016 to the present.

**INTERROGATORY NO. 14:**    In paragraph 155 of the Complaint, You allege that Smartmatic's "election technology, hardware, and software were not used by any other voting technology company during the 2020 U.S. election."  Identify every person with knowledge about the truth of that statement, and provide the factual basis for the allegation.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about the truth of that statement," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 155 are listed in Complaint Paragraphs 272–284.  Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 155 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 155: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 15:**    In paragraph 156 of the Complaint, you allege that "Smartmatic did not work with or assist any other voting technology company during the 2020 U.S. election." Identify every person with knowledge about the truth of that statement, and provide the factual basis for that allegation.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about the truth of that statement," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that it provided the factual basis for the referenced allegation in the subsequent allegations in Paragraph 156. Responding further, Smartmatic states that based upon its current knowledge, the facts supporting the allegations of Paragraph 156 are listed in Complaint Paragraphs 145–148.  Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 156 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 156: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 16:**    Footnote 1 and Paragraphs 6 and 49 of the Complaint reference Smartmatic's "election technology, hardware, and software." Identify every person or entity to whom Smartmatic's "election technology, hardware, and software" was licensed, sold, leased, or loaned for use in any election held anywhere in the world between 2010 and the present.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the timeframe for information sought with respect to this Interrogatory as overbroad and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic identifies the following jurisdictions in which electoral management bodies purchased or contracted to purchase electoral technology or services from Smartmatic from January 1, 2018 to the present: Albania; Argentina; Armenia; Australia; Canada; Brazil; Belgium; Bulgaria; El Salvador; Estonia; Georgia; Germany; Honduras; Kenya; Los Angeles County, California;

19

Mexico; Norway; Pakistan; the Philippines; Sierra Leone; Singapore; Uganda; the United Kingdom; and Zambia.

**INTERROGATORY NO. 17:**      In Paragraph 374 of the Complaint, You alleged that "Defendants knew that their factual assertions about Smartmatic were deceptive, as stated in [P]aragraphs 194-299" and that the statements were made "willfully."  Identify every person with knowledge of these allegations, and provide the factual basis for the allegations.

**ANSWER:**      Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge of these allegations," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 374 are listed in Complaint Paragraphs 194–299.  Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 374 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**      Responding further, Smartmatic states that to the extent this Interrogatory seeks information about the fact that the statements alleged in Paragraph 374 are false, the following individuals are the primary persons likely to have discoverable information: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting

Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger

Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 18:**    In Paragraph 359 of the Complaint, You claim that
"[f]rom February through June 2021, Defendants published false statements and implications that
(1) Smartmatic was widely used in the 2020 U.S. election in order to attack the election; (2)
Smartmatic had a corrupt relationship with Dominion and/or ES&S during the 2020 U.S. election
in order to attack the election; (3) Smartmatic stole the 2020 U.S. election; (4) Smartmatic's
election technology or software was compromised or hacked by China; (5) Smartmatic's election
technology was connected to the Internet during the 2020 U.S. election in order to attack the
election; (6) Smartmatic is engaged in a widespread criminal enterprise; and (7) Smartmatic's
technology was designed to steal elections."    Identify every person with knowledge of the
allegations, and provide the factual basis for the allegations.

**ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the attorney work product immunity, and/or any other

applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds

that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to

the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic

further objects to the phrase "identify every person with knowledge of the allegations," as used in

this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and

without waiving the foregoing objections, and to the extent Smartmatic understands this

Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the

allegations of Paragraph 359 are set forth in Paragraphs 134–180, which provide Mr. Lindell's

false statements and the factual bases for Smartmatic's claims that the statements are false.

Responding further, Smartmatic states that the individuals likely to have discoverable information

related to the claims asserted in the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**     Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in the Complaint: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 19:**     Also in Paragraph 359 of the Complaint, you claim that the "false statements . . . pleaded in paragraphs 137, 143, 150, 158, 165, 170, 176 . . . were misleading due to material omissions, by presenting misleading juxtapositions of statements, and when taking into account the context of each publication." Identify every person with knowledge about the truth of this allegation and the factual basis for this allegation, stating what "juxtapositions of statements" occurred and what "context of each publication" You intend to allege at trial.

**ANSWER:**     Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about the truth of this allegation," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that Mr. Lindell's false statements and misleading juxtapositions of statements are reflected in Paragraphs 134–180. Responding further, as described in Paragraphs 91, 96, 103, and 108, a reasonable viewer of the relevant defamatory programs would understand, based on the context of Mr. Lindell's statements and Mr. Lindell's juxtapositions of statements, that all references to "the machines" included

Smartmatic. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:** Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in the Complaint: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; Roger Piñate Jr., President, Smartmatic; Pedro Mugica, Global Sales President, Smartmatic; and Samira Saba, Communications Director, Smartmatic.

**INTERROGATORY NO. 20:** Provide an itemized list of all damages that You allege the Defendants have caused You, identifying for each item of damages the amount and all material facts tending to show that You suffered these damages. If You claim loss of profits for any item of damages, your answer must also identify all persons and jurisdictions whom You allege would have purchased Smartmatic Products but did not do so as a result of any act by Defendants, the dates that you allege these persons or jurisdictions would have purchased Smartmatic Products, and the act(s) by Defendants that you allege caused these persons or jurisdictions not to purchase Smartmatic Products.

**ANSWER:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic objects to the phrases "identifying" and "identity," as used in this Interrogatory, as vague and ambiguous. Smartmatic further objects to this Interrogatory on the grounds that it seeks premature expert discovery. Subject to and without waiving the foregoing objections, and to the extent that Smartmatic understands this Interrogatory, Smartmatic's damages include lost sales, revenues, profits, and damage to its brand name, business value, reputation, and goodwill. Responding further, Smartmatic states that its investigation of its

damages as a result of Defendants' disinformation campaign is ongoing and Smartmatic will produce responsive documents and timely disclose expert opinions identifying the information sought by this Interrogatory pursuant to Federal Rules of Civil Procedure, applicable case law, and any Scheduling Order entered by the Court.


Dated: February 15, 2023

/s/ *J. Erik Connolly*

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske
   Minnesota Bar No. 0392348
   WManske@robinskaplan.com
Emily J. Tremblay
   Minnesota Bar No. 0395003
   ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
   EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Michael E. Bloom (admitted *pro hac vice*)
   MBloom@beneschlaw.com
Illinois ARDC No. 6302422
Julie M. Loftus (admitted *pro hac vice*)
   JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for the Plaintiffs*

24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 15, 2023, a true and correct copy of the

foregoing **Plaintiffs' Supplemental Answers to Defendant My Pillow, Inc.'s First Set of**

**Interrogatories** was served via email on the following attorneys of record:

**PARKER DANIELS KIBORT LLC**
Andrew D. Parker
Ryan Malone
Matthew R. Eslick
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
parker@parkerdk.com
malone@parkerdk.com
eslick@parkerdk.com

/s/ *Michael E. Bloom*
Michael E. Bloom
