# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>     Plaintiffs,<br><br>  v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>     Defendants. | Case No. 22-cv-0098-WMW-JFD |

## SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS SECOND MOTION TO COMPEL

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT .................................................................................................................... 5

I. Smartmatic's Requests Are Relevant To Its Punitive Damages Claim. ............................................................................................................. 6

    A. The Jury Will Consider Lindell's Personal Wealth When It Determines An Appropriate Punitive Damages Award. ............... 6

    B. Smartmatic Has Properly Pleaded A Punitive Damages Claim. ................................................................................................. 8

II. Lindell's Financial Condition is Relevant to Actual Malice. ............................. 12

CONCLUSION ............................................................................................................... 14

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Achievement Corp. v. Jostens, Inc.*,
 622 F. Supp. 3d 749 (D. Minn. 2022) ............................................................................. 9

*Baer v. G & T Trucking Co.*,
 No. 03-3460, 2004 WL 6340449 (D. Minn. Aug. 26, 2004) ..................................... 7, 8

*BCBSM, Inc. v. GS Labs, LLC*,
 No. 22-cv-513, 2023 WL 2044329 (D. Minn. Jan. 30, 2023) ....................................... 9

*Bepex Int'l, LLC v. Hosokawa Micron BV*,
 No. 19-CV-2997, 2022 WL 3701406 (D. Minn. Feb. 8, 2022)
 (Docherty, J.) ................................................................................................................. 5

*Beyond Blond Prods., LLC v. Hall*,
 No. 22-MC-0037 (JFD), 2022 WL 3444039 (D. Minn. Aug. 17, 2022)
 (Docherty, J.) ................................................................................................................. 5

*Clark v. Rusk, Inc.*,
 No. 03-5595, 2006 WL 8445814 (D. Minn. June 20, 2006) ..................................... 7, 8

*Duffy v. Leading Edge Prods., Inc.*,
 44 F.3d 308 (5th Cir. 1995) ......................................................................................... 12

*Edeh v. Equifax Info. Servs., LLC*,
 No. 11-CV-2671, 2013 WL 1799006 (D. Minn. Apr. 29, 2013) .................................. 7

*Gilmore v. Jones*,
 No. 3:18-cv-00017, 2021 WL 68684 (W.D. Va. Jan. 8, 2021) ................................... 13

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
 491 U.S. 657 (1989) ..................................................................................................... 12

*Jackson v. Senior Care Sols., Inc.*,
 No., 2021 WL 4099947 (D. Minn. Sept. 8, 2021) ........................................................ 8

*Jacobson v. Hound Dog Pet Hotel, LLC*,
 No. 04-3809, 2005 WL 8164434 (D. Minn. May 23, 2005) ........................................ 7

*Kelley v. BMO Harris Bank N.A.*,
 No. 19-cv-1756 (WMW), 2022 WL 6411717 (D. Minn. Oct. 9, 2022) ....................... 7

*New York Times v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................................. 12

*Rasidescu v. Globe Coll. Inc.*,
    No. 02-3815, 2005 WL 8164751 (D. Minn. June 8, 2005) ........................................... 8

*Russ v. Ecklund Logistics, Inc.*,
    No. 19-CV-2719, 2022 WL 856020 (D. Minn. Mar. 23, 2022)
    (Docherty, J.) ................................................................................................................ 9

*Speed RMG Partners, LLC v. Arctic Cat Sales, Inc.*,
    No. 20-CV-609, 2021 WL 7286933 (D. Minn. Aug. 6, 2021) ..................................... 9

*Stock v. Heiner*,
    696 F. Supp. 1253 (D. Minn. 1988) ............................................................................ 10

*Stokes v. CBS, Inc.*,
    25 F. Supp. 2d 992 (D. Minn. 1998) ........................................................................... 12

*Stuempges v. Parke, Davis & Co.*,
    297 N.W.2d 252 (Minn. 1980) ..................................................................................... 6

**Statutes**

Minn. Stat. § 549.20, subd. 1(a) .......................................................................................... 6, 11

Minn. Stat. § 549.20, subd. 3 ............................................................................................... 7, 8

Minn. Stat. § 549.191 .......................................................................................... 8, 9, 10, 11

**Other Authorities**

Federal Rule of Civil Procedure 15 ........................................................................................ 9

Federal Rule of Civil Procedure 15(a)(2) ............................................................................... 9

