**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

SMARTMATIC USA CORP.,
SMARTMATIC INTERNATIONAL
HOLDING B.V., and SGO
CORPORATION LIMITED,

      Plaintiffs,

  v.

MICHAEL J. LINDELL and MY
PILLOW, INC.,

      Defendants.

Case No. 22-cv-0098-WMW-JFD

---

**SMARTMATIC'S OPPOSITION TO DEFENDANTS'**
**SECOND MOTION TO COMPEL**

**INTRODUCTION**

Defendants Michael J. Lindell and My Pillow, Inc. ("MyPillow") claim that they have been deprived of any opportunity to investigate Smartmatic's[1] damages and that Smartmatic must immediately disclose all facts that support its damages claims and a full computation of its damages.  But Defendants are mistaken for multiple reasons.  *First*, they ignore that, because they have accused Smartmatic of rigging a U.S. Presidential election, they are liable for defamation *per se* and Smartmatic does not need to identify or submit *any* evidence of losses to prevail on its claims.  Rather, the jury may presume that Smartmatic has been harmed based on Defendants' false claims that Smartmatic committed one of the highest profile crimes in U.S. history.  In that regard, Defendants cannot reasonably complain that they cannot prepare a defense based on Smartmatic's alleged failure to disclose evidence regarding its economic damages.

*Second*, Defendants are moving to compel information that does not exist at this time.  Smartmatic cannot provide computations of its non-economic and economic damages at this juncture because it is still developing the factual predicates related to its damages claims and it needs expert testimony to calculate the harm that Defendants have caused it.  For example, Smartmatic requested that Defendants disclose information related to the reach of their defamatory publications so it can identify its lost contractual opportunities for which Defendants were a substantial factor.  Until Smartmatic receives that information, and its experts are able to evaluate it, it cannot compute its damages

---

[1] Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited are collectively referred to herein as "Smartmatic."

1

arising from its lost opportunities. Nor can an expert compute Smartmatic's corresponding diminution in enterprise value until Smartmatic receives this information.

*Finally*, while Smartmatic cannot currently provide computations of its damages, it has, and will continue to, disclose the information it possesses related to its damages. It has produced, for example, all of its audited financial statements, budgets, and forecasts, as well as its bids, contracts, and pipeline database that provides details concerning all of the opportunities it has pursued from 2017 to the present. It also identified the jurisdictions that it believed would not do business with it due to defamatory statements about it following the 2020 election. Nothing has prevented Defendants from taking discovery concerning Smartmatic's attempts to compete in those jurisdictions. And now Smartmatic is preparing another supplemental interrogatory response in which it will identify the jurisdictions that *will not* do business with it due to defamation following the 2020 election. That same supplement will also disclose data related to each lost opportunity, including anticipated revenue and Smartmatic's forecasted profit loss.

Smartmatic cannot disclose what it does not possess. At this time, it cannot compute its damages because it is still investigating the facts and it needs to obtain expert testimony concerning its losses. As such, the Court should deny Defendants' motion and permit Smartmatic to continue to disclose relevant information on a rolling basis.

## FACTUAL AND PROCEDURAL BACKGROUND

Starting with the 2020 election and continuing to the present, Defendants have repeatedly published false claims that Smartmatic and other voting technology companies "rigged" the 2020 U.S. Presidential election in favor of President Biden. (*See* ECF No.

125, Supp'l Compl. ¶¶ 75–83.)   They have also falsely claimed, for example, that Smartmatic rigged elections in other nations and that China interfered in the 2020 election by hacking Smartmatic's machines.  (*Id.* ¶¶ 165–71.)  Defendants knew (and know) that Smartmatic operated only in Los Angeles County, California during the 2020 election, and Smartmatic, therefore, could not have possibly rigged the 2020 election. Yet, they have continued to falsely accuse Smartmatic of rigging the 2020 election for 2.5 years and counting.  (*Id.* ¶¶ 193, 269, 367.)  Defendants' statements have irreparably tarnished Smartmatic's reputation, diminished its business value, and caused it to sustain other economic losses.  (*Id.* ¶¶ 354–65.)  Smartmatic has also alleged that it is entitled to punitive damages because Defendants acted with actual malice, ill will, and spite towards Smartmatic, and for improper motives.  (*Id.* ¶ 379.)[2]

