UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., AND SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL, AND MY PILLOW, INC.,<br><br>Defendants. | Case No. 22-CV-98 (WMW/JFD)<br><br>**ORDER** |

This matter is before the Court on cross motions to compel. (Dkt. Nos. 72, 73.) The Court heard oral argument on the motions on February 23, 2023. (Hr'g Mins., Dkt. No. 101.) Michael Bloom, Jamie Ward, and William Manske represented Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic"). (*Id.*) Andrew Parker and Matthew Eslick represented Defendants Michael Lindell and My Pillow, Inc. ("My Pillow"). (*Id.*) For the following reasons, the Court grants in part, denies in part, and denies as moot in part Smartmatic's Motion to Compel, and denies Defendants' Motion to Compel.

I.  **BACKGROUND**

Plaintiff Smartmatic is an election technology company that supplied Los Angeles County with custom-designed election hardware, software, services, and support during the 2020 presidential election. (Suppl. Compl. ¶¶ 37–42, Dkt. No. 125.) Defendant Michael

J. Lindell is the founder and CEO of Defendant My Pillow, a manufacturer of pillows and other products. (*Id.* ¶ 15.) Smartmatic claims that Mr. Lindell falsely asserted that Smartmatic's voting technology helped "rig" the 2020 election in favor of President Joseph Biden. (*Id.* ¶ 6.) According to Smartmatic, Mr. Lindell made these statements to encourage former President Trump's supporters to buy My Pillow products, thus improving My Pillow sales and enriching Mr. Lindell. (*See, e.g.*, *id.* ¶¶ 3–4, 7, 17, 55.) As a result of those statements, Smartmatic alleges it has incurred out-of-pocket costs, a tarnished reputation, and a two-billion-dollar loss in market value. (*Id.* ¶¶ 360, 365.) Smartmatic sued Defendants for defamation and violations of the Minnesota Deceptive Trade Practices Act, seeking damages and injunctive relief. (*Id.* ¶¶ 9, 366–87.)

Defendants moved to dismiss the Complaint for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6). The district court, the Honorable Wilhelmina M. Wright, denied the motion. (Ord. Denying Mot. to Dismiss at 6, Dkt. No. 52.) The parties began discovery in October 2022 and brought these cross-motions to compel in February. (Pretrial Scheduling Order, Dkt. No. 64; Pls.' Mot. Compel, Dkt. No. 72; Defs.' Mot. Compel, Dkt. No. 73.) Smartmatic moves the Court to compel Defendants to respond to certain interrogatories and requests for production ("RFPs"). (Pls.' Mem. Supp. Mot. Compel at 9–12, Dkt. No. 80.) Defendants request that the Court require Smartmatic to produce discovery related to certain RFPs. (Defs.' Mem. Supp. Mot. Compel at 3–5, Dkt. No. 75.)

## II.  LEGAL STANDARDS

### A.  Relevance and Proportionality

Civil litigants may discover nonprivileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This is a broad, but not boundless, standard; parties can discover only that information which is "proportional to the needs of the case," considering "the importance of the issues . . ., the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Litigants can use several tools during the discovery process, including interrogatories governed by Rule 33 and RFPs governed by Rule 34. A party served with an interrogatory must either respond to it "fully" or object to it within 30 days. *Id.* R. 33(b)(2)(4). A party fails to respond to an interrogatory not only when it does not answer, but also when it submits an "evasive or incomplete" answer. *Id.* R. 37(a)(4). A party must also respond or object to RFPs within 30 days. *Id.* R. 34(b)(2)(B). Objections to RFPs must be specific and "state whether any responsive materials are being withheld on the basis of that objection." *Id.* R. 34(b)(2)(B)–(C).

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has not produced the requested information, the requesting party may move for an order compelling the responding party's production. *Id.* R. 26(b)(2), R. 37. The party seeking discovery must make a threshold showing of relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021) (citing

*Hofer v. Mack Trucks*, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). If the moving party meets its initial burden of showing that the requested discovery is relevant, then the burden shifts to the party resisting discovery to show that it is not relevant or is unduly burdensome. *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 10223625, at *20 (D. Minn. June 17, 2020). If a party prevails on a motion to compel, the court must award that party its expenses in bringing the motion, unless the moving party failed to meet and confer, the opposing party's conduct was "substantially justified," or if it would be otherwise unjust to order expenses. Fed. R. Civ. P. 37(a)(5).

