UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

Smartmatic USA Corp.,                )    File No. 22-cv-0098
Smartmatic International             )         (WMW/JFD)
Holding B.V., and SGO               )
Corporation Limited,                )
                                    )    St. Paul, Minnesota
         Plaintiffs,                )    September 22, 2023
                                    )    2:58 p.m.
vs.                                 )
                                    )
Michael J. Lindell and              )
My Pillow, Inc.,                    )
                                    )
         Defendants.                )

------------------------------------------------------------

BEFORE THE HONORABLE JOHN F. DOCHERTY
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

**(MOTIONS HEARING)**

Proceedings reported by certified court reporter;
transcript produced with computer.

**APPEARANCES**

```
 1                APPEARANCES
                    For the Plaintiffs:        Benesch, Friedlander, Coplan &
 2                                             Aronoff
                                               MICHAEL E. BLOOM, ESQ.
 3                                             71 South Wacker Drive
                                               Suite 1600
 4                                             Chicago, Illinois 60606

 5                                             Robins, Kaplan, LLP
                                               WILLIAM E. MANSKE, ESQ.
 6                                             800 LaSalle Avenue
                                               Suite 2800
 7                                             Minneapolis, Minnesota 55402

 8                For the Defendants:          Parker, Daniels, Kibort, LLC
                                               ABRAHAM S. KAPLAN, ESQ.
 9                                             ANDREW D. PARKER, ESQ.
                                               123 North Third Street
10                                             Suite 888
                                               Minneapolis, Minnesota 55401
11
                  Court Reporter:              LORI A. SIMPSON, RMR-CRR
12                                             316 North Robert Street
                                               Suite 146
13                                             St. Paul, Minnesota 55101

14

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

**IN OPEN COURT**

1

2

3

4          THE COURT:  Good afternoon, everyone.  Please take

5     a seat.

6          We are here this afternoon for a hearing on the

7     defendant's motion -- defendants', plural, motion to

8     reconsider one component of a previously ruled-upon order

9     granting a motion to compel in part.

10          Let's begin with appearances, beginning with those

11     for the moving party, the defense.

12          MR. KAPLAN:  Abraham Kaplan, Your Honor, for

13     defendants.

14          MR. PARKER:  Andrew Parker, Your Honor, Parker,

15     Daniels, Kibort, for the defendants.

16          THE COURT:  All right.  Good afternoon to both of

17     you.

18          MR. PARKER:  Good afternoon, Your Honor.

19          For the plaintiff?

20          MR. BLOOM:  Michael Bloom for Smartmatic.

21          MR. MANSKE:  William Manske also for the

22     plaintiffs.  Good afternoon, Your Honor.

23          THE COURT:  Good afternoon.

24          I thought what we would do is as the moving

25     party -- it looks like, Mr. Kaplan, you are arguing?

 1              MR. KAPLAN:  Correct, Your Honor.

 2              THE COURT:  Okay.  So I thought 20 minutes,

 3      20 minutes, and then some time for rebuttal left sort of at

 4      Judge's discretion, depending on how much there is to rebut.

 5              MR. KAPLAN:  That sounds okay, Your Honor.

 6              THE COURT:  Okay.  You have the floor.

 7              MR. KAPLAN:  Good afternoon, Your Honor.

 8              THE COURT:  Good afternoon.

 9              MR. KAPLAN:  Defendants recognize that motions to

10      reconsider are usually not granted often as a matter of

11      course, but defendants believe this is one of those

12      instances that it needs to be considered both because of the

13      gravity and the importance of the issues sought and the new

14      evidence and errors of fact from the original motion to

15      compel, Your Honor.

16              THE COURT:  All right.  Two questions, I guess,

17      right off the bat, and I'm sorry to jump in with questions

18      so quickly.

19              But you described -- you used the adjective "new"

20      to describe the evidence.  I -- or actually the law clerk

21      constructed a little timeline for this motion, and it

22      appears that you had your unsatisfactory interaction with

23      Mr. O'Brien out in Los Angeles about seven weeks before the

24      ruling on the motion to compel.

25              Is that, therefore -- I mean, how does that then

1   qualify as new evidence within the meaning of the standard

2   for a motion for reconsideration?

3            MR. KAPLAN:  Sure, Your Honor.  So first, again,

4   it's the discretion of the Court whether or not they want to

5   consider items that could have been brought up in the

6   supplemental record versus items then brought up in a motion

7   to reconsider.  So it's not an automatic waiver that we

8   can't bring it up today.  It's a discretion in front of

9   Your Honor.

10            THE COURT:  I agree with that.  However, courts

11   value consistency and predictability and therefore there are

12   standards by which judges govern their discretion, and one

13   of them is the new evidence rule, I'll call it that, that I

14   have just described.

