# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re Subpoena to MARY FANNING | Case No. 2:23-mc-00051-BHL |

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., and SGO CORP., LIMITED,<br><br>    Plaintiffs,<br><br>vs.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>    Defendants. | Case No. 22-cv-00098-WMW-JFD |

**SMARTMATIC'S OMNIBUS BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DEPOSITION TESTIMONY OF MARY FANNING, MOTION FOR SANCTIONS, AND IN OPPOSITION TO FANNING'S MOTION FOR PROTECTIVE ORDER**

Smartmatic USA Corp., Smartmatic International Holdings, B.V., and SGO Corporation Limited (collectively, "Smartmatic") submit the following in support of a motion to compel the deposition of Mary Fanning ("Fanning"), motion for contempt sanctions against Fanning and her counsel, and in opposition to Fanning's motion for a protective order.

## INTRODUCTION

Fanning is a central figure in the defamation campaign waged against Smartmatic by Mike Lindell along with his company, My Pillow, Inc. ("MyPillow"). Starting in February 2021, Lindell has promoted election fraud claims about the 2020 U.S. Presidential election, including claims that Smartmatic and its voting machines participated in rigging the 2020 election. Fanning has been publicly and privately identified as one of the architects of Lindell's conspiracy claims against

1

voting machines, including Smartmatic. Fanning served as one of Lindell's so-called sources and provided Lindell with what he calls the "absolute proof" of election fraud in the 2020 U.S. Presidential election. The information that Fanning provided Lindell was the impetus for his defamation campaign. Fanning also helped Lindell create his documentaries series (the "Absolute Proof" series) about election fraud (serving as an executive producer for multiple documentaries), appeared in the first documentary to espouse widely debunked election fraud claims, and received over $200,000 from Lindell for her services. Fanning has made a name for herself (and plenty of money) by helping Lindell defame Smartmatic.[1] Fanning is thus a critical witness with unique knowledge of Lindell's defamation campaign. She is not within the subpoena power to testify at trial in this matter in Minnesota.

Now, Fanning runs as fast as she can away from having to answer questions under oath about her involvement in Lindell's defamation campaign. Smartmatic served Fanning with a subpoena for documents and deposition testimony in November 2022. After months of meet-and-confers concerning Fanning's deficient document production, Smartmatic and Fanning agreed to schedule Fanning's deposition for August 4, 2023. Fanning subsequently refused to attend the deposition based on her preposterous claim that a door in her home swung so hard that it knocked her off her feet and caused her to sustain a concussion. After more negotiations, Smartmatic agreed to depose Fanning on August 29. But, true to form, Fanning later claimed she was unable to sit for the deposition due to another ailment. Smartmatic called her bluff and said the deposition would proceed. Then, the day before her scheduled deposition, Fanning's counsel came up with his own medical excuse for why the deposition could not proceed.

---

[1] Mary Fanning is also known as Mary Kirchhoefer. Kirchhoefer is her married name. In connection with her public and online persona for purposes of Lindell's defamation campaign (and for her prolific social media postings), she uses "Mary Fanning" to identify herself.

2

Smartmatic believes none of it. Fanning and her counsel have substantiated none of it. Fanning and her counsel are engaged in a game of "catch me if you can." The course of conduct makes clear that Smartmatic will be constantly scheduling and rescheduling the deposition (and incurring unnecessary fees and expenses) until the fact discovery deadline runs. Fanning cannot be allowed to avoid sitting for her deposition indefinitely. Fact discovery in Smartmatic's lawsuit against Lindell closes on October 20, 2023. Smartmatic has been chasing Fanning for months for her documents and her deposition. That must come to an end now, and Smartmatic needs the Court's assistance to get Fanning to testify. If Fanning has the time and energy to plot a defamation scheme against voting machines with Lindell, she has the time and energy to answer questions under oath by Smartmatic. Smartmatic is eager to hear what she has to say . . . when under oath.

