## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

SMARTMATIC USA CORP., SMARTMATIC
INTERNATIONAL HOLDING B.V. and SGO
CORPORATION LIMITED,

Plaintiffs,

v.

MICHAEL J. LINDELL and MY PILLOW, INC.,

Defendants.

Case No. 22-cv-00098- WMW-JFD

### DEFENDANTS MICHAEL J. LINDELL AND MY PILLOW, INC.'S
### MEMORANDUM IN SUPPORT OF THIRD MOTION TO COMPEL

## I.      INTRODUCTION

This case began on January 18, 2022, upon Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited ("Smartmatic" or "Plaintiffs") filing of a one hundred thirty-six (136) page Complaint against Defendants Michael J. Lindell and My Pillow, Inc. ("Defendants"). On January 18, 2022, Plaintiffs claimed that Defendants caused damages to Smartmatic in the billions. The close of fact discovery is less than a month away and Plaintiffs still refuse to provide even basic discovery responses that bear directly on central claims and defenses in this case.

Plaintiffs have hidden the ball long enough and must be held accountable. Nothing short of orders compelling the immediate production of all outstanding discovery and

1

modifying the deadlines can attempt to cure the prejudice caused by Plaintiffs' discovery misconduct.

The list of discovery violations by Plaintiffs' is significant, and quite frankly, too lengthy to recount fully herein. But the greatest hits include:

- Representing to Defendants (and the Court) that they did not possess an exemplar voting machine when in fact they did;
- Refusing to produce an exemplar voting machine when it was requested in discovery, and instead keeping its existence secret until *the very day* the expert discovery deadline expired;
- First Representing to Defendants (and the court) that Plaintiffs' contract with Los Angeles County did not allow them to disclose the election machine's source code, software, or hardware without a court order or Los Angeles County's consent (which Plaintiffs' claimed they did not have). Then, after the expert disclosure deadline of September 22, 2023, in which Plaintiffs' examined an exemplar VSAP BMD machine at Smartmatic's U.S. headquarters ("Exemplar BMD"), Plaintiffs suddenly offered to allow Defendants to fully examine an exemplar of an election machine with hardware identical to the one used in Los Angeles County, and with software also identical to the Los Angeles 2020 election machine (with the addition of with only "very minor differences" related to added human languages). Importantly, the Exemplar BMD machine's software is Los Angeles County VSAP version 3.0, fully owned by Los Angeles County. Plaintiffs' do not provide Defendants (or the Court) with any explanation why they were suddenly able to produce the software and hardware of the election machine without a court order.
- Flatly ignoring the basic requirements of Rule 26(a) which mandates at the outset of the case they identify the *amount* of their damages, the *basis* for calculating those damages, and the *method* of calculating them;
- Refusing to provide any meaningful discovery responses to Defendants' interrogatory and request for production related to alleged damages;
- Refusing to provide admittedly relevant and responsive information relating to Los Angeles County, including documents and communications Plaintiffs had with the county relating to election system security, reliability, and vulnerabilities;
- Withholding relevant and responsive documents from production *and* not disclosing this fact to Defendants' counsel for months;
- Finally agreeing to produce some of the withheld documents related to Los Angeles County (which were the subject of discovery in November

2022) the first week of October 2023 with less than three weeks until the close of fact discovery;

- Providing an Appendix A that identified over four hundred (400) jurisdictions with conclusory reduced profits probability without any additional information from a damages standpoint;

- The night before Plaintiffs' first 30(b)(6) deposition, which was to be of one of Plaintiffs' key damages witnesses (Roger Pinate Jr., President of Smartmatic) Plaintiffs supplemented their objections and designations to the 30(b)(6) deposition topics which *substantively changed* the topics and scope of topics for designated for the witnesses, and provided an Amended Appendix A that significantly altered the alleged damages jurisdictions at issue;

- After Defendants declined to proceed with the 30b6 deposition of Roger Pinate Jr., due to the 12th hour change in topics and information he would be prepared to testify regarding, Plaintiffs' have refused to make Roger Pinate Jr., available for a new 30b6 deposition date, and have ignored Defendants multiple attempts to clarify and resolve this issue.

- Refusing to state (or "take a position on") whether the multiple revised versions of Amended Appendix A is responsive to a discovery request, and if so, refusing to supplement discovery accordingly;

- The evening of September 24, 2023, two (2) business days[1] before the scheduled 30(b)(6) and personal deposition of the CEO of Smartmatic, providing a second revised version of the Amended Appendix A that substantially and substantively changes the topics to be covered at that deposition – namely, adding an additional forty-four (44) jurisdictions to that witness' area of knowledge and testimony, leaving Defendants inadequate time to prepare for the deposition;

- At the outset of the 30(b)(6) and personal deposition of the CEO of Smartmatic, handing Defendants' counsel (present at the deposition) a hard copy of a third revised version of Appendix A which contained an additional column outlining the (at least) partial factual basis for the damages calculations. These "morning of" additions were directly responsive to numerous outstanding Defendants' interrogatories and document requests, all of which Plaintiffs had refused to supplement or provide information to.

- Unilaterally cancelling a 30(b)(6) witness' deposition the night before it was set to proceed without any explanation.

---

[1] One of those being Yom Kippur, a very significant religious holiday observed by Defendants' counsel.

More than twenty-one (21) months into this case, and with the fact discovery deadline rapidly approaching on October 20, 2023. Plaintiffs' discovery conduct have made it impossible for Defendants to prepare this case fairly and adequately for trial.

Evidence of the truthfulness and inherent plausibility of Lindell's statements (i.e., the susceptibility and vulnerability of the election machines) and of any damages allegedly suffered by Plaintiffs as a result therefrom, are two of the most critical issues in this case. The probative evidence on these issues is in Plaintiffs' knowledge, possession, and control. Defendants asked for discovery on both issues repeatedly and have been stonewalled by Plaintiffs at every turn.

Plaintiffs *admit they are withholding relevant documents and things* bearing on the truthfulness of Lindell's statements. Plaintiffs refuse to provide an exemplar machine, machine source code and numerous documents associated with Los Angeles County that squarely address this issue. They do so despite repeated demands that those items be produced and despite being in possession, custody, or control of them since the outset of this litigation. Plaintiffs' contention that they have no obligation to provide any information to substantiate their claims for damages. The Federal Rules of Civil Procedure, including Rule 26(e)(1)(A) and 37(a)(3)(A), say otherwise.

Defendants must have the opportunity to fully explore discovery on these essential issues to prepare for trial. Plaintiffs' refusal to provide the most basic, relevant information on these issues is outrageous and has caused severe prejudice to Defendants' ability to properly prepare this case. The discovery sought bears directly on the claims and defenses in this case, and Plaintiffs are admittedly already in possession of the discovery.

Plaintiffs ostensibly suffered damages before they elected to sue Defendants for billions of dollars.[2] One would expect Plaintiffs to be able to itemize those damages at some point in the litigation – certainly *before* the close of discovery. This is trial by ambush.

Plaintiffs' discovery conduct has prevented Defendants' ability to conduct discovery in a meaningful way and to properly plan case strategy. It has caused Defendants to expend considerable sums investigating alleged jurisdictions where Plaintiffs purportedly suffered harm and preparing for depositions and topics that Plaintiffs altered or cancelled at the eleventh hour. It has left Defendants with no opportunity to examine the veracity of Plaintiffs' claims about the alleged security of their systems or the suffering of damages during fact *or* expert discovery.

The Court must now intervene. It is time to compel Plaintiffs to play by the rules. Plaintiff must: supplement the damages section of its Initial Disclosures fully; provide an exemplar voting machine; provide the source code; fully respond to Defendants' damages-related discovery (Interrogatory Nos. 20, 31, 32, 33, 34 and 36); provide all previously withheld documents in its possession, including any related to Los Angeles County, that are responsive to Document Request Nos. 3,4, 9, 14, 20, and 21 and fully respond to Interrogatory Nos. 13, 16 and 25.

