## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

---

SMARTMATIC USA CORP.,
SMARTMATIC INTERNATIONAL
HOLDING B.V., and SGO
CORPORATION LIMITED,

                   Plaintiffs,

    v.

MICHAEL J. LINDELL and MY
PILLOW, INC.,

                   Defendants.

Case No. 22-cv-0098-WMW-JFD

---

## SMARTMATIC'S OPPOSITION TO DEFENDANTS' THIRD MOTION TO COMPEL AND MOTION TO MODIFY SCHEDULING ORDER

## INTRODUCTION

For nearly three years Defendants Michael J. Lindell and My Pillow, Inc. ("MyPillow" and, collectively, "Defendants") have told the world they have "100% proof"[1] that Smartmatic[2] rigged the 2020 U.S. Presidential election.  Yet now they seek to extend all deadlines in this case by claiming that because of outstanding discovery issues, they do not, in fact, have "100% proof," (including on issues relating to the alleged "susceptibility and vulnerability of the election machines") such that it is "impossible for Defendants to prepare this case fairly and adequately for trial."  (Mot. at 4.)  In the midst of this contradiction, Defendants make a litany of misstatements to ask the Court to compel the production of a combination of information that is not relevant, already promised, already produced, already answered, or is already the subject of a pending motion to compel.  And despite their lack of diligence in pursuing discovery, and the prejudice it would cause Smartmatic, Defendants now ask the Court for additional time.  The Court should deny Defendants' motion in its entirety for at least four reasons:

**First**, a portion of the relief Defendants seek is already fully briefed and pending before the Court.  In Defendants' Second Motion to Compel (ECF No. 146), they argued that Smartmatic should supplement their initial disclosures and respond to Interrogatory No. 20.  (*See* ECF No. 149 at 12 ("The Court should compel Smartmatic to provide a substantive answer to Interrogatory No. 20.").)  The subject-matter of Defendants' Second Motion to Compel comprises three of the five requested items for relief in their

---

[1] *See, e.g.*, ECF No. 125 at ¶ 140.
[2] Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited are collectively referred to herein as "Smartmatic."

1

Third Motion to Compel.  (*See* ECF No. 216, Proposed Order.)  Put simply, Defendants are repeating a demand for discovery that has already been fully briefed.

*Second*, the other interrogatory information Defendants seek is not relevant.  For the damages interrogatories, as is evident from Smartmatic's expert disclosures, in this case, Smartmatic is not seeking lost profit damages tied to specific business opportunities from the Defendants.  Thus, the additional discovery Defendants demand on those specific opportunities is irrelevant and unduly burdensome.  For the remaining interrogatories, which Defendants moved to compel without meeting and conferring with Smartmatic, Defendants argue for information already received, and they claim answers they previously said were sufficient are now somehow insufficient.  Finally, Defendants' interrogatories seek information irrelevant to their claims and unsupported by basic tenets of defamation law.

*Third*, prior to their filing of the instant Motion, Smartmatic informed Defendants that it obtained consent from Los Angeles County to produce additional documents relating to Smartmatic's work with the County in the 2020 US Election. Defendants do not and cannot show that this production would not satisfy their discovery request.  To the extent Defendants seek *all* documents related to Los Angeles County, Defendants do not provide any showing of relevance to such a broad request.

*Finally*, Defendants' lack of time to complete their discovery is a consequence of their own delay.  They delayed noticing depositions, and they delayed issuing subpoenas. A natural consequence of delay is that you may run out of time, but that does not give good cause for an extension.

## MOTION TO COMPEL LEGAL STANDARD

The Federal Rules of Civil Procedure permit liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Discovery is not, however, unlimited. *Elsherif v. Mayo Clinic*, No. 18-cv-2998-DWF-KMM, 2020 WL 5015825, at *2 (D. Minn. Aug. 25, 2020).  "Discovery that is unreasonably burdensome, cumulative, or outside of the scope permitted by 26(b)(1) should be limited by the Court." *Id.*

"The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case." *Beyond Blond Prods., LLC v. Hall*, No. 22-MC-0037 (JFD), 2022 WL 3444039, at *2 (D. Minn. Aug. 17, 2022) (Docherty, J.) (citation omitted).  Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Id.* (citation omitted).

## MOTION TO COMPEL ARGUMENT

Defendants' Third Motion to Compel is as unmeritorious as it is disjointed.  Their last-minute arguments fail for different reasons, but they all fail nonetheless.  For each item Defendants request, Smartmatic has either already promised a sufficient production, the information is irrelevant to any claims or defenses in the case, or the information is already fully briefed and subject to a pending motion to compel.  Accordingly, the Court should deny Defendants' motion to compel.

