UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., AND SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL, AND MY PILLOW, INC.,<br><br>Defendants. | Case No. 22-CV-98 (WMW/JFD)<br><br>**ORDER** |

This matter is before the Court on cross-motions to compel. (Dkt. Nos. 140, 146.) The Court heard oral argument on the motions on July 25, 2023. (Hr'g Mins., Dkt. No. 155.) Michael Bloom, James Bedell, and William Manske represented Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic"). (*Id.*) Andrew Parker and Abraham Kaplan represented Defendants Michael Lindell and My Pillow, Inc. ("My Pillow"). (*Id.*) The Court grants Smartmatic's Motion to Compel, and grants in part and denies in part Defendants' Motion to Compel.

The factual and procedural background in this matter has been set forth previously and need not be repeated. (*See* Order on Mots. to Compel, Dkt. No. 160.) Here, Smartmatic asks the Court to compel Defendants to respond to certain requests for production ("RFPs"). (Pls.' Mem. Supp. 5–13, Dkt. No. 142.) For their part, Defendants ask the Court

to require Smartmatic to make initial disclosures and respond to certain interrogatories. (Defs.' Mem. Supp. Mot. Compel 9–18, Dkt. No. 149.)

## I. LEGAL STANDARDS

### A. Discovery Must be Relevant and Proportional.

Civil litigants may discover nonprivileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This is a broad, but not boundless, standard; parties can discover only relevant information that is "proportional to the needs of the case." *Id.* In assessing proportionality, courts consider "the importance of the issues . . ., the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The Federal Rules of Civil Procedure give litigants several tools to gather information during the discovery process, including interrogatories governed by Rule 33 and RFPs governed by Rule 34. A party served with an interrogatory must either answer it "fully" or object to it within 30 days. Fed. R. Civ. P. 33(b)(3). A party fails to respond to an interrogatory not only when it neither answers nor objects, but also when it submits an "evasive or incomplete" answer. Fed. R. Civ. P. 37(a)(4). A party must produce responsive materials or object to RFPs on the same timeline that applies to interrogatories, that is, within 30 days. Fed. R. Civ. P. 34(b)(2)(A). Objections to RFPs must be specific and "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P.34(b)(2)(C).

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has not produced the requested information, the requesting party may move for an order compelling the responding party's production. *Id.* Fed. R. Civ. P. 26(b)(2), 37. The party seeking discovery must make a threshold showing of relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021) (citing *Hofer v. Mack Trucks*, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). If the moving party meets its initial burden of showing that the requested discovery is relevant, then the burden shifts to the party resisting discovery to show either that it is not relevant or that it is unduly burdensome. *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 10223625, at *20 (D. Minn. June 17, 2020). If a party prevails on a motion to compel, the court must award that party its expenses in bringing the motion, unless the moving party failed to meet and confer, the opposing party's conduct was "substantially justified," or it would otherwise be unjust to order expenses. Fed. R. Civ. P. 37(a)(5).

### B. Defamation

This is a lawsuit alleging defamation and deceptive trade practices in which federal subject-matter jurisdiction is premised on diversity of citizenship. (Suppl. Compl. ¶ 20, Dkt. No. 125.) Federal courts sitting in diversity apply state substantive law and federal procedural law. *Shady Grove Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Court will assess the relevancy and proportionality of these discovery motions in light of the elements of defamation and deceptive trade practices under the substantive law of Minnesota.

To prevail on a defamation claim under Minnesota law, Smartmatic must prove "that a statement was false, that it was communicated to someone besides [Smartmatic], and that it tended to harm [Smartmatic's] reputation and to lower [it] in the estimation of the community." *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410 (Minn. 1994). Because Smartmatic is a public figure,[1] it must also show that Mr. Lindell made the statement with "actual malice," meaning that he knew the statement was false or that he recklessly disregarded the truth or falsity of the statement when he made it. (Ord. Denying Mot. to Dismiss 6 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).)

