## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | Case No. 22-CV-98 (JMB/JFD) |
| Plaintiffs, | |
| v. | **ORDER** |
| MICHAEL J. LINDELL, and MY PILLOW, INC., | |
| Defendants. | |

This matter is before the Court on three motions. The first is Defendants' Motion to Reconsider (Dkt. No. 176) this Court's previous Order (Dkt. No. 160) that decided Defendants' First Motion to Compel (Dkt. No. 73). The Court heard oral argument on the Motion to Reconsider on September 22, 2023. (Hr'g. Mins., Dkt. No. 197.) Michael Bloom and William Manske represented Plaintiffs Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic"). (*Id.*) Abraham Kaplan and Andrew Parker represented Defendants Michael J. Lindell and My Pillow, Inc. ("My Pillow"). (*Id.*) The second motion is Plaintiffs' Motion for Extension of Time to Complete Discovery After the Fact Discovery Deadline. (Dkt. No. 205.) The third and final motion is Defendants' Third Motion to Compel and Amend the Second Amended Scheduling Order. (Dkt. No. 211.) The Court heard oral arguments on the second and third motions on October 11, 2023. (Hr'g Mins. Dkt. No. 234.) Abraham Kaplan and

Andrew Parker represented Defendants, while Jamie Ward, J. Erik Connolly, and William Manske represented Smartmatic. (*Id.*)

The Court denies the motion for reconsideration because the original ruling was not in error and because the motion was not properly before the Court. The Court grants in part and denies in part the motion to compel. Smartmatic must supplement its responses to Request for Production 14 and Interrogatories 20, 31–34, and 13. Finally, the Court issues a new scheduling order.

## I.  MOTION FOR RECONSIDERATION

### A.  Background

As the Court summarized in its previous order, Plaintiff Smartmatic is an election technology company that contracted with Los Angeles County, California to design election hardware and software, as well as services and support for the 2020 presidential election. (Order on First Mot. Compel 1–2, Dkt. No. 160; Am. Compl. ¶¶ 37–42, Dkt. No. 125.) Defendant Michael J. Lindell is the founder and CEO of Defendant My Pillow, which makes pillows and other products. (*Id.* ¶ 14 15.) Smartmatic claims that Mr. Lindell falsely asserted that Smartmatic's voting technology helped "rig" the 2020 election in favor of President Joseph Biden. (*Id.* ¶ 6, 73.) According to Smartmatic, Mr. Lindell made these statements to encourage former President Donald Trump's supporters to buy My Pillow products, thus improving My Pillow sales and enriching Mr. Lindell. (*See, e.g.*, *id.* ¶¶ 3–4, 7, 17, 55.) As a result of those statements, Smartmatic alleges it has incurred out-of-pocket costs, a tarnished reputation, and a two-billion-dollar loss in market value. (*Id.* ¶¶ 360,

365.) Smartmatic sued Defendants for defamation and violations of the Minnesota Deceptive Trade Practices Act, seeking damages and injunctive relief. (*Id.* ¶¶ 9, 366–87.)

Since the fall of 2022, the parties have been in discovery. (Pretrial Scheduling Order 1, Dkt. No. 64.) This dispute is, in part, about whether the Court should reconsider its previous denial of Defendants' First Motion to Compel Smartmatic to disclose exemplars of each Smartmatic product used in the 2020 election in Los Angeles County, the source code for those products, and any hardware or software used in the 2020 election over which Smartmatic has possession, custody, or control. (*See* Decl. of Matthew R. Eslick, Ex A, at 10–11,[1] Dkt. No. 76-1 (listing requests for production ("RFPs") 1, 8, and 10).) To place Defendants' Motion to Reconsider in context, a comprehensive recitation of the facts and procedural history of this case is required.

###### i.   *Smartmatic BMDs and Source Code from the 2020 Election in Los Angeles County*

The County Clerk of Los Angeles commissioned a new voting system, called the Voting Solutions for All People ("VSAP") system, for use in the 2020 elections. (Decl. of James Long ¶ 3, Dkt. No 90.) One component of the VSAP system is called a ballot marking device ("BMD"). (*Id.* at ¶ 5.) A voter uses a BMD to select their preferred candidates on a screen. (*Id.*) The BMD then prints a paper ballot with the voter's selections marked for them to review. (*Id.* ¶ 6.) When the voter is satisfied that the paper ballot reflects their choices, they feed the ballot back into the BMD, where it stays until it is removed

---

[1] The Court's page number references are to the page numbers assigned by the CM/ECF filing system, which are printed in blue ink at the top of all filed documents.

from the BMD and tabulated. (*Id.*) Smartmatic engineered and built the BMDs and programmed the software to run and manage them. (*Id.* ¶ 8.)

The voting system Los Angeles County used in 2020 was named VSAP Voting System 2.2 ("VSAP 2.2"). (*Id.* ¶ 11; Decl. of Aman Bhullar Decl. ¶ 2, Dkt. No. 193-3.) When Smartmatic completed work on VSAP 2.2, Los Angeles County asked the California Secretary of State, whose office is required to examine new election systems, for approval to use VSAP 2.2. (Long Decl. ¶ 13.) SLI Compliance, which is accredited by the U.S. Election Assistance Commission, tested VSAP 2.2. (*Id.* ¶ 15.) When those tests were satisfactory, and with the final version of the VSAP 2.2 software in hand, SLI Compliance created what is called a "trusted build" of the software that runs the BMDs. (Long Decl. ¶ 16.) In a "trusted build," software is translated from code that a human can read (source code) into code that a computer can execute (machine code or assembly code). (*Id.*) The resulting program is called the trusted build file. (*Id.*) SLI Compliance then sent the VSAP 2.2 program to Los Angeles County with a unique identifier (called a hash value) so that Los Angeles County could confirm that the program it received was the same one SLI Compliance sent, and that it had not been altered. (*Id.* ¶ 17–18.) After the California Secretary of State approved VSAP 2.2, as required by California law, Los Angeles County placed the source code and the trusted build file in an escrow facility approved by the State of California. (*Id.* at ¶ 20; Bhullar Decl. ¶ 2.)

In preparation for the 2020 election, Los Angeles County accessed the escrowed files and installed them on the BMDs, using its own encryption technology to ensure a secure data transfer. (Long Decl. ¶ 22–24.) According to its declarant, Smartmatic does not

have access to the source code or trusted build files in the escrow account that Los Angeles County used to set up the BMDs; it does, however, have access to the copy of the source code it gave SLI Compliance for testing and the trusted build file that SLI Compliance created. (*Id.* ¶ 25.) As for the BMDs, Los Angeles County stored the BMDs with VSAP 2.2 installed, and Smartmatic provided maintenance on the machines as needed. (*Id.* ¶ 26.) Later, Los Angeles County installed a *new* version of VSAP on the BMDs. (*Id.* ¶ 27.) Smartmatic reports that—to the best of its knowledge—no BMDs running VSAP 2.2 software currently exist.

### *ii.* *Procedural History*

This  dispute began when Defendants brought a motion seeking discovery related to certain requests for production.[2] (Defs.' First Mot. Compel; Defs.' Mem. in Supp. of First Mot. Compel 4–5, Dkt. No. 75). The Court denied that motion, and Defendants now seek reconsideration of that Order. (Order First Mot. Compel 15–19; Defs.' Mot. Recons.)

### *a.* *Defendants Move to Compel Responses to Their Requests for Production.*

In February 2023, Defendants moved to compel Smartmatic to respond to three of their RFPs requesting access to Smartmatic election technology. (Defs.' Mem. Supp. First Mot. Compel 4–5.) The three requests read as follows:

> REQUEST NO. 1: An exemplar of each Smartmatic Product used by any county, precinct, election site, or polling location in the State of California to administer the 2020 Presidential Election.

---

[2] Smartmatic also brought a motion to compel (Dkt. No. 72) but the Court's ruling on that motion is not at issue.

REQUEST NO. 8: The source code for any Smartmatic Product, Hardware, Software, or systems used in the 2020 Presidential Election in any county, precinct, election site, or polling location in the State of California.

REQUEST NO. 10: Any Hardware and Software in the possession, custody, or control of Smartmatic that was used to administer the 2020 Presidential Election in any jurisdiction in any State.

(Eslick Decl. Ex A, at 10–11.) Defendants claimed that this technology was "tightly connected to the truth or falsity of the statements upon which Smartmatic's claims rest," such as Mr. Lindell's statements that the 2020 election was hacked, that Smartmatic's devices connected to the internet on Election Day, and that Smartmatic's computer program was designed to rig, rather than facilitate, elections. (Defs.' Mem. Supp. First Mot. Compel at 3, 6.) If these statements were true, Smartmatic could not prevail on their defamation claim. (*Id.* at 3.) Defendants also argued that the requests were not overbroad because they were "specifically tailored to technology used in the 2020 Presidential Election." (*Id.* at 9.)

Smartmatic objected to the RFPs, claiming that the information Defendants sought was irrelevant; privileged or protected by the work product doctrine; overbroad and unduly burdensome in timeframe; and that obtaining it would require Smartmatic to violate confidentiality agreements with third parties or legally imposed confidentiality obligations. (Eslick Decl. Ex. B at 21, 25–27, Dkt. No. 76-1.) It also alleged that disclosing the materials would threaten the security of Los Angeles County's elections and was not necessary because Defendants could get information about the BMDs and source code through alternative sources (for example, independent testing reports, statements of public officials,

6

publicly available voting data, depositions, document requests, or news reports). (Pls.'
Mem in Opp'n to First Mot. to Compel 19, Dkt. No. 89.)

Smartmatic's chief objection to these RFPs, however, was that it did not have
possession, custody, or control of the materials that Defendants requested. (*Id.* at 8, 18.)
Smartmatic stated that the only jurisdiction in which it worked during the 2020 election
was Los Angeles County so the only materials responsive to these RFPs were the BMDs
from Los Angeles County—specifically an exemplar BMD used in the 2020 election—and
the source code developed for such a BMD. (*Id.* at 19.) The contract between Smartmatic
and Los Angeles County dictated that the BMDs and the intellectual property rights to the
BMD software were the exclusive property of the County. (*Id.* at 19; Long Decl. ¶ 9; Decl.
of Michael Bloom in Opp'n to Defs.' Mot. to Compel Ex. 1 at 18 (§ 2.1.1), Dkt. No. 91-1.)
Smartmatic said that the source code used in the 2020 election was in the escrow account
(to which it has never had access) and that Los Angeles County would not give Smartmatic
access to the source code so that Smartmatic could disclose it to Defendants. (Pls.' Mem.
Opp'n Mot. Compel at 13–14, 23.) However, Smartmatic represented that, subject to a
court order, it *could* access and retrieve the version of the source code that it sent to SLI
Compliance, and the trusted build that SLI Compliance made. (*Id.* at 8, 20; Long Decl.
¶¶ 25; Bloom Decl. Ex. 1 at 35 (§ 7.8.3) ("Disclosures which are required by law, such as
a court order . . . are allowable."); Tr. of Feb. 23, 2023 Mots. Hr'g  26:1–28:14, 78:24–
79:23, Dkt. No. 108.)

At the hearing on the motion, Defendants acknowledged that the source code used
in the 2020 election resided in escrow with Los Angeles County, and that they had served

a subpoena on the County to get it. (Feb. 23 Tr. 24:8–14.) But Defendants argued that if

Smartmatic had "their native code in their archives," they should be compelled to produce

it. (*Id.* at 25:1–16.) Smartmatic replied that the RFPs in question were specific and related

to the technology actually used in the 2020 election, which meant only the source code and

BMDs in Los Angeles County's possession were responsive. (*See id.* at 26:3–12.)

The Court then inquired about what exactly Smartmatic had in its possession:

> THE COURT: I understand your point that Smartmatic developed this stuff, turned it over to Los Angeles County, Smartmatic can't have it anymore. It's in this vault and [you] don't have a key. Did you keep any copies? Do you have anything in respons[e] to these RFPs?
>
> COUNSEL: What Smartmatic has in its possession is a copy of the source code as it existed basically at the end of its development. We have no reason to believe that this code is different than the code that was utilized by Los Angeles County and installed with the actual machines. And indeed there are a number of safeguards to ensure that that doesn't happen for security reasons. However, because after the source code left Smartmatic's hands, it went through an entire chain-of-custody essentially that Smartmatic wasn't involved in . . . . Defendants' allegations relate to essentially . . . a conspiracy to rig or fix an election. And if that's the basis for their claims . . . they need to look at the actual source code that was installed into the machines.

(*Id.* at 26:20–27:17.)

Defendants argued that if there was no reason to believe the source code Smartmatic

could access was different from the one used to make the trusted build file which was then

imported into the BMDs, that was "all the more reason to turn it over." (*Id.* at 30:2–4.)

Even if there were differences between the code Smartmatic could access and the code in

escrow, that might suggest that Smartmatic's code could be altered, which itself would be

relevant to the truth or falsity of Mr. Lindell's statements about the integrity of the system. (*Id.* at 30:6–11.) They also argued that the source code in escrow might no longer be there, or a California court might not compel Los Angeles County to comply with the subpoena for it, so it was possible that Defendants' only way to inspect the source code for VSAP 2.2 might be through Smartmatic's access to the code in its possession, even if it was not the code that was used on election day. (*Id.* at 76:10–77:22.)

Later in the hearing, Smartmatic clarified its position on its access to, compared to possession of, the source code.

> COUNSEL: So the copy of the code that Smartmatic has access to is code that is kept in a database owned and maintained by Los Angeles County. Smartmatic, again, does have access to it because it needs ongoing access for things like maintenance and continued software development . . . but it is not, you know, sitting within a—you know, a Smartmatic server or anything like that. This is a database owned and maintained by Los Angeles County.
> . . . .
> So Smartmatic has possession in the sense that it could go into this database and pull that file down. That is possible. . . . L.A. County maintains full intellectual property rights and ownership over all of those materials.
> . . . .
> So, pursuant to the contract between the parties, Smartmatic is required to keep that information confidential. We are not allowed to disclose it. I believe there is a standard carveout for if we are required to disclose information pursuant to legal authority. So I think should the Court order it, it is, you know, likely permissible under the contract as it's been, you know, ordered by the Court, but . . .in general . . . that is not something that we have the right to disclose.

(*Id.* at 78:2–79:23.)

Because Mr. Lindell's statements were about the actual code used in the 2020 election, Smartmatic argued, the proper code to inspect was the code in escrow, not the one to which it has access. (*Id.* at 79:24–81:4.) Nevertheless, Smartmatic argued, the issue of whether Smartmatic should have to disclose the source code it could access would be better litigated in the District of California. (*Id.*) Defendants retorted that because the RFPs were served in a case in Minnesota, a Minnesota court should decide how Smartmatic should respond. (*Id.* at 81:7–82:2.) The Court agreed that the decision of whether to require Smartmatic to allow an inspection of the source code they had or could access was a decision it would make, not a decision a California court would make. (*Id.* at 82:17–83:4.) Because the issue was not raised by either party, the Court made no comment on which court would address the subpoena Defendants sent to Los Angeles County.

### b. *Defendants Subpoena Los Angeles County.*

Defendants subpoenaed Los Angeles County on February 7, 2023, a little over two weeks before the hearing on the Motion to compel in Minnesota. (Decl. of Abraham Kaplan in Supp. of Mot. Recons., Ex. B, at 5, Dkt. 180-1.) It followed a litigation hold letter Defendants sent in September 2022. (Kaplan Decl. Supp. Recons., Ex. A, Dkt. 180-1.) Los Angeles County served its objections to the subpoena on Defendants on February 28, 2023. (Kaplan Decl. Supp. Recons., Ex. C, at 56, Dkt. 180-1; *see also* Motion to Enforce Subpoenas to Non-Party Los Angeles County at ¶ 7, *Smartmatic USA Corp. v. Lindell*, No. 2:23-MC-130 (MWF/PD) (C.D. Cal. Sept. 20, 2023) (Dkt. No. 1-1). After the first meet and confer between defense counsel and Los Angeles County's attorneys on May 15, 2023,

defense counsel understood that "certain requested information would be produced by Los Angeles County and that Los Angeles County had also authorized Smartmatic to produce to Defendants a substantial amount of information also sought by the subpoena," leading defense counsel to believe "that Los Angeles County would be producing certain information shortly after the meet-and-confer, along with a summary of the burden and cost of compliance with the subpoena." Motion to Enforce Subpoena at ¶ 8–9, *Smartmatic USA Corp.*, No. 2:23-MC-130.

William O'Brien, an attorney for Los Angeles County, and defense counsel held a second meet and confer call about the subpoena on June 14, 2023. *Id.* at ¶ 13; (Pls.' Resp. in Opp'n Mot. Recons. Ex. 1, Decl. of William O'Brien at ¶ 2, Dkt. No. 193-2.) According to defense counsel, Mr. O'Brien said "that the county no longer possessed the escrowed version of the source code" and that it was "deleted sometime in 2022." (Kaplan Decl. Supp. Recons. ¶ 10, Dkt. No. 180.) Mr. O'Brien reportedly said that he was not sure if Los Angeles County had an exemplar of the BMD used in the 2020 election. Motion to Enforce Subpoena ¶ 13, *Smartmatic USA Corp.*, No. 2:23-MC-130.

In a declaration filed with the Court, Mr. O'Brien contested the accuracy of defense counsel's recollection. (O'Brien Decl. ¶ 2.) He said:

> I did tell Mr. Kaplan that the master reference version of the source code for the software installed in VSAP ballot marking devices (BMDs) used in Los Angeles County for the 2020 general election was not in possession of the County but had been placed in escrow. However, I do not recall telling Mr. Kaplan that that source code had been "deleted" from escrow, and I am confident that I did not tell him that.

(*Id.* ¶ 3.) Defense counsel reported continuing to attempt further meet and confers with Los Angeles County's attorneys, but that they eventually stopped responding to emails or taking his calls. Motion to Enforce Subpoena ¶ 14–15, *Smartmatic USA Corp.*, No. 2:23-MC-130.

### c. *The Court Denies Defendants' Motion to Compel and Defendants File a Motion for Reconsideration.*

On August 1, 2023, the Court denied Defendants' motion to compel as to the three RFPs at issue. After reviewing the legal standards, the Court reasoned:

> Smartmatic has credibly asserted that it does not have the materials Defendants seek. Given the sensitivity of source code and the numerous alternative means, including a Rule 45 subpoena, available to Defendants for obtaining information about the Smartmatic products used on Election Day 2020, the Court finds that the burden of producing the source code outweighs its potential relevance and thus will not require that Smartmatic provide it. Further, the Court cannot order a party to produce that which they do not possess. The Court will not issue the order Defendants ask for, including an order that Smartmatic retrieve the source code from Los Angeles County. Defendants' motion is denied as to RFPs 1, 8, and 10.

(Order First Mot. Compel 19.)

Six days later, Defendants filed a letter requesting permission to file a motion for partial reconsideration under Local Rule 7.1(j). (Letter to Magistrate Judge, Dkt. No. 165.) Defendants described their proposed motion as "narrowly-tailored," seeking reconsideration of "only one aspect of the Court's Order," namely its decision not to compel Smartmatic to produce information sought in RFP 8. (*Id.* at 1.) RFP 8 sought "[t]he source code for any Smartmatic Product, Hardware, Software, or systems used in the 2020 Presidential Election in any county, precinct, election site, or polling location in the State of California." (Eslick Decl., Ex A, at 11.) Defendants recounted the issues they had been

having with Los Angeles County, reported that the attorney for the County said the source code in escrow was gone, and stated that they did not know if the County had an exemplar of the BMDs used in the 2020 election, but if it did not, that would "also be new information for the Court to consider." (*Id.* at 2, 2 n.1.) Now, Defendants represented that "the only available copies of the source code reside" in the account Smartmatic can access. (*Id.* at 2.) Arguing that this constituted a "substantial change in the factual basis" on which the Court's original order was based, Defendants sought leave to file a motion to reconsider so the Court could consider "an order compelling production of the source code." (*Id.*)

The Court granted Defendants leave to file their motion on August 18 and Defendants filed the motion a week later. (Text-Only Order, Dkt. 169.) Then, at 11:35 pm on September 1, 2023—the Friday before the Labor Day weekend—Defendants filed their Memorandum supporting their motion (Dkt. No. 179), together with a declaration from defense counsel (Dkt. No. 180.) On the Tuesday following the long weekend, Smartmatic filed a motion for extension of time so they could confer with attorneys for Los Angeles County. (Pls.' Mot. to Extend Opp'n Deadline, Dkt. No. 183; Pls.' Mem. in Supp. of Mot.to Extend Time ¶ 6, Dkt. No. 184.) The Court granted the extension (Dkt. No. 189) over the objections of Defendants, who were concerned that any delay would mean their expert would have even less time to inspect the source code before submitting his or her report, presuming Defendants succeeded on the motion. (Text-Only Order, Dkt. No. 189; Defs.' Mem. in Opp'n to Mot. for Extension of Time 2–3, Dkt. No. 188.) Smartmatic filed its memorandum in opposition to the motion for reconsideration with a declaration from the attorney for Los Angeles County stating that he did not recall saying that the source code

13

had been deleted from the escrow account. (O'Brien Decl. ¶ 2.) Smartmatic also submitted a declaration from a County employee stating that the "source code for the VSAP Voting System 2.2 BMD software used for the November 2020 election presently remains in the escrow." (Bhullar Decl. ¶ 3.)

       *d. Defendants Bring a Subpoena Enforcement Action in Los Angeles County.*

Five days after Smartmatic filed its response to the Motion to Reconsider, and two days before the hearing on the motion, Defendants filed a subpoena enforcement action against Los Angeles County in the U.S. District Court for the Central District of California. *Smartmatic USA Corp. v. Lindell*, No. 2:23-MC-130 (AB/BFM) (C.D. Cal. *dismissed* Jan. 5, 2024). In their motion seeking enforcement, Defendants accused Smartmatic of coordinating with Los Angeles County to hide relevant discovery from them. Motion  to Enforce Subpoena ¶ 21, *Smartmatic USA Corp.*, No. 2:23-MC-130. Los Angeles County filed a response in opposition, arguing that the discovery was irrelevant and too sensitive to disclose to an actor hostile to voting systems; if Mr. Lindell improperly disclosed the sensitive information after receiving it in discovery, Los Angeles County would be required to replace its entire election infrastructure in the leadup to the 2024 election. Memorandum in Opposition to Motion to Enforce Subpoenas 8, 22–23, *Smartmatic USA Corp. v. Lindell*, No. 2:23-MC-130 (C.D. Cal. Oct. 6, 2023) (Dkt. No. 11). Defendants ultimately withdrew the subpoena enforcement motion in January 2024, after retaining new counsel in this case. Notice of Withdrawal, *Smartmatic USA Corp. v. Lindell*, No. 2:20-MC-130 (C.D. Cal. Jan. 5, 2024) (Dkt. No. 21); *see also* Joint Status Report. *Smartmatic USA Corp. v. Lindell*, No. 2:20-MC-130 (C.D. Cal. Dec. 5, 2023) (Dkt. No. 19).

### B. ANALYSIS

Motions to reconsider seek to modify a court's previous orders under Federal Rule of Civil Procedure 60(b)(2). *Nelson v. Am. Home Assurance Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012) (noting that such motions are not explicitly contemplated in the Federal Rules, but are permitted); *Anthony v. Runyon*, 76 F.3d 210, 215 (8th Cir. 1996). The motions "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir.1987)). A movant cannot raise facts or legal arguments that they could have raised while the motion whose reconsideration is sought was pending. *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015); *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019); *Anthony*, 76 F.3d at 215 ("We have held, however, that for a movant to succeed on the ground of newly discovered evidence, that evidence must be truly new, in the sense that it was previously unavailable . . . ."). Motions to reconsider are granted "only in exceptional circumstances requiring extraordinary relief." *Nelson*, 702 F.3d at 1043.

#### i. *The Motion for Reconsideration is Not Properly Before the Court Because Defendants Did Not Timely Present New Information.*

Defendants claim that on June 14, 2023 Los Angeles County told defense counsel that the source code in escrow was gone and the County's attorneys were unable to confirm whether they had an exemplar BMD used in the 2020 election. (Defs.' Mem. in Supp. of Mot. for Partial Recons. 2, 4–5, Dkt. No. 179.) Defendants were fearful that they would

have no other way to access a version of the source code used in the 2020 election except through Smartmatic. (*Id.* at 2–3, 6.) They proposed that the sensitive information they sought could be protected using an attorney's eyes only designation, an inspection protocol, and a separate protective order. (*Id.* at 9, 11–12.) But Smartmatic convincingly argues that this showing is too little, too late.

To begin with the substance, the attorney who reportedly told Mr. Kaplan that the source code had been deleted has sworn that he said no such thing. (O'Brien Decl. ¶ 2.) Further, an affidavit Smartmatic filed showed that the source code was still in escrow and had not been deleted. (Bhullar Decl. ¶ 2–3.) Defense counsel's allegation was wrong. But even if it was correct, it is too late to inject it into the record. Counsel for Defendants reportedly learned of the O'Brien conversation weeks before the Court ruled on the motion. Defendants could have raised their concerns then, but they did not.

Defendants argue that the Court still has discretion to consider the evidence, even if it is not new. (Sept. Tr. 5:3–9.) The Eighth Circuit has cautioned that a motion for reconsideration may not "serve to introduce evidence that the movant could have produced before the district court decided the prior motion." *SPV-LS, LLC*, 912 F.3d at 1111. (8th Cir. 2019) (citing *Julianello*, 791 F.3d at 922). Mindful of this guidance, the Court has not considered the evidence and denies the Motion for Reconsideration based on changed factual circumstances. The fact remains that there are other ways for Defendants to obtain access to the source code that was indisputably used in the election, namely a Rule 45

subpoena to Los Angeles County,[3] but Defendants have abandoned their efforts in this regard. *See* Notice of Withdrawal, *Smartmatic USA Corp. v. Lindell*, No. 2:20-MC-130 (AB/BFMx) (C.D. Cal. Jan. 5, 2024).

### ii.   *The Motion for Reconsideration is Denied Because There Was No Manifest Error of Fact.*

Defendants' argument for granting a motion for reconsideration did not rest only on the alleged obstructiveness of Los Angeles County, but also on other grounds not raised in their papers. (Sept. 22 Tr. 6:21–7:20, 11:8–14; *see generally* Letter to Magistrate Judge 2; Defs.' Mem. Supp. Mot. Recons. 6–12.) At the motions hearing, Defendants' counsel argued that the Court made multiple errors of fact in its order. (Sept. Tr. 5:14–15.) Counsel argued that the Court erred in finding Smartmatic did not have possession, custody, or control of the source code used in the 2020 election or an exemplar of the BMDs used in that election. (Sept. 22 Tr. 6:21–25.) According to Defendants, these errors of fact alone—setting aside the behavior of Los Angeles County—entitled them to seek reconsideration. (*Id.*) Defendants explained how they believed the Court erred, both as to the BMDs and the source code. Both arguments are unpersuasive.

Preliminarily, the Court is mindful that this is a case of extraordinary public interest and importance in which allegations of tampering with voting equipment, or with the

---

[3] Defendants acknowledged that, in hindsight, they should have brought an enforcement action against the County when it refused to respond to their meet and confer requests. (Tr. of Sept. 22 Hr'g ("Sept. Tr."), 29:7–15.) They explained that they did not file a motion to enforce the subpoena against the County because they believed that the undersigned said this discovery dispute would be decided in Minnesota, not in California. (Sept. Tr. 14:14–15:1.)

source code used to operate that equipment, are central. Ironically, Defendants, upon learning that the source code that was used in the 2020 elections was not available, responded by seeking next-best alternatives: the version of the source code Smartmatic sent to SLI Compliance and the trusted build file to which Smartmatic has access. The Court declines Defendants' offer to compel "good enough" alternatives. Smartmatic cannot access the code in escrow, nor would it know of any changes to it after it left its hands. In a case of this seriousness, such alternatives will not suffice either to definitively answer the allegations about election integrity made by Defendants or to quell public speculation. For these reasons the Court, in the analysis that follows, is being extraordinarily punctilious about exactly what exactly the RFPs request, and what, exactly, will be responsive to those RFPs.

> a.  *There Was No Manifest Error of Fact Regarding the Source Code.*

Defendants argued that there were two copies of the source code: one held in escrow, accessible only to Los Angeles County, and the other "held by an independent testing authority" to which only Smartmatic had access. (Sept. 22 Tr. 15:3–11.) Because they said Smartmatic had access to the copy of the source code held by the independent testing authority, Defendants argued that the Court's finding that Smartmatic did not have possession, custody, or control over the source code was in error. (*Id.* 15:3–17.)

Smartmatic replied:

> We have access to a database that's owned and maintained by Los Angeles County,[4] and in that database we can access the source code that we prepared and sent to the independent testing authority and the trusted build file that the

---

[4] Not an independent testing authority, as Defendants claimed.

> independent testing authority created. LA County—after that process
> happened, by law LA County was required to put those—that data in escrow.
> Smartmatic could not access the escrow. And then Los Angeles County
> accessed the escrow and put that data in the machines.

(*Id.* at 19:6–17.) When pressed by this Court about whether it could produce a copy of the

source code if ordered to do so, Smartmatic replied:

> [W]e've always said if the Court ordered us to go into that database and get
> the code that was not put in the machines and that was—ultimately it was put
> in escrow by LA County, we are willing to do it. We can't do it unless we
> have a court order, but if the Court were to order us to do it, we would do it.

Smartmatic hastened to add that it could not confirm that this source code was the same

source code that was eventually installed on BMDs for the 2020 election because Los

Angeles County—not Smartmatic—installed the source code onto the BMDs. (*Id.* at 21:3–

17.) When pressed by the Court as to who had access to the source code which was

indisputably used for the election, Smartmatic replied that Los Angeles County had access

to the escrowed version of the source code that was loaded onto the BMDs. (*Id.* 22:9–

23:10.)

Defendants' RFP 8 asked for "[t]he source code for any Smartmatic Product,

Hardware, Software, or systems used in the 2020 Presidential Election in any county,

precinct, election site, or polling location in the State of California." (Order Mot. Compel

15.) In its previous order, this Court found credible Smartmatic's representation that it did

not have access to the source code in escrow (and subsequently loaded onto the BMDs) but

only the source code that it sent to the independent testing authority. (*Id.* at 19.) As a result,

it denied Defendants' requests for production of the source code sent to the testing

authority. (*Id.*) Defendants have not produced any proof that the Court was "manifestly"

wrong in finding that Smartmatic only had access to source code that was not, in fact, loaded onto BMDs on election day. Therefore, Defendants have not shown that the Court made a manifest error of fact as to the source code.

        b. *There Was No Manifest Error of Fact Regarding the Ballot Marking Devices.*

Defendants stated that Smartmatic has a license to use and sell the machines it made for Los Angeles County in the 2020 election and alleged that Smartmatic was marketing those machines to other jurisdictions, suggesting they did have an exemplar BMD and chose not to disclose it. (Sept. 22 Tr. 9:18–11:7.) Counsel for Defendants acknowledged at oral argument that Defendants knew that Smartmatic had the right to license the technology and that it did not rely on this knowledge when it sought to compel the disclosure of the technology in the original motion to compel which it is now asking the Court to reconsider.

| | |
|---|---|
| THE COURT: | [W]ould you agree that most of the things you've been talking about, maybe all of them, for the last five minutes is all stuff that you have had but that you have not put in your motion papers here, either in the motion to compel or in the motion for reconsideration? |
| COUNSEL: | I agree, Your Honor. I would point out that in the motion to compel we took [P]laintiffs' statements more at face value than perhaps we should have when they said they do not have a machine that was used in the 2020 election versus having an exemplar machine used in the 2020 election. |

(*Id.* 11:8–19.)

Besides that, Defendants pointed out that Smartmatic's failure to furnish an exemplar BMD resulted in prejudice to Defendants because Smartmatic's expert studied a BMD in preparing their initial expert report while Defendants' expert had no such

opportunity. (*Id.* at 16:1–12, 25:10–26:3.) An exemplar meant to Defendants a BMD that was "similar, substantively identical" to the BMDs used in the 2020 election; defense counsel reported that they did not expect Smartmatic to produce a BMD used on election day at all. (*Id.* at 10:5–17.)

Smartmatic replied that Defendants were now seeking more than what they requested in their original RFPs, which Smartmatic read to be a "request . . . for a machine that was actually used in the election." (*Id.* 21:21–23.) Those machines were in the custody of Los Angeles County, Smartmatic said. (*Id.* 22:15–18.) The machine Smartmatic's expert inspected was not responsive to the RFPs, it argued, because it was not used in the 2020 election; it did not run on the same source code, or even the same version of the source code as the machines in the 2020 election did. (*Id.* 21:24–22:8.) Nevertheless, the machine was available for Defendants' expert to inspect for their rebuttal report. (*Id.*)

Defendants' argument that the existence of a licensing agreement compels the conclusion that Smartmatic retains an exemplar voting machine is unpersuasive because Defendants could have relied on this argument in their original motion and chose not to so. Defendants "probably" had the contract that included the licensing language to which they now point in "February or March" of 2023. (*Id.* 8:13–19.) The First Motion to Compel was argued in late February. (Hr'g Mins., Dkt. No. 101.) Defendants admittedly did not seek to rely on that contract in their arguments (or seek supplemental briefing to raise the argument) until oral argument on their motion to reconsider. A motion to reconsider is not the way for a party to assert legal theories it could have shared before, but chose not to. *Julianello*, 791 F.3d at 923. The Court did not make a "manifest" error of fact in finding

that Smartmatic did not have possession of an exemplar BMD because it was not timely presented with Defendants' argument to the contrary.

That said, Defendants could not have raised the fact that Smartmatic provided a BMD for its expert to examine before the Court ruled on the First Motion to Compel. Expert reports were due the same day as oral argument on the motion for reconsideration. (Second Am. Scheduling Order 2, Dkt. No. 168.) Upon hearing that Smartmatic would be referencing its expert's examination of a BMD, Defendants' counsel objected that this is just the kind of evidence that it was seeking in its original motion to compel; if the BMD that Smartmatic's examiner inspected was relevant enough to the claims in this case, how could it not be considered an exemplar BMD for purposes of discovery? (Sept. 22 Tr. 25:10–26:12.) This BMD, which was reportedly too sensitive to share with counsel as part of fact discovery, was now coming in during expert discovery, when Defendants' experts would have only 30 days to submit a rebuttal expert report. (*Id*.) Counsel urged the Court not to countenance gamesmanship that would allow Smartmatic to both shield its products from discovery and then use the same products to prosecute their case against Defendants.

When pressed by the Court about why the BMD was relevant to the expert's report but was not responsive to RFP 1's request for an exemplar, Smartmatic's counsel argued that its relevance "is a point for cross-examination." (*Id.* at 31:18–23.) That is true, but beside the point. The question is only whether Smartmatic is correct that this BMD was not an "exemplar" of a product used in Los Angeles County in 2020; if it is, Smartmatic should have disclosed it (and can have its expert examine it), but if it is not, it is still acceptable for Smartmatic to reference it in its expert report, understanding that

Defendants' expert will have the opportunity to inspect it when writing their rebuttal report. Smartmatic's provision of this BMD to its expert does not bear on the question whether this BMD is an exemplar of a machine used in the 2020 election in Los Angeles County.

Defendants did not define "exemplar" in their RFPs, so the Court must turn to the ordinary usage of the term in evaluating whether the BMD the expert looked at was an exemplar BMD. (*See* Eslick Decl. Ex A.) An exemplar is "an ideal example" of something, or at least a "typical example" or "standard specimen" of that thing. *Exemplar*, Black's Law Dictionary (11th ed. 2019); *Exemplar*, Merriam-Webster Unabridged, https://unabridged.merriam-webster.com/unabridged/exemplar (last visited Apr. 10, 2024) (defining exemplar as "one that serves as a model or example" like "an ideal model" or "a typical or standard specimen"); *Exemplar*, Oxford Dictionaries, https://premium.oxforddictionaries.com/definition/english/exemplar (last visited Apr. 6, 2024); *see also Bobrick Washroom Equip., Inc. v. Scranton Prod., Inc.*, No. 3:14-CV-853, 2023 WL 5054671, at *6 (M.D. Pa. Aug. 8, 2023) ("'[E]xemplar' is defined as 'one that serves as a model or example.'" (citing Merriam-Webster)). The Court agrees with Smartmatic that an ideal example or a standard specimen of a "Smartmatic Product used by any county, precinct, election site, or polling location in the State of California to administer the 2020 Presidential Election" would be a BMD that was used in the election (or at least was designed to be used in that election and was maintained in the same condition as it was in 2020). A BMD that is running a software that was not even in existence during the time of the 2020 election is not an exemplar.

The fact that Smartmatic's expert inspected a BMD as part of their expert report does not, by itself, compel the conclusion that Smartmatic withheld responsive technology from Defendants. The Court's decision that Smartmatic did not have possession, custody, or control of responsive materials was not in error and the Court declines to reconsider it. Whether the Smartmatic expert report at issue will be allowed to be part of Smartmatic's case in chief is not before the Court, and if Defendants are aggrieved that the Smartmatic's expert will base their opinion on a BMD that is, arguably, not like the ones used in the 2020 election, that is a matter that can be raised by an appropriate motion at the appropriate time. If Defendants' expert requires more time to study the BMD for their expert report, counsel can make a motion for that relief.

## II. MOTION TO COMPEL

After filing their Motion to Reconsider, Defendants filed a Third Motion to Compel[5] Discovery (Dkt. No. 211). Civil litigants may discover nonprivileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Court determines what is relevant by looking to the elements of a cause of action and the elements of any applicable defenses. The causes of action here are defamation and violation of the Minnesota Deceptive Trade Practices Act. (Am. Compl. ¶¶ 366–87.) Since federal subject matter jurisdiction in this case is premised on diversity of citizenship, the Court applies Minnesota

---

[5] The Motion also contained a request to amend the scheduling order, which is addressed below, with Smartmatic's Motion for an Extension of Time to Complete Discovery After the Fact Discovery Deadline. (Dkt. No. 205.)

substantive law. *See Shady Grove Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Smartmatic can prove defamation if it shows Defendants made a statement to another that was false and which "tended to harm [Smartmatic's] reputation and to lower [it] in the estimation of the community." *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410 (Minn. 1994). To be liable for defaming a public figure like Smartmatic, Defendants must have made the false statement knowingly or with reckless disregard for its truth or falsity. (Order on Motion to Dismiss 6, Dkt. No. 52 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964))). While accusations of crime and statements that tend to injure a plaintiff in its business are presumptively defamatory, if they are made on a topic of public concern like the validity of a presidential election, Smartmatic must prove the statements actually harmed their reputation. (*Id.* (citing *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 879 (Minn. 2019)). Defendants can prevail if they prove the statements they made were true. *ImageTrend, Inc. v. Locality Media, Inc.*, 2022 WL 17128009, at *8 (D. Minn. Nov. 22, 2022) (citing *Mckee v. Laurion*, 825 N.W.2d 725, 729–30 (Minn. 2013); *Tholen v. Assist Am., Inc.*, 528 F. Supp. 3d 1017, 1024 (D. Minn. 2021). Smartmatic can prevail on its claim under the Minnesota Deceptive Trade Practices Act if it shows that Defendants "disparage[d]" Smartmatic's "goods, services, or business . . . by false or misleading representation[s] of fact" in the course of Defendants' business or occupation. Minn. Stat. § 325D.44 subdiv. 1(8) (2022); *McClure v. Am. Family Ins. Co.*, 223 F.3d 845, 854–55 (8th Cir. 2000).

The parties can discover relevant information to prove or disprove these elements, but only if they are "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In assessing proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has not produced the requested information, the requesting party may move for an order compelling the responding party's production, as Defendants have done here. *Id.* Fed. R. Civ. P. 26(b)(2)(c), 37. Defendants must make a threshold showing that what they seek is relevant to the case. *Sherman v. Sheffield Fin.*, *LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021) (citing *Hofer v. Mack Trucks*, *Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). If the Defendants meet their initial burden of showing that the requested discovery is relevant, then the burden shifts to Smartmatic to show either that it is not relevant or that it is unduly burdensome. *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 10223625, at *20 (D. Minn. June 17, 2020); *St. Paul Reinsurance Co., Ltd. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

Defendants' Motion to Compel has three components. First, Defendants want to learn more about Smartmatic's work with Los Angeles County through several RFPs (Nos. 3, 4, 9, 14, 20, and 21). (Defs.' Mem. in Supp. Third Mot. to Compel 27, Dkt. No. 212.) Second, Defendants want to ascertain the alleged damages to Smartmatic through interrogatories (Nos. 31–34, 36). (*Id.* at 30.) Lastly, Defendants want responses to three

miscellaneous interrogatories (Nos. 13 (regarding Smartmatic's corporate structure), 16 (regarding the identities of Smartmatic's customers), and 25 (regarding which of the defamatory statements were republications)). (*Id.* at 34.)

### A. Documents Withheld Based on Confidentiality Agreement with Los Angeles County

Defendants propounded RFPs[6] 3, 4, 9, 14, 20, and 21 to explore Smartmatic's "relationship with Los Angeles County," and they argue that Smartmatic's responses did not make it clear that Smartmatic was withholding responsive documents. (Defs.' Mem. Supp. Third Mot. Compel 27–28.) When a party objects to an RFP, it must "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). As the advisory committee notes to the 2015 amendment observe, it is enough to state "the limits that have controlled the search for responsive and relevant materials." Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note to 2015 amendment. A log or detailed description of all withheld material is not required. *Id.*

Defendants argue that Smartmatic failed to state that it was withholding documents responsive to this group of requests in their initial responses, and then surprised Defendants with the news that it had not, in fact, disclosed all responsive documents. (Defs.' Mem. Supp. Third Mot. Compel 19, 28–29; Tr. of Oct. 11, 2023 Mots. Hr'g 22:4–23:5, Dkt. No.

---

[6] One part of Defendants' brief suggests that RFP 35 is also at issue. (Defs.' Mem. Supp. Third Mot. Compel 27 ("At issue specifically are documents pertaining to Plaintiffs' relationship with Los Angeles County. Document Request Nos. 3, 4, 9, 14, 20 , 21 and 35 each encompass those records.")). This suggestion does not appear elsewhere in the brief or in Defendants' proposed order (Dkt. No. 216), so the Court concludes it is no longer at issue.

260.) Defendants said they did not know until July 2023 that Smartmatic was withholding more than a  million pages. (Oct. 11 Tr. , 25:17–23.) Defendants acknowledge that Los Angeles County has now allowed Smartmatic to share all nonprivileged documents that were produced by Smartmatic in a related case against Fox News, but they still demand all documents encompassed by RFPs 3, 4, 9, 14, 20, and 21. (*Id.* at 26:12–18). They claim these documents are "patently discoverable because they bear directly on the truthfulness of the statements that are the very crux of Plaintiffs' complaint." (Defs.' Mem. Supp. Third Mot. Compel, 29.) At the hearing, Defendants added that they are relevant to substantiate Mr. Lindell's claims about the design vulnerabilities of  BMDs and argued Smartmatic had not made any showing of why it would be unduly burdensome to produce the documents. (Oct. 11 Tr. 24:12–23, 44:5–13.)

In response, Smartmatic said that Defendants failed to identify any relevant information that it had not produced as to RFPs 3, 4, 9, and 12. (Pls.' Mem. in Opp'n to Third Mot. Compel 7–8, Dkt. No. 223.) At the hearing, Smartmatic's counsel also urged the Court to study the specific RFPs at issue because several of them "are just incredibly, incredibly broad and burdensome." (Oct. 11 Tr. 39:10–14.) Smartmatic strongly disagreed that it had hidden the ball from Defendants regarding RFPs 14 and 20. It pointed to its general objections in its responses, which state that Smartmatic will not produce any documents that are the subject of confidentiality obligations. (Oct. 11 Tr. 33:6–11; Letter to Magistrate Judge 1, Dkt. No. 237.) If that was not notice enough, Smartmatic said it unequivocally stated it was withholding documents because of the confidentiality agreement with Los Angeles County in a March 20, 2023 letter—well before July, as

opposing counsel claimed[7]—and Defendants did nothing for four months, so their present motion was untimely. (Pls.' Mem. Opp'n Third Mot. Compel 5–6; Oct. 11 Tr. 33:12–34:15.) Smartmatic also argued that the new disclosures from the *Fox* litigation should satisfy Defendants' desire for documents related to RFPs 14 and 20. (*Id.* at 7.) Defendants reminded the Court that documents relating to its relationship with Los Angeles County "encompass[] documents containing highly sensitive election security information" which, if mishandled, could present a grave threat to the nation's election security. (*Id.* at 8–9.)

### i. *Defendants' Motion to Compel is Timely as to RFPs 9, 14, 20, and 21, but Untimely as to RFPs 3 and 4.*

Smartmatic's claim that Defendants' motion to compel is untimely is correct as to some RFPs but not others. The determining factor is when Defendants were put on notice that Smartmatic was withholding documents. If Defendants knew that Smartmatic had documents they wanted, but did nothing until just over three weeks before discovery closed, that militates against granting the motion. *Stai v. Deshane*, 2016 WL 11031224 at *5 (D. Minn. Jan. 22, 2016).

Smartmatic said that it would produce some documents as to RFPs 14 and 20, specifically "responsive documents sufficient to show the truth or falsity of the allegations" in one paragraph of the Complaint and documents "sent by Smartmatic or received by Smartmatic from any governmental entity, agency or organization concerning the certification of Smartmatic technology" in the 2020 election. (Decl. of Abraham Kaplan in

---

[7] Counsel for Defendants admitted that he knew documents were being withheld after the March letter, but says he could not know what they were. (Oct. 11 Tr. 42:10–19.) He said the letter did not explain what kinds of documents were being withheld. (*Id.*)

Supp. of Third Mot. Compel, Ex. K at 69, 72, Dkt. No. 215-2.) The only place where there is any suggestion that Smartmatic might be withholding material responsive to these RFPs was in its general objections section, which it purported to incorporate in each response by reference.[8] (*Id.* at 58, 69, 72.) But "[r]outine, '[b]oilerplate objections, without more specific explanations for any refusal to provide information, are not consistent with the Federal Rules of Civil Procedure.'" *Stan Koch & Sons Trucking*, 2020 WL 2111349, at *3 (second alteration in original) (quoting *Lubrication Techs., Inc. v. Lee's Oil Serv., LLC*, No. 11-CV-2226 (DSD/LIB), 2012 WL 1633259, at *5 n.5 (D. Minn. Apr. 10, 2012)). It was not reasonable for Smartmatic to assume that its answers to the RFPs, read together with a portion of ineffective boilerplate, constituted notice of their withholding information. An attorney reading those responses would conclude that they could expect those documents Smartmatic promised in its response, *not* those documents promised minus those that triggered a confidentiality obligation.

Smartmatic did notify Defendants on March 20, 2023 that it was withholding documents based on confidentiality agreements (Decl. Jamie Ward in Opp'n to Third Mot. Compel, Ex. K, Dkt. No. 224-11.) Defendants met and conferred with Smartmatic about their concerns in late July and early August, approximately four months later. (Ward Decl.

---

[8] The objection read:

> Smartmatic objects to the Requests to the extent that they seek information of third parties protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. An agreement to produce documents does not constitute an agreement to produce documents protected from disclosure under confidentiality, non-disclosure, or other agreements with third parties.

(Kaplan Decl., Ex. K at 58.)

Opp'n Third Mot. ¶ 20, Dkt. No. 224; Kaplan Decl. Supp. Third Mot. Compel, Ex. W at 96, 98, Dkt. No. 215-3.) By then the parties had cross motions to compel on other issues before this Court (Dkt. Nos. 140 and 146), Defendants were asking this Court to reconsider a previous order (Dkt. No. 176), and discovery appeared to be ending. Smartmatic would have the Court find that bringing this motion at that time was undue delay, but the Court will not do so. If Smartmatic had made clear that it was withholding documents earlier, this issue could have been resolved long before the inevitable crush at the close of fact discovery. Neither of the cases Smartmatic cites involved a situation where the responding party failed to accurately explain that it was withholding material. *See Stai*, 2016 WL 11031224; *Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529 (D. Minn. 2008). The motion is timely as to RFPs 14 and 20.

In its responses to RFPs 9 and 21, Smartmatic did raise an objection that the requests sought information that was protected by confidentiality agreements, but it did not say it was in fact withholding documents based on those agreements. (Kaplan Decl. Supp. Third Mot. Compel, Ex. K, at 66, 73.) Smartmatic said it would "produce responsive documents regarding ballotmarking devices used in Los Angeles County in the 2020 Presidential Election," subject to its objection (Kaplan Decl., Ex. K. 66.) It also agreed to "produce any documents concerning any actual or suspected cybersecurity breach of the technology developed by Smartmatic for use in the 2020 Presidential Election," subject to its objection. (*Id.* at 73.) While these RFPs present a closer question as to whether Defendants should have been suspicious of Smartmatic's disclosures, the Court finds that it was not sufficiently clear that Smartmatic was withholding documents responsive to these RFPs

based on those objections. Attaching a label of "subject to and without waiving any objections" to a discovery response does not make it clear if the responding party is whithholding information. *See, e.g.*, *Kychner v. Cont'l Res. Inc.*, 2021 WL 221110 at *4 (D.N.D. June 1, 2021). The motion is timely as to RFPs 9 and 21.

In contrast, Defendants could have moved to compel responses to RFP three[9] and four[10] after receiving them in December 2022. Communications with other election technology providers (RFP 3) or documents about those providers' role in the 2020 election or this case (RFP 4) have nothing to do with Smartmatic's confidentiality agreement with Los Angeles County. (*See* Kaplan Decl. Supp. Third Mot. Compel, Ex. K at 62–63.) Defendants waited more than nine months—and two rounds of briefing on motions to compel—to challenge the responses to these RFPs. (*See generally* Defs.' Mem. in Supp.

---

[9] RFP 3 requested "[w]ritten communications with any entity listed in Paragraph 51 of the Complaint from January 1, 2005, to the present." (Kaplan Decl. Supp. Third Mot. Compel, Ex. J at 50[9], Dkt. No. 215-2.) Paragraph 51 of the original Complaint listed several election technology companies besides Smartmatic that served other jurisdictions in the 2020 election, specifically: Dominion, Election Systems & Software ("ES&S"), Unisyn Voting Systems, ClearBallot Group, Hart InterCivic, Sequoia Voting Systems, Premier Election Solutions, Populex, and Vote-PAD. (Compl. ¶ 51, Dkt. No. 1.) Smartmatic objected that the RFP requested irrelevant information, sought to violate attorney-client privilege and work product protections, and covered too broad a timeframe. (Kaplan Decl. Supp. Third Mot. Compel, Ex. K at 62, Dkt. No. 215-2.) Smartmatic nonetheless promised to produce communications with Dominion and ES&S from January 2020 to date. (*Id.*)

[10] RFP 4 requested documents referencing the election technology companies mentioned in RFP 3 "that also relate to the 2020 U.S. Election, this litigation, or any allegation in the Complaint." (Kaplan Decl., Ex. J at 50.) Smartmatic objected based on irrelevance, privilege, and timeframe. (Kaplan Decl., Ex. K at 63.) It promised only to disclose documents related to Dominion or ES&S that concerned either the 2020 election or this case. (*Id.*)

of First Mot. Compel, Dkt. No. 75 (regarding RFPs 1, 8, and 10); Defs.' Mem. in Supp. of Second Mot. Compel, Dkt. No. 149 (regarding initial disclosures, and 13 separate interrogatories).) The Motion is untimely as to RFPs 3 and 4. *See Stai*, 2016 WL 11031224, at *4–5 (explaining that courts may deny motions to compel which are filed before the non-dispositive motion deadline as untimely). In any event, Defendants made no argument—either in their papers or at the motions hearing—as to why these two RFPs must be supplemented. (*See* Defs.' Mem. Supp. Third Mot. Compel 17, 27.)

### ii. *Smartmatic Must Supplement its Disclosures for RFP 14, but Not RFPs 9, 20, and 21.*

The Court must now evaluate the relevance and proportionality of the four timely-challenged RFPs (9, 14, 20, and 21), considering the importance of the issues they touch on, the importance of the discovery in resolving those issues, the amount at stake, the parties' access to the information, their resources, and whether the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### a. *Smartmatic Need Not Supplement its Disclosures for RFP 9.*

RFP 9 requested "[a]ll user manuals, user guides, and owner or user documentation provided by Smartmatic" to its customers (buyers, lessors, and users) that used its products in the 2020 election. (Kaplan Decl. Supp. Third Mot. Compel, Ex. J at 51.) In addition to objecting that disclosing this information could violate "confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to," Smartmatic objected on grounds of irrelevance, privilege, overbreadth (as to timeframe and as to requiring *all* such documents), and vagueness (as to what constitutes a manual or user guide, etc.).

(Kaplan Decl. Supp. Third Mot. Compel, Ex. K at 66.) It agreed to produce "responsive documents regarding ballotmarking devices used in Los Angeles County in the 2020 Presidential Election." (*Id.*)

This RFP requests information relevant to how Smartmatic's products are designed to be used, and Smartmatic has agreed to produce responsive documents regarding its BMDs used in Los Angeles County in 2020. (Kaplan Decl. Supp. Third Mot. Compel, Ex. L at 88.) Smartmatic represents that it is not withholding documents based on its confidentiality agreement with Los Angeles County. (Pls.' Mem. Opp'n Third Mot. Compel 7 ("Smartmatic has never indicated that it was withholding responsive information for these requests [including RFP 9] due to its confidentiality agreement with Los Angeles County.").) Defendants have not pointed the Court to evidence that Smartmatic has failed to disclose material responsive to this RFP. Because there is no evidence that responsive information is being withheld, Smartmatic need not supplement RFP 9.

### b. *Smartmatic Must Supplement its Disclosures for RFP 14.*

RFP 14 requested "[a]ll documents that relate to the truth or falsity of every allegation in Paragraph 134 of the Complaint." (Kaplan Decl. Supp. Third Mot. Compel, Ex. J at 51.) The referenced paragraph purports to contrast Mr. Lindell's statements about Smartmatic with "verifiable facts" about the company, including that its products did not subvert the election, were not hacked by China, did not connect to the internet, were only used in Los Angeles County, and were not shared with Dominion or ES&S. (Compl. ¶ 134; Am. Compl. ¶ 142.)

Smartmatic based its objections to RFP 14 on privilege, overbreadth (as to timeframe, and as to requesting "all" documents), and vagueness (as to the meaning of "relate to the truth or falsity"). (Kaplan Decl. Supp. Third Mot. Compel, Ex. K at 69.) It further noted that the requests seek documents it does not have or that are available elsewhere. (*Id.*) That said, Smartmatic agreed to produce "responsive documents sufficient to show the truth or falsity of the allegations of Complaint Paragraph 134." (*Id.*)

More than three months after providing this response, counsel for Smartmatic wrote a letter to counsel for Defendants saying Los Angeles County had not consented to sharing all responsive documents, and that only a fraction would be produced. (Ward Decl. Opp'n Third Mot. Compel, Ex. K at 2–3.) Specifically, the letter listed categories of documents Los Angeles County agreed Smartmatic *could* share, followed with: "Los Angeles County has not authorized the production of any other non-public documents reflecting the County's confidential data." (*Id.* at 4.) Smartmatic supplemented its response to RFP 14 more than eight months later to state that it could "only disclose documents reflecting LA County's confidential information" with a Court order or Los Angeles County's written consent. (*See* Kaplan Decl. Supp. Third Mot. Compel, Ex. L at 91, Dkt. No. 215-2.) Los Angeles County had not consented to share documents "related to the design, functionality, security, or source code, of Smartmatic's election technology, hardware, and software used in the 2020 election." (*Id.* at 93.)

This request seeks relevant documents supporting or negating Smartmatic's position on Mr. Lindell's allegedly defamatory statements. Smartmatic agreed to produce responsive documents after a reasonable search but later said that its confidentiality

obligations prevented it from sharing documents besides those it had produced. Smartmatic argues that the disclosure of the *Fox* documents should dispel any concern about responsive documents being withheld and that improper disclosure of Los Angeles County's confidential information could gravely jeopardize the safety of the County's election infrastructure. (Pls.' Mem. Opp'n Third Mot. Compel 7, 8–9.) But Smartmatic did not describe how the documents recently produced from the *Fox* litigation bore on RFP 14 but simply produced a 16-page list of Boolean search terms used to identify the listed documents in the first place. (*See* Ward Decl. Opp'n Third Mot. Compel, Ex. L, Dkt. No. 224-12.)

Proportionality requires that Smartmatic supplement RFP 14. RFP 14 seeks the evidence on which Smartmatic will rely in persuading a jury that Mr. Lindell's statements about it were false or misleading, as it must do to succeed on its claims. *See Rouse*, 520 N.W.2d at 410 ("The elements of defamation require the plaintiff to prove that a statement was false . . . ."); *McClure v. Am. Fam. Mut. Ins. Co.*, 223 F.3d 845, 855 (8th Cir. 2000) ("The burden is upon a plaintiff to prove the falsity of the allegedly deceptive statements" (quoting *United Wild Rice, Inc., v. Nelson*, 313 N.W.2d 628, 635 (Minn. 1982))). This evidence is of central—if not primary—importance to the case against Defendants, and their asserted defense that their statements were true, which weighs heavily in favor of disclosure. The large amount in controversy also weighs in favor of robust disclosure: Smartmatic alleges that Mr. Lindell's statements were a "substantial cause" for a loss in value that it claims is measured in the billions of dollars, and the company seeks actual, consequential, special, and punitive damages, just to name a few remedies. (Am. Compl. ¶

36

368.) Defendants cannot access the confidential documents responsive to RFP 14 except through disclosure.

Smartmatic does not argue that disclosing the information under court order would be unduly burdensome compared to the potential benefit or would not be valuable information in deciding whether Defendants are lying about Smartmatic and its products. Instead, it argues that the confidential documents contain "highly sensitive election security information," and that Los Angeles County should have the opportunity to be heard on this issue. (Pls.' Mem. Opp'n Third Mot. Compel. 7–8.) No affidavit from a Los Angeles County official accompanied the briefing in this case and, as Defendants noted at the hearing, Los Angeles County has not sought to involve itself here. (Oct. 11 Tr. 27:2–8.) Other than by speculating, which the Court will not do, the Court cannot consider any claims of sensitivity by Los Angeles County when none were put forward in briefing.

Smartmatic must supplement its disclosures to RFP 14. All supplementations shall be marked as "attorney's eyes only" and will be available only to the outside counsel of both parties. Outside counsel for both parties are ordered to meet and confer within one week of the date of this order and to submit to the Court a proposed inspection protocol that maximizes the security of the information transferred within two weeks. The protocol will take into account the fact that Defendants now have a subset of the requested documents courtesy of the *Fox* litigation. The protocol should be tailored to find only those documents which have not yet been produced and to ensure the security of those documents.

     *c. Smartmatic Need Not Supplement RFP 20.*

RFP 20 requested all documents about communications "with any U.S. federal or state authority about the certification, testing, approval, or security of any Smartmatic Product" used in the 2020 election. (Kaplan Decl. Supp. Third Mot. Compel, Ex. J at 52.) Smartmatic protested on the grounds of irrelevance, privilege and work product doctrine, vagueness, overbreadth (as to timeframe and to the terms "all," "certification," "testing," "approval," and "security"), and on its confidentiality obligations to third parties. It said it would only produce documents "sent by Smartmatic or received by Smartmatic from any governmental entity, agency or organization concerning the certification of Smartmatic technology" in the 2020 election. (Kaplan Decl. Supp. Third Mot. Compel, Ex. K at 72.) Smartmatic supplemented this response the same way it supplemented its answer to RFP 14. (*See* Kaplan Decl., Ex. L at 96–98.) It explained that Los Angeles County only allowed Smartmatic to produce a subset of responsive documents, ranging from Smartmatic's bid for the project, to complaints about the services Smartmatic provided, to project status reports, and to technical data packages, which did not include source code. (*Id.* at 96–97.)

     Defendants do not appear to quibble with the narrowed production Smartmatic promises to offer, but with its refusal to "produce all communications with Los Angeles County or other government entities . . . relating to the certification of the ballot marking device developed by Smartmatic for use in the 2020 Presidential Election" based on this confidentiality agreement with Los Angeles County. (*See* Kaplan Decl., Ex. L at 97–98.)

     The certification of the BMDs is not a central issue in this case. Throughout these proceedings, it has been undisputed that Smartmatic's BMDs were certified for use by the

California Secretary of State. Smartmatic points to its certification as publicly available evidence that its systems met California's stringent standards for voting technology in the 2020 election. (Am. Compl. ¶¶ 36, 61, 240, 271, 276.) While the large amount in controversy and the fact that Defendants cannot access Smartmatic's communications with Los Angeles County regarding the certification weigh in favor of disclosure, the importance of the communications to the issues in the case is minimal and the risk of improper disclosure of potentially highly sensitive information about Los Angeles County's election technology greatly outweighs the limited benefit it could provide. The Court will not require Smartmatic to supplement its response to RFP 20.

> ### d. *Smartmatic Need Not Supplement RFP 21.*

RFP 21 sought all documents about any suspected or actual cybersecurity breach "related to Smartmatic, Smartmatic Products, or any manufacturer of any component of a Smartmatic Product." (Kaplan Decl. Supp. Third Mot. Compel, Ex. J at 52.) It also sought documents about suspected or actual cybersecurity breaches related to "any election-related product manufactured, distributed, sold or licensed by any entity listed inn [sic] Paragraph 51 of the Complaint."[11] Smartmatic objected based on irrelevance, privilege, overbreadth (as to the use of "all" and the timeframe), and its confidentiality obligations. (Kaplan Decl. Supp. Mot. Compel, Ex. L at 98.) Smartmatic agreed to produce responsive documents related to its products.

---

[11] Again, those companies are: Dominion, Election Systems & Software ("ES&S"), Unisyn Voting Systems, ClearBallot Group, Hart InterCivic, Sequoia Voting Systems, Premier Election Solutions, Populex, and Vote-PAD. (Compl. ¶ 51.)

This RFP requests relevant information because Mr. Lindell claims that Smartmatic's technology was hacked; this RFP probes what Smartmatic knew about cybersecurity breaches in its company, its products, or in the products of other election technology companies. Smartmatic agreed to produce responsive documents related to its products (i.e. not other companies' products). (*Id.*) But Defendants do not show that Smartmatic was incorrect in limiting its response in this way, nor do they show that Smartmatic has not produced the documents it promised. Like RFP 9, it is bundled up in the dispute about RFPs 14 and 20. Therefore, Smartmatic need not supplement RFP 21.

### B. Damages Interrogatories

The next component of Defendants' Third Motion to Compel is their request for more specific discovery on Smartmatic's damages. Besides attorneys' fees and costs, Smartmatic's operative complaint seeks actual, consequential, special, and punitive damages. (Am. Compl. ¶ 388.) Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires parties to disclose "a computation of each category of damages" in their initial disclosures to the other side and to "make available for inspection and copying . . . documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Id.* In its order on Defendants' Second Motion to Compel, the Court ordered Smartmatic to "provide an estimate of its claimed economic and punitive damages to Defendants," consistent with its obligation to complete initial disclosures. (Order on Second Mot. Compel 14–15, Dkt. No. 239.) It further directed Smartmatic to update that calculation at the close of discovery. (*Id.*).

At issue in this motion are several disputed interrogatories regarding damages, including Interrogatories 20, 31–34, and 36.

### i.   *Smartmatic Must Supplement Interrogatory 20, but Not Appendix A.*

Interrogatory 20, which was the subject of a previous motion to compel (Dkt. No. 146), reads:

> Provide an itemized list of all damages that You allege the Defendants have caused You, identifying for each item of damages the amount and all material facts tending to show that You suffered these damages. If You claim loss of profits for any item of damages, your answer must also identify all persons and jurisdictions whom You allege would have purchased Smartmatic Products but did not do so as a result of any act by Defendants, the dates that you allege these persons or jurisdictions would have purchased Smartmatic Products, and the act(s) by Defendants that you allege caused these persons or jurisdictions not to purchase Smartmatic Products.

(Kaplan Decl. Supp. Third Mot. Compel, Ex. B at 23–24, Dkt. No. 215-1.) Initially, Smartmatic objected, stated that its damages included "lost sales, revenues, profits, and damage to its brand name, business value, reputation, and goodwill," and promised to produce responsive documents on these damages in the future. (Kaplan Decl. Supp. Third Mot. Compel, Ex. C at 46–47, Dkt. No. 215-1.) Smartmatic supplemented this answer twice. (Kaplan Decl. Supp. Third Mot. Compel, Ex. E at 101–05, Dkt. No. 215-1.).) In its first supplementation, Smartmatic provided a list of 75 jurisdictions where "it believes electoral management bodies may not do business with Smartmatic due to the Defamatory Statements,[12] or which have expressed concerns about doing business with Smartmatic or regarding the Defamatory Statements." (*Id.*)

---

[12] "Defamatory Statements" was defined in Smartmatic's First Set of Interrogatories. (Kaplan Decl. Supp. Third Mot. Compel, Ex. F at 118, Dkt. No. 215-1.) The term means

In its second supplementation, Smartmatic added that it incurred "expenses for security, cybersecurity, employee retention, public relations, cost of capital, legal expenses, and other items" because of "defamatory statements about Smartmatic," and that the "enterprise" value of its businesses had fallen from $3 billion to $400 million. (*Id.*) It provided supplemental lists of 21 jurisdictions that it believes "will not do business with Smartmatic as a result of defamatory statements," 33 jurisdictions where its business prospects have been harmed, and 58 jurisdictions where officials have expressed concern about Smartmatic "as a result of defamatory statements." (*Id.* at 102–05.) Smartmatic attached Appendix A, a spreadsheet of more than 600 lines of data on Smartmatic's customers that describes potential business opportunities with the customers, the "initial probability" that those opportunities would materialize, the (lower) probability that they would materialize in February 2021, and how much profit Smartmatic expects to lose due to the lower chance of success on the deals.[13] (Kaplan Decl. Ex. E at 105, Dkt. No. 215-1; Kaplan Decl., Ex. F at 27, Dkt. No. 217.)

---

"all statements the Complaint alleges are defamatory, including without limitation the statements identified in Paragraphs 76–78, 80–108, 110–113, 114–115, 117–127, 130–133, 137, 143, 150, 158, 165, 170, and 176 of the Complaint." (Decl. of Michael Bloom in Supp. Mot. Compel, Ex. 3, at ¶ 9, Dkt. No. 81-3.)

[13] The most recent version of Appendix A before the Court is a spreadsheet dated September 27, 2023, which is marked as "highly confidential," and "attorney's eyes only." (Kaplan Decl. Supp. Third Mot. Compel, Ex. F at 27.) Because of the sensitive nature of the data, it is filed under seal and the Court will only make general reference to it. Suffice it to say that Smartmatic is not seeking damages based on all the business opportunities listed in Appendix A, but it is seeking damages for many of those opportunities. (*Id.* at 12.)

Defendants find Appendix A "useless." (Defs.' Mem. Supp. 3d Mot. Compel 12, 29.) They critique Appendix A for not showing how, when, and by whom the original profitability calculations were done, not listing who was consulted from the various jurisdictions listed, for not updating the probability of success on the deals since February 2021,[14] and for not detailing how the lost profits were attributable to Defendants' behavior specifically. (*Id.* at 32–33.) To address these alleged ambiguities, Defendants served Interrogatories 31–34 and 36. (*Id.*; Kaplan Decl., Ex. H at 22–23, Dkt. No. 215-2.)

Smartmatic argues that it has "fully and adequately provided Defendants with all available damages information they seek," through interrogatory responses and document production. (Pls.' Mem. Opp'n Third Mot. Compel 9–10.) It highlighted Appendix A as an example, saying it included specific information from Smartmatic's customer relationship management system, and reported that it had disclosed a copy of Appendix A to Defendants which contained a 30(b)(6) deponent's notes. (*Id.* at 11.) It went on to say that Smartmatic had produced, among other things, audited financial statements, financial reports, contracts, bids, bid valuations, customer relationship data, and files from Smartmatic executives and sales personnel. (*Id.* at 11–12.) If any other evidence was needed, they encouraged Defendants to depose Appendix A's authors. (*Id.* at 12.)

At the hearing, counsel for Defendants argued that Smartmatic "list[s] every damage [in] the book," but expects Defendants to "hunt through six million pages of document discovery to figure out" what Smartmatic will ask the jury to award them. (Oct. 11 Tr.

---

[14] Smartmatic filed its defamation case against Fox News on February 4, 2021. Complaint, *Smartmatic USA Corp. v. Fox Corp.*, No. 151136/2021 (N.Y. Sup. Ct. filed Feb. 4, 2021).

29:5–21.) To Defendants' point, counsel for Smartmatic acknowledged that the "vast majority" of its six million pages of documents disclosed to date relate to damages, from documents about "Smartmatic's financial condition, its value, its business relationships" to its "current and potential future customers." (*Id.* at 37:22–38:4.)

In the Court's Order on Smartmatic's Second Motion to Compel, which was under advisement while this motion was briefed and argued, the Court ordered Smartmatic to supplement its answers to Interrogatory 20 with a "list of jurisdictions that will not or may not do business with Smartmatic and supplement[ing] it before the close of all discovery with responsive information from expert discovery." (Order Second Mot. Compel 16–17.) Therefore, the questions now before the Court are (1) whether Appendix A complies with the Court's previous order, and (2) whether Defendants are entitled to additional discovery in response to Interrogatory 20.

Appendix A, as written, complies with the Court's order. It lists every business opportunity for which Smartmatic seeks damages, the country the opportunity existed in, the year the opportunity did (or would have) manifested, the estimated dollar value of the opportunity, the likelihood that the deal would have succeeded, the likelihood that the deal could succeed in February 2021, Smartmatic's estimated lost profit, the name of a corporate representative who could testify as to the particulars of that opportunity and, in some instances, notes from the corporate representative's deposition preparation. Smartmatic is reminded of its continuing obligation to supplement under Rule 26(e)(1)(A), as well as this Court's order that it specifically supplement its list at the close of all discovery. *See* Fed. R. Civ. P. 26(e)(1)(B).

But Defendants are entitled to more. The damages Smartmatic claims it has suffered are relevant to its claims against Defendants. Defendants should not be expected to sift through six million pages in the hope of discerning Smartmatic's damages theory. Rule 26 allows Defendants to discover its "adversary's theory or measure of damages, its calculations under that theory, and expert opinions on the subject of damages." *Kutz v. NGI Cap., Inc.*, No. 22-CV-1623 (NEB/ECW), 2023 WL 3790766, at *6 (D. Minn. June 2, 2023) (quoting *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 593 (D. Minn. 1986)); *Marco Techs., LLC v. Midkiff*, No. 19-CV-2323 (PJS/LIB), 2020 WL 13558312, at *12 (D. Minn. June 4, 2020). Not only are Defendants entitled to current damages estimates, they are entitled to know how those estimates are calculated. *Marco Techs., LLC*, 2020 WL 13558312, at *13. They are entitled to this information "well prior to the discovery deadline," lest they be "unfairly prejudice[d]" in trial preparation. *Henne v. Great River Reg'l Libr.*, No. 19-CV-2758 (WMW/LIB), 2021 WL 6804560, at *18 (D. Minn. Jan. 4, 2021) (quoting *Marvin Lumber & Cedar Co.*, 11 F.R.D. at 593). The Court understands that complying with this obligation requires some educated guesswork. *Gacek v. Owens & Minor Distribution, Inc.*, No. 09-CV-3202 (PAM/LIB), 2010 WL 11534503, at *3 (D. Minn. Oct. 21, 2010), *aff'd*, 2010 WL 4286330 (D. Minn. Oct. 25, 2010) ("To the extent that Plaintiff intends to request a specific amount of damages of the jury at trial, he must make a good faith effort to quantify those damages, however imprecise those calculations may be.") However, if Smartmatic does not provide sufficient information regarding its damages in advance of trial, it risks not being able to introduce that evidence at all. *Id.*

Smartmatic, for its part, has not said that supplementing its disclosures to include an itemized list of damages besides those catalogued in Appendix A (or since disclosed through supplemental initial disclosures) would be an undue burden or expense. *See Abhe & Svoboda, Inc. v. Hedley*, No. 15-CV-1952 (WMW/BRT), 2016 WL 11509914, at *3 n.5 (D. Minn. Mar. 15, 2016) ("In order to resist a motion to compel, the party resisting discovery based on undue burden or expense must show that the discovery request would actually impose an undue burden or expense.") The amount in controversy in this case is great, only Smartmatic can provide its theory of damages in advance of trial, and it has not shown the Court that there is any impediment to doing so. Therefore, the Court will order Smartmatic to itemize its damages—to the extent it has not done so—and support that itemization with evidence or citations to discovery already disclosed.

### ii.    *Smartmatic Must Supplement Interrogatories 31–34.*

Interrogatory 31 requests that Defendants "identify every person who participated in the calculation of the 'Initial Probability' in Appendix A, as well as all information they relied upon in calculating the 'Initial Probability,'" for every one of the business opportunities listed. (Kaplan Decl. Supp. Third Mot. Comp, Ex. H at 22.) Smartmatic objected on the grounds of privilege, work product doctrine, vagueness, overbreadth, and burden. (Kaplan Decl. Supp. Third Mot. Compel Ex. I at 32, Dkt. No. 215-2.) It said Mr. Mugica and Mr. Piñate made the determinations at the direction of counsel based on their knowledge, the knowledge of others at Smartmatic, discussions with others knowledgeable about the jurisdictions, information in Smartmatic's client relationship management system, and litigation documents. (Kaplan Decl. Supp. Third Mot. Compel, Ex. I at 32–

33.) It added that discussions about what information Mr. Mugica and Mr. Piñate relied on was better suited for a deposition. (*Id.*) Defendants have noticed depositions for both authors, and Mr. Mugica has submitted to a deposition, but Defendants say getting specific information in a deposition is inefficient because they want to know who helped make the calculations, as well as the  "(a) specific information, (b) documents, (c) people, and (d) databases" that the person making the calculations considered. (Oct. 11 Tr. 30:19–31:3, 38:6–14; Defs.' Mem. Supp. Third Mot. Compel 14.) Defendants retorted that it is "ridiculous" to prepare a deponent for that kind of specific questioning. (Oct. 11 Tr. 31:11–18.) Defendants reiterated that they wanted interrogatory responses "that are reviewed by a corporation, signed, and submitted to the other side" and not "emotional deposition responses." (*Id.* at 46:2–4.)

Interrogatory 32 asks for the method Smartmatic used to calculate the "Initial Probability" for all opportunities listed in Appendix A. (Kaplan Decl. Supp. Third Mot. Compel, Ex. H at 22.) Smartmatic again objected based on privilege, work product, vagueness (as to "method") and overbreadth, referring Defendants again to the availability of depositions to reveal the information. (Kaplan Decl. Supp. Third Mot. Compel, Ex. 1, at 33.) Interrogatory 33 sought the identity of "every person who participated in the calculation of the 'Probability as of February 2021,' as well as all information they relied upon in calculating" that probability. (Kaplan Decl. Supp. Third Mot. Compel, Ex. H at 22–23.) Smartmatic objected on the same grounds, saying Mr. Mugica and Mr. Piñate made those conclusions. (Kaplan Decl. Supp. Third Mot. Compel, Ex. I at 34.) Interrogatory 34 tells Smartmatic to "identify the method" they used to calculate the "Probability as of

February 2021" for all business opportunities listed in Appendix A. (Kaplan Decl. Supp. Third Mot. Compel, Ex. H at 23.) Again, Smartmatic objected on the same grounds and restated the sources of information Mr. Mugica and Mr. Piñate relied upon. (Kaplan Decl. Supp. Third Mot. Compel, Ex. I at 35.)

The Court agrees that Defendants are entitled to a calculation of Smartmatic's damages. The Court further agrees that the interrogatories request relevant information, and at a level of detail which cannot be obtained in a deposition. Proportionality requires that the Court balance those truths with the breadth of the request itself, which seeks line-by-line supplementation to an already extensive spreadsheet. Damages are an important issue in this litigation, and how Defendants computed the likelihood of each deal being successful is important because it is a piece of Smartmatic's larger computation of damages. While the accuracy of the probability assessment for any one of the deals represented in Appendix A may not, by itself, impact Smartmatic's overall computation of damages, together those assessments underlie Smartmatic's damages. Smartmatic employees have the information this interrogatory seeks in this high-value case between two corporations (plus a CEO). Smartmatic has not provided any concrete evidence that complying with the interrogatories would be an undue burden.

Smartmatic must supplement its response to Interrogatories 31–34. It will describe how it calculated the "initial probability" and "probability as of February 2021," as well as the identities of all who participated in the calculations and the information they relied upon in making the calculations. However, this order applies only to the entries in Exhibit A for which Smartmatic seeks damages. It need not supplement information for the

48

remaining entries, and it need not disclose privileged information, though it must update its privilege log.

### iii.    *Smartmatic Need Not Supplement Interrogatory 36.*

Interrogatory 36 requests that Smartmatic describe all their "previous efforts to win business" in the countries where they allege they will lose profit in Appendix A, "including the outcome of each effort." (Kaplan Decl. Supp. Third Mot. Compel, Ex. H at 23.) Smartmatic objected on the familiar grounds of privilege, work product doctrine , and undue burden. (Kaplan Decl., Ex. I at 37.) It argued the burden of production was undue because, under defamation law's "widespread dissemination" exception, Smartmatic did not need to prove that their loss was attributable to Defendants. (*Id.* at 35–36 (citing Restatement (Second) of Torts § 633 (1977); *id.* cmt. (h)). Even if that doctrine did not apply, Smartmatic argued that the most it would need to prove is that Defendants' statements were a "substantial factor" in losing a business opportunity. (*Id.* at 36 (citing *Longbehn v. Schoenrock*, 727 N.W.2d 153, 160 (Minn. Ct. App. 2007).) Smartmatic also noted that it had previously produced documents on this issue and that Defendants could address it in a deposition. (*Id.*) Defendants retort that Smartmatic cannot claim a loss in a particular jurisdiction, then say they never had to state damages in the first place; they want to know "what contracts, bids, [and] services Smartmatic has submitted for in that jurisdiction, from January 1, 2015 – January 31, 2021, and the result of each submission." (Defs.' Mem. Supp. Third Mot. Compel 16.)

This interrogatory goes too far afield. While Smartmatic's history in the markets in which it claims to have been harmed is relevant to the likelihood of success in making sales

in the future, and thus the amount of damages they can reasonably seek, presenting that history is not proportional to the needs of this case. The supplementary information from Interrogatories 31–34 will provide a fulsome basis for the probability calculations supporting Smartmatic's damages claims. Defendants may probe those calculations by studying the supporting documents and deposing those who made the calculations. It is true that the business information sought by Interrogatory 36 is uniquely within Smartmatic's control and that the parties are well-resourced. Nevertheless, the burden of producing six years of business records for the sole purpose of challenging numerous damages calculations which will—following this order—be well documented, outweighs the likely usefulness of the information. Smartmatic need not supplement its response to this interrogatory.

### C. Miscellaneous Interrogatories

Defendants request supplements to three interrogatories which are not easily categorized: Interrogatories 13, 16, and 25.

### i. *Smartmatic Must Supplement Interrogatory 13.*

Interrogatory 13 requests complete disclosure of Smartmatic's corporate structure, including the legal name of every affiliated entity, its place of organization, its principal place of business, and its relationship to Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation Limited. (Kaplan Decl., Ex. B at 21–22.) Smartmatic objected, citing privilege, work product, and relevance concerns. (Kaplan Decl., Ex. C at 41.) Further, it said the lack of a timeframe for the requested information rendered the interrogatory overbroad and imposed an undue burden. (*Id.*) It agreed to

"produce organizational charts sufficient to show the corporate structure of Smartmatic from January 1, 2016 to the present." (*Id.*) Defendants say that they do not know if Smartmatic has even produced these documents, because Smartmatic has not identified any documents that would respond to this interrogatory. (Defs.' Mem. Supp. Third Mot. Compel 34.) Smartmatic says it did identify the documents in May 2023 (Pls.' Mem. Opp'n Third Mot. Compel 15), but the cited exhibit in their brief is not a letter identifying the productions. (Ward Decl., Ex. B at 2, Dkt. No. 224-11.) Instead, it is a letter from defense counsel to Smartmatic's counsel following up on a previously sent deficiency letter. (*Id.*) It makes no mention of Interrogatory 13.

Defendants categorize Interrogatory 13 as one aimed at understanding Smartmatic's alleged damages. (Defs.' Mem. 7.) But they argue that it is relevant to Mr. Lindell's allegedly defamatory claims that "Smartmatic, ES&S, and Dominion are connected" and that Smartmatic had a "connection" with Venezuela starting in 2001. (*Id.* at 8.) They argue that Smartmatic is "unlikely" to have created so many affiliate entities during its 24-year existence that responding in full would be unduly burdensome. (*Id.*) Smartmatic, for its part, does not appear to dispute the relevance of the interrogatory, but simply the burden of responding in full.

The Court finds that Interrogatory 13 seeks some information relevant to  the defamatory statements alleged in this case. The operative Complaint reprints multiple statements from Mr. Lindell saying that Dominion, ES&S, and Smartmatic are related companies (*E.g.* Am. Compl. ¶¶ 126, 145 ("Dominion, Smartmatic, and ES&S, they're all cousins"), 151.), along with allegations that Smartmatic conducted nefarious operations in

Venezuela in the early 2000s (*E.g.* Am. Compl. ¶¶ 151,  178, 184 ("Venezuela is where the machine started. Smartmatic started in Venezuela. . . . They're built as a tool to take countries.")).   Smartmatic   emphatically   denies   these   claims.   (*E.g.   id.*   at   ¶¶ 142 ("Smartmatic was not in a business relationship with Dominion or ES&S during the 2020 U.S. election. Dominion, ES&S and Smartmatic are competitors."), 153–155, 188, 281– 87, 353.) A list of Smartmatic's affiliated entities could prove that Smartmatic is independent from its competitors, and would show whether it has any organizations in Venezuela. But based on the operative Complaint, the relevant dates would be from 2001– 2004 (the years Mr. Lindell said that Smartmatic was in Venezuela) and from 2016 onward (the four years leading up to the 2020 election, and from the election to the present). (Am. Compl. ¶¶ 178, 158.) This information is in Smartmatic's control. While the information it seeks is not highly probative of the truthfulness of Mr. Lindell's statements regarding Smartmatic, its competitors, or Venezuela, it is relevant, and Smartmatic has not explained exactly how providing this information would be an undue burden, or how that burden would outweigh the potential benefits of production. Thus, Smartmatic must supplement its Response to Interrogatory 13 by (a) producing information from 2001–2004 and (b) identifying, by bates number or similar means, which of its previous productions provided responsive information from 2016 onward.

### ii.   *Smartmatic Need Not Supplement Interrogatory 16.*

Interrogatory 16 asks Smartmatic to "[i]dentify every person or entity to whom Smartmatic's election technology, hardware, and software was licensed, sold, leased, or loaned for use in any election held anywhere in the world between 2010 and the present."

(Kaplan Decl. Supp. Third Mot. Compel, Ex. B at 22 (internal quotations omitted).) Smartmatic objected on the grounds of relevance, privilege, work product doctrine, overbreadth, and undue burden (as to timeframe), and because it sought information that Smartmatic could not disclose without violating confidentiality agreements with third parties. (Kaplan Decl., Ex. C at 43–44, Dkt. No. 215-1.) Defendants argue that evidence of Smartmatic's business relationships over the last 14 years is relevant to evaluating whether Smartmatic correctly assessed its probability of closing future deals when it made Appendix A. (Defs.' Mem. Supp. Third Mot. Compel 9.) Defendants want to "perform discovery on what jurisdictions Plaintiffs were repeat vendors to, and which jurisdictions they had never did not deal [sic] with prior." (*Id.*)

Contrary to Defendants' claim that Smartmatic "refused to provide any answer," Smartmatic listed 24 jurisdictions that "purchased or contracted to purchase electoral technology or services from Smartmatic from January 1, 2018 to the present." (*Id.* at 34; Kaplan Decl. Supp. Third Mot. Compel, Ex. C, at 43–44.) Smartmatic expressed surprise that this issue even surfaced in motion practice. (Pls.' Mem. Opp'n Third Mot. Compel 14, 15.) Smartmatic recalled that when the parties met and conferred regarding this interrogatory on January 11, 2023, Defendants were satisfied with Smartmatic's explanation that "each of the jurisdictions listed in response to Interrogatory No. 16 has an election management authority or similar entity, and Smartmatic contracted with those entities for its electoral technology or services. (*Id.* (citing Ward Decl. Opp'n Third Mot. Compel, Ex A at 2, Dkt. No. 224-1 (letter memorializing meet and confer discussion and

noting Defendants were satisfied with Smartmatic's clarification on Interrogatory 16 and considered the response sufficient))

The record supports Smartmatic's recollection in this regard, and Defendants did not dispute that record at oral argument. In fact, no one mentioned Interrogatory 16. Smartmatic need not supplement this interrogatory response because it is not clear that the parties met and conferred on Defendants' new objections to it. Even if a meet and confer did occur, the Court would not require Smartmatic to supplement its response for the same reasons that it will not require Smartmatic to supplement its responses to Interrogatory 36 regarding its past business dealings with the jurisdictions listed in Appendix A.

### iii.    *Smartmatic Need Not Supplement Interrogatory 25.*

The last discovery dispute to address is Interrogatory 25, which asks Smartmatic to identify "each and every statement made by Defendants about the 2020 Presidential election that was ***not*** a re-publication" of someone else's statement. (Kaplan Decl., Ex. F at 117.) Defendants argue that if Smartmatic has "any evidence of any allegedly defamatory statements that were not mere re-publications by Lindell, they must disclose them." (Defs.' Mem. 35.) Smartmatic retorts that the requested analysis is irrelevant and asks Smartmatic to "engage in busy work that will have no bearing on any aspect of this case." (Pls.' Mem. Opp'n Third Mot. Compel 15.)

Smartmatic is correct. Defendants have made no showing, either in their papers or at oral argument, that Interrogatory 25 seeks relevant information. Liability attaches when a speaker defames another or when they repeat defamatory statements others have made. *Larson v. Gannett Co., Inc.*, 940 N.W.2d 120, 131, 142 (Minn. 2020) ("[T]he common law

54

republication rule . . . provides that a speaker who knows or should know that a statement is false and defamatory but repeats it nonetheless is equally as liable for the defamation as the original speaker."); *Besett v. Hegg*, 890 F. Supp. 2d 1076, 1091 (D. Minn. 2012) ("Generally, the republication of defamatory words may be the basis of a defamation claim."); *see also* Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 521 (2d ed. 2023) ("Unless the repeater of defamation is a mere conduit, he is also a publisher and subject to liability for his own unprivileged publication."). Because Defendants have not shown the distinction between publications and re-publications has legal significance, the Court finds that Interrogatory 25 requests irrelevant information. Smartmatic need not supplement its response to Interrogatory 25.

## III.    CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Reconsideration (Dkt. No. 176) is **DENIED**.

2. Defendants' Third Motion to Compel (Dkt. No. 211) is **GRANTED IN PART AND DENIED IN PART** as specified above.

    a. The Motion is **GRANTED** as to RFP 14. Any supplements to RFP 14 will be accessible to outside counsel only. Outside counsel will meet and confer on or before April 19, 2024. On or before April 26, 2024, the parties will jointly docket a proposed inspection protocol. If the parties cannot agree on an inspection protocol, Smartmatic will instead submit its proposed inspection protocol—with red-lined suggestions from both parties explaining their disagreements.

    b. The Motion is **GRANTED** as to Interrogatory 20. Smartmatic must itemize its damages—to the extent it has not done so—and support that itemization with evidence or citations to discovery already disclosed.

The Motion is **GRANTED IN PART AND DENIED IN PART** as to Interrogatories 31–34. Smartmatic must supplement Appendix A to describe: (1) how it calculated the "initial probability" for each business opportunity for which it seeks damages; (2) how it calculated the "probability as of February 2021," for those opportunities; (3) the identities of all who made the calculations for (1) and (2); and (4) the information the individuals relied upon in making the calculations. Supplementations are only required for those entries in Exhibit A for which Smartmatic seeks damages.

c. The Motion is **GRANTED** as to Interrogatory 13. Smartmatic will supplement its response by (a) producing responsive information from 2001–2004 and (b) identifying, by bates number or similar means, which of its previous productions provided responsive information from 2016 onward.

d. The Motion is **DENIED** in all other respects.

3. Defendants' Motion to Amend the Second Scheduling Order (Dkt. Nos. 211) is **GRANTED.** The Court finds good cause to amend the scheduling order not based on the arguments of the parties but based instead on the scale and pace of motion practice in the fall of 2023, the withdrawal of Mr. Lindell's prior counsel, and the length of time it has taken the Court to address the remaining motions without neglecting other pending matters. The new scheduling order is below.

4. Smartmatic's for Extension of Time to Complete Fact Discovery (Dkt. No. 205) is **DENIED AS MOOT.** Because the fact discovery deadline has been extended, Smartmatic's motion to take the depositions of Mary Fanning and Conan Hayes after the close of fact discovery is moot.

5. The new scheduling order is below. There will be an audio-only status conference to discuss the progress of discovery on **May 8, 2024 at 2PM CST by Zoom.** The Court will send a zoom link to the parties in advance of the meeting.

## FACT DISCOVERY: DEADLINES AND LIMITATIONS

1. All pre-discovery disclosures required by Rule 26(a)(1) shall be completed on or before October 21, 2022. This deadline has passed. If the parties plan to disclose the documents by a description by category and location of documents, they will exchange copies of the initial disclosure documents on or before October 21, 2022. This deadline has passed.

2.     Fact discovery shall be <u>commenced in time to be completed on or before</u> **June 11, 2024.**

3.     No more than a total of **50 interrogatories**, counted in accordance with Rule 33(a), shall be served by each side. No more than **50 document requests** and **50 requests for admissions** shall be served by each side, except that there is **no limit** on the number of requests for admissions that may be served if those requests for admission seek only to authenticate a document.

4.     No more than **25** fact depositions shall be taken. This total does not include expert depositions but does include organizational depositions taken pursuant to Fed. R. Civ. P. 30(b)(6). An organizational deposition shall count as 1 deposition, irrespective of the number of witnesses designated.

5.     Discovery of Electronically Stored Information and Protective Order.

On or before November 1, 2022, the parties will provide the Court with a proposed Protocol for Discovery of Electronically Stored Information and a Proposed Protective Order. These two documents will be submitted in Word format. Disagreements between the parties on specific terms of the Protocol for Discovery of Electronically Stored Information or the Protective Order will be presented to the Court using the "track changes" feature of Word. The Court will resolve these disagreements after hearing the parties' respective positions at a Zoom conference. The Court has reserved time on **Thursday,** November 3, 2022 at 11:00 AM Central Time for such a Zoom conference should one be needed, and will send Zoom invitations to counsel shortly. These deadlines have passed.

## **EXPERT DISCOVERY: DEADLINES AND LIMITATIONS**

1.     Each side may call up to **8** initial expert witnesses. Disclosure of the identity of expert witnesses under Rule 26(a)(2)(A) and the full disclosures required by Rule 26(a)(2)(B), accompanied by the written report prepared and signed by the expert witness, shall be made as follows:

a.   Initial experts.

i.   The identity of any expert who may testify at trial regarding issues on which the party has the burden of persuasion must be disclosed on or before September 22, 2023.This deadline has passed.

ii.   The initial expert written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before September 22, 2023. This deadline has passed.

    b.  Rebuttal experts.

        i.  The parties stipulate that there shall be no deadline for the identity of any experts who may testify in rebuttal to any initial expert.

       ii.  Any rebuttal expert's written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **June 11, 2024**.

2.    Each side may take one deposition per expert. Expert discovery, including depositions, shall be completed by **July 23, 2024**.

## DEADLINES FOR FILING MOTIONS

1.    All motions which seek to amend the pleadings or to add parties must be filed and served on or before December 30, 2022. This deadline has passed.

2.    Non-dispositive motions and supporting documents which relate to fact discovery or related matters shall be filed and served on or before **June 11, 2024**.

3.    Non-dispositive motions and supporting documents which relate to expert discovery shall be filed and served on or before **July 23, 2024.**

## NON-DISPOSITIVE MOTIONS: GUIDELINES

When possible, the parties should bring discovery disputes to the Court using the Court's process for informal dispute resolution (IDR). One or both parties can contact the Court via phone or email to set a prompt (usually within 2-3 business days) telephone conference to discuss the issues. Two days before the hearing, the parties shall email (not file) the Court either a joint letter setting forth their respective positions or separate letters. If the parties submit separate letters, they must serve a copy on the opposing side unless they have received prior permission from the Court to submit the letters ex parte. Letters should be concise and focus on narrowing the issue in dispute as much as possible. Both sides must agree to use the informal process to resolve discovery disputes. If either side objects to using this process, a formal motion must be filed.

If formal non-dispositive motions are filed, they must comply with the Electronic Case Filing Procedures for the District of Minnesota, with Local Rules 7.1 and 37.1, and be in the form prescribed by Local Rule 37.2. **Judge Docherty prefers not to receive courtesy copies, unless the motions contain or refer to documents that are not filed on ECF, in which case those documents should be emailed to Docherty_chambers@mnd.uscourts.gov.** All non-dispositive motions shall be scheduled for hearing by calling the Judicial Assistant to Magistrate Judge Docherty, at 651-848-1180, prior to filing, except when all parties are in agreement that no hearing is required. Such an agreement shall be expressly set forth in the

notice of motion. Counsel are advised not to notice additional motions for hearing on an already existing hearing date without first contacting the Court for permission to do so.

A "meet and confer" requirement applies to IDR and formal motion practice. Parties must attempt to confer through personal contact (during the COVID pandemic, "personal contact" means by telephone), rather than solely through written correspondence or email. Whether parties raise non-dispositive disputes informally or through traditional motions, the parties must engage in a focused meet and confer process in a sincere effort to resolve or narrow the disagreement.

## DISPOSITIVE MOTIONS: GUIDELINES AND DEADLINES

All dispositive motions shall be filed by the moving party on or before **September 23, 2024.** All dispositive motions shall be scheduled, filed and served in compliance with the Electronic Case Filing procedures for the District of Minnesota and in compliance with Local Rule 7.1. Counsel shall schedule the hearing by emailing the request to Judge Bryan's chambers at: Bryan_chambers@mnd.uscourts.gov.

Judge Bryan does not require paper copies of any filings unless specifically requested. Judge Bryan generally requests courtesy copies when the briefing is extensive and/or are accompanied by voluminous exhibits.

## TRIAL

This case shall be ready for a **jury** trial on **January 23, 2025.** The anticipated length of trial is **20** days.

Date: April 15, 2024

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge