IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>　　　　　　　　　Plaintiffs,<br>v.<br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>　　　　　　　　　Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SHOW CAUSE**

Plaintiffs Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation, Limited (collectively, "Smartmatic") respectfully request that this Court order Defendants Michael J. Lindell and My Pillow, Inc. ("MyPillow") to show cause before the Honorable Judge Jeffrey M. Bryan why they should not be held in contempt for violation of this Court's August 1, 2023 and October 19, 2023 Orders (ECF Nos. 160, 239.)

**INTRODUCTION**

On August 1, 2023, this Court ordered Defendants to respond to several interrogatories for which they had asserted meritless objections. Defendants were required to disclose, among other information, publication details for their defamatory broadcasts.

1

Defendants were also ordered to update their responses and objections to Smartmatic's requests for production to comply with Federal Rule of Civil Procedure 34(b)(2)(C).

On October 19, 2023, this Court further ordered Lindell to produce his personal financial records, reasoning that Lindell's financial status is relevant to Smartmatic's actual malice case.  Specifically, the Court ordered Lindell to produce documents related to his financial condition from 2020 to the present, his ownership interest in any company or entity, documents or communications related to any audit of Lindell by the U.S. Internal Revenue Service ("IRS"), and documents and communications related to any loans received, secured, or negotiated for Lindell or MyPillow.

Smartmatic has raised Defendants' deficiencies to counsel on numerous occasions since November of 2023.  (*See generally*, Declaration of Julie M. Loftus ("Loftus Decl.") ¶¶ 6–10.)  On May 13, 2024, Smartmatic set the hearing date for this motion.  Only after that hearing was set did Defendants make a half-hearted attempt to comply with the Court's orders, yet their responses remained deficient.  On June 4, 2024, Smartmatic informed Defendants that after review of their responses and corresponding production, Defendants still had not complied with the Court's orders.

Nearly eight months have passed since the Court issued its October 19, 2023 Order, yet Defendants have still failed to disclose information they were ordered to provide. Defendants have not identified any reason why they cannot fully comply with the Court's order.  Nor have they agreed to disclose the discovery information by a certain date. Accordingly, Smartmatic was left with no option but to move the Court for an order to show cause why Defendants should not be held in contempt.

## **LEGAL STANDARD**

The Court may hold a party in contempt of court for violating a specific order. Fed. R. Civ. P. 70(a), (e). The contempt authority includes the power to hold a party responsible for violating a subpoena or discovery order. *Henderson v. City of Woodbury*, No. 15-cv-3332, 2016 WL 11020059, at *2 (D. Minn. Nov. 4, 2016), report and recommendation adopted by *Henderson v. City of Woodbury*, No. CV 15-3332 (RHK/FLN), 2016 WL 11020058 (D. Minn. Dec. 1, 2016). When a party is in contempt, the court may impose monetary or carceral sanctions to encourage the contemnor's compliance with the court's order, to compensate the movant for losses sustained, or both. *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 912–13 (D. Minn. 2007).

A moving party will show contempt of court by bringing clear and convincing evidence of the opposing party's violation of the court order. *Allied Med. Training, LLC v. Knowledge2SaveLives L.L.C.*, No. 19-CV-3067 (ECT/KMM), 2020 WL 6269196 at *2 (D. Minn. Oct. 26, 2020). The movant meets its burden to demonstrate contempt when it shows that "(1) a valid order existed, (2) the party had knowledge of the order, and (3) the party disobeyed the order." *United States v. Thornton*, No. 13-mc-87 (SRN/TNL), 2015 WL 1522245, at *2 (D. Minn. Mar. 27, 2015). The movant need not show that the contemnor acted willfully. *Allied Med. Training*, 2020 WL 6269196, at *2.

Once the movant shows the contemnor violated a court order, the burden shifts to the contemnor to show their inability to comply. *Edeh v. Carruthers*, No. CIV. 10-2860 RJK/JSM, 2011 WL 4808194 (D. Minn. Sept. 20, 2011), *report and recommendation adopted sub nom. Edeh v. D. Scott Carruthers Att'ys at L.*, No. CIV. 10-2860 RHK/JSM,

3

2011 WL 4808191 (D. Minn. Oct. 11, 2011). "A mere assertion of present inability is insufficient to avoid a civil contempt finding. Rather, alleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply." *Id*. at *3 (quotation omitted).

Although Magistrate Judges do not have the authority to issue civil contempt orders, they do have authority to "certify the facts to a district judge" and "serve or cause to be served . . . an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged to be in contempt by reason of the facts so certified." 28 U.S.C. §626(e).

## ARGUMENT

The first two elements of Smartmatic's claim that Defendants should be held in contempt are undisputed. The Court's Orders dated August 1, 2023 and October 19, 2023 are valid orders and Defendants had knowledge of these orders. As explained below, Defendants have failed to comply with the Court's orders compelling them to produce responsive financial documents, respond to Smartmatic's interrogatories, and to identify the documents that they have withheld.

**I.   Defendants Should Be Ordered To Produce Documents Regarding Lindell's Financial Condition.**

In order to discover information relevant to actual malice and punitive damages, Smartmatic issued the following requests for production to Lindell:

4

- Request for Production No. 30: Documents sufficient to show LINDELL's financial condition from 2020 to the present, including, but not limited to, annual financial reports and tax returns.

- Request for Production No. 32: Documents and communications relating to any audit of LINDELL by the U.S. Internal Revenue Service from 2020 to the present.

Defendants initially objected to the Requests for Production on relevance grounds, prompting Smartmatic to bring this to the Court's attention in its Second Motion to Compel, filed July 10, 2023 (ECF No. 140.)

On October 19, 2023, the Court granted Smartmatic's motion, compelling Lindell to produce, among other things, documents responsive to Request for Production Nos. 30 and 32. On May 20, 2024, Lindell finally made a production in an attempt to comply with the Court's order. (Loftus Decl. Ex. A, Defendants' Fifth Supplemental Responses to Plaintiffs' Discovery, at 5.) However, as counsel for Smartmatic has discussed with counsel for Defendants, Defendants' responses to these requests for production remain deficient.

In response to Request for Production No. 30, Defendants provided tax returns for the years 2019–2021, but they have produced nothing else. Defendants represented that Lindell's accountant is currently compiling his tax returns for the years 2022 and 2023. (Loftus Decl. Ex. A at 5.) Thus, Defendants admit that they possess responsive information—the documentation provided by Lindell to his accountant in order to complete his 2022 and 2023 taxes—yet they refuse to produce it. As a result, Smartmatic is left without any documentation at all related to Lindell's current financial condition, let alone the amount of documentation sufficient to assess his financial condition, as demanded in

5

Request for Production No. 30. Defendants admit the documents exist, and the Court has ordered Defendants to produce documents responsive to Smartmatic's request. Defendants' refusal to do so violates the Court's October 19 Order.

In response to Request for Production No. 32, Defendants produced a single document—a letter from the IRS notifying Lindell that it has placed a tax lien on property he owns. (Loftus Decl. ¶ 4.) As an initial matter, the document produced does not actually pertain to any audit by the IRS, something that Lindell has publicly represented the agency has launched. *See* Sean O'Driscoll, *Mike Lindell's Problems Just Got Worse*, Newsweek (Oct. 3, 2023), *available at* https://www.newsweek.com/mike-lindell-problems-worse-irs-audit-1831226 ("Pillow salesman Mike Lindell, a supporter of former President Donald Trump, is facing five IRS audits over his employment practices, he has told Steve Bannon's *War Room* podcast."). Thus, Defendants have violated the Court's October 19 Order by refusing to produce any documents related to any audit by the IRS.

But even as to the letter Defendants *did* produce, the document on its face shows that Defendants are withholding responsive documents. The letter from the IRS references a prior letter it sent to Lindell on the topic. (Loftus Decl. ¶ 5.) The letter, which was dated June 2023, further noted that Lindell was to respond within 30 days. (*Id.*) Given that Lindell's response date has long passed, it is highly likely that more responsive documents exist, whether that take the form of a Lindell response to the IRS, an IRS response to

receiving nothing from Lindell, or communications between Lindell and the MyPillow directors and officers—none of which were produced.

## II.     Defendants Should Be Ordered To Produce Data Regarding The Viewership Of Their Defamatory Programs.

To ascertain the reach of Defendants' defamatory statements, Smartmatic served the following Interrogatory:

- Interrogatory No. 15: Identify all metrics You use to quantify the number of individuals who viewed an ACCUSED PROGRAM or DEFAMATORY BROADCAST and provide the corresponding data for each ACCUSED PROGRAM or DEFAMATORY BROADCAST.

Smartmatic argued in its First Motion to Compel that Lindell had stated, for example, that 100 million people watched his defamatory documentary *Absolute Proof*.[1] In response, Defendants represented that "[t]o the extent that Defendants have 'metrics' data, that data is contained in the documents Defendants have produced or will produce." (ECF No. 97, at 18.) Accordingly, the Court stated in its Order: "Because Defendants are voluntarily providing the metrics data in question, the Court denies as moot Smartmatic's motion as to Interrogatory No. 9." (ECF No. 160, at 10.)

Despite their commitment to this Court, Defendants have failed to produce the referenced viewership metrics. In fact, whereas Defendants told the Court that they would

---

[1] As Smartmatic noted in its February 1, 2023 Memorandum in Support of its First Motion to Compel (ECF No. 80, at 27), Lindell stated on Rudy Giuliani's podcast that "100 million people worldwide" had watched *Absolute Proof*, with an "average view time" of 1 hour and 53 minutes, and referencing a specific "site we track" for data related to viewership. *See* CANCEL CULTURE: Return Of The Salem Witch Trials? at 27:13-41, Rudy Giuliani's Common Sense (Feb. 19, 2021), available at https://chartable.com/podcasts/rudy-giulianis-common-sense/episodes/78055994-cancel-culture-return-of-the-salem-witch-trials-rudy-giuliani-and-mike-lindell-ep-113.

7

produce the data, they now claim that they should not have to produce the metrics they told this Court would be forthcoming *in February 2023*:

- **MY PILLOW RESPONSE**: My Pillow did not distribute money to support Mr. Lindell's political statements or activities. My Pillow's answer is complete and final.

- **LINDELL'S RESPONSE**: Mr. Lindell affirms his prior answer. He does not keep records of metrics with respect to viewership.

  During the relevant period, Mr. Lindell's team extracted from Google Analytics video view data but unfortunately, that data did not effectively differentiate between unique viewers and overall website visits. Consequently, the reports generated an artificially high number and did not accurately reflect unique viewer metrics. It is important to note that web visits are not synonymous with video views. From his memory, the metrics Mr. Lindell reviewed often included overall website traffic without isolating specific video interactions.

  Furthermore, the hosting and video streaming platform underwent constant development and experienced numerous changes, including transitions between different hosting providers. These transitions impacted both live streaming and archived video content. Throughout these changes, no historical data specific to unique viewers of the video programs was retained, as the primary focus was on maintaining and improving the streaming service rather than on the long-term retention of viewer-specific data. Thus, due to the limitations of the tools used, the nature of web traffic versus video views, and the extensive changes in our hosting and streaming platforms, unique viewer data was not retained historically. Mr. Lindell's response to this interrogatory is final and complete.

(Loftus Decl. Ex. A.) This Court should not countenance Defendants' gamesmanship. Defendants represented to the Court that they would produce the data requested by Smartmatic. Lindell previously represented that he has access to the data based on his myriad public representations concerning the number of people who viewed his defamatory programs, and prior counsel's commitment to produce it. Lindell further admits that he extracted Google Analytics data in his most recent supplemental response. Accordingly,

Smartmatic requests that this Court certify the facts contained herein and order Defendants to show cause before Judge Bryan why they should not be held in contempt for failing to produce the metrics data they represented they would produce in response to Interrogatory No. 15.

### III. Defendants Refuse To Identify The Documents They Have Withheld Pursuant To Their Objections.

Defendants have also failed to comply with the Court's order compelling them to identify documents that they withheld pursuant to objections. (ECF No. 160, at 15.) In Defendants' responses to Smartmatic's requests for production of documents, they asserted many objections, but they also agreed to produce documents subject to those objections. For example, in Request for Production No. 1, Smartmatic requested that Defendants produce documents and communications concerning Smartmatic, Dominion, and/or the security of voting in the 2020 election. In response, Defendants objected to relevancy, overbreadth, and privilege implications and stated, "[s]ubject to the foregoing, Defendants will produce responsive documents. Discovery continues."

Although "[a]n objection must state whether any responsive materials are being withheld," Fed. R. Civ. P. 34(b)(2), Defendants refused to identify the documents or categories of documents that they would not produce based on their objections. (ECF No. 80 (collecting Defendants' discovery responses and attaching a letter noting that Defendants failed to identify the documents withheld based on their objections).) Accordingly, Smartmatic moved to compel that information, and the Court ordered

Defendants to "supplement their disclosures and modify their supplemental disclosures as necessary until fact discovery closes." (ECF No. 160, at 14.)

Defendants have not complied with the Court's order. With fact discovery closing soon, Smartmatic still does not know which documents Defendants are withholding pursuant to their objections. Accordingly, Smartmatic can neither evaluate the merit of Defendants' objections nor determine whether it should move to compel the documents that Defendants have withheld. Smartmatic therefore requests that this Court certify the facts contained herein and order Defendants to show cause before Judge Bryan why they should not be held in contempt.

## CONCLUSION

For the foregoing reasons, Smartmatic respectfully requests that (1) this Court certify the facts described herein, and (2) Defendants be ordered to show cause before Judge Bryan why they should not be held in contempt for violating this Court's prior discovery order.

Dated: June 7, 2024                                 Respectfully submitted,

/s/ *Julie M. Loftus*

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske
   Minnesota Bar No. 0392348
   WManske@robinskaplan.com
Emily J. Tremblay
   Minnesota Bar No. 0395003
   ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800

    Minneapolis, MN 55402
    Telephone: (612) 349-8500

    J. Erik Connolly (admitted *pro hac vice)*
        EConnolly@beneschlaw.com
    Illinois ARDC No. 6269558
    Nicole E. Wrigley (admitted *pro hac vice)*
        NWrigley@beneschlaw.com
    Illinois ARDC No. 6278749
    Timothy M. Frey (admitted *pro hac vice*)
        TFrey@beneschlaw.com
    Illinois ARDC No. 6303335
    Julie M. Loftus (admitted *pro hac vice*)
        JLoftus@beneschlaw.com
    Illinois ARDC No. 6332174
    **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
    71 South Wacker Drive, Suite 1600
    Chicago, IL 60606
    Telephone: (312) 212-4949

    James R. Bedell (admitted *pro hac vice*)
        JBedell@beneschlaw.com
    Ohio Bar No. 97921
    **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
    127 Public Square, Suite 4900
    Cleveland, OH 44114
    Telephone: (216) 363-4500

    *Attorneys for the Plaintiffs*