# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V. and SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 22-cv-00098-WMW-JFD<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' FIFTH SUPPLEMENTAL
RESPONSES TO PLAINTIFFS' DISCOVERY**

Defendants for their fifth supplemental answers and responses to Plaintiffs' discovery requests, state[1] as follows:

**INTERROGATORY NO. 1:**
Identify every statement about SMARTMATIC that you have published and state the date of the statement and where it was published, including all republications.

**MY PILLOW RESPONSE:** My Pillow did not publish statements concerning Smartmatic. This answer is complete.

**LINDELL RESPONSE:** In its letter dated December 19, 2023, Smartmatic requested all known copies of the subject videos that are within the custody and control of Lindell. Mr. Lindell provides the link below for Smartmatic so that Smartmatic can download those copies:

> *FILE: MCK-SMART-VOL03*
> *https://attorneys.egnyte.com/dl/vuGOrgGL7x*

Other than the previous answers given by Mr. Lindell, Mr. Lindell did not republish his videos. They are and have always been available on his platform. This answer is complete.

**INTERROGATORY NO. 4:**
Identify all sources of information that You used for the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, DEFAMATORY STATEMENTS, or LINDELL

---
[1] In the interest of efficiency and to save time, Mr. Lindell and My Pillow, Inc. have combined their responses where such response would essentially be the same answer.

Page **1** of **8**

APPEARANCES. For documents, list the Persons, including any LINDELL EMPLOYEES or MY PILLOW EMPLOYEES, OTHER NEWS ORGANIZATIONS, and Persons affiliated with You, who reviewed the documents, when he or she received and/or reviewed them, and describe the documents. For Persons interviewed or contacted, list their name, employer, title, and contact information, and describe their interaction with You, including the dates of any interview(s), the Person(s) affiliated with You who interviewed or contacted them, and the information they provided to You. For any other sources, describe the source and the information provided.

> **MY PILLOW RESPONSE:** My Pillow did not make any defamatory statements. My Pillow's prior answer is complete and final.

> **LINDELL RESPONSE:** Mr. Lindell did not make any defamatory statements. To the best of his knowledge, Mr. Lindell has provided the documents that he can recall that he relied on. He reserves the right to supplement this list should he recall additional documents. Mr. Lindell does not have any contact information for individuals he interviewed or the dates he spoke with such people. The interviews would have occurred between November 2020 and through the year 2023. Finally, Mr. Lindell objected to Interrogatory No. 4 as overbroad. Mr. Lindell stands on that objection because many if not all the sources *do not reasonably relate to Smartmatic or its claims in any way whatsoever.*

**INTERROGATORY NOs. 6, 8, and 13:**
6. Identify and describe all compensation, consideration, or non-monetary exchange of value provided by you to any GUESTS from January 1, 2018 to the present. For any monetary exchange, describe the amount, date, and nature of each compensation. For any non-monetary exchange, describe what was exchanged and when.

8. Identify all Persons who sponsored or otherwise provided financing for the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, or the "March for Trump" tour and tour bus referenced in paragraph 76 of the Complaint and state the amount of money that each Person contributed.

13. State the total amount of money expended to investigate, draft, develop, edit, review, report, produce, and publish each ACCUSED PROGRAM or DEFAMATORY BROADCAST.

> **MY PILLOW RESPONSE:** There are no defamatory broadcasts. My Pillow's previous answers are complete and final.

> **LINDELL RESPONSE:** There are no defamatory broadcasts. Lindell's previous answers to these Interrogatories 6, 8 and 13 are complete and final.

**INTERROGATORY NO. 10:**
Identify all instances in which You donated or contributed money to a political candidate, campaign, or cause, including but not limited to DONALDTRUMP, the TRUMP CAMPAIGN, the TRUMP ADMINISTRATION, or the RNC, from January 1, 2016 to the present. Your response should identify the candidate, campaign or cause, the date of the donation or contribution, and the amount of the donation or contribution.

**LINDELL RESPONSE:** Smartmatic was provided with the FEC's website to search those contributions. It could easily have obtained the data in less time than it took to question where it was. Nevertheless, Mr. Lindell provides them here and his answer is complete and final.

*MCK-SMART-VOL02*
*https://attorneys.egnyte.com/dl/PsmqTe16dW*

## INTERROGATORY NO. 14

If you contend that any of the DEFAMATORY STATEMENTS are true, substantially true, accurate, not misleading, and/or not defamatory, describe all facts and identify all documents that You claim support or establish that such statements are true, substantially true, accurate, not misleading, and/or not defamatory.

**MY PILLOW RESPONSE:** My Pillow did not make any defamatory statements and its prior answer is complete and final.

**LINDELL'S RESPONSE:** Mr. Lindell did not make any defamatory statements. Mr. Lindell has already and repeatedly identified, *at a minimum,* the documents and videos that he looked at in forming his conclusions in another interrogatory. Mr. Lindell would describe the majority of facts that he relies on to make statements as being complex and difficult to parse through in a compressed period of time. Indeed, he was compelled to hire experts in order to assist him in understanding them. He used his platforms to start an electronic version of the press to foster discussion about the machines and what they represent. He also conducted a symposium to bring experts together to discuss and engage in reasoned discourse about what happened in the November 2020 election. Over time, some of these opinions may have changed. Most of the facts can also be described as decentralized in that they come from numerous sources and not a single source per se. Mr. Lindell's answer to this interrogatory is complete and final.

## INTERROGATORY NO. 15

Identify all metrics You use to quantify the number of individuals who viewed an ACCUSED PROGRAM or DEFAMATORY BROADCAST and provide the corresponding data for each ACCUSED PROGRAM or DEFAMATORY BROADCAST.

**MY PILLOW RESPONSE:** My Pillow did not distribute money to support Mr. Lindell's political statements or activities. My Pillow's answer is complete and final.

**LINDELL'S RESPONSE:** Mr. Lindell affirms his prior answer. He does not keep records of metrics with respect to viewership.

During the relevant period, Mr. Lindell's team extracted from Google Analytics video view data but unfortunately, that data did not effectively differentiate between unique viewers and overall website visits. Consequently, the reports generated an artificially high number and did not accurately reflect unique viewer metrics. It is important to note that web visits are not synonymous with video views. From his memory, the metrics Mr. Lindell reviewed often included overall website traffic without isolating specific video

interactions.

Furthermore, the hosting and video streaming platform underwent constant development and experienced numerous changes, including transitions between different hosting providers. These transitions impacted both live streaming and archived video content. Throughout these changes, no historical data specific to unique viewers of the video programs was retained, as the primary focus was on maintaining and improving the streaming service rather than on the long-term retention of viewer-specific data. Thus, due to the limitations of the tools used, the nature of web traffic versus video views, and the extensive changes in our hosting and streaming platforms, unique viewer data was not retained historically.

Mr. Lindell's response to this interrogatory is final and complete.

### INTERROGATORY NO. 19 & RFP NOs. 5 and 12.

Identify (1) all MY PILLOW advertisements, product deals, or promotional codes used by MY PILLOW related to the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, LINDELL APPEARANCES, 2020 PRESIDENTIAL ELECTION, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN and (2) the revenue MY PILLOW earned from purchases that arose from each advertisement, product deal, or promotional code.

**MY PILLOW AND LINDELL RESPONSE:** As indicated in a previous supplementation, the promo codes did not contain correctly set forth "the revenue MY PILLOW earned from purchases that arose from each . . . promotional code." The corrected showing what My PILLOW earned from the purchases of each promotional code is linked below. The ad hoc spreadsheet identified as DEF11325172 is hereby replaced with the spreadsheet produced in the below link.

My Pillow's and Mr. Lindell's responses to the interrogatory and request for productions are complete.

*MCK-SMART-VOL02*
*https://attorneys.egnyte.com/dl/PsmqTe16dW*

### INTERROGATORY NOs. 20 and 23.

20. Identify and quantify all MY PILLOW financial resources or other monetary support provided by You for the development, production, or publication of the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, the LINDELL APPEARANCES, the LINDELL WEBSITES, or the "March for Trump" tour and tour bus referenced in paragraph 76 of the COMPLAINT.

23. Identify any instance in which MY PILLOW has loaned money to LINDELL or cosigned an obligation of LINDELL. Your response should state: (a) the date of the loan or instrument; (b) the amount of money at issue; (c) whether there was a written loan agreement, promissory note, or similar document; (d) the date and amount of each payment that MY PILLOW made; (e) the

interest rate, if any; and (f) the balance still owed by MY PILLOW, if any. There is no time limit to this interrogatory.

>   **MY PILLOW and LINDELL'S RESPONSE:** Plaintiffs' cursory review of My Pillow's previous answers to Interrogatory 20 claims that the answers were contradictory. There were no contradictory answers and the previous answers to this interrogatory are final complete.
>
>   In response to Plaintiffs' claim that OANN was paid to air Absolute Proof fourteen times, neither the company or Michael Lindell have any recollection of paying OANN any money and do not have any records to substantiate those payments. If Plaintiffs are "aware" Mr. Lindell and My Pillow paid money, Mr. Lindell requests that Plaintiff provide evidence of their awareness.
>
>   Finally, My Pillow and Mr. Lindell have loaned money back and forth numerous times over the past 20 years. No formal loan documents are created but accounting entries are documented for tax purposes. It is a typical small businesses activity that occurs every day in America.

**SUPPLEMENTAL RFP RESPONSES:**

>   My Pillow and Mr. Lindell remove their objections and are not withholding responsive documents. To the best of their knowledge, their responses are final and complete.

**RFP No. 30:** Documents sufficient to show LINDELL's financial condition from 2020 to the present, including, but not limited to, annual financial reports and tax returns.

>   **LINDELL:** Mr. Lindell has previously provided and provides again, the tax returns that were in his possession. For years 2022 and 2023, those tax returns are still being compiled by the accountant. When they are complete and filed, Mr. Lindell has no issue turning them over because it will show that, contrary to Plaintiffs' assertions, he lost money. This response is final and complete.
>
>   > *MCK-SMART-VOL01*
>   > *https://attorneys.egnyte.com/dl/o9lrdVLTTW*

**RFP No. 31:** Documents sufficient to show LINDELL's ownership interest in any company or entity, including, but not limited to, MY PILLOW, from 2020 to the present.

>   **LINDELL:** See the following link:
>
>   > *MCK-SMART-VOL02*
>   > *https://attorneys.egnyte.com/dl/PsmqTe16dW*

**RFP No. 32:** Documents and communications relating to any audit of LINDELL by the U.S. Internal Revenue Service from 2020 to the present.

>   **LINDELL:** See the following link.

   *MCK-SMART-VOL02*
   *https://attorneys.egnyte.com/dl/PsmqTe16dW*

**RFP No. 33:** Documents and communications relating to any loans received, secured, or negotiated for LINDELL or for MY PILLOW from 2020 to the present.

  **LINDELL:** See the following link.

   *MCK-SMART-VOL02*
   *https://attorneys.egnyte.com/dl/PsmqTe16dW*

## VERIFICATION

I declare under penalties of perjury that I have read the answers to the foregoing supplemental discovery disclosures and believe them to be true and accurate to the best of my knowledge, information, and belief.

Date: 5/20/2024

_____
My Pillow, Inc.
By: Michael J. Lindell, CEO

Date: 5/20/2024

_____
Michael J. Lindell, Individually

| | |
|---|---|
| Dated: May 20, 2024 | **MCSWEENEY, CYNKAR & KACHOUROFF, PLLC** |

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff* (Bar No. 44216)
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

ATTORNEY FOR MY PILLOW, INC. AND MICHAEL LINDELL

*Admitted *Pro Hac Vice*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 20, 2024, I caused the foregoing to be served via electronic mail on the following Smartmatic counsel of record in this matter:

J. Erik Connolly (admitted *pro hac vice)*
EConnolly@beneschlaw.com
James Richard Bedell
jbedell@beneschlaw.com
Julie Loftus
JLoftus@beneschlaw.com
Timothy Frey
TFrey@beneschlaw.com
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

By */s/ Christopher I. Kachouroff*