## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL J. LINDELL and MY PILLOW, INC., <br><br> Defendants. | Case No. 22-cv-0098-JMB-JFD |

## SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS THIRD MOTION TO COMPEL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................... 1

I.   Smartmatic Sued Defendants for Falsely Accusing It Of Rigging The 2020 U.S.
Presidential Election. ........................................................................................ 1

II.   Defendants Failed to Satisfy Their Discovery Obligations. ....................... 2

LEGAL STANDARD ...................................................................................... 6

ARGUMENT ................................................................................................... 7

I.   Information Related to Defendants' Defamatory Productions Is Relevant and
Discoverable. ................................................................................................... 7

    A.   Defendants Have Waived Any Objections Smartmatic's Final Set of Discovery
Requests By Not Responding for Almost Ten Months. ................................ 7

    B.   MyPillow's Financial Contributions To Lindell's Disinformation Campaign Are
Relevant And Discoverable (Interrogatory Nos. 20 & 23; RFP No. 26). ........................ 9

    C.   Information Regarding Defendants' Bases For Their Defamatory Statements Is
Relevant And Discoverable (Interrogatory Nos. 4 & 14). ............................ 13

CONCLUSION ............................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bepex Int'l, LLC v. Hosokawa Micron BV*,
    No. 19-CV-2997, 2022 WL 3701406 (D. Minn. Feb. 8, 2022) ................................... 6

*Beyond Blond Prods., LLC v. Hall*,
    No. 22-MC-0037 (JFD), 2022 WL 3444039 (D. Minn. Aug. 17, 2022) ...................... 6

*Cargill, Inc. v. Ron Burge Trucking, Inc.*,
    284 F.R.D. 421 (D. Minn. 2012) ................................................................................ 6, 8

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*,
    238 F.R.D. 536 (D. Conn. 2006) .................................................................................... 7

*Mahnke v. Nw. Publ'ns, Inc.*,
    160 N.W. 2d 1 (Minn. 1968) ........................................................................................ 15

*Schneider v. Buckman*,
    433 N.W.2d 98 (Minn. 1988) ........................................................................................ 11

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ...................................................................................................... 15

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ....................................................................................................... 6

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................................ 12

Fed. R. Civ. P. 33(b)(2) ....................................................................................................... 5

Fed. R. Civ. P. 33(b)(4) .................................................................................................... 6, 7

Fed. R. Civ. P. 34................................................................................................................. 6

Fed. R. Civ. P. 34(b)(2)(A) ................................................................................................. 5

Fed. R. Civ. P. 36(a)(3) ............................................................................................... 5, 7, 8

## INTRODUCTION

Defendants Michael J. Lindell and My Pillow, Inc. ("MyPillow") began their defamation campaign against Smartmatic over three years ago, resulting in Smartmatic filing this lawsuit on January 18, 2022.  Fact discovery has now been ongoing for over twenty months and is scheduled to close today.  Despite the length of time that has elapsed, Defendants continue to improperly withhold information related to Smartmatic's claims that Defendants' statements are false and defamatory.  Indeed, Defendants refuse to disclose basic information concerning the financing of their defamation campaign, including MyPillow's involvement, as well as information about the sources Defendants relied upon in crafting the defamatory statements. Moreover, Defendants have completely failed to respond to a set of discovery requests served in ***September 2023***.  All information sought is relevant to Smartmatic's allegations that Defendants acted with actual malice when they defamed (and continue to defame) Smartmatic and that punitive damages are necessary.  Accordingly, the Court should enter another order compelling Defendants to comply with their discovery obligations.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Smartmatic Sued Defendants for Falsely Accusing It Of Rigging The 2020 U.S. Presidential Election.**

Since the 2020 election, and now almost four years later, Defendants continue to spread the lie that Smartmatic played a key role in a grand conspiracy to "steal" the election from President Trump and elect President Biden. (*See* ECF No. 125, Supp'l Compl. ¶¶ 75–83.) For instance, Defendants told the public and MyPillow customers that Smartmatic was

the "mothership" of a grand conspiracy among voting machine companies, the U.S. and state governments, and foreign actors to "steal" the election. (*Id.* ¶ 151.)

Smartmatic has alleged that Defendants' disinformation campaign was a thinly veiled attempt to curry favor with President Trump and to sell MyPillow products to his loyal followers. Specifically, Smartmatic alleges that Lindell defamed Smartmatic "for the noble purpose of selling his pillows," and this is implicit because he routinely promoted MyPillow and its products when he defamed Smartmatic and spread his lies about the legitimacy of the 2020 election. (*Id.* ¶ 7, 19, 134, 339, 344, 346.) He even frequently paired his defamatory statements about Smartmatic with "promo codes" encouraging the audience to make a purchase from MyPillow and receive a discount. (*Id.* ¶¶ 338–41.) Defendants strategically used "promo codes" that will appeal to President Trump's supporters, such as "FightforTrump" and "Proof." (*Id.* ¶ 19.)

## II.   Defendants Failed to Satisfy Their Discovery Obligations.

Based on Defendants' ongoing mission to destroy Smartmatic's reputation and remove all voting machines from future elections,[1] it is unsurprising that they refuse to comply with basic discovery requests served by Smartmatic in this case. Indeed, there are deficiencies lingering from Smartmatic's first set of discovery requests served on ***October 17, 2022***—one week after fact discovery began**.**

---

[1] In his deposition, Mr. Lindell said, "I was all about getting rid of electronic voting machines and going to paper ballots and counting.  That was my whole focus 18 hours a day for the next three years."  (Declaration of Julie M. Loftus ("Loftus Decl.") Ex. T, Transcript of Deposition of Michael J. Lindell, at 74:18–21.)

Specifically, Smartmatic is seeking to compel responses to the following discovery requests:

- Interrogatory Nos. 4, 14 (First Set of Interrogatories to Defendants) (Loftus Decl. Ex. A.)

- Interrogatory Nos. 20, and 23 (Second Set of Interrogatories to MyPillow) (Loftus Decl. Ex. B.)

- Request for Production ("RFP") No. 26 (Second Set of Requests for Production to MyPillow) (Loftus Decl. Ex. C.)

Smartmatic had discussed each of these deficiencies with Defendants' previous counsel by the fall of 2023. However, Smartmatic wanted to give Defendants' a chance to correct these deficiencies via their new counsel. Even before this Court re-opened discovery in April, Smartmatic attempted to resolve discovery disputes with Defendants amicably. On December 19, 2023—four days after Defendants' new representation appeared in this action—Smartmatic sent Defendants' new counsel a comprehensive letter detailing outstanding discovery and identified deficiencies. (Loftus Decl. Ex. D, December 19, 2023 Letter from M. Bloom to C. Kachouroff.) Smartmatic's December 19, 2023 letter included discussion of Defendants' responses to date of Interrogatory Nos. 4, 14, 20, and 23. The parties met and conferred on January 4, 2024 to discuss the deficiencies raised therein. (*See* Loftus Decl. Ex. E, email from J. Loftus to C. Kachouroff.) The parties again discussed the December 19 letter on January 18, 2024. (*See* Loftus Decl. Ex. F, email from J. Loftus to C. Kachouroff.)

On April 15, 2024, Smartmatic and Defendants met and conferred on case scheduling. Smartmatic again mentioned the discovery concerns it had previously

identified in December 2023 and January 2024. (Loftus Decl. Ex. G, April 17, 2024 email from J. Loftus to C. Kachouroff.) Smartmatic did not hear back in response and followed up again on April 24, 2024. (Loftus Decl. Ex. H, April 24, 2024 email from J. Loftus to C. Kachouroff.)

Smartmatic reached out once again on May 7, 2024 to identify gaps in Defendants' production, including documents responsive to RFP No. 26 from 2021 through the present. (Loftus Decl. Ex. I, May 7, 2024 email from J. Loftus to C. Kachouroff.) The parties met and conferred on May 13, 2024 to discuss Defendants' productions. (Loftus Decl. ¶ 12.) Defendants stated that they would investigate these deficiencies. (*Id.*) On May 20, 2024, Defendants served updated responses to several of Smartmatic's discovery requests, including Interrogatory Nos. 4, 14, 20, and 23. The parties met and conferred regarding these responses on June 3, 2024. Smartmatic reminded Defendants of its prior deficiency communications and forwarded that correspondence to Defendants' counsel during the call. (Loftus Decl. Ex. J.) Defendants stood on their objections to Smartmatic's interrogatories and did not produce updated documents responsive to RFP No. 26. On July 3, 2024, Smartmatic sent a final message informing Defendants that they had reached an impasse and would be seeking relief from the Court.

Nothing is more representative of Defendants' unwillingness to participate in discovery than their complete failure to respond to ***four sets of discovery requests*** Smartmatic served ***almost ten months ago***. On September 20, 2023, Smartmatic served the following sets of discovery requests on Defendants:

- Fifth Set of Requests for Production (Declaration of Julie M. Loftus in Support of Smartmatic's Motion to Compel ("Loftus Decl.") Ex. K);

- Fourth Set of Interrogatories (*Id.* Ex. L);

- First Set of Requests for Admission (*Id.* Ex. M); and

- Second Set of Requests for Admission (*Id.* Ex. N).

Pursuant to Federal Rules of Civil Procedure 33(b)(2), 34(b)(2)(A), and 36(a)(3), Defendants' responses to these Requests were due on Friday, October 20, 2023. However, on October 5, 2023, Defendants' then-counsel moved to withdraw, citing Defendants' failure to pay for their lawyers' fees. (ECF No. 225.) On October 16, 2023, this Court granted former counsel's motion and simultaneously stayed discovery until "at least Monday, November 13 [2023]." (ECF No. 238; *id.* at 7–8.) On April 15, 2024, this Court entered a new scheduling order and reopened discovery. (ECF No. 266, at 56–59.) Accordingly, Smartmatic contacted Defendants' counsel on May 7, 2024 to remind them of the discovery requests served September 20, 2023, sending copies of the outstanding requests as a courtesy. (Loftus Decl. Ex. I.) On June 3, 2024, Smartmatic again inquired about Defendants' responses to the requests served on September 20, 2023. (*Id.* ¶ 14.) Defendants' counsel requested that Smartmatic's counsel once again send the requests via email. (*Id.*) Smartmatic obliged. (*Id.* Ex. J.)  To date, Defendants have not responded to Smartmatic's September 20, 2023 discovery requests in any fashion.[2]

---

[2] Defendants' counsel has indicated that he may still respond to these requests but has not had time to do so.  While Smartmatic's counsel has attempted to allow new counsel time to familiarize himself with the facts and the documents, Smartmatic cannot wait indefinitely for responses to requests it issued nearly ten months ago.

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case." *Beyond Blond Prods., LLC v. Hall*, No. 22-MC-0037 (JFD), 2022 WL 3444039, at *2 (D. Minn. Aug. 17, 2022) (Docherty, J.) (citation omitted). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Id.* (citation omitted). In other words, "once a threshold showing of relevance has been made by the requesting party, the burden of demonstrating why information need not be provided—and thus, why a court should deny a motion to compel—is on the party resisting disclosure." *Bepex Int'l, LLC v. Hosokawa Micron BV*, No. 19-CV-2997 (KMM/JFD), 2022 WL 3701406, at *3 (D. Minn. Feb. 8, 2022) (Docherty, J.) (citation omitted).

Under Federal Rule of Civil Procedure 33(b)(4), "[a]ll grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); *see also Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012) (applying Rule 33(b)(4) and finding objections waived when party made "no effort" to respond to discovery and where "no indication that there was an excusable oversight."). Although Rule 34 does not contain an automatic waiver provision for untimely objections as does Rule 33(b)(4), "courts have reasoned that Rule 33(b)(4) type waiver should be

6

implied into all rules involving the use of the various discovery mechanisms." *Id.* (quoting *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006).

Federal Rule of Civil Procedure 36(a)(3) instructs that "a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by a party or its attorney." Fed. R. Civ. P. 36(a)(3).

## ARGUMENT

### I.  Information Related to Defendants' Defamatory Productions Is Relevant and Discoverable.

Smartmatic served several interrogatories related to the mechanics of Defendants' defamatory publications, including the financiers of the publications, and the amount of money that Defendants spent to produce and publish them.  This information is all relevant to, among, other topics, Defendants' actual malice.  Accordingly, the Court should compel Defendants to respond to Smartmatic's interrogatories.

### A.  Defendants Have Waived Any Objections Smartmatic's Final Set of Discovery Requests By Not Responding for Almost Ten Months.

Smartmatic served its final set of discovery requests on September 20, 2023. (Loftus Decl. Ex. S, Email from J. Bedell to Defendants' Counsel.) Smartmatic gave Defendants' new counsel *months* to respond.  After this Court formally re-opened discovery, Smartmatic reminded Defendants of these outstanding requests and asked for Defendants' responses. (*Id.* Ex. I.) Smartmatic followed up again on June 3, 2024.  (*Id.* Ex. J; *Id.* ¶ 14.) Finally, Smartmatic informed Defendants that Smartmatic would need to seek relief before this Court on July 3, 2024. (*Id.* at Ex. S, Email from J. Loftus to C. Kachouroff.) At no

point did Defendants request an extension from Smartmatic to respond to Smartmatic's discovery request. Defendants simply told Smartmatic they would provide responses—but to date have failed to do so.

While Smartmatic has attempted to give Defendants time to transition counsel, it cannot wait indefinitely for responses to its discovery requests. This is especially true where, as here, Defendants have continued to publicly impugn Smartmatic's reputation even during the course of this litigation. Given these considerations, this Court should find that Defendants have waived their objections to Smartmatic's Fifth Set of Requests for Production and Smartmatic's Fourth Set of Interrogatories. *See Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 423–24 (D. Minn. 2012). In *Cargill*, the Court struck the responding party's objections to a set of requests for production and interrogatories. The Court noted that the objections were not lodged until after the requesting party filed its motion to compel, which itself was after the party unsuccessfully attempted to resolve the issue on its own after the deadline to respond had passed. *Id.* Here, Defendants have similarly refused to produce responses, months after the deadline to do so passed, and Smartmatic has had to bring a motion to compel without ever having seen Defendants' potential objections. Defendants cannot show good cause for their delay. Defendants accordingly must be compelled to produce all evidence sought by these requests.

Similarly, Smartmatic's First and Second Sets of Requests for Admission should be deemed admitted pursuant to Rule 36(a)(3). Rule 36(a)(3) is clear that requests for admission are deemed admitted unless the recipient responds within 30 days, and contains no exception for good cause. Defendants have not responded for nearly 10 months. They

are therefore in violation of the Federal Rules of Civil Procedure and should not be rewarded with still more time.

**B.    MyPillow's Financial Contributions To Lindell's Disinformation Campaign Are Relevant And Discoverable (Interrogatory Nos. 20 & 23; RFP No. 26).**

In support of its claim that MyPillow is vicariously liable for the defamatory statements of its CEO, Smartmatic served the following interrogatories seeking information about the financial relationship between Lindell and MyPillow:

- Interrogatory No. 20: Identify and quantify all MY PILLOW financial resources or other monetary support provided by You for development, production, or publication of the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, the LINDELL APPEARANCES, the LINDELL WEBSITES, or the "March for Trump" tour and tour bus referenced in paragraph 76 of the Complaint. (*Id.* Ex. B, at 10.)

- Interrogatory No. 23:  Identify any instance in which MY PILLOW has loaned money to LINDELL or cosigned an obligation of LINDELL. Your response should state: (a) the date of the loan or instrument; (b) the amount of money at issue; (c) whether there was a written loan agreement, promissory note, or similar document; (d) the date and amount of each payment that MY PILLOW made; (e) the interest rate, if any; and (f) the balance still owed by MY PILLOW, if any. There is no time limit to this Interrogatory. (*Id.*)

MyPillow, however, refuses to identify its monetary contributions to Defendants' defamatory activities. MyPillow similarly refuses to identify any loans to Lindell, or loans from Lindell to MyPillow.  Accordingly, the Court should compel MyPillow to provide complete responses.

The parties have gone back and forth on Interrogatory Nos. 20 and 23 numerous times. In its original response to Interrogatory No. 20, MyPillow answered, in pertinent part, "Defendant states that My Pillow contributed $100,000 to the March for Trump via

wire dated December 4, 2020. Defendant further states that My Pillow loaned sums of money to FrankSpeech.com." (Loftus Decl. Ex. O, Defendant My Pillow, Inc.'s Fourth Supplemental Answers and Objections to Plaintiffs' Second Set of Interrogatories, at 6.) Subsequently, MyPillow supplemented its response to Interrogatory No. 20: "As a supplemental response to Interrogatory No. 20, My Pillow states that the $100,000.00 wire referenced above was for advertising and not a contribution. The loan referenced was included in error and the referenced loan did not occur. As a supplemental response, My Pillow states that it has no information responsive to this Interrogatory at this time." (*Id.*)

During a meet and confer conference with Defendants' new counsel, Smartmatic pointed out that Defendants' responses were contradictory. Smartmatic also identified that Defendants had produced an invoice from OANN to MyPillow for the airing of *Absolute Proof*, Defendants' first defamatory documentary. Defendants' supplemental answer doubled down: "There were no contradictory answers and the previous answers to this interrogatory are final [] complete." (*Id.* Ex. P, Defendants' Fifth Supplemental Responses to Plaintiffs' Discovery, at 5.) Defendants also demanded proof of the OANN invoice they produced. (*Id.*)

In its original response to Interrogatory No. 23, MyPillow objected on relevance and overbreadth grounds. (*Id.* Ex. O, at 8.) In a supplemental answer, MyPillow stated: "Mr. Lindell has frequently loaned money to My Pillow, Inc., and *vice versa*, but Mr. Lindell has not used any funds loaned by My Pillow, Inc. to finance any enterprise relevant to the claims brought by Plaintiffs. (*Id.*) Smartmatic met and conferred with new counsel for Defendants and explained that these answers were facially deficient because they admit

10

that loans occurred but fail to identify any such loan. (*Id.* Ex. D.) Defendants' next supplement only underscored Smartmatic's point: "My Pillow and Mr. Lindell have loaned money back and forth numerous times over the past 20 years. No formal loan documents are created but accounting entries are documented for tax purposes. It is a typical small business activity that occurs every day in America." (*Id.* Ex. P, at 5.)

Money conveyed between Lindell and MyPillow that financed the defamatory statements is probative of whether Lindell acted within the course and scope of his employment when he defamed Smartmatic. *See Schneider v. Buckman*, 433 N.W.2d 98, 101 (Minn. 1988) (under the "well-established principle" of respondeat superior, "an employee is vicariously liable for the torts of an employee committed within the course and scope of employment.") (*See also* ECF No. 52, at 14 ("Lindell, the CEO of MyPillow, intentionally promoted MyPillow while allegedly defaming Smartmatic in media and other public appearances.").) Monetary support flowing from MyPillow to Lindell—or Lindell's defamatory publications—supports Smartmatic claims that MyPillow is vicariously liable for its CEO's acts.

MyPillow has refused to comply with Smartmatic's relevant requests. *First,* in response to Interrogatory No. 20, MyPillow has only provided contradictory answers about a $100,000 wire and vague statements about a FrankSpeech loan that may or may not have occurred. But whether MyPillow provided financing to the March for Trump Tour directly or by purchasing advertising is irrelevant—both are responsive to Interrogatory No. 20. The interrogatory seeks identification and quantification of MyPillow's financial resources or other monetary support it provided, and advertising constitutes monetary support.

*Second*, in response to Interrogatory No. 23, MyPillow admits that MyPillow and Lindell have loaned each other money, fails to identify *any* of the referenced loans, and admits that **relevant and responsive records exist**. These responses are deficient. MyPillow should be compelled to produce the relevant, responsive information requested—included the "accounting entries" it admits exist.

Furthermore, Smartmatic served the following RFP seeking documents in support of its vicarious liability claim against MyPillow:

- RFP No. 26: MY PILLOW'S income statements, profit and loss statements, balance sheets, statements of cash flow, and statements of retained earnings of the past five (5) years. (Loftus Decl. Ex. C, at 10.)

Defendants produced MyPillow's balance sheet, profit and loss statements, a sales by customer summary, and one page of a tax return from 2018 through 2021. (*Id.* ¶ 25.) Defendants also produced a balance sheet and a profit and loss statement for 2022. (*Id.*) Smartmatic requested all four documents for 2022 and 2023 pursuant to Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure, which instructs that "[a] party who has . . . responded to a[] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response to incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Smartmatic, for its part, supplemented its financial records with a production of information pertaining to fiscal year 2023 on May 16, 2023. ((Loftus Decl. Ex. Q.) Now that discovery is closing, Smartmatic seeks a parallel update from MyPillow.

**C.     Information Regarding Defendants' Bases For Their Defamatory Statements Is Relevant And Discoverable (Interrogatory Nos. 4 & 14).**

In support of its claim that Defendants acted with actual malice, and in support of their properly pleaded punitive damages claim, Smartmatic served the following Interrogatories:

- Interrogatory No. 4: Identify all sources of information that YOU used for the ACCUSED PROGRAMS, DEFAMATORY BROADCASTS, DEFAMATORY STATEMENTS, or LINDELL APPEARANCES. For documents, list the Persons, including any LINDELL EMPLOYEES or MY PILLOW EMPLOYEES, OTHER NEWS ORGANIZATIONS, and Persons and Persons affiliated with YOU, who reviewed the documents, when he or she received and/or reviewed them, and describe the documents. For Persons interviewed or contacted, list their name, employer, title, and contact information, and describe their interaction with You, including the dates of any interview(s), the Person(s) affiliated with You who interviewed or contacted them, an the information they provided to You. For any other sources, describe the source and the information provided. (*Id.* Ex. A, at 11.)

- Interrogatory No. 14: If you contend that any of the DEFAMATORY STATEMENTS are true, substantially true, accurate, not misleading, and/or not defamatory, describe all facts and identify all documents that You claim support or establish that such statements are true, substantially true, accurate, not misleading, and/or defamatory. (*Id.* Ex. A, at 13.)

In response to Interrogatory No. 4, Defendants provided a list of individuals and sources they relied on in making defamatory statements. (Loftus Decl. Ex. R, Defendant Michael J. Lindell Fourth Supplemental Answers and Objections to Plaintiffs' First Set of Interrogatories, at 11–18.) However, Defendants ignored the portions of the interrogatory requesting identifying details about these sources, such as contact information, details about the extent to which Defendants communicated with sources, and the information provided by each source. (*Id.*) Particularly with respect to natural persons, this omission deprives Smartmatic of critical information in assessing the credibility of Defendants'

13

sources. After Smartmatic met and conferred with Defendants' new counsel, Defendants

served new answers providing no new information. My Pillow answered, "My Pillow did

not make any defamatory statements. My Pillow's prior answer is complete and final." (*Id.*

Ex. P, at 2.) For his part, Lindell answered,

> "Mr. Lindell did not make any defamatory statements. To the best of his
> knowledge, Mr. Lindell has provided the documents that he can recall that
> he relied on. He reserves the right to supplement this list should he recall
> additional documents. Mr. Lindell does not have any contact information for
> individuals he interviewed or the dates he spoke with such people. The
> interviews would have occurred between November 2020 and the year 2023.
> Finally, Mr. Lindell objected to Interrogatory No. 4 as overbroad. Mr. Lindell
> stands on that objection because many if not all of the sources *do not
> reasonably related to Smartmatic or its claims in any way whatsoever.*

(*Id.*)

In response to Interrogatory No. 14—seeking the basis for the defined term

"Defamatory Statements"—Defendants refused to answer, and they objected that questions

about the truth of Defendants' statements are better suited for deposition testimony. (*Id.*

Ex. R, at 23–24.) Even after conferring with Defendants' new counsel, Defendants still

refused to provide a substantive response to Interrogatory No. 14:

> **MY PILLOW RESPONSE:** My Pillow did not make any defamatory
> statements and its prior answer is complete and final.

> **LINDELL'S RESPONSE:** Mr. Lindell did not make any defamatory
> statements. Mr. Lindell has already and repeatedly identified, *at a minimum,*
> the documents and videos that he looked at in forming his conclusions in
> another interrogatory. Mr. Lindell would describe the majority of facts that
> he relies on to make statements as being complex and difficult to parse
> through in a compressed period of time. Indeed, he was compelled to hire
> experts in order to assist him in understanding them. He used his platforms
> to start an electronic version of the press to foster discussion about the
> machines and what they represent. He also conducted a symposium to bring
> experts together to discuss and engage in reasoned discourse about what
> happened in the November 2020 election. Over time, some of these opinions

may have changed. Most of the facts can also be described as decentralized
in that they come from numerous sources and not a single source per se. Mr.
Lindell's answer to this interrogatory is complete and final.

(*Id.* Ex. P, at 3.)

Details about Defendants' sources are relevant to their actual malice, as
"recklessness may be found where there are obvious reasons to doubt the veracity of the
[defendant's source] or the accuracy of the [defendant's] reports." *St. Amant v. Thompson*,
390 U.S. 727, 732 (1968); *see also Mahnke v. Nw. Publ'ns, Inc.*, 160 N.W. 2d 1, 9 (Minn.
1968) (affirming verdict for plaintiff where defendant relied on source "in no position to
have the true facts in his possession."). Without stating the information they gleaned from
different sources, Smartmatic is unable to assess the credibility of the information provided
to Defendants. Similarly, refusing to provide Smartmatic with the information about claims
they assert are true leaves Smartmatic unable to examine the reliability of Defendants'
theories.

Defendants should not be permitted to hide the ball on their theories about Mr.
Lindell's harmful statements about Smartmatic. At minimum, they should be ordered to
differentiate truth from lies, and explain where they got the information they
enthusiastically spread to audiences worldwide. Defendants should therefore be compelled
to fully detail the specific facts they received from each person they listed in response to
Interrogatory No. 4, with details about those communications, and to fully respond to
Interrogatory No. 14 as drafted.

## CONCLUSION

For the foregoing reasons, this Court should grant Smartmatic's Motion. Defendants should be compelled to fully and completely respond to Interrogatory Nos. 4, 14, 20, and 23, and to supplement its production to Request for Production No. 26.  Defendants should also be compelled: (i) to produce all documents requested in Smartmatic's Fifth Set of Requests for Production; and (ii) to respond to all interrogatories in Smartmatic's Fourth Set of Interrogatories. Finally, Smartmatic's First and Second Sets of Requests for Admission should be deemed admitted because Defendants failed to respond in a timely manner.

Dated: July 9, 2024

Respectfully submitted,

/s/ *Timothy M. Frey*

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske
   Minnesota Bar No. 0392348
   WManske@robinskaplan.com
Emily J. Tremblay
   Minnesota Bar No. 0395003
   ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
   EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)

16

TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH,  FRIEDLANDER,  COPLAN  &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH,  FRIEDLANDER,  COPLAN  &
ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*