# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>　　　　　　　　Plaintiffs,<br>　　　v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>　　　　　　　　Defendants. | Case No. 22-cv-0098-WMW-JFD |

<u>**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION DIRECTED AT
DEFENDANTS MICHAEL J. LINDELL AND MY PILLOW, INC.**</u>

Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited (collectively, "Smartmatic"), by and through their attorneys, Benesch, Friedlander, Coplan & Aronoff LLP, propound the following requests for admission pursuant to Fed. R. Civ. P. 30 and 26.  Failure to respond to these Requests within thirty days will result in the Requests being deemed admitted.  *See* Fed. R. Civ. P. 36(a)(3).

<u>**DEFINITIONS**</u>

1.　　"And" and "or" shall mean "and/or" and shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of this Request any answer which would otherwise not be brought within its scope.

2.　　"Any" and "all" shall mean "any and all."

3.　　"Communications" shall mean the recording, conveyance, exchange, or transmittal of information (in the form of facts, ideas, inquiries or otherwise) of any kind by or with any person

or entity for any purpose by any written, verbal, or electronic means or method, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, cell phone text messages (SMS messages and MMS messages), voicemail messages, internal messaging system communications, social media communications or posting on sites including but not limited to Facebook, Twitter, Instagram, Rumble, Reddit, Gab, or Parler (including any direct messages), website postings, internet chat-room postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries of investigations. For avoidance of doubt, the term "Communications" includes internal communications and communications with third parties.

4.      "Documents" shall mean documents in its broadest sense and shall mean and include all written, printed, typed, recorded, or graphic data or matter of every kind and description, both originals and copies, and all attachments and appendices thereto. The terms "Document" and "Documents" shall include, without limitation, all agreements, contracts, correspondence, letters, telegrams, telexes, messages, e-mail, memoranda, records, reports, books, summaries or other records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries or other records of meetings and conferences, summaries or other records of negotiations, diaries, diary entries, calendars, appointment books, visitor records, time records, instructions, work assignments, forecasts, statistical data, statistical statements, worksheets, work papers, drafts, graphs, maps, charts, tables, analytical records, consultants' reports, appraisals, notes, marginal notations, notebooks, statements, lists, recommendations, files, printouts, compilations, tabulations, confirmations, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, microfilm, microfiche, articles, speeches, tape or disk

2

recordings, sound recordings, video recordings, film, tape, photographs, data compilations from which information can be obtained (including but not limited to matter used in data processing), and any other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated or made.

5.      "Electronically Stored Information" or "ESI" shall mean all electronically stored information in its broadest sense and shall mean and include, but is not limited to: (a) information or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata; (b) internal or external web sites; (c) output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messages, bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; (d) activity listings of electronic mail receipts and/or transmittals; and (e) any and all items stored on computer memories, hard disks, floppy disks, CD-ROM or other discs, flash or jump drives, online cloud storage, magnetic tape, microfiche, or on any other media for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, hand-held wireless device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

6.      "FRANKSPEECH" shall mean the Delaware corporation FrankSpeech Inc., and its past or present subsidiaries, affiliates, attorneys, agents, representatives, officers, directors, employees, or other persons acting on its behalf, including any regional affiliates or contributors,

whether paid or unpaid, and including all radio and television appearances made by persons acting as spokespersons for FRANKSPEECH.

7.      "Including" shall mean "including, but not limited to."

8.      "LINDELL" shall mean Defendant Michael J. Lindell and his past or present attorneys, agents, representatives, employees, or other persons acting on his behalf, whether paid or unpaid, and including all radio and television appearances made by persons acting as spokespersons for LINDELL.

9.      "Meeting" shall mean any type of meeting, including those held in-person, via telephone, online, or via another medium.

10.     "MY PILLOW" shall mean Defendant My Pillow Inc. and its past or present subsidiaries, affiliates, attorneys, agents, representatives, officers, directors, employees, or other persons acting on its behalf, including any regional affiliates or contributors, whether paid or unpaid, and including all radio and television appearances made by persons acting as spokespersons for MY PILLOW.

11.     "Person(s)" refers to all natural persons and all forms of business organizations, including corporations, partnerships, limited partnerships, unincorporated associations, trusts, governmental bodies, and/or all other identifiable entities.

12.     "Regarding" shall mean referring to, discussing, describing, evidencing, concerning, comprising, constituting, referencing, reflecting, supporting, or relating to in any manner.

13.     "Relate to" or "relating to" shall mean consisting of, referring to, reflecting, or being in any way legally, logically, or factually connected with the matter discussed.

14.     "SMARTMATIC" shall mean Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation, and their past or present subsidiaries, affiliates, attorneys, agents, representatives, officers, directors, employees, or other persons acting on its behalf, including any regional affiliates or contributors, whether paid or unpaid, and including all radio and television appearances made by persons acting as spokespersons for SMARTMATIC.

15.     "State" shall mean to state specifically and in detail.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1.**     Admit that LINDELL published a documentary titled *Absolute Proof* on February 5, 2021.

**RESPONSE:**

**REQUEST NO. 2.**     Admit that *Absolute Proof* contains statements about election fraud during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 3.**     Admit that *Absolute Proof* contains statements about SMARTMATIC.

**RESPONSE:**

**REQUEST NO. 4.**     Admit that at the time of publishing *Absolute Proof*, LINDELL was aware of William Barr's December 1, 2020 statement that U.S. Department of Justice investigators had not seen fraud in the 2020 U.S. Presidential election on a scale that could have effected a different outcome in the election.

**RESPONSE:**

**REQUEST NO. 5.**    Admit that at the time of publishing *Absolute Proof*, LINDELL was aware of the November 12, 2020 Joint Statement from the Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that "The November 3rd election was the most secure in American history" and that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

**RESPONSE:**

**REQUEST NO. 6.**    Admit that at the time of publishing *Absolute Proof*, LINDELL understood the statements made about SMARTMATIC were likely to result in harm to SMARTMATIC's reputation.

**RESPONSE:**

**REQUEST NO. 7.**    Admit that LINDELL published a video titled *Scientific Proof* on March 31, 2021.

**RESPONSE:**

**REQUEST NO. 8.**    Admit that *Scientific Proof* contains statements about SMARTMATIC and election fraud during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 9.**    Admit that at the time of publishing *Scientific Proof*, LINDELL was aware of William Barr's December 1, 2020 statement that U.S. Department of Justice investigators

6

had not seen fraud in the 2020 U.S. Presidential election on a scale that could have effected a different outcome in the election.

**RESPONSE:**

**REQUEST NO. 10.**   Admit that at the time of publishing *Scientific Proof*, LINDELL was aware of the November 12, 2020 Joint Statement from the Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that "The November 3rd election was the most secure in American history" and that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

**RESPONSE:**

**REQUEST NO. 11.**   Admit that at the time of publishing *Scientific Proof*, LINDELL understood the statements made about SMARTMATIC were likely to result in harm to SMARTMATIC's reputation.

**RESPONSE:**

**REQUEST NO. 12.**   Admit that LINDELL published a documentary titled *Absolute Interference* on April 20, 2021.

**RESPONSE:**

**REQUEST NO. 13.**   Admit that *Absolute Interference* contains statements about election fraud during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 14.** Admit that *Absolute Interference* contains statements about SMARTMATIC.

**RESPONSE:**

**REQUEST NO. 15.** Admit that at the time of publishing *Absolute Interference*, LINDELL was aware of William Barr's December 1, 2020 statement that U.S. Department of Justice investigators had not seen fraud in the 2020 U.S. Presidential election on a scale that could have effected a different outcome in the election.

**RESPONSE:**

**REQUEST NO. 16.** Admit that at the time of publishing *Absolute Interference*, LINDELL was aware of the November 12, 2020 Joint Statement from the Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that "The November 3rd election was the most secure in American history" and that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

**RESPONSE:**

**REQUEST NO. 17.** Admit that at the time of publishing *Absolute Interference*, LINDELL understood the statements made about SMARTMATIC were likely to result in harm to SMARTMATIC's reputation.

**RESPONSE:**

**REQUEST NO. 18.**  Admit that LINDELL published a documentary titled *Absolutely 9-0* on June 3, 2021.

**RESPONSE:**

**REQUEST NO. 19.**  Admit that *Absolutely 9-0* contains statements about SMARTMATIC and election fraud during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 20.**  Admit that at the time of publishing *Absolutely 9-0*, LINDELL was aware of William Barr's December 1, 2020 statement that U.S. Department of Justice investigators had not seen fraud in the 2020 U.S. Presidential election on a scale that could have effected a different outcome in the election.

**RESPONSE:**

**REQUEST NO. 21.**  Admit that at the time of publishing *Absolutely 9-0*, LINDELL was aware of the November 12, 2020 Joint Statement from the Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that "The November 3rd election was the most secure in American history" and that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

**RESPONSE:**

**REQUEST NO. 22.**  Admit that at the time of publishing *Absolutely 9-0*, LINDELL understood the statements made about SMARTMATIC were likely to result in harm to SMARTMATIC's reputation.

**RESPONSE:**

**REQUEST NO. 23.**  Admit that LINDELL appeared on Steve Bannon's "War Room" podcast on February 5, 2021, February 6, 2021, March 26, 2021, April 9, 2021, May 3, 2021, and May 8, 2021.

**RESPONSE:**

**REQUEST NO. 24.**  Admit that during LINDELL's appearances on Steve Bannon's "War Room" as indicated in Request No. 25, LINDELL made statements about SMARTMATIC and election fraud during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 25.**  Admit that at the time of LINDELL's appearances on Steve Bannon's "War Room" as indicated in Request No. 25, LINDELL was aware of William Barr's December 1, 2020 statement that U.S. Department of Justice investigators had not seen fraud in the 2020 U.S. Presidential election on a scale that could have effected a different outcome in the election.

**RESPONSE:**

**REQUEST NO. 26.**  Admit that at the time of LINDELL's appearances on Steve Bannon's "War Room" as indicated in Request No. 25, LINDELL was aware of the November

12, 2020 Joint Statement from the Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that "The November 3rd election was the most secure in American history" and that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

**RESPONSE:**

**REQUEST NO. 27.**  Admit that at the time of LINDELL's appearances on Steve Bannon's "War Room" as indicated in Request No. 25, LINDELL understood the statements made about SMARTMATIC were likely to result in harm to SMARTMATIC's reputation.

**RESPONSE:**

**REQUEST NO. 28.**  Admit that LINDELL hosted a "Cyber Symposium" event from August 10 to 12, 2021 in Sioux Falls, South Dakota.

**RESPONSE:**

**REQUEST NO. 29.**  Admit that during the "Cyber Symposium" mentioned in Request No. 31, LINDELL made statements about election fraud during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 30.**  Admit that during the "Cyber Symposium" mentioned in Request No. 31, LINDELL made statements about SMARTMATIC.

**RESPONSE:**

**REQUEST NO. 31.**  Admit that at the time of the "Cyber Symposium" mentioned in Request No. 31, LINDELL was aware of William Barr's December 1, 2020 statement that U.S. Department of Justice investigators had not seen fraud in the 2020 U.S. Presidential election on a scale that could have effected a different outcome in the election.

**RESPONSE:**

**REQUEST NO. 32.**  Admit that at the time of the "Cyber Symposium" mentioned in Request No. 31, LINDELL was aware of the November 12, 2020 Joint Statement from the Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that "The November 3rd election was the most secure in American history" and that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

**RESPONSE:**

**REQUEST NO. 33.**  Admit that at the time of the "Cyber Symposium" mentioned in Request No. 31, LINDELL understood the statements made about SMARTMATIC were likely to result in harm to SMARTMATIC's reputation.

**RESPONSE:**

**REQUEST NO. 34.**  Admit that on January 4, 2023, FRANKSPEECH published a video titled *Updates On the Smartmatic Lawsuit and The Cast Vote Records*.

**RESPONSE:**

**REQUEST NO. 35.**  Admit that the video *Updates On the Smartmatic Lawsuit and The Cast Vote Records* contains statements about SMARTMATIC and election fraud during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 36.**  Admit that at the time of publishing the video *Updates On the Smartmatic Lawsuit and The Cast Vote Records*, LINDELL was aware that SMARTMATIC did not provide election technology for use in any jurisdiction other than Los Angeles County during the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 37.**  Admit that at the time of publishing the video *Updates On the Smartmatic Lawsuit and The Cast Vote Records*, LINDELL was aware of William Barr's December 1, 2020 statement that U.S. Department of Justice investigators had not seen fraud in the 2020 U.S. Presidential election on a scale that could have effected a different outcome in the election.

**RESPONSE:**

**REQUEST NO. 38.**  Admit that at the time of publishing the video *Updates On the Smartmatic Lawsuit and The Cast Vote Records*, LINDELL was aware of the November 12, 2020 Joint Statement from the Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that "The November 3rd election was the most secure in American history" and that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

**RESPONSE:**

**REQUEST NO. 39.** Admit that at the time of publishing the video *Updates On the Smartmatic Lawsuit and The Cast Vote Records*, LINDELL understood the statements made about SMARTMATIC were likely to result in harm to SMARTMATIC's reputation.

**RESPONSE:**

**REQUEST NO. 40.** Admit that the video *Updates On the Smartmatic Lawsuit and The Cast Vote Records* displayed a promo code valid for up to 66% off an order placed at MyPillow.com.

**RESPONSE:**

**REQUEST NO. 41.** Admit that SMARTMATIC, Dominion Voting Systems, and ES&S are competitors.

**RESPONSE:**

**REQUEST NO. 42.** Admit that MY PILLOW never made any public statements disclaiming LINDELL's statements about SMARTMATIC.

**RESPONSE:**

**REQUEST NO. 43.** Admit that no fraud was committed in connection with the 2020 U.S. Presidential election that would have changed the outcome of the election.

**RESPONSE:**

**REQUEST NO. 44.**   Admit that no federal or state agency in the U.S. has ever announced that any voting system was responsible for a fraud being committed in connection with the 2020 U.S. Presidential election that would have changed the outcome of the election.

**RESPONSE:**

**REQUEST NO. 45.**   Admit that SMARTMATIC did not tabulate votes in the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 46.**   Admit that Joe Biden was elected to be the President of the United States in the election held on November 3, 2020.

**RESPONSE:**

**REQUEST NO. 47.**   Admit that SMARTMATIC's technology and software used in the 2020 U.S. Presidential election was not connected to the Internet.

**RESPONSE:**

**REQUEST NO. 48.**   Admit that no other voting-technology company used SMARTMATIC's technology, hardware, or software in the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 49.**   Admit that SMARTMATIC was not engaged in a widespread criminal enterprise to steal the 2020 U.S. Presidential election.

**RESPONSE:**

**REQUEST NO. 50.** Admit that LINDELL is likely to publish additional statements about election fraud during the 2020 U.S. Presidential election and SMARTMATIC in the future.

**RESPONSE:**

Respectfully submitted,

Date: September 20, 2023

/s/ *Michael E. Bloom*
Michael E. Bloom

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske
   Minnesota Bar No. 0392348
   WManske@robinskaplan.com
Emily J. Tremblay
   Minnesota Bar No. 0395003
   ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

J. Erik Connolly (admitted *pro hac vice*)
   EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Michael E. Bloom (admitted *pro hac vice*)
   MBloom@beneschlaw.com
Illinois ARDC No. 6302422
Julie M. Loftus (admitted *pro hac vice*)
   JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
   JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs Smartmatic
USA Corp., Smartmatic International
Holding B.V., and SGO Corporation
Limited*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 20, 2023, copies of the foregoing

**Plaintiffs' First Set of Requests for Admission Directed at Defendant Michael J. Lindell and**

**My Pillow, Inc.** were sent via email to all attorneys of record:

**PARKER DANIELS KIBORT LCC**
Andrew D. Parker
Lori Johnson
Ryan Malone
Joe Pull
Cody Blades
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
parker@parkerdk.com
johnson@parkerdk.com
malone@parkerdk.com
pull@parkerdk.com
blades@parkerdk.com

*Attorneys for Defendants*

/s/ Michael E. Bloom
Michael E. Bloom