```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
 2
         ------------------------------------------------------------
 3                                       )
         Smartmatic USA Corp.;           )   File No. 22-cv-98
 4       Smartmatic International        )          (JMB-JFD)
         Holding B.V.; and SGO           )
 5       Corporation Limited,            )
                                         )   St. Paul, Minnesota
 6              Plaintiffs,              )   June 21, 2024
                                         )   2:00 p.m.
 7       vs.                             )
                                         )
 8       Michael J. Lindell and My       )
         Pillow, Inc.,                   )
 9                                       )
                Defendants.              )
10       ------------------------------------------------------------

11

12

13

14

15              BEFORE THE HONORABLE JOHN F. DOCHERTY
16         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

17                      (MOTION HEARING)

18

19

20

21

22

23

24         Proceedings recorded by mechanical stenography;
         transcript produced by computer.
25
```

```
 1      APPEARANCES

 2      For the Plaintiffs:        Benesch Friedlander Coplan &
                                   Aronoff
 3                                 JAMES RICHARD BEDELL, ESQ.
                                   127 Public Square
 4                                 Suite 4900
                                   Cleveland, Ohio 44114
 5
                                   Robins Kaplan LLP
 6                                 WILLIAM E. MANSKE, ESQ.
                                   800 LaSalle Avenue, Suite 2800
 7                                 Minneapolis, Minnesota
                                   55402-2015
 8
        For the Defendants:        McSweeney, Cynkar and
 9                                 Kachouroff, PLLC
                                   CHRISTOPHER KACHOUROFF, ESQ.
10                                 13649 Office Place
                                   Suite 101
11                                 Woodbridge, Virginia 22192

12      Court Reporter:            ERIN D. DROST RMR-CRR
                                   Suite 146
13                                 316 North Robert Street
                                   St. Paul, Minnesota 55101
14

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

**IN OPEN COURT**

1
2
3
4      THE COURT:  All right.  We are here this afternoon
5  for a hearing on the plaintiffs' motion for an order to show
6  cause why the defendants should not be held in contempt
7  alleging various discovery violations.
8      Let's begin by getting appearances beginning with
9  counsel for the plaintiffs, the moving party.
10      MR. MANSKE:  Good afternoon, Your Honor.  William
11  Manske for the plaintiffs.
12      MR. BEDELL:  Good afternoon.  James Bedell for the
13  plaintiffs.
14      MR. KACHOUROFF:  Good afternoon, Your Honor.
15  Christopher Kachouroff for Mr. Lindell and My Pillow.
16      THE COURT:  I have read the papers.  I have read
17  Ms. Loftus' declaration.  I have looked through the
18  aggregate data that's appended to Mr. Kachouroff's response
19  in opposition, and I'm ready to proceed.
20      Mr. Manske, will it be you doing the argument?
21      MR. MANSKE:  It will be Mr. Bedell, Your Honor.
22      THE COURT:  All right.  Mr. Bedell, you have the
23  floor.  And if there's anything that you think it's
24  important for me to know that isn't in your papers.
25      I will also let the parties know that although I'm

1    familiar with most civil proceedings, this is new on me,

2    order to show cause for contempt, and I just want you to

3    know that in terms of what your presentation is.

4        MR. BEDELL:  Understood, Your Honor.  Now,

5    Your Honor, Smartmatic's motion to show cause relates to

6    this Court's orders from August 1st, 2023, and October 19,

7    2023.

8        Smartmatic has attempted to work with defendants

9    in order to ensure their compliance with those orders, and

10    we've also worked to narrow the issues that we feel are

11    critical to bring in front of the Court today.  But the fact

12    of the matter is the defendants have not complied with those

13    orders, at least not fully, and so we've brought this motion

14    to show cause.

15        Now as far as the standard is concerned for a

16    motion to show cause, Smartmatic has the burden to show that

17    a valid order existed, but there's no dispute that your

18    orders from August 1st, 2023, and October 19, 2023, were

19    valid orders that are on the docket.  There's no dispute

20    that the defendants have knowledge of those orders.  And as

21    we've shown in our motion papers, and as I will be happy to

22    illustrate for you today, defense have disobeyed those

23    orders.

24        Now, that meets Smartmatic's burden on a motion to

25    show cause.  It allows you to certify the facts surrounding

1    this motion and enter an order compelling the defendants to

2    stand in front of Judge Bryan and explain why they should

3    not be held in contempt.

4         Now, on a motion to show cause, the defendants can

5    then show that there's some justifiable inability for them

6    to have complied with the orders, but based on the

7    opposition that we received to our motion, it appears that

8    defendants' position is that they have indeed complied with

9    those orders.

10        THE COURT:  Well, my understanding as to the first

11    area of contention, which is the financial documents, is

12    that Mr. Lindell represents that he has turned over his tax

13    returns for '20 and '21.  That tax returns for '22 and '23

14    are still being prepared.  That they'll be turned over

15    immediately upon completion.  Is that your understanding of

16    their representation?

17        MR. BEDELL:  That is my understanding, Your Honor.

18        THE COURT:  And what's wrong with that

19    representation?

20        MR. BEDELL:  So several things, Your Honor.

21    First, the document request, Request For Production

22    Number 30 that you found was relevant and compelled

23    defendants to produce documents responsive to, asked for

24    documents sufficient to show Mr. Lindell's personal

25    financial condition, including, but not limited to, tax

1   returns.  Now tax returns are obviously responsive, but

2   that's not what the order was limited to.  And there are

3   documents that we are aware of that do exist in defendants'

4   possession that they have refused to produce to us.

5               THE COURT:  Such as?

6               MR. BEDELL:  So there's -- I would probably put

7   them in two categories, but before I mention that, I think

8   it's important to say that some of the vagueness objections

9   that we've received from defendants here, that we haven't

10  fully specified --

11              THE COURT:  No, no, I asked --

12              MR. BEDELL:  Sure.

13              THE COURT:  -- you what other responsive

14  documents.

15              MR. BEDELL:  Sure.  So, Your Honor, one category

16  of documents would be the documents that form the basis of

17  Mr. Lindell's tax returns.  We have his tax returns for

18  certain years.  We have promises to get his tax returns for

19  two other years.  What we do not have are the documents that

20  form the basis of those tax returns; such as, W-2s, W-4s,

21  1099 forms, K-1 forms.

22              It's hard for us to say exactly because we don't

23  know what we don't know.  There are -- Mr. Lindell is

24  obviously in a much better position than we are to

25  understand what documents are sufficient to show his

1    financial condition.  But that is at least one category of

2    documents that we can identify as documents that we are

3    quite certain exist and that we do not have.

4         But on top of that, and this also goes into our

5    Request For Production Number 32 regarding the IRS audit --

6    documents relating to the IRS audit, there is a substantial

7    amount of overlap between those two categories so I'm

8    addressing them simultaneously here.

9         But just on Monday, we received a production from

10   the defendants in which one document from -- pertaining to

11   the IRS was disclosed to us.  I want to be a little bit

12   vague about it because the document was marked confidential,

13   and I would like to be respectful of that designation.  But

14   from a very high level, from a very broad perspective on

15   that document, the IRS requested 12 categories of documents

16   from Mr. Lindell, all of which relates to his personal

17   financial condition, none of which have been produced to us

18   in this case.  And the IRS requested those to be delivered

19   to them by the end of September, 2023, which was before the

20   October 19 order in which you ordered the defendants produce

21   those documents.

22        Again, we're not sure exactly how much more might

23   be out there that could be responsive to your order, but

24   those are at least two categories of documents that we know

25   exist and that we know we do not have.

1          THE COURT:  Let's talk then about the viewership

2     metrics.  It looks to me as though Mr. Lindell made a

3     statement, maybe oversold things in terms of the quality of

4     the data that was available, and then found himself unable

5     to provide or make good on that.  It looks like he used --

6     or somebody acting at his direction used Google Analytics,

7     got what there was to be gotten, and turned it over.  It

8     also looks like from their representation that there is

9     nothing else.  Is that your understanding of their

10    representation?

11         MR. BEDELL:  So one -- generally, yes, Your Honor.

12    One part is that those Google Analytics documents --

13    apologize if I misheard you, Your Honor -- but those have

14    not been turned over to us.  And that is the main focus of

15    what our motion is about.

16         THE COURT:  Have you seen what's attached to their

17    response?

18         MR. BEDELL:  Yes, I have, Your Honor.

19         THE COURT:  Okay.  What are those?

20         MR. BEDELL:  So those are documents from

21    FrankSpeech.

22         THE COURT:  All right.

23         MR. BEDELL:  FrankSpeech is a website owned by

24    Mr. Lindell.  That website did not come into existence until

25    roughly I want to say April of 2021.  And it did not have

1    any content for a few -- at least a few weeks after that.

2    And to clarify why that's important, Absolute Proof! -- you

3    know, our motion papers indicate that a lot of the

4    viewership metrics data that Mr. Lindell has publicly stated

5    as far as how many people have viewed his documentaries,

6    Absolute Proof! came out on February 5th, 2021, so it

7    predates the existence of FrankSpeech by months.

8            So analytics data from FrankSpeech, we are happy

9    to have it, but it is not the complete picture and it does

10   not accurately reflect the statements that Mr. Lindell has

11   made about the viewership for Absolute Proof!

12           THE COURT:  Okay.  So but what I'm trying to get

13   at is what is there that's out there that you are looking

14   for?  Because it looks like some of the things that

15   Mr. Lindell represented that he had, he might not actually

16   have had.  And that's probably embarrassing for Mr. Lindell,

17   but it doesn't mean that there is responsive -- there are

18   responsive documents that can be given to you.

19           MR. BEDELL:  So, Your Honor, our understanding of

20   defendants' representations that they made in their fifth

21   supplemental response to our first set of interrogatories,

22   specifically to the interrogatory in question, Number 15,

23   they said the Google Analytic data was collected but that

24   they viewed it as not responsive or -- otherwise they did

25   not want to produce it because of their contention that it

1    measured page views and they could not necessarily say that

2    that fully translated into a view of Absolute Proof! itself,

3    which we believe, put into the proper context, is not a

4    valid basis to withhold disclosing those documents that they

5    have.

6         THE COURT:  Well, that would depend upon the

7    actual phrasing of the request, wouldn't it?

8         MR. BEDELL:  Yes.

9         THE COURT:  What's the number?

10        MR. BEDELL:  Interrogatory Number 15, Your Honor.

11        THE COURT:  So it's:  Identify all metrics you use

12   to quantify the number of individuals who viewed an accused

13   program or defamatory broadcast and provide the

14   corresponding data for each accused program or defamatory

15   broadcast.

16        Why is it your contention that statistics showing

17   how many people went to a website but can't show how many of

18   those people then took the further step of opening up a

19   video is responsive to your Interrogatory 15?

20        MR. BEDELL:  So, Your Honor, what I would like to

21   point out there is that when Absolute Proof! was released on

22   February 5, 2021, defendants directed interested viewers to

23   Michaeljlindell.com.  If you went to Michaeljlindell.com on

24   February 5th, 2021, and for weeks thereafter, that was the

25   only thing on the page.  There was no other thing to click

1    on.  There was no other way to interact with the website.

2    It was just simply the video.

3         So it is our contention that it is highly relevant

4    because there's simply no reason for someone to be on that

5    website, and there's simply nothing else for them to do on

6    that website other than to watch that video because it is

7    simply the only thing there.  Which is why we believe that

8    since they have represented that they have this data -- and,

9    furthermore, in response to the motion to compel that led to

10   your August 1st order, they made that representation that

11   they had data supporting those claims as a way to avoid

12   actually being compelled to produce that documentation, and

13   so that's why we believe that they should be -- they should

14   be -- that's why we believe that Smartmatic is entitled to

15   those documents.

16        Now, unless you have other questions about the

17   metrics data --

18        THE COURT:  No.

19        MR. BEDELL:  -- there is obviously a third portion

20   of our motion to show cause also related to the August 1st,

21   2023 order.  As far as supplementing defendants' disclosures

22   to make clear whether they are withholding responsive

23   documents based on their objections, while it is

24   Smartmatic's preference that that order be followed to the

25   letter, we understand from the opposition papers the

1    defendants filed that they are not holding -- they are not

2    withholding documents that are responsive based on any

3    objections.  So in the interests of efficiency, we're

4    willing to accept that, and we can put that aside.

5            THE COURT:  All right.  So that's over and done

6    with?

7            MR. BEDELL:  Yes.

8            THE COURT:  All right.

9            MR. BEDELL:  We're willing to take defendants'

10   representation on that.

11           THE COURT:  Okay.  Thank you.

12           MR. BEDELL:  Sure.  And that's all, unless you

13   have any other questions for me?

14           THE COURT:  No, I don't.  Thank you.

15           MR. BEDELL:  Thank you.

16           THE COURT:  All right.  Mr. Kachouroff.

17           MR. KACHOUROFF:  Good afternoon, Your Honor.  I'll

18   be brief.  I only have two points to cover unless you have

19   other questions, and I figured we'd start with Requests for

20   Production 30 and 32.

21           THE COURT:  Uh-huh.

22           MR. KACHOUROFF:  There's a couple things that I

23   heard my colleague say, that they worked with us, that we

24   have not fully complied.  The first time I heard that they

25   want W-2s and K-1s.  K-1s, by the way, are tax returns.

 1    They are being worked on now this -- today.  So that will be

 2    turned over immediately.

 3              THE COURT:  It's not so much what he said as what

 4    the request calls for.  And the request --

 5              MR. KACHOUROFF:  Correct.

 6              THE COURT:  The way I read the papers, the request

 7    calls for documents that show Mr. Lindell's financial

 8    situation.  They give as an example tax returns.  And, in

 9    fact, I think they say including, but not limited to, tax

10    returns.

11              MR. KACHOUROFF:  Correct.

12              THE COURT:  Your response is you want tax returns

13    and you've got two tax returns and you are going to get two

14    more, so why aren't we finished here?  And I think the

15    fairly obvious rejoinder is tax returns were just an

16    example.  We actually want documents.

17              MR. KACHOUROFF:  You're correct, Your Honor.  And

18    in any civil matter -- in any civil -- in business, private

19    business, many private businessmen do private financial

20    statements.  That would be a document that I would be

21    looking for without even asking Mr. Lindell, which I did,

22    and he doesn't have them.  Why?  Because prior to this

23    onslaught of litigation, Mr. Lindell was self-sufficient.

24    He didn't require loans that way.

25              So I don't know whether he's got any -- I asked

1    him if he had any personal financial statements on him.  He

2    said he doesn't believe that he has them.  I've asked him to

3    look for them.  I'm confident that if they are there,

4    they'll turn up.

5                THE COURT:  Okay.  But --

6                MR. KACHOUROFF:  The best picture -- what's -- you

7    know, because if you look at their request --

8                THE COURT:  Just one -- before we move on.

9                MR. KACHOUROFF:  Yeah.

10               THE COURT:  If the taxes are being prepared, they

11   are being prepared from some raw data.  There are documents

12   that have been given to accountants or tax lawyers or

13   whoever is doing this.  And why would those papers not be

14   responsive to the plaintiffs' document request?

15               MR. KACHOUROFF:  I don't care whether they are

16   responsive or not, I'm going to turn them over.  As soon as

17   we have the tax returns and the audit is done, they can have

18   it.  We've got nothing to hide.

19               THE COURT:  Well, wait, wait.  The RFP -- well,

20   the request, I'll just call it, because I'm not clear which

21   category it goes into, but the request, which has now been

22   pending for eight months, is for these papers.  You're

23   saying that, Well, when the audit is finished, you will get

24   them.

25               MR. KACHOUROFF:  Candidly, I don't know what is in

1    the possession of the accountant.  I called him on the

2    phone.  I said, Look, they want all communications with the

3    IRS concerning the -- the audit.

4              THE COURT:  Right.

5              MR. KACHOUROFF:  He sent to me a fax of ten pages.

6    I turned around, Bates stamped it, shipped it off to them.

7              THE COURT:  Right.

8              MR. KACHOUROFF:  So they got that.  What other

9    documents there may be there that are -- I will absolutely

10   go back and look for those, Judge.  I'll personally go to

11   the accountant's office myself, and I will secure the file.

12   I'll go through it physically.  I won't rely upon him to do

13   that.  If there's any documents there, I don't see why they

14   can't have them.

15             THE COURT:  Well, I don't either.

16             MR. KACHOUROFF:  Okay.  I'm trying to be --

17             THE COURT:  And that sort of gets me to my next

18   point, which is, you indicate in your papers that you

19   suspect the plaintiffs of wanting to interfere with an

20   audit.

21             MR. KACHOUROFF:  That's correct.

22             THE COURT:  I'm not clear how getting copies of

23   papers is interfering with an audit.  They are not

24   whispering things in the IRS's ear.  They are not doing

25   anything of that sort.  They've made a request in civil

1    discovery for these papers.  There's been a motion, it's

2    been ruled on, and I'm just not clear of what -- you didn't

3    go into any detail about what this interference with an

4    audit was.

5              MR. KACHOUROFF:  Okay.  So first of all, Judge,

6    we've collapsed two categories by their admission.  And I

7    don't want to collapse them.  RFP 30 stands alone.  RFP 32

8    stands alone.  Request for Production Number 30 says,

9    "documents sufficient to show the financial condition."

10   Sufficient to whom?  Having advised numerous private

11   businesses over the years, I can tell you tax returns are

12   sufficient to show you the financial condition of an

13   individual.  Now --

14             THE COURT:  Okay.  Let's take your point.  I

15   didn't see that response in your papers.  I haven't heard

16   that response to this point in this litigation.  I'm hearing

17   it for the first time that sufficient that you, in fact,

18   will be in compliance when you've turned over the tax

19   returns.

20             MR. KACHOUROFF:  That's correct.

21             THE COURT:  And that's not anything that's been --

22             MR. KACHOUROFF:  Well, I apologize.

23             THE COURT:  -- heard before.

24             Well, no, you don't need to apologize, but I

25   thought that we were having a discussion about these

1    accountant work papers.  You are going to go and look for

2    them.  You are going to go through the file.  You're going

3    to turn them over.  And yet at the same time you are saying,

4    if I understand you correctly, that those aren't really

5    necessary because the tax returns themselves will be

6    sufficient.

7          MR. KACHOUROFF:  Correct.  But I'm also trying to

8    head off additional proceedings in the future, because I

9    want to get this case trial ready.  I want to finish it up

10   and get it done.

11         THE COURT:  Okay.  Good.

12         MR. KACHOUROFF:  You know, that's my goal.  And I

13   think there's -- and I want to address that.  I know that's

14   not necessarily before the Court, but I want to make sure I

15   answer the Court's questions on Request For Production 30

16   and 32 first.  So I maintain that we will have complied with

17   30.

18         In terms of 32, documents relating to any IRS

19   audit, we've turned that over.  Now if they want travel

20   receipts, if they want the shoe box full of business

21   receipts -- and I'm being -- I'm using a metaphor here

22   because this isn't --

23         THE COURT:  I understand.

24         MR. KACHOUROFF:  -- I mean, they want that and

25   it's in a form that I can produce it, I will.  If it's

1    literally in a bunch of file boxes, you know, if they'll pay

2    for the cost of copying, I'll have it copied and sent out.

3    But I think it's absurd to say that they don't have a

4    sufficient view of what his financial condition is.

5              THE COURT:  Well, whether it's absurd or not, that

6    horse has sort of left the barn.  We had hearings on this --

7    back in August we had -- or before that.  There's been an

8    order issued in August.  There's been an order issued in

9    October.  And, you know, if there are continuing objections

10   to that order, you know, they should have been either

11   addressed in a motion for reconsideration directed to me or

12   they should have been appealed to the District Court Judge.

13   That didn't happen.  These orders are final, and they need

14   to be complied with.

15             MR. KACHOUROFF:  I have no objections to the

16   orders.  I think we are complying with them.  And maybe

17   we're missing -- I don't know where the Court thinks we're

18   not complying, I'll put it that way.

19             THE COURT:  Where I think you're not -- where I

20   have questions about whether you are complying is you are

21   indicating that, yes, there are documents.  Those documents

22   would be responsive to a request.  You're saying that those

23   documents might be superfluous to a request, but that's a

24   different thing to say than not responsive.

25             So you're saying once the tax returns are done,

1    we'll turn over the tax returns and that will satisfy one of

2    the two RFPs, but at the same time, you are acknowledging

3    that there are documents that are responsive.  And if the

4    contention is going to be the tax returns standing alone are

5    sufficient to satisfy this, then I think that's something

6    that should have been heard last fall, not now.

7            MR. KACHOUROFF:  As you know, I wasn't here last

8    fall.

9            THE COURT:  I know you weren't, but you took over

10   the case.

11           MR. KACHOUROFF:  I did.

12           THE COURT:  And you are standing there, and so I

13   can't talk to Mr. Parker or Mr. Kaplan about this.

14           MR. KACHOUROFF:  Right.

15           THE COURT:  I have to talk to you.

16           MR. KACHOUROFF:  So I would imagine there are

17   documents responsive to 32.  But as I have indicated to my

18   counsel, as soon as -- and we expect the IRS audit to be

19   over in the next few weeks.  I said in my e-mail or my

20   response, out of an abundance of caution, September.  I

21   don't think it's going to be September.  I'm going to give

22   the Court my best guess is they'll get it probably by the

23   end of July at the latest.

24           THE COURT:  Why do you need to wait for the audit

25   to be over before you turn over these papers?

1          MR. KACHOUROFF:  Well, for starters, you know, I

2    did not read the request, Request 32, documents relating to

3    any IRS audit, it said documents and communications.  I

4    wasn't thinking that they wanted the shoe box full of

5    receipts.  In fact, they haven't said now what documents

6    they want.  They just want documents they want to go search.

7    And I don't have anything to hide.  My client doesn't have

8    anything to hide.  I'm glad to send it.

9          THE COURT:  Okay.  Then let's get them out.

10   But --

11         MR. KACHOUROFF:  Right.  But --

12         THE COURT:  -- but in answer to the question I put

13   to you, sir, why do you need for the audit to be over?

14         MR. KACHOUROFF:  Well, the answer is I don't need

15   for the audit to be over in order to take the shoe box full

16   of receipts and go get them copied.  That's the answer.

17         THE COURT:  All right.  Okay.

18         MR. KACHOUROFF:  If that's what the Court wants me

19   to do, I'll do it right away.

20         THE COURT:  That's what I want.

21         MR. KACHOUROFF:  Okay.  We will do that right away

22   then.

23         THE COURT:  Okay.

24         MR. KACHOUROFF:  I will get that done.  I'll have

25   that turned over to them by Monday or Tuesday if I can get

1    the accountant's files by that time.  I'm going to do the

2    best I can to get it done by that time.

3                THE COURT:  All right.  You'll let me know?

4                MR. KACHOUROFF:  Absolutely, Judge.

5                THE COURT:  We will put a tickler on the chamber's

6    calendar, and we will wait to hear from you.

7                MR. KACHOUROFF:  Would you like me to file a

8    notice with the Court?

9                THE COURT:  Yes, please.

10               MR. KACHOUROFF:  I'll do that.

11               THE COURT:  All right.

12               MR. KACHOUROFF:  Secondly, Judge, I want to move

13   on to -- unless the Court has any other questions.

14               THE COURT:  No.

15               MR. KACHOUROFF:  He said the main focus of this

16   motion was the metrics.  You know, the idea that -- I gave

17   them a full explanation.  Mr. Lindell may have oversold, as

18   the Court has said, and then realized after the fact that,

19   hey, wait a minute, this isn't -- these aren't unique

20   clicks.  We can't use this information.  He never kept it.

21   That's the answer they got three different times before.

22   It's the same answer they get today.

23               In the hearing, there was never any representation

24   that we had data.  I looked.  I read the hearing transcript.

25   I didn't see that.  In fact, it said if we had -- we'll look

1    again, because they are incessantly asking the same

2    questions over and over.  They want these documents, they

3    want these documents.  And so I guess they think if they

4    keep asking that somehow they'll magically appear.  Well, I

5    did the work that my prior counsel did, I did it again, I'm

6    annoyed about it.  It's done, but guess what, they're not

7    there.  What we had is what was turned over.

8          If they want the same Google Analytics, nothing

9    stops them from going to the Google Analytics site and doing

10    it themselves.  I'm not going to go create a brand new

11    report and manufacture evidence after the fact just to

12    satiate their desire to see that Google Analytics page.  It

13    doesn't exist.

14          THE COURT:  Well, wait.  It exists but you won't

15    go get it.

16          MR. KACHOUROFF:  No.

17          THE COURT:  No, the Google Analytics exists.  You

18    can go and query Google Analytics, generate a report, and

19    turn it over.  You're not going to.  And if I can complete

20    your thought for you, that's because that report, having not

21    been created, is not in your possession, custody, or

22    control?

23          MR. KACHOUROFF:  That's correct.

24          THE COURT:  Okay.  So the Google Analytics data is

25    out there.  It's equally accessible to both parties.  Is

1    that your contention?

2         MR. KACHOUROFF:  That's my contention.  Yes,

3    Judge.

4         THE COURT:  And they can slice it, dice it, and

5    print it up --

6         MR. KACHOUROFF:  However they wish --

7         THE COURT:  -- however configuration they wish.

8    All right.  Understood.  All right.

9         MR. KACHOUROFF:  Thank you, Judge.  That's all I

10   have for now, but I do want to address scheduling orders

11   with the Court after this is --

12        THE COURT:  Let's wrap this up first.

13        MR. KACHOUROFF:  Thank you.

14        THE COURT:  Any rebuttal?

15        MR. BEDELL:  Yes, Your Honor.

16        Your Honor, we're here on a motion to show cause,

17   not a motion to compel.  We -- what I just heard was

18   confirmation that defendants possess responsive documents,

19   and they are -- and they have not given them to us.  This

20   isn't our negotiation, our meet and confers after first

21   issuing this discovery request.  This isn't an oral argument

22   in front of you for a motion to compel.  This is months

23   later that we are finally here frustrated that we have not

24   gotten these documents that defendants' counsel has admitted

25   exists.  But we are here on a motion to show cause.

24

1          THE COURT:  No.  I understand what we're here on.

2    I'm not under any misapprehension.  But Mr. Kachouroff has

3    said that the documents will be with you Monday or Tuesday

4    of next week.  Today is Friday.

5          I am not -- I am vanishingly unlikely, let's put

6    it that way, to certify this for Judge Bryan if you get what

7    you want within two business days.

8          MR. BEDELL:  And that's understandable,

9    Your Honor.

10          THE COURT:  Well, thank you.

11          MR. BEDELL:  One thing I will point out that

12    defendants' counsel did say was that tax returns on their

13    own would be sufficient.  While we also agree with your

14    point that that should have been raised earlier, we would

15    also argue it's not.  Especially when you consider, in this

16    particular instance, where -- you know, while obviously

17    Smartmatic is not privy to the reasoning for the IRS audit,

18    it hypothetically could call into question the accuracy of

19    the documentation on the tax returns we have received.  And

20    so in that sense, the tax returns on their own would not be

21    sufficient and the raw data that constitutes those tax

22    returns are --

23          THE COURT:  Are you saying that receipt of an

24    audit notice from the IRS is in some way prima facie

25    evidence of financial skullduggery?

1           MR. BEDELL:  I don't know if I would go that far,

2      Your Honor.  It just -- we could not rule it out.

3           THE COURT:  Well, you can never rule it out, with

4      or without an IRS audit notice.  Anybody can be crooked;

5      right?

6           MR. BEDELL:  Exactly, which is why --

7           THE COURT:  Okay.

8           MR. BEDELL:  And we're not necessarily insinuating

9      that is the case here, but that is why I would disagree with

10     defendants' counsel's representation the tax returns alone

11     would be sufficient to understand someone's financial

12     position.

13          THE COURT:  I think defense counsel --

14     Mr. Kachouroff's point was that in the context of American

15     business, if you ask for documents sufficient to show

16     someone's financial situation, several years of tax returns

17     are by, I guess, custom of the trade, if you will, viewed as

18     sufficient, and that is what you are going to get.  You did

19     not send out a request for all documents.  You sent out a

20     request for documents sufficient to show.

21          As you know, I have been very, very careful, going

22     back to the voting machine controversy that we had some

23     months ago, very careful and very precise in how discovery

24     requests in this case are read.  And documents sufficient to

25     show, as far as I'm concerned, means documents sufficient to

1    show, not all documents.

2          MR. BEDELL:  And, Your Honor, what I would say

3    with that is then at least to -- you know, while we still

4    stand -- while we still stand on the representation that it

5    wouldn't be sufficient, as to 2022 and 2023, there are

6    documents currently in possession of defendants that are

7    responsive that they have not given us.  And I understand

8    that his representation is he will provide them.

9          THE COURT:  The representation is you are going to

10   have them very soon.

11         MR. BEDELL:  Yes.

12         THE COURT:  Okay.

13         MR. BEDELL:  And so unless you have other

14   questions, Your Honor --

15         THE COURT:  No, I don't have any other questions.

16   I have an observation which is that, you know, it's

17   unfortunate that a motion had to be filed in order for us to

18   get here, but let's see where we are next week.  But as I

19   say, I am not going to put a hearing of this seriousness on

20   Judge Bryan's calendar if you are going to get what you have

21   asked for tout de suite.  If you don't get it, that's going

22   to be a different story.  But I'm confident that I will be

23   getting a notice from Mr. Kachouroff next week, and if it

24   turns out that it's not as advertised or if the notice

25   doesn't come in, I know what to do.

1          MR. BEDELL:  Okay.

2          THE COURT:  All right?

3          MR. BEDELL:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          All right.  Mr. Kachouroff, you wanted to be heard

6    on scheduling?

7          MR. KACHOUROFF:  Yes, Your Honor.

8          THE COURT:  Now I did not bring out with me the

9    scheduling order in this case, so --

10         MR. KACHOUROFF:  Yeah, I don't think you need to.

11         THE COURT:  Okay.

12         MR. KACHOUROFF:  And respectfully, the scheduling

13   order as it has morphed is somewhat incoherent internally.

14         THE COURT:  I'm sure it is.

15         MR. KACHOUROFF:  And I would like the Court to

16   kind of start afresh with a schedule.  We don't have to make

17   it a long schedule, but there's a couple things, like fact

18   discovery ends July 9th, expert rebuttal reports are due

19   July 9th.

20         THE COURT:  That seems ambitious.

21         MR. KACHOUROFF:  It does in my view.

22         THE COURT:  Okay.

23         MR. KACHOUROFF:  What I'd like to do is set out --

24   I do want to get this case trial ready and I want to talk

25   about a real-world, practical solution.  A long time ago

1    when I was a law clerk, my judge had me draft what I call

2    the order from hell for the parties.  And I can't believe

3    I'm bringing it up to you now because I'm suggesting the

4    Court should do that with us.

5            I think in the scheduling order we should set up

6    one day to hear all discovery disputes, because this morning

7    I got another e-mail covering some of the same topics from

8    my colleagues asking for additional -- they are setting up

9    another round of disputes in order to come before the Court.

10   And all that does is it violates the Federal Rule of Civil

11   Procedure Rule 1.  And that rule says that we are to

12   administer the rules so that they are speedy, just, and

13   inexpensive.  And this is not just the Court's duty.  It's

14   the parties' duty.

15           And I think one way to achieve that inexpensive

16   result, without having to come to court all the time and

17   waste judicial resources, is to set up that order and that

18   order looks like this.  The dispute is described and the

19   parties have to work together to fill out each column.  And

20   there's two columns on the other side of it which say, you

21   know, this is the dispute, this is our position, this is

22   their position.  And then there's a third column that's

23   blank, and that's for the Court to use as a worksheet during

24   the hearing.

25           I'm trying to make it as painless as possible for

1    the Court, yet at the same time have all the discovery

2    disputes resolved at one time.  They are going back to last

3    July, last September to address things that I'm not -- I

4    have to go back to the other firm now to figure out, well,

5    you were in a position of homoeostasis, nothing was going on

6    with these discovery battles, why are they coming up now?

7    Why are they waiting 8 months to do this?

8            And I think part of it is the scheduling order.  I

9    think the other part is we're just not thinking of this in a

10   real-world, practical way of setting up dissolution in one

11   date.  Set it up in the future.  This is your date, guys.

12   This is when you can bring your motions to compel or what

13   have you.  But as the Court order stands now, it doesn't

14   allow for that.

15           I have got some more disclosures that I'll be

16   doing, fact disclosures, about Smartmatic, and there's going

17   to be additional witnesses.  And I have already offered to

18   my colleagues they have almost met their 25-deposition

19   limit.  My response to them is, I have no problem going

20   beyond that if you think you need that.  We can do that.

21   You can go ahead and depose these folks, because it is kind

22   of a late notice on the disclosure.  We are getting near the

23   end of the discovery period.  So I'm trying to be

24   reasonable.  I want to get this case trial ready, so that's

25   my argument to the Court.

1          THE COURT:  All right.  Thank you.  Any response?

2          MR. BEDELL:  Yes, Your Honor.  So, Your Honor,

3   first, while I appreciate defense counsel's interest in

4   efficiency, that is not before the Court today, which is

5   kind of indicative of how this has been going since the fact

6   discovery period was reopened here.  Smartmatic has been

7   diligent in raising issues to Your Honor when we find, you

8   know, timely and to the best of our abilities.  We don't

9   believe the schedule needs to be changed.  We think that we

10  can meet all of our deadlines and we can get everything that

11  we need to do and get this case trial ready.

12         THE COURT:  How are you going to do expert

13  rebuttal on the 9th of July when fact discovery doesn't

14  close until the 9th of July?

15         MR. BEDELL:  Our understanding is we will be

16  prepared.  We think --

17         THE COURT:  No, no, no.  How are you going to do

18  it?  I mean, you don't have opening experts yet, how can you

19  have rebuttal experts?

20         MR. BEDELL:  My understanding is we do have

21  opening experts.

22         THE COURT:  Okay.  All right.

23         MR. BEDELL:  Yes, we've exchanged opening.

24         THE COURT:  Okay.  All right.

25         MR. BEDELL:  I'm sorry, Your Honor.  I apologize.

1    Part of it is --

2            THE COURT:  I expected that to follow fact

3    discovery, but okay.

4            MR. BEDELL:  Right.  Yeah, this case -- the

5    original schedule was a little bit overlapping as far as

6    fact and expert discovery --

7            THE COURT:  All right.

8            MR. BEDELL:  -- has been concerned.  And I

9    apologize if I'm misspeaking on certain issues.  Obviously I

10   was prepared to come today to argue a motion to show cause

11   and not necessarily discuss the scheduling order.

12           THE COURT:  Right.

13           MR. BEDELL:  A couple things I did want to

14   highlight is first just that our position at the moment is

15   that we can meet the schedule as is.  We don't believe that

16   any modification to the discovery schedule is necessary.

17           And one point of clarification is the e-mail that

18   my colleague sent to Mr. Kachouroff this morning as far as

19   other disputes that Smartmatic may need to bring in front of

20   you, that was a proposal to use your IDR process because of

21   the reasons that Mr. Kachouroff rightly acknowledged of

22   efficiency and making sure that at this late stage in the

23   process, that we're doing so not necessarily -- we're not

24   trying to overlitigate this case.  There are issues that

25   we'd like to bring in front of you, but we have indicated to

1   him that we'd be willing to use the more informal IDR

2   process to facilitate that in a more expedited manner.

3          THE COURT:  All right.  All right.  Thank you all

4   very much.  Mr. Kachouroff, I'll wait for that notice.

5          MR. KACHOUROFF:  Yes, sir.  Yes, Judge.

6          THE COURT:  And I think that that is it for this

7   afternoon.

8          MR. KACHOUROFF:  Thank you, Your Honor.

9          THE COURT:  Thank you all very much.  Court is

10  adjourned.

11      (Court adjourned at 2:33 p.m.)

12                          *     *     *

13

14

15      I, Erin D. Drost, certify that the foregoing is a

16  correct transcript from the record of proceedings in the

17  above-entitled matter to the best of my ability.

18

19          Certified by:  *s/ Erin D. Drost*

20                          Erin D. Drost, RMR-CRR

21

22

23

24

25