# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V. and SGO CORPORATION LIMITED, | Case No. 22-cv-00098- WMW-JFD |
| Plaintiffs, | |
| v. | **AMENDED NOTICE OF 30(b)(6) DEPOSITION OF PLAINTIFFS** |
| MICHAEL J. LINDELL and MY PILLOW, INC., | |
| Defendants. | |

**TO:    PLAINTIFFS NAMED ABOVE AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the undersigned will take the deposition upon oral examination of Plaintiffs Smartmatic USA Corp., Smartmatic International Holding BV, and SGO Corporation Limited's designated representative or representatives before a Notary Public or other individual qualified to administer oaths at a time and place to be determined between Plaintiffs and Defendants.

**DEFINITIONS**

1.    The "2020 Presidential Election" means all vote casting, vote collection, vote counting, vote scanning, vote tabulation, vote reporting, or poll administration activities connected with the election of the President of the United States in November 2020, including preparations for any of these activities and early voting activities conducted before November 2020.

2.    "Knowledge" means awareness of information of each and every act, omission, incident, event, condition, piece of evidence, or circumstance pertinent to the matter requested.

3.    "Code Reuse" or "Software Reuse" means a software development technique where existing code components or modules are leveraged to create new software, rather than writing everything from scratch.

4.    "County" refers to a county, parish, or other equivalent subdivision of a State or Territory.

5.    "Cybersecurity Breach" means any incident of an unauthorized person gaining access to a computer, computer network, or computerized product so as to be able to read, copy, delete, change, or add software or other data stored on that computer, computer network, or computerized product. Cybersecurity Breach includes both any real-time intrusion and any intrusion through the transmission of a virus, computer program, or other form of code. A "suspected Cybersecurity Breach" means any incident in which someone suspected a Cybersecurity Breach had happened, was happening, or would soon happen, without regard to whether that suspicion was ever confirmed or disconfirmed.

6.    "Plaintiffs" and "Smartmatic" means Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively "Smartmatic"), and any representative, director, officer, employee, or agent of any of those entities.

7.    "Hardware" means a physical object that makes up part or all of a computerized device. Hardware includes, but is not limited to, any computer, server, scanner, router, modem, copier, printer, mobile phone, and tablet, and the constituent components of any of these.

8.    "Mr. Lindell" refers to Defendant Michael Lindell and any person acting with authority to act on his behalf.

9.    "My Pillow" means My Pillow, Inc. including any director, officer, employee, or agent of My Pillow, Inc. acting with authority to act on behalf of My Pillow, Inc.

10.     "Software" means any electronically stored information that has the ability or potential ability to direct the operation of any Hardware. Software includes, but is not limited to, computer programs, source code, patches, updates, revisions, upgrades, and executable electronic files.

11.     "State" means any political subdivision of the United States of America, including the fifty states represented in the United States Senate, the District of Columbia, and any territory administered by the United States of America.

12.     "Smartmatic Product" and "Smartmatic Products" mean the products or services identified in Paragraphs 6, 8, 10, 26, 29, 31, 42, and 49 of the Supplemental Complaint or the corresponding paragraphs of a subsequent pleading.

13.     "Supply" or "Supplied" means manufacture, distribute, lease, sell, deliver, permit to use, or otherwise provide.

14.     "Support" or "Supported" means to directly or indirectly provide services to assist or facilitate the use, management, or operation of an electronic device.

15.     "You," "you" and "your" mean Smartmatic and any persons purporting to act on Smartmatic's behalf.

16.     "Document" has the broadest possible meaning consistent with Federal Rule of Civil Procedure 34(a)(1)(A). The term "Document" also specifically includes all electronic documents, electronic Communications, and other "electronically stored information" and all attachments thereto.

17.     "Communication" or "Communications" means a transfer of information in any form, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, instant messages (such as, but not limited

3

to, Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, Slack messages or other internal messaging system communications, social media communications or posting on sites including but not limited to Facebook, Twitter, YouTube, Instagram, Gab, or Parler (including any direct messages), website postings, internet chat-room postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries of investigations. The term "Communications" includes internal communications and communications with third parties.

20.     "Concerning" means without limitation, containing, reflecting, referring to, alluding to, discussing, relating to, describing, evidencing, supporting, or constituting.

21.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

22.     The terms "related to," "relates to" or "relating to" mean, refer to, pertain to, reflect, record, describe, allude to, respond to, announce, explain, discuss, show, study, analyze or constitute or be in any other way connected with the matter discussed.

23.     The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neutral form shall include every gender.

**TOPICS**

1.      Knowledge concerning Plaintiffs' corporate structure, including, but not limited to, the relationship between the three Plaintiffs from January 1, 2016, to the present, and Plaintiffs' executives and officers and their roles and duties.

2.      Knowledge concerning Plaintiffs' ownership from January 1, 2005, to the present, including all current and prior shareholders, stakeholders, equity positions, and angel investors, including, but not limited to: all statements related to prior and current ownership interests in Plaintiff referenced in Smartmatic-Lindell 00079200; Plaintiffs' connections with Bizta and CANTV; and the ownership of all Plaintiffs' corporate or company shareholders.

3.      Knowledge concerning any prior or current relationships, investments or loans between Plaintiffs and the National Electoral Council (CNE) of Venezuela, or the Sociedad de Capital de Riesgo ("SCR").

4.      Knowledge concerning Plaintiffs' or Los Angeles County's engagement of any data test laboratory, data certification entity, or any other third-party data security person or entity in connection with Los Angeles County voting equipment (including all Hardware and Software) used in the 2020 Presidential Election.

5.      Knowledge concerning any contracts or other agreements cancelled or terminated between any Smartmatic entity and any governmental agency (or any other contracting party) for the time spanning January 1, 2016, to the present in any jurisdiction, including the following: Albania, Argentina, Armenia, Australia, Canada, Brazil, Belgium, Bulgaria, El Salvador, Estonia, Georgia, Germany, Honduras, Kenya, Los Angeles County, California, Mexico, Norway, Pakistan, the Philippines, Sierra Leone, Singapore, Uganda, the United Kingdom, and Zambia.

6.      Knowledge concerning any contracts or other agreements entered into by and between any Smartmatic entity and any governmental agency (or any other contracting party) for the time spanning January 1, 2016, to the present in any jurisdiction, including the following: Albania, Argentina, Armenia, Australia, Canada, Brazil, Belgium, Bulgaria, El Salvador, Estonia, Georgia, Germany, Honduras, Kenya, Los Angeles County, California, Mexico, Norway, Pakistan, the Philippines, Sierra Leone, Singapore, Uganda, the United Kingdom, and Zambia.

7.      Knowledge concerning the jurisdictions that may not, or will not, do business with Plaintiffs due to alleged defamation following the 2020 election, and knowledge of the evidentiary basis for these claims, including, but not limited to, the specific jurisdiction of  each lost opportunity, the basis for Plaintiffs' claim that but for alleged defamation they would have won the business, the election management platform or voting technology manufacturer that won the business, the anticipated revenue, and forecasted profit loss.

8.      Knowledge concerning the evidentiary and financial basis for Plaintiffs' allegation in paragraph 365 of Plaintiffs' First Supplemental Complaint that "prior to the 2020 U.S. election, based on its historical business and pipeline, Smartmatic's business was valued in excess of $3.0

5

billion based on a modest multiplier. Now, following Mr. Lindell's publication of his defamatory statements, Smartmatic's business is valued at less than $1 Billion."

9.      Knowledge concerning any commercial connection between Plaintiffs and any other voting technology manufacturer and election management software company (including, but not limited to, Dominion, ES&S, Hart InterCivic), including, but not limited to, Plaintiffs' sale of Sequoia Voting Systems, and the PCOS Framework License Agreement dated October 9, 2009, between Smartmatic International Corporation and Dominion Voting Systems International Corporation.

10.     Knowledge concerning all and any valuation of Plaintiffs from January 1, 2016, to the present, including any loss in value to Plaintiffs' business lines.

11.     Knowledge concerning Plaintiffs' financial records from January 1, 2015, to the present, including, without limitation, profit and loss statements, income statements, cash flow statements, balance sheets, budget forecasts, records of accounts receivable and accounts payable, and statements of changes in capital.

12.     Knowledge concerning any investigation by any governmental entity into allegations of Plaintiffs' business practices in the electronic voting machine industry, including, without limitation, the investigation commenced in 2019 by the United States Department of Justice into potential violations of the Foreign Corrupt Practices Act.

13.     Knowledge concerning the evidentiary and financial basis for the alleged damages incurred by Plaintiffs, resulting from defamatory statements alleged in the First Supplemental Complaint made by either Defendant, including, but not limited to, as alleged in First Supplemental Complaint Paragraphs 358 to 365.

14.     Knowledge concerning the allegedly defamatory statements made about Plaintiffs and the 2020 Presidential Election by Donald Trump, Rudolph Guiliani, Michael Flynn, Patrick Byrne, and the parties identified in Plaintiffs' Answer to Interrogatory No. 27.

15.     Knowledge concerning efforts made by Plaintiffs to mitigate their damages – including the use of public relations and/or reputation management firms – incurred as a result of allegedly defamatory statements made by Defendants regarding Plaintiffs and the 2020 Presidential Election.

16.     Knowledge concerning efforts made by Plaintiffs to manage their reputations, including the use of public relations and/or reputation management firms and/or reputation surveys, from January 1, 2014, through current, and the reasons for those efforts, including without limitation, the name "Smartmagic" used in reference to Smartmatic, the United States Government's investigation into Smartmatic over allegations of bribery in the Philippines, Plaintiffs' alleged connections with Venezuela and Hugo Chavez, and the indictment of several Smartmatic and Commission on Elections (Comelec) personnel in the Philippines.

6

17.     Knowledge concerning any expenses Plaintiffs allege they have incurred as a result of alleged wrongful acts by any Defendant.

18.     Knowledge concerning the facts and evidence to support Plaintiffs' allegation in Paragraph 374 of the First Supplemental Complaint that Defendants knew that their allegedly defamatory statements about Plaintiffs were false and/or recklessly disregarded the truth or falsity of their statements about Plaintiffs.

19.     Knowledge concerning the facts and evidence to support Plaintiffs' allegation in the First Supplemental Complaint that Defendants acted deliberately and maliciously to injure Plaintiffs out of ill will.

20.     Knowledge concerning the facts concerning when and how Plaintiffs first identified Mr. Lindell's statements about Plaintiffs and the 2020 Presidential Election as defamatory.

21.      Knowledge concerning the facts concerning distinguishing damages caused specifically by Defendants' allegedly defamatory statements from damages caused by other publishers of statements about Plaintiffs and the 2020 Presidential Election, including, but not limited to, Sidney Powell, Rudy Giuliani, Fox News, Donald J. Trump, Jeanine Pirro, Maria Bartiromo, Lou Dobbs, Newsmax and One America News Network.

22.     Knowledge concerning the goods and services Plaintiffs provided to Los Angeles County in connection with the 2020 Presidential Election, including, but not limited to, knowledge of Plaintiffs responsibilities pursuant to the agreement with Los Angeles County (VSAP Contract #18-003 and all subsequent amendments or extensions), and invoices tendered to Los Angeles County pursuant to the agreement.

23.     Knowledge concerning the development of the source code utilized by Los Angeles County in the 2020 Presidential Election, including, but not limited to, use of the industry practice of Code Reuse or Software Reuse.

24.     Knowledge concerning any actual or perceived security vulnerabilities in any component of the Smartmatic election equipment used by Los Angeles County in the 2020 Presidential Election, including, but not limited to, vulnerabilities related to: ballot box integration into the ballot marking devices; use of QR codes or bar codes in the BMD VSAP device ballot printing and the State of Colorado's decision to ban them; the presence or lack of an auditable paper trail; and releasing the VSAP source code for peer review (per California State Bill 360).

25.     Knowledge concerning the similarities to cyber security threats and vulnerabilities between the State of Georgia's 2020 presental election voting system, and the Los Angeles County 2020 election voting system, including, but not limited to the vulnerabilities identified by University of Michigan computer science professor Alex Halderman in his July 1, 2021 report. Accessible                                                                                                            at: https://coaltionforgoodgovernance.sharefile.com/share/view/s45bba4420732410ab2db5edb685a50c2

26.     Knowledge concerning any hack or Security Breach of any Smartmatic Product and/or voting system created by Smartmatic, including any electronic voting system or voting equipment.

27.     Knowledge concerning any potential connectivity between the voting system used in the Los Angeles County 2020 Presidential election and the internet, including, but not limited to, connectivity vulnerabilities with a Universal Serial Bus (USB) connection in high secure systems, lack of logging and visibility of/into network traffic, potential malicious devices coming on the network undetected, and removable media being physically connected within the network.

28.     Knowledge regarding any communication to or from any and all federal government entities identified below and Plaintiffs, for the time period January 1, 2016 to the present, relating to cyber security, hacking, and vulnerabilities in any component of the election equipment used by Los Angeles County in the 2020 Presidential Election:

- Cybersecurity and Infrastructure Security Agency ("CISA"), including specifically the Election Infrastructure Government Coordinating Council ("GCC"), the Election Infrastructure Sector Coordinating Council ("SCC"), and the Election Infrastructure ISAC ("EI-ISAC");
    - U.S. Election Assistance Commission;
    - U.S. Department of Justice;
    - Federal Bureau of Investigation;
    - Department of Homeland Security;
    - Department of Defense;
    - Office of the Director of National Intelligence;
    - National Security Agency;
    - Central Intelligence Agency;
    - Joint Cyber Defense Collaborative;
    - Federal Emergency Management Agency;
    - Federal Voting Assistance Program;
    - National Institute of Standards and Technology;
    - U.S. Cyber Command; and
    - U.S. Postal Service.

29.     Knowledge regarding Smartmatic's damages that are alleged to be caused by defamation relating to the 2020 Presidential election. including, but not limited to, knowledge of:
- The computation of each category of damages claimed by Smartmatic.
- The methodology or analysis on how the damages were calculated.
- The documents or other evidentiary material on which each computation is based, including materials bearing on the nature and extent of injuries suffered.
- The drafting, editing, or completing Appendix A, in Smartmatic's Second Supplemental Answer to Interrogatory No. 20, including, but not limited to, the identity of the people or software programs involved in drafting Appendix A, earlier drafts of the Appendix A, the date when the drafts and final version were created.
- Every Opportunity listed in Appendix A, in your Second Supplemental Answer to Interrogatory No. 20, information relied upon in calculating the "Initial Probability" and the date this calculation was performed.

8

- Every Opportunity listed in Appendix A in your Second Supplemental Answer to Interrogatory No. 20, information relied upon in calculating the "Probability as of February 2021" and the date this calculation was performed.

- Every Opportunity listed in Appendix A in your Second Supplemental Answer to Interrogatory No. 20, and knowledge regarding the lost contractual opportunities (or contractual opportunities with a reduced probability) for which Defendants are alleged to be a substantial factor and the facts and documents supporting this claim.

- The facts and documents supporting the claim that the following jurisdiction will not do business with Smartmatic due to defamatory statements about Smartmatic: Angola; Bolivia; Brazil; Colombia; Denmark; Democratic Republic

    of the Congo; Ecuador; El Salvador; Ghana; Guatemala; Haiti; Jamaica; Kazakhstan; Louisiana; Maryland; North Macedonia; Paraguay; Peru; Singapore; Spain; and Taiwan. (See Smartmatic's Second Supplemental Answer to Interrogatory No. 20, page 24-27).

- The facts and documents supporting the claim that Smartmatic's business prospects or opportunities have been harmed or diminished as a result of defamatory statements in the following jurisdictions: Argentina; Armenia; Australia; Bangladesh; Bulgaria; Canada; Costa Rica; Chile; Czech Republic; the Dominican Republic; France; Greece; Honduras; Indonesia; Iraq; Kenya; Kyrgyzstan; Liberia; Mexico; Nepal; New Zealand; Nigeria; Panama; the Philippines; Puerto Rico; Portugal; Sri Lanka; Thailand; Sierra Leone; Uganda; the United Kingdom; the United States; and Zambia. (See Smartmatic's Second Supplemental Answer to Interrogatory No. 20, page 24-27).

30.     Knowledge regarding facts and evidence that show Defendants alleged defamatory statements, as alleged in Plaintiff's First Supplemental Complaint, reached, were heard by, or in any way influenced the jurisdictions Smartmatic is claiming their business prospects or opportunities have been harmed or diminished as a result of the Defendants defamatory statements.

31.     Knowledge of all Smartmatic's software and hardware developed for the 2020 Los Angeles County Presidential Election, including source code, architecture diagrams, sub-components, including database systems such as MS SQL Server, issue-tracking (i.e. bug-tracking) software/database plus all issues tracked and resolved between 2016 and the present, and all release-notes provided with software releases between 2016 and present.

32.     Knowledge of the facts and evidence concerning the DOJ investigation and criminal indictment of Juan Andres Donato Bautista styled as *United States of America v. Juan Andres Donato Bautista*, Case No. 1:23-mj-03829 LOUIS in the U.S. District Court for the Southern District of Florida.

Dated: June 27, 2024

**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff* (Bar No. 44216)
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

Douglas G. Wardlow (MN Bar #339544)
Jeremiah D. Pilon (MN Bar #392825)
1550 Audubon Rd.
Chaska, MN 55318
Telephone: (952) 826-8658
doug@mypillow.com
jpilon@mypillow.com

ATTORNEY FOR MY PILLOW, INC. AND
MICHAEL LINDELL

*Admitted *Pro Hac Vice*