# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V. and SGO CORPORATION LIMITED,<br><br>      Plaintiffs,<br><br>    v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>      Defendants. | Case No. 0:22-cv-00098-WMW-JFD |

# EXPERT DECLARATION OF BENJAMIN R. COTTON

**September 22, 2023**

I, Ben Cotton hereby declare and state as follows:

1) I am over the age of 18, and I understand and believe in the obligations of an oath. I make this declaration of my own free will and based on first-hand information and my own personal observations.

2) I am the founder of CyFIR, LLC (CyFIR).

3) I have a master's degree in information technology management from the University of Maryland University College. I have numerous technical certifications, including the Certified Information Systems Security Professional (CISSP), Microsoft Certified Professional (MCP), Network+, and Certified CyFIR Forensics and Incident Response Examiner.

4) I have over twenty-six (26) years of experience performing computer forensics and other digital systems analysis.

5) I have over nineteen (19) years of experience as an instructor of computer forensics and incident response. This experience includes thirteen (13) years of experience teaching students on the Guidance Software (now OpenText) EnCase Investigator and EnCase Enterprise software.

6) I have testified as an expert witness in state courts, federal courts and before the United States Congress.

7) I regularly lead engagements involving digital forensics and cyber security investigations for law firms, corporations, and government agencies. I am experienced with the digital acquisition of evidence under the Federal Rules of Evidence.

8) In the course of my duties, I have forensically examined voting systems in Maricopa County Arizona, Antrim County Michigan, Mesa County Colorado, Coffee County Georgia, and Adams Township, Michigan.

COTTON-0002

9) In the course of my duties, I have reviewed the administrative manuals and documentation for the Dominion Democracy Suite software and hardware components.

10) In the course of my duties, I have reviewed the administrative manuals and documentation for the Hart Intercivic software and hardware components.

11) In the course of preparing this declaration, I have reviewed the @SEC Source Code Review Report dated 2020-01-06 for the Los Angeles County VSAP system.

12) In the course of my duties, I have reviewed the Los Angeles County Voting System for All People (VSAP) certification 3.0 document set consisting of the following documents:

   a) Los Angeles County VSAP 3.0 Admin Approval 8-22-2023 (PDF)

   b) Los Angeles County VSAP 3.0 Approval (PDF)

   c) Los Angeles County VSAP 3.0 Consultant's Accessibility Testing Report (PDF)

   d) Los Angeles County VSAP 3.0 Consultant's Functional Test Report (PDF)

   e) Los Angeles County VSAP 3.0 Consultant's Volume Test Report (PDF)

   f) Los Angeles County VSAP 3.0 Consultant's Software Test Report (PDF)

   g) Los Angeles County VSAP 3.0 Consultant's Security Test Report (PDF)

   h) Los Angeles County VSAP 3.0 OVSTA Staff Report (PDF)

   i) Los Angeles County VSAP 3.0 California Use Procedures (PDF)

13) In the course of my duties, I have reviewed the Los Angeles County Voting System for All People (VSAP) certification 3.0 document set consisting of the following documents:

   a) County of Los Angeles VSAP 2.1 Certification October 1, 2020 (PDF)

   b) County of Los Angeles VSAP 2.1 California Use Procedures (PDF)

   c) County of Los Angeles VSAP 2.1 Executive Summary Report (PDF)

   d) County of Los Angeles VSAP 2.1 Staff Report (PDF)

COTTON-0003

e) County of Los Angeles VSAP 2.1 Public Hearing Transcript (PDF)

f) County of Los Angeles VSAP 2.1 Consultant's Accessibility Testing Report (PDF)

g) County of Los Angeles VSAP 2.1 Consultant's Software Report (PDF)

h) County of Los Angeles VSAP 2.1 Consultant's Hardware Testing Report (PDF)

i) County of Los Angeles VSAP 2.1 Consultant's Security and Telecommunications Testing Report (PDF)

j) County of Los Angeles VSAP 2.1 Consultant's Functional Testing Report (PDF)

k) County of Los Angeles VSAP 2.1 Consultant's Volume Testing Report (PDF)

14) In the course of my duties, I have reviewed available public information from the Election Assistance Commission (EAC) regarding voting system certification status and the certification process for election software. In the course of this review, I determined that Smartmatic currently does not have any active certifications by the EAC for any of their voting systems.

15) A review of the @SEC Source Code Review Report dated 2020-01-06 highlighted a number of serious issues:

a) This report identifies the security vulnerabilities found through static code review and by searches of public vulnerability sources that could be exploited to alter vote recording, vote results, critical election data, such as audit logs, or to conduct a denial-of-service attack on the voting system.

b) There are a number of publicly known vulnerabilities that are present on the tested Smartmatic system. Specifically, "A search for public vulnerabilities was performed. Due to the high amount of third-party code, this activity returned a large number of publicly known vulnerabilities. Regardless of whether the vulnerabilities represent an actual risk to

4

the voting system, the amount of code not controlled by the VSAP development team greatly increases the attack surface and the statistical likelihood of a problem in the future."

    c) A static code analysis by @SEC revealed fourteen (14) low severity findings.

16) Based on my review of the @SEC Source Code Review Report dated 2020-01-06 the Smartmatic and VSAP devices have the following interfaces that are used for data transfer and communications with other networked devices:

    a) USB ports

    b) Ethernet Interfaces

    c) Network Switches

    d) The Election Central and Remote Voting sites use ethernet for network connectivity. These devices connect through an "air gapped" network.

    e) Remote Voting is provided by Amazon Web Servers and is open to the public internet.

    f) The devices have other wireless and Bluetooth capabilities that are reported to be disabled.

    g) The report factors in compensating controls for detection of unauthorized access and time clock manipulation in the form of operating system log files that are not required to be preserved as an election record following an election.

    h) The source code contains a significant number of source code files from third-party providers. These third-party source code files were not part of the scope of the evaluation and were not included in the analysis.

    i) The cryptographic code on the VSAP is not running in a FIPS 140-2 approved environment as required. This fact results in non-compliance with the voting system requirements for the state of California.

    j) The VSAP code contains hard coded passwords in the code.

   k) No user lockout values are set for invalid password attempts, thus permitting unlimited password guesses and/or brute force password cracking attempts.

17) The Ballot Marking Device (BMD) utilizes a SQLLite database and the Tally utilizes Apache Cassandra.

18) The report revealed that there are over 290 vulnerabilities that exist in the VSAP system that could be leveraged independently and/or in combination to gain unauthorized or remote access to the VSAP system with sufficient privileges to modify the recorded votes within the system.

19) The SLI County of Los Angeles' VSAP Tally 2.1 Software Test Report for California that is posted on the California Secretary of State's VSAP web page as "County of Los Angeles VSAP 2.1 Consultant's Software Report (PDF)" is limited to the Tally 2.1 software and does not address the Smartmatic BMD testing or the testing of any other VSAP component[1].

20) I have reviewed the published Department of Homeland Security, Cyber Security & Infrastructure Security Agency (CISA) Best Practices for Securing Election Systems dated 11 November 2022 and last reviewed on 21 September 2023. Publicly available, this document can be located at https://www.cisa.gov/tips/st19-002. This document provides recommendations for securing election systems in the following areas:

   a) Software and Patch Management – Note: The Analyzed Election Systems do not Comply with CISA Recommendations

   b) Log Management - Note: The Analyzed Election Systems do not Comply with CISA Recommendations

   c) Network Segmentation - Note: The Analyzed Election Systems Partially Comply with CISA Recommendations

---

[1] Los Angeles County VSAP: California Secretary of State

d) Block Suspicious Activity - Note: The Analyzed Election Systems do not Comply with CISA Recommendations

e) Credential Management - Note: The Analyzed Election Systems do not Comply with CISA Recommendations

f) Baseline Establishment for Host and Network Activity - Note: The Analyzed Election Systems do not Comply with CISA Recommendations

g) Organization-Wide IT Guidance and Policies – Note: The Analyzed Election Systems Comply with CISA Recommendations

h) Notice and Consent Banners for Computer Systems – Note: The Analyzed Election Systems Comply with CISA Recommendations

21) Based on my reviews of these documents, my cyber security experience, and my forensic analysis and my knowledge voting systems experience I find the following specific to the cyber security vulnerabilities and weaknesses observed in the voting systems of multiple vendors:

a) **Failure to Update Antivirus Protections** - Based on my personal knowledge and experience, over one million (1,000,000) new computer viruses are released on a daily basis. It is imperative to the security of any computing system or enterprise that the antivirus definitions be updated on a weekly basis. There is a systemic issue with all of the voting systems that I have had the opportunity to examine. There was an antivirus program installed on each of the systems. None of the system's antivirus definitions had EVER been updated following the installation of the voting software. For a system that had been in operation for two years, that would mean that the virus protection was so out of date that the system would not have prevented over seven hundred thirty million (730,000,000) versions of malware from compromising the voting system. To date Los Angeles County

and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

b) **Failure to Patch and Maintain Operating System (OS) Security** - Based on my personal knowledge, the companies that develop operating system software such as Windows, Linux, and Apple release software that contains unknown remote access vulnerabilities. These vulnerabilities can be used to gain unauthorized access to the targeted systems. Microsoft, the developer of the Windows family of software used on the Dominion PC-based Voting systems, releases operating system patches on a weekly basis to correct previously unknown operating system vulnerabilities and to prevent the possibility of unauthorized access to these systems. Based on my analysis of the voting systems in Maricopa County Arizona, Antrim County Michigan, Mesa County Colorado, Coffee County Georgia, and Adams Township Michigan there exists a consistent failure of the responsible authorities to patch or fix the operating system vulnerabilities on the voting systems. Typically, the producers of the operating systems will issue a weekly system patch/update which fixes newly discovered vulnerabilities. None of the voting system operating systems that I have examined had ever been properly patched for known cyber security vulnerabilities. By way of example, the Maricopa County voting system had not been patched for over 19 months and was not protected against three thousand five hundred twelve (3,512) known vulnerabilities. This finding in Maricopa County has proven to be consistent with all voting systems that I have analyzed, regardless of system or vendor. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis.

COTTON-0008

I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

c) **Failure to Properly Establish and Control Assess to Voting Systems** - Based on my review of the electronic voting systems from different jurisdictions and from different vendors it is apparent that there is a systemic problem with access controls to the voting systems. First, in all examinations of the voting systems that I have conducted, the passwords were identical for all user accounts on that unique system. Second, these passwords were never changed by the local officials following the installation of the software. These two deficiencies result in long-term shared password exposure for multiple elections. Furthermore, there does not appear to be any accountability or assignment of the accounts to a specific individual for specific time periods. This makes individual accountability for actions performed by the account during an election impossible. CISA and industry best practices recommend that each username and password combination be unique and that each username password combination be assigned to only one individual. When that individual departs the username should be disabled to prevent unauthorized access to the system. When a new user arrives or is assigned, a new username and password are created for that user. Furthermore, best practices dictate that each individual password should be changed every ninety (90) days. This practice was not followed on the systems that I have had an opportunity to examine. To date Los Angeles County and Smartmatic have not produced a VSAP system for

COTTON-0009

analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

d) **No Process Monitoring, Network Monitoring or Baseline Monitoring** – Based on my review of the electronic voting systems from different jurisdictions, none of the jurisdictions had the capability to actively monitor programs that were running on the computers, monitor network activity, or had a process to alert election officials if a deviation from an approved baseline occurred. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

e) **Log Management** – Retaining and adequately securing logs from both network devices and local hosts is a critical component of cyber security. Not only does a robust log management program support the detection and monitoring of real-time security postures, but in the event of an audit or a cyber security event, these logs support triage and remediation of historical cybersecurity events. None of the election systems that I have examined have an independent log management program. An effective log management program should include the following capabilities:

i) **Centralized Log Management**: It is common for hackers to delete, modify and/or otherwise manipulate logs and other artifacts as an integrated element of an unauthorized attack. An effective log management program would establish a centralized log repository that is not located on the device that generates the logged event. This method allows for unlimited log retention time periods, assurance of log preservation, ensures the integrity of the logs, and establishes a data repository to aid

10

in the detection of malicious behavior. None of the election systems that I have analyzed forwarded logs to a centralized log management server. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

ii) Security Information and Event Management – A security information and event management tool is commonly referred to as a SIEM. I have personal experience with, and have observed, threat actors attempting to delete local logs to remove on-site evidence of their activities, including log deletion, log modification and changing logging settings. By sending logged events to a SIEM tool, an organization can reduce the likelihood of malicious log spoilation and maximize the ability to detect malicious activity. None of the election systems that I have analyzed utilized a SIEM. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

iii) Effective log correlation from both network and host security devices is critical to protecting election networks and computing devices. By reviewing logs from multiple sources, an organization can better triage an individual event and determine its impact to the entire organization. Today's modern log analysis and correlation systems will provide the analysis, detection of an anomaly, and alerting within 15 seconds from event to eyes on glass by an analyst. None of the election systems that I have analyzed were capable of log correlation. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to

11

determine if this finding is directly applicable to the Los Angeles County voting systems.

iv) Review both centralized and local log management policies to maximize efficiency and retain historical data. CISA recommends that organizations retain critical logs for a minimum of one year, if possible. Federal law requires that all election system-related logs be retained for at least 22 months. In practice many jurisdictions are not preserving the operating system logs as part of that election data retention. This is problematic in the case of Los Angeles County as a reliance on the operating system logs is relied upon as a compensating control to detect unauthorized access, data manipulation and date/time manipulation[2]. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

v) PowerShell and Advanced Logging Should be Enabled.

(1) PowerShell is a cross-platform command-line shell and scripting language that has quickly become a central exploitation capability by malicious actors. I have personally observed threat actors, including advanced persistent threat (APT) actors, using PowerShell to exploit systems and hide their malicious activities. To date Los Angeles County and Smartmatic have not produced a VSAP system for

---

[2] ATSEC Source Code Review Report VSAP Version 2.0 dated 01.06.2020.

COTTON-0012

analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

(2) Given the extensive usage of Powershell to exploit systems by malicious actors, it is imperative that the PowerShell instances have module, script block, and transcription logging enabled. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

f) **Network Segmentation** – In all the election systems that I have examined there has been an attempt to segment the systems that record the votes from the systems that administratively support the voting process, (e.g. poll worker laptops, voter registration data base, etc.). The only form of segmentation however is to use an "air gap" to attempt to isolate the voting systems from the public internet. This partially complies with the CISA Best Practices for Securing Election Systems. The issue is the over reliance on the manner in which the air gap is implemented and the false security that, because there is no stated connections to the internet, there can be no connection to the internet or breaching of that "air gap". History has proven that air gaped systems are easily defeated by connecting cell phones, wireless "hockey pucks", and other wireless networks to an endpoint internal to the air gapped systems. It is important to note that all of the computers used within each voting system that I have examined are commercial off-the-shelf (COTS) hardware. Based on my review of the Los Angeles County documentation this appears to be the case with the VSAP as well. Depending on the configuration of the wireless device modems contained on the mother boards of the COTS equipment, simply creating a non-

13

password protected WiFi network that is in range of a device is sufficient for that device to automatically connect to the internet. An analysis of the systems that I have had the opportunity to physically examine have revealed that these COTS systems do contain built in wireless 802.11 and cellular modems that can connect to unauthorized networks if the user has administrative access, even if the design of the network was purportedly air gapped. Given the number of vulnerabilities that were discovered as part of Los Angeles' own testing, such administrative access is not anticipated to be difficult on the VSAP system. It should be noted, however, that remote access, code modification and system modification can be executed on air gapped systems through the use of USB devices, direct communication with exterior devices are not required. STUXNET and the Chinese APT31 are examples of this type of compromise[3]. Given the presence of USB ports and the procedures for using USB devices, the VSAP would be susceptible to this type of attack. Based on the VSAP documentation that I have reviewed, however, it is clear that all the components of the VSAP system are networked.

g) **The BMG Network is not Truly Air Gapped** - The documentation for the VSAP system indicates that this is an "air gapped" system. This assertion stands in contrast to the inclusion of the remote voting sites as part of that network and the documented statements that at least a portion of the remote voting sites exist in the Amazon Cloud. The term "air gap", in general security usage, means that there are a number of components on one physical site that are connected via ethernet connections and that there are no connections to establish a link outside of that one physical location. The term "remote voting sites" as

---

[3] https://thehackernews.com/2023/08/chinas-apt31-suspected-in-attacks-on.html

part of the network diagram and discussion indicates that these sites are not collocated with the centralized voting system and furthermore the @TEC Source Code Review document implicitly states that the remote voting sites are connected by ethernet and exist in the Amazon Cloud. I have found no indication that all of the remote voting locations have been supplied with a dedicated direct ethernet cable which runs from the location of the central voting system and the remote voting site, and I have personal knowledge that the Amazon Cloud is only accessible via the public internet. Therefore, the fact that remote voting sites are part of the network means, by definition, that the communications to those remote sites are transported by public internet and/or commercial communications networks. That would make the voting system communications susceptible to interception and possible manipulation even if that communication is tunneled through a virtual private network (VPN) or other medium. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

h) **Block Suspicious Activity** – In every election system that I have analyzed there has been no mechanism for blocking malicious activity or programs other than the outdated antivirus program. Given the lack of operating system patching, lack of antivirus definition updating, the lack of user/password controls, and the extreme amount of system vulnerabilities, these systems simply do not have the ability to detect or block suspicious activity from a current threat actor. To date Los Angeles County and Smartmatic have not

COTTON-0015

produced a VSAP system for analysis. I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County voting systems.

22) Given the totality of the lack of practical, effective cybersecurity protections on all of the election systems that I have examined, coupled with the lack of effective access controls to the systems, it is a near certainty that the VSAP systems would be vulnerable to unauthorized access and vote manipulation through technical processes. To date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. I understand that Smartmatic has recently acknowledged that it has an exemplar BMD machine that it has not provided to Defendants' counsel. Once I receive this machine, I will be able to supplement my report. I would need to examine a VSAP system to definitely prove if this finding is directly applicable to the Los Angeles County voting systems.

I declare under penalty of perjury under the laws of the United Sates of America that the foregoing is true and correct.

Executed on 22 September 2023

_Benjamin R. Cotton_

COTTON-0016