1                UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
     Smartmatic USA Corp.,          )   File No. 22-cv-98
4    Smartmatic International        )          (JMB/JFD)
     Holding B.V., and SGO          )   **REDACTED**
5    Corporation Limited,           )   Courtroom 6A
                                    )   St. Paul, Minnesota
6           Plaintiffs,             )   August 20, 2024
                                    )   2:02 p.m.
7    vs.                            )
                                    )
8    Michael J. Lindell and My      )
     Pillow, Inc.,
9
            Defendants.
10   ------------------------------------------------------------

11

             BEFORE THE HONORABLE JOHN F. DOCHERTY
12      UNITED STATES DISTRICT MAGISTRATE COURT JUDGE
                   **(CIVIL MOTION HEARING)**
13

14

15

16

17      Proceedings reported by certified stenographer;
     transcript produced with computer.
18

19

20

21

22

23

24

25

1    **APPEARANCES**:

2    For the Plaintiffs:         Robins Kaplan LLP
                                 William Manske, ESQ.
3                                800 LaSalle Avenue
                                 Suite 2800
4                                Minneapolis, MN 55402-2015

5                                Benesch Friedlander Coplan &
                                 Aronoff
6                                Timothy Frey, ESQ.
                                 Julie Loftus, ESQ.
7                                71 S. Wacker Drive
                                 16th Floor
8                                Chicago, IL 60606

9    For the Defendants:         McSweeney, Cynkar and
                                 Kachouroff, PLLC
10                               Christopher Kachouroff, ESQ.
                                 13649 Office Place
11                               Suite 101
                                 Woodbridge, VA 22192
12
     Court Reporter:             Lynne M. Krenz, RMR, CRR, CRC
13                               Suite 146
                                 316 North Robert Street
14                               St. Paul, Minnesota 55101

15

16

17

18

19

20

21

22

23

24

25

1                      **P R O C E E D I N G S**

2                         **IN OPEN COURT**

3              THE COURT:  All right.  We're here this afternoon

4     for a hearing on a motion to compel brought by the

5     plaintiffs, Smartmatic, against the Defendants Michael

6     Lindell and My Pillow.

7              Let's begin with appearances, please, beginning

8     with counsel for the moving party, which would be the

9     plaintiff.

10             MS. LOFTUS:  Good afternoon, Your Honor.  My name

11    is Julie Loftus on behalf of Smartmatic.  Appearing with me

12    are Timothy Frey and Will Manske.

13             THE COURT:  Okay.  And for the defense?

14             MR. KACHOUROFF:  Chris Kachouroff for My Pillow

15    and Mr. Lindell.

16             THE COURT:  Okay.  Good afternoon, Mr. Kachouroff.

17             MR. KACHOUROFF:  Good afternoon.

18             THE COURT:  All right.  There are a number of

19    pieces to this motion and I think the best thing to do is

20    just to sort of take them up in turn.  I'm hoping that by

21    having everybody in the room here this afternoon we can work

22    through some of this.

23             Ms. Loftus, will you be arguing for the plaintiff?

24             MS. LOFTUS:  Yes, Your Honor.  I will be

25    discussing --

1          THE COURT:  Ms. Loftus, if you are, would you come

2    up to the podium, please.

3          MS. LOFTUS:  Yes, Your Honor.

4          I will be addressing the sets of discovery

5    requests that were served on September 20, 2023, the

6    specific interrogatories at issue in the motion, and my

7    colleague, Tim Frey, will be handling Requests for

8    Production Number 26 relating to --

9          THE COURT:  So you're here for 4, 14, 20 and 23?

10         MS. LOFTUS:  Yes, Your Honor.  In addition to the

11   fifth set of Requests for Production, the fourth set of

12   interrogatories and the first and second sets of Requests

13   for Admission.

14         THE COURT:  All right.  Let's actually just start

15   with those.

16         The fifth set of Requests for Production, the

17   fourth set of interrogatories and the first and second sets

18   of Requests for Admission.

19         First of all, first and second sets of Requests

20   for Admission, defendant indicates that this concerned I

21   think 559 documents whose authenticity was asked to be

22   admitted and according to Mr. Kachouroff's written response,

23   that's been done.

24         MS. LOFTUS:  Your Honor, yes.

25         For the second set of Requests for Admission,

1    Smartmatic sought authentication of documents produced by

2    defendants' prior counsel in this case, had refused to

3    stipulate to authenticity.  Smartmatic is prepared to take

4    that stipulation at face value.

5                 THE COURT:  Okay.

6                 MS. LOFTUS:  So the second set --

7                 THE COURT:  Okay.

8                 MS. LOFTUS:  -- I think we're okay.

9                 THE COURT:  Then I think what I'm going to do with

10   respect to that component of your motion to compel is to

11   deny it as to the second set of Requests for Admission as

12   moot.

13                MS. LOFTUS:  Understood.

14                THE COURT:  Mr. Kachouroff, any objection to that?

15                MR. KACHOUROFF:  Absolutely none.

16                THE COURT:  Okay.  So that takes care of that.

17                Now, what's the first set of Requests for

18   Admission?

19                MS. LOFTUS:  Your Honor, those are substantive.

20   Those requests seek Requests for Admission related to core

21   issues in the case, such as falsity, the publication element

22   of defamation, the other concerning element, as well as

23   defendants' intention to harm Smartmatic when at the time

24   that they made the defamatory statements.

25                Now, on July 24, 2024, the same day that

1    defendants filed their opposition to this motion, they

2    served responses to the first set of Requests for Admission.

3                THE COURT:  Okay.  Have you reviewed those?

4                MS. LOFTUS:  Yes, Your Honor.

5                THE COURT:  And is that part of the motion still

6    live?

7                MS. LOFTUS:  It is, Your Honor.

8                THE COURT:  How come?

9                MS. LOFTUS:  Because Rule 36(a)(3) is clear that

10   requests are deemed admitted unless answers and objections

11   are served within 30 days.  There's no discretionary room

12   for a good cause exception as there is in the other

13   discovery rules, such as Rule 33 and Rule 34.

14                Smartmatic did not run to the courthouse on day 30

15   or day 60.  Smartmatic allowed new counsel ample time to

16   respond to these requests.

17                So we respectfully request that the plain language

18   of the rule to be applied to the --

19                THE COURT:  Okay.  Now, what Mr. Kachouroff says

20   with respect to the first set is that we have responded.

21   Those respond -- I'm on page 6 of his response.  Those

22   responses will not surprise plaintiffs.  They already know

23   Mr. Lindell's position on every single request.

24                True, not true?

25                MS. LOFTUS:  It is accurate that Smartmatic could

1    speculate as to Mr. Lindell's position regarding our

2    Requests for Admissions.

3         THE COURT:  Well, what do you mean by that?

4         MS. LOFTUS:  Mr. Lindell is a party who makes his

5    opinions plain.

6         THE COURT:  Right.

7         MS. LOFTUS:  But Smartmatic still contends that

8    it's entitled to timely responses to its discovery requests

9    served under the Federal Rules in this case.

10        THE COURT:  Okay.  So what you're -- what I'm

11   hearing is that you haven't been harmed because you've

12   gotten the responses and the responses are what you expected

13   them to be but you want me to nevertheless apply the rule

14   literally and deem them admitted even though you're not

15   quibbling with the substance of any of the responses?

16        Does this strike you as futile?  Because it does

17   me.

18        MS. LOFTUS:  Your Honor, if we understand the

19   judicial economy of not deeming admitted responses that have

20   been served --

21        THE COURT:  Well, no.  The judicial economy is in

22   not bringing motions that don't need to be brought because

23   there's nothing at issue.

24        MS. LOFTUS:  Well, Your Honor, the responses were

25   not served when we brought this motion.  They were served

1    after we brought this motion.

2            So, if we have the responses and if Your Honor is

3    inclined to rule that we have the responses we need, then

4    Smartmatic is certainly prepared to move forward.

5            THE COURT:  All right.

6            MS. LOFTUS:  But we brought this motion to ensure

7    that we would receive responses.

8            THE COURT:  All right.  Well, that is, in fact,

9    what I am going to do and if you want to seek review by

10    Judge Bryan, the district judge, because I didn't strictly

11    follow the rule, there you go.  But I will deny the first --

12    the motion to compel as to the first set of Requests for

13    Admission is denied as moot.

14            If there are substantive objections to what

15    these -- was or wasn't admitted to that's a separate motion,

16    but compulsion is no longer appropriate because you've got

17    what you want.

18            MS. LOFTUS:  Understood, Your Honor.

19            THE COURT:  All right.

20            All right.  Let's move along to the fifth and --

21    fourth and fifth set of Requests for Production documents

22    responsive.

23            As I understand the response here, Mr. Kachouroff

24    is not -- I mean, he's got issues with something here and

25    something there.  But on the whole, I think the answer is

1    yes, we owe you under this and we are working as fast as we

2    can and we have an antiquated system.

3            It looks a little bit to me like a blood from a

4    turnip situation.  So what's the thought here?

5            I mean, I can enter an order that can -- well, I'm

6    not keen on entering orders that can't be complied with.

7            MS. LOFTUS:  Understood, Your Honor.  We do -- and

8    we understand from defendants' counsel for Mr. Kachouroff

9    that they do intend to serve responses to these discovery

10   sets -- to these sets of discovery requests.

11           We do ask that Your Honor enter an order

12   compelling responses to these requests and that it be done

13   in short order because we are coming up on important

14   deadlines in this case.  We're coming up on summary

15   judgment.  Coming up on the trial-ready date.  And these are

16   also requests that were served nearly a year ago.

17           At some point we are still owed responses to

18   relevant --

19           THE COURT:  There is no argument whatsoever about

20   that.

21           But it sounds as though the ESI vendor took a walk

22   when former counsel left the case and Mr. Kachouroff is

23   looking through document by document a very, very large

24   database, and I can order it produced next week, I can order

25   it introduce produced next month and if it can't be done, it

1    can't be done.  And I'm not sure that entering a bit of

2    paper that's dead on arrival is really what you want.  I

3    think what you want is to work with Mr. Kachouroff,

4    prioritize what it is you want first, what it is that's most

5    important and get that.

6        MS. LOFTUS:  Your Honor, we are certainly willing

7    to continue meeting and conferring with counsel for

8    defendants.  And again, we don't -- we understand that Mr.

9    Kachouroff is working as fast as he can under the

10   circumstances.

11       Smartmatic does believe that counsel is facing

12   constraints but the defendants, the parties, are not.

13       Mr. Lindell is at this moment holding his fourth

14   annual election fraud summit.  We believe that counsel is

15   being deprived of the resources to carry out this litigation

16   under the Federal Rules in a procedurally proper manner.

17       We think that a Court order would, in fact,

18   encourage compliance with the Federal Rules.

19       THE COURT:  All right.  Well, I'll hear from Mr.

20   Kachouroff about that.

21       Let me ask you about the -- well, let's see are

22   you covering the interrogatories as well?

23       MS. LOFTUS:  I am.

24       THE COURT:  Okay.  What about the objection that

25   the problem with the interrogatories is the use of

1      defamatory statement.

2              In other words, it's, you know, sort of, here's a

3      subpoena for all cocaine in your possession.  You know, you

4      cannot expect the defendants to admit in an interrogatory

5      answer that they have made defamatory statements when that

6      is after all what is at the heart of this case.

7              And I think, although I didn't -- I'm going from

8      memory here, that in the past these statements have been

9      described as accused statements, not as defamatory

10     statements.  Why the change in terminology?

11             MS. LOFTUS:  There was no change --

12             THE COURT:  Okay.

13             MS. LOFTUS:  -- in terminology, Your Honor.

14             A defined term in our -- in this same set of

15     Requests for Production and Interrogatories actually is

16     "accused program."  So that refers to Mr. Lindell's

17     documentaries, such as absolute proof, scientific proof.

18             THE COURT:  Okay.

19             MS. LOFTUS:  "Defamatory statement" has always

20     been and remains a defined term.

21             So, Exhibit A to my declaration of this motion, it

22     is the set of discovery requests and it defines defamatory

23     statements as "all statements the complaint alleges are

24     defamatory" and it lists the paragraph numbers.  It's what

25     we called the "defined term" to mean the "statements at

1    issue" in this litigation.  It's quibbling with the defined

2    term.

3              THE COURT:  All right.

4              All right.  Let's talk about the interrogatories.

5    That's numbers 4, 14, 20 and 23.  I mean, I've read your

6    brief.  Anything over and above that?

7              MS. LOFTUS:  Your Honor, in starting with

8    Interrogatory Number 4, the only thing that we'll draw your

9    attention to, in their papers defendants argue that they've

10   already been -- that Smartmatic has already been given a

11   list of sources and that that should suffice in their view.

12             But I'll just draw your attention to the fact that

13   in defendants' previous response to this interrogatory they

14   listed 83 different sources.  This is a case with over 50

15   defamatory statements at issue as defined in the defined

16   terms of the set of discovery requests.

17             As Your Honor is no doubt aware, under Supreme

18   Court precedent, the reliability of a defendants' sources in

19   making allegedly defamatory statements is a key issue in

20   assessing the actual malice inquiry.

21             And Smartmatic, in our view, is owed an

22   understanding of who told Mr. Lindell what.  He made many,

23   many, many statements about Smartmatic and in order to

24   assess the sources of those statements we think that it's

25   appropriate for the response to include an indication of

1      which sources told Mr. Lindell what.

2              And this is especially -- this is of particularly

3      something that could narrow issues in this case as we

4      approach the summary judgment stage.

5              If Smartmatic is able to ascertain who told Mr.

6      Lindell that votes are being shipped to China or that

7      Smartmatic software was injected into Dominion software,

8      it's much easier for Smartmatic to pull apart those

9      arguments and to make the arguments that they should be able

10     to make at the summary judgment stage.

11             THE COURT:  So let me understand.  You have got a

12     list of 83 sources?

13             MS. LOFTUS:  Yes.

14             THE COURT:  And it's a name?

15             MS. LOFTUS:  Correct.  It's a name or a news

16     publication, but it's one or two words per source.

17             THE COURT:  All right.  And what you are looking

18     for under Interrogatory Number 4 is not just is the name,

19     but also when spoken to, what the conversation was about.

20     Things like that?

21             MS. LOFTUS:  That's how it's drafted.  It also

22     includes contact information.  We're trying to be

23     reasonable.  We don't need every source's contact

24     information.  To us in an effort to narrow everything down

25     we think that the most important part of that request is

1    what was actually communicated to Mr. Lindell.

2             THE COURT:  All right.  Let's move on then

3    Interrogatory Number 14.

4             Anything you want to say over and above what's in

5    your brief?

6             MS. LOFTUS:  Interrogatory 14 goes to the heart of

7    this case.  It asks defendants to separate truth from lies

8    and say which of the statements, if any, they deem are true.

9             This would significantly narrow issues at the

10   summary judgment stage.  Understanding which issues

11   defendants maintain are true versus which -- or, excuse me,

12   maintain are false -- excuse me.  Are true versus which

13   statements they now contend are false is essential

14   information that goes to both the falsity prong of

15   defamation as well as the actual malice prong.

16            THE COURT:  Would that depend in any way on when

17   the light bulb came on and it was realized that a particular

18   statement was true?

19            Does it not -- does knowledge need to attach at

20   the time the statement is made or can it come about later?

21            MS. LOFTUS:  Under actual --

22            THE COURT:  For actual malice.

23            MS. LOFTUS:  For actual malice it would be

24   knowledge at the time the statement was made.  However, in

25   this case there are statements that have occurred over a

1      long period of time.  We supplemented our complaint.  So

2      it's possible that there are statements that may have been

3      made after that change of heart.  If that makes sense.

4              THE COURT:  It makes sense, but I'm not quite sure

5      how this interrogatory is getting at it.

6              I mean, are you asking when did the change of

7      heart occur or are you just saying which statements do you

8      now, you know, upon further reflection and time to get more

9      information realize were not true?

10             MS. LOFTUS:  This interrogatory was served at the

11     beginning of discovery, so it's -- it wasn't served

12     recently.  It's -- Smartmatic was hopeful that this

13     interrogatory would be satisfied during the course of

14     discovery.

15             We're moving on it now to clean up because we

16     haven't gotten a straight answer on which statements of

17     defendants are true or not.  Defendants are certainly able

18     to say in their responses, should they respond in substance,

19     At the time of the -- of "X, Y or Z" statement I believed

20     "X" was true or false.  Today I believe "Y."  They have that

21     power to differentiate to the extent that that weighs on

22     their claims or defenses.

23             THE COURT:  All right.  Anything else on 14 before

24     we move to 20?

25             MS. LOFTUS:  No, Your Honor.

1          THE COURT:  Okay.  Let's talk about Number 20 and

2     Number 23.

3          MS. LOFTUS:  Yes.

4          Beginning with Interrogatory Number 20, this

5     request seeks information about My Pillow's financing of

6     defamatory statements.  And having reviewed defendants'

7     brief, they attempt to draw a distinction between

8     advertising and other forms of monetary support.

9          The request as written is broad and it's clear.

10    All financial support or other monetary contributions, are I

11    believe the exact wording, in Smartmatic's view, advertising

12    is included under that umbrella.  For example, if My Pillow

13    sponsored the March for Trump Bus Tour, that sponsorship is

14    financial support.

15         THE COURT:  Well, I mean, that's an interesting

16    example because, yeah, the Trump for -- the Trump Bus Tour

17    is one that I think Mr. Kachouroff said, well, yes, that

18    would be relevant.  But what you've got at this point, as I

19    understand it, is a statement along the lines of, Mr.

20    Lindell loans My Pillow money from time to time.

21         Does it matter if the loan is, for example, to

22    rent warehouse space for pillows or if the loan is to buy

23    gasoline for delivery vehicles?  How -- you know, some of

24    these loans might not be tied to allegedly defamatory

25    conduct or political activities and would it still be

1    relevant?

2          MS. LOFTUS:  So, Your Honor, I believe that goes

3    more to Interrogatory Number 23, which is about the loans as

4    between the parties.

5          Loans as between the parties, particularly during

6    the time that the defamatory statements were being made and

7    the publications were being put out, goes to not only to

8    actual malice but to My Pillow's vicarious liability.

9          So to give Your Honor an example.  If My Pillow is

10   loaning Mike Lindell money while he is touring the country

11   saying that Smartmatic rigged the election, that goes to

12   whether or not My Pillow should be on the hook for Mike

13   Lindell's defamatory statements.

14         And as it relates to Interrogatory Number 20 about

15   advertising or financing of the statements, that is a more

16   targeted request related to the defamatory statements

17   themselves because this information is relevant both to

18   actual malice under a Supreme Court case called *Harte-Hanks*

19   *v. Connaughton*, evidence of ill will or a profit motive can

20   be circumstantial evidence of actual malice, in addition as

21   well to Smartmatic's vicarious liability argument that My

22   Pillow is offering financial sponsorship for Lindell's

23   statements.

24         THE COURT:  All right.

25         All right.  I've asked a lot of questions over and

1    above responding to those and I thank you for doing so, what

2    else is it that you think it's important for me to know

3    about this?

4              MS. LOFTUS:  Your Honor, Smartmatic is looking to

5    close out fact discovery.  We are looking to be reasonable

6    with defendants.  We want to put this case to bed as soon as

7    possible.

8              Smartmatic is interested in getting to the heart

9    of issues that matter in this case and we're prepared to

10   work with defendants, to get this -- these last little drips

11   of discovery and move forward in the case.

12             THE COURT:  All right.  Thanks very much.

13             MS. LOFTUS:  If you have no further questions on

14   these issues, I'll turn it over to my colleague, Mr. Frye.

15             THE COURT:  All right.  Mr. Frye, you want to talk

16   about R.F.P. 26?

17             MR. FREY:  Yes, Your Honor.  Thank you.

18             And R.F.P. 26 is relatively straightforward, Your

19   Honor.  We sought various pieces of financial information

20   from My Pillow, such as income statements, P&L statements,

21   balance sheets, statements of cash flow and statements of

22   retained earnings.  My Pillow produced all of that stuff

23   from 2018 to 2021 at the onset of discovery.

24             What we were looking for was, essentially, like a

25   Rule 26 update to the disclosures, to the discovery to go

1    through the present time.

2            My Pillow did produce tax returns from 2022 and

3    they also produced from 2022 and 2023 a short statement of

4    assets, liabilities and equity and statement of revenues.

5    However, the cover letter to what was produced indicates

6    that there's a lot missing.

7            I can introduce it as an exhibit to Your Honor if

8    you'd like to see it.  It is marked confidential, so I want

9    to just note that for the record.

10           THE COURT:  Well, there is -- there is, I think,

11   in your -- well I would have to find the right page, but

12   essentially you're saying that statements such as "from time

13   to time there were loans" isn't good enough because you need

14   to know when the loan occurred, how much the loan was for,

15   what the terms of the loan was for.  And so you're saying

16   that you've received these sort of general responses -- and

17   I'm sorry, I can't find the example, you've received general

18   responses but you want the details?

19           MR. FREY:  Yes, Your Honor.  Although I think that

20   might be on a different request.

21           For R.F.P. 26, we just want the -- I guess these

22   financial documents would have those details, so you are

23   correct in that.  We want the details from their, you know,

24   financial statements of where money is going to and where

25   money is coming from to understand better essentially what

1    my colleague Ms. Loftus was talking about, whether and to

2    what extent My Pillow is financing some of these defamatory

3    statements.

4              THE COURT:  All right.  All right.  Thank you.

5              MR. FREY:  Thank you, Your Honor.

6              THE COURT:  Mr. Kachouroff, I think it's your

7    turn.

8              MR. KACHOUROFF:  Good afternoon, Your Honor.

9              THE COURT:  Good afternoon.

10             MR. KACHOUROFF:  I don't know where you want to

11   start, so.

12             THE COURT:  You know, why don't you -- I mean you

13   -- I think the sensible thing to do would be to go through

14   this sort of in the way in which your response took it.

15             MR. KACHOUROFF:  Yeah.

16             THE COURT:  I mean, I'd like to get more

17   information on this production dilemma.

18             MR. KACHOUROFF:  And let me go -- I can address

19   that first, if you'd like.

20             THE COURT:  Well, let me make clear what my

21   concerns are.

22             You know, in general, the rule is that the fact

23   that a party's files are disorganized or that a party's

24   files are not in good shape or that the retrieval system has

25   not been invested in is not really the opposing party's

21

1    problem.

2            MR. KACHOUROFF:  Correct.

3            THE COURT:  That people still need to produce.

4            The reality is that sometimes people are using the

5    idea that their retrieval system is not in good shape as a

6    reason for not complying and I think I -- where I want to

7    start is with Ms. Loftus's suggestion that you are genuinely

8    facing constraints.  Your client is not -- your client is

9    simply not investing or not funding or not resourcing

10   getting responses out the door.

11           MR. KACHOUROFF:  So the -- if I can address that

12   momentarily.

13           THE COURT:  That's what I'm asking, yes.

14           MR. KACHOUROFF:  Yes.

15           So specifically with numbers Requests for

16   Production and Interrogatories 4 and 5.  The one -- I don't

17   think I really captured those here.  Just so the Court

18   knows, I was in a hearing this morning and did not get here

19   as early as I had wanted to to be able to converse with

20   opposing counsel but we did get a little bit in.  And I told

21   them that 4 and 5, they are owed but I needed help because I

22   can't find the Bates stamps.  Mr. Frye graciously said, I'll

23   make them available to you.  I said, that'll speed up the

24   process greatly.  I had to clarify what some of the requests

25   were before I could even answer them.

1          So with that said, the client doesn't have access

2    to some of that information, so it's not something that he

3    can necessarily do.

4          THE COURT:  No, I'm not saying that the client has

5    access to the -- I'm not, maybe he does, maybe he doesn't.

6    That's beside the point for the question I'm asking.

7          I'm saying that there was a fairly nice,

8    apparently, document retrieval system in place for prior

9    counsel.

10          MR. KACHOUROFF:  Everlaw, yes, Your Honor.

11          THE COURT:  Everlaw then put everything on a disk

12    and handed it to you and it's very difficult to work with

13    and it takes a long time.

14          What I'm asking is not whether Mr. Lindell or My

15    Pillow have got access to this material, but rather whether

16    Mr. Lindell or My Pillow are declining to invest in a better

17    ESI platform for you to use so that you can do the work that

18    prior counsel was able to do.

19          MR. KACHOUROFF:  He doesn't have the ability to

20    invest in -- I already checked prices with Everlaw, he

21    doesn't have the ability to fund that ESI.  And I'm not

22    going to be able to find -- what I have is a on-staff -- a

23    tech, I'll call him a tech guy, who is able to help me with

24    respect to these -- this large quantity of information, so

25    he hasn't written a program.  And I've actually been working

1   with, I told my colleagues that I've been working with the

2   Dominion counsel in the D.C. case and I'm working with their

3   tech guy to try to write a script so that I can better

4   access this data.

5           The part of the problem is the data is housed on a

6   hard drive that has got the slowest drivers known to man and

7   it was the cheapest hard drive that could be had and to use

8   the information to turn it over.

9           But in terms of Mr. Lindell's investing, believe

10  me, I've had this discussion with him about ESI and he just

11  doesn't have the funding for it right now.

12          THE COURT:  All right.

13          MR. KACHOUROFF:  He's trying to work on cash

14  flows.  I know he's up to his armpits in debt and he's

15  working to -- he's making his way through that now and

16  slowly pulling out of it.  So I've been patient with him in

17  that regard.  But I would say that he doesn't have the

18  ability to obtain an ESI vendor at this point.

19          THE COURT:  All right.

20          MR. KACHOUROFF:  The fact that he goes to --

21          THE COURT:  Let's take that -- let's take that as

22  a given.

23          MR. KACHOUROFF:  Okay.

24          THE COURT:  For purposes of today's hearing,

25  what's the next alternative to speed things up?  Is there a

1    formatting, for example, of requests?  Is there a hack?  Is

2    there -- I mean, what can be done other than clicking

3    through one document after another, which with 10 million

4    documents is going to take a while?

5         MR. KACHOUROFF:  Actually I understated the amount

6    last time I was in the court, but it's actually more than

7    that now.

8         THE COURT:  All right.  Well --

9         MR. KACHOUROFF:  Regardless, it's -- so it's just

10   it's a big oil slick and I've got to figure out, you know,

11   where something is.

12        And so other than having my tech guy attempt to do

13   that for me -- because, you know, the Ctrl+F function is

14   just not feasible.  So I've gotten some movement in my

15   search capabilities but in terms of, like, for instance

16   today I asked for help, you know, show me these -- just make

17   these documents available to me and they agreed to do that.

18   That enables me to answer quickly.  And so if they work with

19   me in that regard, I can answer it very quickly.  If they

20   don't work with me and I'm left to my own devices and I'm

21   not complaining.  As you noted, it's -- you know, it's not

22   their job, not their responsibility.  Although Rule 26 does

23   talk about proportionality and the resources of the parties

24   and what we have going on right now.  I want it to get done

25   more than anybody.

1          So with respect to that issue about him not

2     investing.  He's trying to get into position where he can

3     invest in the case.  It may be a day late and a dollar

4     short.  I don't know.  We shall see.  But in terms of

5     discovery to Smartmatic, I think that we have made great

6     progress.  That we have -- we've turned over a lot of

7     information.  If you want to go through each one of them, I

8     can go through them.

9          THE COURT:  No, I don't.

10          MR. KACHOUROFF:  Okay.

11          THE COURT:  I don't.  I mean, what -- and I don't

12     say that in a work shirking kind of way.  I just don't see

13     that it would be a good use of time and I don't know that I

14     would learn anything or move the ball.  I want to deal with

15     this at a global level and get it moving again.

16          Let me ask next, and I'm hopping around a little

17     bit, but I am honestly struck by your assertion that by

18     answering some of these interrogatories you are necessarily

19     conceding that you -- that your client defamed anybody.  I

20     mean, this is a defined term in a discovery request.  I

21     don't -- I have never heard the argument before that if we

22     respond we are admitting liability in this case.

23          MR. KACHOUROFF:  I will never, as counsel for Mr.

24     Lindell and My Pillow, admit that these are defamatory

25     statements.

1          THE COURT:  And I'm saying you don't have to

2     defend --

3          MR. KACHOUROFF:  Right.  Right.  So -- and the

4     fact that they're a defined term, okay.  Well, that makes it

5     -- the whole purpose of this -- this is just a little sneaky

6     trick you would do to bring this document in front of a jury

7     and implant in their minds defamatory statements, defamatory

8     statements, defamatory statements.

9          And look, even in the defendants' answer he's

10    talking about the defamatory statements.  That won't do.  I

11    mean, you cannot do that.  I mean, that's just -- that's --

12    they are stuck with that trick.

13         Now they told you, oh, well it means the accused

14    statements.  Well, if you look at Interrogatory Number 4 --

15         THE COURT:  No, they did not.  They said the

16    defamatory statements -- Ms. Loftus was quite clear I

17    thought.  Defamatory statements has been in the case from

18    the beginning.  Accused programs is what I was thinking of

19    and that's where I got crossed up.

20         MR. KACHOUROFF:  Correct.  So they know how to say

21    accused program.

22         THE COURT:  Okay, but --

23         MR. KACHOUROFF:  And that's my contention.

24         THE COURT:  But.  But defamatory statements has

25    still been in this case since the beginning.  Things have

1    been answered with that in -- in an interrogatory.  And I'm

2    really not clear how it is that you can say that by

3    responding to discovery you have -- you have -- you have

4    conceded anything.  It's a defined term.

5             And if you're concerned about trial tricks, the

6    answer, I think, is a motion in limine; isn't it?

7             MR. KACHOUROFF:  No, Your Honor.  I shouldn't

8    be -- I shouldn't be having to bring a motion in limine on

9    an issue where you're making the descriptive term.  You're

10   not using regular language.  You're purposefully loading up

11   the language that way.  If you're going to load up the

12   language that way, you get the response back that you have.

13            Now, if you want me to answer specific paragraphs,

14   then you can do that.  You know, Dominion has something very

15   similar but they don't use defamatory statements, they use

16   accused statements and in their accused statements they

17   ask -- they set up -- what is, you know, each paragraph,

18   which ones you want answered.

19            Here, they're just trying to do a blanket list and

20   a defined term.  You know, the rules -- I have trouble with

21   defined terms.  I like to use ordinary language, plain

22   language.  And that's -- you know, to have to go flip back

23   and forth between rules or defined terms and then the

24   interrogatory to make sure you're getting it right and a

25   complaint to make sure that you have --

1          THE COURT:  Well, yes, but in this case that would

2     mean that every interrogatory would be 30 or 40 pages long

3     because they've alleged a fair number of accused statements.

4          MR. KACHOUROFF:  Well, let's put this in context.

5     Not the accused defamatory statements is what they say, I

6     won't use that term.

7          But in the complaint itself they lump together

8     themselves with every other voting machine company.  Mr.

9     Lindell is an equal opportunity machine basher.  He does not

10    want the machines.  And they look for any hook to claim that

11    the statement is about them.  Smartmatic is mentioned very

12    little, you know.

13         And this is a case, Judge, where they sued FOX in

14    February of '21 and the first time Mr. Lindell mentioned

15    Smartmatic, I believe, is four days after the FOX suit was

16    filed, so.

17         THE COURT:  Okay.  But what's the significance of

18    that?

19         I'm trying to get to whether you'll answer

20    specific interrogatories in a specific lawsuit and I'm

21    hearing about Dominion and about FOX.  Let's focus on this

22    case.

23         MR. KACHOUROFF:  I'm sorry.  The Smartmatic sued

24    FOX.  I got confused.  Smartmatic sued FOX in February and

25    five days later Mr. Lindell, I believe, makes his first

1    statements about Smartmatic.

2            THE COURT:  Okay.  But what does that have to do

3    with anything when we're talking about whether you will

4    comply with Interrogatories 4, 14, 20 and 23?

5            MR. KACHOUROFF:  Well, first of all, let me pull

6    up Interrogatory Number 4.  And I apologize, Your Honor, I'm

7    -- all right.

8            Interrogatory Number 4.  "Identify all sources of

9    information that you used.  For documents, list the persons,

10   including any Lindell employees or My Pillow employees --

11           THE COURT:  Slow down.  Slow down.  Slow down.

12           MR. KACHOUROFF:  Sorry.

13           "Or My Pillow employees, other news organizations,

14   and persons and persons affiliated with you, who reviewed

15   the documents, when he or she received -- received and/or

16   reviewed them and described the documents.  For persons

17   interviewed" -- I mean, it goes on with the same

18   construction.

19           THE COURT:  Mm-hmm.

20           MR. KACHOUROFF:  Our answer was pretty clear.  We

21   provided all that.  They want granularity that does not

22   exist in Interrogatory Number 4.

23           I know they don't like it, but Mr. Lindell did not

24   keep a journal or a diary or catalog all the things that he

25   did.  What he did do, a lot of it was off-the-cuff.  He

1     would do interviews with people.

2          THE COURT:  Mr. Kachouroff, this is -- this is

3     getting a little frustrating because we started off talking

4     about the defined term "defamatory statements."

5          MR. KACHOUROFF:  Correct.

6          THE COURT:  Then we talked about Dominion and FOX.

7     Now we're talking about granularity that doesn't exist.

8          I'm still looking for an answer as to why you are

9     "hung up," if you'll excuse that expression, on the word

10    "defamatory."

11         MR. KACHOUROFF:  Oh, I'm sorry.  I thought we were

12    going to Interrogatory Number 4, which is what these things

13    talked about.  And I misspoke earlier when I said Dominion.

14    I meant Smartmatic.

15         THE COURT:  All right.

16         MR. KACHOUROFF:  I have a problem with defamatory

17    broadcast because I don't contend that it's defamatory and

18    the natural usage of that word is not to go back to another

19    defined term and then cite an allegation.

20         Had they said "the alleged defamatory statements,"

21    I can deal with that.  But to call them affirmatively a

22    defamatory statement, I believe is a concession that that

23    it's defamatory and you say, well, no it's not.  It's a

24    defined term.  Well --

25         THE COURT:  Yes, that is what I say.

1          MR. KACHOUROFF:  Right.  And I don't think the

2     rules permit defined terms.  I know we do it a lot.

3          But just like attorneys add their own instructions

4     to discovery, which I think are beyond the scope of the

5     Federal Rules of Civil Procedure.

6          THE COURT:  Okay.  I didn't read any of this in

7     your response.

8          MR. KACHOUROFF:  I did not realize --

9          THE COURT:  The frontal assault on the Federal

10    Rules of Civil Procedure and how they're misused.

11         MR. KACHOUROFF:  Well, I didn't say it was a

12    frontal assault on the Rules of Civil Procedure.

13         THE COURT:  Okay.

14         MR. KACHOUROFF:  You know, I'm -- what I'm asking

15    for or I'm trying to convey to the Court, when you ask me

16    about defamatory statements I'm trying to answer why I have

17    a problem calling them defamatory statements.

18         THE COURT:  All right.  So if it said "alleged

19    defamatory statements" or it said "accused statements," the

20    problem would go away?

21         MR. KACHOUROFF:  Yes.  But I would suggest, Judge,

22    we've already answered even -- and that's what I put in my

23    response.  That notwithstanding that issue we have produced

24    all of his sources, all of his documents in these

25    interrogatories.

1          So put that aside for the moment the issue of

2     defamatory.  I contend we have answered that fully and

3     completely.

4               THE COURT:  All right.  All right.

5               MR. KACHOUROFF:  May I add one more thing to the

6     record?

7               THE COURT:  Yes.

8               MR. KACHOUROFF:  We don't have the ability to

9     add -- to comply with any order asking us to do more than

10    what we've already turned over because we don't have any

11    more.  That's what I'm trying to tell the Judge -- tell the

12    Court.

13              THE COURT:  All right.

14              So all this business about defamatory was a

15    sideshow?  That didn't have any effect on anything; is that

16    what I'm hearing?

17              MR. KACHOUROFF:  If you look at my response --

18              THE COURT:  I have looked at your response.  But

19    I'm still asking the question.

20              MR. KACHOUROFF:  That's what I said in my

21    response.  That this Court need not address these

22    deficiencies here because defendants have substantively

23    answered Interrogatory Number 4.  We identified numerous

24    sources of information.  I wasn't playing around.  I was --

25    I was offering to the Court that, yes, we have a problem

1    with the statement, but put that aside for a moment.  And

2    that's what my argument is in my papers.

3              If you look at page 10, the first paragraph.  It

4    says, "Because the Court -- this Court need not address

5    plaintiffs' deficiencies here because defendants have

6    substantively answered Interrogatory Number 4."

7              THE COURT:  All right.  All right.

8              I don't think I have any more questions.

9              MR. KACHOUROFF:  On anything?

10             THE COURT:  No.

11             MR. KACHOUROFF:  If I may, can I address a few

12   things that were --

13             THE COURT:  Mm-hmm.  Sure.

14             MR. KACHOUROFF:  We turned over financial records

15   from the accountant from My Pillow for 2022 and 2023.  This

16   is the first I've heard that they are -- those were not

17   sufficient.  So those were turned over a week and a half,

18   two weeks ago.

19             The only thing that we have left remaining, which

20   are still being worked on, are Mr. Lindell's personal taxes

21   for 2022 and 2023.  That covers Requests for Production

22   Number 26.

23             I don't -- I believe we gave them all the

24   financial information that they requested, which are the

25   financial statements in Requests for Production Number 26.

1          The financing, I wasn't playing cute with the

2   language, I'll correct the language for Interrogatory Number

3   23.  We talk about loans but in a small company.  A loan

4   doesn't necessarily take on an actual loan document when an

5   individual has his own company.

6          I know in my law firm that I own, we have loans

7   that are on the books but it can be a journal entry and we

8   have no idea what the loan is for but we had owner equity

9   contribution put in there.  And it may be apparent to us a

10  month after we made it but certainly not two years after we

11  made it.  That's Interrogatory Number 23.

12         So I don't understand what more they want from us.

13  If they want every single loan known to man from 2018 to the

14  present, that seems fairly overburdensome.  We would have to

15  go back and do granular audits.

16         If you want to get this case finished, I cannot do

17  granular audits from 2018 to 2023 on every single loan

18  transaction that My Pillow entered into, period.

19         THE COURT:  So the best you can do is the response

20  that I understand you've given, which is from time to time

21  My Pillow loaned Mr. Lindell money?

22         MR. KACHOUROFF:  That's correct, Judge.

23         THE COURT:  That's it?  There's nothing more?  No

24  journal entries, no nothing?

25         MR. KACHOUROFF:  The journal entry would not be

1    proportional or responsive if I have to go back through all

2    the journal entries to catalog all the times Mr. Lindell put

3    in money to the company and took money out of the company.

4    That wouldn't be proportional to the needs of the case.

5    They don't need that information.

6          What they need is information relating to whether

7    My Pillow supported any of Mr. Lindell's activities.  I --

8    grant it, I agree with that.  I gave them what they wanted.

9    That wasn't good enough for them.  They don't like his

10   explanations.  And since they don't get the answer that they

11   want, they continue to press as though it's going to come

12   magically in a different way.

13         THE COURT:  No, it's not that it's going to -- not

14   going to come magically in a different way, but there is a

15   difference, I think you would concede, between from time to

16   time money was loaned and from time to time money was loaned

17   in amounts between $10,000 and $50,000.  And from time to

18   time -- or rather on this date, $25,000 was loaned or

19   something like that.

20         And we aren't, after all -- you know, in terms of

21   proportionality, I'm not asking you to go back and audit

22   every single transaction.  We're asking for, go through the

23   journal, find the transfers of money from Mr. Lindell to My

24   Pillow or vice versa and download them.

25         MR. KACHOUROFF:  From 2018 to the present?

1          THE COURT:  That is what they are asking for.

2          MR. KACHOUROFF:  That doesn't seem to be --

3          THE COURT:  And what you have said is that that's

4    very burdensome and I don't doubt that it is burdensome.

5    But what I'm trying to get to proportionality rather than

6    burdensome.

7          MR. KACHOUROFF:  The proportionality part of it is

8    difficult because I don't -- I have to check the systems.

9    They may have changed -- I know for a fact they changed

10   accounting systems and I'll have to go back and look.

11         The really relevant time period, they want to see

12   whether Mr. Lindell was financing his activities, it's his

13   business.  He finances all of his activities, whatever it

14   is, you know.

15         And so if I see a bunch of loans during the month

16   of February of 2021 -- in fact, that would be the way to

17   make it proportional to keep the scope down to a manageable

18   size so I don't have to go through everything.

19         If we were to get this case on track to be done,

20   that's what they claim.  They want this.  It doesn't sound

21   like that.  It sounds like they want to continue fact

22   discovery even beyond the deadlines.

23         And I talked to the Court about it last time that

24   we're compressing a lot of things into a small timeframe.

25   That's --

1          THE COURT:  Okay.  But -- but I still don't have a

2     motion for an extension, which is one thing I asked about

3     last time.

4          MR. KACHOUROFF:  You did, but you also said you

5     were treating my motion for leave as a motion to amend the

6     scheduling order and I was planning on submitting a proposed

7     scheduling order.

8          THE COURT:  Timetable?

9          MR. KACHOUROFF:  Correct.

10         THE COURT:  Yes.  Well, I -- I mean, you know

11    where I am.

12         MR. KACHOUROFF:  Correct.

13         THE COURT:  All right.

14         MR. KACHOUROFF:  And just so the Court is clear, I

15    also have other cases for Mr. Lindell that I'm --

16         THE COURT:  I'm sure you do.

17         MR. KACHOUROFF:  Yeah.

18         THE COURT:  Yeah.

19         MR. KACHOUROFF:  And trying to comply with the

20    local rules here and the Court's calendar in the compressed

21    timeframe makes it very, very difficult.

22         So, I'm not complaining as Teddy the Milkman would

23    say.

24         THE COURT:  Well, no, it's not a question are you

25    complaining or not, but if you're -- if the issue is the

1     compressed timeframe, the way to fix the compressed

2     timeframe is to ask me to undo the compressed timeframe and

3     I'm waiting.

4              MR. KACHOUROFF:  Okay.  I will -- I will submit --

5     but now we're at August 29th.

6              THE COURT:  Yes, and tomorrow's, you know --

7     right.

8              MR. KACHOUROFF:  So is the Court going to

9     entertain a motion based upon, because I don't know when the

10    Court's next date is, if I can have the motion heard on

11    August 29th, I'll get it knocked out tomorrow and I'll have

12    it filed with the Court.

13             THE COURT:  Well --

14             MR. KACHOUROFF:  Obviously that requires us to

15    obviate the local rules.

16             THE COURT:  Well, why don't you just file the

17    motion and let me deal with it.

18             MR. KACHOUROFF:  Okay.  I shall do that.

19             THE COURT:  All right.  When it comes to a motion

20    for an extension, with all respect, Mr. Kachouroff, you're

21    seeing problems that don't exist.  All right?

22             MR. KACHOUROFF:  Okay.

23             THE COURT:  Okay.

24             MR. KACHOUROFF:  So that was Number 2.

25             Requests for -- well, that's the thing, that a lot

1    of their requests are overlapping requests.  I feel like

2    they repeat the same things over and over.

3           20 and 23 seem to be the same thing.  We have

4    provided -- one of the answers I gave them was that there

5    was $100,000 -- there was initially a statement by opposing

6    counsel that there was a $100,000 loan to FrankSpeech and

7    when I talked to the client he said, It's like a loan and I

8    said, What does that mean?  He said, well, you know, we pay

9    money and that money is an advertising credit and then what

10   happens is if a credit isn't paid -- if it doesn't get used,

11   it gets paid back like a loan.

12          And so whether my opposing -- my previous counsel

13   knew that or not, I didn't inquire.  I just simply corrected

14   the answer to what the client said.  But that goes back to

15   Number 23.

16          Again, I'm not so sure how you can parse out loans

17   that are on the books.  And, you know, what, Judge, it's

18   obvious you're going to grant it so I'm not going to belabor

19   it.  I think everything we have is right in our pleading.

20          And so, you know, I will do the best I can to go

21   through the loans from 2018 to 2023 to see what I can come

22   up with, but that's going to require a lot more time than I

23   have and -- but prior to the discovery cutoffs, the

24   discovery deadlines.  I found out today they're going to

25   file a motion with respect to my experts and what their

1   sources of information are.

2          So we're still again in this compressed space but

3   I heard what the Court said.  I will file for a motion for

4   an extension of time.

5          THE COURT:  Well, I mean, I'm looking at motions

6   here -- a motion, where, you know, apparently you were

7   feeling quite under the gun for some months but there was

8   never a motion for an extension.

9          Smartmatic, for its part, was feeling hard thumbed

10  by, by not getting the information it wanted.  This is the

11  first time, I believe, that there's been a motion to compel

12  on these particular discovery requests.

13         So, I mean, you know, my job is to manage this

14  litigation and I can manage it if lawyers bring me motions

15  or requests for an informal dispute resolution.

16         But this, you know, you all need to be in touch

17  more often.  I'm looking at both tables.

18         MR. KACHOUROFF:  Well, I think it would be helpful

19  to have virtual meetings.  I mean, I'm getting along with

20  Mr. Frye.  I had to designate one lawyer because they've

21  got, like, six on this case.  Like, six.

22         THE COURT:  Okay.

23         MR. KACHOUROFF:  They have six in the case, so I

24  can only deal with one person at a time.

25         THE COURT:  Right.  All right.  Thank you.

1          Ms. Loftus, any rebuttal?

2          MS. LOFTUS:  No, Your Honor.  But I believe my

3    colleague, Mr. Frye.

4          THE COURT:  Mr. Frye?

5          MR. FREY:  I just wanted to --

6          THE COURT:  Wait, wait, wait.  You have to speak

7    into the microphone.  We need it for the recorder.

8          MR. FREY:  I just wanted to respond to one thing

9    just for the record here.

10         Mr. -- or My Pillow, pardon, did produce the short

11   financial statements I referred to in the intervening time

12   between when we filed the motion and today.

13         THE COURT:  Right.

14         MR. FREY:  But those -- the cover letter to what

15   they produced, and I just want to put this on the record, it

16   ███████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ██████████

20           ████████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ███████████████████

24           ███████████████████████████████████████

25   ███████████████████████████████

1    ███████

2          So we think there's more that we think that's

3    omitted from here and that's why we were still asking for

4    updates to R.F.P. 26.

5          THE COURT:  Thank you.

6          MR. KACHOUROFF:  Your Honor, may I address that

7    briefly.

8          THE COURT:  Briefly, yes.

9          MR. KACHOUROFF:  Very briefly.  That is --

10          THE COURT:  At the microphone, please.

11          MR. KACHOUROFF:  Sorry.

12          That is a stock accountant CYA phrase.  The

13    disclosure part isn't -- aren't documents that are being

14    disclosed, it's disclosure of significant events, financial

15    conditions.  It's a bare-bones document.

16          Their Request Number 28 specifically says, "Income

17    statements."  It doesn't ask for underlying data.  Income

18    statements, cash flow statements.  They were given all of

19    that.  Thank you.

20          THE COURT:  Thank you.  All right, thank you.

21    Stand by, please.

22      (Recess taken at 2:50 p.m.)

23                    *   *   *   *   *

24      (2:55 p.m.)

25                    **IN OPEN COURT**

1          THE COURT:  All right.  Oh, sorry, have a seat.

2          All right.  Here's what we're going to do.  I'm

3     just going to work through these in order.

4          As I've already indicated, the component of the

5     motion to compel dealing with the first and second sets of

6     Requests for Admission, that component of the motion to

7     compel denied as moot because defendants have complied with

8     that.  And Smartmatic has said that it is, at least for

9     present, purposes satisfied with the response.

10         If, in going through this material, Smartmatic

11    finds deficiencies, that will need to be the subject of a

12    second or subsequent motion or informal dispute resolution.

13    But what's before me today is, to use vernacular, make them

14    give us this material and that has been done.

15         Smartmatic's fifth set of Requests for Production,

16    Smartmatic's fourth set of interrogatories, as Mr.

17    Kachouroff said, yes, those need to be provided.  There are

18    technical problems with getting them provided and,

19    therefore, those two components of the motion to compel are

20    granted.

21         As is the component of the motion to compel

22    dealing with Requests for Production Number 26.

23         As to numbers -- Interrogatory Numbers 4, 14, 20

24    and 23.  That part is under advisement with a written order

25    to follow.

1           In addition, however, there's a context to all of

2    this, which is that this case has been moving or I've tried

3    to be moving it on a fairly aggressive timetable and I am --

4    Mr. Kachouroff is going to get me a motion for an extension.

5    I am almost certainly going to grant it.  He might ask for

6    120 days and I'll trim it back to 90 or something like that

7    but there's going to be additional time.

8           The reason that I'm looking at Smartmatic is

9    because it might be in Smartmatic's interests, it's your

10   case, not mine, to meet and confer about a timetable for

11   this case going forward rather than having it imposed by me

12   because anytime that you let a decision about something

13   important to you be made by some third party, there is risk

14   that the third party will not see it the way you do and then

15   you'll be sorry or at least disappointed.

16          So, in fact I'll go further.  I'm ordering the

17   parties to meet and confer about a timetable for this case

18   going forward.  If you can't reach a stipulation, give me

19   competing proposals and I'll sort it out.  If you can,

20   that's great.

21          In the meantime, Mr. Kachouroff, I'd recommend

22   that the time that before the written order comes out,

23   probably ought to be devoted to the fifth set and fourth

24   set, which as you've said, there's still some additional

25   material to be produced.

1        And I'll also say to Smartmatic that, again, it

2    would be in your best interests to work with Mr. Kachouroff

3    and describe things in a way that will allow him to get into

4    his bulky document repository and find what it is that

5    you're looking for.  All right?

6        Anything else for today.

7        MR. KACHOUROFF:  Just so I understand, you said

8    you granted R.F.P. Number 26?

9        THE COURT:  Yes.

10       MR. KACHOUROFF:  Specifically, so we -- sorry,

11   Your Honor.

12       As I indicated, we produced exactly what was asked

13   for.  If they want -- now they want underlying data which

14   wasn't asked for.  They claim that these disclosures --

15   there's some kind of skullduggery going on with the

16   disclosure statement by the accountant.

17       I don't know what else to produce.  If we haven't

18   -- we produced those financial statements.  If they want

19   other stuff, if you tell me what you want I'll turn it over.

20   I'd rather do that than have a discovery fight.  I just

21   don't understand why we need to produce on the 26.

22       THE COURT:  All right.

23       When I went through Smartmatic's written pleadings

24   they had -- let me just get to it.

25       (Pause in proceedings)

1      THE COURT:  Well, what is it?  What is the

2  additional material you're looking for?

3      I mean, it is cataloged on page 12 and what Mr.

4  Kachouroff is saying is that he turned that over.

5      MR. FREY:  So what he turned over, Your Honor, was

6  a statement of assets, liabilities and equity and a

7  statement of revenues and expenses.  That is a very

8  high-level document.

9      What they have previously turned over included

10  income statements, profit and loss statements, balance

11  sheets and statements of sales by customer.

12      We'd be looking for that same information for the

13  years, you know, '22, '23, '24.

14      THE COURT:  Does that answer your question, Mr.

15  Kachouroff?

16      MR. KACHOUROFF:  Again, I think we've produced

17  exactly what the R.F.P. asks for.  Income statements, profit

18  and loss statements, balance sheets.  That's what we have

19  available to us.

20      I can go back -- I'll go back and check to see

21  whether they have formal financials done for those years.

22  I'm not sure they have.  So I gave you what we had for those

23  years that's responsive to these document requests.

24      In terms of anything else underneath it, I don't

25  know what else you want from underneath it.

1          THE COURT:  Well, one of the things mentioned was

2    a sales-by-customer survey.

3          MR. KACHOUROFF:  Which is not included in Request

4    Number 26.  That's the point.

5          R.F.P. Number 26 looks for financials, right?

6          MR. FREY:  Right.  And this -- this is what was

7    previously produced in response to that.  For the first

8    three years we were just looking to update that under

9    Rule 26.

10          MR. KACHOUROFF:  Like I said, just I'm not sure

11    that they were -- they produced exact same set of financials

12    that had been in '20 to '23.

13          THE COURT:  Well, let's settle this.

14          Mr. Kachouroff, are you saying as an officer of

15    the Court that you have fully complied with Number 26?

16          MR. KACHOUROFF:  No, I'm not.

17          THE COURT:  Okay.

18          MR. KACHOUROFF:  I'm going to go back and ask --

19          THE COURT:  Okay.

20          MR. KACHOUROFF:  -- the client and make sure that

21    I can -- if they tell me that this is the only thing they

22    have and this is what was produced, then I will convey that

23    to Mr. --

24          THE COURT:  All right.  Well, on that basis then,

25    the motion to compel is granted as to Number 26.  If it

```
1    turns out you've given them everything, it turns out you've

2    given them everything.  But it sounds like you've got some

3    questions to ask of your client.

4             MR. KACHOUROFF:  Yes.  Yes, Your Honor.

5             THE COURT:  All right.  All right.  Thank you all

6    very much.  Court is adjourned.

7             MR. KACHOUROFF:  Thank you, Judge.

8             (Court adjourned at 3:02 p.m.)

9             *          *          *

10                     REPORTER'S CERTIFICATE

11

12

13

14        I certify that the foregoing is a true and correct
     copy of the transcript originally filed on August, and
15   incorporating redactions requested by Attorney James Bedell.

16             Certified by:   s/ Lynne M. Krenz

17                       Lynne M. Krenz, RMR, CRR, CRC

18

19

20

21

22

23

24

25
```

LYNNE M. KRENZ, RMR, CRR, CRC
(651)848-1226