IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>                Plaintiffs,<br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>                Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR CONTEMPT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    I.    Defendants' False and Defamatory Statements About Smartmatic ........................... 2

    II.    Defendants' Willful Violation of Two Prior Court Orders ........................... 3

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT .......................................................................................................................... 7

    III.    Judge Docherty's Order Certified Clear and Convincing Evidence That Defendants Are Directly Disobeying Two Court Orders Of Which They Had Knowledge ........................... 8

        a.    Defendants Failed to Produce Documents Regarding Lindell's Financial Condition. ........................... 8

        b.    Despite Their Commitments To The Court, Defendants Failed to Produce Data Regarding Viewership Of Their Defamatory Programs. ........................... 10

    IV.    Defendants Cannot Establish Their Inability to Comply With This Court's Orders. ........................... 12

    V.    Smartmatic Should Recover The Fees Expended in Seeking Enforcement Of This Court's Orders. ........................... 15

CONCLUSION ........................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Allied Med. Training, LLC v. Knowledge2SaveLives L.L.C.*,
  2020 WL 6269196 (D. Minn. Oct. 26, 2020) ............................................................. 6

*D. Scott Carruthers Att'ys at L.*,
  2011 WL 4808191 (D. Minn. Oct. 11, 2011) ......................................................... 6, 7

*Edeh v. Carruthers*,
  2011 WL 4808194 (D. Minn. Sept. 20, 2011) ........................................................... 6

*Henderson v. City of Woodbury*,
  2016 WL 11020059 (D. Minn. Nov. 4, 2016) ........................................................... 5

*United States v. Open Access Tech. Int'l, Inc.*,
  527 F. Supp. 2d 910, 912–13 (D. Minn. 2007) .................................................... 5, 14

*United States v. Thornton*,
  2015 WL 1522245 (D. Minn. Mar. 27, 2015) ........................................................... 6

**Statutes**

28 U.S.C. § 636(e)(6) ........................................................................................................ 4

Fed. R. Civ. P. 70(a), (e) ................................................................................................... 5

Plaintiffs Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation, Limited (collectively, "Smartmatic") respectfully request that this Court find Defendants Michael J. Lindell and My Pillow, Inc. ("MyPillow") in contempt for violation of this Court's August 1, 2023 and October 19, 2023 Orders (ECF Nos. 160, 239).

**INTRODUCTION**

This case began as a result of Defendant Mike Lindell's decision to start a campaign to promote his MyPillow products by falsely accusing Smartmatic of both engaging in a widespread criminal conspiracy to rig the 2020 election, and of designing its products to rig elections worldwide. What's more, unlike other news organizations and individuals who at one point accused Smartmatic of rigging the 2020 election, Mike Lindell continues to actively spread his false and defamatory message despite being made aware through numerous sources, including the exhibits attached to the Complaint in this lawsuit, of the falsity of his accusations. In his own words, the "MyPillow Guy" has "gone all-in"[1] to throw every resource he can behind efforts to delegitimize and overturn the 2020 presidential election.

Consistent with Mr. Lindell's commitment to his messaging, he has repeatedly indicated that he does not care about this litigation.[2] It is therefore not surprising that in

---

[1] Ben Terris, *Mike Lindell won't give it a rest*, The Washington Post (July 17, 2024), available at https://www.washingtonpost.com/style/power/2024/07/17/mike-lindell-my-pillow-donald-trump-lawsuit-rnc/.

[2] *See, eg. id.* ("Despite the legal threats hanging over him, Lindell says he has no intention of shutting up."); *see also* Frey Decl. Ex. A, Dep. of Michael J. Lindell Tr. at 340:5–11 ("I am going to continue to preach to get rid of all machine companies in [] these elections. If

addition to ignoring the facts disclosed in this litigation that contradict his defamatory messages, Mr. Lindell has also elected to ignore clear court orders from this Court compelling him to turn over key evidence sought by Plaintiffs. This evidence includes viewership metrics of Mr. Lindell's defamatory publications and details of his financial state. Even after Magistrate Judge Docherty granted Smartmatic's Motion to Show Cause, Defendants have still chosen to obscure the ways that they have benefited from Lindell's lies about Smartmatic: via increased notoriety (extensive viewership) and financially (through advertising dollars). Smartmatic has (and continues) to incur cost in an effort to obtain this relevant, discoverable information. Without this Court's assistance, Smartmatic may never receive it.

## BACKGROUND

**I.       Defendants' False and Defamatory Statements About Smartmatic**

In November 2020, Joe Biden and Kamala Harris won the U.S. election for President and Vice President. (ECF No. 125, Supp. Compl. ¶ 56.) The security, reliability, and accuracy of the 2020 election have been repeatedly confirmed since November 2020. Yet Mike Lindell, the "MyPillow Guy," latched onto a false narrative that the 2020 election was "stolen" from former President Donald Trump and Vice President Mike Pence. (*Id.* ¶ 69.)

---

somebody asked me if [Smartmatic's machines] were used to rig the 2020 election, I will say yes, until -- forever. You guys -- you can't change history. You guy[s] did it, and that you were part of it, and that's it.").)

Beyond just claiming that the election was stolen, however, Lindell decided to specifically target and blame Smartmatic for intentionally designing their product to steal elections. (*See, e.g. id.* ¶ 151(l) ("[L]et's not forget Smartmatic, they're like the mothership of this. And for not only being involved in the biggest crime against our country, probably in history . . .") As a result, Defendants have defamed Smartmatic continually since the 2020 U.S. Election. (*Id.* ¶¶ 75–136.) ***First***, Lindell created, produced, and published a series of false documentaries claiming to have found evidence of widespread fraud in the 2020 election, calling out Smartmatic by name while promoting MyPillow. (*Id.* ¶¶ 84–109.) ***Second***, Lindell appeared on dozens of Internet, radio, and televisions shows promoting his documentaries, driving traffic to his websites, soliciting customers for MyPillow, and again falsely accusing Smartmatic of rigging the 2020 election. (*Id.* ¶¶ 110–17.) ***Third***, Lindell held an in-person "Cyber Symposium"—live-streamed on his website—where he further defamed Smartmatic. (*Id.* ¶¶ 118–29.)

In response to these unrelenting attacks, Smartmatic filed suit on January 18, 2022. (ECF No. 1.) This lawsuit did not deter Lindell from defaming Smartmatic further. Midway through fact discovery, Smartmatic was forced to supplement its complaint to capture additional defamatory statements. (*See generally* ECF No. 125; *see also id.* ¶¶ 130–36.)

**II.     Defendants' Willful Violation of Two Prior Court Orders**

On August 1, 2023, this Court ordered Defendants to respond to several interrogatories for which they had asserted meritless objections. (ECF No. 160.) Defendants were required to disclose, among other information, publication details for their defamatory broadcasts. (*Id.* at 6–7.) Defendants were also ordered to update their responses

and objections to Smartmatic's requests for production to comply with Federal Rule of Civil Procedure 34(b)(2)(C). (*Id.* at 14–15.)

On October 19, 2023, this Court further ordered Lindell to produce his personal financial records, reasoning that Lindell's financial status is relevant to Smartmatic's actual malice case. (ECF No. 239.) Specifically, the Court ordered Lindell to produce documents related to his financial condition from 2020 to the present, his ownership interest in any company or entity, documents or communications related to any audit of Lindell by the U.S. Internal Revenue Service ("IRS"), and documents and communications related to any loans received, secured, or negotiated for Lindell or MyPillow. (*Id.* at 11 ("[T]he Court grants Smartmatic's motion as to RFP Nos. 30, 31, 32, and 33.").)

Defendants failed to comply with both orders. Accordingly, on June 7, 2024, Smartmatic filed its Motion to Show Cause requesting that Magistrate Judge Docherty order Defendants to appear before this Court to show cause why they should not be held in contempt of Judge Docherty's August 1, 2023 and October 19, 2023 Orders. (ECF No. 274.) Oral argument was heard on Smartmatic's motion on June 21, 2024. (*See* ECF No. 282.)

Judge Docherty granted Smartmatic's Motion to Show Cause on July 18, 2024. (ECF No. 308.) In so doing, Judge Docherty certified the facts relevant to Defendants' defiance of the Court's discovery orders from the start of discovery to the present pursuant to 28 U.S.C. § 636(e)(6). (*See id.* at 3–10.) In the interest of efficiency, Smartmatic incorporates by reference the certification of facts contained within Judge Docherty's July

4

18 Order and will not recite those same facts in detail herein. At a high level, Judge Docherty's Order certified the following:

- Defendants were compelled to produce documents responsive to RFP Nos. 30 and 32, which seek documents relevant to Mr. Lindell's personal finances, on October 19, 2023. (*Id.* at 9.)

- Defendants have not yet produced documents responsive to RFP Nos. 30 and 32 for the years 2022 and 2023. (*Id.* at 10.)

- Defendants represented to the Court that they "have produced or will produce" metrics data responsive to Interrogatory No. 15 in briefing filed February 17, 2023. (*Id.* at 6.) Reasoning that Defendants represented that "they have or will disclose all metrics data," the Court denied as moot Smartmatic's motion as to Interrogatory No. 15. (*Id.* at 7.)

- Defendants have failed to properly respond to Interrogatory No. 15 despite commitments they have made to the Court to do so. (*Id.* at 7.)

- Smartmatic notified the Court that the sought-after metrics data is in Defendants' exclusive control. (*Id.* at 8.)

Sixty-two minutes after the Court entered its Order granting Smartmatic's Motion to Show Cause, Defendants filed a notice titled "Objection to Court's Order to Show Cause and Request for Status Conference." (ECF No. 309.) Defendants' "objection" stated:

> Defendants have provided documents in their possession for 2022 and 2023. It is unclear what "responsive documents" Plaintiffs are referring to and the Court's order appears to presume that Defendants know what those documents might be. Defendants do not have responsive documents for the 2022–2023 time frame because that period is not under audit and so no documents were compiled for 2022–2023 as they were for the audit. The only other documents that are required to be turned over under Defendants' understanding were the 2022–2023 tax returns.

(*Id.* at 1.)

Beyond this filing, Defendants contacted Smartmatic asking what Smartmatic seeks in response to Interrogatory No. 15. (Frey Decl. at Exhibit B, email correspondence dated

July 29, 2024.) Smartmatic responded that it seeks tracked pageviews, unique pageviews, average time on page, entrances, bounce rate, and exit percentage—the same metrics produced by FrankSpeech, another Lindell-controlled entity—for February 1, 2021 through August 31, 2021. And at the June 21, 2024 hearing, Smartmatic emphasized that Defendants owe Smartmatic metrics data from michaeljlindell.com, beginning at the time that Lindell's first defamatory publications were published. (ECF No. 312, June 21, 2024 Hearing Tr. at 10:20–11:15.)

## LEGAL STANDARD

The Court may hold a party in contempt of court for violating a specific order. Fed. R. Civ. P. 70(a), (e). The contempt authority includes the power to hold a party responsible for violating a subpoena or discovery order. *Henderson v. City of Woodbury*, No. 15-cv-3332, 2016 WL 11020059, at *2 (D. Minn. Nov. 4, 2016), report and recommendation adopted by *Henderson v. City of Woodbury*, No. CV 15-3332 (RHK/FLN), 2016 WL 11020058 (D. Minn. Dec. 1, 2016). When a party is in contempt, the court may impose monetary or carceral sanctions to encourage the contemnor's compliance with the court's order, to compensate the movant for losses sustained, or both. *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 912–13 (D. Minn. 2007).

A moving party will show contempt of court by bringing clear and convincing evidence of the opposing party's violation of the court order. *Allied Med. Training, LLC v. Knowledge2SaveLives L.L.C.*, No. 19-CV-3067 (ECT/KMM), 2020 WL 6269196 at *2 (D. Minn. Oct. 26, 2020). The movant meets its burden to demonstrate contempt when it shows that "(1) a valid order existed, (2) the party had knowledge of the order, and (3) the party

6

disobeyed the order." *United States v. Thornton*, No. 13-mc-87 (SRN/TNL), 2015 WL 1522245, at *2 (D. Minn. Mar. 27, 2015). The movant need not show that the contemnor acted willfully. *Allied Med. Training*, 2020 WL 6269196, at *2.

Once the movant shows the contemnor violated a court order, the burden shifts to the contemnor to show their inability to comply. *Edeh v. Carruthers*, No. CIV. 10-2860 RJK/JSM, 2011 WL 4808194 (D. Minn. Sept. 20, 2011), *report and recommendation adopted sub nom. Edeh v. D. Scott Carruthers Att'ys at L.*, No. CIV. 10-2860 RHK/JSM, 2011 WL 4808191 (D. Minn. Oct. 11, 2011). "A mere assertion of present inability is insufficient to avoid a civil contempt finding. Rather, alleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply." *Id*. at *3 (quotation omitted).

## ARGUMENT

The first two elements of Smartmatic's claim that Defendants should be held in contempt are undisputed. The Court's Orders dated August 1, 2023 and October 19, 2023 are valid orders and Defendants had knowledge of these orders. As explained below, Defendants have failed to comply with the Court's orders compelling them to produce responsive financial documents and respond to Smartmatic's interrogatories.

**III. Judge Docherty's Order Certified Clear and Convincing Evidence That Defendants Are Directly Disobeying Two Court Orders Of Which They Had Knowledge.**

In his July 18, 2024 Order granting Smartmatic's Motion to Show Cause, Judge Docherty certified the lengthy facts leading up to and including Defendants' disobedience of this Court's Orders.

    **a.    Defendants Failed to Produce Documents Regarding Lindell's Financial Condition.**

In order to discover information relevant to actual malice and punitive damages, Smartmatic issued the following requests for production to Lindell:

- Request for Production No. 30: Documents sufficient to show LINDELL's financial condition from 2020 to the present, including, but not limited to, annual financial reports and tax returns.

- Request for Production No. 32: Documents and communications relating to any audit of LINDELL by the U.S. Internal Revenue Service from 2020 to the present.

(*See* ECF No. 308, at 8.) Defendants initially objected to the Requests for Production on relevance grounds, prompting Smartmatic to bring this to the Court's attention in its Second Motion to Compel, filed July 10, 2023 (ECF No. 140; *see also* ECF No. 308, at 8.)

On October 19, 2023, the Court granted Smartmatic's motion, compelling Lindell to produce, among other things, documents responsive to Request for Production Nos. 30 and 32. On May 20, 2024, Lindell finally made a production in an attempt to comply with the Court's order. (ECF No. 277-1, Loftus Decl. Ex. A, Defendants' Fifth Supplemental Responses to Plaintiffs' Discovery, at 5–6; *see also* ECF No. 308, at 9.)

On June 7, 2024, Smartmatic filed its Motion to Show Cause. (ECF No. 274; *see* ECF No. 308, at 9.) Smartmatic noted that while Lindell produced his tax returns for 2019

8

through 2021, Lindell had failed to produce tax returns for 2022 and 2023. (ECF No. 276, at 5; ECF No. 308, at 9.) Lindell argued that his 2022 and 2023 tax returns are still being compiled. (ECF No. 277-1, at 5–6; ECF No. 281, at 1; ECF No. 308, at 9.) Lindell admits that documents related to the 2022 and 2023 tax returns exist, but has not provided those documents. (ECF No. 276, at 5; ECF No. 308, at 9.) Indeed, Judge Docherty underscored this point during the June 21, 2024 hearing:

> If the taxes are being prepared, they are being prepared from some raw data. There are documents that have been given to accountants or tax lawyers or whoever is doing this. And why would those papers not be responsive to the plaintiffs' document request?

(ECF No. 312, June 21, 2024 Hearing Tr. at 14:10–14.) Defendants' counsel responded, "I don't care whether they are responsive or not, I'm going to turn them over. As soon as we have the tax returns and the audit is done, they can have it. We've got nothing to hide." (*Id.* at 14:14–18.) Judge Docherty further pressed counsel on why Defendants could not produce underlying documents prior to the audit's completion. (*Id.* at 20:12–14.) Defendants' counsel confirmed that Defendants could produce the underlying documents, and Judge Docherty confirmed that Defendants should do so. (*Id.* at 20:14–20.) Defendants still have not produced Lindell's tax returns for 2022 and 2023. (Frey Decl. ¶ 5.) Defendants have also failed to produce documents underlying Lindell's 2022 and 2023 returns. (*Id.* ¶ 6.)

      **b.**     **Despite Their Commitments To The Court, Defendants Failed to Produce Data Regarding Viewership Of Their Defamatory Programs.**

To ascertain the reach of Defendants' defamatory statements, Smartmatic served the following Interrogatory:

> Interrogatory No. 15: Identify all metrics You use to quantify the number of individuals who viewed an ACCUSED PROGRAM or DEFAMATORY BROADCAST and provide the corresponding data for each ACCUSED PROGRAM or DEFAMATORY BROADCAST.

(ECF No. 308, at 4.) Smartmatic argued in its First Motion to Compel that Lindell had stated, for example, that 100 million people watched his defamatory documentary *Absolute Proof*.[3] (*See* ECF No. 308, at 6.) In response, Defendants represented that "[t]o the extent that Defendants have 'metrics' data, that data is contained in the documents Defendants have produced or will produce." (ECF No. 97, at 18; ECF No. 308, at 4.) Accordingly, the Court stated in its Order: "Because Defendants are voluntarily providing the metrics data in question, the Court denies as moot Smartmatic's motion as to Interrogatory No. 9." (ECF No. 160, at 10; *see* ECF No. 308, at 7.)

Despite their commitment to this Court, Defendants have failed to produce the referenced viewership metrics. In fact, whereas Defendants told the Court that they would

---

[3] As Smartmatic noted in its February 1, 2023 Memorandum in Support of its First Motion to Compel (ECF No. 80, at 27), Lindell stated on Rudy Giuliani's podcast that "100 million people worldwide" had watched *Absolute Proof*, with an "average view time" of 1 hour and 53 minutes, and referencing a specific "site we track" for data related to viewership. *See* CANCEL CULTURE: Return Of The Salem Witch Trials? at 27:13-41, Rudy Giuliani's Common Sense (Feb. 19, 2021), available at https://chartable.com/podcasts/rudy-giulianis-common-sense/episodes/78055994-cancel-culture-return-of-the-salem-witch-trials-rudy-giuliani-and-mike-lindell-ep-113.

10

produce the data, they now claim that they should not have to produce the metrics they told this Court would be forthcoming *in February 2023*:

- **MY PILLOW RESPONSE**: My Pillow did not distribute money to support Mr. Lindell's political statements or activities. My Pillow's answer is complete and final.

- **LINDELL'S RESPONSE**: Mr. Lindell affirms his prior answer. He does not keep records of metrics with respect to viewership.

  During the relevant period, Mr. Lindell's team extracted from Google Analytics video view data but unfortunately, that data did not effectively differentiate between unique viewers and overall website visits. Consequently, the reports generated an artificially high number and did not accurately reflect unique viewer metrics. It is important to note that web visits are not synonymous with video views. From his memory, the metrics Mr. Lindell reviewed often included overall website traffic without isolating specific video interactions.

  Furthermore, the hosting and video streaming platform underwent constant development and experienced numerous changes, including transitions between different hosting providers. These transitions impacted both live streaming and archived video content. Throughout these changes, no historical data specific to unique viewers of the video programs was retained, as the primary focus was on maintaining and improving the streaming service rather than on the long-term retention of viewer-specific data. Thus, due to the limitations of the tools used, the nature of web traffic versus video views, and the extensive changes in our hosting and streaming platforms, unique viewer data was not retained historically. Mr. Lindell's response to this interrogatory is final and complete.

(ECF No. 277-1, Loftus Decl. Ex. A; ECF No. 308, at 7.) Defendants argued that Mr. Lindell had no viewership data, and that Smartmatic's request is satisfied via metrics data produced by a third party, FrankSpeech (Lindell's proprietary streaming platform). At the June 21, 2024 hearing on Smartmatic's Motion to Show Cause, Defendants represented that the requested data from michaeljlindell.com—where Mr. Lindell posted his first documentary—was publicly available and therefore already available to Smartmatic. (ECF

11

No. 308, at 8.) On June 25, 2024, Smartmatic informed the Court that Defendants' representation was mistaken: the Google Analytics data Smartmatic seeks is available only to the site owner, Mike Lindell. (ECF No. 284, Plaintiffs' Letter; *id.*)

This Court should not countenance Defendants' gamesmanship. Defendants represented to the Court that they would produce the data requested by Smartmatic. Lindell previously represented that he has access to the data based on his myriad public representations concerning the number of people who viewed his defamatory programs, and prior counsel's commitment to produce it. Lindell further admits that he extracted Google Analytics data in his most recent supplemental response. This data is only available to Lindell. This Court should put a stop to Lindell's multiple false representations and ensure Lindell provides the highly relevant metrics he (now) admits exist.

**IV.   Defendants Cannot Establish Their Inability to Comply With This Court's Orders.**

Defendants may attempt to argue that they are incapable of complying with this Court's Orders. This is not accurate.

***Scope of discovery sought.*** Defendants owe Smartmatic a limited set of very specific documents. In order to comply with their obligations related to Mike Lindell's finances for the years 2022 and 2023, Defendants need only produce documents sufficient to show his financial situation. Defendants' counsel promised, at the June 21, 2024 hearing, to turn over documents underlying the apparently unavailable tax returns for those years. (ECF No. 312 at 20:14–20.) Similarly, Smartmatic has told Defendants exactly what

Smartmatic needs with respect to viewership metrics. (Frey Decl. Ex. B.) Defendants can produce these documents by downloading existing information from Google Analytics.

***Ability to fund litigation.*** Second, Defendants' strategic choices as to whether to fund their defense in this case do not countenance ignoring discovery orders. Defendants may argue that they lack the monetary resources to comply with discovery orders. Smartmatic urges this Court to carefully examine claims of this nature in the context of Mike Lindell's public statements and activities described below, including the fact that while claiming lack of resources to fund this litigation, Mr. Lindell continues to fund his efforts to overturn the 2020 election and spread disinformation.[4] Indeed, Judge Docherty addressed this issue during the hearing on Defendants' Motion for Leave to File on August 29, 2024. (ECF No. 366, August 29, 2024 Hearing Tr. at 14:3–13 ("The blunt truth is that Mr. Lindell is not devoting resources to this case or to his legal representation. . . . I understand that Mr. Lindell has got some financial issues.  He's been fairly open about that in various forms of public media.  But at the same time . . . I'm not blind to the fact that as he talks about his financial issues, he is also hosting conventions concerning allegations of fraud in the 2020 presidential election.").)

***First***, Mr. Lindell stopped paying his first set of lawyers in July 2023. (ECF No. 226, Memorandum of Law in Support of Motion to Withdraw as Counsel of Record for Defendants, at 2.) While he was withholding payments from his lawyers, Lindell hosted his fourth live symposium spreading election fraud claims—and defaming Smartmatic—

---

[4] Smartmatic does not seek to impugn Defendants' current counsel in this litigation, nor the previous firm that represented the Defendants, for this circumstance.

13

in August 2023.[5] By October 2023, when prior counsel formally moved to withdraw, Defendants were "millions of dollars" in arrears to prior counsel. (*Id.* at 3.)

***Second***, Lindell sent his email subscribers a fundraising email the night before his counsel formally withdrew. (ECF No. 233-1, Ex. 1 to Declaration of Julie M. Loftus.) Lindell complained, "THE FIGHT IS FAR FROM OVER AND YET… Our Lawyers went to a federal Judge to drop our cases because we are no longer able to pay them!" (*Id.*) Lindell used this development not to pay his counsel, but to raise money to fund "Wireless Monitoring Devices," or "WMDs"—tiny drones that Lindell wants to deploy above voting centers to collect private information about voters. (*Id.* at 3 ("We will put WMD[]s directly in the hands of Election Clerks across the country so they can immediately detect if Electronic Election Voting Machines are accessing the Internet . . . ").)

***Third***, Defendants have declined to pay for their current lawyers to use a discovery vendor, which is the principal issue cited by Defendants as to why they cannot comply with discovery requests or deadlines. (ECF No. 314, Defendants' Opposition to Plaintiffs' Motion to Modify Scheduling Order, at 2 ¶ 4 ("Plaintiffs know, because the defense told them on numerous occasions, that the defense no longer had an ESI vendor and is forced to search millions of documents where *each* page is saved as a single file.").) However, Defendant Lindell has found the funds to pay Rudy Giuliani $180,000 to host a show on

---

[5] *See, e.g. The Plan: How We Secure Our Elections*, FrankSpeech (August 18, 2023), *available at* https://frankspeech.com/Video/the-plan-how-we-secure-our-elections, at 25:54–26:18 ("… this thing . . . the Dominion machine or the Smartmatic machine or whoever . . . and it goes 'bing' back to the command center . . .").

14

Lindell's livestream website.[6] He has also found the funds to attend the Republican National Convention and sponsor his own booth.[7] He continues to advertise nationally on Fox News Network. (Frey Decl. Ex. A, Deposition of Michael J. Lindell Tr. at 465:2–5.) And he hosted and livestreamed his "4th Annual" election fraud summit during the Democratic National Convention in August.[8] Of course, Smartmatic largely draws these conclusions from publicly available sources because Lindell has refused to produce recent financial statements.

Defendants should not be permitted to claim they lack the resources to produce their financial information *while withholding the very information that would reveal any supposed insolvency*. Accordingly, this Court should find that Defendants are capable of complying with this Court's Orders.

## V.  Smartmatic Should Recover The Fees Expended in Seeking Enforcement Of This Court's Orders.

Smartmatic does not bring this motion for purposes of delay or retribution. Rather, Smartmatic is prepared to move this case to trial and prove the reputational harm it has suffered because of the Defendants' defamatory statements and publications. Smartmatic simply wants to receive discovery it first requested *years ago*. Smartmatic has been forced

---

[6] *See* Ja'han Jones, *Rudy Giuliani's new gig is sure to invite legal scrutiny*, MSNBC (July 4, 2024), *available at* https://www.msnbc.com/the-reidout/reidout-blog/rudy-giuliani-mike-lindell-rcna160197.

[7] *See supra* Terris, *Mike Lindell won't give it a rest*, The Washington Post (July 17, 2024), *available at* https://www.washingtonpost.com/style/power/2024/07/17/mike-lindell-my-pillow-donald-trump-lawsuit-rnc/.

[8] *See* FrankSpeech, *Mike Lindell Presents The 4th Annual FrankSpeech Election Summit!* (August 14, 2024), *available at* https://frankspeech.com/v/3khd3.

15

to bring four motions—including the motion supported by this Memorandum—in order to receive clearly relevant, proportionate discovery.

Courts hold broad authority in fashioning contempt sanctions. *See United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 912–13 (D. Minn. 2007) (court may impose monetary or carceral sanctions to encourage contemnor's compliance with the court's order, to compensate the movant for losses sustained, or both). Smartmatic requests that this Court use its contempt powers to compensate Smartmatic for the fees expended in enforcing this Court's August 1, 2023 and October 19, 2023 Orders. That is, Smartmatic requests the fees expended in preparing its Motion to Show Cause and this Motion for Contempt.

## CONCLUSION

For the foregoing reasons, Smartmatic respectfully requests that this Court find Defendants in contempt for violating the August 1, 2023 and October 19, 2023 Orders. Smartmatic further respectfully requests that this Court require Defendants to compensate Smartmatic for the fees incurred in bringing the motion to show cause and the motion for contempt.

Dated: September 23, 2024                    Respectfully submitted,

                                                   */s/ Timothy M. Frey*

                                                 Christopher K. Larus
                                                     Minnesota Bar No. 0226828
                                                     CLarus@robinskaplan.com
                                                William E. Manske
                                                     Minnesota Bar No. 0392348
                                                     WManske@robinskaplan.com
                                              **ROBINS KAPLAN LLP**

        800 LaSalle Avenue, Suite 2800
        Minneapolis, MN 55402
        Telephone: (612) 349-8500

        J. Erik Connolly (admitted *pro hac vice)*
           EConnolly@beneschlaw.com
        Illinois ARDC No. 6269558
        Nicole E. Wrigley (admitted *pro hac vice)*
           NWrigley@beneschlaw.com
        Illinois ARDC No. 6278749
        Timothy M. Frey (admitted *pro hac vice*)
           TFrey@beneschlaw.com
        Illinois ARDC No. 6303335
        Julie M. Loftus (admitted *pro hac vice*)
           JLoftus@beneschlaw.com
        Illinois ARDC No. 6332174
        **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
        71 South Wacker Drive, Suite 1600
        Chicago, IL 60606
        Telephone: (312) 212-4949

        James R. Bedell (admitted *pro hac vice*)
           JBedell@beneschlaw.com
        Ohio Bar No. 97921
        **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
        127 Public Square, Suite 4900
        Cleveland, OH 44114
        Telephone: (216) 363-4500

        *Attorneys for the Plaintiffs*