# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

---

SMARTMATIC USA CORP.,
SMARTMATIC INTERNATIONAL
HOLDING B.V., and SGO
CORPORATION LIMITED,

|                    Plaintiffs,

v.

MICHAEL J. LINDELL and MY
PILLOW, INC.,

|                    Defendants.

Case No. 22-cv-0098-JMB-JFD

---

**SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO STRIKE THE JULY 9, 2024 REBUTTAL REPORT OF
ROBERT BOWES AND OTHERWISE EXCLUDE HIS TESTIMONY**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

LEGAL STANDARDS ............................................................................................. 11

ARGUMENT ............................................................................................................. 12

I.    Bowes's July 2024 Rebuttal Report Should be Stricken Because He
      Fails to Provide a Documents Considered List. ...................................... 12

II.   Bowes's Rebuttal Opinions Should be Otherwise Excluded Because
      They are Irrelevant, Unreliable and Will Not Be Helpful to the Trier
      of Fact. ......................................................................................................... 14

      A.    Bowes's Opinions Responding to Non-Existent Smartmatic
            Expert Opinions Are Not Relevant. ............................................. 14

      B.    Bowes Is Not Qualified to Opine on Damages Causation. ........ 15

      C.    Bowes's Opinion Usurps the Province of the Trier of Fact. ...... 17

      D.    Bowes's Opinion Is So Infected With Partisan Advocacy That
            It is Not Helpful to the Trier of Fact. ......................................... 18

      E.    Bowes's Opinion Is Not Helpful Because It is Simply Based
            on His Interpretation of Documents and Conclusory, *Ipse
            Dixit* Statements. ......................................................................... 20

III.  Bowes's Opinions Based on the Adopted Gorowsky Report Should
      be Excluded Because They Will Not Be Helpful to the Trier of Fact ...... 22

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. J. Meyers Builders, Inc.*,
  671 F. Supp. 2d 262 (D.N.H. 2009)............................................................ 1, 13

*ADS Holdings v. Fed. Ins. Co.*,
  2007 WL 9735529 (D. Minn. Aug. 1, 2007) ........................................ 11, 12

*Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*,
  829 F. Supp.2d 802 (D. Minn. 2011)............................................................ 12

*Canada By & Through Landy v. McCarthy*,
  567 N.W.2d 496 (Minn. 1997)...................................................................... 23

*Graystone Funding Co. v. Network Funding, L.P.*,
  598 F. Supp. 3d 1228 (D. Utah 2022).......................................................... 17

*Hill v. Fikes Truck Line, LLC*,
  2012 WL 5258753 (E.D. Mo. Oct. 24, 2012)............................................. 22

*Hoekman v. Educ. Minn.*,
  335 F.R.D. 219 (D. Minn. 2020).............................................................. 21, 24

*Johnson v. J.P. Parking, Inc.*,
  717 F. Supp. 3d 798 (S.D. Iowa 2024) ........................................................ 21

*Just Enters., Inc. v. (888) Justice, Inc.*,
  2008 WL 2625520 (W.D. Mo. Apr. 21, 2008) ........................................... 19

*Karn v. Ingersoll-Rand Co.*,
  168 F.R.D. 633 (N.D. Ind. 1996) ................................................................. 13

*Lauzon v. Senco Prods., Inc.*,
  270 F.3d 681 (8th Cir. 2001) ........................................................ 11, 12, 15

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003)...................................................................... 19

*In re Massa Falida Do Banco Cruzeiro Do Sul S.A.*,
  2020 WL 2462532 (S.D. Fla. May 12, 2020) ............................................. 22

*Mathews v. Mills*,
178 N.W.2d 841 (Minn. 1970) .................................................................... 23

*Pena-Crespo v. P.R.*,
408 F.3d 10 (1st Cir. 2005) ......................................................................... 13

*Rivera Pomales v. Bridgestone Firestone, Inc.*,
217 F.R.D. 290 (D.P.R. 2003) .................................................................... 13

*Robroy Industries-Tex., LLC v. Thomas & Betts Corp.*,
2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ........................... 16, 17, 20, 23

*Smith v. Rasmussen*,
249 F.3d 755 (8th Cir. 2001) ...................................................................... 15

*Sterilite Corp. v. Olivet Int'l, Inc.*,
2024 WL 4349271 (D. Mass. Sept. 30, 2024) ............................................ 17

*Sullivan v. Alcatel-Lucent USA Inc.*,
2014 WL 3558690 (N.D. Ill. July 17, 2014) .......................................... 20, 22

*In re Trasylol Prods. Liab. Litig.*,
709 F. Supp. 2d 1323 (S.D. Fla. 2010) ................................................. 19, 20

*United States v. Benson*,
941 F.2d 598 (7th Cir. 1991) ...................................................................... 20

*Vanderberg v. Petco Animal Supplies Stores, Inc.*,
906 F.3d 698 (8th Cir. 2018) ...................................................................... 11

*Wagner v. Hesston Corp.*,
450 F.3d 756 (8th Cir. 2006) ...................................................................... 12

*Wheeling Pitt. Steel Corp. v. Beelman River Terminals, Inc.*,
254 F.3d 706 (8th Cir. 2001) ...................................................................... 15

## Other Authorities

Besty Woodruff Swan & Kyle Cheney, *Felons or dupes? Treatment of Trump's Fake Electors has varied wildly by state,* Politico (May 11, 2024), https://www.politico.com/news/2024/05/11/trump-fake-electors-charges-00157440 ........................................................................................ 4

Fed. R. Civ. P. 26(a)(2)(B) ............................................................. 1, 11, 12, 13

Fed. R. Civ. P. 37(c) ............................................................................... 11, 13

Fed. R. Evid. 702 ................................................................................................ 11

Restatement (Second) of Torts §433B(2) ........................................................ 23

Plaintiffs Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation, Limited (collectively, "Smartmatic") respectfully request that this Court exclude the testimony of Robert Bowes, a purported damages expert hired by Defendants Michael J. Lindell and MyPillow, Inc. (collectively, "MyPillow"), and further request that the Court strike Bowes's July 9, 2024 expert report for failing to comply with Fed. R. Civ. P. 26(a)(2)(B).

## INTRODUCTION

Bowes is a former Trump political appointee and self-proclaimed financial consultant and election fraud investigator, who was retained to (1) offer testimony in ostensible rebuttal to Smartmatic's expert witnesses and damages claims via his July 9, 2024 Rebuttal Report (the "Rebuttal Report"), and (2) adopt the September 22, 2023 expert report of Donald Gorowsky, MyPillow's former expert who has since withdrawn from the case (and whose report is referred to herein as the "Gorowsky Report"). In both of these endeavors, Bowes has failed to set forth any admissible opinions, and thus, his testimony should be excluded.

***Bowes's Rebuttal Report is Procedurally Deficient.*** Bowes's Rebuttal Report should be stricken because he fails to include a documents considered list. Rule 26(a)(2)(B) is crystal clear that an expert must provide a list of "the facts or data considered by the [expert]." Fed. R. Civ. P. 26(a)(2)(B)(ii). When an expert fails to provide information required by Rule 26(a)(2)(B), courts exclude that expert. *See, e.g.*, *Adams v. J. Meyers Builders, Inc.*, 671 F. Supp. 2d 262, 269–70 (D.N.H. 2009).

***Bowes's Rebuttal Opinions are Substantively Inadmissible.*** Putting aside Bowes's

failure to provide the required documents considered list, the opinions in Bowes's Rebuttal Report should be excluded for five additional reasons.

**First,** Bowes responds to non-existent expert opinions. Bowes purports to respond to Smartmatic experts Dr. Kevin Keller, Dr. Jonah Berger and Tammy Patrick's opinions on "financial forecasting." (Ex. A at ¶ 83.)[1] None of those experts, however, offer such an opinion. To the state the obvious, responding to non-existent expert opinions will not assist the trier of fact.

**Second,** Bowes opines on causation, which he is not qualified to do. He has no experience with voting machine companies or government agencies responsible for the procurement of election products and services. He has no prior expert experience with defamation cases. He has no specialized knowledge that would allow him to evaluate whether Smartmatic was harmed by defamation.

**Third,** by opining on causation, Bowes impermissibly usurps the province of the jury because he is, in essence, trying to tell the jury what result to reach—*i.e.*, that MyPillow did not cause harm to Smartmatic.

**Fourth,** Bowes's opinion is nothing more than partisan advocacy rather than independent expert analysis that will assist the trier of fact. Bowes litters his Rebuttal Report with argumentative claims such as that "Smartmatic is banking on lawsuits as a source of revenue," and that Smartmatic is being bankrupted by "a phalanx of expensive

---

[1] All citations to exhibits are exhibits to the Declaration of Timothy M. Frey in Support of Smartmatic's Motion to Strike the July 9, 2024 Rebuttal Report of Robert Bowes and Otherwise Exclude His Testimony.

trial lawyers and highly paid experts." (Ex. A at ¶¶ 42, 78.)

*Finally,* Bowes's opinion is based on his interpretation of a handful of Smartmatic-produced documents and a series of unsupported, conclusory statements. The trier of fact is just as capable as Bowes in reviewing documents introduced in this case and determining their meaning and significance.

***Bowes's Opinions Adopted from the Gorowsky Report are Inadmissible.*** Each of the opinions from the Gorowsky Report should also be excluded. As an initial matter, there appears to have been little intellectual rigor behind Bowes's "adoption" of these opinions. By Bowes's own admission, he spent just "a couple of hours" reviewing the Gorowsky Report before accepting the opinions in their entirety. Putting aside Bowes's perfunctory acceptance of the Gorowsky Report, the opinions it contains are inadmissible. As discussed further below, they are unhelpful to the jury, unreliable, and/or irrelevant.

## FACTUAL BACKGROUND

***Bowes's Purported Qualifications.*** Bowes describes himself as a "financial consultant and election fraud investigator." (Ex. A at pg. 23.) Early in his career, Bowes held positions at various financial firms, where he provided corporate financial and merger assistance to insurance and mutual fund clients. (Ex. A at pgs. 23–24, Ex. C at 66:19-71:20.) More recently, Bowes worked for Fannie Mae from 2001 to 2014, where he handled various mortgage financing-related issues. (*See* Ex. A at pg. 23.) Bowes was then unemployed for two years before he was hired by the Donald Trump campaign as a field director, where he "persuad[ed] voters, put[] on events, organiz[ed] staff [and] g[ot]volunteers." (Ex. A at pg. 23; Ex. C at 72:5–73:5.) When Trump was elected in 2016,

3

Bowes was appointed to work in the U.S. Department of Housing and Urban Development, and later, the U.S. Office of Personnel Management. Since President Trump lost the 2020 election, Bowes has (1) worked as a financial consultant, (2) assisted in purported election fraud investigations in Wisconsin and Georgia, and (3) helped raise money for "alternate electors" in the 2020 election indicted in Michigan, Georgia, and Arizona.[2] (Ex. A at pg. 23; Ex. C at 80:14–88:10.)

Bowes conceded at his deposition that:

- He is not a CPA, an auditor or economist (Ex. C at 89:4–9);

- He is not an expert in GAAP or IFRS accounting standards (*id.* at 93:15–18, 94:12–14);

- Other than two non-litigation consulting assignments, he has never been asked to calculate lost profits (*see id.* 98:3–99:1, 103:3–8, 109:2–16, 110:3–10);

- He is not an expert in assessing the reach of publications (*id.* 120:13–19);

- He is not an expert in branding (*id.* 122:8–12);

- He has never worked or consulted for a voting machine company (*id.* 117:15–20);

- He has never worked or consulted for a government agency responsible for running an election (*id.* 120:2–9);

- He is not an expert in voting machines or election products and services market (*id.* 129:10–13); and

- He is not an expert in defamation law and his only prior experience with defamation claims was a former manager at his father's liquor store accusing him of defamation (*id.* 122:13–17, 124:10–125:3).

Despite all this, Bowes claims that he is an expert in calculating defamation

---

[2] *See, e.g.*, *generally* Besty Woodruff Swan & Kyle Cheney, *Felons or dupes? Treatment of Trump's Fake Electors has varied wildly by state*, Politico (May 11, 2024), https://www.politico.com/news/2024/05/11/trump-fake-electors-charges-00157440.

damages because he was asked at Chase and Fannie Mae to evaluate whether business entities could repay loans. (*See id.* 110:22–112:10, 122:13–16.)

**Bowes's Adoption of the Flawed Gorowsky Report.** Originally, MyPillow retained Donald Gorowksy as its damages expert, who issued a report on September 22, 2023. (*See generally* Ex. B.) Gorowsky later resigned, and Bowes adopted his opinions. Bowes spent "a couple of hours" reviewing the Gorowsky Report, (Ex. C at 54:12–15), and then concluded that "it [was] reasonable and accurate and adopted Mr. Gorowsky's opinions *in toto.*" (Ex. A at ¶ 15.)

Through his adoption of the Gorowsky Report, Bowes offers three opinions.[3] ***First***, Bowes opines that "Smartmatic's Elections business was reporting declining revenues, losses and negative cash flows prior to January 2021." (Ex. B at 12–18.) In reaching this opinion, the Gorowsky Report simply summarizes Smartmatic's financial information from 2012 to 2021 as discussed by a different expert in a litigation Smartmatic brought against different defendants. (*See id.*) Specifically, Bowes states: "Much of the information contained in this section was obtained, but independently verified, from the Updated Expert Report of Daniel R. Fischel dated April 17, 2023 in the *Smartmatic USA Corp., et al. v. Fox Corporation, et al.* (Index No. 151136/2021) case in the Supreme Court of the State of New York, County of New York." (*Id.* 12 n. 10.) This "independent[] verify[cation]," however, was limited to Bowes relying on Gorowsky's representation that the information

---

[3] For ease of understanding, Smartmatic will attribute to Bowes certain statements originally written by Gorowsky.

was "independently verified." (Ex. C at 296:15–20.) Bowes never spoke to Fischel or Gorowsky. (*Id.* 63:2–4, 296:8–14.)

 ***Second***, Bowes lists eight different factors that he believes Smartmatic "failed to consider and address" that "contribute in whole or in part to any alleged damages claimed by Smartmatic." (*Id.* at 12, 18–23 (alterations in original).)[4] Other than listing the factors, neither Gorowsky nor Bowes did any analysis as to what amount, if any, of Smartmatic's claimed damages can be explained by any of these factors, individually or collectively. (*See id.*) Indeed, Bowes simply concludes after listing the different factors:

> To date Plaintiffs have not demonstrated that they have evaluated reasons for its claimed damages in order to account for (rule out / carve out) the impact of any causes / factors unrelated to the alleged defamation of Smartmatic by MyPillow and/or Mr. Lindell. Without demonstrating that such an analysis has been performed, Plaintiffs have not connected Smartmatic's claimed damages exclusively to the alleged defamation of Smartmatic by MyPillow and/or Mr. Lindell.

(*Id.* at 22–23.)

 ***Finally***, Bowes opines that MyPillow "has been negatively impacted financially" as a result of its CEO, Founder and co-Defendant, Michael "Lindell's statements regarding the 2020 Election." (*Id.* at 23–25 (alternations in original).) Bowes claims that multiple retailers such as Bed Bath and Beyond dropped MyPillow as a vendor due to Mr. Lindell's

---

[4] The factors include: (1) Smartmatic's other defamation lawsuits against different defendants in other jurisdictions; (2) There were defamatory speakers other than MyPillow (e.g., Donald Trump); (3) Cybersecurity experts who have raised concerns about the vulnerabilities of voting machines; (4) Competition from other companies in the voting machine market; (5) Smartmatic's purported "reputational concerns;" (6) Reports of a purported data security breach involving Smartmatic in the Philippines; (7) The Department of Justice investigation into Smartmatic; and (8) Smartmatic's lack of an Elections Assistance Commission ("EAC") certification for its voting machines. (Ex. B at 20–22.)

statements and this harmed MyPillow because retail sales are more profitable than MyPillow's direct-to-consumer sales "due to the significant advertising costs and revenue sharing agreements/affiliate marketing costs needed to generate direct-to-consumer sales." (*Id.* 25.) Bowes provides no basis for his claim that retailers dropped MyPillow due to Mr. Lindell's statements other than it was his "understand[ing]." (*Id.* 24.) Bowes also does no analysis as to what MyPillow's profitability was for its retail sales in comparison to its direct-to-consumer sales. Nor does Bowes explain how MyPillow direct-to-consumer sales drove increases in MyPillow's advertising costs and harmed MyPillow's profitability when MyPillow's direct-to-consumer sales, as a percentage of revenue, rose from 68.9% in 2019 to 96.9% in 2022 while MyPillow's advertising costs, as a percentage of revenue, remained relatively flat during that time frame (ranging between 31.4% to 34.4%). (*See id.* at Ex. 5.)

***Bowes Issues His Own "Rebuttal" Report***. Bowes provided his own report on July 9, 2024. It is difficult to make sense of what opinions Bowes actually intends to offer. For example, Bowes's "Summary of Rebuttal Opinions" (Ex. A at pgs. 6–7) is inconsistent with his "Conclusions" (*Id.* at pgs. 20–22). What is clear, however, is that the Rebuttal Report fails to offer any admissible opinion.

The Rebuttal Report first purports to rebut Smartmatic's experts Dr. Keller, Dr. Berger and Ms. Patrick and what it describes as their opinions on "financial forecasting" (Ex. A at ¶ 83 (claiming that Dr. Keller, Dr. Berger, and Ms. Patrick "have drifted beyond their realm of expertise to opine on financial forecasting"); *see also id.* ¶¶ 18, 84–88; *id.* pgs. 20–21). However, none of those experts offer ***any*** opinions on Smartmatic's specific future revenues or profits. Rather, those experts opine on branding and marketing (Dr.

Keller), the reach and impact of Lindell's statements (Dr. Berger), and the election market/industry (Ms. Patrick). (*See, e.g.*, Ex. D at ¶ 13; Ex. E at ¶ 12; Ex. F at 2–3.)

Bowes's Rebuttal Report next purports to be a "detailed financial analysis" of Smartmatic. (Ex. A at ¶ 17.) This "detailed financial analysis," however, is not a damages analysis, but rather a causation opinion:

> Q.    [I]t's your opinion that Mike Lindell and MyPillow did not cause any financial harm to Smartmatic. That is your opinion, correct?
>
> A.    That's my opinion.

(Ex. C at 146:5–9; *see also* Ex. A at ¶ 49 ("To a reasonable degree of professional certainty, Smartmatic was not affected by any purported statements by Mike Lindell or anyone else.")) Bowes reached this conclusion after spending a mere 15 to 20 hours reviewing between 80 to 100 documents (out of the millions of documents produced in this case) and 15 to 20 hours conducting a "financial analysis." (Ex. C at 35:15–19, 36:17–37:20.) Of course, it is unclear which documents Bowes reviewed to reach his opinion because he failed to prepare a documents considered list. (*Id.* 36:5–9.)

To support his "no causation" opinion, Bowes makes numerous bald assertions about Smartmatic, without citing to any documents, testimony, or prior experience. Such unsupported statements include the following:

- Smartmatic started a "going out of business plan" in 2019, (Ex. A at ¶ 21);

- "Starting in 2018 and getting worse in 2019, Smartmatic USA has been outperformed by its competitors ES&S, Dominion, and Hart InterCivic, which apparently had superior products or were better at capturing government contracts." (*id.* ¶ 23; *see also id.* ¶ 75 (similar));

- "Smartmatic is in run-off mode and its parent company starved SUSA [Smartmatic USA] of capital by choosing to distribute $100 million (more than

8

half the parent company SGO International Corporation's 2017 $180 million of equity capital) to its investors during 2018-2020," (*id.* ¶ 23);

- "Smartmatic's own Accountant/Auditor BDO does not believe that there has been any adverse impact to Smartmatic USA's business brand value, reputation or goodwill in 2020, 2021 and in 2022," (*id.* ¶ 39);

- "In my professional opinion based on my experience, the financial condition and product failures of SUSA, and the failures of its leadership, there is no reasonably conceivable likelihood that it will recover any revenue growth in any election or voting equipment market in the United States," (*id.* ¶ 42);

- "Since 2019, [Smartmatic USA] had been experiencing deteriorating business conditions [and] financial mismanagement," (*id.* ¶ 68);

- "Ironically, had media and individuals not mentioned Smartmatic, the company would not be in business today and would have folded shortly after the 2020 election cycle," (*id.* ¶ 82); and

- "In my professional opinion rendered to a reasonable degree of professional certainty for someone in my field, Smartmatic was not a going concern in 2020 and it was on the verge of going bankrupt" (*id.* pg. 21.)

To additionally support his "no causation" conclusion, Bowes offers his interpretation on Smartmatic documents, stating:

- "Smartmatic executive internal communications show chaos and panic between 2018 and 2020 concerning the company's future existence," (*id.* ¶ 28; *see also id.* ¶¶ 29–34 (summarizing Smartmatic internal communications); and

- "The following is a sample of the numerous Smartmatic internal communications describing its business floundering," (*Id.* ¶¶ 50–59, 61–65, 67–68 (summarizing Smartmatic internal communications)).

### *Bowes's Thinly-Veiled Role as an Advocate for MyPillow's Litigation Positions*.

In support of his "no causation" opinion, Bowes also makes numerous statements that read more like a closing argument than a damages analysis. He states that:

- "If anything, statements by Lindell gave Smartmatic a new life. The ingredients are vacant and the company's strategy seems to have been to close up normal operations. At present, it appears that Smartmatic is banking on lawsuits as a source of revenue." (*id.* ¶ 42);

- "[Smartmatic] also exploited the Covid pandemic to lobby for a contract for personal protective equipment. That effort resulted in a disastrous write-off of $16 million in 2021 for losses or mispricing where contract bids were rejected," (*id.* ¶ 72);

- "[Smartmatic] wagered at least $16 million gambling on this lawsuit," (*id.* ¶ 73 (alterations in original));

- "Having a phalanx of expensive trial lawyers and highly paid 'experts' for three defamation cases has continued to bankrupt Smartmatic in 2023 and 2024," (*id.* ¶ 78);

- "My professional opinion is that far from suffering any losses, Smartmatic has been churning through a new business line of lawsuits and no longer focuses on its standard business," (*id.* ¶ 82);

- "[Smartmatic's experts] failed to consider SUSA's financial resources, product quality, competitive forces, regulatory success, and political and legislative roadblocks. All of these factors have clobbered Smartmatic, and it would be accounting and financial malpractice to ignore those direct impacts on Smartmatic's potential growth forecast. If I rendered an expert opinion such as the experts in this case have and which relied on forecasting future growth and profitability in the manner that they did, I would have been fired," (*id.* ¶ 84);

- "Smartmatic's allegations that it could have been great if only this or that had happened and if only someone had not said mean things about voting machines is absolutely unfounded, as there is no link between Mike Lindell's statements and Smartmatic's systemic business failures," (*id.* pg. 21); and

- "My opinion rendered to a professional degree of certainty is that Smartmatic's damage claim is baseless," (*id.*)

Bowes's advocacy masquerading as "analysis" permeates his Rebuttal Report, and he doubled down on this role during his deposition, calling Smartmatic's lawsuit "a shakedown," characterizing Smartmatic's damages as "a total fantasy," and "a charade of pretend," claiming that Smartmatic "want[s] to go in and pretend to lie to a jury," and asserting that Smartmatic "is not operating as an election company anymore," but rather "operating as a lawsuit company." (Ex. C at 157:20–22, 235:12–21, 239:18–19, 265:17–19, 269:1–2, 286:12–287:1.)

Bowes conceded at his deposition that he did no analysis as to what Smartmatic's revenues would have been but for MyPillow's conduct, claiming that such an analysis "doesn't appear reasonable to me." (Ex. C at 156:2–15; *see also id.* at 232:1–8 ("[T]here is no specific listing in my report of the exact dollar amount of what would have happened with or without statements by Lindell."))

## LEGAL STANDARDS

***Fed. R. Civ. P. 26.*** Under Rule 26(a)(2)(B), a retained expert such as Bowes must provide a written report that includes, relevant here, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Rule 26(a)(2)(B)(ii) is broadly construed to include "***any materials*** that the expert generated or reviewed in conjunction with his conclusions, even if such information is ultimately rejected." *ADS Holdings v. Fed. Ins. Co.*, 2007 WL 9735529, at *2 (D. Minn. Aug. 1, 2007) (emphasis added). Pursuant to Rule 37(c),"if a party does not satisfy the expert disclosure requirements in Rule 26(a)(2), the undisclosed information or expert is excluded unless the failure was substantially justified or harmless." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 703 (8th Cir. 2018). The Eighth Circuit has made clear that "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)." *Id.* at 705.

***Fed. R. Evid. 702.*** Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Bowes's purported expert testimony must satisfy three requirements to be admitted under Rule 702.

11

*First*, it must be based on specialized knowledge that is helpful to the finder of fact, i.e., that the proposed expert testimony is relevant. *Id*. **Second**, Bowes must be qualified to assist the finder of fact. *Id*. **Third**, Bowes's proposed testimony "must be reliable or trustworthy in an evidentiary sense," meaning that it is "based upon sufficient facts," it is "the product of reliable principles," and that Bowes "applied the principles … reliably to the facts of the case." *Aviva Sports, Inc. v. Fingerhut Direct Mkt'g, Inc.*, 829 F. Supp. 2d 802, 820 (D. Minn. 2011) (citing *Lauzon*, 270 F.3d at 686). The district court acts as a "gatekeeper to insure that the proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (citation and internal quotations omitted). MyPillow must prove the admissibility of Bowes's proposed expert testimony "by a preponderance of the evidence." *Lauzon*, 270 F.3d at 686.

## ARGUMENT

Bowes's Rebuttal Report should be stricken and his testimony stemming from that Report should be excluded because he fails to include the required list of documents considered. Further, Bowes's proposed expert testimony as set forth in the Rebuttal Report and the earlier Gorowsky Report should otherwise be excluded because it will not be helpful to the trier of fact and is unreliable and/or irrelevant.

## I.    Bowes's July 2024 Rebuttal Report Should be Stricken Because He Fails to Provide a Documents Considered List.

Bowes's Rebuttal Report should be stricken because he failed to comply with Rule 26(a)(2)(B), which requires a documents considered list. Rule 26(a)(2)(B) is crystal clear that a retained expert such as Bowes must disclose all "the facts and data considered by [him] in forming [his opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii). This rule is broadly

construed to require Bowes to list "any materials that the expert generated or reviewed in conjunction with his conclusions." *ADS Holdings*, 2007 WL 9735529, at *2. This is because "useful cross examination and possible impeachment can only be accomplished by gaining access to all of the information that shaped or potentially influenced the expert witness's opinion." *Karn v. Ingersoll-Rand Co.*, 168 F.R.D. 633, 639 (N.D. Ind. 1996).

Bowes's wholesale omission of "the facts and data considered by [him] in forming [his opinions]," as required by Rule 26(a)(2)(B), warrants his Rebuttal Report being stricken and his testimony excluded pursuant to Rule 37(c). As one court remarked: "[T]he wholesale omission of one or more categories of information demanded by the [R]ule [26(a)(2)] … almost inevitable leads to preclusion." *Adams*, 671 F. Supp. 2d at 269–70 (collecting cases); *see also Pena-Crespo v. P.R.*, 408 F.3d 10, 13–14 (1st Cir. 2005) (concluding district court did not abuse discretion in excluding expert who failed to provide information required by Rule 26(a)(2)). Indeed, one court went so far to strike an expert report for failing to include a description of his qualifications via a *curriculum vitae*, as required by Rule 26(a)(2)(B)(iv). *Rivera Pomales v. Bridgestone Firestone, Inc.*, 217 F.R.D. 290, 293 (D.P.R. 2003). Bowes's failure to include a documents considered list was not substantially justified or harmless. It is clearly required under Rule 26(a)(2) and Smartmatic has been deprived of a critical tool to effectively cross examine Bowes. *See Karn*, 168 F.R.D. at 639. Accordingly, striking Bowes's Rebuttal Report and excluding his testimony on any opinions from that Report is an appropriate sanction under Rule 37(c)(1). *See cases cited supra.*

## II.    Bowes's Rebuttal Opinions Should be Otherwise Excluded Because They are Irrelevant, Unreliable and Will Not Be Helpful to the Trier of Fact.

Bowes's opinions stemming from his Rebuttal Report will not assist the trier of fact for five reasons. ***First***, it purports to respond to opinions that Smartmatic's experts do not have. ***Second***, Bowes is not qualified to opine on causation. ***Third***, Bowes's opinion impermissibly usurps the province of the trier of fact. ***Fourth***, Bowes's opinion is nothing more than partisan advocacy rather than independent expert analysis that will assist the trier of fact. ***Fifth***, Bowes's opinion is based on his interpretation of Smartmatic documents and unsupported, conclusory statements.

### A.    Bowes's Opinions Responding to Non-Existent Smartmatic Expert Opinions Are Not Relevant.

Bowes's Rebuttal Report exists in an alternate reality, as exemplified by his statement that Smartmatic's experts Dr. Keller, Dr. Berger and Ms. Patrick "have drifted beyond their realm of expertise to opine on financial forecasting." (Ex. A at ¶ 83). This statement, and his opinions asserted in response, have no relevance to any issue in this case because none of those experts offer any opinion on "financial forecasting." Instead, those experts opined as follows:

- Dr. Keller opines on how "the Lindell Campaign Against Smartmatic affected the strength of the[] [Smartmatic, MyPillow and Mr. Lindell's] brands," and "whether the Lindell Campaign Against Smartmatic provided sale or marketing benefits to MyPillow." (Ex. D at ¶ 13.)

- Dr. Berger opines on the reach of Mr. Lindell's statements concerning Smartmatic and the impact on Mr. Lindell's statements on public sentiment towards voting machine manufacturers such as Smartmatic. (Ex. E at ¶ 12.)

- Ms. Patrick opines on (1) the implausibility of the 2020 Election being rigged, fixed or stolen, (2) how Smartmatic's Los Angeles County solution was unique in the industry, and (3) that Mr. Lindell's defamatory statements

> "would have the natural effect of harming Smartmatic's reputation and ability to compete in the voting-technology marketplace." (Ex. F at 2–3.)

These topics have nothing to do with any type of "financial forecasting." Nowhere in any of those reports do any of these experts quantify how much Lindell's defamatory statements harmed Smartmatic. It is axiomatic that rebuttal opinions to non-existent expert opinions are not relevant or helpful to the trier of fact. *See, e.g.*, *Lauzon*, 270 F.3d at 686. Accordingly, Bowes's purported "rebuttal" opinion to Drs. Keller and Berger and Ms. Patrick should be excluded.

### B.    Bowes Is Not Qualified to Opine on Damages Causation.

Bowes is not qualified to opine on whether Lindell's defamatory statements caused damages to Smartmatic. In order for Bowes to be qualified, he must have "sufficient specialized knowledge to assist the jurors in deciding the specific issues in the case." *Wheeling Pitt. Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). Put another way, there must be a fit between his expertise and an issue to be decided by the jury. *See Wheeling*, 254 F.3d at 715 (holding that hydrologist specializing in flood risk management was not qualified to opine on safe warehousing practices in breach of bailment contract action where 3,000 tons of steel in warehouse damaged by flood); *Smith v. Rasmussen*, 249 F.3d 755, 758–59 (8th Cir. 2001) (holding that board-certified general psychiatrist not qualified to opine on treatment of gender identity disorder).

Bowes's prior experience is in finance with a focus on the insurance, mutual funds, mortgage and housing industries. (*See supra* at 3–5.) This is far afield from opining on whether defamatory statements caused harm to Smartmatic. Other than being accused of defamation himself, Bowes has no prior experience in defamation cases. (Ex. C at 122:13–

17, 124:10–125:3.) He admits that he is not an expert in determining the reach of publications. (*Id.* 120:13–19.) He admits that he has no experience with voting machine companies or any government agency responsible for the procurement of election products and services. (*See id.* 117:15–20, 120:2–9.) He admits that he is not an expert in the voting machine or election products and services market. (*Id.* 129:10–13.) Put simply, Bowes lacks the experience and expertise in the areas that would be required to reliably opine on whether Lindell's defamatory statements harmed Smartmatic.

An instructive case illustrating this point is *Robroy Industries-Tex., LLC v. Thomas & Betts Corp.*, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017). In *Robroy*, defendant's damages expert, an economist, opined that plaintiff manufacturer of PVC-coated steel conduit had not established a causal link between defendant competitor manufacturer's false statements and plaintiff's alleged lost business. *Id.* at *8. The court held that the damages expert was not qualified to opine on causation. *Id.* at *8, *10. The court reasoned: "The field of her expertise—economics—puts her in no better position to testify as to the causes of contract awards in the PVC-coated conduit industry generally, or in the circumstances of this case in particular, than any person who has looked through the records of this case." *Id.* at *10. The court added that she may be qualified to address "the *calculation* of damages," but she "certainly" was not qualified to opine "on whether particular behavior by one player in that [PVC-coated conduit] market has caused injury to another." *Id.* at 8 (emphasis added).

The same can be said here. At best, based on his finance background, Bowes could opine on the calculation of damages. Bowes, however, offers no such opinions. Instead,

Bowes offers his views on why Lindell's statements did not cause financial harm to Smartmatic. Like the damages expert in *Robroy*, Bowes's finance experience puts him "in no better position" to opine on whether Lindell's defamatory statements harmed Smartmatic than "any person who has looked through the records of the case." *Id.* at *10. Bowes is not qualified to opine on whether Lindell's statements caused damage to Smartmatic.

### C.    Bowes's Opinion Usurps the Province of the Trier of Fact.

Bowes's opinion that Lindell's statements did not cause damages to Smartmatic impermissibly usurps the province of the trier of fact. Courts consistently bar damages experts from opining on causation because it usurps the province of the trier of fact by, in essence, telling it what result to reach. *See, e.g.*, *Graystone Funding Co. v. Network Funding, L.P.*, 598 F. Supp. 3d 1228, 1248 (D. Utah 2022); *Sterilite Corp. v. Olivet Int'l, Inc.*, 2024 WL 4349271, at *10 (D. Mass. Sept. 30, 2024).

*Sterilite* is instructive here. In *Sterilite*, defendant's damages expert sought to opine that plaintiff manufacturer of plastic houseware products did "not suffer[] any actual damages as a result of [defendant's] [trade dress infringement] because … [plaintiff] "caused its own damages when it was unable to meet Walmart's production demands during the COVID-19 pandemic." 2024 WL 4349271, at *10. The court barred that testimony because it was "more appropriately the province of the finder of fact than an expert, particularly where [the expert's] opinion is not rooted in her area of expertise." *Id.* Bowes's opinion here presents a virtually identical scenario to the one barred in *Sterilite*. Bowes opines that Smartmatic did not suffer any damages as a result of Lindell's

statements, reasoning, among other things, that Smartmatic damaged itself through purported "product failures" and "failures of its leadership." (*E.g.*, Ex. A at ¶ 42.) And Bowes reaches this opinion even though it is an area not rooted in his expertise. (*See supra* at 3–5.)

### D. Bowes's Opinion Is So Infected With Partisan Advocacy That It is Not Helpful to the Trier of Fact.

Even if Bowes were qualified to opine on causation (he is not) and did not usurp the province of the trier of fact (he does), his opinion is littered with such extensive partisan advocacy that it renders his testimony unhelpful. Bowes's Rebuttal Report and his deposition testimony are replete with statements that are more akin to attorney argument from defense counsel than expert analysis. He describes Smartmatic's lawsuit and its claimed damages as a "shakedown" and "a charade of the pretend;" that Smartmatic "is not operating as an election company anymore," but rather "operating as a lawsuit company;" that Smartmatic has "wagered at least $16 million gambling on this lawsuit" with "a phalanx of expensive trial lawyers and highly paid 'experts';" that Lindell's statements gave Smartmatic "new life;" that if he offered expert opinions like the ones offered by Smartmatic he "would have been fired;" and that "Smartmatic's allegations that it could have been great if only this or that had happened and if only someone had not said mean things about voting machines is absolutely unfounded." (Ex. A at ¶¶ 42, 73, 78, 84; Ex. C at 157:20–22, 265:17–19, 269:1–2; *see also supra* at 9–10 (citing similar claims).) It is clear from this rhetoric that MyPillow intends to have Bowes give MyPillow's closing argument under the cloak of expert testimony.

Courts have made clear that experts who serve merely as advocates are not helpful to the trier of fact and thus, their testimony is inadmissible. "An expert's role is to assist the trier of fact by providing information and explanations; the expert's role is not be an advocate. Experts perform a very different function in litigation than that of the lawyer; they do not serve as advocates, but as sources of information." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003) (citations and internal quotations omitted). Accordingly, when an expert "act[s] in a completely partisan manner" and his opinion is "so tainted by his bias," courts exclude such experts because "it would serve utterly no purpose in aiding the jury in i[t]s decision." *See, e.g.*, *Just Enters., Inc. v. (888) Justice, Inc.*, 2008 WL 2625520, at *5–6 (W.D. Mo. Apr. 21, 2008) (excluding expert); *see also Lippe*, 288 B.R. at 688 (same, where expert would opine "that defendants were intending to defraud asbestos claimants by engaging in fraudulent transactions" because expert "would be giving, in essence, a summation from the witness stand"); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346–47 (S.D. Fla. 2010) (same, where expert "regurgitates" facts concerning a drug's regulatory history and defendant's internal documents and "reaches conclusory opinions that are based on these facts" because expert's "major role in this litigation appears to be that of Plaintiff's advocate rather than expert").

It is clear from the statements Bowes made in his Rebuttal Report and his deposition, (*see supra*), that MyPillow intends to have Bowes serve as an advocate; rather than a source of information that would be helpful to the trier of fact concerning an issue in the case. Accordingly, Bowes's testimony should be excluded.

### E.    Bowes's Opinion Is Not Helpful Because It is Simply Based on His Interpretation of Documents and Conclusory, *Ipse Dixit* Statements.

Bowes's opinion is also not helpful to the trier of fact because it is based on his interpretation of Smartmatic documents and a series of conclusory statements. Bowes's opinion that Lindell's statements did not cause damages to Smartmatic rests in large part on his reading and interpretation of a scattered assortment of Smartmatic documents. (*See* Ex. A at ¶¶ 28–34, 50–68; Ex. C at 146:5–9, 147:15–19.) Bowes uses these Smartmatic documents to conclude that there was "chaos and panic between 2018 and 2020 concerning the company's future existence" and shows "Smartmatic's difficulty in launching worthwhile competitive product," and that "its business [was] floundering." (Ex. A at ¶¶ 28, 50; *id.* pg. 13.)[5]

Courts consistently bar expert testimony where an expert merely reads and interprets documents and record evidence. *See, e.g.*, *Sullivan v. Alcatel-Lucent USA Inc.*, 2014 WL 3558690, at *6 (N.D. Ill. July 17, 2014); *Robroy*, 2017 WL 1319553, at *9; *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d at 1346–47. Courts do so because "[a]verage jurors are capable of reading such documents and determining for themselves their meaning and significance." *Sullivan*, 2014 WL 3558690, at *6; *see also United States v. Benson*, 941

---

[5] As discussed earlier in Section I, Bowes failed to include a documents considered list with his Rebuttal Report. While Bowes cites and offers his interpretation of a handful of Smartmatic-produced documents described in this Section II.E, that is no substitute for providing a full account of the documents considered in rendering his opinions. Bowes's report abounds with other examples of statements made that demand sourcing, such that Smartmatic can effectively cross-examine the validity of his assertions. (*See, e.g., supra* at 8–9 (listing numerous unsupported statements)). Bowes's selective citation to certain documents does not excuse his failure to include a documents considered list, and his Rebuttal Report should be stricken for the reasons discussed in Section I.

F.2d 598, 604 (7th Cir. 1991), *mandate recalled and amended on other grounds*, 957 F.2d 301 (Mem.) (7th Cir. 1992) (concluding district court erred in allowing expert testimony that "consist[ed] nothing more than drawing inferences from the evidence" because expert "was no more qualified than the jury to draw").

To the extent that Bowes's opinion is not based on his interpretation of documents, it is based on a series on conclusory statements not supported by any documents, testimony or specific experience. For example, Bowes states: Smartmatic started a "going out of business plan" in 2019; Smartmatic "has been outperformed by its competitors … [who] apparently had superior products or were better at capturing government contracts;" Smartmatic is in "run-off mode;" Smartmatic's auditor BDO "does not believe that there has not been any adverse impact to Smartmatic USA's business brand value, reputation or goodwill;" and "based on [Bowes's] experience, the financial condition and product failures of [Smartmatic], and the failures of its leadership, there is no reasonably conceivable likelihood that [Smartmatic] will recover any revenue growth in any election or voting equipment market in the United States." (Ex. A at ¶¶ 21, 39, 42.) Courts consistently bar expert testimony based on such *ipse dixit* statements. *See, e.g.*, *Hoekman v. Educ. Minn.*, 335 F.R.D. 219, 241 (D. Minn. 2020) (excluding expert's opinion in class action that "named plaintiffs' claims are typical of the choices facing every public employee represented by their respective unions" because it was a "mere conclusory statement[] without any methodological basis"); *Johnson v. J.P. Parking, Inc.*, 717 F. Supp. 3d 798, 816–17 (S.D. Iowa 2024) (excluding damages expert where he simply lists the

factors in his damages calculation and then "leaps to an unexplained conclusion that [is] based on his 'experience and expertise in this industry.'")

### III. Bowes's Opinions Based on the Adopted Gorowsky Report Should be Excluded Because They Will Not Be Helpful to the Trier of Fact

Similar to his Rebuttal Report, Bowes's opinions adopted from the Gorowsky Report should be excluded because they are not helpful to the trier of fact. Bowes's first opinion—in which he states that Smartmatic's elections business was reporting declining revenues, operating and net losses, and negative operating cash flows prior to January 2021—is not helpful to the trier of fact because it contains no expert analysis from Bowes. It simply summarizes Smartmatic's financial information from 2012 to 2021 as discussed by a different expert, Daniel Fischel, in litigation Smartmatic brought against another defendant. (*See* Ex. B at 12 n.10.) Copying another expert's work in another litigation is not admissible expert analysis. *See, e.g.*, *In re Massa Falida Do Banco Cruzeiro Do Sul S.A.*, 2020 WL 2462532, at *6 (S.D. Fla. May 12, 2020) ("[T]o the extent that [the expert] … merely adopts another expert's opinion without independent analysis and findings, that opinion is not admissible."); *Hill v. Fikes Truck Line, LLC*, 2012 WL 5258753, at *4 (E.D. Mo. Oct. 24, 2012) (excluding expert opinion that "is entirely that of another expert") (collecting cases). Nor is summarizing documents (e.g., Smartmatic's financials) admissible expert analysis. *See, e.g.*, *Sullivan*, 2014 WL 3558690, at *6.

In Bowes's second opinion, he states that Smartmatic has failed to consider and address factors other than Lindell's statements that contributed in whole or in part to any alleged damages. This opinion is not helpful to the jury for three reasons. ***First***, it is not

responding to any Smartmatic damages expert or a specific and current Smartmatic damages claim. Instead, it simply states: "[T]here are numerous known factors other than Defendants' alleged defamation that may contribute in whole or in part to any alleged damages claimed by Smartmatic that do not appear to have been considered or addressed by Smartmatic" based on his review of unspecified "Plaintiffs' pleadings." (Ex. B at 19–20.)

**Second**, Bowes makes no effort to try to quantify the impact of these "factors" on Smartmatic's damages. Without such quantification, there is no conceivable relevance to such other contributing factors. Under Minnesota law, if MyPillow seeks to attribute Smartmatic's damages to the wrongful actions of others—such as others who made false statements about Smartmatic—then MyPillow bears the burden of proving that damages can be apportioned to those other tortfeasors. *Mathews v. Mills*, 178 N.W.2d 841, 845 (Minn. 1970), adopting Restatement (Second) of Torts §433B(2) ("Where the tortious conduct of two or more actors has been combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor."); *see also Canada By & Through Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997) ("The burden of proving that the harm is capable of being separated lies with each defendant who contends it can be divided.") Neither Bowes nor any other expert for MyPillow has made any effort to prove that the harm to Smartmatic can be apportioned to any other actor. Therefore, these vague references to other factors that "may have" caused harm to Smartmatic are irrelevant and inadmissible.

***Third***, this alleged failure to consider other factors is nothing more than Bowes's attempt to fit a causation opinion through the backdoor—that is, he is actually opining that Lindell's statements did not cause damages to Smartmatic. *See, e.g.*, *Robroy*, 2017 WL 1319553, at *8, 10. Bowes makes this clear when he states that "Smartmatic ha[s] not connected Smartmatic's claimed damages exclusively to the alleged defamation" because Smartmatic has purportedly "not demonstrated that they evaluated reasons for its claimed damages in order to account for (rule out/carve out) the impact of any causes/factors unrelated to the alleged defamation." (Ex. B at 22–23.)

Bowes's final opinion—that MyPillow has been negatively impacted financially due to Lindell's statements regarding the 2020 election—lacks a reliable basis and is not helpful to the trier of fact. Bowes's adoption of Gorowsky's conclusory "understand[ing]" that retailers dropped MyPillow "due to" Mr. Lindell's statements is an inadmissible *ipse dixit* opinion. (Ex. B at 24). Bowes presents no documents, testimony, or other evidence supporting this assertion. This is precisely the type of "opinion evidence that 'is connected to existing data only by the *ipse dixit* of the expert'" that courts "should not admit." *See, e.g.*, *Hoekman*, 335 F.R.D. at 241.

In sum, Bowes's testimony stemming from the Gorowsky Report should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should strike Robert Bowes's July 9, 2024 Report and otherwise bar any testimony stemming from that report or the adopted September 22, 2023 Donald Gorowsky Report.

Dated: November 13, 2024                Respectfully submitted,

*/s/ Timothy M. Frey*

Christopher K. Larus
    Minnesota Bar No. 0226828
    CLarus@robinskaplan.com
William E. Manske
    Minnesota Bar No. 0392348
    WManske@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
    EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
    NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
    TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
    JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
    JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*