IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br>      Plaintiffs,<br>  v.<br>MICHAEL J. LINDELL and MYPILLOW, INC.,<br>      Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO EXCLUDE THE TESTIMONY OF PETER KENT</u>**

# Table of Contents

Page

BACKGROUND ..................................................................................................................1

LEGAL STANDARD ........................................................................................................2

ARGUMENT ......................................................................................................................2

I. Kent's Opinion About Mentions of "Smartmatic" Online Should be Excluded as Irrelevant. ..................................................................................................................2

II. Kent's Opinion That Defendants' Statements About Smartmatic Were Part of a Broader "Public Debate" About Voting Machines Should be Excluded. ...................6

    A. Kent's opinion about a broader public debate is irrelevant. ................................7

    B. Kent is not qualified to opine on a broader public debate. ..................................8

    C. Kent applied no methodology in determining that Defendants' comments were part of a broader public debate. ...........................................................................9

CONCLUSION ..................................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*,
  829 F.Supp.2d 802 (D. Minn. 2011) ................................................................... 2

*Daubert v. Merrell Dow Pharma., Inc.*,
  509 U.S. 579 (1993) ........................................................................................ 6, 7

*Erickson v. Sawyer*,
  650 F.Supp.3d 758 (D. Minn. 2023) ................................................................... 4

*Hammes v. Yamaha Motor Corp. USA, Inc.*,
  2006 WL 1195907 (D. Minn. May 4, 2006) ....................................................... 8

*Jaurequi v. Carter Mfg. Co., Inc.*,
  173 F.3d 1076 (8th Cir. 1999) ............................................................................ 6

*Khoday v. Symantec Corp.*,
  93 F.Supp.3d 1067 (D. Minn. 2015) ................................................................... 8

*Lauzon v. Senco Prods., Inc.*,
  270 F.3d 681 (8th Cir. 2001) .............................................................................. 2

*Maethner v. Someplace Safe, Inc.*,
  929 N.W.2d 868 (Minn. 2019) ........................................................................... 3

*Nunes v. Lizza*,
  12 F.4th 890 (8th Cir. 2021) ............................................................................... 3

*Tholen v. Assist America, Inc.*,
  528 F.Supp.3d 1017 (D. Minn. 2021) ................................................................. 3

*Stuempges v. Parke, Davis & Co.*,
  297 N.W.2d 252 (Minn. 1980) ........................................................................... 3

*Transclean Corp. v. Bridgewood Servs., Inc.*,
  101 F. Supp. 2d 788 (D. Minn. 2000) ............................................................... 10

*United States v. Ellsworth*,
  738 F.2d 333 (8th Cir. 1984) ............................................................................ 11

*US v. Kime*,
    99 F.3d 870 (8th Cir. 1996) ................................................................................. 10

*Wagner v. Hesston Corp.*,
    450 F.3d 756 (8th Cir. 2006) ................................................................................. 2

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
    254 F.3d 706 (8th Cir. 2001) ................................................................................. 9

**Other Authorities**

Federal Rule of Evidence 702 ................................................................................. 2, 10

BACKGROUND

Smartmatic filed its lawsuit against Mike Lindell and MyPillow, Inc. ("Defendants") on January 18, 2022 (Compl., Dkt. 1). Smartmatic's lawsuit focuses on a series of defamatory statements made by Mr. Lindell and others starting on February 5, 2021 and continuing to present. Among other things, during that time period, Mr. Lindell and MyPillow published statements that Smartmatic participated in rigging the 2020 U.S. Election and claimed that Smartmatic machines were used to switch votes during the 2020 U.S. Election. This is the disinformation campaign relevant to this lawsuit: the defamatory statements published by Mr. Lindell and MyPillow about Smartmatic between February 5, 2021 and the present.

Defendants retained Peter Kent as a purported "Internet" expert. Kent performed no analysis relating to the defamatory statements at issue in the lawsuit. That is, he did no analysis of the defamatory statements published by Mr. Lindell and MyPillow. Nor did Kent perform any analysis of the defamatory statements published by others starting on February 5, 2021 and continuing to the present. Instead, Kent offers a hodgepodge of observations that can be summed up as two overarching "opinions": (1) he counted the number of times that the word "Smartmatic" was used on the Internet prior to February 5, 2021, and (2) he speculated that the disinformation campaign was a "continuation" of a public debate that existed prior to February 5, 2021. Neither of these so-called opinions are admissible.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Kent's purported expert testimony must satisfy three requirements to be admitted under Rule 702. *First*, it must be based on specialized knowledge that is helpful to the finder of fact (*i.e.*, the proposed expert testimony must be relevant). *Id. Second*, Kent must be qualified to assist the finder of fact. *Id. Third*, Kent's proposed testimony "must be reliable or trustworthy in an evidentiary sense," meaning that it is "based on sufficient facts," it is "the product of reliable principles," and that Kent "applied the principles and methods reliably to the facts of the case." *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.,* 829 F.Supp.2d 802, 820 (D. Minn. 2011) (citing *Lauzon*, 270 F.3d at 686). The district court acts as a "gatekeeper to ensure that the proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Defendants must prove by a preponderance of the evidence that Kent's proposed expert testimony is admissible. *Lauzon*, 270 F.3d at 686.

## ARGUMENT

**I.    Kent's Opinion About Mentions of "Smartmatic" Online Should be Excluded as Irrelevant.**

Kent's opinion regarding online mentions of Smartmatic before February 5, 2021 should be excluded because it is irrelevant. Specifically, Kent opines that:

- A surge of commentary regarding Smartmatic began within days of the 2020 Presidential Election. (Decl. of M. Levine-Patton, Ex. A, Expert Report of Peter Kent ("Ex. A") at ¶115).

- Google Trends shows that there was a huge growth in interest among the public, with the number of people searching for [S]martmatic growing 100-fold soon after the election. (*Id.*)

- Two research tools [he] employed, BuzzSumo and Infegy, provide data showing that this growth in interest was mirrored by a growth in commentary; the number of social media posts and Web-page articles that included the word [S]martmatic grew dramatically the week after the election. (*Id.*)

- The BuzzSumo research tool found 1,589 articles from a wide range of Web sites—including major news sites—mentioning Smartmatic posted between the election and February 4, 2020. (*Id.*)

- BuzzSumo found 2,639,807 "engagements" with this content from social media posts. (*Id.*)

- The Infegy Atlas research tool found more than 160,000 such posts in this period and estimated that there were likely 1.2 *million* such posts on the Internet. (*Id.*) (emphasis in original).

- The [Infegy Atlas] tool also estimated that these posts were likely seen almost 80 million times. (*Id.*)

This opinion should be excluded as irrelevant.

The issues for the trier of fact to decide are whether Defendants published false and defamatory statements about Smartmatic and did so with actual malice. *See e.g., Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019); *Nunes v. Lizza,* 12 F.4th 890, 899 (8th Cir. 2021). If so, general damages (*i.e.,* reputational harm) are presumed because the statements published by Defendants are defamation *per se*. *Tholen v. Assist America, Inc.*, 528 F.Supp.3d 1017, 1024 (D. Minn. 2021). Smartmatic can also recover special damages (*i.e.,* pecuniary loss) by showing that the defamatory statements caused additional losses. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 258 (Minn. 1980). Damages in this case require the trier of fact to evaluate the disinformation campaign: *i.e.*, the defamatory statements published by Defendants starting on February 5, 2021 and continuing to the present.

Kent's "opinion" about the volume of mentions of Smartmatic online is not relevant to any issue the trier of fact will be called upon to address. Kent counted the number of times he could find Smartmatic being mentioned on the Internet after the 2020 U.S. Election and prior to February 5, 2021. If Smartmatic was mentioned zero times during that period of time, it would be irrelevant to any of the issues to be addressed by the trier of fact. If Smartmatic was mentioned one billion times during that period of time, it would be irrelevant to any of the issues to be addressed by the trier of fact. The number of times "Smartmatic" was mentioned online prior to February 5, 2021 does not bear on whether Defendants published false and defamatory statements about Smartmatic between February 5, 2021 and the present.

Nor does the number of times that Smartmatic was mentioned online prior to February 5, 2021 bear on damages. Smartmatic's damages for reputational harm are based on an assessment of the natural effect that the defamatory statements published by Defendants would have on a company like Smartmatic. *Erickson v. Sawyer,* 650 F.Supp.3d 758, 765 (D. Minn. 2023) ("A statement is defamatory when it 'tends to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation.'") (citation omitted). Smartmatic's recovery for lost business is predicated on whether the defamatory statements published by Defendants caused Smartmatic any financial losses. The number of times Smartmatic was mentioned online prior to February 5, 2021 does not increase or decrease its potential reputational harm. And the number of times it was mentioned online during that same time-period has no bearing on whether the statements published by Defendants caused any financial losses.

4

Among other things, a critical component missing from Kent's counting exercise was any expert analysis. Kent did not systematically—or otherwise—analyze the impact of any of the articles or postings mentioning Smartmatic prior to February 5, 2021. For example, Kent admitted that beyond manually counting the number of articles on the far-right website *The Gateway Pundit* that mention Smartmatic, he did not further investigate the sentiment, opinion, or disposition of those articles in conjunction with mentions of Smartmatic:

> Q: Do you know anything about the impact that Gateway Pundit publications would have on public sentiment about Smartmatic prior to the 2020 election?
> …
> A: Well, I didn't do an analysis into that issue. I can certainly guess what the reaction would be.

(Decl. of M. Levine-Patton, Ex. B, Deposition of Peter Kent ("Ex. B") at 71:14-25). Aside from noting the subject matter of a handful of articles, Kent performed no analysis of the content of these articles, and he certainly did not engage in an effort to characterize the sentiment of the mentions as a whole. The majority of the mentions could have been singing praises about Smartmatic. Kent's report makes no effort to evaluate the content of the mentions he tallies—rendering his assessment meaningless. Indeed, the sheer number of times that Smartmatic was mentioned prior to February 5, 2021—without meaningful analysis of the context—provides no help to the trier of fact in deciding the relevant issues in the case.

One could imagine Defendants trying to argue that the number of times Smartmatic was mentioned online prior to February 5, 2021 bears on causation, arguing that

Defendants could not have caused damage to Smartmatic's reputation or business because Smartmatic was already mentioned online frequently before February 5, 2021. That argument fails, of course, because there is no legal precedent saying that *the number of times a plaintiff is mentioned* before the publication of a defamatory statement impacts causation for the defamatory statement at issue. But, more to the point, Kent's counting exercise cannot help with any causation argument because he did no analysis of the universe of mentions he counts—*i.e.*, good for Smartmatic, bad for Smartmatic, or neutral for Smartmatic. The counting exercise by Kent should be excluded. *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1084-85 (8th Cir. 1999) (upholding exclusion of expert testimony where breaks in the causal chain rendered insufficiencies in warnings irrelevant).

## II. Kent's Opinion That Defendants' Statements About Smartmatic Were Part of a Broader "Public Debate" About Voting Machines Should be Excluded.

Kent's second "opinion" is irrelevant speculation addressing a subject matter that he is not qualified to analyze. Kent concludes that the disinformation campaign by Defendants—the publication of a defamatory statement about Smartmatic between February 5, 2021 and the present—was a continuation of a "public debate" about voting machines that predated Defendants' disinformation campaign. Specifically, Kent opines that:

- While this case revolves around allegations that Smartmatic was involved in voter fraud during the 2020 Presidential Election, one might consider these allegations as a continuation of a much broader public debate that started years earlier, involving not just Smartmatic but all the companies that provide

- electronic voting machines for use in elections in the United States. (Ex. A at ¶100).

- A debate had been underway in the United States since at least 2006 regarding voting-machine security, with many allegations that the various machines were not secure. (*Id.* at ¶115).

- The kind of statements that Plaintiffs regard as defamatory were widely broadcast by numerous parties prior to Defendants first comments regarding Smartmatic. (*Id.*)

- Prominent figures, such as Sidney Powell and Rudy Giuliani, were talking about Smartmatic frequently and to distribution channels—Fox News, Newsmax, OANN, and the like—with a very wide reach, almost three months before Defendants made any statements about the company. (*Id.*)

- Many very popular websites—and even TV channels—were talking about Smartmatic, organizations such as The Gateway Pundit, Fox News, Breitbart.com, etc. (*Id.*)

There is a laundry list of problems with this opinion, each of which are independent reasons for exclusion.

### A. Kent's opinion about a broader public debate is irrelevant.

First, Kent's public debate opinion is irrelevant. The trier of fact is not being called upon to answer whether the disinformation campaign was the continuation of a public debate. This is best illustrated by assuming the two extremes. First: if the disinformation campaign was conclusively proven to be a continuation of a preexisting public debate, what difference would it make to this case? The answer: it would make no difference, as this does not bear on any issue for the jury. And alternatively, if the disinformation campaign was absolutely *not* a continuation of a preexisting public debate? That, too, is irrelevant to any issue for the trier of fact to decide. Kent's testimony concerning this opinion is

7

irrelevant and is thus inadmissible. *Daubert,* 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

### B. Kent is not qualified to opine on a broader public debate.

Second, Kent has no qualifications to render an opinion regarding whether the disinformation campaign is a "continuation" of a broader "public debate." There is nothing in his academic or professional background that qualifies him to opine on (1) whether something is a public debate or not; or (2) whether a subsequent series of communications constitutes a continuation of a public debate or not. He is not an "expert" in any discipline relevant to these two questions, which are the foundation for this opinion.

Where an expert does not have personal knowledge or expertise in a particular area, they cannot opine on that subject matter. *Hammes v. Yamaha Motor Corp. USA, Inc.*, 2006 WL 1195907, at *7 (D. Minn. May 4, 2006) (expert was a qualified mechanic but not qualified to render an opinion on product design); *Khoday v. Symantec Corp.*, 93 F.Supp.3d 1067, 1081 (D. Minn. 2015) (expert in online marketing and commerce did not have the personal knowledge and expertise to testify about the "added value of one form of redownload software over another").

Kent purports to be an expert on the Internet. (Ex. A at 49, "Peter Kent, Internet Expert Witness"). He also purports to be an expert in digital marketing (Ex. B at 43:12-14); social media (*id.* at 42:5-8); and "the propagation of information across social media" (*id.* at 42:12-17). Kent does not have any expertise in history, political science, public communications or marketing. These disciplines are applicable when discussing a

8

widespread, past "public debate" and characterizing commentary from before or after a presidential election.

Kent has not studied history or political science during his formal education, he has not written about those subjects in any of his published articles, and he has never been employed as an academic in those areas. (Ex. A at 49). Kent is not qualified to render an opinion about a broader public debate or continuation of that debate. *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (hydrologist should not have been admitted as an expert in safe warehousing practices where he did not study the subject, did not have formal education on the subject, and had never worked in the field).

### C. Kent applied no methodology in determining that Defendants' comments were part of a broader public debate.

Third, Kent applied no methodology—replicable or not—to determine whether Defendants' disinformation campaign against Smartmatic is the continuation of a preexisting public debate. He does not, for example, identify (1) any factors he used to determine which prior discussions were incorporated into the "public debate" or not; (2) any academic literature or other sources establishing how one might make this assessment; (3) examples of other, prior public discourse that rose to the level of public debate; (4) examples of other, prior public discourse that *did not* constitute public debate. Kent does not provide any information about the methodology he used to identify the so-called "broader public debate." Rather, there was a "public debate" simply because Kent says so.

9

The same flaw permeates Kent's "continuation" conclusion. His report is silent, for instance, as to the factors he used to determine that Defendants' disinformation campaign against Smartmatic was a "continuation" of a broader public debate. He provides no explanation for what criteria can be used to assess whether subsequent speech on a subject matter is a continuation or not of a preexisting debate. He does not cite to academic literature or any other sources to explain how such an assessment is (or should be) made. He cites no other experts who have done this type of analysis. Again, Kent provides no explanation for his methodology, because there is no methodology. This was a "continuation" of a public debate simply because Kent says so.

When asked at his deposition to explain the basis is for his expert opinion that Defendants' statements were a "continuation" of pre-election commentary, Kent testified that "stories don't come out of nowhere," and "if you look at the historical record, certain things were being said in the past… I think I used the phrase kindling in my report. It's burning away slowly and suddenly ignite[s]." (Ex. B at 73:24-74:8). When asked to define what expert methodology he used in rendering this conclusion, Kent was unable to articulate any specific methodology. Rather, he testified that he used "a methodology from examining statements that are being made" with no further detail. (*Id.* at 74:11-14). Kent admitted that although he is "*not supposed to use the word common sense*[,] at the end of the day, *to a great degree [he used] common sense*" in rendering this opinion, by looking at the "discussion over time." (*Id.* at 76:13-19).

The law is clear that "when a layman juror would be able to make a common sense determination of an issue without the technical aid of such an expert, the expert testimony

10

should be excluded as superfluous." *US v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) (citing Fed. R. Evid. 702, advisory committee's note). Expert testimony that is based only on subjective belief is inadmissible. *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 804 (D. Minn. 2000) (excluding expert testimony where it "offers no more than [the expert's] own subjective belief," and "such a belief provides no assistance to jurors who, with as much skill and background, can appraise the extent to which the advertising is misleading, if at all."); *United States v. Ellsworth*, 738 F.2d 333, 336 (8th Cir. 1984) (purported expert testimony would not assist the jury because there was "no basis upon which to conclude that the subject was beyond the common understanding of the jurors" or that the expert "could offer information that would ordinarily not be available to them.").

Kent's opinion regarding Mr. Lindell's statements about Smartmatic as a "continuation" of pre-election commentary, and his contention that Defendants' comments are part of a broader "public debate" about voting machines that has been "underway since at least 2006," are based on nothing more than his subjective belief and are inadmissible.

## CONCLUSION

For the foregoing reasons, Smartmatic respectfully requests that the opinions and testimony of Peter Kent be excluded in their entirety.

Dated: November 13, 2024                                      Respectfully submitted,

/s/ *Timothy M. Frey*

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske

11

      Minnesota Bar No. 0392348
      WManske@robinskaplan.com
Emily J. Tremblay
      Minnesota Bar No. 0395003
      ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice)*
      EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice)*
      NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
      TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
      JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
      JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*