**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, <br><br>           Plaintiffs, <br><br>     v. <br><br> MICHAEL J. LINDELL and MY PILLOW, INC., <br><br>           Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO EXCLUDE THE OPINION AND TESTIMONY OF**
**<u>BENJAMIN COTTON</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ................................................................................................................. 4

    I.      Cotton is Not Qualified to Offer His Opinion. ....................................... 5

    II.     Defendants Cannot Meet Their Burden to Demonstrate Cotton's
             Opinion Is Based on Sufficient Facts or Data........................................ 8

    III.    Cotton Relies on Speculation, and Therefore Defendants Cannot
             Meet Their Burden to Demonstrate His Opinions Are Relevant and
             the Product of Reliable Principles and Methods................................... 12

CONCLUSION............................................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Page(s)**

*Algarin v. New York City Dep't of Correction*, 460 F. Supp. 2d 469 (S.D.N.Y. 2006), *aff'd*, 267 F. App'x 24 (2d Cir. 2008) .......................................................... 11

*Aspro, Inc. v. Comm'r of Internal Revenue*, 32 F.4th 673 (8th Cir. 2022) ................................. 12

*Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp.2d 802 (D. Minn. 2011).......................................................................................................... 4, 8

*Campbell v. Nat'l R.R. Passenger Corp.*, 311 F.Supp.3d 281 (D.D.C. 2018)......................... 9, 11

*Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350 (S.D. Fla. 2015) .................................... 11

*Garnac Grain Co. v. Blackley*, 932 F.2d 1563 (8th Cir. 1991) ..................................................... 6

*General Elec. Co. v. Joiner,* 522 U.S. 136 (1997) ................................................................. 12, 15

*Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986 (8th Cir. 2001) .......................................... 12

*In re Baycol Prod. Litig.*, 596 F.3d 884 (8th Cir. 2010) ............................................................... 8

*In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995 (8th Cir. 2019) ........................... 12

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681 (8th Cir. 2001)................................................... 4, 16

*Olson v. Macalester Coll.*, 681 F. Supp. 3d 949 (D. Minn. 2023)................................................. 7

*Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638 (8th Cir. 2009) ................................ 12, 15

*Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233 (D.D.C. 2018)......................................... 9, 11

*Schmidt v. City of Bella Villa*, 557 F.3d 564 (8th Cir. 2009)......................................................... 5

*United States v. Coutentos*, 651 F.3d 809 (8th Cir. 2011) .......................................................... 16

*Wagner v. Hesston Corp.*, 450 F.3d 756 (8th Cir. 2006)............................................................... 4

*Weisgram v. Marley Co.*, 169 F.3d 514 (8th Cir. 1999), *aff'd,* 528 U.S. 440, 120 S. Ct. 1011 (2000)................................................................................................... 7, 12

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706 (8th Cir. 2001).......................................................................................................... 6, 7

*Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841 (E.D.N.C. 2015) ................................................ 11

**Rules**

Federal Rule of Evidence 702................................................................. 4, 5, 8, 11

## INTRODUCTION

Plaintiffs Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation, Limited (collectively, "Smartmatic") respectfully move this Court to bar Defendants' voting machine expert, Benjamin Cotton, from offering his opinion that Los Angeles County's VSAP system would be vulnerable to unauthorized access and vote manipulation through technical processes. His opinion and accompanying testimony are inadmissible. Despite his representations, Cotton is not an expert in voting machines, and his opinions are not rooted in reliable fact or methodology. Cotton has no right to confuse and mislead the jury, which he would do if the Court allowed him to present his opinions. Smartmatic accordingly requests that the Court exercise its gatekeeping authority and bar Cotton's opinion.

## FACTUAL BACKGROUND

Defendants retained Cotton to provide an opinion on the security of the Voting Solutions for All People (VSAP) system. (Ex. A, Benjamin Cotton Declaration at ¶ 22; Ex. B, Benjamin Cotton Deposition, Aug. 8, 2024, at 38:8-39:3.) VSAP was the voting system used by Los Angeles County in the 2020 election, which included a ballot marking device ("BMD") manufactured by Smartmatic. (Ex. C, Tammy Patrick Report, at 1-2.) The BMD was the only voting technology provided by Smartmatic during the 2020 election and it was only used in Los Angeles County. (*Id*. at 6, 8.) The BMD allowed voters in Los Angeles to print a ballot with their selections. (*Id*. at 8.) The BMD did not count or tabulate votes. (*Id*.)  It simply created a paper record of the voter's vote. (*Id*.)

Cotton's Declaration is a mere twenty-two paragraphs. (*See* Ex. A.) Seven of those paragraphs are dedicated to describing his background, thirteen paragraphs discuss the experiences and documents he relies upon to form his opinion, and the final *two* paragraphs provide his opinion and the support for that opinion. (*See id*.) He only offers one opinion: "Given the totality of the lack of practical, effective cybersecurity protections on all of the election systems that I have examined, coupled with the lack of effective access controls to the systems, it is a near certainty that the VSAP systems would be vulnerable to unauthorized access and vote manipulation through technical processes." (*Id*. at ¶ 22.) He did not offer any opinion about the BMD that Smartmatic manufactured. (Ex. B at 121:7-11).

To reach this opinion, Cotton relied on his experience examining voting systems in Maricopa County (Arizona), Antrim County (Michigan), Mesa County (Colorado), Coffee County (Georgia), and Adams Township (Michigan). (*Id*. at ¶ 8.) Cotton examined these systems (each to a different extent), following the 2020 election when he was retained as an expert in various cases that challenged the outcome of the election. (*Id*. at Cotton Curriculum Vitae). These examinations were the first time Cotton had any experience with electronic voting systems. (Ex. B at 53:5-12.) The electronic voting systems examined by Cotton were manufactured by Dominion, ES&S, and Hart InterCivic. (*Id*. at 74:21-25; 105:22-106:2; 110:14-19.) None of those counties used Smartmatic's technology, including BMDs. (*Id*.)

In the single paragraph where Cotton provides support for his opinion, he primarily discusses his findings from examining electronic voting systems in these other counties.

(*See* Ex. A at ¶ 21.) Cotton starts the substantive discussion of electronic voting systems in his Declaration by stating, "I find the following specific to the cyber security vulnerabilities and weaknesses observed in the voting systems of multiple vendors." (Ex. A at ¶ 21.) Cotton then goes on to discuss various "weaknesses" he has seen in electronic voting systems including (1) failure to update antivirus protections; 2) failure to patch and maintain operating system (OS) security; (3) failure to properly establish and control access to voting systems; (4) no process monitoring, network monitoring, or baseline monitoring; (5) log management; (6) network segmentation; (7) The BMG network is not truly air gapped; and (8) block suspicious activity. (*Id.* at ¶ 21(a)-(h).) Cotton concludes his discussion of each of these categories by stating, "[t]o date Los Angeles County and Smartmatic have not produced a VSAP system for analysis. *I would need to examine a VSAP system to determine if this finding is directly applicable* to the Los Angeles County voting systems." (*Id.* at ¶ 21(a)-(e), (g)-(h).) (emphasis added).

Cotton concludes his Declaration by stating, "once I receive this machine [VSAP], I will be able to supplement my report. I would need to examine a VSAP system to definitely prove if this finding is directly applicable to the Los Angeles County voting systems." (*Id.* at ¶ 22.) That means Cotton issued his report without ever inspecting an aspect of the VSAP system, including Smartmatic's BMD. Since Cotton's report was issued in September 2023, Defendants have made no attempts to review the exemplar BMD that was reviewed by Smartmatic's own electronic voting machine expert and Cotton has not supplemented his report. (Ex. D, Frey Declaration, at ¶ 5-11.) Cotton, therefore, has zero experience or familiarity with the election technology that Smartmatic provided

during the 2020 election, the BMD used in Los Angeles County and Los Angeles County only.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Cotton's purported expert testimony must satisfy three requirements to be admitted under Rule 702. *First*, it must be based on specialized knowledge that is helpful to the finder of fact, i.e., that the proposed expert testimony is relevant. *Id. Second*, Cotton must be qualified to assist the finder of fact. *Id. Third*, Cotton's proposed testimony "must be reliable or trustworthy in an evidentiary sense" meaning that it is "based upon sufficient facts," it is "the product of reliable principles, and [that Cotton] applied the principles and methods reliably to the facts of the case." *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp.2d 802, 820 (D. Minn. 2011) (citing *Lauzon*, 270 F.3d at 686). The district court acts as a "gatekeeper to ensure that the proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Defendants must prove by a preponderance of the evidence that Cotton's proposed expert testimony is admissible. *Lauzon*, 270 F.3d at 686.

## ARGUMENT

Cotton's testimony should be excluded because Cotton is not qualified to offer his opinion, his opinion is not rooted in a sufficient basis of facts and data, and his opinion is speculative.

## I.    Cotton is Not Qualified to Offer His Opinion.

As the first step in a Daubert analysis, the court is "charged with determining whether the witness is qualified to offer expert testimony." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009). A witness must be qualified by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. "For an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." *Schmidt*, 557 F.3d at 571.

The Court should exclude Cotton's opinion because he wholly lacks "knowledge, skill, experience, training or education," in electronic voting system security. *See* Fed. R. Evid. 702. *First*, as it pertains to training and education, Cotton admits that none of his prior training or education relates to electronic voting systems. None of his professional certificates pertain to electronic voting. (Ex. B at 52:1-5; 52:24-53:4.) He has no educational background in electronic voting systems. (*Id*. at 58:19-59:1.) And Cotton has never published a single article relating to electronic voting systems. (*Id*. at 54:2-6.)

*Second*, Cotton admits that he has limited experience and skills relating to electronic voting system security. Cotton has never worked in the electronic voting industry. (*Id*. at 59:15-18.) He has never worked at a Secretary of State's Office that oversees elections. (*Id*. at 59:19-21.) He has never managed an election that utilizes electronic voting systems. (*Id*. at 59:22-25.) Cotton has never designed an electronic voting system. (*Id*. at 53:12-15.) He admitted he is not an expert in voting machine certification (*Id*. at 66:5-7). This lack of experience is notable because voting system security is not solely based on the machines and software. The certification standards for systems, the way an election is secured,

administered, monitored, and audited by government agencies, and measures put in place within the electronic voting machine industry all impact security. (*See* Ex. E, Dr. Alan Sherman Report, at ¶¶ 30, 57, 136-151.)

Cotton's only experience with reviewing voting machines occurred recently. Prior to the November 2020 election, Cotton admitted he had *zero* experience with electronic voting systems. (*Id*. at 53:5-7.) Cotton only had the occasion to review voting machines because he was hired by individuals seeking to challenge the results of the 2020 election. (*See id*. at 64:14-65:5.) When asked how Cotton became involved in these election cases, Cotton admitted that he was "not exactly sure how they came across me." (*Id*. at 63:10-13.) It is notable that not even Cotton knows why he was identified to work on those failed challenges to the 2020 election.

Serving as a witness in a few election-related cases over the last three years does not make Cotton qualified to offer his opinion in this case. Courts have found that a few years of experience is insufficient when the expert lacks any formal training and education. *Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1566 (8th Cir. 1991) (excluding experts who had a few years of practical experience but lacked any formal training, degrees, or certifications); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (finding expert unqualified where he had no formal education on the subject matter, had not published articles on the subject, and had never been employed in the industry). And, it bears repeating, ***none*** of Cotton's experience even in those cases has anything to do with the BMDs manufactured by Smartmatic for Los Angeles County —the only voting technology at issue in this litigation.

6

Additionally, Cotton's general experience in computer forensics does not make him an expert in electronic voting systems, generally, and Smartmatic's BMDs, specifically. When pressed about his qualifications, Cotton indicated that he is knowledgeable about operating systems which is potentially relevant because electronic voting systems are applications that reside on operating systems. (Ex. B at 52:1-11.) But Cotton acknowledged that his experience with operating systems was not specific to electronic voting systems. (*Id*. at 55:24-53:4.) Cotton was also quick to point out that that operating systems are only the "first layer of defense" for security of a voting system and that there are "additional security protocols internal to the software." (*Id*. at 52:12-19; 56:11-17.) Cotton then admitted he is only an expert "of a given component of a voting system." (*Id*. at 66:20-67:8.)

The Eighth Circuit has repeatedly required that an expert witness's testimony must be limited to topics within her specific areas of expertise. *See Wheeling Pittsburgh Steel Corp.*, 254 F.3d at 715 (holding that a hydrologist offering an opinion proper warehouse safety practices was testifying "beyond the scope of his expertise" because the witness had not studied or written articles about warehousing practices and had never been employed by a warehouse); *Olson v. Macalester Coll.*, 681 F. Supp. 3d 949, 983 (D. Minn. 2023) (excluding testimony that an alleged harassment victim "adopted and offered a victim narrative" because although the expert held degrees in psychology, the expert possessed no "education, training, or experience in the area of identifying a victim narrative."); *Weisgram v. Marley Co.*, 169 F.3d 514, 520 (8th Cir. 1999), *aff'd,* 528 U.S. 440, 120 S. Ct. 1011 (2000) (excluding testimony where an expert was only familiar with the metal

components of a heater but was not in expert in baseboard heaters or in the design or testing of baseboard heaters).

Cotton's education and experience—which, at best, tangentially touches on a single component of electronic voting systems—is insufficient to qualify him as an expert on electronic voting systems in general. Under Rule 702, Cotton must be excluded from offering his opinion on this ground alone. But, Cotton's deficiencies are even greater when it comes to the voting technology at issue in this litigation – Smartmatic's BMDs manufactured for Los Angeles County. Cotton has *zero* experience with the BMDs that Smartmatic manufactured for Los Angeles County. Nor has Cotton provided any basis for the Court to speculate that experience with whatever he reviewed in other jurisdictions after the 2020 election have any resemblance to the Smartmatic BMDs used in Los Angeles County. Cotton cannot be allowed to testify about Smartmatic's voting technology (BMDs) when he has no experience with Smartmatic's voting technology.

## II.    Defendants Cannot Meet Their Burden to Demonstrate Cotton's Opinion Is Based on Sufficient Facts or Data.

Cotton's opinion should be excluded because it lacks a sufficient factual basis. Under Rule 702, an expert's opinion must be "based on sufficient facts or data." In no event will "conclusory statements without sufficient evidentiary support" suffice. *In re Baycol Prod. Litig.*, 596 F.3d 884, 891 (8th Cir. 2010); accord *Aviva Sports*, 829 F. Supp. 2d at 825. "The trial court's gatekeeping function requires more than simply taking the expert's word for it." Fed. R. Evid. 702 Advisory Committee Note (2000). For an opinion to be reliable, an expert must provide citations to studies, reports, or sources to support their

conclusions. *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F.Supp.3d 281, 300 (D.D.C. 2018); *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 251 (D.D.C. 2018).

Cotton's Declaration suffers from three issues, all of which demonstrate that his opinion is not based in facts or data. *First*, Cotton provides no support for any of the claims throughout his Declaration. Noticeably absent from his Declaration are citations. The Declaration contains not a single in-text citation and has just three footnotes—the first of which is a general reference to the entire VSAP system, while the second is a general reference to a 105-page VSAP "Source Code Review Report" (with no pin cite and no clear indication of what he is referencing), and the third is a lone hyperlink to a 2023 web article discussing unrelated cybersecurity events connected to China. (*See* Ex. A at ¶¶ 19, 21.) Yet, the Declaration is full of assertions that should (and must) have accompanying support. For example, when discussing whether VSAP can connect to the internet, Cotton stated, "this assertion [made about VSAP] stands in contrast to… the documented statements that at least a portion of the remote voting sites exist in the Amazon Cloud." (*Id*. at ¶ 21(g).) There is no citation to the "documented statements" Cotton says would support this assertion; this makes it impossible to know if his assertion is reliable and for Smartmatic to investigate and rebut the assertion. Virtually every other assertion in the Declaration suffers the same problem.

*Second*, Cotton improperly relies on personal knowledge and experience without explanation or support. For example, Cotton stated in his Declaration, "I have personal knowledge that the Amazon Cloud is only accessible via the public internet." (*Id*.) Cotton does not provide any information about where his personal knowledge came from and how

9

it applies to the facts of this case. In another section of his Declaration, Cotton stated, "I have personal experience with, and have observed, threat actors attempting to delete local logs to remove on-site evidence of their activities." (*Id*. at ¶ 21(e)(ii).) Missing from this statement are details about when Cotton observed this, on what system this occurred, documentation of these incidents, and an explanation of why that is relevant to the VSAP system. In addition, Cotton frequently provides data points, which he also claims come from personal knowledge, without any support. (*See*, *e.g.*, *id*. at ¶ 21(a) ("based on my personal knowledge and experience, over one million (1,000,000) new computer viruses are released on a daily basis.").)

*Third*, Cotton also relies heavily on his experience of reviewing other electronic voting machines and systems in forming his opinion but does so without specifics or citations. Cotton repeatedly makes sweeping assertions that begin with the statements "based on my review of the electronic voting systems from different jurisdictions" and "in all the election systems I have examined…" (*See id*. at ¶ 21 (c), (d), (e), (f).) Each and every one of these assertions lacks a citation to a specific document or component of an electronic voting machine or system that would allow a jury to assess whether there is any validity to the assertion he is making. This is particularly problematic, because as discussed above, Cotton's entire opinion about VSAP, hinges on his prior review of electronic voting systems in other jurisdictions. (*See id*. at ¶ 22.)

A lack of sources is sufficient to find that an expert's opinion is not based in facts and data and is therefore unreliable. *Campbell*, 311 F.Supp.3d at 300 (excluding the plaintiff's proposed expert testimony as unreliable, in part because the expert "ha[d] not

identified any particular principles or methodology he used in forming his opinions ... [or] cite a single study, report or other source for his opinions"); *Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 847 (E.D.N.C. 2015) (excluding expert's testimony where his report "cites to no specific authority."); *Algarin v. New York City Dep't of Correction*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006), *aff'd*, 267 F. App'x 24 (2d Cir. 2008) (excluding the entirety of expert's testimony where he cited no support and would therefore not be helpful to the jury); *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1363 (S.D. Fla. 2015) (excluding expert's testimony because he "did not cite any sources corroborating his assumptions.").

Likewise, an expert's use of personal knowledge and experience, can be the basis to exclude an expert's testimony. *Sacchetti*, 344 F. Supp. 3d at 251 (excluding expert's testimony where his opinions were based solely on experience and did not cite to any authorities or studies that would have connected his personal experience to the facts of the case); Fed. R. Evid. 702, Advisory Committee's note to 2000 Amendment (experts must "explain how [their] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts[.]").

By relying on assertions that have no citations and derive solely from personal experience that is not grounded with evidentiary support, Cotton has failed to "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Aspro, Inc. v. Comm'r of Internal Revenue*, 32 F.4th 673, 676 (8th Cir. 2022). Cotton does not, and cannot, provide facts and data supporting any opinion regarding the only voting technology at issue in this case – Smartmatic's BMDs used in

11

Los Angeles County – because he does not have any experience or investigation relating to that technology. Therefore, Cotton's opinions must be excluded under Rule 702 for this reason as well.

**III.    Cotton Relies on Speculation, and Therefore Defendants Cannot Meet Their Burden to Demonstrate His Opinions Are Relevant and the Product of Reliable Principles and Methods.**

Cotton's opinion should be excluded because it is steeped in speculation. An expert witness cannot rely on speculation or conjecture. *Weisgram*, 169 F.3d at 518. The Court must exclude "subjective speculation that masquerades as [expert] knowledge." *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)). And "a court should not admit opinion evidence that 'is connected to existing data only by the *ipse dixit* of the expert.'" *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Cotton's entire opinion is based on Cotton's assumption that the issues he found during the review of other electronic voting systems would also be present in the VSAP system, generally, and Smartmatic's BMDs, specifically. (Ex. A at ¶ 22.) Cotton testified that he found the exact same issues in all of the electronic voting systems he previously examined, which he claims demonstrates there is "a pattern within the vot[ing] jurisdictions […] of a lack of attention to detail to cyber security." (Ex. B at 161:5-8.) When pressed on whether four voting jurisdictions is sufficient to establish a pattern, when there are over 10,000 voting jurisdictions in the country, Cotton stated, "if you're provided the opportunity to look at 4, and 100 percent of your sampling is indicative of a certain result,

there is a high probability that that result will continue through other jurisdictions." (*Id*. at 162:4-15.)

Cotton fails to provide any support to demonstrate that this "pattern" is reliable or legitimate and does not provide any explanation as to why this pattern would extend to the VSAP system, generally, and Smartmatic's BMDs, specifically. In fact, Cotton casts doubt on his assumptions by acknowledging that voting systems vary widely because the platforms they operate on are "vendor-specific," and each system is "affected by state law." (*Id*. at 59:6-10.) And even more damning, Cotton acknowledged that he does not know if the pattern would extend to Smartmatic's BMDs. Cotton testified, "I would welcome the opportunity to examine an LA County system to see if that pattern continues into LA County." (*Id*. at 161:5-11.) It is clear from this testimony alone that Cotton is at best speculating when he concludes that the issues found in other voting systems are present in VSAP.

Along these lines, Cotton admitted he cannot reasonably assert that any of the issues he identified in other electronic voting systems are present in the VSAP system, generally, and Smartmatic's BMDs, specifically. When Cotton walked through hypothetical issues with electronic voting systems in his Declaration such as connection to the internet, network monitoring, and controlling access to voting systems, for each category Cotton stated, "I would need to examine a VSAP system to determine if this finding is directly applicable to the Los Angeles County Voting System." (Ex. A at ¶ 21.) Cotton also concluded his Declaration by explicitly stating, "I would need to examine a VSAP system to definitely prove if this finding is directly applicable to the Los Angeles County voting

systems." (*Id.* at ¶ 22). And in his testimony, Cotton stated that "the purpose of the declaration was to attempt to get actual voting systems for the purposes of forensic examination as that next step." (Ex. B at 39:15-18). By Cotton's own admission, his Declaration was only a first step and his opinion is speculative because he has not conducted a review of the VSAP system or Smartmatic's BMDs.

Cotton places the blame for the fact that his opinion is speculative on Smartmatic, stating repeatedly that Smartmatic has withheld the BMDs from inspection. (Ex. B at 39:4-18). In reality, Smartmatic offered Defendants the opportunity to inspect the Smartmatic BMD that was reviewed by Smartmatic's own voting machine expert, but Defendants declined that invitation (Ex. D at ¶ 5-10) and the Court denied Defendants' motion to compel an inspection of the VSAP system used by Los Angeles County in the 2020 election. (Dkt. 266.) As such, Cotton does not have access to, nor will he ever have access to, the information that by his own admission, would be necessary for him to offer an opinion that is not speculative.

Finally, Cotton makes a few assertions about issues with the VSAP system that he claims are supported by VSAP's own documents and not the findings from his review of other electronic voting systems. But even these assertions are still speculative. For example, when discussing whether VSAP has network segmentation, Cotton stated, "[b]ased on my review of the Los Angeles County documentation this appears to be the case with the VSAP as well. Depending on the configuration of the wireless device modems contained on the mother boards of the COTS equipment, simply creating a non-password protected WiFi network that is in range of a device is sufficient for that device

14

to automatically connect to the internet." (Ex. A at ¶ 21(f).) Even here, Cotton cannot say for certain if the network is segmented because it would depend on the particular configuration, and he does not know what that configurations are used in VSAP. (Ex. B at 124:17-21.) Again, Cotton states that he cannot know what configuration was used unless he examines the VSAP system. (*Id.*)

Cotton's opinion is solely based on what he speculates to be true, and as such, Defendants cannot demonstrate that his opinion and the methodology employed to reach that opinion are reliable. His opinion must be excluded on this basis. *Presley*, 553 F.3d at 647 ("An expert generally cannot formulate a theory through supposition based on his or her own expertise.") (citing *General Elec. Co.,* 522 U.S. at 146 stating, neither "*Daubert* [n]or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit of the expert*" because "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered")).

Allowing Cotton to proffer this opinion would undoubtedly cause confusion among the jury. In particular, Cotton's unfounded assertion that the problems he supposedly identified in other, unrelated voting systems can be found in the VSAP system, generally, and Smartmatic's BMDs, specifically, would mislead the jury on two elements of Smartmatic's claim—falsity and actual malice—by suggesting, without basis, that Defendants' claims about Smartmatic could have been truthful or plausible. To avoid such confusion, Cotton should not be allowed to introduce evidence about voting systems from different jurisdictions and manufacturers that are not at issue in this case. *United States v.*

*Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) (due to an expert's perceived authority, a court should exclude evidence pursuant to Rule 403 when it offers little probative value and risks confusing or misleading the jury); *Lauzon*, 270 F.3d at 686 (holding that an expert opinion must be based on specialized knowledge that is helpful to the finder of fact, or in other words, that the proposed testimony is relevant).

## CONCLUSION

Smartmatic manufactured BMDs for use by Los Angeles County during the 2020 election. None of its technology, including BMDs, was used anywhere else during the 2020 election. Nonetheless, Mr. Lindell and My Pillow published dozens of statements accusing Smartmatic's technology (BMDs) of rigging the 2020 election and being used to rig the 2020 election. Cotton cannot be allowed to testify as an expert because he has no experience, facts or data, or basis to opine on Smartmatic's technology. Cotton's limited experience with other pieces of voting technology used in other jurisdictions during the 2020 election does not provide a basis to opine on the specific technology at issue in this case, Smartmatic's BMDs.

Dated: November 13, 2024      Respectfully submitted,

           */s/ Timothy M. Frey*

           Christopher K. Larus
           Minnesota Bar No. 0226828
           CLarus@robinskaplan.com
           William E. Manske
           Minnesota Bar No. 0392348
           WManske@robinskaplan.com
           **ROBINS KAPLAN LLP**

16

800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice)*
EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice)*
NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*

17