IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V. and SGO CORPORATION LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL J. LINDELL and MY PILLOW, INC., <br><br> Defendants. | Case No. 22-cv-00098-JMB-JFD |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO EXCLUDE THE EXPERT TESTIMONY OF TAMMY PATRICK**

Defendants respectfully move this Court, under Federal Rule of Evidence 702 and the Daubert standard, to exclude the expert report and testimony of Tammy Patrick. Patrick's report, submitted by Plaintiffs is not helpful under Fed. R. Evid. 702(a), and it fails to meet the required standards of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, Defendants challenge Patrick's testimony on the grounds that she lacks the requisite expertise, that her opinions lack a reliable basis, utilize unsound methodology, and are not helpful to the core issues of this litigation.

**I. STATEMENT OF FACTS**

Plaintiffs served Defendants with Tammy Patrick's expert report dated September 22, 2023. A copy of this report is attached as Exhibit A and referred to as "TP Rpt." Patrick has no expertise whatsoever, in conducting post-election audits, testing electronic

voting systems, and certainly no knowledge of Smartmatic's marketing operations. Patrick's report does not state in what area she is offered as an expert. Rather, she states that she will "offer three opinions on behalf of Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, Smartmatic)":

- "First, the results of the 2020 election were legitimate, and it is implausible that the 2020 election was rigged, fixed, or stolen."
- "Second, the VSAP Initiative implemented by Smartmatic for Los Angeles County was a breakthrough in voting technology that positioned Smartmatic for future success in the U.S. market."
- "Third, the false statements set forth in *Smartmatic USA Corp., et al., v. Michael Lindell, et al*.'s First Supplemental Complaint (Complaint) would have the natural effect of harming Smartmatic's reputation and ability to compete in the voting-technology marketplace."

Ex. A, TP Rpt. at 2 and Ex. B, TP Depo., Tr. at 41:9-20.

Patrick's first opinion that the results of the 2020 election are legitimate is neither helpful nor admissible. Ms. Patrick is not an elections auditor, nor has she been trained in the rigorous statistical background required to perform and conduct these audits. For her report, she never conducted any independent investigation, never examined the election materials in any state, never conducted a risk limiting audit, and instead solely relied on hearsay about what officials told her or vague statements people made to various media outlets. This is not the type of hearsay relied upon by an election auditor to validate results. In short, her opinion offers nothing of independent value. She offers nothing attributable to her investigation, analysis, or expertise. Patrick's opinion does nothing more than invite the Court to the public debate with Mr. Lindell.

Patrick's Second Opinion is a mismatch between election administration and technical claims. She is not a computer programmer, software developer, or information technology expert. Ex. B, TP Tr. 54:8-13. Whether the VSAP program was a "breakthrough in technology" is beyond her expertise and that opinion is not helpful to resolving any issues in this case. Though Smartmatic wrote custom software for L.A. County, it did not design L.A. County's VSAP system. *See, e.g.,* Ex. C, Smartmatic President K. Shelly's Depo Tr. 290:21-293. In other words, L.A. County's VSAP is a custom system but it is not Smartmatic's system. Smartmatic had to ask permission from L.A. County for rights to use part of the system. *See, e.g.,* Ex. D, Ed Smith Depo Tr. at 178:10:-14, 248-249. Even assuming that the VSAP program was a breakthrough technology, Smartmatic's officers claim—and Patrick is bound to what they have said—that Smartmatic has no rights to market L.A. County's BMD voting system as its own to any government. Ex. D, Smith Tr. 249:11-20.

For her Third Opinion, Patrick seeks to offer testimony about the effects of Mr. Lindell's statements on Smartmatic's reputation and ability to compete in the government contracting marketplace. However, she is not an economist or marketing expert and she has never been a member of the decision-making board awarding a government contract— certainly not to an election software company. Ex. B, TP Tr. 144:1-8. Regarding her claim of Smartmatic's ability to compete, she glosses over the fact that Smartmatic *has never* had a certified product for use in any American state including up through the date of this motion. *See, e.g.,* Ex. C, Smartmatic President K. Shelly, Depo Tr. 79-81, 163, 168:19-22, 173:10-20, 193, and 327:14-19. As a result, Smartmatic has always been unable to sell its

election products much less compete in the U.S. government space until it does achieve certification.

Ms. Patrick's primary area of expertise consists of 11 years' experience for the Maricopa County Elections Department where she oversaw compliance with the National Voting Rights Act to ensure voting assistance and availability of materials in Braille, ASL, Spanish, and the language of the Tohono O'odham Native American people. Ex. A, *Curriculum Vitae*, TP Rpt. at 104. The remainder of her experience consists of consultation with non-profit organizations, teaching, lectures, writing, and public discourse on general election administration. *Id.* Patrick has no expertise whatsoever, in conducting post-election audits, testing electronic voting systems, and certainly no knowledge of Smartmatic's marketing operations.

Yet, for Ms. Patrick's Third Opinion, she is not giving an opinion on compliance procedures with the National Voting Rights Act nor any opinion on whether a particular locality properly ran its election. Instead, Patrick injects her political opinions that Lindell's statements are false without ever conducting an audit and firsthand investigation. She then opines on what she believes, with no expert analysis, the effect Lindell's statements would be on government officials, claiming this affected future Smartmatic business opportunities. Patrick cannot know this because she provided no evidence that any government official responsible for making contract awards heard Lindell's statements and was otherwise persuaded by his statements. This opinion is pure speculation and should be excluded. Further, despite similar statements by Mr. Lindell regarding Dominion

or ES&S voting systems, multiple states, including Wisconsin, Pennsylvania, and Arizona (where Patrick resides) all used those same systems for the 2024 presidential election.

Patrick is not giving an opinion based on her experience. She is giving her own political opinion without conducting any independent investigation but relying solely on third party conclusory statements of "security." The structure of Patrick's conclusions aligns perfectly with Plaintiff's Supplemental Complaint (ECF 125). That is, her opinions take the very few statements Michael Lindell made specifically about Plaintiff and intersperse those with his general opinions about voting machines to a degree Lindell neither meant nor communicated. Patrick's intent here is to craft a larger narrative in order to enhance the theory that Smartmatic suffered damages. She offers no evidence that a locality refused to purchase Smartmatic services or products (uncertified of course) based on Mr. Lindell's statements.

This Court should exclude Ms. Patrick's opinions as she is not an expert in these matters, and because they do not meet the standards in Federal Rule of Evidence 702 or *Daubert*'s standards.

## II. LEGAL STANDARD

FED R. EVID. 702 governs the admissibility of expert testimony and provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In 2023, the Rule was amended to ensure that the proponent of expert testimony can demonstrate to the Court that it is more likely than not that the rule's three admissibility requirements (FED. R. EVID. 702(b)-(d)) are met.[1]

---

[1] As the Advisory Committee's 2023 commentary notes to Rule 702 state,

> [T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule. *See* Rule 104(a). This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules.

FED. R. EVID. 702 Advisory Committee Notes. The Chair of the Committee, Chief United States District Court Judge Patrick Schlitz explained the underlying reason for the 2022 amendment,

> [M]any courts have declared that the reliability requirements set forth in Rule 702(b) and (d)—that the expert has relied on sufficient facts or data and has reliably applied a reliable methodology—are questions of weight and not admissibility, and more broadly that expert testimony is presumed to be admissible. These statements misstate Rule 702, because its admissibility requirements must be established to a court by a preponderance of the evidence. *The Committee concluded that in a fair number of cases, the courts have found expert testimony admissible even though the proponent has not satisfied the Rule 702(b) and (d) requirements by a preponderance of the evidence—essentially treating these questions as ones of weight rather than admissibility, which is contrary to the Supreme Court's holdings that under Rule 104(a), admissibility requirements are to be determined by court under the preponderance standard.*

Report to the Standing Committee, Advisory Committee on Evidence Rules (May 15, 2022) (emphasis added).

## III. ARGUMENT

**A. Patrick Lacks Relevant Expertise in Key Areas of Testimony**

Patrick's opinions are all over the map precisely because she lacks the relevant expertise. Her prior role as a federal compliance officer does not establish sufficient expertise in areas of election technology development, systems engineering, economics, marketing, or data security. She lacks expertise on the technical reliability of voting systems, software security, or the alleged reputational impacts claimed by Smartmatic. Her previous duties in election administration and procedures do not qualify her to opine on complex cybersecurity or marketplace impacts without concrete data in support. Thus, her lack of direct experience in cybersecurity analysis and statistical modeling of reputational harm undermines her ability to provide reliable testimony on these matters.

Next, Patrick's background lacks specialized training in government procurement (Ex.B, TP Tr. 20:22-23) or the economic impacts of disinformation on market share. She has never run a government contracting business. Ex. B, TP Tr. 144:6-8. She is not an economist. Ex. B, TP Tr. 144:3-5. Her opinions on Smartmatic's procurement processes and alleged market harm due to disinformation are unsupported by credentials or experience directly relevant to these domains.

Finally, Patrick is not an elections auditor. She may know what an auditor does but she has never been trained to conduct the audit nor does she have the educational background to do so. Ms. Patrick holds a degree in American Studies with a minor in

Political Science. She may have knowledge about how elections are run but she is not an expert in the field of election audits and does not have any statistical experience and education upon which to base her opinions. This is key because her very first opinion makes the monumental claim—without any personal investigation—that the 2020 election results were legitimate.

**B. Ms. Patrick's Methodology Is Unreliable, Unsupported, and Lacks Scientific Rigor**

Ms. Patrick's report relies heavily on unsupported assertions, inadmissible hearsay that would not be relied upon by an election auditor, and general statements about the legitimacy and integrity of the November 2020 elections without rigorous testing or objective data. Under Rule 702 and *Daubert*, expert testimony must rest on "scientific knowledge," which Patrick's report lacks.

1. **Reliance on Secondhand Information Without Any Examination of Data and Actual Underlying Election Materials:**

Patrick's first opinion that "[i]t is without a doubt that the results of the 2020 election were legitimate" is based on the notion that "there has been no evidence suggesting that the election was rigged, fixed, or stolen." Ex. A, TP Rpt. at 6. In part, she based this opinion on voting technologies that she knew to be in place. Ex. B, TP Tr. 118:9-12. However, she admits that she has carried out no firsthand investigation but has followed court cases. Ex. B, TP Tr. 118:17-19:1-4. When she thought there was a particular problem, she merely claims she called or saw state officials—hundreds of them—to see what they believed happened or what went on. Ex. B, TP Tr. 120:250-121:1-15.

At no time did Patrick ever conduct her own investigation and audit into election irregularities. At no time did she conduct her own audit of election results as *many* well qualified auditing experts have. Patrick is blindly relying on phone calls and what she believes court cases are deciding. Phone calls to other non-experts are not the type of hearsay that an expert in auditing election results would rely on. Her opinions are simply not her own and she is, in effect, serving as nothing more than a mouthpiece for Plaintiff's allegations about Lindell.

For example, during her deposition, Patrick was questioned about the swing state of Georgia and the vote counting problems of its largest county, Fulton County. She was wholly unaware, for example, that machine count one, a hand count, and machine count two, did not match each other and could not be reconciled. Patrick voiced her surprise and asked, "Where are you pulling—where are you getting that from?" Ex. B, TP Tr. 125:25-126:1. If Patrick had the requisite experience, she would have easily known where to look for audit data. Fulton's problematic vote counts cast doubt on the validity of the Georgia election results.[2]

Patrick was confronted with the expert report of Professor Philip Stark who, in the federal case of *Curling v. Raffensperger*[3] conducted a first-hand investigation into the vote problems and tabulation irregularities in the Fulton County election system *both before*

---

[2] These facts about the mismatched counts are well known in Georgia litigation and can be found online at https://sos.ga.gov/index.php/elections/2020_general_election_risk-limiting_audit. The analysis for why the official risk limiting audit is faulty is detailed in Professor Stark's report.
[3] 493 F.Supp.3d 1294 (N.D. Ga. 2020), *vacated in part and dismissed in part on other grounds*, 50 F.4th 1114 (11th Cir. 2022).

*and after the November 2020 election*. See Exhibit E, Professor Stark *Curling* Declaration. Professor Stark invented a special audit to validate election results, and it has been incorporated into numerous state laws and used around the world. His affidavit clearly and persuasively shows what an election auditor's background should be, the extent to which he rigorously investigated election related documents and other materials actually used in Georgia's 2020 election, his methodology, and what he expected to see in election results. All of this supported his conclusion for why no Georgian should trust that their vote in 2020 was counted properly, *much less counted at all*. *Id.* Notably, Professor Stark did not rely on phone calls with officials as part of his findings. Any election auditor who tests post-election results would certainly not rely on the word of election officials who ran the election to determine its legitimacy. But that is exactly what Ms. Patrick did here, summarily attempting to discount everything Professor Stark opined on even though a U.S. District Judge considered him a preeminent expert on election audits. *Curling,* 493 F.Supp.3d 1294, 1277 1280, 1297-1307, 1342 (N.D. Ga. 2020), *vacated in part and dismissed in part on other grounds,* 50 F.4th Cir. 2022).

   Under Rule 703, the inadmissible facts or data that form the basis of an expert's opinion must be the kinds of facts or data upon which an expert in his field would "reasonably" rely. This rule "permits experts to rely on hearsay so long as that hearsay is of the kind normally employed by experts in the field." *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1223, 1245 (E.D.N.Y.1985)). Therefore,

> when a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are

good grounds to rely on this data to draw the conclusion reached by the expert.

*In re TMI Litigation*, 193 F.3d 613, 697 (C.A.3 (Pa.), 1999). As the TMI case explained,

> If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded. The key inquiry is reasonable reliance and that inquiry dictates that the 'trial judge must conduct an independent evaluation into reasonableness.' Rule 703's reliability standard is similar to Rule 702's reliability requirement, i.e., 'there must be good grounds on which to find the data reliable.'

*Id*. (citations omitted.) Patrick's reliance on this type of hearsay is simply not admissible.

2. **Lack of Testing and Peer-Reviewed Methods**:

The report lacks specific testing methods to support Patrick's claims about the legitimacy of election results and any peer reviewed methods concerning voting security. Again, this is because she is not an election auditor and all she purports to "know" she heard from third parties commenting to the media and "phone calls" to non-expert officials. Her opinions concerning the hypothetical reputational impact on Smartmatic's market position are speculative and do not align with any standardized methodology or peer-reviewed study relied on by actual experts in the field of auditing elections.

3. **No Control for External Factors**:

Patrick's expert report and her deposition testimony do not account for other market variables or distinguish between various sources of reputational impact such as Smartmatic's sordid history and recent federal indictment of one of its founders for bribery in the Philippines.[4] She does not take into account, for instance, that Smartmatic first filed

---

[4] *See, e.g.,* Smartmatic executives charged with bribing Philippine official for voting tech contracts

suit against FoxNews on February 4, 2021 and that Mr. Lindell's first mention of Smartmatic was on February 5, 2021. In the FoxNews case, Smartmatic argued its reputation was damaged *before* Lindell even came on the scene. Patrick fails to consider that Smartmatic's reputation could be impacted by competitors who said negative things about the company. *See, e.g.,* Ex. C, Shelly Tr. 44:6 to 45:14. Patrick's report offers no reliable data on how external factors independent of Mr. Lindell's statements could have contributed to Smartmatic's alleged harm.

**C. Patrick's Opinions Are Not Relevant to the Facts in Dispute and Mischaracterize Lindell's Statements.**

The robustness of election systems are not directly relevant to Defendants' alleged statements or the specific claims in this case. Her opinions lack a direct connection to the specific harm alleged by Smartmatic and thus do not meet Rule 702's requirement of helpfulness to the trier of fact.

**IV. CONCLUSION**

For these reasons, Defendants request that this Court exclude the expert testimony of Tammy Patrick under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*.

---

(August 9,2024) https://www.reuters.com/legal/smartmatic-execs-charged-with-bribing-philippine-official-voting-tech-contracts-2024-08-09/

Dated: November 13, 2024				M<small>C</small>S<small>WEENEY</small>, C<small>YNKAR</small> & K<small>ACHOUROFF</small>, PLLC

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff* (Bar No. 44216)
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com


Douglas G. Wardlow (MN Bar #339544)
Jeremiah D. Pilon (MN Bar #392825)
1550 Audubon Rd.
Chaska, MN 55318
Telephone: (952) 826-8658
doug@mypillow.com
jpilon@mypillow.com

**ATTORNEY FOR MY PILLOW, INC. AND MICHAEL LINDELL**

*Admitted *Pro Hac Vice*


**CERTIFICATE OF SERVICE**

I certify that on November 13, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court of Minnesota by using the CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By */s/ Christopher I. Kachouroff*
Christopher I. Kachouroff (VSB# 44216)
**M<small>C</small>S<small>WEENEY</small>, C<small>YNKAR</small> & K<small>ACHOUROFF</small>, PLLC**
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
703.365.9900
chris@mck-lawyers.com