Federal Rule of Civil Procedure 26(b)(1) ............................................................................... 5

Federal Rules of Civil Procedure Rules 8 and 15 .................................................................. 9

Rule 12(b) ............................................................................................................................. 10

iii

## INTRODUCTION

Smartmatic[1] alleges that Defendants Michael J. Lindell and My Pillow, Inc. ("MyPillow" and, collectively, "Defendants") have been engaged in a multi-year defamation campaign in which they falsely claim that Smartmatic conspired to rig the 2020 U.S. Presidential election by flipping votes cast for Donald J. Trump to votes for Joseph R. Biden. Smartmatic alleges that Defendants published their lies to drum up support from President Trump's supporters and parlay that support into more pillow sales. Of course, as the founder and CEO of MyPillow, Lindell stood to personally gain from any MyPillow sales generated by Defendants' defamation of Smartmatic. And discovery has corroborated Smartmatic's allegations: Lindell has boasted during his disinformation campaign that "being crazy in the news" and being banned by Twitter were great for business. Unsurprisingly, he has continued to spread his lies about Smartmatic in an attempt to make even more money.

Against that backdrop, Smartmatic requested that Lindell produce documents and information related to his personal wealth. This discovery is relevant to Smartmatic's allegations that Lindell acted with actual malice when he defamed it based on his improper motive to personally enrich himself by telling lies about Smartmatic. It is also relevant to Smartmatic's punitive damages claim because the jury will consider Lindell's personal wealth when it determines an appropriate award based on the deliberate nature of Defendants' misconduct. Yet Lindell has refused to produce any documents, relying

---

[1] Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited are collectively referred to herein as "Smartmatic."

on his meritless arguments that Smartmatic's requests are irrelevant and Smartmatic has not properly pleaded its punitive damages claim. The Court should enter an order compelling Lindell to produce the requested information so Smartmatic can hold him fully accountable for his actions.

## FACTUAL AND PROCEDURAL BACKGROUND

Since the 2020 election, and over the course of two years, Defendants have saturated the airwaves with falsehoods about Smartmatic and its role in the 2020 election. (*See* ECF No. 125, Supp'l Compl. ¶¶ 75–83.) For example, they have told the public that Smartmatic was the "mothership" of a grand conspiracy among voting machine companies, the U.S. and state governments, and foreign actors to "steal" the 2020 election from President Trump and elect President Biden. (*Id.* ¶ 151.)

Smartmatic alleges that Lindell defamed Smartmatic "for the noble purpose of selling his pillows," and this is implicit because he routinely promoted MyPillow and its products when he defamed Smartmatic and spread his lies about the legitimacy of the 2020 election. (*Id.* ¶ 7, 19, 134, 339, 344, 346.) He even frequently paired his defamatory statements about Smartmatic with "promo codes" encouraging the audience to make a purchase from MyPillow and receive a discount. (*Id.* ¶¶ 338–41.) In other words, Lindell defamed Smartmatic "with ill will and improper motives for self-promotion" and "for personal financial gain." (*Id.* ¶ 335.)

In both its Complaint and Supplemental Complaint that it filed on April 7, 2023, Smartmatic asserted a claim against Defendants for punitive damages. (ECF No. 1, Compl. ¶¶ 371, 380(c); ECF No. 125, Supp'l Compl. ¶¶ 379, 388(c).) According to

2

Smartmatic, punitive damages are warranted because Defendants "acted with actual malice, ill will, and spite towards Smartmatic, and for improper motives." (*Id.*)

Defendants have never argued in a responsive pleading that Smartmatic did not sufficiently allege its punitive damages claim. Indeed, they did not address Smartmatic's punitive damages claim in their motions to dismiss. (*See generally* ECF No. 18, Defendant Michael J. Lindell's Motion to Dismiss; ECF No. 23, Defendant MyPillow, Inc's Motion to Dismiss.) Nor did they raise any defenses concerning the adequacy of Smartmatic's pleading in their answers to either Smartmatic's Complaint or its Supplemental Complaint. (ECF No. 56, Lindell Answer to Compl., ¶¶ 376, 385; ECF No. 126, Lindell Answer to Supp'l Compl., ¶¶ 384, 399; ECF No. 57, MyPillow Answer to Compl., ¶¶ 376, 385; ECF No. 127, MyPillow Answer to Supp'l Compl., ¶¶ 384, 399.) Indeed, Defendants merely denied that Smartmatic was entitled to punitive damages. (*Id.*) They also asserted 23 defenses in their answers, and none of them relates to Smartmatic's pleading of its punitive damages claim. (ECF No. 56, Lindell Answer to Compl. Defenses 1–23; ECF No. 126, Lindell Answer to Supp'l Compl. Defenses 1–23; ECF No. 57, MyPillow Answer to Compl. Defenses 1–23; ECF No. 127, MyPillow Answer to Supp'l Compl. Defenses 1–23.)

On March 23, 2023, Smartmatic served Defendants with its Third Set of Requests for Production. Declaration of Michael E. Bloom ("Bloom Decl.") Ex. A (Third Set of Requests for Production). Most pertinently, Smartmatic requested the following documents related to Lindell's personal finances (the "Requests"):

3

- RFP No. 30: Documents sufficient to show LINDELL's financial condition from 2020 to the present, including, but not limited to, annual financial reports and tax returns;

- RFP No. 31: Documents sufficient to show LINDELL's ownership interest in any company or entity, including, but not limited to, MY PILLOW, from 2020 to the present;

- RFP No. 32: Documents and communications relating to any audit of LINDELL by the U.S. Internal Revenue Service from 2020 to the present; and

- RFP No. 33: Documents and communications relating to any loans received, secured, or negotiated for LINDELL or for MY PILLOW from 2020 to the present.

*Id.* at 7.

Lindell responded to the Requests on April 28, 2023. Bloom Decl. Ex. B (Defendants' Responses to Plaintiffs' Third Set of Requests for Production of Documents). Lindell objected to each of the Requests on relevance and privilege grounds, and he refused to produce any responsive documents. *Id.* Notably, he did not object on the basis that Smartmatic had improperly pleaded its right to recover punitive damages. *Id.* On May 16, 2023, Smartmatic argued in response that the Requests were relevant to both the issues of punitive damages and Defendants' actual malice. Bloom Decl. Ex. C (May 16, 2023 Ltr. from J. Bedell to A. Kaplan).

The parties met and conferred on May 24, 2023, and they exchanged emails in the subsequent days in an attempt to resolve their dispute, but they were unable to reach an agreement. Bloom Decl. Ex. D (June 5, 2023 Email Chain from J. Bedell to A. Kaplan). Indeed, during the meet and confer process, Lindell argued for the first time that Smartmatic's Requests were improper because it had not sufficiently alleged its right to

4

recover punitive damages in its Complaint. *Id.* Smartmatic disagreed and thereafter filed this motion to compel Lindell's compliance with the Requests.

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case." *Beyond Blond Prods., LLC v. Hall*, No. 22-MC-0037 (JFD), 2022 WL 3444039, at *2 (D. Minn. Aug. 17, 2022) (Docherty, J.) (citation omitted). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Id.* (citation omitted). In other words, "once a threshold showing of relevance has been made by the requesting party, the burden of demonstrating why information need not be provided—and thus, why a court should deny a motion to compel—is on the party resisting disclosure." *Bepex Int'l, LLC v. Hosokawa Micron BV*, No. 19-CV-2997 (KMM/JFD), 2022 WL 3701406, at *3 (D. Minn. Feb. 8, 2022) (Docherty, J.) (citation omitted).

## ARGUMENT

Smartmatic alleged in both its original Complaint and the First Supplemental Complaint that it is entitled to an award of punitive damages due to Defendants' deliberate misconduct and they acted with actual malice based on Lindell's improper motive to increase his net worth by disseminating the lie that Smartmatic rigged the 2020

5

election. Discovery related to Lindell's personal finances is relevant to both topics. Accordingly, the Court should grant Smartmatic's motion to compel.

### I. Smartmatic's Requests Are Relevant To Its Punitive Damages Claim.

Smartmatic has alleged that Defendants defamed it for improper purposes, *i.e.,* to sell more pillows and curry favor with President Trump, and they published they published their falsehoods over the course of multiple years. (ECF No. 125, Supp'l Compl. ¶¶ 335–47.) Courts have awarded punitive damages for this type of misconduct in the past and Smartmatic intends to recover punitive damages here as well. To that end, it served the Requests for information related to Lindell's financial condition, which are clearly relevant to the trier of fact's punitive damages analysis. Moreover, Lindell's argument that Smartmatic has failed to properly plead a punitive damages claim is meritless.

#### A. The Jury Will Consider Lindell's Personal Wealth When It Determines An Appropriate Punitive Damages Award.

Plaintiffs are entitled to punitive damages when they show that a defendant acted with "deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a). It is settled under Minnesota law that defamation plaintiffs, such as Smartmatic, can recover punitive damages. *See Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 259 (Minn. 1980) ("It is also firmly established in Minnesota that punitive damages can be awarded in cases of defamation per se without proof of actual damage to the plaintiff."). In determining an appropriate award, the trier of fact considers, among other factors, "the financial condition of the defendant" and "the total effect of other punishment likely to be

imposed upon the defendant as a result of the misconduct." Minn. Stat. § 549.20, subd. 3.

Records relating to a defendant's financial condition are clearly relevant to a plaintiff's punitive damages claim. *See Kelley v. BMO Harris Bank N.A.*, No. 19-cv-1756 (WMW), 2022 WL 6411717, at *10 (D. Minn. Oct. 9, 2022) ("It is undisputed that the financial condition of BMO Harris is relevant to the issue of punitive damages."). Accordingly, courts routinely determine that they are discoverable. *See Edeh v. Equifax Info. Servs., LLC*, No. 11-CV-2671 (SRN/JSM), 2013 WL 1799006, at *3 (D. Minn. Apr. 29, 2013) ("A defendant's net worth is a relevant consideration in the award of punitive damages. The Court therefore finds that the relevance and benefit of the information outweighs the burden of production."); *Clark v. Rusk, Inc.*, No. 03-5595 (PJS/SRN), 2006 WL 8445814, at *1–2 (D. Minn. June 20, 2006) (granting motion to compel financial documents related to plaintiff's punitive damages claim); *Baer v. G & T Trucking Co.*, No. 03-3460 (PAM/JSM), 2004 WL 6340449, at *8–9 (D. Minn. Aug. 26, 2004) ("The Court concludes that, for the reasons discussed above, this financial information . . . is relevant to plaintiffs' claim for punitive damages . . . ."); *see also Jacobson v. Hound Dog Pet Hotel, LLC*, No. 04-3809 (PAM/RLE), 2005 WL 8164434, at *2 n.3 (D. Minn. May 23, 2005) ("[a] plaintiff seeking punitive damages is entitled to engage in discovery relating to the defendant's financial worth in advance of trial," because "[i]t is well established that under federal law, evidence of the defendants' financial worth is relevant to a claim for punitive damages," and "is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded.") (citation omitted).

7

In the Requests, Smartmatic seeks the same types of documents that courts have permitted other plaintiffs to discover to support their punitive damages allegations. Smartmatic seeks, for example, the production of tax returns and annual financial reports. Bloom Decl. Ex. A. It also seeks the production of documents showing Lindell's business ownership interests, loans, and the details of any audits conducted by the IRS. *Id.* All of these documents will be relevant when the jury considers an appropriate punitive damages award based on Lindell's "financial condition." *See* Minn. Stat. § 549.20, subd. 3; *see also Clark*, 2006 WL 8445814, at *2 (compelling production of audited financial statements and budget, revenue, or profit projections); *Baer*, 2004 WL 6340449, at *9 (compelling production of tax returns and audited financial statements); *Rasidescu v. Globe Coll. Inc.*, No. 02-3815 (JMR/JSM), 2005 WL 8164751, at *9 (D. Minn. June 8, 2005) (compelling production of tax returns); *Jackson v. Senior Care Sols., Inc.*, No. , 2021 WL 4099947, at *9 (D. Minn. Sept. 8, 2021) (compelling production of profit and loss statements).

### B. Smartmatic Has Properly Pleaded A Punitive Damages Claim.

Lindell's argument that Smartmatic has not properly pleaded a punitive damages claim fails. Under Minnesota law, "[u]pon commencement of a civil action, the complaint must not seek punitive damages." Minn. Stat. § 549.191. Rather, "[a]fter filing the suit a party may make a motion to amend the pleadings to claim punitive damages." *Id.* Here, Smartmatic's Complaint seeks punitive damages and it did not move to amend its Complaint to add a claim for punitive damages. Compl. ¶ 371.

8

Accordingly, Lindell posits that Smartmatic has not properly pleaded a claim for punitive damages. Bloom Decl. Ex. D (June 5, 2023 Email Chain from J. Bedell to A. Kaplan).

Lindell is mistaken for several reasons. *First*, while federal courts may have entertained his argument years ago, they now refuse to apply Minn. Stat. § 549.191 because it is a procedural rule that conflicts with Rules 8 and 15 of the Federal Rules of Civil Procedure. *Am. Achievement Corp. v. Jostens, Inc.*, 622 F. Supp. 3d 749, 765–66 (D. Minn. 2022) (plaintiff properly sought punitive damages in its complaint); *BCBSM, Inc. v. GS Labs, LLC*, No. 22-cv-513 (ECT/DJF), 2023 WL 2044329, at *22 (D. Minn. Jan. 30, 2023) ("Though older cases in this District applied the statute in diversity cases, the recent intra-District trend has been not to apply the statute in favor of Rules 8 and 15 of the Federal Rules of Civil Procedure."); *Russ v. Ecklund Logistics, Inc.*, No. 19-CV-2719 (DSD/JFD), 2022 WL 856020, at *4 (D. Minn. Mar. 23, 2022) (Docherty, J.) (refusing to apply Minn. Stat. § 549.191 because it conflicted with the amended pleading rules in Federal Rule of Civil Procedure 15(a)(2)); *Speed RMG Partners, LLC v. Arctic Cat Sales, Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 7286933, at *6 (D. Minn. Aug. 6, 2021) ("[T]he Court concludes that . . . Minnesota Statutes Section 549.191 conflicts with Federal Rule of Civil Procedure 15"). *Jostens* is particularly instructive because the court addressed the same argument that Lindell has asserted here. The court concluded that "Section 549.191 [is] procedural and [does] not alter substantive rights." *Jostens, Inc.*, 622 F. Supp. 3d at 765. As a result, it determined that the plaintiff "properly sought punitive damages in its complaint" and it denied the defendant's motion to dismiss. *Id.* at 766.

*Second*, even if Smartmatic needed to comply with Minn. Stat. § 549.191 (it did not), Lindell's argument would fail based on his lack of diligence. *See Stock v. Heiner*, 696 F. Supp. 1253, 1262–63 (D. Minn. 1988). In *Stock* the defendant moved for summary judgment on the plaintiff's claim for punitive damages due to its alleged failure to comply with § 549.191. *Id.* at 1262. The court rejected the defendant's argument, though, because "the instant action was originally filed over one and a half years ago" and "[t]o require dismissal of the punitive damages claim at this late stage in the proceedings, after the claim has survived a Rule 12(b) motion to dismiss and upon the record as presented constituted, would be an exercise in futility." *Id.* at 1263.

This case is no different. Smartmatic sought punitive damages in its Complaint and its Supplemental Complaint. (ECF No. 1, Compl. ¶¶ 371, 380(c); ECF No. 125, Supp'l Compl. ¶¶ 379, 388(c).) The parties briefed motions to dismiss filed by Lindell and MyPillow. And, since the Court denied those motions, Defendants answered both Smartmatic's Complaint and its Supplemental Complaint without even mentioning the possibility that Smartmatic had failed to comply with § 549.191. Put simply, the time for Lindell to raise this issue has come and gone. *See Stock*, 696 F. Supp. at 1263.

*Finally*, Lindell does not, and indeed cannot, argue that Smartmatic would fail to meet the standard set forth in § 549.191 to amend its Supplemental Complaint to include a punitive damages claim. Section 549.191 states that a party may allege punitive damages if it can show prima facie evidence supporting a claim for punitive damages under § 549.20. Minn. Stat. § 549.191. Under § 549.20, punitive damages are allowed where "the acts of the defendant show deliberate disregard for the rights or safety of

10

others." Minn. Stat. § 549.20 subd. 1(a).  A defendant shows deliberate disregard if he "has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others" and either deliberately proceeds to act in conscious or intentional disregard or deliberately proceeds to act with indifference to the high probability of injury.  *Id.* at 1(b)(1–2).

Smartmatic will easily meet that standard if it must comply with Section 549.191.  Indeed, it has alleged that Lindell has been engaged in a *multi-year* disinformation campaign against Smartmatic in which he has falsely claimed time and time again that Smartmatic rigged the 2020 election in favor of President Biden.  (ECF No. 125, Supp'l Compl. ¶¶ 17, 75–83.)  He has published those statements even though he knows that every credible source of information has rejected them.  (*Id.* ¶¶ 144–49, 189–91.)  He made those statements even though he knew that Smartmatic operated only in Los Angeles County and, therefore, could not have possibly altered the outcome of the election.  (*Id.* ¶ 142 (alleging that it is a verifiable fact that Smartmatic only operated in Los Angeles County).)  And he did it all to sell more pillows, pad his pockets, and curry favor with President Trump and his constituents.  (*Id.* ¶¶ 335–47.)

The Court has already recognized that "Smartmatic has alleged facts sufficient to suggest that Lindell knew or should have known that his statements were false and acted with actual malice in promoting the challenged statements." (ECF No. 52, Order at 11–12.)  If the Court determines that Smartmatic must comply with Minn. Stat. § 549.191 and move to amend its Supplemental Complaint in order to seek punitive damages, it will

11

submit all sorts of evidence produced in discovery that corroborates Smartmatic's allegations.

## II. Lindell's Financial Condition is Relevant to Actual Malice.

The Court should also grant Smartmatic's motion because the Requests are relevant to its allegations of actual malice. Smartmatic has alleged that Lindell engaged in a defamation campaign against Smartmatic in order to financially enrich himself. (ECF No. 125, Supp'l Compl. ¶ 335.) The Requests seek documents that will substantiate Smartmatic's allegations.

The "actual malice" standard requires a plaintiff to prove that a defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964). To defame with reckless disregard, "the defendant must have made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of [the defendant's] publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks and citations omitted).

While a defendant's ill will or improper motive, alone, does not satisfy the actual malice standard, such evidence "is nevertheless relevant and admissible." *Stokes v. CBS, Inc.*, 25 F. Supp. 2d 992, 1003 (D. Minn. 1998); *see also Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("evidence of ulterior motive can often bolster an inference of actual malice."). In fact, the Court denied Defendants' motions to dismiss because, among other reasons, Smartmatic plausibly alleged that Lindell "made and promoted his defamatory statements for his own profit," and "on several occasions

Lindell told audiences to purchase MyPillow products after making claims of election fraud and supplying audiences with MyPillow promotional codes related to Lindell's election-hacking theories." (ECF No. 52, Order at 11.)

Through discovery, Smartmatic has already identified statements by Lindell in which he boasted that "being crazy in the news" and "Twitter bans" had been great for his business. Bloom Decl. Ex. E (DEF082645.1–2); Bloom Decl. Ex. F (DEF084420.143.) Smartmatic now intends to discover the actual data that shows Lindell's defamation campaign had been a boon for him and that he was incentivized to continue to defame Smartmatic for financial reasons. *See Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684, at *8 (W.D. Va. Jan. 8, 2021) ("[D]iscovery into Defendants' specific profit motive to publish stories about Plaintiff is permissible because such evidence is relevant to, even if not sufficient to prove, actual malice."). As discussed above, the Requests seek documents related to Lindell's overall financial condition, including his tax returns, during the narrow time period of "2020 to the present." Bloom Decl. Ex. A. Those documents will flesh out Lindell's claim that "being crazy in the news" was a winning formula for his brand and he was profiting from the media exposure he received by defaming Smartmatic.

## **CONCLUSION**

For the foregoing reasons, Smartmatic respectfully requests that the Court enter an order compelling Lindell to produce documents responsive to Request for Production Nos. 30, 31, 32, and 33.

Dated: July 10, 2023                                      Respectfully submitted,

/s/ *Michael E. Bloom*

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske
   Minnesota Bar No. 0392348
   WManske@robinskaplan.com
Emily J. Tremblay
   Minnesota Bar No. 0395003
   ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice)*
   EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice)*
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Michael E. Bloom (admitted *pro hac vice*)
   MBloom@beneschlaw.com
Illinois ARDC No. 6302422
Laura A. Seferian (admitted *pro hac vice*)
   LSeferian@beneschlaw.com
Illinois ARDC No. 6330414
Julie M. Loftus (admitted *pro hac vice*)
   JLoftus@beneschlaw.com
Illinois ARDC No. 6332174

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

Alyssa A. Moscarino (admitted *pro hac vice*)
   AMoscarino@beneschlaw.com
Ohio Bar No. 93847
James R. Bedell (admitted *pro hac vice*)
   JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*