Other entities and individuals, including Fox News, Newsmax, OANN, Rudolph Giuliani, and Sidney Powell, spread similar falsehoods about Smartmatic and its role in the 2020 election to millions of people across the globe.  (*Id.* ¶ 70.)  Smartmatic has also brought claims against them to hold them accountable for the harm that they caused Smartmatic.  *See Smartmatic USA Corp. v. Fox Corp.*, No. 151136/2021 (N.Y. Sup. Ct.) (Declaration of Michael E. Bloom ("Bloom Decl.") Ex. A, Fox Complaint); *Smartmatic USA Corp. v. Herring Networks, Inc.*, No. 1:21-cv-02900 (D.D.C.) (Bloom Decl. Ex. B, OANN Complaint.); *Smartmatic USA Corp. v. Newsmax Media, Inc.*, No. N21C-11-028 (Del. Super.) (Bloom Decl. Ex. C, Newsmax Complaint.); *Smartmatic USA Corp. v.*

---

[2] As Smartmatic explained in its Second Motion to Compel, Defendants' claim that Smartmatic has not properly pleaded its punitive damages claim under Minnesota procedural law is meritless.  (ECF No. 142, at 8–12.)

*Powell*, No. 21-cv-02995 (D.D.C.) (Bloom Decl. Ex. D, Powell Complaint.)  Smartmatic has alleged in those lawsuits, as it has alleged in its Supplemental Complaint against Defendants, that the defendants caused Smartmatic immense reputational harm, diminished its business value, and caused it to suffer economic damages.  (*See, e.g.,* Ex. B (OANN Complaint) at ¶¶ 426–39.)

Smartmatic made its initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure on October 21, 2022.  (Declaration of Abraham S. Kaplan ("Kaplan Decl." Ex. B.)  With respect to its damages, Smartmatic provided: "Smartmatic does not currently have sufficient information to provide a complete computation of its damages. . . . Smartmatic will disclose its computation of economic damages in compliance with the expert disclosure schedule set forth in the Court's case management order. . . . Smartmatic will make available for inspection and copying the documents and/or other evidentiary material, not privileged or protected from disclosure, on which computation of the above categories of damages is based."  (*Id.* at 6–7.)

On November 4, 2022, MyPillow issued its First Set of Interrogatories.  (Kaplan Decl. Ex. C.)   MyPillow requested, in pertinent part, that Smartmatic provide "an itemized list of all damages that [Smartmatic] allege[s] the Defendants have caused [Smartmatic]." (*Id.* at Interrogatory No. 20.)   MyPillow also propounded several "contention interrogatories" in which it demanded that Smartmatic identify "every fact" that supports particular allegations in Smartmatic's Complaint.  (*Id.* at Interrogatory Nos. 1, 5–11, 14–15, 17–18.)

Smartmatic timely responded to MyPillow's First Set of Interrogatories on December 5, 2022. (Kaplan Decl. Ex. D.) In response to Interrogatory No. 20, Smartmatic provided that its damages "include lost sales, revenues, profits, and damage to its brand name, business value, reputation, and goodwill," and responding further, "its investigation of its damages as a result of Defendants' disinformation campaign is ongoing and Smartmatic will produce responsive documents and timely disclose expert opinions identifying the information sought by this Interrogatory pursuant to Federal Rules of Civil Procedure, applicable case law, and any Scheduling Order entered by the Court." (*Id.* at 20–21.) In response to Defendants' contention interrogatories, Smartmatic identified the facts it alleged in its 132-page Complaint that supported the contentions identified by MyPillow in its interrogatories. (*See, e.g.*, *id.* at 15–16.)

After Smartmatic served its responses to MyPillow's interrogatories, Defendants expressed few concerns related to Smartmatic's responses and they went all but silent for several months. Indeed, on January 9, 2023, Defendants asserted that Smartmatic's responses to MyPillow's contention interrogatories were deficient, but they did not even mention Smartmatic's response to Interrogatory No. 20. (Bloom Decl. Ex. E, January 9, 2023 Ltr. from M. Eslick to M. Bloom.) The parties met-and-conferred and quickly resolved their disagreements concerning Defendants' contention interrogatories, with Smartmatic agreeing to identify individuals who were likely to possess relevant information concerning each of MyPillow's contention interrogatories. (Bloom Decl. Ex. F, Smartmatic's Supplemental Responses to First Set of Interrogatories.)

On April 12, 2023, over five months after Smartmatic served its response to Interrogatory No. 20, Defendants claimed for the first time that Smartmatic's Rule 26 disclosures and its response to Interrogatory No. 20 did not provide sufficient information regarding Smartmatic's damages. (Kaplan Decl. Ex. E.) Smartmatic timely responded to each of Defendants' concerns. (Kaplan Decl. Ex. F.) It identified documents relevant to its damages that it had produced and which Defendants had apparently failed to identify, including its audited financial statements, budgets, forecasts, and all of its customer relationship management (CRM) data for contracts and business opportunities from January 1, 2017 to the present. (*Id.*) It also agreed to supplement its response to Interrogatory No. 20, which it did on April 28, 2023. (Bloom Decl. Ex. G, Smartmatic's Second Supplemental Response to First Set of Interrogatories.) In that supplement, it identified every jurisdiction for which it believed it may have lost opportunities based on Defendants' defamatory statements. (*Id.*)

On June 16, 2023, *i.e.,* more than six weeks after Smartmatic supplemented its response to Interrogatory No. 20, Defendants suddenly claimed that Smartmatic's responses were "serious[ly]" deficient. (Kaplan Decl. Ex. J.) Defendants also claimed that their efforts to gather more information from Smartmatic concerning its damages had been akin to "pulling teeth," even though they had sent two letters in the preceding *seven months* concerning MyPillow's interrogatory related to Smartmatic's damages, and Smartmatic timely responded to those letters, met-and-conferred with Defendants concerning them, and supplemented its responses with additional information on both occasions. (*Id.* at 2; *see also* Kaplan Decl. Ex. K.) In Defendants' letter dated June 16,

2023, they principally claimed that Smartmatic's response to Interrogatory No. 20 was deficient because: (i) Smartmatic identified only jurisdictions that "may" not do business with Smartmatic due to Defendants' defamatory statements; and (ii) Smartmatic did not parse out the portion of Smartmatic's damages for which Defendants are responsible, as opposed to the defendants whom Smartmatic has sued for defamation in other lawsuits. (Kaplan Decl. Ex. J at 3.)

At the parties' meet-and-confer regarding Defendants' letter, Smartmatic stated that it intended to supplement its response to Interrogatory No. 20 with the identity of the jurisdictions that *will not* do business with it based on falsehoods published about Smartmatic concerning the 2020 election.  With respect to Defendants' other demand, *i.e.,* that Smartmatic identify which damages Defendants caused, as opposed to the defendants from Smartmatic's other lawsuits, Smartmatic explained that it could only provide that information after its experts perform a causational analysis.  (Kaplan Decl. Ex. K at 2.)  Defendants thereafter brought this motion.

## <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure permit liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Discovery is not, however, unlimited. *Elsherif v. Mayo Clinic*, No. 18-cv-2998-DWF-KMM, 2020 WL 5015825, at *2 (D. Minn. Aug. 25, 2020).  "Discovery that is unreasonably burdensome, cumulative, or outside of the scope permitted by 26(b)(1) should be limited by the Court." *Id.*

"The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case." *Beyond Blond Prods., LLC v. Hall*, No. 22-MC-0037 (JFD), 2022 WL 3444039, at *2 (D. Minn. Aug. 17, 2022) (Docherty, J.) (citation omitted).  Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Id.* (citation omitted).

## ARGUMENT

The Court should deny Defendants' Motion to Compel.  *First*, their demand that Smartmatic disclose computations of all its damages while the parties are in fact discovery is premature.  Smartmatic is still developing the factual record related to the harm that Defendants caused it, and it will need expert testimony to calculate its damages.  As such, Smartmatic cannot immediately disclose computations of its damages.

*Second*, the Court should deny Defendants' motion to compel Smartmatic to identify every fact that supports various allegations in its Complaint in response to MyPillow's contention interrogatories.  Months ago, Smartmatic identified all of the facts in its 132-page Complaint that support the allegations at issue in MyPillow's contention interrogatories.  Through those responses, Defendants have been able to properly prepare their defenses and identify relevant witnesses.  Moreover, the law is clear that, to the extent Smartmatic is required to supplement its responses to Defendants' contention interrogatories at all, it does not need to supplement them until after fact discovery.

## I.   The Court Should Deny Defendants' Motion To Compel Supplemental Responses Related To Smartmatic's Damages.

Defendants claim that Smartmatic must disclose, in the middle of fact discovery, a complete "computation" of all of its damages, and they claim that without such a computation, they are completely unable to "prepare a defense."  (ECF No. 149 at 9–13.) But Defendants' demand for a damages computation is premature and Smartmatic has disclosed, and continues to disclose, all information and records that Defendants reasonably need to take discovery and prepare a defense.

Litigants must disclose, without awaiting a discovery request, "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Nevertheless, courts do not require parties to provide computations of their damages until they possess sufficient information to calculate their damages.  *See Vershey v. Meridian Sec. Ins. Co.*, No. 19-cv-1625 (ECT/LIB), 2020 WL 9179591, at *7 (D. Minn. Nov. 30, 2020) ("The Court cannot order the production of evidence that does not yet exist"); *Residential Funding Co., LLC v. Embrace Home Loans, Inc.*, No. 13-cv-3457, 2015 WL 12977505, at *4 (D. Minn. July 20, 2015) ("To the extent Defendants demand a specific damages computation for each Defendant, the Court is satisfied that all of the information necessary to produce such a computation is not yet available and cannot be provided at this time.").

*Vershey* is instructive.  In that case, as here, the defendant moved to compel plaintiffs to supplement their Rule 26 disclosures "to include a calculation of [their] alleged damages," and for an order compelling plaintiffs to supplement their interrogatory responses with "complete information regarding [their] alleged damages." *Vershey*, 2020 WL 9179591, at *6.  The plaintiffs did not dispute the relevance of the information related to the calculation of their damages. *Id*.  Rather, they argued that they could not disclose a computation of their damages at that time because they had not "completed their damages investigation and therefore ha[d] not created a final damages calculation." *Id*.  Indeed, plaintiffs could not ascertain their damages until an expert evaluated the extent of the harm that defendants caused. *Id*. at *4, *6.  Accordingly, the court ruled that the plaintiffs did not need to provide a damages computation within seven days, as requested by defendant, but rather "on a rolling basis as soon as said information [was] obtained by Plaintiffs" and no later than the parties' expert disclosure deadline. *Id*. at *7; *Residential Funding Co., LLC*, 2015 WL 12977505, at *4 (rejecting defendants' demand for a "specific damages computation" because "[t]he methodologies and algorithms have not been finalized or applied to the relevant data, third-party discovery is still underway, and the necessary re-underwriting is not complete."); *see also In re EpiPen Direct Purchaser Litig.*, No. 20-cv-827 (ECT/JFD) 2023 WL 2675134, at *11–12 (D. Minn. Mar. 29, 2023) (Docherty, J.) (ordering plaintiffs to supplement their response to interrogatory at the close of expert discovery because plaintiffs needed their expert to opine on the "but-for world").

Defendants' motion to compel Smartmatic to immediately disclose its damages computation is misplaced for the same fundamental reason: Smartmatic is not able to provide a damages computation at this time.  As Defendants acknowledge, "[t]his is a complex case" (ECF No. 149 at 8), and Smartmatic's computation of its damages attributable to Defendants' multi-year disinformation campaign in which they are attempting to destroy Smartmatic is no exception.  At this point, and subject to additional facts that Smartmatic may discover in fact discovery, Smartmatic intends to pursue two categories of damages against Defendants: (i) damages related to its reputational harm; and (ii) economic damages, including damages related to its lost opportunities and corresponding diminution of its enterprise value.  Smartmatic is unable to compute its damages for either category at this time.

## A.    Smartmatic Cannot Compute Its Reputational Harm At This Time.

With respect to Smartmatic's reputational harm, its damages are "presumed" because it has alleged that Defendants published falsehoods about it that are defamatory *per se*.  *See Fredin v. Middlecamp*, 500 F. Supp. 3d 752, 769 (D. Minn. 2020) (citation omitted).  "The types of statements that courts have considered to be defamatory per se include false accusations of committing a crime and false statements about a person's business, trade, or professional conduct."  *Id.*  With defamation *per se*, "a plaintiff may recover without any proof of actual harm," and the jury has wide discretion to determine an appropriate amount of damages.  *See Longbehn v. Schoenrock*, 727 N.W.2d 153, 161 (Minn. Ct. App. 2007); *see also Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 259 (Minn. 1980) ("Because the false statements uttered by Jones to Hammer are slanders *per*

*se* as defamations of one's business reputation, general damages are presumed . . . and appellate courts tend to leave the amount to be awarded to the jury's discretion.").

Smartmatic has alleged that Defendants falsely stated that it rigged the 2020 election and other elections across the world. (Suppl. Compl. ¶¶ 157–64, 183–88.) As such, Defendants cannot reasonably contend that their statements were not defamatory *per se*. *See Fredin*, 500 F. Supp. 3d at 769. Although Smartmatic does not need to offer *any* evidence of actual harm to recover, it can (and intends to) offer expert testimony concerning the reputational harm that it has suffered based on Defendants' ongoing disinformation campaign. *See Gertz v. Robert Welch*, 418 U.S. 323, 350 (1974) ("actual injury is not limited to out-of-pocket loss . . . [T]he more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering."). Smartmatic will serve its expert report in compliance with the expert discovery schedule. Until that time, though, it cannot possibly compute its damages related to its reputational harm. *See Wells Fargo Ins. Servs. of Minn., Inc. v. Mock*, No. 8:09CV50, 2010 WL 2178742, at *4–5 (D. Neb. May 21, 2010) (denying motion *in limine* to exclude expert's testimony concerning reputational harm even where plaintiff did not provide a computation of its damages pursuant to Rule 26(a)(1)(A)(iii)).

## B.    Smartmatic Cannot Compute Its Economic Damages At This Time.

Defendants also demand that Smartmatic provide a computation of its economic damages. Those damages predominantly relate to contractual opportunities that Smartmatic lost and, relatedly, the diminution of its enterprise value based on its reduced

revenue stream and profits. Defendants' motion to compel Smartmatic to immediately provide a computation of these losses is misplaced for multiple reasons.

*First*, Smartmatic is unable to provide a computation of these damages while fact discovery is ongoing and expert discovery has yet to commence. To recover economic damages, Smartmatic must show that Defendants were a "substantial factor" in causing Smartmatic's losses. *See Longbehn*, 727 N.W.2d at 160 (quoting Restatement (Second) of Torts § 622A(a) (1977)). Smartmatic's investigation of the opportunities it lost and for which Defendants were a "substantial factor" is ongoing. The following are mere examples of the facts that Smartmatic continues to investigate as part of its determination of the lost opportunities for which Defendants were a substantial factor:

- The mediums through which Defendants published their defamatory statements, the number of times that they republished their statements, and the audiences that received their statements. (*See, e.g.,* ECF No. 80 at 25–26 (Smartmatic's motion to compel a response to its interrogatory related to the instances in which Defendants republished their defamatory content).)

- The reach of Defendants' defamatory statements, including the countries in which Defendants' statements were published and the number of individuals who watched and/or read Defendants' defamatory content. (*See, e.g.,* ECF No. 80 at 26–27 (Smartmatic's motion to compel data related to Defendants' defamatory publications).)

- The jurisdictions in which Lindell has attempted to persuade federal and state government officials to not transact with Smartmatic and its competitors for voting machines, and the success of Lindell's efforts.[3]

Even after Smartmatic obtains that information, its experts will still need to process the

---

[3] *See* R.V. Scheide, *The Great Missouri Hand-Count Swindle: How MyPillow CEO Mike Lindell Conned Patrick Jones and Kevin Crye, Costing Shasta County Millions*, anewscafe.com (June 14, 2023), *available at* https://anewscafe.com/2023/06/14/redding/the-great-missouri-hand-count-swindle-how-mypillow-ceo-mike-lindell-conned-patrick-jones-and-kevin-crye-costing-shasta-county-millions/ (describing Lindell's attempts to persuade officials to abandon voting machines, including a meeting with a California county official).

information and calculate Smartmatic's losses. *See Residential Funding Co., LLC*, 2015 WL 12977505, at *4 (rejecting defendants' demand for a "specific damages computation" because "[t]he methodologies and algorithms have not been finalized or applied to the relevant data, third-party discovery is still underway, and the necessary re-underwriting is not complete."). In other words, Smartmatic possesses neither the underlying data nor the expert testimony through which it will compute its damages. *See Vershey*, 2020 WL 9179591, at *7 (refusing to compel plaintiffs to produce damages information that they did not possess).

*Second*, Smartmatic has produced, and will continue to produce, all information available to it related to its lost opportunities. *See Residential Funding Co., LLC*, 2015 WL 12977505 at *4 (plaintiff not required to provide damages computation where it disclosed sufficient information related to its damages). As Defendants acknowledge, Smartmatic previously disclosed the jurisdictions that it believes may not do business with it based on defamatory statements published about Smartmatic following the 2020 election. (ECF No. 149 at 14.) It disclosed that list because it is still bidding on projects and determining which jurisdictions definitively refuse to do business with it based on its reputational harm. Smartmatic has since identified a subset of jurisdictions that *will not* do business with it based on the defamation that occurred following the election and it is preparing a supplemental response to MyPillow Interrogatory No. 20 in which it will identify those jurisdictions. At the same time, Smartmatic will amend its disclosure concerning the jurisdictions that it believes might not do business with it, but which have not officially declared that they will not do business with Smartmatic. Smartmatic's

supplemental response will also identify, for each lost opportunity, the monetary value of each lost opportunity and Smartmatic's corresponding lost profits.

Smartmatic has also produced all documents that Defendants could reasonably need to prepare their defense related to Smartmatic's lost opportunities. It has produced the following documents, among others, that support its damages claims: (1) the company's audited financial statements and detailed financial reports; (2) Smartmatic's historic contracts with its customers, and bids, RFI and RFP responses; (3) its prior business valuations; and (4) all of its customer relationship management (CRM) data for contracts and business opportunities in connection with its automated election technology business from January 1, 2017 to the present. With respect to the CRM data, for each business opportunity, Smartmatic has produced a detailed profile, including information such as the product at issue, estimated profit margin, commercial strategy and assessment, and customer contacts.[4] Smartmatic is also going to disclose its assessment of its enterprise value before it was defamed as compared to its present assessment of its enterprise value. With all of these documents and information, *i.e.,* the documents and information that any expert retained by Smartmatic will rely upon, Defendants cannot reasonably contend that they are unable to investigate Smartmatic's claims and that they have been denied "the opportunity to discover the bases for Smartmatic's claims for damages and the opportunity to rebut them." (*See* ECF No. 149 at 11.)

Defendants' argument that Smartmatic is required—in the middle of fact discovery, no less—to parse out which opportunities they caused Smartmatic to lose, as

---

[4] Smartmatic is in the process of reproducing its CRM data with higher quality graphics.

opposed to which opportunities the defendants in Smartmatic's other lawsuits caused Smartmatic to lose, is mistaken. (*Id.* at 14–16.) As discussed above, Smartmatic must show only that Defendants were a "substantial factor" in Smartmatic's losses. *See Longbehn*, 727 N.W.2d at 160. Defendants in different lawsuits can both be a "substantial factor" for the same loss. *See Staub v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 621 (Minn. 2021) ("There may be more than one substantial factor—in other words, more than one proximate cause—that contributes to an injury."); *see also Palmer v. Mahin,* 120 F. 737, 742 (8th Cir. 1903) ("It is no justification for the publication of a libel, and no defense, in whole or in part, to a claim for compensatory damages for the injury caused thereby, that another had previously written or published the charge, and that the libeler merely repeated it"); *Palmer v. N.Y. News Publ'g Co.*, 31 A.D. 210, 212 (N.Y. App. Div. 1898) ("When several persons unite in the publication of one libel, a tort is committed by each one of them for which he severally is liable to the plaintiff, and the plaintiff is entitled to a judgment against each one for all the damages which he suffers by reason of the libel"). Smartmatic is still investigating the opportunities it lost for which Defendants were a "substantial factor," but it has provided, and will continue to provide, the relevant information in its possession.

The cases cited by Defendants are all distinguishable. In *Kutz*, the plaintiff had already produced an expert report concerning her damages and, thus, had no basis to withhold information concerning the amount of her economic damages or the methodology she used to calculate them. *See Kutz v. NGI Capital, Inc.*, No. 22-cv-1623 (NEB/ECW), 2023 WL 3790766, at *6 (D. Minn. June 2, 2023). Further, the plaintiff

claimed *pain and suffering* damages that were not contingent on any discovery she may have requested from the defendant. *See id.* at \*7–9.[5] Similarly, in *Henne*, the court ordered the plaintiff to disclose the methodology she used to calculate her economic damages that she had already disclosed and make a "good faith" effort to quantify her emotional damages and her punitive damages based on the information available to her. *Henne v. Great river Reg'l Library*, No. 19-cv-2758 (WMW/LIB), 2021 WL 6804560, at \*20 (D. Minn. Jan. 4, 2021).  In this case, as in *Residential Funding Co.*, any such efforts would be futile because Defendants have either refused to produce the data that Smartmatic needs, forcing Smartmatic to move to compel the data, or Smartmatic is still developing facts that it needs to even estimate its damages in good faith.[6]

## II.   Smartmatic Has Properly Responded To MyPillow's Contention Interrogatories.

Defendants' argument that Smartmatic must supplement its responses to MyPillow's contention interrogatories is also misplaced.  "Contention interrogatories" are "questions asking a party to explain the facts known to them, if any, that support a claim or defense."  *In re EpiPen*, 2023 WL 2675134 at \*4 (citation omitted).  "The Federal

---

[5] *Sandoval v. Am. Bldg. Maint. Indus.*, 267 F.R.D. 257, 282 (D. Minn. 2007) and *Lewis v. City of Burnsville*, No. 19-1117 (ECT/BRT), 2020 U.S. Dist. LEXIS 115937, at \*10 (D. Minn. June 29, 2020) are distinguishable for the same reason.

[6] *Gacek v. Owens & Minor Distrib., Inc.,* is distinguishable because "the only discovery" that plaintiff had produced about his damages was his expert report.  Civ. No. 09-3202 (PAM/LIB), 2010 WL 11534503, at \*3 (D. Minn. Oct. 21, 2010).  Here, by contrast, Smartmatic has produced the documents and information that Defendants reasonably need to investigate Smartmatic's damages claims, and it continues to produce more information on a rolling basis. Also, in *Marvin Lumber & Cedar Co. v. Norton Co*., the "greatest flaw" in plaintiff's discovery responses was that it "fail[ed] to set forth the basis for, or the sources of raw data to be relied upon by plaintiff." 113 F.R.D. 588, 593 (D. Minn. 1986).  Here, Smartmatic has produced, and continues to produce, the documents and information that form the foundation of its damages.

Rules permit contention interrogatories, but courts may find that such interrogatories are better answered later in litigation." *Id.* "A contention interrogatory will be considered overly broad and unduly burdensome if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case." *Id.* (internal quotations and citations omitted).   Consistent with Rule 33(a)(2), courts routinely permit parties to wait to respond to contention interrogatories until later in the litigation.  *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2014 WL 5654318, at *5 (D. Minn. Jan. 28, 2014) (affirming special master's ruling permitting party to respond to contention interrogatories "until the parties have had a fair opportunity to review the evidence"); *Scheffler v. Molin*, No. 11-3279 (JNE/JJK), 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012) (deferring responses to contention interrogatories until "the close of fact discovery"); *Minneapolis Firefighter's Relief, Ass'n v. Medtronic, Inc*., No. 08-6324 PAM/AJB, 2012 WL 12897388, at *2 (D. Minn. Jan. 19, 2012) (denying motion to compel response to contention interrogatory because responding party's "general description" of facts supporting its allegation "provided some guidance for more directed fact discovery"); *Frank v. Gold'n Plump Poultry, Inc*., No. 04-1018, 2006 WL 8444696, at *3 (D. Minn Aug. 16, 2006) (deferring responses to contention interrogatories until after depositions were completed).

MyPillow served many contention interrogatories in which it asked Smartmatic to identify all facts that support particular allegations in its Complaint.  (Kaplan Decl. Ex. C at Interrogatory Nos. 1, 5–11, 14–15, 17–18.)   Smartmatic objected to those interrogatories because, among other reasons, they were "premature contention

interrogator[ies]." (*See, e.g.*, Kaplan Decl. Ex. D at 5–6 (Smartmatic's Response to MyPillow Interrogatory No. 1).)  Without waiving its objections, though, Smartmatic guided MyPillow to the allegations in its Complaint that supported the statements referenced in MyPillow's contention interrogatories.  For example, in Interrogatory No. 7, MyPillow asked Smartmatic to identify "all material facts" that show that Mr. Lindell's statements alleged in Paragraph 137(b) of Smartmatic's Complaint, *i.e.,* that Smartmatic and its competitors are "cousins," is false.  (Kaplan Decl. Ex. C at Interrogatory No. 7.)  In response, Smartmatic stated that "the facts supporting the allegations in Paragraph 137(b) are listed in Complaint Paragraphs 145-148."  It also supplemented its response to provide the individuals likely to have discoverable information concerning those facts.  (Bloom Decl. Ex. F at 11.)

Defendants' argument regarding Smartmatic's response to Interrogatory No. 14 only confirms that Smartmatic has complied with its obligations.  (ECF No. 149 at 17–18.)  MyPillow asked Smartmatic to identify individuals with relevant knowledge and the factual basis for the fact that Smartmatic's election technology was not used by other voting technology companies during the 2020 election.  (Kaplan Decl. Ex. C at Interrogatory No. 14.)  Even though MyPillow asked Smartmatic to identify all facts that prove a negative, Smartmatic pointed MyPillow to paragraphs 272–284 in its Complaint as factual support and it identified four individuals likely to have relevant knowledge. (Kaplan Decl. Ex. I at 22–23.)  Through Smartmatic's responses, Defendants are on notice of the facts that support Smartmatic's allegations referenced in MyPillow's contention interrogatories, and Defendants have been able to properly investigate

Smartmatic's allegations in discovery.  Smartmatic is not required to do anything more at this time.  *See, e.g., Scheffler*, 2012 WL 3292894, at *6.

**CONCLUSION**

For the foregoing reasons, Smartmatic respectfully requests that the Court deny Defendants' Second Motion to Compel.

Dated: July 18, 2023                          Respectfully submitted,

/s/ *Michael E. Bloom*

Christopher K. Larus
    Minnesota Bar No. 0226828
    CLarus@robinskaplan.com
William E. Manske
    Minnesota Bar No. 0392348
    WManske@robinskaplan.com
Emily J. Tremblay
    Minnesota Bar No. 0395003
    ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
    EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
    NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Michael E. Bloom (admitted *pro hac vice*)
    MBloom@beneschlaw.com
Illinois ARDC No. 6302422
Laura A. Seferian (admitted *pro hac vice*)
    LSeferian@beneschlaw.com
Illinois ARDC No. 6330414
Julie M. Loftus (admitted *pro hac vice*)

JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

Alyssa A. Moscarino (admitted *pro hac vice*)
    AMoscarino@beneschlaw.com
Ohio Bar No. 93847
James R. Bedell (admitted *pro hac vice*)
    JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*