### B. Defamation

To help assess the relevancy and proportionality of these discovery motions, the Court outlines the elements of claims of defamation and deceptive trade practices in Minnesota law.

To prevail on a defamation claim under Minnesota law, Smartmatic must prove "that a statement was false, that it was communicated to someone besides [Smartmatic], and that it tended to harm [Smartmatic's] reputation and to lower [it] in the estimation of the community." *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410 (Minn. 1994). Because Smartmatic is a public figure,[1] it must also show that Mr. Lindell made the statement with "actual malice," meaning that he knew the statement was false or that he recklessly disregarded the truth or falsity of the statement when he made it. (Ord. Denying

---

[1] Minnesota law regards corporations as "public figures" for defamation law. Judge Wright found that Smartmatic, since it consists of three corporations, was a public figure. (Ord. Denying Mot. to Dismiss at 6, Dkt. No. 52.)

4

Mot. to Dismiss at 6 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).)

Under Minnesota law, certain types of false statements are presumed to be defamatory, including accusations of crime and statements that tend to injure a plaintiff in its business, trade, or profession. *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 875 (Minn. 2019). Smartmatic claims that the allegedly false statements of Mr. Lindell (which Smartmatic seeks to impute to My Pillow) were just these types of defamatory per se statements. (Suppl. Compl. ¶ 373.) Damages are presumed when a plaintiff has shown that a defendant's statement was defamatory per se, unless the defamatory statement was about a matter of public concern, in which case a plaintiff, to recover, must show actual reputational harm. *Id.* 874–75. Because "the invalidity of a presidential election as a result of hacking is a matter of public concern," Smartmatic must show that Mr. Lindell's statements caused actual reputational harm. (Ord. Denying Mot. to Dismiss at 6 (quoting *Maethner*, 929 N.W.2d at 879).)

"[T]ruth is an absolute defense to a defamation claim" in Minnesota. *Carpenter v. Extendicare Health Servs. Inc.*, No. 15-CV-120 (MJD/JJK), 2015 WL 7729406, at *7 (D Minn. Oct. 26, 2015), *R&R adopted*, No. 15-CV-120 (MJD/JJK), 2015 WL 7720477 (D. Minn. Nov. 30, 2015). This means Defendants can defeat the defamation claims if they prove the statements at issue were true.

To prove a violation of the Minnesota Deceptive Trade Practices Act, Smartmatic must demonstrate that Defendants "disparage[d]" Smartmatic's "goods, services, or

5

business . . . by false or misleading representation[s] of fact" in the course of its business. Minn. Stat. § 325D.44 subdiv. 1(8) (2022).

## III. ANALYSIS

### A. Interrogatory Disputes

Smartmatic moves to compel Defendants to supplement their responses to six interrogatories. The Court considers each interrogatory individually.

### i. *Defendants Shall Disclose Statements Mr. Lindell Made About Smartmatic In The "ACCUSED PROGRAMS".*

Smartmatic's Interrogatory No. 1, as amended,[2] asked Defendants to recount all the statements Mr. Lindell made about Smartmatic in various "ACCUSED PROGRAMS" (as defined in Smartmatic's Interrogatories), including when and where he made them, and "all republications." (Pls.' Mem. Supp. Mot. Compel at 25–26; Bloom Decl. Ex. 3 at 10, Dkt. No. 81-3.) Defendants argue that this interrogatory requires them to do what Smartmatic can do for itself—watch the "ACCUSED PROGRAMS" and identify statements about Smartmatic, which Defendants say is the course of action consistent with Fed. R. Civ. P. 33(d) (allowing a party to respond by directing the requesting party to business records). (Defs.' Mem. Opp'n Mot. Compel at 17.) Smartmatic retorts that it is inconsequential whether it can access this information on its own, because Defendants

---

[2]  As originally served, Smartmatic's Interrogatory No. 1 called for the identification of "every statement about SMARTMATIC that you have published and state the date of the statement and where it was published, including all republications." (Bloom Decl. Ex. 3 at 10.) During the meet-and-confer process, SMARTMATIC agreed to limit Interrogatory No. 1 to statements made on the ACCUSED PROGRAMS "identified in paragraphs 81–108, 110–116, and 117–126 of the [original] COMPLAINT." (*Id.* at 2.)

cannot withhold discovery materials just because Smartmatic could discover those materials on its own. (Pls.' Mem. Supp. Mot. Compel at 26.)

Mr. Lindell's public statements about Smartmatic are central to this case. Limited to statements made on the ACCUSED PROGRAMS, a request for those statements is also proportional under the standards of Fed. R. Civ. P. 26. While it may be true that Smartmatic could watch the programs itself, (a) Smartmatic is correct that Mr. Lindell and My Pillow may not decline to respond on the grounds that Smartmatic could do this work itself, but more importantly (b) Smartmatic cannot itself do the work of identifying "all republications." Information about republication must come from the Defendants.

The Court grants Smartmatic's motion as to Interrogatory No. 1 but will enforce the limitation that emerged during the meet-and-confer process. Defendants shall disclose to Smartmatic electronic copies of all "ACCUSED PROGRAMS" that reference Smartmatic and include information as to when the programs were released and on what platform, and any republication information within Defendants' possession, custody, or control.

   ii. ***Defendants Need Not Create a Log of Relevant Communications Between Defendants and Former President Trump, the Trump Administration, the Trump Campaign, and the Republican National Committee, but must Provide any Pre-existing Log.***

Smartmatic's ninth interrogatory requests all communications that Defendants had with former President Trump, his administration, his campaign, and the Republican National Committee. (*Id.* at 27–31.) The interrogatory reads:

> Identify all communications or interactions You had with DONALD TRUMP, the TRUMP ADMINISTRATION, the TRUMP CAMPAIGN, or the RNC, between January 1, 2020 and the filing of the COMPLAINT, and for each communication or interaction, identify the substance of the

> communication or interaction, who the communication was with, and the date, time, and location of each communication or interaction.

(Bloom Decl. Ex. 3 at 12.) Smartmatic later clarified that it is only moving to compel Defendants to produce a log of oral conversations, not all communications. Smartmatic implicitly conceded that other discovery would include any responsive written communications. (Pls.' Mem. Supp. Mot. Compel at 30–31 ("Defendants' document production is unlikely to contain a memorialization of every discussion . . . .").) Smartmatic argues that such conversations are "clearly relevant" because they relate to Defendants' "motive to curry favor with Trump and sell pillows to his followers while defaming Smartmatic." (*Id.* at 29.) Defendants argue that Smartmatic's request to reconstruct conversations dating back to 2020 is "plainly overbroad" and "overly burdensome," and that Smartmatic does not explain why those conversations are relevant. (Defs.' Mem. Opp'n Mot. Compel at 19.)

The interrogatory's plain language requires disclosure of all conversations between Defendants and former President Trump or the other entities listed in the interrogatory, whether Smartmatic came up during the conversation or not. Because Smartmatic has not shown how conversations that did not involve Smartmatic are relevant, the interrogatory as written is burdensomely overbroad.

The Court agrees with Defendants that it is disproportionate to demand, in an interrogatory, the creation of a log of oral conversations. Defendants leave the door slightly ajar as to whether witnesses may be asked to identify responsive oral conversations at a deposition. (*Id.* at 18 ("This kind of inquiry would only be appropriate, if at all, at a

deposition.").) That question is for another day. In response to Smartmatic's Interrogatory No. 9, the Court orders Defendants to disclose any pre-existing log of oral communications in which Smartmatic was mentioned, between the parties identified in the interrogatory and for the date range specified in the interrogatory. The Court will not order that such a log be generated if one does not already exist. Preparing a log would be unduly burdensome in light of the Rule 26 proportionality factors, particularly the factors of the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Smartmatic, in its Supplemental Complaint, has quoted numerous examples of statements that it alleges demonstrate Defendants' pecuniary motive to defame (*See e.g.*, Suppl. Compl. ¶¶ 81, 131–34, 344); the Court does not see how a log of oral conversations, which would not even contain the actual words used in the conversation, adds more than incrementally to this store of material. The burden of producing any such discovery outweighs any potential benefit. The Court grants in part and denies in part, as described above, Smartmatic's motion as to Interrogatory No. 9.

    *iii.*    **All Metrics Data Has Been or Will Be Disclosed.**

Smartmatic's Interrogatory No. 15 asked Defendants to "[i]dentify all metrics [they] use[d] to quantify the number of individuals who viewed an ACCUSED PROGRAM or DEFAMATORY BROADCAST and provide the corresponding data for each ACCUSED PROGRAM or DEFAMATORY BROADCAST." (Bloom Decl. Ex. 3 at 13.) Earlier in discovery, Defendants answered that they "did not utilize metrics to quantify the number of individuals who viewed the media referenced." (*Id.* Ex. 7 at 7–8, Dkt. No. 81-7.)

9

Smartmatic retorted that Mr. Lindell had stated on Rudolf Giuliani's podcast that "100 million people" had watched a particular program, and that their "average view time" was "1 hour and 53 minutes." (Pls.' Mem Supp. Mot. Compel at 27.) Defendants have now clarified that they have metrics data from a third party, but that they did not "use" the data because it was inaccurate and incomplete. (Defs.' Mem. Opp'n Mot. Compel at 17–18; Bloom Decl. Ex. 19 at 9, Dkt. No. 81-19.) Even so, Defendants represent that they have or will disclose all metrics data. (Defs.' Mem. Opp'n Mot. Compel at 18.) Because Defendants are voluntarily providing the metrics data in question, the Court denies as moot Smartmatic's motion as to Interrogatory No. 9.

## iv. Defendants Shall Disclose the Identity of the My Pillow Employees Involved in "Creating and Developing," but not "Using," Certain Promotional Codes.

In Interrogatory No. 18a, Smartmatic asked Defendants to identify all My Pillow employees and third parties who helped create, develop, or use the promotional codes Mr. Lindell offered to the public when he made his allegedly defamatory statements.[3] (Pls.' Mem. Supp. Mot. Compel at 18–19; Bloom Decl. Ex. 4 at 9, Dkt. No. 81-4.) The interrogatory requests that Defendants "[i]dentify all MY PILLOW EMPLOYEES or third parties involved in the creation, development, or use of the MY PILLOW promotional codes 'FightforTrump,' 'Proof,' 'Eric,' 'ML66,' 'ML33,' and any other MY PILLOW promotional codes used in the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, DEFAMATORY STATEMENTS and/or LINDELL APPEARANCES."

---

[3]   Smartmatic inadvertently submitted two Interrogatories numbered 18. At the hearing, the Court and the parties referred to this request as Interrogatory No. 18a. (*See e.g.,* Hr'g Tr. at 53:6–10.)

10

(*Id.* at 9.) Defendants answered that Mr. Lindell approved the codes and an unidentified My Pillow employee entered the codes into the system. (Bloom Decl. Ex. 19 at 10.) Smartmatic contends that it is entitled to know the identity of any My Pillow employee involved in order to bolster Smartmatic's vicarious-liability claim. (Pls.' Mem. Supp. Mot. Compel at 20–22.) Defendants argue that no employee had any meaningful involvement in making the codes, so their identities are not relevant. (*See* Defs.' Mem. Opp'n Mot. Compel at 13–14; Bloom Decl. Ex. 9 at 3, Dkt. No. 81-9.)

Smartmatic makes the requisite showing of relevance as to the employees' identities, but the Court finds that "use" is an imprecise term in this context. For example, an employee fulfilling an order for which a customer entered a promotional code would be "using" the code, but that type of use would not be relevant to the issues here. Rather, the terms "creation" and "development" more succinctly describe the relevant and proportional discovery Smartmatic seeks regarding the promotional codes and deals. The identity of third parties unaffiliated with My Pillow does not bear on Smartmatic's vicarious-liability argument because if they are third parties they are not My Pillow employees and if they are unaffiliated third parties they are not third parties acting at the behest of My Pillow or Mr. Lindell. The Court grants Smartmatic's motion to compel regarding Interrogatory No. 18a only as to the identity of My Pillow employees, or third parties acting at the direction of My Pillow or Mr. Lindell, who were involved in the creation or development of the specified promotional codes. Employees who only used the codes need not be identified.

### *v.  Defendants Shall Provide the Revenue Amounts Associated With any Promotional Codes and Deals That Smartmatic Provides to Defendants.*

Smartmatic's Interrogatory No. 19 asked Defendants to identify all "advertisements, product deals, or promotional codes used by MY PILLOW related to the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, LINDELL APPEARANCES, 2020 PRESIDENTIAL ELECTION, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN," and disclose all of My Pillow's revenue earned from purchases related to those advertisements or deals. (Pls.' Mem. Supp. Mot. Compel 19; Bloom Decl. Ex. 4 at 10.) Defendants did not answer this interrogatory except to object that Smartmatic seeks discovery not relevant to its claims and assert that the request is overbroad. (*Id.* Ex. 9 at 3.) Smartmatic argues that the promotional codes and advertisements are relevant to establish Defendants' actual malice (Pls.' Mem. Supp. Mot. Compel at 21–22), while Defendants contend that it is unduly burdensome to interpret the "eight definitions [in the interrogatory], which are themselves extremely broad and . . . incorporate other defined terms" and review the specified materials in order to find revenue information. (Defs.' Mem. Opp'n Mot. Compel at 15–16.)

Defendants assert that to obtain discovery about revenue, Smartmatic should identify the specific codes or deals it seeks, and then Defendants will provide the corresponding revenue associated with them. (*Id.*) The Court finds that Defendants' proposal appropriately addresses the scope of relevant codes and promotional deals pertaining to this lawsuit. Thus, Smartmatic shall provide Defendants with the promotional codes and deals used in the various programs, broadcasts, and appearances that Smartmatic

12

identifies, and subsequently Defendants shall provide Smartmatic with the revenue generated from those codes and deals. Smartmatic's motion is granted, as modified by the Court, with respect to Interrogatory No. 19.

### vi. Defendants Shall Explain Mr. Lindell's Role as My Pillow's CEO and Chairman of the Board.

Lastly, Smartmatic's Interrogatory No. 22 asked Defendants to "[i]dentify LINDELL'S positions or roles at MY PILLOW from January 1, 2018 to the present. For each position or role, state LINDELL'S corresponding responsibilities." (Bloom Decl. Ex. 4 at 10.) Smartmatic argues that this information will help it establish *respondeat superior* liability as to My Pillow. (Pls.' Mem. Supp. Mot. Compel at 16–18.) Defendants did not object to this interrogatory, but responded: "At all relevant times, Mr. Lindell was My Pillow's chief executive officer and chairman of the board of directors." (Bloom Decl. Ex. 9 at 4.) Defendants contend that this response is "sufficient answer to the interrogatory" because these roles are "familiar." (Defs.' Mem. Opp'n Mot. Compel at 12–13.) Because Defendants did not timely object to the interrogatory and present no showing of good cause for failing to do so, they must answer the interrogatory as written, in the full and complete manner contemplated by the Rules. *See* Fed. R. Civ. P. 33(b)(3)–(4). It is not responsive to state that Mr. Lindell's roles are "familiar." Defendants shall describe Mr. Lindell's responsibilities as chief executive officer of My Pillow and shall describe his responsibilities as chairman of the board of directors of My Pillow. Smartmatic's motion is granted as to Interrogatory No. 22.

13

### B. Disputes Regarding Requests for Production

The parties' disputes regarding 18 different RFPs can be reduced to three questions. First, may Defendants wait until the end of document review to advise Smartmatic whether they are withholding documents based on an objection? Second, must Smartmatic disclose its election technology for Defendants to inspect? Third, must Defendants disclose documents about Dominion Voting Systems ("Dominion"), another election technology company that sued Defendants, if the documents do not relate to Smartmatic?

### *i. Defendants Shall Supplement Their Disclosures to Clarify Whether They Are Withholding Responsive Documents.*

Defendants object to multiple Smartmatic RFPs (3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, and 28) but have thus far declined to identify which, if any, documents they will withhold based on their objections. (Pls.' Mem. Supp. Mot. Compel at 7; Bloom Decl. Ex. 5 at 4–11, Dkt. No. 81-5; *id.* Ex. 6 at 4–5, Dkt. No. 81-6.) Defendants assert that they are not refusing to disclose whether they are withholding documents but are simply postponing that disclosure until the end of document review. (Defs.' Mem. Opp'n Mot. Compel at 6–8.) Smartmatic claims that delaying the disclosure for an undetermined period will prevent Smartmatic from timely receiving relief from the Court should Smartmatic challenge the withholding of certain documents. (Pls.' Mem. Supp. Mot. Compel at 11–12.)

Defendants shall supplement their disclosures and modify their supplemental disclosures as necessary until fact discovery closes. Rule 34 states "[a]n objection must state whether any responsive materials are being withheld." Fed. R. Civ. P. 34(b)(2). To

comply, a producing party "does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment. Defendants can comply with the rule by simply explaining "the limits that have controlled the search for responsive and relevant materials." *Id.* Smartmatic's motion is granted with respect to RFPs 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, and 28, because Defendants did not explain whether they were withholding documents on the basis of their objections nor did Defendants provide an explanation sufficient to "facilitate an informed discussion of the objection." Therefore, Defendants shall provide a supplemental signed response to these RFPs providing such an explanation. Fed. R. Civ. P. 34(b)(2)(C); *see Patterson Dental Supply, Inc.*, 2020 WL 13032915, at *19.

      *ii.*    ***Smartmatic Need Not Produce Election Technology for Inspection.***

Defendants contend that Smartmatic failed to respond to RFPs, 1, 8, and 10, which request access to Smartmatic election technology used on Election Day 2020. (Defs.' Mem. Supp. Mot. Compel 4–5.) Specifically, the RFPs seek access to "[a]ny Hardware and Software in the possession, custody, or control of Smartmatic that was used to administer the 2020 Presidential Election in any jurisdiction in any State"; "[t]he source code for any Smartmatic Product, Hardware, Software, or systems used in the 2020 Presidential Election in any county, precinct, election site, or polling location in the State of California,"; and "[a]n exemplar of each Smartmatic Product used by any county, precinct, election site, or

polling location in the State of California to administer the 2020 Presidential Election." (Eslick Decl. Ex. A at 9, 10, Dkt. No. 76-1.)

Defendants claim that this technology is relevant because they have raised the defense of truth and the information they seek is "tightly connected to the truth or falsity of the statements upon which Smartmatic's claims rest," such as Mr. Lindell's statements that the 2020 election was hacked, that Smartmatic's computers connected to the internet on Election Day, and that Smartmatic's computer program was designed to rig, rather than facilitate, elections. (Defs.' Mem. Supp. Mot. Compel at 3, 6.)

Smartmatic chiefly objected to these RFPs because it says it does not have possession, custody, or control of the materials that Defendants request, nor does it have the legal right to access them. (Pls.' Mem. Opp'n Mot. Compel at 8, 18.)[4] Smartmatic states that the only jurisdiction in which it worked during the 2020 election was Los Angeles County, California, so the only materials responsive to these RFPS would be Ballot Marking Devices ("BMDs") from Los Angeles County, specifically an exemplar BMD used in the 2020 election and the source code developed for such a BMD. (*Id.* at 8, 19.) The contract between Smartmatic and Los Angeles County dictates that the BMDs and the intellectual property rights to the BMD software are the County's property and must remain

---

[4] Smartmatic also objected to these RFPs claiming that they did not request relevant information, sought privileged communications or attorney work product, were overbroad and unduly burdensome in terms of timeframe, and that complying with the request would violate Smartmatic's confidentiality agreements with third parties or legally imposed confidentiality obligations. (Eslick Decl. Ex. B at 6, 10–12, Dkt. No. 76-1.) It also objected to the use of the term "source code" as vague and ambiguous. (*Id.* at 10.)

16

in its exclusive control.[5] (*Id.* at 12–14; Long Decl. ¶ 9, Dkt. No. 90; 2d Bloom Decl. Ex. 1 at §2.1.1, Dkt. No. 91-1.)

Smartmatic contends that the source code uploaded to the BMDs on Election Day is in an escrow account to which Smartmatic has never had access, and Los Angeles County has informed Smartmatic that it will not give Smartmatic access to the source code in the escrow account so that Smartmatic can disclose the source code to Defendants. (Pls.' Mem. Opp'n Mot. Compel at 14, 18.) However, subject to a court order, Smartmatic may access and retrieve the version of the source code that it sent to an independent testing authority. (*Id.* at 8, 14; Long Decl. ¶¶ 19–25; 2d Bloom Decl. Ex. 1 at § 7.8.3 ("Disclosures which are required by law, such as a court order, . . . are allowable."); Hr'g Tr. 26:1–28:14, 78:24–79:23, Dkt. No. 108.)

Smartmatic's position is that if Defendants want access to these materials, they must subpoena Los Angeles County. (Pls.' Mem. Opp'n Mot. Compel at 15, 23.) At oral argument, Defendants represented that they have done so. (Hr'g Tr. At 24:12–14.) The Court undertook a PACER check of the docket of the U.S. District Court for the Central District of California and found that no litigation over a Fed. R. Civ. P. 45 subpoena by Defendants to Los Angeles County was ongoing in that district. This could be because no subpoena has been served, or it could be because a subpoena has been served but the subpoena was not resisted. If Defendants have subpoenaed these items in the U.S. District

---

[5] Smartmatic performs maintenance on the BMDs on Los Angeles County property. (Long Decl. ¶ 26.)

17

Court for the Central District of California, there is a risk that this Court and that court may issue conflicting orders on the same discovery dispute.

Smartmatic also claims that disclosing these materials would threaten the security of Los Angeles County elections and is unnecessary because Defendants can obtain information from other sources, including the publicly available results of the independent testing of the BMDs and source code required by the California Secretary of State, publicly available vote count data, statements of federal and state officials regarding the integrity of the 2020 election, and depositions, document requests, and news reports, to determine whether votes were changed. (Pls.' Mem. Opp'n Mot. Compel at 24–28.)

Finally, Smartmatic emphasizes that Mr. Lindell has said publicly that he wants to share widely what he learns in discovery. (*Id.* at 28–29.) Defendants argue that the protective order in this case alleviates these concerns, because it allows Smartmatic to designate such information as confidential and restrict access to it. (Defs.' Mem. Supp. Mot. Compel at 11–12.) Subject to its objections, Smartmatic agreed to produce user manuals and guides for the technology it used in the 2020 election, "to the extent they exist and can be located by a reasonable search." (Pls.' Mem. Opp'n Mot. Compel at 10.)

The Rules allow parties to discover documents and tangible things in another party's "possession, custody, or control," Fed. R. Civ.P. 34(a)(1), which means the other party "has actual possession, custody or control, or has the legal right to obtain the documents on demand." *Hageman v. Morrison Cnty.*, No. 19-CV-3019 (JRT/HB), 2021 WL 2792386, at *3 (D. Minn. Apr. 30, 2021), R&R adopted, 2021 WL 2680194 (D. Minn. June 30, 2021) (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000)). When

18

a party seeks materials that the responding party does not have possession, custody, or control over, a third-party subpoena should be used. *See Afremov v. Sulloway & Hollis, P.L.LC.*, No. 09-CV-03678 (PJS/JSM), 2011 WL 13199154, at *3 (D. Minn. Dec. 2, 2011) (a third-party subpoena was appropriate when the responding party did not have custody or control of the documents sought).

Smartmatic has credibly asserted that it does not have the materials Defendants seek. Given the sensitivity of source code and the numerous alternative means, including a Rule 45 subpoena, available to Defendants for obtaining information about the Smartmatic products used on Election Day 2020, the Court finds that the burden of producing the source code outweighs its potential relevance and thus will not require that Smartmatic provide it. Further, the Court cannot order a party to produce that which they do not possess. The Court will not issue the order Defendants ask for, including an order that Smartmatic retrieve the source code from Los Angeles County. Defendants' motion is denied as to RFPs 1, 8, and 10.

  iii. ***Defendants Need Not Produce Documents That Relate Only to Dominion.***

Smartmatic argues that Defendants are wrongfully withholding documents related to Smartmatic's competitor, Dominion, if the documents do not mention Smartmatic or the 2020 presidential election. (Pls.' Mem. Supp. Mot. Compel at 12–13.) Further, Smartmatic contends that such documents are relevant and responsive to RFP 1 because Mr. Lindell claimed that Dominion and Smartmatic were interchangeable, and thus communications about either company could prove that Mr. Lindell knew that his claims about the two companies—such as that they used the same hardware—were false. (*Id.* at 19 (citing Suppl.

19

Compl. ¶ 143).) Defendants argue that information related only to Dominion—not Smartmatic or voting machines in general—would be irrelevant and that Smartmatic is trying to gain intelligence about its competitor, Dominion. (Defs.' Mem. Opp'n Mot. Compel at 10–11.)

While a document discussing only Dominion may be relevant to demonstrate Mr. Lindell's knowledge regarding any potential relationship, or lack thereof, between Smartmatic and Dominion, the effort to produce any such Dominion records would not be justified by the speculative benefits to proving Smartmatic's claims. The Court denies Smartmatic's request as to discovery regarding Dominion.

**CONCLUSION**

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Compel Interrogatory Responses (Dkt. No. 72) is **GRANTED in part**, **DENIED in part**, and **DENIED as moot in part**, as set forth fully above; and

2. Defendants' Motion to Compel Production (Dkt. No. 73) is **DENIED**, as set forth fully above.

Date: August 1, 2023

                              *s/ John F. Docherty*
                              JOHN F. DOCHERTY
                              United States Magistrate Judge