15            MR. KAPLAN:  Sure.  And, Your Honor, defendants

16   are not only here today because of my interaction -- that

17   specific one interaction with Mr. O'Brien.  In fact,

18   Mr. O'Brien's subsequent declaration and LA County's clerk's

19   subsequent declaration perhaps make that a side issue of why

20   we're here today, Your Honor.

21            Now, as an officer of the court, I do not submit

22   declarations lightly in a case, and my interactions with

23   Mr. O'Brien I fully stand behind.  And Mr. O'Brien's

24   interactions with defendants in this case and with the Court

25   is one of the primary reasons why we're here today.

1          Because, Your Honor, when you submitted your

2     August order to the parties in this case directing

3     defendants to get information that was relevant in this

4     case, was important in this case, but to get it from

5     LA County, there's certain expectations --

6          THE COURT:  To be clear, I didn't say get it from

7     LA County.  That was supplied by the parties later.  When

8     you read the order, it says the availability of other means,

9     including Rule 45 subpoenas, is one factor in the Court's

10    decision.

11         MR. KAPLAN:  Can I ask Your Honor if I'm missing

12    something?  What else would be contemplated by that

13    statement besides going to LA County?

14         THE COURT:  I left that to the parties.  What I

15    said then and what I still believe now, but I'm sure you'll

16    have something to say about it, is that Smartmatic does not

17    have the source code and Smartmatic does not have the

18    exemplar voting machine, and so that statement in the order

19    was a statement of, as I think I put it, one cannot be

20    compelled to produce that which one does not have.

21         MR. KAPLAN:  And that's precisely why we're here

22    today, Your Honor, because the statement in the order that

23    Smartmatic does not have the source code or a machine, it's

24    defendants' position that that is in error, and I would like

25    an opportunity to explain my argument to you.

1        THE COURT:  Well, you should because I didn't --

2    if I missed it, point it out, but I didn't take that away

3    from your memorandum.  Your memo was, as I read it, here are

4    the problems we're having with LA County.  They don't return

5    phone calls.  They don't respond to e-mails.  Months go by.

6    Therefore compel Smartmatic to produce the source code and

7    the voting machine.

8        MR. KAPLAN:  Understood, Your Honor, and

9    defendants' memorandum was written with the understanding

10   that LA County said they did not have this material.

11       So if possible, Your Honor, I would like to argue

12   all the potential arguments --

13       THE COURT:  Of course, yes.

14       MR. KAPLAN:  -- why the motion to reconsider

15   should perhaps be considered and granted in this case --

16       THE COURT:  Um-hmm.

17       MR. KAPLAN:  -- and we not be limited, because of

18   the unique circumstance in this case of an unexpected and

19   competing declaration being submitted, to be solely limited

20   to the original brief, Your Honor.

21       THE COURT:  Go ahead.

22       MR. KAPLAN:  So there's two broad categories of

23   information that the defendants are seeking from Smartmatic

24   in this case.  The first is the source code used in the 2020

25   election and the second is an exemplar of the machine used

1    in the 2020 election.

2            Now, I would like to start with the machine first,

3    and I think it's important because Smartmatic's relationship

4    with LA County for the machine is not of a contractor and

5    inventor, Your Honor.  It's of a licensor and a licensee.

6            They built the machine for LA County to use in the

7    2020 election, and then under the contract they have a full

8    license to market and then attempt to sell that same

9    hardware to other jurisdictions across the United States and

10   across the world, and that's unique and this is not a fact

11   that came up in the original motion to compel between the

12   parties.

13           THE COURT:  Was that contract produced in

14   discovery?

15           MR. KAPLAN:  It was produced in discovery.

16           THE COURT:  How long have you had it?

17           MR. KAPLAN:  We've probably had it since February

18   or March, Your Honor.

19           THE COURT:  All right.

20           MR. KAPLAN:  Again, I'm not saying it could not

21   theoretically have been brought up in the first motion, but

22   it wasn't considered in the parties' briefing or before this

23   Court.

24           And can I -- I brought a copy of the contract

25   today.  This was submitted in Mr. Bloom's declaration in the

1    first motion to compel.  Can I present a copy to Your Honor?

2              THE COURT:  Are you introducing it as an exhibit?

3              MR. KAPLAN:  I am, Your Honor.

4              THE COURT:  Okay.  Any objection?

5              MR. BLOOM:  No objection.

6              THE COURT:  Received.

7         (Document handed to the Court)

8              THE COURT:  I'm going to mark this as Defense

9    Exhibit Number 1.  It's not marked; is that correct,

10   Mr. Kaplan?

11             MR. KAPLAN:  Correct.  This should be Defense

12   Exhibit -- it could be Number 1.

13             THE COURT:  It will be Number 1.

14             MR. KAPLAN:  So I point the Court to page 7 of 72.

15   This is clause 2.4.1 where -- I'll give Your Honor an

16   opportunity to turn to it.

17             THE COURT:  Okay.

18             MR. KAPLAN:  That "Effective upon achievement of

19   the deliverable," skipping to the next line, "the County

20   hereby grants the Contractor a perpetual, fully paid up,

21   sublicensable, nontransferable license...to use all plans,

22   diagrams, documentation, and tools relating to the Hardware

23   components of the VSAP Solution, as developed, modified,

24   maintained and supported by Contractor in accordance with

25   the terms of this contract (collectively, 'VSAP Hardware.'"

1              Now, this is a very different position than the

2      source code in this case, Your Honor.  Smartmatic has the

3      machines, they market the machines, and they have a part

4      ownership of machines through this sublicense.

5              On page 13 of plaintiffs' original motion to

6      compel, they don't say that they don't have an exemplar

7      machine.  They say they don't have a machine used in the

8      2020 election.

9              And that wasn't our request in this case.  Our

10     request is for an exemplar, something similar, substantively

11     identical to the machine.  We didn't expect them to have a

12     machine used in the 2020 election.

13             So it's an interesting choice of words that they

14     used when representing they do not have a machine.  And we

15     do believe that they have a machine in this case,

16     Your Honor, and we would specifically like to hear

17     plaintiffs' statements on this fact.

18             THE COURT:  Well, wait.  Are you saying that

19     you've got statements from plaintiff that they have such a

20     machine or are you challenging plaintiff to include that in

21     their argument?

22             MR. KAPLAN:  I am asking plaintiff to include it

23     in their argument.

24             THE COURT:  Okay.  So what do you have that

25     supports the statement you just made, that plaintiffs, in

1   fact, do have a machine?

2           MR. KAPLAN:  Your Honor, the contract grants them

3   a license and we know, in fact, that they have been

4   attempting to sell a machine that they used in LA County and

5   other jurisdictions.  Since 2020 their attempts to market

6   the product to other jurisdictions is one of the crucial

7   facts in this case.

8           THE COURT:  So, Mr. Kaplan, would you agree that

9   most of the things you've been talking about, maybe all of

10  them, for the last five minutes is all stuff that you have

11  had but that you have not put in your motion papers here,

12  either in the motion to compel or in the motion for

13  reconsideration?

14          MR. KAPLAN:  I agree, Your Honor.  I would point

15  out that in the motion to compel we took plaintiffs'

16  statements more at face value than perhaps we should have

17  when they said they do not have a machine that was used in

18  the 2020 election versus having an exemplar machine used in

19  the 2020 election.

20          THE COURT:  All right.  So you have, then,

21  apparently focused upon the difference between machine used

22  in the 2020 election and exemplar machine.  And on that

23  ground you want the motion to compel re-opened or

24  reconsidered?

25          MR. KAPLAN:  On one of the grounds, Your Honor,

1    that would be one of the grounds to reconsider.

2              THE COURT:  Okay.  But why should I do that when

3    all of this could have been in the motion to compel?  I

4    mean, it sounds as if you got a motion to compel.  You

5    didn't like the result, and that's understandable, and now

6    you're looking for reasons to reconsider it and what you're

7    doing is revisiting what I would consider tactical choices

8    about which arguments to make in support of -- in the motion

9    to compel litigation.  Is that what's happening here?  And

10   if it is, how does it fit into the standard for a motion for

11   reconsideration?

12             MR. KAPLAN:  Well, Your Honor, we're here today

13   because there's a compelling circumstance to revisit the

14   motion to reconsider.  Whether or not Mr. O'Brien's

15   declaration is true of what he was saying, that he never

16   told me certain things, is a compelling circumstance to come

17   to this Court because of the conduct of LA County in dealing

18   with the subpoena.

19             THE COURT:  Maybe it's because it's Friday

20   afternoon, but that, I'm afraid, kind of went by me.  The

21   conversations with Mr. O'Brien took place a long time before

22   the motion to compel.

23             MR. KAPLAN:  The original motion to compel,

24   Your Honor?

25             THE COURT:  The original motion to compel.  I

1    mean, the conversations with Mr. O'Brien, as I understand

2    it, took place weeks before we had a decision on the motion

3    to compel.  Am I right about that?

4              MR. KAPLAN:  A decision, Your Honor, but in terms

5    of the motion hearing, we argued it back in February.

6              THE COURT:  Right.  And you didn't seek

7    supplemental briefing and you didn't go to Los Angeles to

8    seek to enforce your subpoena.  You went ahead with the

9    hearing -- no.  You went ahead and said nothing, got an

10   order that you did not like, and now we've got a motion to

11   reconsider.

12             I guess I'm not understanding why that's the route

13   that we're going down instead of while the motion was under

14   advisement saying:  Hey, there's new information.  Can I

15   please submit a supplemental brief or go to the Central

16   District of California and ask to have the subpoena enforced

17   because, you know, O'Brien, by your account, is

18   nonresponsive?

19             MR. KAPLAN:  So, Your Honor, I think it's a little

20   more nuanced than that.

21             THE COURT:  Okay.

22             MR. KAPLAN:  Because originally, after we had this

23   first motion in front of this Court, the reason why we did

24   not immediately file a motion to compel in LA County is to

25   not have two competing motions pending in two jurisdictions

1   at the same time.  We'd be asking an LA County court to move

2   to compel on certain materials that the actual judge is

3   considering in the home jurisdiction.

4           THE COURT:  Am I correct that you have now filed a

5   motion to compel in the Central District?

6           MR. KAPLAN:  Correct, Your Honor.

7           THE COURT:  So now we've got competing motions.

8           MR. KAPLAN:  Well, at this point, Your Honor, I

9   don't think defendants have any choice.  We've been

10  stonewalled everywhere and we need to do whatever is

11  possible.  Even though it's not normal motion practice, to

12  file two motions in competing jurisdictions for the same

13  issue.

14          And one more point, Your Honor, that at the

15  hearing in front of this Court, as the transcript shows,

16  this exact question came up, the question of should this

17  motion be decided in Minnesota or should this motion be

18  decided in California.  And the Court agreed that the motion

19  would be heard in Minnesota.

20          So we're not saying that we should have counted

21  our eggs before they hatched, Your Honor, but our

22  understanding of where this was going to be litigated and

23  the potential effect of LA County saying they don't have

24  certain things wasn't fully realized by us until we got the

25  Court's August order, because we had understood that this --

1   items would be litigated in Minnesota and not in California.

2          And to continue, Your Honor.  So that relates to

3   the hardware in this case.  Relating to the source code,

4   there are two copies of the source code, Your Honor.

5   There's a copy that's purportedly held in an escrow account,

6   likely some third-party lab, that only LA County seems to

7   have access to.

8          There's a separate, entirely different version of

9   the source code.  That version is held by an independent

10  testing authority that it seems Smartmatic is the only one

11  that has access to.

12         Smartmatic's contract with LA County is not over.

13  It goes through 2027, and the product is constantly

14  developed and improved.  So it's defendants' position that

15  the statement to say that Smartmatic does not have access to

16  the source code or does not have the source code is in

17  error, Your Honor.

18         Both versions of the source code are held by third

19  parties.  Likely LA County and Smartmatic do not have actual

20  possession on their own servers of the source code, but

21  that's not the requirement under Rule 34.  Under Rule 34,

22  possession, custody, and control is what courts looked at.

23  And the legal right to access and practical access are the

24  real questions that we need to ask, and Smartmatic

25  absolutely has that, Your Honor.

1    And something as important as this, that the

2    entire case may turn on this issue of our expert's ability

3    to examine and determine the susceptibility and the

4    vulnerability of these machines, may be the deciding factor

5    in this case.

6    And incidentally, Your Honor, today is the very

7    day that expert reports in this case have to be submitted,

8    and defendants' expert has to submit an incomplete report

9    without being able to examine the actual products he's

10   opining on because Smartmatic is refusing to produce what

11   they have access to, and that's what we are asking the Court

12   to reconsider.

13   And, again, finally, Your Honor, I just want to

14   point out -- it's rehashing some of my statements before,

15   but just to express it one more time to the Court -- that

16   the defendants' statements in this case that are alleged in

17   plaintiffs' Complaint talk about the hackability of the

18   machines, they talk about the internet connectivity of the

19   machines, and they talk about the machines being susceptible

20   to vote manipulation.  Basic discovery in this case would be

21   an opportunity to examine the machines.

22   Plaintiffs argue that we didn't bring up this

23   argument in our original motion, that we argued truth versus

24   a recklessness of the statements.  And I would point the

25   Court to page 7 of our original motion to compel, and I will

1    quickly read it to the Court.  We're requesting these items

2    because those items will yield information with respect to

3    whether Smartmatic's products could be used to attack the

4    election, whether Smartmatic's technology could have been

5    used to manipulate the election, was susceptible to hacking,

6    were capable of being connected to the internet.

7           It was never defendants' position solely that

8    we're seeking these machines and source code to establish

9    that they were hacked, they were penetrated, they were

10   connected to the internet.  The question is susceptibility,

11   because that turns on whether defendants' statements were

12   reckless or not.

13          And unless Your Honor has any other questions,

14   that's all I have.

15          THE COURT:  Thank you.

16          MR. BLOOM:  Good afternoon, Your Honor.

17          THE COURT:  Good afternoon.

18          MR. BLOOM:  As you can see, all defendants want to

19   talk about this afternoon is the merits of the motion that

20   Your Honor denied on August 1st, 2023.  They say that they

21   really, really need Los Angeles County's BMDs and source

22   code, so the Court should reconsider its decision that it

23   already made.  Your Honor, a motion for reconsideration is

24   not the forum for these arguments.

25          The requested relief -- the relief that they've

1    requested is available only in extraordinary circumstances.

2    All they have done to show a change in circumstances from

3    your August 1, 2023 order is -- all they've done is talk

4    about a meet-and-confer that occurred in June 2023 in which

5    Smartmatic was not involved.

6         We have identified three independent reasons why

7    their motion fails.

8         THE COURT:  Well, let's skip to the one that

9    you've already mentioned, which is extraordinary

10    circumstances.

11        You filed this lawsuit.  I mean, you're the

12    plaintiff.  You're seeking at least a billion, with a "b,"

13    dollars in damages.  The allegedly defamatory statements

14    center upon hackability and the possibility of vote

15    manipulation.

16        And it does seem that the defense is having a very

17    difficult time laying their hands upon the evidence that

18    would show whether those statements are true, not true, were

19    made with reckless disregard, were not made with reckless

20    disregard.

21        If that's not extraordinary circumstances, what

22    is?

23        MR. BLOOM:  Your Honor, I think the extraordinary

24    circumstances here is -- well, let me take a step back.  I

25    think the fallacy with their argument is that, as Your Honor

1    has already found, we do not possess the technology that

2    they would need to actually challenge or to inspect -- to

3    inquire whether those are -- to support their defenses on

4    that.

5              THE COURT:  Can you obtain it, though?

6              MR. BLOOM:  Your Honor, as we mentioned in

7    February 2023, we were very transparent with the Court about

8    what we have.  We have access to a database that's owned and

9    maintained by Los Angeles County, and in that database we

10   can access the source code that we prepared and sent to the

11   independent testing authority and the trusted build file

12   that the independent testing authority created.

13             LA County -- after that process happened, by law

14   LA County was required to put those -- that data in escrow.

15   Smartmatic could not access the escrow.  And then

16   Los Angeles County accessed the escrow and put that data in

17   the machines.

18             And so based on those arguments and the

19   declarations we submitted, Your Honor determined on

20   August 1, 2023 that we did not have possession, custody, or

21   control of what they had actually requested.  And that

22   remains the case.

23             I understand that they say that they really,

24   really need this data and the technology, but Your Honor has

25   already determined that we don't have it and nothing has

1    changed in the six weeks --

2            THE COURT:  Well, the thing that has changed --

3    you know, I am not happy that it's coming up at this

4    point -- is that this contract has been put into evidence,

5    Defense Exhibit Number 1, and it does say that Smartmatic

6    does have a license for this technology.  And Mr. Kaplan has

7    put it to me that Smartmatic is actually trying to sell this

8    technology or market this technology, choose a verb of your

9    choice.

10           So does Smartmatic have access to this material

11   such that they could, if ordered, have to produce it?

12           MR. BLOOM:  Your Honor, we've always said if the

13   Court ordered us to go into that database and get the code

14   that was not put in the machines and that was -- ultimately

15   it was put in escrow by LA County, we are willing to do it.

16   We can't do it unless we have a court order, but if the

17   Court were to order us to do it, we would do it.

18           THE COURT:  Yes, but what happened on August 1st

19   was that the representation was that the code that you could

20   access is not the same code or might not be the same code

21   that was actually used on election day.

22           So I guess the question is -- I mean, I've made

23   the finding, and I'm so far sticking to it, that you don't

24   have possession, custody, or control of the source code that

25   was actually used in LA County on election day 2020.

1            And I guess just to bottom line it, Mr. Bloom, was

2        I right or was I wrong?

3            MR. BLOOM:  You were right, we do not.  And

4        Ms. Ward -- I don't know if Your Honor had an opportunity to

5        look back at the transcript from the original motion to

6        compel.  Ms. Ward was very clear, my colleague -- you

7        probably don't remember at this point -- she was very clear

8        that we have no reason to believe that the source code that

9        we have access to is any different than what was put in the

10       machines.

11            But we cannot confirm that it was the same.  After

12       it left our possession, it went into escrow.  LA County took

13       the escrowed source code and put it in the machines.  We

14       don't have access to that code.  It absolutely should be the

15       same.  We cannot verify that it is.  And so in that sense

16       Your Honor determined that we don't have possession of what

17       was used in the election in November of 2020.

18            Now, Your Honor, I did want to address the BMD

19       point.  Mr. Kaplan has said that we have possession of a

20       BMD, and I do want to address that.  It seems to be based on

21       a new interpretation of their request.  I think every party,

22       and even the Court, understood that their request was for a

23       machine that was actually used in the election.

24            Regardless, I think I can moot that point right

25       now because, as part of our expert report that we'll be

1    serving today, we'll be noting that our expert inspected a

2    BMD that we have.  It was not used in the 2020 election.  It

3    does not run on the same source code or same version of the

4    source code that was used in the election.

5          We are going to be making that available for

6    inspection.  I don't know if that's going to satisfy their

7    needs, but that is what we have in our possession and they

8    are going to be able to look at it.

9          THE COURT:  All right.  So who does have access to

10   what was indisputably used on election day in 2020?  Is it

11   LA County?

12         MR. BLOOM:  My understanding is that -- if we are

13   talking about the BMDs, LA County --

14         THE COURT:  BMD, source code, both, actually.

15         MR. BLOOM:  Understood.  LA County has possession

16   of the BMDs, is my understanding.  When we even perform

17   maintenance on BMDs, it's in a facility that LA County

18   administers.

19         So I can't speak for LA County, if they want to

20   come up with a legal theory of how they don't have

21   possession of it.  My understanding is they have possession

22   of it.

23         And as to the source code, my understanding is

24   also that if it is in escrow, then LA County can access it.

25   LA County may have something to say about that, but I do

1    know that, under law, LA County had to put it in escrow and

2    LA County put the escrow -- put the escrowed software into

3    the machines.

4            And we now know from the declaration that

5    Smartmatic submitted with its opposition to this case that

6    the escrowed source code has not been deleted, which means

7    that it still exists and it can still be obtained.

8            THE COURT:  And that is the source code that

9    beyond a doubt was used on election day?

10           MR. BLOOM:  That's correct, Your Honor.

11           Now, Your Honor, I'll just make one more point.  I

12   think the Eighth Circuit is very clear on the circumstances

13   here.  We've cited three different Eighth Circuit opinions.

14   We've cited an opinion from this district.  They all say

15   that if you uncover new evidence that's relevant to a

16   pending motion, you have to come forward with that

17   information before the motion is decided.

18           Here defendants had every opportunity to do that.

19   They didn't.  They waited until they got an adverse ruling

20   and then they brought it to your attention.  We think that's

21   clearly improper under the Eighth Circuit policy.

22           Mr. Kaplan mentioned that they didn't do that

23   because of the risk of inconsistent rulings from the Central

24   District of California and this Court, and I'm at a loss as

25   to what those inconsistent rulings would be considering we

1    did not challenge the relevance of their request.

2              I could see how had we challenged relevance, the

3    Central District of California may say, oh, this is relevant

4    and Your Honor may have said, no, it's not and then we have

5    problem.  I don't know where the inconsistency would have

6    come from.

7              THE COURT:  Well, what about the inconsistency

8    that one order would have been directed to Los Angeles

9    County and another would have been directed to Smartmatic?

10             MR. BLOOM:  I don't see the problem in that.

11             THE COURT:  All right.

12             MR. BLOOM:  Either way they're getting what they

13   need, and we can determine -- we can meet and confer about

14   whether Smartmatic should be making code available for

15   inspection or whether just LA County should because they

16   have the escrowed version.  I think that could have been

17   resolved very easily.

18             THE COURT:  All right.  Anything further?

19             MR. BLOOM:  That's all, Your Honor.

20             THE COURT:  Thank you.

21             MR. BLOOM:  Thank you.

22             MR. KAPLAN:  Plaintiffs' counsel is flat-out wrong

23   that we did not ask for an exemplar and we only asked for

24   machines actually used in the 2020 election.

25             THE COURT:  Well, it does sound like you are going

1    to get access to an exemplar, though.

2            MR. KAPLAN:  So if I can cover that point in a

3    second, Your Honor?

4            THE COURT:  All right.  I'll wait.

5            MR. KAPLAN:  I specifically cite the Court to

6    page 2 of plaintiffs' brief where they lay out each of our

7    requests that are at issue in this motion, and the first one

8    is an exemplar of each Smartmatic product used in the state

9    of California to administer the 2020 president election.

10           We asked for this information at the outset of

11   discovery, and it's astounding to hear that their expert is

12   going to opine by examining an exemplar of a machine that

13   has never been given to defendants until the close of

14   discovery in this case and we get 30 days to examine it to

15   do a rebuttal report.

16           So this is a machine that we asked for.  This is a

17   machine they said cannot be disclosed in this case because

18   of the sensitivity.  Yet they use it to prosecute defendants

19   and they never gave an example in discovery.  That's

20   astounding, Your Honor, absolutely astounding, and massive

21   prejudice to the defendants in this case.  It's

22   contradictory positions from plaintiffs and it's incredible

23   that they would represent that to the Court without any

24   explanation why.

25           In our motion to compel asking for an exemplar

1    machine, they refuse it and their expert report opines on it

2    by examining the machine that we wanted to look at at the

3    beginning of this case.

4            And if the machines are different, why is their

5    expert examining it?  If this wasn't the machine used in the

6    2020 -- an exemplar of the machine used in the 2020

7    election, what relevance is it in this case?

8            Their expert is examining it because it is an

9    exemplar, they did have possession, and now they're going to

10   use it as a battle ax against defendants and not let

11   defendants examine it and use it as a defense.  I'm sorry,

12   Your Honor.

13           Number two, the statement they have no reason to

14   believe that the source code is different, I'm not aware

15   that this came up in the transcript of the first motion to

16   compel, Your Honor.

17           Smartmatic is the one responsible to change the

18   source code for any changes necessary.  The contract

19   requires this, that LA County at any time, if they want to

20   change, needs to go to the plaintiffs to make the change in

21   the source code.

22           The theoretical possibility that LA County, who

23   is a government who doesn't know anything about these

24   machines, would unilaterally make a change to the source

25   code that the contractor built I think is ridiculous,

1    Your Honor.

2              There's no evidence to believe that it was

3    changed.  That should not be a reason to withhold discovery

4    in this case.  And even in the small possibility that it was

5    changed, let us do discovery on both.  Let's see the source

6    code that Smartmatic thought was good enough for the 2020

7    election and see what LA County said this isn't good enough,

8    we're going to unilaterally change it and tweak it to make

9    it different.  We have an opportunity to see both.

10             During the hearing plaintiffs' counsel referenced

11   Attorney Ward.  She unequivocally said they have access to

12   it.  If the Court orders it, they can produce it.  That is

13   what we are asking plaintiffs to do in this case.  They have

14   possession, custody, and control; and we're asking they

15   produce it.

16             Plaintiffs' counsel represents Smartmatic was not

17   involved with our discussions with LA County.  They went to

18   get LA County's declaration to fight our ability to get

19   material.

20             THE COURT:  Well, by that standard, though, you

21   would have been in discussions with LA County since you got

22   a declaration.  I mean, you filed a declaration of your

23   interactions with them.

24             MR. KAPLAN:  They didn't file a declaration of

25   what they believe.  I've been trying -- I filed a

1    declaration for myself.  They didn't file a declaration from

2    themselves.  They went to Mr. O'Brien and presumably worked

3    with him to develop a declaration.  They went to LA County

4    and presumably worked with them to develop a declaration,

5    all to fight this motion in this court.

6            I want to remind the Court that this is in

7    LA County and LA County's counsel that have completely

8    ignored our attempts to reach them for a month and a half.

9            THE COURT:  Which gets me back to my original --

10   to the question I had when you were up here before.  Why did

11   you not take action in LA, the Central District of

12   California, to enforce that subpoena?

13           I mean, I know you've talked about you didn't want

14   competing motions, but one -- I mean, the inconsistency

15   would be if LA County was ordered to do two inconsistent

16   things by two courts or if Smartmatic was ordered to do two

17   different things by two courts.  But that was impossible

18   here because one action was directed at Los Angeles County

19   and one was directed at Smartmatic.

20           MR. KAPLAN:  So, Your Honor --

21           THE COURT:  I mean, this is the stuff that you are

22   telling me is absolutely vital, these are the crown jewels

23   of discovery in this particular case, and for months you did

24   not try and get O'Brien to come -- to tell a judge to tell

25   O'Brien to pick up the phone and respond.

1          MR. KAPLAN:  So I know we said it already --

2          THE COURT:  I know.

3          MR. KAPLAN:  -- but bringing a motion in

4    California federal court when the actual motion was being

5    fought in Minnesota is not something a party would normally

6    do, Your Honor.

7          And especially if that's sort of the main question

8    on whether this motion hinges on -- I think that that should

9    be recognized by the Court, that to ask us to go to LA and

10   represent to the court we need this information, when normal

11   discovery is gotten through a party, where the party said

12   they had access to it, where the party said if the Court

13   orders us we can produce it, to put up a potential burden on

14   a third party is not something that we normally would have

15   done.  In hindsight, should we have done it?  Absolutely.

16         And again I'm going to point the Court to the

17   transcript of the hearing where Your Honor told the parties,

18   sort of as a prelude, this is something that's going to be

19   decided in Minnesota.

20         And plaintiffs' statement that they didn't

21   challenge the relevance of the source code in the underlying

22   motion to compel I do not believe is accurate, Your Honor.

23   Plaintiffs put forward four or five arguments why the source

24   code should not be allowed to be examined in this case, and

25   one of the arguments was that defendants' statements were

1    outlandish, without a shred of proof, and that doesn't give

2    them the ability to examine the source code.  That's

3    relevance.  They're saying, outside of possession, outside

4    of control, defendants don't deserve it in this case.  They

5    need to first come forward with more evidence of hacking, of

6    internet connectivity, of all these items.  So plaintiffs'

7    position on that is mistaken, Your Honor.  They did argue

8    for a lot more than the fact that -- whether or not they had

9    access to it.

10              And finally, Your Honor, I would like to point out

11   to the Court that new information is not required in a

12   motion to reconsider.  I think we do have new information,

13   but error alone is sufficient for the Court to potentially

14   revisit its ruling and require them to produce a source code

15   they have access to and a machine that they gave to an

16   expert but refused to give to the defendants in this case.

17              Unless Your Honor has any other questions, that's

18   all I have.

19              THE COURT:  Thanks very much.

20              Mr. Bloom, I want to hear from you about

21   Mr. Kaplan's point that the first set of requests for

22   production of documents does say an exemplar of each

23   Smartmatic product.  You have taken the position we don't

24   have the products that were actually used in the election,

25   but the request was for an exemplar.  Your expert has

1    examined it, but the defendants don't have it.

2              MR. BLOOM:  That's correct, Your Honor.

3              THE COURT:  Come on up.

4              MR. BLOOM:  Oh, okay.  That's correct, Your Honor.

5    We understood, even in the meet-and-confer process and

6    throughout the litigation, that exemplar of a machine used

7    in the 2020 election is a machine that was used in the 2020

8    election.

9              It's also -- but it also doesn't matter,

10   Your Honor, because whether we're talking about a machine

11   that was used in the 2020 election or an identical copy of

12   one that was used in the 2020 election, we don't have that.

13             What we're making available to them is a machine

14   that is a BMD.  It was not used in Los Angeles County.  It

15   does not run on the version of the software that was used in

16   Los Angeles County.  And therefore we think, no matter how

17   you slice that RFP, this was not responsive.

18             THE COURT:  Well, apparently it was good enough

19   for your expert to examine, though.

20             MR. BLOOM:  I think that's a point for

21   cross-examination, Your Honor.  I don't think it changes the

22   fact that it wasn't responsive to the request.  And either

23   way, we are making that available to them now.

24             THE COURT:  All right.  Thank you.

25             Let's take a five- or ten-minute recess.

1       (Recess taken at 3:42 p.m.)

2                           *   *   *   *   *

3       (3:55 p.m.)

4                           **IN OPEN COURT**

5           THE COURT:  All right.  This will be short.  The

6   motion is under advisement and order to follow.  All right?

7           Anything else for today, Mr. Kaplan?

8           MR. KAPLAN:  No, Your Honor.

9           THE COURT:  Mr. Bloom?

10          MR. BLOOM:  No, Your Honor.

11          THE COURT:  Okay.  Thanks very much.  Court is

12   adjourned.

13      (Court adjourned at 3:55 p.m.)

14                           *     *     *

15          I, Lori A. Simpson, certify that the foregoing is a
    correct transcript from the record of proceedings in the
16   above-entitled matter.

17              Certified by:  *s/ Lori A. Simpson*

18                          Lori A. Simpson, RMR-CRR

19

20

21

22

23

24

25