## **OVERVIEW OF ARGUMENT**

Smartmatic raises three related issues for the Court. First, Smartmatic has the right to take the deposition of any third-party witness with potentially relevant information for its suit against Lindell and MyPillow (the "Lindell Litigation"). This right is typically exercised, without court intervention, pursuant to Fed. R. Civ. P 30. But, occasionally, with court assistance pursuant Fed. R. Civ. P. 45 when the third-party is uncooperative. Fanning is uncooperative. Fanning unquestionably has relevant information given her role as one of Lindell's primary sources, an executive producer for his defamatory publications, and a guest on the first defamatory publication where she spread election fraud disinformation. The Court should grant Smartmatic's motion to compel her attendance at a deposition prior to October 20, 2023. Smartmatic will be prejudiced if it is not allowed to proceed with her examination.

Second, Smartmatic should be reimbursed for its reasonable attorneys' fees and costs incurred pursuing a deposition of Fanning. Obstructionist is the kindest word to describe the

conduct of Fanning and her counsel. Fanning and her counsel have impeded, delayed, and frustrated Smartmatic from examining Fanning in this case. This has included providing Smartmatic with a series of unsupported claims in communications with Smartmatic's counsel at the eleventh hour, going so far as to submit a suspiciously bareboned "doctor's note" about low back pain. Indeed, the night before her deposition, Fanning and her counsel escalated their misconduct by filing a motion for protective order that provides zero evidentiary support and repeats implausible excuses for cancelling her deposition. Sanctions are appropriate where a deponent and her counsel have used deceit to avoid complying with a federal subpoena.

Third, the Court should deny Fanning's motion for a protective order. Stating the obvious, Fanning's motion does not even attempt to satisfy the legal standard for a protective order. The legal standard is not identified, discussed, or met in the motion. The motion contains zero authority. And the motion is supported by zero evidence. It was filed – another abuse of process – simply so Fanning and her counsel could say they filed a motion for protective order before her August 29 deposition started. The relief requested—an indefinite postponement of the deposition until not one, but two, doctors' notes are received—is a thinly veiled effort by Fanning to run out the clock to avoid sitting for a deposition prior to the October 20 deadline.

## BACKGROUND

Smartmatic initiated the Lindell Litigation on January 18, 2022, in the United States District Court for the District of Minnesota. The Lindell Litigation focuses on Lindell's publication of a series of defamatory statements about Smartmatic and its voting machines. *See* Declaration of Julie M. Loftus ("Loftus Decl.") Ex. 1, First Supplemental Complaint, ¶¶ 75–141. In general, Lindell claimed that Smartmatic and Smartmatic voting machines (along with other voting machines) rigged the 2020 election by switching votes, overcounting votes, and undercounting

votes. *Id.* Lindell's claims are inherently implausible. Smartmatic and Smartmatic voting machines were only used in Los Angeles County during the 2020 election. *Id.* ¶¶ 8, 35–52. They were not used in any other jurisdiction in the United States, including in any of the jurisdictions considered "contested states." *Id.* But truth and facts did not matter to Lindell because he had a campaign to wage.

One of Lindell's first acts as part of his defamation campaign was the publication of a "documentary" titled *Absolute Proof*. *Id.* Ex. 2, *Absolute Proof* Transcript. Fanning played a prominent role in *Absolute Proof*—she was one of the executive producers for that "documentary" as well as at least two others, including *Scientific Proof* and *Absolute Interference* (both of which are at issue in the Lindell Litigation). *See id.* Ex. 3, Defendant Michael J. Lindell's Supplemental Answers to Plaintiffs' First Set of Interrogatories, at Interrogatory No. 6; *id.* Ex. 4, First Supplemental Complaint Ex. 4, at 2. She was one of Lindell's sources for the claims he made during *Absolute Proof* (and afterwards). *Id.* Ex. 5, Defendant Michael J. Lindell's Second Supplemental Answers to Plaintiffs' First Set of Interrogatories, at Interrogatory No. 4 (Line 54). And Fanning was a "star" presenter on *Absolute Proof*. Lindell introduced Fanning's segment as "the moment you've all been waiting for." *See id.* Ex. 2, at 75:5. Lindell continued: "I'm going to bring on Mary Fanning to explain how it all happened. And that, show you the 100% [proof]" that the 2020 election was rigged. *Id.* at 75:12–13. Fanning proceeded to describe what she called "forensic evidence of foreign footprints, as they entered our election in a cyber warfare attack on our election." *Id.* at 78:5–7. Fanning earned $200,000 from Lindell for her contribution to his defamation campaign. *See id.* Ex. 6, MyPillow's Second Supplemental Answer to Plaintiffs' Interrogatory No. 6.

*Absolute Proof* was not the only role Fanning played in Lindell's defamation campaign. By her own admission, she did much more. Lindell has claimed countless times that he has "100% proof" of the 2020 election being rigged. His "proof" allegedly comes from Fanning.[2] Among other things, Fanning has shared with Lindell articles she has written for her own publication, "The American Report." *See, e.g. id.* Ex. 7, DEF10364833–34. The thrust of her articles is that the 2020 election, and other elections, was rigged with a supercomputer called "The Hammer" and software called "Scorecard."[3] Perhaps needless to say, Fanning's claims have been repeatedly debunked as "nonsense" by high-ranking government officials. *See id.* Ex. 8, First Supplemental Complaint Exhibit 125. But that has not stopped her from sharing them with Lindell and spreading them to others on social media. Lindell, in turn, shared Fanning's conspiracy theories with President Trump, who wanted nothing to do with them.[4]

Given her prominent role in Lindell's defamation campaign, Lindell unsurprisingly identified Fanning as one of his "sources" in responses to Smartmatic's interrogatories. *Id.* Ex. 5, at 7 (No. 54). Also, unsurprisingly, given her prominent role and Lindell's identification of her as a source, on November 8, 2022, Smartmatic served a subpoena on Fanning for documents and a deposition. *Id.* Ex. 9, Fanning Dep. Exs. 389–90; *id* ¶ 22. After considerable back-and-forth with Fanning's counsel, Smartmatic agreed to depose Fanning in Lake Geneva, Wisconsin on August

---

[2] *See How Mary Fanning Got Information President Trump Through Mike Lindell*, FrankSpeech (December 19, 2022), *available at* http://frankspeech.com/video/how-mary-fanning-got-information-president-trump-through-mike-lindell, at 1:35.

[3] *See, e.g.,* Mary Fanning & Alan Jones, *Biden Using SCORECARD and HAMMER to Steal Another U.S. Presidential Election – Just Like Obama and Biden Did in 2012*, The American Report (October 31, 2020), *available at* https://theamericanreport.org/2020/10/31/biden-using-scorecard-and-the-hammer-to-steal-another-u-s-presidential-election-just-like-obama-and-biden-did-in-2012.

[4] *See* Asawin Suebsaeng, *MyPillow Guy Presents Trump with 'China' Election-Fraud Theory, Lawyers Send Him Packing*, The Daily Beast (January 16, 2021), *available at* https://www.thedailybeast.com/mypillow-guy-presents-trump-with-china-election-fraud-theory-lawyers-send-him-packing.

6

4, 2023. *See id.* Ex. 10, Fanning Dep. Ex. 393; *id* ¶¶ 23–24. Fanning's counsel represented that Fanning was staying at her vacation home in Lake Geneva so that location was more convenient. *Id.* Ex. 10.

Fanning, of course, skipped out on the August 4 deposition. On August 1, through counsel, Fanning told Smartmatic that she could not attend a deposition on August 4 because she had suffered a "concussion." *Id.* Ex. 11, Fanning Dep. Ex. 394; *id.* ¶ 25. According to her counsel, Fanning fell victim to a swinging door that struck her with such force that it swept her into the air and off her feet. *See id.* Ex. 12, Fanning Dep. Ex. 395; *id.* ¶ 25. Suspicious of this last-minute claim, Smartmatic asked Fanning to provide some proof of the alleged incident—surely, a hospital or emergency room record would exist if Fanning had been struck with such force as to cause a concussion." *Id.* Ex. 11; *id.* ¶ 25. Fanning provided no proof. *Id.* However, tellingly, she tweeted six times on the day of her alleged accident, fourteen times the following day (when her counsel claimed she was in the hospital), and twenty-two times on the day her deposition was supposed to take place (August 4). *Id.* Ex. 13, publicly available Tweets from @realMaryFanning ("The American Report") from July 30 through August 27, 2023.

Nonetheless, taking the high road, Smartmatic agreed to move the deposition. Smartmatic and Fanning agreed to move her deposition to August 29. *Id.* Ex. 14, Fanning Dep. Ex. 397. Smartmatic served a new subpoena for that date. *See id.* Ex. 17, Fanning Dep. Ex. 398. And, on August 16, Fanning's counsel confirmed that date for the deposition. *See id.* Ex. 14. All seemed set. Until it was unset. On August 25, Fanning (through her counsel) once again claimed that she could not attend a deposition. This time the culprit was not a swinging door but instead her continued use of a prescription drug and "lower back pain." *Id.* ¶ 26. Fanning attempted to substantiate her newfound impediments by providing a one-sentence "doctor's note" and blurred

7

photograph of a pill bottle. *Id.* Smartmatic cried foul. She had never stopped tweeting since the alleged accident and her active social media postings never mentioned an impairment. *Id.* Ex. 13.

The next day, August 26, Smartmatic responded to Fanning's latest excuse with a detailed letter pointing out the implausibility of Fanning's claims and her pattern of delay. *See id.* Ex. 16, Fanning Dep. Ex. 401. Among other things, Smartmatic explained that the "doctor's note" was an apparent fraud because the alleged treating physician was located 60 miles away from Fanning and, according to her counsel, she could not travel in a car for more than 10 minutes. *See id.* No car travels 60 miles in under 10 minutes. Smartmatic also explained that the "use instructions" on the pill bottle indicated that Fanning would have stopped taking the pills several days ago (no later than August 19) so she could not possibly still be medicated. *Id.* Smartmatic, therefore, told Fanning the deposition would proceed on August 29.

Undeterred, Fanning and her counsel came up with a new excuse. On August 28, the day before the deposition, Fanning's counsel announced that he now had a medical issue that would require cancellation of the deposition because he could not travel. *Id.* Ex. 17, Fanning Dep. Ex. 402; *id* ¶ 28. Understandably, Smartmatic had had enough. It responded that the deposition would go forward as scheduled. Fanning's counsel could attend, he could arrange for one of his partners to attend in his place, or he could attend remotely. *Id.* If Fanning's counsel could not travel, as he claimed, and he was indispensable to Fanning's deposition, Smartmatic's offer to arrange for his remote participation was the logical solution. Smartmatic received no response.

Fanning's final move was predictable. At 5:37 p.m. on August 28, the night before the deposition, and after the courthouse closed, Fanning moved for a protective order. ECF No. 1. Her motion was as procedurally deficient as it was substantively lacking. Fanning did not provide any evidentiary support for her claims. Still hoping Fanning would do the right thing, and given that

8

there was no court order to the contrary, on August 29, Smartmatic showed up to conduct Fanning's deposition in Lake Geneva as noticed. *Id.* Ex. 19, Dep. Tr. of Mary Fanning; *id.* ¶ 29. Fanning and her counsel did not show. *Id.* Again, tellingly, the week of August 28, when Fanning was allegedly too medicated or too sore to sit for a deposition, she posted over 50 tweets about various conspiracy theories. *Id.* Ex. 18, publicly available Tweets from @realMaryFanning ("The American Report") from August 28 through September 1, 2023. She was not too medicated or sore to spread disinformation.

## ARGUMENT

> *A lawyer shall not: (a) unlawfully obstruct another party's access to evidence . . . A lawyer shall not counsel or assist another person to do any such act.*
>
> \*\*\*
>
> *A lawyer shall not: (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.*
>
> \*\*\*
>
> *A lawyer shall not: (d) in pretrial procedure . . . fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.*

ABA Rules of Professional Conduct 3.4. Smartmatic should not be in this situation. Fanning's counsel should not have allowed Fanning to circumvent a subpoena (twice) and, certainly, should not have facilitated that misconduct by passing along unsubstantiated excuses for not being deposed. However, what is done is done. Smartmatic now needs the Court's assistance to obtain the discovery from Fanning it is entitled to receive to pursue its claims in the Lindell Litigation.

I.  **The Court should enter an order compelling Fanning to appear for a deposition prior to October 20, 2023.**

Rule 30 authorizes a party to take the deposition of "any person," generally without leave of the court. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). Rule 45 authorizes

9

the issuance of a subpoena to command a non-party to attend and testify. Fed. R. Civ. P. 45(a)(1)(A)(iii); *Teed v. JT Packard & Assocs., Inc.*, No. 10-MISC-23, 2010 WL 2925902, at *1 (E.D. Wis. July 20, 2020). If a non-party fails to respond to a subpoena, a party seeking enforcement may bring a motion in "the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). This is the district where "compliance is required" as Smartmatic has agreed to accommodate Fanning by having her deposition take place in Lake Geneva, Wisconsin.

A party may move for an order compelling discovery "[o]n notice to other parties and all affected persons." Fed. R. Civ. P. 37(a)(1). The court evaluates a motion to compel against the language of Rule 26, which provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Inland Diamond Prods. Co. v. Cherry Optical Inc.*, No. 20-C-352, 2022 WL 2128888, at *2 (E.D. Wis. June 14, 2022) (citing Fed. R. Civ. P. 26(b)(1)). "When a district court considers a motion to compel, it must evaluate factors such as timeliness, good cause, utility, and materiality." *CSC Holdings*, 309 F.3d at 993.

Smartmatic has satisfied all of these factors. First, Smartmatic has brought this motion only after exhausting efforts to secure Fanning's compliance with a subpoena requiring her deposition. Smartmatic has twice scheduled Fanning's deposition for a date and location agreed to by Smartmatic and Fanning. Smartmatic has twice seen Fanning and her counsel manufacture excuses at the last minute for why she (and he) could not attend the deposition. Smartmatic has twice seen Fanning continue her social media activities – spreading disinformation – after she and her counsel indicated she was in no condition to testify. Enough is enough. Smartmatic has reached the point where Court intervention is, unfortunately, necessary.

Second, Smartmatic has good cause for taking Fanning's deposition. This can hardly be disputed. Fanning is one of Lindell's primary alleged sources for the defamatory statements he made about Smartmatic and voting machines. Smartmatic must depose Fanning to further its case that Lindell acted with actual malice – that is, he published his statements about Smartmatic with "knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1960). One of the hallmarks of actual malice is evidence that the defendant had "obvious reasons to doubt the veracity of [his source] or the accuracy of the report." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Lindell has "obvious reasons" to doubt Fanning's veracity.

Fanning's deposition testimony will help to establish Lindell's actual malice. Smartmatic anticipates questioning Fanning about (1) her communications with Lindell; (2) the basis for her claims about voting machines, including claims she directly and indirectly made to Lindell; (3) her involvement in the production of *Absolute Proof, Scientific Proof*, and *Absolute Interference* as an executive producer; (4) the coordination of her appearance on *Absolute Proof*, including sharing with Lindell what she would say to show he had advance notice that she would be making factually inaccurate statements; and (5) her public statements about unfounded conspiracy claims that created "obvious reasons" to doubt her veracity. Fanning's testimony is relevant and material to Smartmatic's claims.

Third, Smartmatic needs to take Fanning's deposition before the close of fact discovery on October 20, 2023. Fanning and Lindell made Fanning central to Smartmatic's claim. Fanning decided to conspire with Lindell to spread disinformation regarding the 2020 election. Fanning decided to work with Lindell—getting paid $200,0000 to do so—to produce a "documentary" spreading disinformation about the 2020 election. Fanning decided to appear on the

11

"documentary" to contribute her own brand of disinformation under the auspices of "100% proof." There is no substitute for a deposition of Fanning to obtain evidence regarding the central role she played with Lindell, what she communicated to Lindell, and the basis (or lack thereof) for what she said to Lindell.

**II.     The Court should sanction Fanning and her counsel for their unsubstantiated attempts to avoid Fanning's deposition.**

It is unfortunate that Fanning and her counsel have forced Smartmatic into seeking sanctions. Contempt sanctions are appropriate where the moving party has demonstrated that a deponent has disobeyed a duly served deposition subpoena. Fed. R. Civ. P. 45(e); *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). To obtain sanctions, the moving party must demonstrate the individual violated a specific and definite order of the court. *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989). A subpoena, like those served on Fanning, is "itself a court order subject to contempt sanctions if disobeyed." *Hyatt*, 621 F.3d at 693. Fanning and her counsel should be subject to contempt sanctions because it is clear they actively avoided a subpoena through deceitful conduct.

*First*, Fanning, with the active participation of her counsel, has twice violated a subpoena without good cause. Fanning's social media activity reveals the lies that she and her counsel have been saying to Smartmatic to avoid her obligations pursuant to the subpoena. Fanning and her counsel say she is too medicated and in too much pain to sit for a deposition to answer questions under oath. However, since the time she was allegedly attacked by a swinging door, Fanning has had the time, energy, mental competence, and fortitude to post and repost hundreds of times on her Twitter account (@realMaryFanning, "The American Report". If Fanning is well enough to sit and publish conspiracy theories, she is well enough to sit for a deposition.

12

***Second***, Fanning's medical excuses are unsubstantiated. Fanning has provided no evidence to substantiate her claim of the swinging door injury, a subsequent hospital visit, or a concussion. Fanning has provided no evidence that she was on prescription medication following the swinging door incident and remained on prescription pain medication for the alleged concussion through August 29. The medicine bottle in her blurred photograph has no date. Fanning provided no evidence that the doctor who provided her "doctor's note" had seen her for a diagnosis and treatment any time after the alleged swinging door incident. Indeed, it seems implausible that he did because his office is located 60 miles from her Lake Geneva vacation home where the accident allegedly took place. Moreover, this doctor allegedly treated Fanning for "lower back pain," which has no apparent relationship to Fanning's claimed "concussion." Smartmatic does not believe Fanning for good reason.

### III. The Court should deny Fanning's procedurally improper and substantively inadequate motion for a protective order.

A court may grant a motion for a protective order for "good cause" shown. Fed R. Civ. P. 26(c); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). The moving party bears the burden of showing "good cause." *Tusczkiewicz v. Allen Bradley Co., Inc.*, 170 F.R.D. 15, 17 (E.D. Wis. 1996). To satisfy the good cause showing, the moving party must make a "particular and specific demonstration of fact; conclusory statements are not sufficient." *Asyst Techs., LLC v. Eagle Eyes Traffic Ind. Co.*, No. 11-C-00381, 2013 WL 160264, at *2 (E.D. Wis. Jan. 14, 2013) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). Additionally, "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1).

Fanning's motion for a protective order is deficient on its face. One, Fanning did not include a "certification" that she had "in good faith conferred or attempted to confer" with Smartmatic "in an effort to resolve the dispute without court action." Two, Fanning did not include any evidence – affidavit, declaration, documentation – to satisfy her burden of a "particular and specific demonstration of fact" supporting the requested protective order. Three, Fanning did not even set forth the legal standard for a protective order, provide arguments on how her alleged situation satisfied that legal standard, or cite a single case discussing protective orders in similar circumstances. Her motion was a sham. It was frivolous. It was an abuse of process.

The conclusory statements included in the motion do not withstand scrutiny. One, Fanning claims to be unable to sit for a deposition based on being medicated. But her allegedly medicated state has not prevented her from continuing her business of publishing disinformation through "The American Report." Moreover, the photograph of a pill bottle she sent Smartmatic undermines her contention of still being medicated. Loftus Decl. ¶ 26–27. On its face, the pill bottle stated that it contained 20 pills and she should take one pill every eight hours. *Id.* It also stated "no refills." *Id.* Even assuming Fanning started taking the pills after the alleged door incident on July 30, she would have run out of pills long before August 29 and would have no more today. *Id.*

Two, Fanning claims that she is unable to "sit" for a deposition because of lower back pain. Again, her social media activity undermines the credibility of this excuse. If she can "sit" to publish disinformation on social media, she can "sit" for a deposition. Moreover, the "doctor's note" she provided to Smartmatic is troubling. Fanning's counsel told Smartmatic that she could not travel in a car for more than 10 minutes. *Id.* ¶¶ 27. But the doctor who signed the one-sentence note is located in Glenview, Illinois, and Glenview is over **60 miles** away from Lake Geneva. *Id.* Fanning could not have possibly visited a doctor in Glenview for a diagnosis and treatment following the

door incident if, as her counsel said, she cannot travel in a car for more than 10 minutes. Tellingly, the "doctor's note" provided no information about when he allegedly treated Fanning, for what, and why that alleged condition prevents her from being deposed. *See id.* ¶¶ 26–27.

Three, Fanning's counsel now claims that he too cannot travel because of a recently discovered medical issue. Leaving aside that the claim is unsubstantiated, her counsel's alleged inability to travel is not grounds for a protective order. Fanning's counsel can participate in her deposition remotely. Fanning needs to be present in person. Her counsel does not. Or Fanning can be represented by one of counsel's colleagues. His firm has five other attorneys. Or Fanning's counsel can make the trip from his office in Minneapolis to Lake Geneva. Smartmatic has seen no evidence that he cannot do so. Or Fanning can be represented at her deposition by one of the thousands of well-qualified attorneys in this district and State, eliminating the travel issue altogether. Bottom line, regardless of whether the Court credits her counsel's medical excuse, it is not grounds for a protective order. It is another delay tactic.

Fanning has come woefully short of proving "good cause" for a protective order. Her requested relief reveals the true purpose of the motion. The motion is not merely intended to temporarily delay her deposition, but to prevent Smartmatic from taking her deposition prior to the October 20, 2023 fact discovery deadline in the Lindell Litigation. Fanning wants to avoid depositions until both she and her counsel receive new "doctors' notes" clearing them for depositions. That would put Smartmatic's right to her deposition in the hands of unknown doctors, addressing unknown ailments, and applying unknown standards. Smartmatic would never get her deposition under those circumstances.

## CONCLUSION

Fanning and her counsel do not deserve the benefit of the doubt. Smartmatic has been accommodating. Smartmatic has given Fanning and her counsel every opportunity to voluntarily comply with their legal obligations. They have chosen a different path, and done so dishonestly. Now, Smartmatic needs the Court's assistance to compel them to comply with their obligations. Smartmatic asks the Court to enter an order: (1) compelling Fanning to appear for a deposition in Lake Geneva, Wisconsin on October 6, 2023, or in the alternative on October 13, 2023; (2) sanctioning Fanning and her counsel and ordering them to pay Smartmatic's reasonable attorneys' fees and costs in pursuing her deposition; and (3) denying Fanning's motion for a protective order. Fanning must answer questions under oath.

Dated: September 5, 2023                                          Respectfully submitted,

/s/ *Patrick Nolan*

Patrick Nolan
   Patrick.Nolan@quarles.com
**QUARLES & BRADY LLP**
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Telephone: (414) 277-5465

Nicole E. Wrigley (*pro hac vice* forthcoming)
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Julie M. Loftus (*pro hac vice* forthcoming)
   JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Movants Smartmatic USA Corp., Smartmatic B.V. Holdings, and SGO Corp. Ltd.*