Due to the extreme prejudice caused by Plaintiffs' pervasive abuse of the discovery process, Defendants are also entitled to an order modifying the fact discovery deadline by

---

[2] Given counsel's duties under Federal Rule of Civil Procedure 11, Defendants presume Plaintiffs possessed information about their alleged damages *before* they filed this suit.

an additional sixty (60) days. There is good cause to do so, and there is no plausible argument that Plaintiffs would be prejudiced by doing so.

In addition to the many failures to respond to written discovery in a meaningful way, Plaintiffs' conduct has prevented Defendants' ability to take Plaintiffs' 30(b)(6) deposition. On the eve of Plaintiffs' first 30(b)(6) deposition, Plaintiffs not only identified two (2) additional designees but went so far as to *substantively* alter the topics of the designee that was scheduled to be offer testimony *the next morning*. Defendants counsel prepared for and traveled to New York for a deposition that was could not go forward as planned based on Plaintiffs' antics. Plaintiffs then, *the very next day*, unilaterally canceled the deposition of the second 30(b)(6) deposition *the night before* it was to begin.[3] Then again, merely two (2) business days prior to the scheduled deposition of Antonio Mugica, Smartmatic's Chief Executive Officer, Plaintiffs yet again made wholesale changes to the topics of his deposition, including significantly altering the jurisdictions he would address as it relates to Plaintiffs' alleged damages. Plaintiffs altered their Amended Appendix A and added Antonio Mugica as their witness in forty-seven (47) new jurisdictions, including in *every* jurisdiction in the United States where Plaintiffs allege Defendants' statements caused them damage.

Defendants have been diligent and steadfast in their efforts to take Plaintiffs' 30(b)(6) deposition. To date, Defendants have only been able to take a single (incomplete)

---

[3] Plaintiffs offered to reimburse Defendants for the costs incurred in travelling to Florida for that deposition.

deposition of one 30(b)(6) designees. Plaintiffs' conduct create good cause to modify the pending deadlines by sixty (60) days.

## II.   <u>BACKGROUND</u>

### A.   **Status of Damages Discovery and Information.**

Plaintiffs served their Initial Disclosures on or about October 21, 2022. (Declaration of Abraham S. Kaplan ("Kaplan Decl.") Ex. A.) It has never been supplemented. The Computations of Damages section is threadbare, conclusory and does not have any computation of each damages category, or any basis and methodology for a computation.

Defendants served the following Interrogatories to Plaintiffs on November 4, 2022. (Kaplan Decl. Ex. B.)

Interrogatory No. 13 states:

> **<u>INTERROGAOTRY NO. 13:</u>** For each of Your parent, subsidiary, or affiliate entities, anywhere in the world, identify (a) the complete legal name of such entity, (b) its place of organization, (c) its principal place of business, and (d) its relationship to each of the Plaintiffs in this litigation. Your answer must include, at a minimum, the subsidiaries referenced in footnote 9 of the Complaint and each entity identified in Paragraph 11 of the Complaint, including the identity of every entity "operating under the Smartmatic brand in" the two dozen countries referenced in Paragraph 11.

(Kaplan Decl. Ex. B.) Plaintiffs objected to Interrogatory No. 13 on the grounds that it seeks information or materials protected from disclosure by the attorney-client privilege or the attorney work product doctrine. Plaintiffs further objected to this Interrogatory on the ground that the "timeframe" of requested information is overbroad and unduly burdensome and seeks information and materials that are irrelevant to the claims and defenses in this case. Notwithstanding Plaintiffs' objections, Plaintiff Answered that it would "produce

organizational charts sufficient to show the corporate structure of Smartmatic from January 1, 2016 to the present." First, Plaintiffs arbitrary limitation of the timeframe to "January 1, 2016 to the present" is improper. Smartmatic was founded in 2000. It is unlikely that Smartmatic's "parents, subsidiaries, and affiliate entities" since that time are so numerous as to render fully responsive information and materials to Interrogatory No. 13 overbroad or unduly burdensome. Second, Plaintiffs "parents, subsidiaries, or affiliate entities" since the time of Smartmatic's founding are relevant. Plaintiffs' have claimed that Mr. Lindell's statements that Smartmatic, ES&S, and Dominion are connected were false and defamatory. Evidence tending to prove the truth or falsity of Mr. Lindell's statement is, thus, highly relevant to the claims and defenses in this case. Additionally, Plaintiffs have sued Defendants related to Mr. Lindell's alleged statements regarding the connection between Plaintiffs and Venezuela starting in 2001 and 2002 (ECF. 125, page 57), evidence tending to prove the truth or falsity of Mr. Lindell's statement is, thus, highly relevant to the claims and defenses in this case.

Interrogatory No. 16 states:

**INTERROGATORY NO. 16:** Footnote 1 and Paragraphs 6 and 49 of the Complaint reference Smartmatic's "election technology, hardware, and software." Identify every person or entity to whom Smartmatic's "election technology, hardware, and software" was licensed, sold, leased, or loaned for use in any election held anywhere in the world between 2010 and the present.

Plaintiffs' Answer lists 25 countries for which they provided "electoral technology or services" from January 1, 2018 to present.[4] Plaintiffs' Answer is deficient. In this case, Plaintiffs have identified their prior business dealings with a jurisdiction as relevant to their reduced probability metric for jurisdictions identified in Appendix A. Plaintiffs' prior contract and business dealings going back to 2010 is relevant to allow Defendants to perform discovery on what jurisdictions Plaintiffs were repeat vendors to, and which jurisdictions they had never did not deal with prior.

Interrogatory No. 20 states:

> **INTERROGAOTRY NO. 20:** Provide an itemized list of all damages that You allege the Defendants have caused You, identifying for each item of damages the amount and all material facts tending to show that You suffered these damages. If You claim loss of profits for any item of damages, your answer must also identify all persons and jurisdictions whom You allege would have purchased Smartmatic Products but did not do so as a result of any act by Defendants, the dates that you allege these persons or jurisdictions would have purchased Smartmatic Products, and the act(s) by Defendants that you allege caused these persons or jurisdictions not to purchase Smartmatic Products.

(*Id.*)

For Interrogatory No. 20, Plaintiffs provided three separate answers. (Kaplan Decl. Ex. D.) Initially, Plaintiffs responded (on December 5, 2022) that "Smartmatic's damages

---

[4] Plaintiffs objected to this Interrogatory on the grounds that it calls for information protected from discovery by the attorney-client privilege or work product doctrine, that the timeframe of the Interrogatory is overbroad and unduly burdensome, and that the information requested is protected from disclosure by confidentiality agreements with third parties.

include lost sales, revenues, profits, and damage to its brand name, business value, reputation, and goodwill" and that "its investigation of its damages as a result of Defendants' disinformation campaign is ongoing and Smartmatic will produce responsive documents and timely disclose expert opinions identifying the information sought by this Interrogatory pursuant to Federal Rules of Civil Procedure, applicable case law, and any Scheduling Order entered by the Court." (*Id.*) Smartmatic supplemented this answer on April 28, 2023, by identifying, by name only, fifty-five (55) "jurisdictions for which it believes electoral management bodies may not do business with Smartmatic due to the Defamatory Statements, or which have expressed concerns about doing business with Smartmatic or regarding the Defamatory Statements." (Kaplan Decl. Ex. D.) Listing dozens of jurisdictions which "may not do business with Smartmatic" or which have "expressed concerns about doing business with Smartmatic" does nothing to identify Smartmatic's damages or the material facts evidencing the basis for responding with these fifty-five jurisdictions as lost profits or damages due to defamation.

On July 11, 2023, Defendants filed their Second Motion to Compel to compel a complete response to Plaintiffs' Ruel 26 initial disclosure requirements and Interrogatory No. 20 responses (ECF 149). The motion hearing date for Defendants' Second Motion to Compel was scheduled for July 25, 2023.

On Friday evening, July 21, 2023, one business day before the motion hearing, Plaintiffs provided a Second Supplemental Response. (Kaplan Decl. Ex. E.) This response stated that due to defamation following the 2020 Presidential Election, Plaintiffs' enterprise value decreased from $3 Billion to $400 Million and that Defendants' disinformation

campaign was a substantial cause of the decrease/deflation. Plaintiffs Second Supplemental Response also again identifies categories of alleged damages and identifies jurisdictions that fall into three separate categories: First, Plaintiffs' identify 21 jurisdictions that will not do business with Smartmatic; Second, Plaintiffs' identify 33 jurisdictions that Smartmatic's business prospects or opportunities have been harmed or diminished as a result of defamatory statements; Third, Plaintiffs' identify 55 jurisdictions that for which individuals associated with the operative electoral management body or other government officials have expressed concerns about doing business with Smartmatic as a result of defamatory statements. Numerous jurisdictions in these three categories overlap and are repeated. Plaintiffs' Second Supplemental Response also included, for the first time, a version of Appendix A that purports to itemize "Lost Forecasted Profit.", which Plaintiffs referred to providing specific customer information from Smartmatic's customer relationship management (CRM) database. In Appendix A, over 400 jurisdictions were listed, with an initial probability column, then a reduced probability as of February 2021 column, and a lost forecasted profit of Plaintiffs' alleged damages. Plaintiffs Second Supplemental Response to Interrogatory No. 20 is deficient.[5]

---

[5] Plaintiffs Second Supplemental Response also conclusory alleges damages, including historical and future lost sales, revenues, and profits; damage to its brand name, business value, reputation, and goodwill; additional expenses for security, cybersecurity, employee retention, public relations, cost of capital, and legal expenses. However, your Answer does not identify a single dollar figure

Plaintiffs' provide no explanation for or computation for the term "enterprise value", or how the $3 billion $400 million figures were reached. Nor do Plaintiffs explain what documents, communications, information, or individuals were relied upon to reach those figures, and the claim that Defendants were a substantial cause for the decline.

Plaintiffs' identify numerous jurisdictions that they "believe" will no longer do business with Smartmatic, or which "have concerns" about doing business with Smartmatic, but do not identify any information or documents that support the "beliefs"— such as material facts, contracts or correspondence with electoral officials of these countries, states, and counties, or other information or documentation that tend to show these countries, states, and counties would have done business with you before the November 2020 election and have since changed their positions, and have done so because of defamatory statements.

For Appendix A, the information in the document are conclusory and raise more questions than answer. Plaintiffs fail to disclose the specific material facts that they claim show that:

1. The "lost forecasted profits" were a result of, substantial result of, or caused by Defendants' actions and/or any defamatory actions by any party.

2. Which product(s) or service(s) you are alleging would have been sold under any potential contract.

---

related to any of these concededly relevant categories any explanation of the material facts or computations for any allegations of damages.

3. The specific material facts, including all individuals relied upon and an identification of any documents relied upon, relevant to calculating the "initial forecasted profit" or the purported losses.

Fourth, although Plaintiffs provided Defendants with Appendix A on July 21, 2023, the document contains a column labelled "Probability as of February 2021". Plaintiffs are under an obligation to supplement the discovery throughout the litigation. Fed. R. Civ. P. 26(e). Plaintiffs must provide an updated calculation for this litigation when the interrogatory response was served. If it is Plaintiffs position the probability as of September 2023 is the same as the probability as of February 2021, they must supplement their Answer to Interrogatory No. 20 to state as such.

**B.  Follow up Damage Interrogatories.**

Following the July 21, 2023, disclosure of Appendix A, on July 26, 2023, Defendants served Interrogatory Nos. 31-36 on Plaintiffs seeking further information regarding the document. (Kaplan Decl. Ex. H.) Plaintiffs responded to this discovery on September 1, 2023 with conclusory and deficient answers (Kaplan Decl. Ex. I.) Plaintiffs continue to refuse to provide damages-related information in response to written discovery.

- **Interrogatories Nos. 31 and 33.**

**INTERROGATORY NO. 31**: For every Opportunity listed in Appendix A, in your Second Supplemental Answer to Interrogatory No. 20, identify every person who participated in the calculation of the "Initial Probability" in Appendix A, as well as all information they relied upon in calculating the "Initial Probability."

**INTERROGATORY NO. 33**: For every Opportunity listed in Appendix A in your Second Supplemental Answer to Interrogatory No. 20, identify every person who participated in the calculation of the "Probability as of February

2021", as well as all information they relied upon in calculating the "Probability as of February 2021."

In their reply, Plaintiffs object to both Interrogatory 31 and 33 as protected by the attorney-client privilege, and the attorney work product immunity. Plaintiffs' further object to the term "participated" as vague and ambiguous, and the language "every" person and identify "all" information as overly broad and unduly burdensome, and that the interrogatory was better suited for a deposition as opposed to an interrogatory response. (Kaplan Decl. Ex. I.)

Plaintiffs then reply to the interrogatory with a general statement that Antonio Mugica and Roger Piñate, Jr. made the initial probability determinations based on their personal experience, their knowledge of the relevant jurisdictions and opportunities, discussions with others at Smartmatic, discussions with people in and familiar with the different jurisdictions, their review of information in Smartmatic's CRM. Plaintiffs' response is deficient, devoid of actual facts, and conclusory. (*Id.*)

Interrogatories 31 and 33 asks for all people relied upon and all information relied upon. In the answer, Plaintiffs affirm and concede that the probability determinations were made in consultation with others at Smartmatic and people familiar with the Jurisdictions, specific documents in CRM and documents produced in this litigation. The probability determinations are fundamental to Plaintiffs' alleged damages; Plaintiffs' general conclusory statements are not sufficient to respond to the interrogatory. Appendix A lists hundreds of jurisdictions, a deponent sitting for a deposition is not in the best position to

remember the material facts, numerous people, and documents relied upon for each separate jurisdiction. Plaintiffs must supplement interrogatory 31 and 33:

1. For each jurisdiction identified as a lost profit, identify which individual made the initial and post probability determination, and the date they made this calculation; and

2. For each jurisdiction identified as a lost profit, identify the (a) specific information, (b) documents, (c) people, and (d) databases, that Antonio Mugica and/or Roger Piñate, Jr. considered when making the "initial probability" and "February 2021" determinations. Including, but not limited to, which people were consulted for each jurisdiction, what information in the CRM was reviewed, and which documents were relied upon when making the determination.

  - **Interrogatories Nos. 32 and 34:**

**INTERROGATORY NO. 32**: Identify the method used to calculate the "Initial Probability" for every Opportunity listed in Appendix A in your Second Supplemental Answer to Interrogatory No. 20.

**INTERROGATORY NO. 34**: Identify the method used to calculate the "Probability as of February 2021" for every Opportunity listed in Appendix A in your Second Supplemental Answer to Interrogatory No. 20.

For Plaintiffs' interrogatory responses 32 and 34, Plaintiffs respond with a substantively identical responses as Rog. 31 and 33 responses. (Kaplan Decl. Ex. I.) This is deficient, Plaintiffs must supplement their response. For each jurisdiction identified as a lost profit, identify the particular procedure, formula, method, and/or categories of factors

15

that Antonio Mugica and Roger Piñate, Jr. consider/utilize when making the "initial probability" and "Probability as of February 2021" determinations; and identify whether any software or hardware was used in calculating the percentage probability.

- **Interrogatories No. 36:**

> **INTERROGATORY NO. 36**: For every country in which Smartmatic is alleging "Lost Forecasted Profit" in Appendix A in your Second Supplemental Answer to Interrogatory No. 20, identify all of your previous efforts to win business in that country from January 1, 2015 – January 31, 2021, including the outcome of each effort.

For Plaintiffs' response to interrogatory 36, Plaintiffs state general objections, and claim that Plaintiffs are not required to identify the loss was caused by a particular person, that Plaintiffs are alleging defamation per se, and are not obligated to prove actual harm. (*Id.*) This does not excuse Plaintiffs from responding to this interrogatory.

In this case, Plaintiffs <u>are</u> asserting a specific reduced probability for specific jurisdictions that they alleged are attributable, at least partially, to Defendants. Plaintiffs cannot assert these alleged claims then hide behind an argument that Plaintiffs do not need to prove further damages. Moreover, one of the factors cited by Plaintiffs in their responses to Interrogatories 31 and 33, is that Antonio Mugica and/or Roger Piñate, Jr. make their probability determinations based on "their knowledge of the relevant jurisdictions and opportunities". Thus, Plaintiffs admit that prior opportunities', bids, or successes in a jurisdiction are relevant to the analysis. Plaintiffs must supplement their response with this information. For each jurisdiction identified as a lost profit, Plaintiffs' must identify what contracts, bids, services Smartmatic has submitted for in that jurisdiction, from January 1, 2015 – January 31, 2021, and the result of each submission.

16

C.     **Los Angeles County Documents.**

Defendants also served their First Set of Requests for Production of Documents and Things to Plaintiffs on November 4, 2022. (Kaplan Decl. Ex. J.) The Requests central to this motion are Request Nos. 3, 4, 9, 14, 20 and 21. They state:

> **REQUEST NO. 3:** Written communications with any entity listed in Paragraph 51 of the Complaint from January 1, 2005, to the present.

> **REQUEST NO. 4:** Documents consisting of or containing references to any of the entities listed in Request No. 3 above, that also relate to the 2020 U.S. Election, this litigation, or any allegation in the Complaint.

> **REQUEST NO. 9:** All user manuals, user guides, and owner or user documentation provided by Smartmatic to any purchaser, lessor, or user of a Smartmatic Product used to administer the 2020 Presidential Election

> **REQUEST NO. 14:** All documents that relate to the truth or falsity of every allegation in Paragraph 134 of the Complaint.

> **REQUEST NO. 20:** All documents concerning communications with any U.S. federal or state authority about the certification, testing, approval, or security of any Smartmatic Product used to administer the 2020 Presidential Election in any jurisdiction.

> **REQUEST NO. 21:** All documents concerning any Cybersecurity Breach or suspected Cybersecurity Breach related to Smartmatic, Smartmatic Products, or any manufacturer of any component of a Smartmatic Product or any election-related product manufactured, distributed, sold or licensed by any entity listed inn Paragraph 51 of the Complaint.

(*Id*.)

Plaintiffs responded to these document requests on December 5, 2022. (Kaplan Decl. Ex. K.) For their response to Request No. 3 and 4, Plaintiffs objected then responded

Smartmatic will produce documents related to Dominion and ES&S concerning the either 2020 U.S. Presidential Election or this Action from January 1, 2020 to the present.

For their response to Request No. 9, Plaintiffs' objected then responded "subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents regarding ballot marking devices used in Los Angeles County in the 2020 Presidential Election."

For their response to Request No. 14, Plaintiffs' lengthy and unwarranted objections were followed only by a statement that "Smartmatic will produce responsive documents sufficient to show the truth or falsity of the allegations of Complaint Paragraph 134, to the extent they exist and can be located by a reasonable search." (*Id*.)

Plaintiffs' initial response to Request No. 20 was similar in that it contained lengthy boilerplate objections followed by a statement that "Smartmatic will produce documents and communications sent by Smartmatic or received by Smartmatic from any governmental entity, agency or organization concerning the certification of Smartmatic technology utilized in the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search." (Kaplan Decl. Ex. K.)

For Plaintiffs' response to Request No. 21, Plaintiffs objected then responded "subject to and without waiving the foregoing objections, Smartmatic will produce any documents concerning any actual or suspected cybersecurity breach of the technology developed by Smartmatic for use in the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search. (*Id*.)

Plaintiffs' discovery responses did not indicate that Plaintiffs intended to withhold any responsive documents from Defendants due to a confidentiality agreement with Los Angeles County.

Then, on March 20, 2023, Plaintiffs sent a letter to Defendants identifying certain categories of documents they would produce in response to these document requests. (Kaplan Decl. Ex. V.) Absent from the letter was any notice what information Plaintiffs intended to withhold from Defendants, or any notice what type of documents and communications were being withheld from the requests. (Id).

It was not until the end of July 2023, nearly seven (7) months after responding to the discovery, and only after direct inquiry by Defendants' counsel while conferring on discovery issues, that Plaintiffs *first* disclosed that they actually were withholding a substantial number of documents from Defendants due to the non-disclosure agreement with Los Angeles County. After Defendants' repeated requests for a list of all categories of documents being withheld, on August 3, 2023, Plaintiffs for the first time provided ***an example*** of the categories and types of responsive documents they withheld. (Kaplan Decl. Ex. W.) Those "examples" include:

- Security procedures, security maps, or descriptions of physical security measures (guards, locks, cameras, entry restrictions, entry codes, etc.) for any VSAP or election facilities
- An encryption key, or description of methods to decrypt encryption keys
- Computer/software code or data files
- Descriptions of threat vectors or ways to circumvent or penetrate the County's election security
- Descriptions of the configurations of the Trusted Platform Module used for VSAP, or procedures for mounting or access OS images for VSAP

(*Id*.)

Plaintiffs *did not* identify any specific document or discoverable material they withheld, nor did they provide any additional identifying information that would help Defendants ascertain the potential value of any of that withheld discovery. (*Id*.) They only identified examples of categories of responsive information they withheld.

On August 21, 2023, Plaintiffs provided supplemental response to Plaintiffs First Set of Document Requests, and amended Plaintiffs response to Request Nos. 14 and 20 to state that "under Smartmatic's contract with LA County, it can only disclose documents reflecting LA County's confidential information obtained by Smartmatic if the Court orders Smartmatic to produce them or LA County provides its express written consent." (*Id*.) Plaintiffs supplemental repose further outlines the contents of Plaintiffs' March 20, 2023, letter to Defendants. (*Id*.) No additional information or documents were produced.[6]

On September 26, 2023 (one day before the filing of this motion), Plaintiffs' counsel indicated that "this evening Los Angeles County notified Smartmatic that it would consent

---

[6] Defendants also attempted to obtain documents related to Los Angeles County directly from the County. On February 14, 2023, Defendants served a subpoena on Los Angeles County for documents relating to Smartmatic and the use of Smartmatic machines in the 2020 Presidential Election. (Kaplan Decl. Exs. X and Y.) Los Angeles County objected to the February 7, 2023, subpoena and refused to produce any documents. (Kaplan Decl. Ex. Z.) Los Angeles County has never provided any documents under the subpoena, which is the subject of a motion to compel pending in Los Angeles County.

to the production of responsive nonprivileged documents…that were previously produced by Smartmatic in ongoing litigation against Fox News…" and that the production "will be complete by early next week." (Kaplan Decl. Ex. AA.)

## D.      Exemplar Voting Machine and Source Code.

Defendants' First Set of Requests for Production of Documents and Things to Plaintiffs was served on November 4, 2022. (Kaplan Decl. Ex. J.) There are three requests relevant to this issue that seek production of information or things relating to Smartmatic's election technology used in the 2020 Presidential Election.

> **REQUEST NO. 1:** An exemplar of each Smartmatic Product used by any county, precinct, election site, or polling location in the State of California to administer the 2020 Presidential Election.

> **REQUEST NO. 8:** The source code for any Smartmatic Product, Hardware, Software, or systems used in the 2020 Presidential Election in any county, precinct, election site, or polling location in the State of California.

> **REQUEST NO. 10:** Any Hardware and Software in the possession, custody, or control of Smartmatic that was used to administer the 2020 Presidential Election in any jurisdiction in any State.

> (*Id.*)

These requests formed the basis of Defendants' First Motion to Compel in February 2023. In response to that motion, Plaintiffs represented that Smartmatic does not have possession, custody, or control of any machine responsive to these document requests, or a copy of the source code used in Los Angeles County in the 2020 Presidential Election. (ECF Doc. No. 89 at p. 11.) On August 1, 2023, this Court issued an order denying Defendants' Motion to Compel. (ECF No. 160 at 19.) Thereafter, Defendants filed a motion

for Partial Reconsideration of the Court August 1, 2023 Order. At the hearing on Defendants' Motion to Reconsider held on September 22, 2023, it became evident that Plaintiffs, in fact, have possession, custody or control of *both* an exemplar machine *and* the source code that is responsive to these requests in their possession, but withheld it from Defendants. (ECF Doc. No. Kaplan Decl. Ex. M at 15:8-17; 19:6-12; 21:6-10; 21:24-22:2; 24:22-26:11; 26:13-27:9.) Thereafter, Defendants filed a letter of supplementation to Defendants' Motion for Partial Reconsideration and Plaintiffs filed a follow of letter of supplementation.

Plaintiffs claim that the exemplar machine in their possession is not responsive because it is not a machine that was used in Los Angeles County. ((ECF Doc. No. Kaplan Decl. Ex. M at  at 31:13-17.) Plaintiffs' own expert, however, opined that the exemplar machine provided to her "is substantially similar" with only "two minor exceptions" to the machines used in Los Angeles County in the 2020 Presidential Election. The only two exceptions distinguishing it from a machine used in that election are: (1) it did not include the tamper-evident plastic rings or seals (because those are installed by the end-user); and (2) it "ran slightly updated VSAP software 3.0" that had "only very minor differences" (i.e., support for additional human languages) compared to the software used in the 2020 Presidential Election.[7]

---

[7] As pointed out at the September 22, 2023, hearing, Plaintiffs clearly knew this exemplar machine was substantially identical to one used in Los Angeles County in the 2020 Presidential Election

**E.      30(b)(6) Timeline.**

Defendants initially served Plaintiffs with a 30(b)(6) deposition notice on July 21, 2023. (Kaplan Decl. Ex. N.) On August 2, 2023, Defendants served an amended 30(b)(6) notice for that deposition. (Kaplan Decl. Ex. O.) Both notices set Plaintiffs' 30(b)(6) deposition dates for August 21-23, 2023. (Kaplan Decl. Exs. N and O.)

On August 7, 2023, Plaintiffs responded to the amended deposition notices with various objections and by designating six (6) separate individuals to testify on twenty-six (26) of the thirty-one (31) topics. (Kaplan Decl. Ex. P.) Plaintiffs refused to designate witnesses on five (5) topics. *Id*. Plaintiffs did not object to the dates for the noticed 30(b)(6) deposition dates (August 21-23, 2023) in their response. *Id*. To date, a single partial 30(b)(6) deposition has taken place, despite Defendants working since July to secure these depositions.

However, Defendants got close to taking the depositions of two (2) of Plaintiffs' 30(B)(6) designees. The depositions of Roger Piñate, Jr. and Pedro Mugica were agreed upon by the parties and scheduled to take place on September 13 and 14, 2023, respectively. (Kaplan Decl. Exs. Q and R.) But those depositions never went forward. After the close of business on September 12, 2023, and mere hours before Plaintiffs' 30(b)(6) deposition were to commence, Plaintiffs provided amended objections to the deposition notice. (Kaplan Decl. Exs. S and T.) The amended notice substantively altered the designations

---

otherwise it would have been wholly irrelevant to their expert. The mere fact that they elected to provide it to her proves *even Plaintiffs knew* of its significance in this matter.

and topics for several witnesses in material respects. Roger Piñate, Jr.'s 30(b)(6) deposition of was cancelled as a result thereof. The following day, Plaintiffs unilaterally cancelled Pedro Mugica's 30(b)(6) deposition. (Kaplan Decl. Ex. U.)

Due to Plaintiffs' decision to revise their "damages" appendix mere days in advance of that deposition, in a manner that materially affects the topics (and thus the needed preparation) for that deposition, Defendants are forced to decide whether to reschedule that deposition or proceed with it under duress.

Plaintiffs also revised their Amended Appendix A to add an additional forty-four (44) jurisdictions that Antonio Mugica was prepared to discuss, including *every* United States jurisdiction they claim is at issue.

Defendants still have not conducted the 30(b)(6) depositions of Samira Saba, Pedro Mugica, James Long, Roger Piñate, Jr, Roger Piñate, Sr., Shawn Pollock or Edwin Smith. Based on Plaintiffs' actions, Defendants believe that Plaintiffs will refuse to make Roger Piñate, Jr. available for a deposition.[8]

## III.   MOTION TO COMPEL LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery. Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This rule is to be "liberally construed." *NOW, Inc. St. Paul Chapter etc. v. Minn. Mining & Mfg.*

---

[8] Defendants asked Plaintiffs to confirm their position on Roger Piñate, Jr.'s deposition on at least three (3) separate occasions. Plaintiffs thus far refused to respond to that request.

*Co.*, 73 F.R.D. 467, 472 (D. Minn. 1977) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). This rule is "'designed to assist a party to prove a claim it reasonably believes to be viable without discovery.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990)) (emphasis omitted). In fact, information need not even be admissible at trial to be discoverable. *Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 635 (D. Minn. 2000). *See also Target Corp. v. Ace Am. Ins. Co.*, 576 F. Supp. 3d 609, 615 (D. Minn. 2021) ("'Relevance is construed broadly at the discovery stage'" and is defined "by the claims and defenses in a case.") (quoting *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012)).

If the opposing party fails to respond to relevant and proportional discovery, the party making the discovery requests can move the court for an order compelling disclosure. Fed. R. Civ. P. 37(a)(3) and (5). "If a party prevails on their motion to compel, the court must award them expenses unless the moving party failed to meet and confer, the opposing party's conduct was 'substantially justified,' or it would be otherwise unjust to order expenses.'" *Chairez v. AW Distrib.*, *Inc.*, No. 20 CV-1473 (NEB/JFD) 2023 U.S. Dist. LEXIS 27069 (D. Minn. Feb. 1, 2023).

Federal Rule of Civil Procedure 26(a)(1)(A) imposes threshold requirements on litigants. Fed. R. Civ. P. 26(a)(1)(A). Specifically, it provides that any party claiming damages "…must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party[.]" *Id*. This Rule also requires the claimant to make all documents or evidence that form the bases of any

damage computation available to the opposing party. *Id.* It is insufficient to only provide general categories of damages under Rule 26(a)(1)(A). Rather, the party claiming damages *must* not only provide a computation of each category, but also provide the basis and methodology for that computation. *Kutz v. NGI Cap., Inc.*, No. 22 -CV-1623 (NEB/ECW) 2023 U.S. Dist. LEXIS 96083 (D. Minn. Jun. 2, 2023). A party may not rely upon any damages information at trial if that information was not properly disclosed in their Rule 26 initial disclosure. Fed. R. Civ. P. 37(c)(1).

Under Minnesota defamation law, "'[t]ruth is a complete defense, and true statements, however disparaging, are not actionable.'" *Turkish Coalition of Am., Inc. v. Bruininks*, 678 F.3d 617, 625 (8th Cir. 2012) (quoting *Foley v. WCCO Television, Inc.*, 449 N.W.2d 497, 500 (Minn. App. 1989)). *See also Brown v. Westaff (USA), Inc.*, 301 F. Supp. 2d 1011, 1020 (D. Minn. 2004) ("Truth is a complete defense to a defamation claim.") (citing *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)). If the allegedly defamatory statements placed at issue by the Complaint are true, Smartmatic cannot recover on a defamation claim. Rule 26, then, permits Defendants at minimum to obtain discovery of "Smartmatic's election technology, hardware, and software," whether that technology, hardware, or software "were compromised or hacked," whether the machines could be "connected to the Internet during the 2020 U.S. election," and whether "Smartmatic's election technology, hardware, and software were designed to steal elections," (Compl., ECF No. 125 at ¶¶ 138, 151, 159, 166, and 177.) To prevail on its defamation claim, Smartmatic must prove that Lindell's statements regarding Smartmatic's products are false. *Rouse v. Dunkley & Bennett, P.A.,* 520 N.W.2d 406, 410 (Minn. 1994).

As a public figure, Smartmatic also must prove that the statements were made with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); (ECF NO. 52 at 6) (holding that Smartmatic is a public figure).

Defendants may prevail in this case by showing that Lindell's statements are substantially true or, whether true or not, that they are not "inherently improbable." *See Armstrong v. Thompson*, 80 A.3d 177, 183-84 (D.C. App. 2013) (substantial truth defense to defamation claims); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (defamation plaintiff subject to "actual malice" standard must show the defamatory statements were either believed by the defendant to be false or were not made in good faith, which may be supported by evidence that the statements were "inherently improbable"). By claiming Lindell's statements were defamatory, Smartmatic placed at issue the truth and/or probability of the statements that Smartmatic machines were hacked or otherwise vulnerable to attack during the 2020 election.

## IV.    MOTION TO COMPEL ARGUMENT

A.    Plaintiffs Must Produce All Los Angeles County Documents Being Withheld.

Plaintiffs have blocked any serious inquiry into the truthfulness of Lindell's statements by their repeated refusal to produce discoverable information on this issue. Plaintiffs *even admit* the information sought by Defendants is responsive and relevant – and they still refuse to turn it over. Instead, they cite an agreement they entered with Los Angeles County to shield them from their obligations to litigate fairly.

At issue specifically are documents pertaining to Plaintiffs' relationship with Los Angeles County. Document Request Nos. 3, 4, 9, 14, 20 , 21 and 35 each encompass those

records. We know that because, after being sent deficiency letter on this issue, Plaintiffs' most recent responses to Request 14 and 20 explicitly indicate that Plaintiffs withheld documents responsive to these requests regarding their communications and business with Los Angeles County.

Plaintiffs only supplemented their responses end of July 2023, nearly seven (7) months after responding to the discovery, and only after direct inquiry by Defendants' counsel while conferring on discovery issues. On August 3, 2023, Plaintiffs *for the first time* indicated **an example** of the categories and types of responsive documents they withheld. (Kaplan Decl. Ex. W.) Those "examples" include:

- Security procedures, security maps, or descriptions of physical security measures (guards, locks, cameras, entry restrictions, entry codes, etc.) for any VSAP or election facilities
- An encryption key, or description of methods to decrypt encryption keys
- Computer/software code or data files
- Descriptions of threat vectors or ways to circumvent or penetrate the County's election security
- Descriptions of the configurations of the Trusted Platform Module used for VSAP, or procedures for mounting or access OS images for VSAP

(*Id.*)

Plaintiffs *did not* identify any specific document or discoverable material they withheld, nor did they provide any additional identifying information that would help Defendants ascertain the potential value of any of that withheld discovery. (*Id.*) Defendants are still in the dark.

On August 21, 2023, Plaintiffs supplemented their responses to these requests and admitted that "[b]ased on LA County's refusal to consent to Smartmatic's production of all relevant documents, Smartmatic was unable to produce various documents in response

to..." Request Nos. 14 and 20. Specifically, Smartmatic admits to withholding documents "related to the design, functionality, security, or source code, of Smartmatic's election technology, hardware, and software used in the 2020 election." (Kaplan Decl. Ex. L.) They further admit withholding "communications with Los Angeles County or other government entities in response to RFP No. 20 relating to the certification of the ballot marking device developed by Smartmatic for use in the 2020 Presidential Election." (*Id.*)

Plaintiffs do not dispute these documents are relevant. Nor do they deny their existence. These documents are patently discoverable because they bear directly on the truthfulness of the statements that are the very crux of Plaintiffs' complaint. Plaintiffs must be ordered to produce the discovery they are withholding.

B.      Plaintiffs Must Provide Detailed Damages Information.

To date, the only damages information provided by Plaintiffs is the deficient information in their initial disclosure, an incomplete response to Interrogatory No. 20, and the useless information in the Appendix A (provided on July 21, 2023) and its amended versions, dated September 12, 2023, and September 24, 2023. This is insufficient to meet the requirements of the rules or to permit Defendants to engage in meaningful discovery in advance of trial.

Plaintiffs pretend to satisfy Rule 26(a)(1)(A)(iii) by identifying general conclusory categories of damages they intend to pursue such as "[g]eneral compensatory damages in an amount to be proven at trial," "[a]ctual, consequential, and special damages, including Smartmatic's lost profits, diminution in enterprise value, and costs incurred to attempt to mitigate the harm caused by Defendants' defamatory statements,' and "[p]unitive damages

due to Defendants' willful behavior." The Rule requires *much* more. To be compliant with this rule, a party must not only identify damages amounts, but must also provide the basis for those damages and the method for calculating them. *Henne v. Great River Reg'l Library,* No. 19 CV-2758 (WMW/LIB) 2021 U.S. Dist. LEXIS 252954 (D. Minn. Jan. 4, 2021).

Plaintiffs' trivial effort to satisfy Rule 26 is absurd. Plaintiffs must supplement their Rule 26 disclosure to comport with their duties *or* admit they have no damages arising from Defendants' alleged conduct.

In addition to ignoring Rule 26, Plaintiffs also chose to ignore Defendants' Interrogatory No. 20.

Plaintiffs crafted three separate responses to this Interrogatory, but each response is as useless and insufficient as the prior. Initially, Plaintiffs simply took the same tact as they did on their Rule 26 disclosure and identified general categories of alleged damages (lost sales, revenues, profits, damage to its brand name, business value, reputation, and goodwill) only. (Kaplan Decl. Ex. C.) They made no effort to quantify those damages or to provide any of the other relevant information sought in the interrogatory.

The next time around, Plaintiffs did not specifically identify any damages (by type or value) they allegedly suffered because of Defendants' statements. (Kaplan Decl. Ex. D.) The information is useless as presented by Plaintiffs and fails to respond to the interrogatory. There is no information that would allow Defendants to investigate the amount, type or even the veracity of this claimed damage.

Plaintiffs' third and most-recent attempt to respond to this interrogatory again is worthless. They once again repeat their general damage categories (i.e., past and future lost sales, revenues, and profits; damage to brand name, business value, reputation, and goodwill; and additional expenses related to security, cybersecurity, employee retention, public relations, costs of capital, legal expenses, and other items) without providing any amount of damage, a calculation thereof, or the basis for any such calculation for any one of these categories.[9] (Kaplan Decl. Ex. E.)

Plaintiffs then identify by name twenty-one (21) jurisdictions that "will not do business with Smartmatic as a result of defamatory statements about Smartmatic," thirty-three (33) jurisdictions which Smartmatic believes its business prospects have been harmed, and fifty-eight (58) jurisdictions that "have expressed concerns about doing

---

[9] Plaintiffs indicate that their counsel came up with an estimate of the drop in "enterprise value" from more than $3 billion "prior to any defamation of Smartmatic" to approximately $400 million "at the present time." It is worth noting what is missing in this "estimate" is the undeniable fact that many other individuals, as evidenced by Plaintiffs' numerous other lawsuits on this topic, allegedly defamed Plaintiffs before Lindell ever uttered a word about them. Plaintiffs' make no effort to identify their purported "enterprise value" at the moment immediately preceding Lindell's first ever statement about them. Plaintiffs' counsel's estimate is pure speculation as it relates to any damages attributable to Lindell.

business with Smartmatic as a result of defamatory statements about Smartmatic.[10] (*Id.*)
For each of these, Plaintiffs must provide the specific act by Defendants that caused the
jurisdiction not to purchase a Smartmatic Product, the date the jurisdiction chose not to
purchase a Smartmatic Product, the Smartmatic Product the jurisdiction was considering
purchasing but elected not to purchase, and other identifying information that would enable
Defendants to investigate the reliability of Plaintiffs' claims. They have provided none of
this.

What Plaintiffs did provide is an Appendix A (and eventually an Amended
Appendix A, then a second Amended Appendix A, then a third amended Appendix A ) that
purports to identify specific customers in specific jurisdictions that may or may not, at
some point in the future, choose not to use Smartmatic election products. The current
version, produced only on September 12, 2023, and revised on September 24, 2023,
identifies for each jurisdiction at issue an "initial probability" that the jurisdiction would
become a Smartmatic customer. The document then indicates a post-defamation
"Probability as of February 2021."[12]

---

[10] A close reading of Plaintiffs response shows that Plaintiff only attributes potential lost profits or
business to defamatory statements made about Smartmatic *in general*. Plaintiff does not assert any
such damages from any alleged defamatory statement made by Defendants.

[12] The "Probability as of February 2021" was calculated *before* Lindell made his first alleged
defamatory statement about Plaintiffs.

The appendix does not identify any specific potential customer that chose not to utilize a Smartmatic election system because of any statement made by Lindell. Nor does the appendix provide any additional information that would allow Defendants to conduct even a basic examination of the integrity of its content. At a minimum, Plaintiffs must, for each jurisdiction identified, provide the basis for how each probability was calculated, the date each probability was calculated, the name of all individual(s) at those jurisdictions that Plaintiffs communicated with regarding potentially selling Smartmatic election systems, copies of any such communications, and the specific statement(s) by Lindell that Plaintiffs claim had an adverse effect on its relationship with that jurisdiction.

In an effort to discover useful information to assist Defendants in understanding Appendix A, Defendants issued Interrogatory Nos. 31-34 and 36, seeing information relating to the "probability" calculations in Plaintiffs' Appendix A and, by extension, the Amended Appendix A and its revised version. (Kaplan Decl. Ex. H.) Specifically, these interrogatories ask for the identity of all persons that participated in calculating any "probability," all information they relied upon in calculating any "probability," a description of the method of calculating those "probabilities," and the identification of all previous efforts, from January 1, 2015 through January 31, 2021, to win the business in those jurisdictions. (*Id*.) Aside from partial information identifying some individuals that performed some "probability" calculations, Plaintiffs have not provided any information responsive to this request. (Kaplan Decl. Ex. I.) Plaintiffs must identify any additional individuals that took part in this process, as well as all the information that was utilized in

these calculations, the method used to calculate them, and all prior sales efforts for each jurisdiction.

C.     Plaintiffs Still Have Not Fully Responded to Additional Interrogatories.

Defendant also seeks an order compelling Plaintiff to fully respond to Interrogatory Nos. 13, 16, and 25.

With respect to Interrogatory No. 13, Plaintiff promised to produce a partly responsive document. Plaintiff indicated it would only respond with information dating back to January 1, 2016, even though the interrogatory does not provide that time limitation. (Kaplan Decl. Ex. C.) To the extent Plaintiffs intended to satisfy their obligations under this interrogatory by producing a document, it is unclear whether they have done so because Plaintiffs have not identified any document(s) that purportedly responds to this interrogatory. If Plaintiffs did, in fact, produce a document that responds to this interrogatory, they must identify it with sufficient detail so that Defendants can readily locate it. If they have not produced such a document to date, they must do so.

Plaintiffs' response to Interrogatory No. 16 is deficient because it fails to identify any entity that Smartmatic licensed, sold, leased, or loaned its election technology, hardware, or software to from 2010 to the present. Plaintiffs refused to provide any answer (aside from objections) to this interrogatory. (*Id.*) If Plaintiffs licensed, sold, leased, or loaned election technology, hardware, or software to any entity from 2010 to the present, they must identify them. If they did not, they must so state.

Interrogatory No. 25 requires Plaintiffs to identify any unique, allegedly defamatory statements made by Lindell, which statements were not previously published by some other

third party. Plaintiffs objected to this interrogatory and refused to provide any answer. (Kaplan Decl. Ex. G.) To the extent Plaintiffs have any evidence of any allegedly defamatory statements that were not mere re-publications by Lindell, they must disclose them. If Plaintiffs have no information responsive to this interrogatory, they must state so.

## V.   MOTION TO MODIFY SCHEDULILNG ORDER LEGAL STANDARD

This Court permits a pretrial scheduling order to be modified upon a showing of good cause under Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3. (Second Amended Pretrial Scheduling Order, ECF Doc. No. 168.) A motion to modify a scheduling order should explain the proposed modification's effect on any deadlines. D. Minn. L.R. 16.3(b). The movant should identify the discovery that remains to be completed, the discovery that has already been completed, the reasons why not all discovery has been completed, and how long it will take to complete the discovery. D. Minn. L.R. 16.3(c).

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012). There are additional factors the court may consider when assessing good cause, including: if, and to what extent, the opposing party is prejudiced by a modification; what explanation movant offers to justify the modification; the importance of the modification; whether the need for the modification results from the opposing party's actions. *Marks v. Bauer*, No. 20 CV-1913 (ADM/JFD) 2021 U.S. Dist. LEXIS 243090 (D. Minn. Dec. 21, 2021) (citing *Portz v. St. Cloud State Univ.*, No. CV 16-1115 (JRT/LIB) 2017 U.S. Dist. LEXIS 123495 (D. Minn. Aug. 4, 2017); *see also* Wright & Miller, *§ 1522.2 Modifying Scheduling Orders*, 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.).

# VI.   MOTION TO MODIFY SCHEDULING ORDER ARGUMENT

A.   <u>Plaintiffs' Refusal to Provide Complete Responses to Written Discovery is Good Cause to Extend Deadlines</u>.

As thoroughly detailed in Sections IV (A), (B), and (C) above, Plaintiffs deficiency in responding to significant amounts of important and critical discovery on central issues in this case has significantly impacted Defendants' ability to undertake discovery to test the validity of Plaintiffs' claims and prepare their defenses. Plaintiffs' commitment to keeping damages information secret, their continued obfuscation of the fact that they did, in fact, possess an exemplar voting machine this entire time, and their refusal to produce admittedly relevant documents related to Los Angeles County must not inure to their benefit. This discovery is essential to Defendants' ability to defend this case, and the Court must not permit Plaintiffs' rejection of their discovery obligations to go unpunished.

While an order compelling Plaintiffs to finally produce necessary information is needed and welcomed, it alone does not address the serious timing and fairness issues caused by Plaintiffs' persistent failure to provide proper discovery responses. For even if Plaintiffs were to produce this long-overdue discovery today, there is insufficient time before the close of fact discovery to permit Defendants to use any of it in any additional meaningful discovery. This yet-to-be-provided discovery may unearth new information that necessitates the need for additional deposition witnesses or new lines of inquiry of previously deposed witnesses. Defendants must not be prevented from undertaking that discovery because of Plaintiffs' refusal to follow the rules. Simply put, had Plaintiffs followed the discovery rules and provided this information months ago as requested and

required, the parties would not be in this position. Defendants have made every effort to obtain this discovery from Plaintiffs. But for Plaintiffs' questionable tactics, Defendants would already be in possession of the discovery now being sought.

Defendants diligently sought this discovery. Plaintiffs cannot plausibly deny that. Nor can they claim any prejudice arising from their own repeated decisions to keep this discovery to themselves for all this time. Good cause exists to modify the discovery deadline and to permit Defendants to take any additional discovery that arises from Plaintiffs' late production of the compelled discovery. The motion to modify the scheduling order should be granted on this basis alone.

B.     Plaintiffs' Refusal to Timely Provide Exemplar Machines and Source Code is Good Cause to Extend Deadlines.

Defendant demanded Plaintiffs produce an exemplar of a voting machine as well as the source code relating to the 2020 Presidential Election in its *very first* set of documents requests. (Kaplan Decl. Ex. J.)

Plaintiffs' protestations and excuses as to why they withheld this exemplar machine are meritless. First, in response to Defendants' discovery, Plaintiffs avoided providing any response *whatsoever* regarding any actual or exemplar machines used in the 2020 Presidential Election. When Plaintiffs refused to provide this discovery, Defendants raised the issue with them in advance of Defendants' first motion to compel as well as within that motion. At that point, Plaintiffs contend that they thought Defendants sought an actual machine used in the 2020 Presidential Election as opposed to an exemplar of one. The

language of Request No. 1 could not be clearer on this point – it expressly asks for an exemplar machine.

When given another chance to represent what they did (and did not) have at the motion to compel *on this very issue*, Plaintiffs again refused to admit they possessed a BMD machine. Plaintiffs claimed that "Smartmatic does not have possession, custody, or control…" of a "BMD 'used to administer' the 2020 election." (ECF Doc. No. 89 at p. 12-13.) Plaintiffs avoided addressing the existence of any exemplar machines – because they had one.

The entire time Defendants sought this machine, Plaintiffs planned to provide it to their expert to use against Defendants in the case. They did not disclose its existence until the afternoon that expert reports were due so that Defendants' experts would not have an opportunity to examine it in time to issue a initial report on its reliability and vulnerability.

The story is similar when it comes to the source code at issue. At every step, Plaintiffs have claimed that they do not have possession of it. (ECF Doc. No. 89 at p. 12.) Plaintiffs' argument at that time was that the source code was turned over to Los Angeles County and that Plaintiffs do not possess it or retain the legal right to disclose it. (Id. at p. 15-16.)

Defendants sought this machine and source code from the outset of written discovery, including multiple meet and confers and through motion practice. Defendants diligently sought this discovery and have been severely prejudiced by Plaintiffs' refusal to produce. Good cause exists to modify the deadlines so that Defendants have ample

opportunity to examine the exemplar machine and the source code and to conduct further discovery as needed on its contents.

C.      Plaintiffs, Working in Concert with Los Angeles County, Improperly Withheld Producing Documents.

It clear that Plaintiffs are withholding crucial, relevant, and responsive documents and communications related to the Los Angeles County and the VSAP program. After the close of business on September 26, 2023, with the discovery deadline only eighteen (18) days out, Plaintiffs indicate that Los Angeles County will finally permit Plaintiffs to produce additional documents. Plaintiffs promise to have those documents to Defendants sometime during the week of October 2, 2023. Plaintiffs do not identify what additional documents will be produced or the anticipated volume of that production. Nor do Plaintiffs identify what type of documents may be withheld from that production.

This anticipated last-minute production of documents, all of which were initially requested last November, is patently unfair and highly prejudicial to Defendants. Absent relief from the Court, Defendants may be unable to review these documents in advance of the discovery deadline (depending on the volume produced) and certainly will be unable to utilize them in any form of meaningful discovery prior to October 20, 2023. Defendants are entitled the fair opportunity not only to review this late production and to conduct all additional discovery that naturally flows from it. Modifying the scheduling order is the only way to prevent injustice to Defendants in this case.

D.      Plaintiffs' Failure to Provide Deposition Testimony is Good Cause to Extend Deadlines.

Plaintiffs have also complicated and delayed Defendants' ability to take Plaintiffs' corporate representative depositions. Defendants initially served a notice to take Defendants' deposition on July 21, 2023. That notice identified twenty-eight (28) topics for examination. Plaintiffs did not respond to this notice.

On August 2, 2023, Defendants served an amended notice that included thirty-one (31) topics, twenty-eight (28) of which were substantively identical to the topics in the first notice. Plaintiffs provided their first response to Defendants' 30(b)(6) notice on August 7, 2023, and in so doing, identified six (6) different individuals that would testify on twenty-six (26) of the thirty-one (31) topics. Plaintiffs refused to identify any witness for the remaining five (5) topics.

Then, late in the evening on September 12, 2023, and with the first 30(b)(6) deposition scheduled to begin *the very next morning*, Plaintiffs served an amended response to the deposition notice. This response identified, for the first time, two (2) additional corporate witnesses and altered the topics of at least three (3) other corporate witnesses. Most notably, this last-minute alteration changed the topics of inquiry (of the witnesses that were scheduled to be deposed on September 13 and 14, 2023) in manner that prevented Defendants from being able to prepare for those depositions properly and adequately. They each, in turn, had to be postponed.

Then again, with only two (2) business days' notice, one of which is a significant religious holiday observed by Defendants' counsel, Plaintiffs again changed scope of 30b6 topics on the eve of deposition of Plaintiffs' Chief Executive Officer. Plaintiff provided a Revised Amended Appendix A that dramatically alters the scope of the scheduled

deposition of Plaintiffs' Chief Executive Officer by adding an additional forty-four (44) jurisdictions into the mix. Plaintiffs' conduct has impaired Defendants' ability to prepare for this deposition fairly and adequately, and an supplemental deposition will need to be conducted.

Plaintiffs' conduct relating to their 30(b)(6) deposition is good cause to modify the scheduling order. To substantively alter topics *twice* on the eve of scheduled depositions prevents Defendants from timely and effectively take their 30(b)(6) deposition.

E.   <u>Description of Discovery Status.</u>

1.   Discovery Completed to Date.

Defendants issued five sets of interrogatories and four sets of document requests to Plaintiffs. In addition to the items sought in this motion, Defendants believe additional written discovery is needed regarding Plaintiffs' damages, and documents and communications withheld on the basis of the Los Angeles County contract agreement.

2.   Discovery Still to be Completed.

Defendants have been delayed from taking Plaintiffs 30(b)(6) deposition. Although one of the eight designees has been taken, there remains questions if the deposition will need to be supplemented.

Defendants acknowledge that the Los Angeles County documents, the exemplar machine, the source code, any other discovery produced in the future, and the information obtained in the 30(b)(6) deposition may necessitate additional written discovery or depositions. Without knowledge of what those documents, exemplars or depositions may reveal, Defendants are unable to predict what additional discovery, if any, may arise.

3.      Why This Discovery is not Complete.

Defendants motion to compel and motion to modify scheduling order sets forth the factual basis that establishes that Plaintiffs' discovery conduct is the cause of this discovery being incomplete. Defendants were diligent in seeking all of this discovery.

4.      Requested Timeframe to Complete Discovery.

Presuming that Plaintiffs timely provide all outstanding discovery materials *and* cooperate in the scheduling and taking of Plaintiffs' 30(b)(6) deposition, Defendants request an additional sixty (60) days to complete the outstanding discovery, to designate and name Defendants' expert designees, and to extend all case deadlines an additional 60 days.

## VII.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter an order compelling Plaintiffs to fully respond to outstanding discovery, including supplementation of their Initial Disclosures as requested herein. Defendants also respectfully request the Court issue an order modifying the scheduling order as requested herein.

DATED: September 27, 2023      **PARKER DANIELS KIBORT LLC**

By */s/ Abraham S. Kaplan*
Andrew D. Parker (#195042)
Joseph A. Pull (#0386968)
Abraham S. Kaplan (#399507)
Nathaniel R. Greene (#390251)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
pull@parkerdk.com
kaplan@parkerdk.com
greene@parkerdk.com

*ATTORNEYS FOR DEFENDANTS*