I. **Defendants' Request to Compel "Los Angeles County Documents" is Overbroad and, to the Extent Relevant, Already Agreed to by Smartmatic.**

Defendants move to compel on requests seeking so-called "Los Angeles County Documents."[3] (Mot. at 27.) Defendants claim that Smartmatic admitted that these requests seek information that is responsive and relevant, yet refuse to turn that information over due to a confidentiality agreement with the County. (*Id.*)  Defendants' Motion is misplaced for several reasons.

**First**, Defendants' Motion to Compel should be denied due to Defendants' utter lack of diligence in pursuing the alleged outstanding discovery. In this District and in federal courts broadly, motions to compel are routinely denied as untimely due to a lack of diligence by the moving party. *See, e.g., Stai v. Deshane*, No. 14-CV-4152 (RHK/LIB), 2016 WL 11031224, at *5 (D. Minn. Jan. 22, 2016) (denying as untimely a motion to compel where the moving party failed to pursue alleged deficiencies in written discovery until almost six months after discovery responses had first been filed; and collecting cases stating same); *Bredemus v. Int'l Paper Co*., 252 F.R.D. 529, 534 (D. Minn. 2008) (denying motion to compel and stating that discovery sought was "not sufficiently important for Plaintiffs to take timely action" where they failed to raise any concerns about the sufficiency of the discovery responses for five months).

Defendants filed their initial Requests for Production on October 17, 2022; Smartmatic responded on December 5, 2022, noting that Smartmatic would not agree to

---

[3] Defendants' request ostensibly pertains to Request for Productions Nos. 3, 4, 9, 14, 20, 21, and 35.

the production of documents prohibited from disclosure under confidentiality agreements with third parties. On March 20, 2023, Smartmatic wrote to Defendants, stating that Smartmatic's contract with Los Angeles County prohibited Smartmatic from producing documents containing the County's confidential information absent consent from the County or a court order. (Declaration of Jamie N. Ward ("Ward Decl.") Ex. K, March 20, 2023 Ltr. from M. Bloom to M. Eslick.) Smartmatic's letter stated further that, in the interest of providing fulsome discovery, Smartmatic had obtained the consent of Los Angeles County to produce 26 categories of documentation, including contracts, certain communications between Los Angeles County and Smartmatic, scope of work documents, design documents, technical data packages, user guides, and build procedures, among other documents. (*Id.*) Smartmatic also noted that it would produce a number of publicly available documents, including use procedures, certification documents, and laboratory testing reports. (*Id.*)

Defendants failed to raise any concern with Smartmatic's production of documents relating to Los Angeles County until late July 2023, more than seven months after Smartmatic filed its responses to Defendants' Requests for Production and more than four months after Smartmatic's March 20th letter detailing the documents that would be produced with the County's consent. (Ward Decl. ¶ 20.) Yet now, despite sitting on their hands for nearly ten months, Defendants move this court to require Smartmatic to produce seemingly all documents relating to Smartmatic's work with Los Angeles County. Defendants have no excuse for this delay and their motion should be denied as untimely.

**Second**, prior to the filing of Defendants' Motion, Smartmatic informed Defendants that it had in fact obtained Los Angeles County's consent to produce additional documents responsive to Defendants' Request for Production Nos. 14, 20, and 35. At Smartmatic's request, LA County has consented to Smartmatic producing documents containing LA County's confidential information that were previously produced in Smartmatic's ongoing litigation against Fox News,. (Kaplan Decl. Ex. AA.) These documents were identified as potentially relevant to Smartmatic's relationship with Los Angeles County based upon the search terms set forth in Exhibit ___. The forthcoming production of these documents quells any of Defendants' concerns that responsive documents are being withheld based upon the confidentiality agreement with Los Angeles County. [4]

**Third**, Defendants have not met their burden to compel production with respect to Requests for Production Nos. 3, 4, 9, and 21. Defendants have never before taken issue with Smartmatic's response to these requests. Smartmatic has never indicated that it was withholding responsive information for these requests due to its confidentiality agreement with Los Angeles County. (*Compare, e.g.*, Kaplan Decl. Ex. L at 7 (Smartmatic's response to RFP No. 3) *with* Kaplan Decl. Ex. L at 13–16 (Smartmatic's response to RFP

---

[4] In their Motion, Defendants do not appear to request an order compelling inspection of a Smartmatic BMD, yet they nonetheless criticize Smartmatic for failing to allow inspection anyway. (Mot. at 37–38.) Smartmatic has already agreed to allow an inspection of the BMD Smartmatic's expert inspected. But Defendants' position on source code is patently wrong. A Smartmatic BMD provides access to the VSAP's human-readable source code no more than Defendants' copy of Microsoft Word provides access to Microsoft's source code.

No. 14).) And Defendants do not provide any reason why Smartmatic's production in response to these requests is deficient – *i.e.,* Defendants do not identify any relevant information that has not already been produced. Defendants have not met their burden to compel production.

Even a cursory look at the requests shows that Defendants did not even try to meet their burden because they cannot meet their burden.  RFP No. 3, for example, requests "[w]ritten communications with any entity listed in Paragraph 51 of the Complaint from January 1, 2005, to the present."  *Id.* at 7.  That paragraph and its subparts note the various entities who supplied election technology to the battleground states in the 2020 election.  (ECF No. 125 at ¶ 51.[5])  The only mention of LA County in that paragraph is the beginning: "Given that Smartmatic had no role in the general election outside of Los Angeles County . . . ."  (*Id.*)  Defendants have now extrapolated that trivial reference into a request for every communication Smartmatic has ever had with LA County for the last eight years, yet they make no effort to show why such communications are relevant or why January 1, 2005 is a relevant cutoff date.

***Finally***, to the extent that Defendants' motion seeks all documents relating to Smartmatic's six-year relationship with Los Angeles County, that request encompasses documents containing highly sensitive election security information. Federal agencies charged with protecting the public, including the Department of Homeland Security ("DHS") and the Cybersecurity & Infrastructure Security Agency ("CISA"), recognize

---

[5] While the First Supplemental Complaint had not been filed when RFP No. 3 was served, paragraph 51 is identical in each. (*Compare* ECF No. 1 at ¶ 51 *with* ECF No. 125 at ¶ 51.)

that "[e]lections play a vital role in a free and fair society and are a cornerstone of American democracy" and that "[a] secure and resilient electoral process is a *vital national interest* and one of [their] highest priorities."[6]  As Smartmatic noted in prior motion practice, Los Angeles County has stated that that "[e]lection security is a matter of grave concern" because, among other reasons, "[a]ccusations of election fraud— including accusations directed against voting equipment and voting systems—without sufficient proof have been widely made and unfortunately widely believed." (ECF No. 91-8, M. Owens Declaration ¶ 7.) Further, any county, much less one containing 10 million people, must "thoroughly protect the security of its election processes and equipment." (*Id.* ¶ 8.)  Given these vital national security concerns, to the extent the Court is inclined to enter an order broadly requiring Smartmatic to produce additional documents containing Los Angeles County's confidential election security information, the Court should allow an opportunity for the County to be heard on this issue.

For these reasons, Defendants' motion to compel "Los Angeles County Documents" should be denied.

## II.     The Damages Information Defendants Request Has Been Fully Produced, Is Better Suited for Deposition, or Is Not Relevant.

On July 11, 2023, Defendants filed their Second Motion to Compel.  (ECF No. 146.)  In that motion, Defendants argue that "[t]he Court should order Smartmatic to

---

[6] *Election Security*, DEPARTMENT OF HOMELAND SECURITY, *available at* https://www.dhs.gov/topics/election-security (last visited Feb. 15, 2023) (emphasis added); *Election Infrastructure Security*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY, *available at* https://www.cisa.gov/election-security (last visited Feb. 15, 2023) (emphasis added).)

immediately provide a computation of each category of claimed damages consistent with Rule 26(a)(1)(A)(iii)."  (ECF No. 149 at 9.)  Defendants also argued that "[t]he Court should compel Smartmatic to provide a substantive answer to Interrogatory No. 20."  (*Id.* at 12.)  Defendants seek the same relief of their Third Motion to Compel—providing a computation of damages under Rule 26 and answering Interrogatory No. 20 more fully— as in their Second Motion to Compel.  The Court can and should deny Defendants' request on these grounds alone.  *See Williams v. Shinseki*, 161 F. Supp. 3d 91, 95 (D.D.C. 2012) (noting that the plaintiff's motion "may also be denied on grounds that it is duplicative insofar as Plaintiff argues the same points presented in his prior Motion to Compel").

But Defendants' instant request should be denied for the additional reason that Smartmatic has fully and adequately provided Defendants with all available damages information they seek (or such information is available via deposition).  Smartmatic has provided Defendants with a plethora of information in response to Interrogatory No. 20 which seeks an itemized computation of damages similar to the requirements of Rule 26.

Indeed, following the filing of Defendants' Second Motion to Compel, Smartmatic further supplemented its responses to Interrogatory No. 20 to include detailed information regarding not only the jurisdictions that it believes may not do business with it based on the defamatory statements published about Smartmatic following the 2020 election, but also (1) its computation of lost enterprise value, (2) the "jurisdictions for which it believes the operative electoral management bodies or other government entities will not do business with Smartmatic as a result  of defamatory statements about Smartmatic;"

and (3) the "jurisdictions for which individuals associated with the operative electoral management body or other government officials have expressed concern about doing business with Smartmatic as a result of the defamatory statements about Smartmatic." (Kaplan Ex. E.) Moreover, Smartmatic provided an Appendix A to its Interrogatory Response which included specific customer information from its Customer Relationship Management (CRM) database regarding lost opportunities in each of these jurisdictions, including the decreased probabilities of being awarded an opportunity based on the defamation campaign.  (Kaplan Ex. G.) Although Defendants now complain that Defendants' subsequently amended this document, this was to *assist* Defendants by first culling those opportunities, then identifying the 30(b)(6) deponent to be deposed on them. (Ward Decl. ¶ 17). Moreover, Defendants have been provided with an annotated version of this document containing the 30(b)(6) deponents' notes regarding each lost opportunity. (*Id.*)

Beyond that, Smartmatic has produced all documents that Defendants could reasonably need to "examine the integrity" (Mot. at 33) of Smartmatic's Damages Interrogatory Responses. *See Residential Funding Co., LLC v. Embrace Home Loans, Inc.*, No. 13-cv-3457, 2015 WL 12977505, at *4 (D. Minn. July 20, 2015) (plaintiff not required to provide damages computation where it disclosed sufficient information related to its damages). It has produced, *inter alia*, (1) the company's audited financial statements and detailed financial reports, (2) Smartmatic's historic contracts with its customers, and bids, RFI and RFP responses, (3) its prior bid valuations, (4) all of its customer relationship data from contracts and business opportunities in connection with

10

its automated election technology business from January 1, 2017 to present (including for each opportunity information related to the product at issue, estimated profit margin, commercial strategy and assessment, and customer contacts), (5) more than 80,000 documents from the custodial files of Smartmatic's President and CEO, (6) approximately 40,000 documents from the custodial file of Smartmatic's Head of Sales, and (7) more than 185,000 documents from the custodial files of Smartmatic's sales personnel.  (Ward Decl. ¶ 18.)

Most importantly, nearly all of the remaining information that Defendants are seeking pursuant to Interrogatory Nos. 20, 31-34, and 36, such as how each loss probability was calculated, the dates each probability was calculated, the persons and materials involved in the calculations, the names of specific individuals communicated with in each jurisdiction, and the types of communications had with those individuals—to the extent it cannot be determined through Smartmatic's document production—is best fit for deposition testimony.  *See Deering v. Lockheed Martin Corp.*, No. 20-1534 (DSD/BRT), 2021 WL 6775463, at *2 (D. Minn. Dec. 3, 2021).  In *Deering*, the plaintiff served an interrogatory asking to identify "all Persons" who were aware of a certain factual contention, and the plaintiff identified four individuals.  *Id.*  The plaintiff then sought more detailed information regarding who those individuals' sources were.  *Id.* The court declined to compel further responses, noting that "a deposition is a more appropriate way to elicit the information sought."  *Id.*

Here, Defendants could have, have, or will depose the individuals who made the original probability assessments for each of the jurisdictions, depose corporate

representatives on each of the jurisdictions, and depose many of the company's salespeople. For instance, Defendants recently deposed Antonio Mugica, Smartmatic's CEO and one of its 30(b)(6) representatives regarding Smartmatic's lost opportunities. The deposition spanned two days and approximately 13 hours. (Ward Decl. ¶ 19.) In other words, additional information about each of the jurisdictions was and is readily available to Defendants by taking depositions of Smartmatic witnesses. If Defendants made or make the strategic decisions *not* to depose individuals at Smartmatic about the specific jurisdictions, that is their call not a basis to force Smartmatic to provide more information in an interrogatory response. Choosing not to depose someone – to save money, to save time, or for any other reason – is Defendants' doing, not Smartmatic's.

Finally, to the extent Defendants are seeking Smartmatic to identify "the specific act by Defendants that caused the jurisdiction not to purchase a Smartmatic Product . . . ." (Mot. at 32), Defendants misconstrue what needs to be established to recover damages on a defamation claim, particularly a claim such as Smartmatic's for defamation *per se*, where harm to reputation is presumed. *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 875 (Minn. 2019); *Becker v. Alloy Hardfacing & Enginering Co.*, 401 N.W.2d 655, 661 (Minn. 1987) ("We reaffirm the rule that where a defendant's statements are defamatory per se, general damages are presumed). "Statements considered defamatory per se include 'false accusations of committing a crime and false statements about a person's business, trade, or professional conduct." *Tholen, M.D. v. Assist America, Inc.*, 528 F.Supp.3d 1017, 1024 (D. Minn. 2021) (quoting *Becker*, 401 N.W.2d at 661)). In these cases, "Courts are allow presumed damages because statements that are defamatory

per se are virtually certain to cause serious injury to reputation, and that kind of injury is extremely difficult to prove." *Id.* (internal quotations omitted).

Here, as discussed above, Smartmatic has produced volumes of information related to its reputational damages and injuries. This is not to mention Smartmatic's recently produced expert reports discussing the manner in which this reputational harm leads to decreased profits and opportunities. Smartmatic should not be compelled to produce any further Interrogatory responses related to its damages.

### III.   The "Additional Interrogatories" Have Either Already Been Answered Or Are Not Relevant.

Defendants also move to compel responses to three additional Interrogatories—Interrogatory Nos. 13, 16, and 25—all of which have already been addressed, or request irrelevant information. Each Interrogatory is addressed below.

**Interrogatory No. 16.** Interrogatory No. 16 seeks the identification of "every person or entity to whom Smartmatic's election technology, hardware, and software was licensed, sold, leased, or loaned for use in any election held anywhere in the world between 2010 and the present." (Kaplan Decl. Ex. B.) Smartmatic and Defendants met and conferred regarding this Interrogatory several times beginning in January 2023. (Ward Decl. Ex. A, January 20, 2023 Ltr. from J. Loftus to M. Eslick.) Smartmatic explained that each of the jurisdictions listed in response to Interrogatory No. 16 has an election management authority or similar entity, and Smartmatic contracted with those entities for its electoral technology or services. (*Id.*) When this was explained to Defendants during a January 11, 2023 meet and confer, Defendants represented that this

clarification rendered Smartmatic's response sufficient. (*Id.*) Smartmatic was therefore confused when, eight months later, Defendants reversed their position and seemingly forgot the details Smartmatic provided during the meet-and-confers and letters exchanged back in January 2023, and filed a motion to compel without satisfying the meet and confer requirement.

**Interrogatory No. 13.** Interrogatory No. 13 seeks information regarding Smartmatic's organizational structure. Although Defendants now complain that Smartmatic never identified with sufficient detail the documents responsive to Interrogatory No. 13, (Mot. at 34), Smartmatic provided *that exact identification on May 5, 2023*. (Ward Decl. Ex. B, May 5, 2023 Ltr. from M. Bloom to M. Eslick.) Had Defendants satisfied their meet-and-confer obligations, Smartmatic would have reminded them that this information was already provided. Smartmatic has already fully responded to Interrogatory No. 13. There is nothing more to compel.

**Interrogatory No. 25.** Interrogatory No. 25—which asks Smartmatic to filter Lindell's defamatory statements into those that are republications of others' statements and those that are his original statements—amounts to nothing more than a request from Defendants that Smartmatic engage in busy work that will have no bearing on any aspect of this case. It is irrelevant whether Lindell's statements are original or republications. The Minnesota Supreme Court has noted that "[u]nder the republication doctrine, a speaker may be liable for repeating the defamatory statements of another." *Larson v. Garnett Co.*, 940 N.W.2d 120, 131 (Minn. 2020). Smartmatic should not be forced to undergo the burdensome exercise of filtering through each of Lindell's statements and

cross-checking to see if someone else said it first.  Not only would doing so be unduly burdensome and disproportional to the needs of this case, but Defendants—being publishers of these statements—are certainly in a better position to conduct this exercise, to the extent Defendants feel so compelled to do so.

## MOTION TO MODIFY SCHEDULE LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 16(b)(4), a pretrial scheduling order can be modified "only for good cause and with the judge's consent."  "The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 587, 581–82 (D. Minn. 1999) (citing Fed. R. Civ. P. 16(b) Advisory Committee Notes – 1983 Amendment). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).  "Other potential factors include whether the opposing party would be prejudiced and whether, even with reasonable diligence, parties still could not meet the deadlines. *Marks v. Bauer*, 2021 WL 605039, *2 (D. Minn. Dec. 21, 2021) (Docherty, J.).  Notably, courts have found that "carelessness," such as Defendants' discovery behavior in this case, "is not compatible with a finding of diligence and offers no reason for a grant of relief" from the current scheduling order. *Archer Daniels v. Aon,* 187 F.R.D. at 582 (citations omitted).

<u>**MOTION TO MODIFY SCHEDULE ARGUMENT**</u>

I.   **Defendants Have Not Been Diligent In Meeting The Discovery Deadlines And Have Not Shown Good Cause To Modify The Scheduling Order.**

The "primary measure" of whether the scheduling order in this case should be modified is whether the Defendants have been diligent in attempting to meet the scheduling order. There is "no need to explore beyond the first criterion, diligence" of the moving party to modify a scheduling order if "the record clearly demonstrate[s]" that the movant "made only minimal efforts to satisfy the scheduling order's requirements." *Sherman*, 532 F.3d at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). Defendants have not been diligent in meeting the discovery deadlines set by this Court.

***First***, Defendants have delayed in noticing and taking depositions, which is evidence of a lack of diligence. *See e.g., Jackson v. Senior Care Sols., Inc.*, 2021 WL 4099947, at *10 (D. Minn. Sept. 8, 2021) (where a party was not diligent in noticing a deposition there was no good cause to modify the scheduling order to take that deposition). To date, Smartmatic has taken fifteen depositions, including preparing for, traveling to, and taking the deposition of an "empty chair" for three individuals who failed to appear at their scheduled depositions: Joshua Merritt, Mary Fanning, and Conan Hayes. (Ward Decl. ¶ 3.) Conversely, Defendants have taken only seven depositions total in this case. (*Id.*)

Defendants have not been diligent in requesting, noticing, or confirming depositions. This is true of both Smartmatic depositions and third party depositions. By

way of example, Defendants subpoenaed the following third parties for depositions: Dr. Shiva Ayyadurai (October 6); Harri Hursti (October 9); CISA (October 13); Andrew Appel (October 16); Thomas McInerney (October 16); and Alan Duke (October 18). (Ward Decl. Ex. C, Defendants' Subpoenas.)  Defendants did not subpoena these third-party deponents until September 2023.  (*Id.*)  All of these noticed dates are near the end of the fact discovery deadline in this case (October 20).  (*Id.*)  Defendants only yesterday confirmed that the depositions of Dr. Ayyadurai and Mr. Hursti will not go forward as they have been unable to serve them, but have otherwise refused to inform Smartmatic whether these depositions will even proceed on their noticed dates.  (Ward Decl. Ex. J; October 3, 2023 Email from N. Greene to J. Bedell.)

Similarly, although Defendants now complain about Smartmatic not presenting its witnesses to be deposed, Defendants routinely fail to confirm deposition dates for days, or even weeks, at a time.  (*See, e g.*, Ward Decl. Ex. D, Correspondence between J. Ward and Defendants' counsel, at 2–4.)  This is especially difficult for Smartmatic witnesses as many need to arrange for international travel in order to appear for deposition. (Ward Decl. ¶ 7.) Nonetheless, Defendants frequently request dates of availability and then fail to follow up with confirmation.  For instance, as of the filing of this response, Smartmatic has offered dates for at least four separate witnesses that have not been accepted by Defendants.  (Ward Decl. Ex. D.)

***Second***, Defendants have failed to meet their own  discovery obligations, even after the Court has compelled them to do so.  On August 1, 2023, this Court ordered Defendants to "provide the revenue amounts associated with any promotional codes and

deals that Smartmatic provides to Defendants." (ECF No. 160, Order Granting Smartmatic's Motion to Compel, at 12). On August 15, Smartmatic provided a list of 56 codes and code prefixes. On August 16, Smartmatic added one more code. Nearly one month after this Court's order, on August 29, Defendants provided a single document; a small amount of promotional code data. After more cajoling on meet-and-confers, finally, on September 14, 2023, Defendants provided a spreadsheet purporting to have all of the requested promotional codes. (Ward Decl. Ex. E, DEF11325172.) But even a cursory review of this latest promotional code production shows it is inaccurate and incomplete.

There are also glaring inconsistencies between the promotional code documentation Defendants produced and the deposition of Dawn Curtis, the Vice President of Media Relations at MyPillow. Ms. Curtis testified that the promotional code WARROOM had a revenue of $536,800 for one week in March 2021 (Ward Decl. Ex. F, Curtis Dep. Tr., at 245:5–15.) The document produced by Defendants (Ward Decl. Ex. E) does not show that WARROOM generated that revenue during any week in March 2021. Despite numerous meet-and-confers and a binding Court order to produce such information, Defendants have refuse to produce accurate and complete promotional code data, which is required by Smartmatic to prove its case.

Additionally, Defendants were ordered by the Court on August 1 to produce to Smartmatic the dates that it published the defamatory *Absolute Proof* series and the Cyber Symposium. (ECF No. 160 at 7 (compelling Defendants to "disclose to Smartmatic all electronic copies of all 'ACCUSED PROGRAMS' that reference

Smartmatic and include information as to when the programs were released and on what platform, and any republication information within Defendants' possession, custody, or control.'").)  It has been nearly two full months and Defendants have failed produce the court-mandated data.

Defendants served Supplemental Interrogatory Responses on September 1, 2023 that are wholly inadequate.  The September 1 Supplemental Response only gives a single date of publication for one ACCUSED PROGRAM, *Absolute Proof*.  (Ward Decl. Ex. G.)  The September 1 Supplemental Response does not give any publication dates for the other three documentaries, nor does it provide any publication dates for the Cyber Symposium uploads.  (*Id.*)  This is in direct violation of the Court's Order.

On September 11, the parties met and conferred on this issue.  On September 12, 2023, Smartmatic sent a letter to Defendants memorializing this conversation and pleading for the requested court-ordered information.  (Ward Decl. Ex. H.)  Yet, to date, Defendants have not cured their deficiencies and have not produced the requisite documentation.  Defendants are blatantly disregarding this Court's binding Order, evidencing a lack of diligence, and proving that Defendants do not have "good cause" to modify the scheduling order.

***Third,*** Defendants have not timely sought relief for what they now claim to be Smartmatic's discovery abuses.  As set forth in detail above, the Parties have been meeting and conferring on several of these issues for many months now.  Had Defendants exercised diligence, they could have brought them to the Court's attention long ago.  This is most notable with respect to the "Los Angeles County Documents."  Defendants

erroneously state that Smartmatic did not inform them that they were withholding Los Angeles County Documents until August 3, 2023.  (Mot. at 19.)  Not so.  On March 20, 2023—six months prior to Defendants' Motion—Smartmatic informed Defendants that "Los Angeles County has not authorized the production of any other non-public documents reflecting the County's confidential data.  As Smartmatic is contractually bound to maintain the confidentiality of these sensitive documents, Smartmatic's production of documents relating to its role in Los Angeles County's VSAP initiative will be limited to the documents listed above."  (Kaplan Decl. Ex. V, at 3.)  Defendants were on notice in March that documents related to LA County were being withheld on confidentiality grounds.  To now move for relief and claim that such motion entitles them to sixty extra days of discovery should not be permitted.

## II.   Smartmatic Would Be Prejudiced By A Schedule Modification.

In addition to a lack of diligence, Courts may consider other factors in determining whether to modify a scheduling order.  "Other potential factors include whether the opposing party would be prejudiced . . ." *Marks v. Bauer*, 2021 WL 605039 at *2; *see also Fagen, Inc. v. Exergy Dev. Grp. of Idaho LLC*, 2016 WL 2984471, at *3 (D. Minn. Mar. 31, 2016) (where the movant "did not diligently seek to modify the scheduling order, and even if it had, the nonmoving parties would be substantially prejudiced by the requested modification," there was no good cause to modify the scheduling order).  Here, the prejudice to Smartmatic in modifying the scheduling order is overwhelming and ought to, in fairness, be considered.

Defendants have continuously been telling the world since February 2021—over two and a half years—that the 2020 U.S. Election was rigged by Smartmatic. Smartmatic had no choice but to file this suit in January 2022 in an attempt to stop Defendants' relentless defamation. And still, Lindell defames Smartmatic on a weekly basis. One of his most recent defamatory statements about Smartmatic was broadcast on his website, FrankSpeech.com, on September 25, 2023.[7]  On August 16 and 17, 2023, Defendants held a two-day-long "Election Summit" where Lindell used his platform as the MyPillow spokesman to defame Smartmatic and simultaneously push a promotional code for Defendant MyPillow. In advance of this event, Smartmatic wrote a letter to Defendants, imploring them to stop defaming Smartmatic especially amidst the ongoing litigation. (Ward Decl. Ex. I, Aug. 15, 2023 Ltr. from M. Bloom to A. Parker.) The letter did not work. Defendants still held the event where they spread further lies and misinformation about Smartmatic. Defendants have continued to defame Smartmatic on a weekly basis despite this ongoing suit.[8]

---

[7] *See Mike Lindell Reveals What American Express Just Did To MyPillow*, LindellTV, at 19:49–20:37 (Sept. 25, 2023), *available at* https://frankspeech.com/Video/mike-lindell-reveals-what-american-express-just-did-to-mypillow.

[8] In its Complaint and Supplemental Complaint, Smartmatic included a claim for punitive damages, alleging that  "Defendants acted with actual malice, ill will, and spite towards Smartmatic, and for improper motives."  (ECF No. 1, Compl. ¶¶ 371. 380(c); ECF No. 125, Supp'l Compl. ¶¶ 379, 388(c).)  On July 10, 2023, Smartmatic moved to compel documents related to Lindell's personal finances, arguing that they are relevant to both Defendants' actual malice and Smartmatic's punitive damages claims.  (ECF No. 142 at 6-13.)  Defendants argued that Smartmatic's requests were irrelevant because Smartmatic had not complied with Minn. Stat. § 549.191, which requires plaintiffs to amend their pleadings to assert punitive damages claims, and therefore had not properly asserted

It is against this backdrop that the Court must view Defendants' prejudicial request to modify the scheduling order. Defendants wish to delay another sixty days on proceeding to trial, giving Defendants more time to continue defaming Smartmatic. Defendants come to the court less than a month before the close of fact discovery with an over-forty-page of motion to compel, hoping that this last-minute display of "diligence" will support a schedule modification. It should not. *See e.g., Archer Daniels v. Aon,* 187 F.R.D. at 586 ("[T]o allow newfound, but sadly belated diligence to warrant an extension in the existing deadlines only encourages procrastination by rewarding the indolent for their sloth."). Every day that discovery is prolonged delays Smartmatic's trial with Defendants and opportunity to finally get Defendants to stop defaming the company.

Although there is a litany of missing, ignored, and botched discovery issues on Defendants' side—including missing promotional code materials, improper interrogatory responses, and a lack of metadata for most of Defendants' document productions—

---

punitive damages claims. (See ECF No. 143-4 at 2.) In response, Smartmatic argued that it had properly pleaded its punitive damages claims because "the recent intra-District trend" has been to permit plaintiffs to plead punitive damages claims under Rules 8 and 15 of the Federal Rules of Civil Procedure instead of requiring them to comply with Minn. Stat. § 549.191. (ECF No. 142 at 8-12.) The Court has not yet issued a ruling on Smartmatic's motion to compel.

Although Smartmatic believes its Complaint and Supplemental Complaint are more than sufficient to support its punitive damages claim, in an abundance of caution, Smartmatic intends to seek leave to amend its complaint to further establish that Defendants have acted with deliberate disregard consistent with Minn. Stat. §§ 549.191 and 549.20. Smartmatic has not yet filed its amended complaint because it anticipates that it will utilize as support for its punitive damages claim testimony from the deposition of Michael Lindell and the Rule 30(b)(6) deposition of MyPillow, which are currently scheduled for October 11 and 12. Smartmatic also anticipates amending its complaint to include Lindell's continued and relentless defamation of Smartmatic, including numerous defamatory statements made at his Election Crime Bureau Summit in August 2023.

Smartmatic is still prepared to comply with the Court's current scheduling order. The parties can continue addressing these issues through the end of fact discovery; there are still two weeks to go. Smartmatic has diligently prepared its case for a trial-ready date in April 2024, consistent with the current scheduling order.

## **CONCLUSION**

For the foregoing reasons, Smartmatic respectfully requests that the Court deny Defendants' Third Motion to Compel and Motion to Modify Schedule.

Dated: October 4, 2023                                   Respectfully submitted,

/s/ *Jamie N. Ward*

Christopher K. Larus
  Minnesota Bar No. 0226828
  CLarus@robinskaplan.com
William E. Manske
  Minnesota Bar No. 0392348
  WManske@robinskaplan.com
Emily J. Tremblay
  Minnesota Bar No. 0395003
  ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
  EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
  NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Michael E. Bloom (admitted *pro hac vice*)
  MBloom@beneschlaw.com
Illinois ARDC No. 6302422

23

Jamie N. Ward (admitted *pro hac vice*)
Illinois ARDC No. 6321686
   JWard@beneschlaw.com
Julie M. Loftus (admitted *pro hac vice*)
   JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN &**
**ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
   JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN &**
**ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*