Under Minnesota law, certain types of false statements are presumed to be defamatory, including accusations of crime and statements that tend to injure a plaintiff in its business, trade, or profession. *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 875 (Minn. 2019). Smartmatic claims that the allegedly false statements of Mr. Lindell (which Smartmatic seeks to impute to My Pillow) were defamatory per se because they damaged Smartmatic's reputation in its business. (Suppl. Compl. ¶ 373.) Damages are presumed when a plaintiff has shown that a defendant's statement was defamatory per se, unless the defamatory statement was about a matter of public concern, in which case a plaintiff, to recover, must show actual reputational harm. *Maethner*, 929 N.W.2d at 874–75. Because "the invalidity of a presidential election as a result of hacking is a matter of public concern," Smartmatic must show that Mr. Lindell made his statements with actual malice and the

---

[1] Minnesota law regards corporations as "public figures" for defamation law. Judge Wright found that Smartmatic, since it consists of three corporations, was a public figure. (Ord. Denying Mot. to Dismiss 6, Dkt. No. 52.)

4

statements caused actual reputational harm. (Ord. Denying Mot. to Dismiss 6 (quoting *Maethner*, 929 N.W.2d at 879).)

"[T]ruth is an absolute defense to a defamation claim" in Minnesota. *Carpenter v. Extendicare Health Servs. Inc.*, No. 15-CV-120 (MJD/JJK), 2015 WL 7729406, at *7 (D Minn. Oct. 26, 2015), *R&R adopted*, 2015 WL 7720477 (D. Minn. Nov. 30, 2015). This means Defendants can defeat the defamation claims if they prove the statements at issue were true.

To prove a violation of the Minnesota Deceptive Trade Practices Act, Smartmatic must demonstrate that Defendants "disparage[d]" Smartmatic's "goods, services, or business . . . by false or misleading representation[s] of fact" in the course of its business. Minn. Stat. § 325D.44 subdiv. 1(8) (2022).

## II. ANALYSIS

### A. Smartmatic's Motion to Compel

#### 1. *Smartmatic Has Properly Pleaded Its Request for Punitive Damages.*

In RFP Nos. 30–33, Smartmatic seeks discovery about Mr. Lindell's personal financial situation, on the theory that he was motivated to defame Smartmatic for pecuniary gain. Smartmatic adduces examples of what it asserts are Mr. Lindell and members of the Trump campaign urging the audience at Trump rallies to purchase My Pillow products and disseminating My Pillow discount codes. Smartmatic argues that information about Mr. Lindell's finances is relevant not only to motive and actual malice, but also to Smartmatic's punitive damages request. (Pl.'s Mem. Supp. 9–10.)

5

It is not clear from the record whether Defendants originally claimed, in their objection to RFP Nos. 30–33, that Smartmatic did not properly plead a claim for punitive damages. Because this ground for declining to comply with these RFPs is clearly stated in Defendants' Memorandum in Opposition to Smartmatic's Motion to Compel, and because Smartmatic has neither argued that Defendants have waived this objection, nor provided a record showing what response Defendants made to the Smartmatic RFPs at issue, the Court will consider Defendants' objection. (Pls.' Mem. Supp. Mot. Compel 9 (citing Bloom Decl. Ex. D, Dkt. No. 143-4).)

Under Minnesota procedural law, a plaintiff may not seek punitive damages in the original complaint, but "may make a motion to amend the pleadings to claim punitive damages" at a later stage in the litigation. In state court, a motion to add a claim for punitive damages must include "one or more affidavits showing the factual basis for the claim" and the specific legal bases on which the punitive-damages claim is premised. Minn. Stat. § 549.191–.20. By contrast, the Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Courts in this District used to require parties seeking punitive damages to follow the Minnesota state procedure, that is to forego claiming punitive damages in their opening complaint, and to file a motion to amend the complaint later, accompanied by affidavits, to add a punitive damages claim. These decisions were frequently premised on an apprehension that plaintiffs, seeing that punitive damages claims could be asserted more easily in federal court than in state court, would forum shop. *Zeelan Industries, Inc. v. de Zeeuw*, 706 F. Supp. 702, 705 (D. Minn. 1989) (MacLaughlin, J.) ("[P]laintiff's claim for

6

punitive damages should be stricken. In the absence of a conflicting Federal Rule, federal courts must apply state law where failure to do so would lead to forum shopping. . . ."); *Kuehn v. Shelcore*, 686 F. Supp. 233, 235 (D. Minn. 1986) (Devitt, J.) ("[A] party might well choose [a forum that does not follow § 549.191] because it provides a tactical, though non-dispositive, advantage. In the court's view, this variation is substantial enough to influence forum choice and, under *Erie*, must be eliminated by applying § 549.191 in this federal diversity action.")

In *Shady Grove*, the Supreme Court held that "a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping" and allowed a class action lawsuit filed in the Eastern District of New York to proceed in federal court under Fed. R. Civ. P. 23 even though a New York state statute procedurally prohibited it. 559 U.S. 393, 416. After *Shady Grove* held that apprehension of forum shopping is not a good reason for preferring state to federal procedural law, the majority of courts in this District sitting in diversity looked to Fed. R. Civ. P. 15(a)(2) rather than Minn. Stat. § 549.191 for the procedural law that sets out the pleading requirements for a punitive damages claim.[2]

---

[2] The undersigned magistrate judge has previously followed Rule 15, rather than Minn. Stat. § 549.191, in deciding whether to allow amendment of a complaint to add a punitive damages claim. *Russ v. Ecklund Logistics Inc.*, No. 19-CV-2719 (DSD/JFD), 2022 WL 856020 at *4 (D. Minn. Mar. 23, 2022). The other judges who have followed Rule 15 are the Honorable Eric C. Tostrud, the Honorable John R. Tunheim, the Honorable Ann D. Montgomery, the Honorable Nancy E. Brasel, the Honorable Kate M. Menendez, the Honorable Elizabeth Cowan Wright, the Honorable Dulce J. Foster, the Honorable Franklin L. Noel, the Honorable Steven E. Rau, the Honorable Hildy Bowbeer, and the Honorable Becky R. Thorson. *See Shank v. Carleton Coll.*, No. 16-CV-1154 (PJS/HB),

Here, Smartmatic included a claim for punitive damages in its complaint and so does not need to amend its pleadings to conform with the heightened pleading standard required under Minnesota law. Smartmatic argues that it properly included the claim at the outset of this lawsuit, given the recent trend in this District for courts sitting in diversity

---

2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018) (Bowbeer, J.), *aff'd*, No. 16-CV-1154 (ECT/HB), 329 F.R.D. 610 (D. Minn. 2019) (Tostrud, J.); *Mgmt. Registry, Inc v. A.W. Companies, Inc.*, No. 17-CV-5009 (JRT/KMM), 2020 WL 487315, at *2–3 (D. Minn. Jan. 30, 2020) (Tunheim, J.); *Urbieta v. Mentor Corp.*, No. 13-CV-1927 (ADM/LIB), 2018 WL 3475484, at *3 (D. Minn. July 19, 2018) (Montgomery, J.); *Am. Achievement Corp. v. Jostens, Inc.*, 622 F. Supp. 3d 749, 765 (D. Minn. 2022) (Brasel, J.); *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, No. 17-CV-5009 (JRT/KMM), 2019 WL 7838280, at *13 (D. Minn. Sept. 12, 2019) (Menendez, J.), *R&R adopted in part*, 2020 WL 487315 (D. Minn. Jan. 30, 2020); *Orange Rabbit, Inc. v. Franchoice, Inc.*, No. 19-CV-687 (MJD/ECW), 2020 WL 2191947, at *2 (D. Minn. May 6, 2020) (Cowan Wright, J.); *McNamara v. Kuehne*, No. 22-CV-47 (NEB/DJF), 2023 WL 2189980, at *2 (D. Minn. Feb. 6, 2023) (Foster, J.), *R&R adopted*, 2023 WL 2189055 (D. Minn. Feb. 23, 2023); *Rogers v. Mentor Corp.*, No. 12-CV-2602 (SRN/SER), 2018 WL 2215519, at *6 (D. Minn. May 15, 2018) (Rau. J.), *aff'd sub nom. Urbieta v. Mentor Corp.*, No. 13- CV-1927 (ADM/LIB), 2018 WL 3475484 (D. Minn. July 19, 2018); *Ramirez v. AMPS Staffing, Inc.*, No. 17- CV-5107 (DWF/BRT), 2018 WL 1990031, at *5–6 (D. Minn. Apr. 27, 2018) (Thorson, J.); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-MDL-2666 (JNE/FLN), 2017 WL 5187832, *5–6 (D. Minn. July 27, 2017) (Noel, J.); *cf. Selective Ins. Co. of S.C. v. Sela*, 353 F. Supp. 3d 847, 855–63 (D. Minn. 2018) (Schiltz, C.J.) (calling previous practice of applying Minn. Stat. § 549.191 and not Rule 15 "troubling," re-examining a similar practice regarding Minn. Stat. § 604.18, and finding that Federal Rules, not state statute controlled). *But see Johannessohn v. Polaris Indus., Inc.*, No. 16-CV-3348 (WMW/LIB), 2022 WL 3585152, at *2 (D. Minn. Aug. 22, 2022) (holding that parties must conform to Minn. Stat. § 549.191); *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-CV-3183 (ADM/LIB), 2018 WL 9919941, at *5, *31 (D. Minn. Mar. 8, 2018) (holding that parties seeking to add a punitive damages claim must follow the procedure set out in Minn. Stat. § 549.191), *relevant objs. overruled as moot*, 351 F. Supp. 3d 1187 (D. Minn. 2018), *aff'd on other grounds*, 962 F.3d 1015 (8th Cir. 2020).

8

jurisdiction to apply Rule 15, rather than Minnesota Statute § 549.191 in analyzing whether a claim for punitive damages is properly pleaded. (Pls.' Mem. Supp. 2d Mot. Compel 9.)[3]

Defendants contend that Smartmatic has not properly pleaded its claim for punitive damages and therefore is not entitled to discovery related to that claim. Indeed, Defendants assert that § 549.191 is a substantive law that "created a clear and convincing evidentiary threshold, which, if not met, is dispositive of punitive damages before trial," and thus Defendants assert that the *Shady Grove* analysis does not apply here. (Defs.' Mem. Opp'n Mot. Compel 5.) And, according to Defendants, even if §§ 549.191 and 549.20 are procedural, they do not conflict with the Federal Rules. (*Id.* at 4.) But the reasoning of the cases on which Defendants rely for this argument has been rejected. For example, the analysis in *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-CV-3183 (ADM/LIB), 2018 WL 9919941, at *31 (D. Minn. Mar. 8, 2018) was later rejected by *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 7286933, at *3–6 (D. Minn. Aug. 6, 2021) (Brasel, J.).

The Court determines that Rule 15 and § 549.191 are conflicting procedural rules. *See Speed RMG Partners,* 2021 WL 7286933, at *6. Therefore, the Court finds, consistent with the great weight of post-*Shady Grove* authority in this District, that Rule 15(a)(2) provides the appropriate procedural tool to examine whether Smartmatic's claim for

---

[3] Additionally, Smartmatic argues that it is too late for Defendants to raise this argument, as Smartmatic included the request for punitive damages in its initial Complaint, Defendants did not raise this argument in their motions to dismiss, or in answering either the original Complaint or the Supplemental Complaint. (Pls.' Mem. Supp. Mot. Compel 10.) Defendants did not respond to this argument, and the Court need not address it.

punitive damages is properly pleaded. Because Smartmatic's claim complies with the pleading requirements in Rule 8 and Rule 15, the Court concludes that the punitive damages request is properly pleaded.

### 2. Defendants Must Produce Documents Relating to Mr. Lindell's Finances.

Defendants object to four RFPs (30, 31, 32, 33) regarding Mr. Lindell's finances. Smartmatic seeks documents showing Mr. Lindell's "financial condition from 2020 to the present, including but not limited to, annual financial reports and tax returns" (RFP 30) and "ownership interest in any company or entity, including, but not limited to, MY PILLOW, from 2020 to the present," (RFP 31) as well as "[d]ocuments and communications relating to any audit of LINDELL by the U.S. Internal Revenue Service from 2020 to the present" (RFP 32) and "[d]ocuments and communications relating to any loans received, secured, or negotiated for LINDELL or for MY PILLOW from 2020 to the present," (RFP 33). (Pls.' Mem. Supp. Mot. Compel 4, 13; Bloom Decl. Ex. B at 4–5, Dkt. No. 143-2.)

Defendants contend that Mr. Lindell's financial condition is not relevant to proving actual malice, because that standard, as laid out in *N.Y. Times Co. v. Sullivan*, 376 U.S. at 279–80, focuses on "the defendant's attitude toward the truth of what he has said rather than on his attitude toward the plaintiff." (Defs.' Mem. Opp'n Mot. Compel 6.) Thus, Defendants contend that to prove actual malice, Smartmatic must show that Defendants had a reckless disregard for the truth of the allegedly defamatory statements. (*Id.*) Further, Defendants state that My Pillow has already completed the requested financial disclosures, which they assert will show that Mr. Lindell was not "motivated by profit." (*Id.*)

Smartmatic argues that evidence of Mr. Lindell's alleged ill will or improper motive is relevant to proving actual malice, although it alone does not satisfy the actual malice standard. (Pls.' Mem. Supp. Mot. Compel 12.) Smartmatic emphasizes that earlier in this lawsuit, the Court found that Smartmatic had plausibly alleged that Mr. Lindell was motivated to defame Smartmatic in order to benefit financially. (*Id.*) In denying Defendants' motion to dismiss, Judge Wilhelmina Wright determined that Smartmatic had plausibly "allege[d] that Lindell made and promoted his defamatory statements for his own profit," such as "on several occasions Lindell told audiences to purchase MyPillow products after making claims of election fraud and supplying audiences with MyPillow promotional codes related to Lindell's election-hacking theories." (Order Denying Mot. to Dismiss 4, Dkt. No. 52.) Smartmatic also references text messages sent by Mr. Lindell in which he stated that "being crazy in the news" and being banned from Twitter improved My Pillow sales. (Pls.' Mem. Supp. Mot. Compel 13 (citing Bloom Decl. Exs. E, F, Dkt. Nos. 143-6, 143-7).) Smartmatic plausibly pleads that discount codes for My Pillow products were featured in the same programs as Mr. Lindell's allegedly defamatory statements. (Suppl. Compl. ¶¶ 338–41.)

As Judge Wright earlier concluded, the Court finds that Mr. Lindell's financial status is relevant to Smartmatic's claim of actual malice. Therefore, the Court grants Smartmatic's motion as to RFP Nos. 30, 31, 32, and 33.

### B. Defendants' Motion to Compel

#### *1. Smartmatic Shall Supplement Its Rule 26 Disclosures to Include a Computation of Each Category of Damages it Claims.*

At the outset of discovery, parties must disclose "a computation of each category of damages claimed" and "make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii).

Smartmatic has not provided any damages computations, informing Defendants that it intended to provide a computation of its claimed damages when its expert issued their report. Smartmatic argues that it need not provide any information as to the damages related to its claimed reputational harm because on a claim of defamation per se, "a plaintiff may recover without any proof of actual harm," and the jury has wide discretion to determine an appropriate amount of damages. (Pls.' Mem Opp'n Mot to Compel 11, Dkt. No. 153 (citing *Longbehn v. Schoenrock*, 727 N.W.2d 153, 161 (Minn. Ct. App. 2007).)[4] Even so, Smartmatic stated that it would provide a damages computation related to reputational harm when its expert report was available, because "Smartmatic possesses neither the underlying data nor the expert testimony through which it will compute its damages." (Pls.'

---

[4] At this juncture, the Court considers only whether a damages claim is properly included in the Complaint, not whether Smartmatic may recover such damages in the event that a jury would reach that decision.

Mem Opp'n Mot to Compel 14.) Initial expert reports were due on September 22, 2023. (2d Am. Pretrial Scheduling Order, Dkt. No. 168.)

Smartmatic further argues that it cannot compute the economic damages while "in the middle of fact discovery." (*Id.* at 15.) To recover economic damages, Smartmatic must show that Defendants were a "substantial factor" in causing Smartmatic's losses. *See Longbehn*, 727 N.W.2d at 160 (quoting Restatement (2d) of Torts § 622A(a) (1977)). Smartmatic asserts that it is still investigating "lost opportunities for which Defendants were a substantial factor," and once it obtains such information, its experts will analyze the information to appropriately calculate Smartmatic's losses. (Pls.' Mem Opp'n Mot to Compel 13–14.) Further, Smartmatic maintains that it has and will produce all of the information related to lost opportunities. Smartmatic has provided Defendants with an extensive list of jurisdictions that Smartmatic "believes may not do business with it based on defamatory statements published about Smartmatic following the 2020 election." (*Id.* at 14.) Subsequently, Smartmatic "identified a subset of jurisdictions that will not do business with it" based on Defendants' conduct. (*Id.* at 14.) While Smartmatic contends that it is waiting on Defendants to produce the discovery it needs in order to make its economic damages calculations, surely it is Smartmatic, not Defendants, who have the information related to its lost business opportunities. (*See id.* at 17.)

Defendants contend that Smartmatic's proposed timeline would prevent them from conducting any fact discovery regarding Smartmatic's claimed damages, and that Smartmatic's refusal to provide any damages computations falls far short of the requirements for initial disclosures that Rule 26 dictates. (Defs.' Mem. Supp. Mot. to

13

Compel 11.) At the hearing, Defendants' counsel explained that Smartmatic's counsel had, a few days earlier, provided a document from early 2021 listing numerous jurisdictions where Smartmatic saw a potential business opportunity, the value of that opportunity, and a predicted decrease in value. The Court notes that the document was not labeled as an exhibit and thus does not consider the document evidence. The document merely represents, as Defendants' counsel argued, that Smartmatic is capable of calculating the decrease in its likelihood of securing various contracts and of calculating how much that likelihood has diminished. Further, the Court notes that although diminution of business is similar to damages, the diminution may be due to other factors, and thus it may not map exactly onto a computation of damages.

The Court understands that Smartmatic is conducting ongoing discovery to ascertain a final damages amount. Even so, fact discovery is almost complete. It is reasonable for Smartmatic to make a good faith effort to estimate the emotional and punitive damages it claims, with the understanding that the estimates may change during expert discovery. *Henne v. Great River Reg'l Libr.*, No. 19-CV-2758 (WMW/LIB), 2021 WL 6804560, at *20 (D. Minn. Jan. 4, 2021) (determining that "although plaintiff represents that a final calculation of her non-economic damages depends on facts that have not yet been discovered and that her non-economic emotional distress and punitive damages continue to accrue, she is required to disclose damage computations based on the information available to her") (cleaned up).

The Court grants Defendant's motion as to Smartmatic's initial disclosures, and Smartmatic shall provide an estimate of its claimed economic and punitive damages to

Defendants, with the understanding that the estimate may change as discovery proceeds. Then, at the close of discovery, Smartmatic shall provide a finalized "computation of each category of damages" as required by Rule 26(a)(1)(A)(iii).

### 2. Smartmatic Shall Substantively Answer Interrogatory No. 20.

In Interrogatory No. 20 Defendants ask Smartmatic to "[p]rovide an itemized list of all damages . . . identifying for each item of damages the amount and all material facts tending to show that You suffered these damages" and to "identify all persons and jurisdictions . . . whom You allege would have purchased Smartmatic products but did not do so as a result of any act by Defendants," and "the act(s) by Defendants that you allege caused these persons or jurisdictions not to purchase Smartmatic Products." (Kaplan Decl. Ex. D. at 20, Dkt. No. 150-1.) Defendants move the Court to compel Smartmatic to respond to this interrogatory so that Defendants can have an "opportunity to obtain third-party discovery [and] pursue additional fact discovery [and] investigation," rather than require Defendants to wait for Smartmatic's expert report to issue at the close of discovery. (Defs.' Mem. Mot. Compel 13.)

In its answer to this Interrogatory, Smartmatic stated that its "damages include lost sales, revenues, profits, and damage to its brand name, business value, reputation, and goodwill." (Kaplan Decl. Ex. D. at 20–21.) Smartmatic supplemented its answer, providing a list of 75 jurisdictions that either "may not do business with Smartmatic" or "have expressed concerns about doing business with Smartmatic." (*Id.* Ex. I at 32.) Smartmatic has produced audited financial statements, budgets, forecasts, and bids,

15

contracts, and a database of opportunities it has pursued. (Pls.' Mem. Opp'n Mot to Compel 2.)

Defendants contend that this information is inadequate. Defendants argue that Smartmatic must provide damages information, "particularly where [Smartmatic] seeks recovery based on specific, identifiable facts—and in what amounts, along with the identity of any individuals who have information regarding his asserted damages." (Defs.' Mem. Mot to Compel 13 (quoting *Gacek v. Owens & Minor Distrib., Inc.*, No. 09-CV-3202 (PAM/LIB), 2010 WL 11534503, at *3 (D. Minn. Oct. 21, 2010), *aff'd*, 2010 WL 4286330 (D. Minn. Oct. 25, 2010)). Without a computation of damages, Defendants argue that they cannot adequately prepare a defense. (Defs.' Mem. Supp. Mot. to Compel 12–17.) Additionally, Defendants contend that it is improper for Smartmatic to generally refer Defendants to all the documents that it claims support its damages, and that instead Smartmatic must refer to the specific documents that it used to reach its damages calculations and those documents on which its expert relied. (*Id.* (citing *Gacek*, 2010 WL 11534503, at *8)) Defendants also argue that Smartmatic has failed to specify any contract that it lost due to the alleged defamation. (Defs.' Mem. Supp. Mot. to Compel 14.)

While the Court finds that expert discovery about Smartmatic's alleged diminution in value and alleged lost business opportunities is necessary for Smartmatic to finalize its responses to this interrogatory, the Court also finds that waiting until the close of expert discovery to supplement Smartmatic's response would prevent Defendants from using that information in shaping further discovery, as discussed above. The Court therefore orders that Smartmatic shall amend its disclosures to Interrogatory 20 to include the list of

16

jurisdictions that will not or may not do business with Smartmatic and supplement it before the close of all discovery with responsive information from expert discovery. The Court grants Defendants' motion as to Interrogatory No. 20.

### 3. *Smartmatic Shall Supplement Its Answers to Interrogatory Nos. 14 and 15 Now, and Shall Supplement Its Answers to Interrogatory Nos. 1, 5, 6, 7, 8, 9, 11, 17, and 18 at the Close of Fact Discovery.*

Smartmatic objected to a number of Defendants' interrogatories, asserting that they were "premature contention interrogatories." Defendants move the Court to compel Smartmatic to respond substantively "with the information presently available to Smartmatic." (Defs.' Mem. Supp. Mot. Compel 16–18.) Defendants argue that without more complete answers to these interrogatories, Defendants "will be unable to question witnesses . . . or pursue further investigation or discovery." (*Id.* at 17.) Specifically, Defendants argue that Interrogatory 14 is not a premature contention interrogatory.

The term "contention interrogatory" can refer to several kinds of interrogatories. *Gilmore v. City of Minneapolis*, No. 13-CV-1019 (JRT/FLN), 2014 WL 4722488, at *5 (D. Minn. Sept. 22, 2014); *In re Grand Casinos, Inc. Sec. Litig.*, 181 F.R.D. 615, 618 (D. Minn. 1998). *But see Kinetic Co. v. Medtronic, Inc.*, No. 08-CV-6062 (JMR/AJB), 2010 WL 11561275, at *3 n.1 (D. Minn. Nov. 23, 2010) (finding "no basis in the rules to distinguish contention interrogatories from other forms of discovery"). This Court understands contention interrogatories to be "questions asking a party to explain the facts known to them, if any, that support a claim or defense." *Bakambia v. Schnell*, No. 20-CV-1434 (NEB/KMM), 2021 WL 4622250, at *10 (D. Minn. Oct. 7, 2021). The purpose of such interrogatories is to help the requesting party understand the basis for the claims levied

17

against them and prepare a defense. *Id.* Contention interrogatories can also help narrow the issues at trial. *Promotional Mktg. Insights, Inc. v. Affiliated Comp. Servs., Inc.*, No. 11-CV-2795 (PJS/AJB), 2012 WL 13028115, at *6 (D. Minn. Sept. 19, 2012); Fed. R. Civ. P. 33, advisory committee's notes to 1970 amendment. When a complaint contains "specific allegations . . . the factual basis for those allegations is presumptively discoverable . . . . That the Interrogatory is possibly a contention interrogatory does not, alone, alter that presumption of discoverability." *United States v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2019 WL 1453063, at *2 (D. Minn. Apr. 2, 2019), *aff'd sub nom. United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 2019 WL 3245003 (D. Minn. July 19, 2019).

The Federal Rules permit contention interrogatories, but courts may find that they are better answered later in litigation. Fed. R. Civ. P. 33(a)(2). "A contention interrogatory will be considered overly broad and unduly burdensome 'if it seeks "all facts" supporting a claim or defense, such that the answering party is required to provide a narrative account of its case.'" *Shqeirat v. U.S. Airways Grp., Inc.*, No. 07-CV-1513 (ADM/AJB), 2008 WL 4232018, at *4 (D. Minn. Sept. 9, 2008) (quoting *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006)); 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2167 (3d ed. 2022). But overbroad contention interrogatories may be "readily corrected by limiting the request to 'principal or material' facts" related to an allegation.

*Kinetic Co. v. Medtronic, Inc.*, No. 08-CV-6062 (JMR/AJB), 2010 WL 11561275, at *4 (D. Minn. Nov. 23, 2010) (quotation omitted).

Defendants argue that they seek relevant and proportional information in their motion to compel a further response to Interrogatory Nos. 1, 5, 6, 7, 8, 9, 10, 11, 14, 15, 17, and 18, but they only raise a specific argument as to Interrogatory No. 14. Defendants argue that Interrogatory No. 14 is not a contention interrogatory—it states, "[i]n paragraph 155 of the Complaint, You allege that Smartmatic's 'election technology, hardware, and software were not used by any other voting technology company during the 2020 U.S. election.' Identify every person with knowledge about the truth of that statement, and provide the factual basis for the allegation." (Defs.' Mem. Mot. to Compel 17–18; Kaplan Decl. Ex. D at 15–16.) Interrogatory No. 15 is similar as it asks Smartmatic to "[i]dentify every person with knowledge about the truth of" the allegation that "Smartmatic did not work with or assist any other voting technology company during the 2020 U.S. election." (Kaplan Decl. Ex. C at 6.)

Further, Smartmatic contends that its responses to Defendants' interrogatories are sufficient because Smartmatic referenced various paragraphs of the Complaint that correspond to the topics about which Defendants inquire. (Pls.' Mem. Opp'n Mot. Compel 18–19.) But referencing the Complaint does not provide Defendants with any discovery information and it does not comport with Rule 26's disclosure requirements

The Court finds that the information Defendants seek in Interrogatory Nos. 14 and 15 is relevant and proportional to the claims and defenses in this lawsuit. Therefore, Smartmatic will supplement its responses to Interrogatory Nos. 14 and 15 no later than 30

19

days after the date of this Order. As to the remaining interrogatories, the Court will exercise its power to delay Smartmatic's responses to minimize speculation and its attendant inefficiencies. When expert discovery concludes, Smartmatic will supplement its answers to the Interrogatory Nos. 1, 5, 6, 7, 8, 9, 10, 11, 17, and 18.

## CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel (Dkt. No. 140) is **GRANTED**, as set forth fully above; and

2. Defendants' Motion to Compel (Dkt. No. 146) is **GRANTED in part** and **DENIED in part**, as set forth fully above.

Date: October 19, 2023

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge