**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, <br><br>                           Plaintiffs, <br><br>     v. <br> MICHAEL J. LINDELL and MY PILLOW, INC., <br><br>                          Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF TAMMY
PATRICK**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 1

LEGAL STANDARD ................................................................................................ 5

ARGUMENT ............................................................................................................. 6

I.     Ms. Patrick's Opinions are Grounded in Decades of Experience in the Election Industry ...................................................................................... 6

II.    Ms. Patrick's Opinions are Based on Reliable Reasoning and Methodology ................................................................................................ 11

III.   Ms. Patrick's Opinions are Relevant to Falsity and Damages .............................. 15

CONCLUSION ....................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Innovative Properties Co. v. GDC, Inc.*,
2016 WL 3976589 (D. Minn. July 22, 2016) ............................................................. 15

*Acad. Bank, N.A. v. AmGuard Ins. Co.*,
116 F.4th 768 (8th Cir. 2024) ...................................................................................... 5

*Am. Auto. Ins. Co. v. Omega Flex, Inc.*,
783 F.3d 720 (8th Cir. 2015) ................................................................................. 5, 10

*Am. Dairy Queen Corp. v. W.B. Mason Co.*,
543 F. Supp. 3d 695 (D. Minn. 2021) ........................................................................ 15

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
829 F. Supp. 2d 802 (D. Minn. 2011) ........................................................................ 15

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ............................................ 6

*Curling v. Raffensperger*,
493 F. Supp.3d 1294 (N.D. Ga. 2020) ....................................................................... 13

*Gaudreault v. Elite Line Servs.*, LLC
22 F. Supp. 3d 966 (D. Minn. 2014) .......................................................................... 13

*Hartzell Mfg., Inc. v. Am. Chem. Techs., Inc.*,
899 F. Supp. 405 (D. Minn. 1995) ............................................................................. 12

*J & M Distrib., Inc. v. Hearth & Home Techs., Inc.*,
2015 WL 137616 (D. Minn. Jan. 9, 2015) ................................................................. 11

*Khoday v. Symantec Corp.*,
93 F. Supp. 3d 1067 (D. Minn. 2015) ........................................................................ 11

*Lauzon v. Senco Prod., Inc.*,
270 F.3d 681 (8th Cir. 2001) ..................................................................................... 16

*Neuharth v. NACCO Materials Handling Grp., Inc.*,
2002 WL 34700601 (D.S.D. Dec. 17, 2002) ........................................................ 12, 13

*Nutreance LLC v. Primark*, LLC
2020 WL 3892995 (E.D. Mo. July 10, 2020) ............................................................ 16

*In re ResCap Liquidating Tr. Litig.*,
    432 F. Supp. 3d 902 (D. Minn. 2020) ........................................................ 8, 11, 13, 14

*Robinson v. GEICO Gen. Ins. Co.*,
    447 F.3d 1096 (8th Cir. 2006) ........................................................................ 6

*Schmidt v. City of Bella Villa*,
    557 F.3d 564 (8th Cir.2009) .......................................................................... 6

*Speed RMG Partners, LLC v. Arctic Cat Inc.*,
    2024 WL 4543340 (D. Minn. Oct. 17, 2024) ............................................... 6

*United States v. Holmes*,
    751 F.3d 846 (8th Cir. 2014) ....................................................................... 11

*Zwicki v. Superior Mach. Co. of S.C.*,
    2002 WL 34365098 (D. Minn. July 31, 2002) ........................................... 10

## Other Authorities

Federal Rule of Evidence 702 ..................................................................... 5, 6, 16

**INTRODUCTION**

Defendants provide no valid basis to exclude Smartmatic's election administration expert, Tammy Patrick. Ms. Patrick offers three opinions in this matter, which are well-grounded in her expertise and her review of the record and publicly available information: 1) the 2020 Election was legitimate and it is implausible that Smartmatic played a role rigging the 2020 Election; 2) the Voting Solutions for All People ("VSAP") initiative in Los Angeles County and the technology Smartmatic created were a breakthrough in voting technology and positioned Smartmatic to be successful in the market; and 3) the Defendants' disinformation campaign likely harmed Smartmatic's ability to compete in the voting technology market at home and abroad.

Defendants fling a variety of attacks in Ms. Patrick's direction, but they all miss the mark: Ms. Patrick is qualified to offer these opinions; her opinions are based on sound methodology and sufficient facts; and they will assist the jury in their fact-finding role. The motion to exclude Ms. Patrick's testimony should be denied.

**BACKGROUND**

Permeating Defendants' motion are specious assertions of what Ms. Patrick *is not*—that is, Defendants identify a litany of functions where they contend Ms. Patrick does not have expertise, and rely on that assessment to undermine her opinions. As a few examples: "Ms. Patrick is not an elections auditor," (Dkt. 423, Def's. Mem. in Support of Motion to Exclude Patrick at 2); "She is not a computer programmer," (*id.* at 3); "she is not an economist," (*id.*) Plaintiffs will address such assertions below, but it is important to

emphasize reality: Ms. Patrick has *deep experience and expertise* in election administration and related fields, which provide the foundation for her opinions.

Ms. Patrick has worked in the election industry for over twenty years and, in her various roles, has become an expert in many facets of elections. Starting in 2003, Ms. Patrick became the Federal Compliance Officer for Maricopa County, Arizona. (Dkt. 424.1, Patrick Report, at 3.) Ms. Patrick's work in this role included participation in the National Institute of Standards and Technology's creation of common data formats and interoperability, as well as a working group on a risk assessment of online voting and numerous meetings of the Technical Guidelines Advisory Committee informing the content of the Voluntary Voting Systems Guidelines. (*Id*.) The Voluntary Voting System Guidelines are a set of specifications and requirements against which voting systems can be tested to determine if they meet required standards. Some factors examined under these tests include basic functionality, accessibility, and security capabilities. (*See* Dkt. 424.1, at 86, fn 462.)

In 2013, Ms. Patrick was appointed a Commissioner on the Presidential Commission on Election Administration ("PCEA") by then-President Barack Obama. (*Id*. at 4.) The PCEA was a bipartisan effort, and it spent six months holding hearings around the country to investigate specific items laid out in the Executive Order establishing the Commission, including voter assistance, language access, and the certification of voting systems. (*Id*.) During public hearings, stakeholder meetings, research, and in reports submitted to the Commission as testimony, Ms. Patrick learned the landscape of election administration across the county. (*Id*.) Specifically, Ms. Patrick participated in a two-day

hearing regarding the state of voting system guidelines, certification, and the modernity of equipment being offered to election officials for purchase. (*Id.*) The PCEA produced a report, "The American Voting Experience," in January of 2014. (*Id.*) The report was well received by others in the election industry, including election officials, legislators, and voter advocates, and is still used authoritatively today. (*Id.*)

In 2014, Ms. Patrick began working at the Bipartisan Policy Center. (*Id.*) In this role, Ms. Patrick continued to work closely with election technology through efforts with the United States Election Assistance Commission—specifically, working on electronic voting machine testing and standards. (*Id.*; Dkt. 424.2, Patrick Deposition Transcript, at 23:25-20.) From 2017 to 2022, Ms. Patrick was the Senior Advisor to the Election Team at the Democracy Fund, a nonpartisan foundation working towards a more equitable election system. (*Id.*) In that role, Ms. Patrick continued her work in election administration.

Additionally, in 2017, Ms. Patrick began teaching at the University of Minnesota's Humphrey School of Public Policy on the topic of data use in election administration. (*Id.*) Ms. Patrick has also lectured at Harvard, American University, MIT, Arizona State University, and the University of Pennsylvania on almost every facet of election administration, including common data formats for electronic voting, preparedness for upcoming elections, and the importance of communication and media relationships. (*Id.* at 4-5.)

In December 2022, Ms. Patrick became the Chief Executive Officer for Programs of the National Association of Election Officials, known as Election Center. (*Id.* at 5.)

3

Amongst her various responsibilities, Ms. Patrick governs Election Center's standing committees which include Security, Postal, and Legislative. (*Id*.) Ms. Patrick also focuses on relationship management with a number of organizations and agencies that are integral to elections in the United States, including: the Department of Homeland Security's Cybersecurity Infrastructure Security Agency ("CISA"), Department of Justice, Federal Voting Assistance Program, United States Postal Inspection Service, Federal Bureau of Investigations, United States Postal Service, Election Assistance Commission, the White House, House of Representatives, and the United States Senate. (*Id*.) At the state level, she serves as a liaison for election professionals to the Council of State Governments and National Conference of State Legislators and represents local officials to the National Association of Secretaries of State and the National Association of State Election Directors. (*Id*.)

Ms. Patrick has also testified as an election expert in the United States Senate and House of Representatives, as well as numerous house legislatures on various topics, including professionalization of the field, online voter registration, election security, election audits, line management, and vote centers. (*Id*.) And Ms. Patrick sits on a number of boards, including the board for MIT's Election Data and Science Lab. (*Id.*, Curriculum Vitae, at 2.)

Finally, Ms. Patrick also has expertise in media reporting as it relates to elections. Over the past two decades, Ms. Patrick has served as a source and fact-checker for many of the largest newspapers and publications, both domestically and internationally. (*Id*. at 5.) Ms. Patrick presents at conferences across the country regarding reporting on elections.

4

(*Id.*, Curriculum Vitae, at 5-6.) For example, Ms. Patrick gave a presentation titled "Accurate and Effective Elections Communications," at the National Conference of State Legislatures' Strong Elections, Strong State Workshop, and at the Poynter Disinformation Workshop, she gave the presentation, "Accuracy in Election Information: Focus on Florida, Georgia, & North Carolina." (*Id.*)

## LEGAL STANDARD

The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). This is a flexible, case-specific inquiry: the Court must decide whether a particular expert has sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case. *Id.* at 723. Generally, *Daubert* "calls for the liberal admission of expert testimony. And as long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Acad. Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 791 (8th Cir. 2024) (quoting *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 561 (8th Cir. 2014)).

As the Eighth Circuit recently explained, the post-*Daubert* amendments to Rule 702 "relaxed the requirements for expert witnesses, though the Supreme Court has held that courts still have a gatekeeping role to assure that evidence admitted is both relevant and reliable." *Id.* "In short, expert testimony is to be evaluated for relevance, qualifications,

5

and reliability." *Speed RMG Partners, LLC v. Arctic Cat Inc.*, 2024 WL 4543340, at *13 (D. Minn. Oct. 17, 2024). "[C]ourts need not apply" the *Daubert* factors strictly "when evaluating non-scientific expert testimony." *Id*. "For non-scientific experts, experience itself can be a sufficient basis for expert testimony." *Id*.

## ARGUMENT

## I.   Ms. Patrick's Opinions are Grounded in Decades of Experience in the Election Industry.

Under Rule 702, the Court must ensure that a proffered expert is qualified by her knowledge, skill, experience, training, or education before that person may testify as an expert. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). Rule 702 requires only that an expert's "experience ... bear a close relationship to [his] opinion"; it does not require an airtight fit. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir.2009). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006).

In their motion, Defendants provide a laundry list of areas in which they claim Ms. Patrick is not an expert—but this assessment is both incorrect and misleading. *First*, Ms. Patrick *is indeed an expert* in many of these areas through her more than twenty years of experience in the election industry. These areas include election administration, election security and cybersecurity, and election audits. (*See* Dkt. 424.1 at 3; Dkt. 424.2 at 18:3-25.) *Second*, Ms. Patrick *does not claim* to be an expert in some areas listed by Defendants, but such expertise is not necessary to render her opinions.

### A.    Ms. Patrick Has Expertise in Election Administration, Including Procurement, Cybersecurity, and Audits.

*First*, Defendants claim that Ms. Patrick is not an expert in cybersecurity, but this claim is wrong. To be sure, "cybersecurity" is a broad term, and Patrick does not claim to be a general cybersecurity expert. However, Ms. Patrick has expertise in cybersecurity *as it relates to elections*. Ms. Patrick has assisted the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency ("CISA") with issues related to cybersecurity for elections. (*See* Dkt. 424.1 at 5; Curriculum Vitae, at 2, 5.) Ms. Patrick is also a member of the Election Center Security Task Force and the Advisory Board for the MIT Election Data and Science Lab. (*Id*.) On numerous occasions, Ms. Patrick has sat in the Department of Homeland Security Situation Room on federal election days to monitor cybersecurity. (Dkt. 424.2, Patrick Deposition, at 97:15-17.) Ms. Patrick has also made presentations at the Department of Homeland Security on election security. (Dkt. 424.1, Curriculum Vitae, at 5.) Further, Ms. Patrick governs Election Center's committee on security, and she has testified in the United States House and Senate as an expert on election security. (Dkt. 424.1, at 4-5; Curriculum Vitae, at 2.)

*Second*, despite Defendants' assertions, Ms. Patrick is an expert in government procurement with respect to election technology. (Dkt. 424.2 at 20:18-20.) She participated in a variety of election technology purchases when she worked in Maricopa County. (*Id*. at 17:14-16.) She has also been a part of working groups with the Elections Assistance Commission, and these groups pulled together various requests for proposals from around the country to assist with procurement in other jurisdictions. (*Id*. at 17:16-18:2.) Ms. Patrick

has also been invited by several states to provide an expert assessment as to how those states could enhance their services with new technology. (Dkt. 424.1, Curriculum Vitae, at 3.) For example, she was asked by election technology manufacturers and legislators in South Carolina to work with them on the purchase of a new statewide election system. (*Id.* at 18:3-12.) And when Ms. Patrick served on President Obama's PCEA, the Committee assessed the purchasing of election technology nationwide. (*Id.* at 18:13-25.)

*Third*, Ms. Patrick is an expert in election audits. Defendants claim that Ms. Patrick has never been trained to conduct an audit and does not have the experience necessary for her first opinion. (Dkt. 423 at 8.) These assertions are baseless. Ms. Patrick oversaw audits in her role in Maricopa County and testified in Congress in 2007 regarding audits. (Dkt. 424.2 at 32:7-22; Dkt. 424.1, Curriculum Vitae, at 3.) Ms. Patrick has also testified regarding audits in the Maryland state legislature. (Dkt. 424.1, Curriculum Vitae, at 3.) Ms. Patrick published a series on post-election audits as part of her work at the Democracy Fund. (*Id.* at 4.)

Given Ms. Patrick's deep experience and expertise in the election industry, there is no basis to exclude her opinions on a *Daubert* challenge. *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 923 (D. Minn. 2020) (declining to exclude opinion of plaintiff's expert on basis of expertise where plaintiff showed that expert had sufficient experience, training and knowledge in the banking and related industries, and his lack of particularized experience in a specific aspect of that field, went to the weight and not the admissibility of his testimony).

8

**B.      Each of Ms. Patrick's Opinions Fall Directly Within Her Areas of Election Expertise.**

*First*, Defendants assert that Ms. Patrick cannot offer her opinion that the 2020 Election was secure because she does not have expertise in the "technical reliability of voting systems" and "software security." (Dkt. 423 at 7.) But this assertion mischaracterizes the basis for Ms. Patrick's opinion. To reach her conclusion that the 2020 Election was rigged, Ms. Patrick analyzed the following: (a) publicly available information about which voting machines were used in certain jurisdictions, (b) post-election audits, election results and vote counts, (c) election preparedness and security measures in place in 2020, (d) voting machine testing and certification information, (e) election laws, (f) post-election reports, (g) court cases filed after the 2020 Election, and (h) statements made by public officials and government organizations. (*See* Dkt. 424.1 at 6-74; Dkt. 424.2 at 99:2-16.) Ms. Patrick also looked at each state that had highly contested results in the 2020 Election and applied a series of factors[1] to determine if the election was secure in each state. (Dkt. 424.1 at 28.) These are types of information that an election administrator (such as Ms. Patrick) would consider in the regular course of her work, and she regularly uses the same information to assess the validity of elections. (Dkt. 424.2 at 99:2-14; Dkt. 424.1

---

[1] To assess the security and results of the 2020 Election in the highly contested states (Arizona, Georgia, Michigan, Nevada, North Carolina, Pennsylvania, and Wisconsin) Ms. Patrick examined the following factors for each state: 1) voting technology manufacturer; 2) participation in table top exercises; 3) voting technology underwent and passed logic and accuracy testing; 4) public observation of the election was allowed; 5) the use of Albert sensors; 6) post-election audit was conducted and verified the results; 6) state election law requires bi-partisan participation in the election process; and 7) courts upheld the results of the election. (Dkt. 424.1 at 28-29.)

at 13-14, 28-29.) Defendants' criticism relies entirely on their assessment of Ms. Patrick's technical knowledge of computers—they do not, and cannot, challenge Ms. Patrick's ability to reach this opinion based on her actual expertise. *Zwicki v. Superior Mach. Co. of S.C.*, 2002 WL 34365098, at *3 (D. Minn. July 31, 2002) (finding plaintiffs established "the relevant nexus between these expert's qualifications and their proposed testimony and the subject matter of this suit.").

*Second*, Defendants assert that Ms. Patrick is not an economist and can therefore not assess the "economic impacts of disinformation on market share." (Dkt. 423 at 7.) Ms. Patrick does not claim to be an economist, nor is she offering an opinion on the economic impact of Defendants' disinformation campaign. Ms. Patrick offers the opinion that election officials who procure election technology would consider the statements made by Defendants, and that Smartmatic's position in the marketplace was harmed by Defendants' statements. (*See* Dkt. 424.1, Opinions 2 and 3.) Ms. Patrick's experience in procurement, along with her extensive knowledge of the landscape of the election market, the needs of the marketplace, and the technology currently available in the marketplace, all give her the necessary background to support her opinions. Ms. Patrick does not attempt to quantify that harm or perform an economic analysis. It is irrelevant whether Ms. Patrick is an expert in economics. *Am. Auto. Ins.*, 783 F.3d at 726 (finding that the expert was not a metallurgist or lighting expert was not relevant because "his testimony only touched upon those fields as relevant to the subject of fire causation, his area of expertise.").

*Third*, Defendants state that Ms. Patrick lacks experience in "statistical modeling of reputation harm." (Dkt. 423 at 7.) Ms. Patrick's opinions do not contain any statistical

modeling, nor does Ms. Patrick's opinion attempt to quantify damage to Smartmatic's reputation. Again, Ms. Patrick's opinions are based on the fact that Smartmatic provided groundbreaking technology in the election marketplace, and that disinformation would have a negative impact on Smartmatic's ability to compete for business among election officials. (*See* Dkt. 424.1 at Opinions 2 and 3.) Ms. Patrick's expertise and background are more than sufficient to provide these opinions. *See J & M Distrib., Inc. v. Hearth & Home Techs., Inc.*, 2015 WL 137616, at \*4 (D. Minn. Jan. 9, 2015) (finding expert was qualified where decades of experience in the relevant field of valuation demonstrated his expertise, despite alleged lack of experience in the specific field of valuing closely-held businesses); *see also In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d at 923 (*supra* at 8).

## II.    Ms. Patrick's Opinions are Based on Reliable Reasoning and Methodology.

Expert testimony must rest on reliable principles and methods, but the "relevant reliability concerns may focus upon personal knowledge or experience" rather than scientific foundations. *United States v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014). If a party contends that an expert "could have used different methods or that his factual basis in forming those marketing conclusions was insufficient, they may attack those insufficiencies on cross-examination. At the *Daubert* stage, however, doubts regarding the usefulness of an expert's testimony [should be resolved by courts] in favor of admissibility." *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1077 (D. Minn. 2015), as amended (Apr. 15, 2015).

**A.    Patrick Used Reasoning and Methodology Similar to Others in the Election Industry to Evaluate the 2020 Election Result and Her Opinions are Based on Her Experience and Thorough Research.**

Defendants attacked Ms. Patrick's first opinion that the 2020 Election was secure on the basis that Ms. Patrick did not conduct any "firsthand investigations." (Dkt. 423 at 8-11.) Conducting a "firsthand investigation" is not a requirement under the Federal Rules of Evidence, where "an expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation." *Hartzell Mfg., Inc. v. Am. Chem. Techs., Inc.*, 899 F. Supp. 405, 409 (D. Minn. 1995); *Neuharth v. NACCO Materials Handling Grp., Inc.*, 2002 WL 34700601, at *4 (D.S.D. Dec. 17, 2002) ("[expert] need not base his opinion on first-hand knowledge or observation so long as it is grounded in his knowledge and expertise."). Ms. Patrick's opinion is based on publicly available information regarding the 2020 Election and insight she has gathered from election officials and government agencies across the country. (Dkt. 424.1 at 74-75.) Election officials across the county confirmed that the 2020 Election was secure, that voting machines were not used to rig the election, and that the results of audits were accurate. (*See* Dkt. 424.2 at 99: 2-5; Dkt. 424.1 at 27, 72-74.)

Defendants also claim it was improper for Ms. Patrick to rely on "second hand" information since the Federal Rules of Evidence only "permit[] experts to rely on hearsay so long as that hearsay is of the kind normally employed by experts in the field." (Dkt. 423 at 10.) But other experts in election administration *do rely* on the same types of information that Ms. Patrick relied upon. Ms. Patrick evaluated the same factors that CISA used to assess the security of the 2020 Election, including court documents, information directly

from election officials, and audit results. (Dkt. 424.2 at 99:2-14; Dkt. 424.1 at 13-14.) In addition, Ms. Patrick testified that in the wake of the 2020 Election, in connection with her position at Election Center, she spoke with hundreds of election officials about the security of the 2020 Election, including "what they did to secure the election and how they know it was a safe, secure, and legitimate outcome of the races in their jurisdiction." (Dkt. 424.2 at 121:9-15.) Thus, Defendants have failed to demonstrate why Ms. Patrick's approach of conducting research, speaking with election officials, and analyzing reports and information—all grounded in her experience—was unreliable. *Neuharth v. NACCO Materials Handling Grp.*, Inc., 2002 WL 34700601, at *4 (D.S.D. Dec. 17, 2002) (declining to exclude expert that reviewed authoritative sources, conducted thorough research, and evaluated reports based on his education and experience, but did not conduct a first-hand observation); *Gaudreault v. Elite Line Servs*., LLC, 22 F. Supp. 3d 966, 972 (D. Minn. 2014) (declining to exclude an expert where the expert's methods were based on his experience in the industry and the standard practices for conducting analyses).

Defendants' use of a report issued by Philip Stark, an expert in the *Curling v. Raffensperger* case,[2] does not render Ms. Patrick's opinions inadmissible. (Dkt. 423 at 9-10.) Defendants assert that Mr. Stark conducted a first-hand investigation into vote irregularities in Fulton County, Georgia. (*Id*.) This is irrelevant here. Mr. Stark is not an expert for Defendants in this matter nor is his report part of the record in this matter.[3] While

---

[2] *Curling v. Raffensperger*, 493 F.Supp.3d 1294 (N.D. Ga. 2020).

[3] This Court has found that relying on experts from other cases is improper. In the case, *In re ResCap Liquidating Trust Litigation*, the court barred the consideration of opinions from a "non-present" "non-testifying" expert. 432 F. Supp. 3d at 932. The Court also noted that

Defendants state that Mr. Stark's report "shows what an election auditor's background should be" and shows what proper methodology looks like (Dkt. 423 at 10), this is a false equivalency. The assignments for the reports were different. Mr. Stark's report looked at whether Georgia's current "voting system and the protocols for its use…provides reasonable assurances that voters' selections will be counted and counted as cast." (Dkt. 424.5.) In contrast, Ms. Patrick's report looked at whether the 2020 Election was secure (e.g., whether there was any outcome-determinative fraud). (*See* Dkt. 424.1, Opinion One.) These are two entirely separate questions and were done in the context of two entirely different lawsuits. Their methodology cannot be compared. Further, when asked about Mr. Stark's report, Ms. Patrick disagreed with the conclusion Mr. Stark reached—and also testified that it does not cause her to doubt the legitimacy of the Georgia election. (Dkt. 424.2, 129:1-130:7.)

Defendants also assert in a single paragraph, and without citation, that Ms. Patrick's opinions are not based on "peer-reviewed methods." (Dkt. 423 at 11.) *First*, it should be noted Defendants did not ask Ms. Patrick a single question at her deposition about her methodology or whether her methods are peer-reviewed beyond asking if Ms. Patrick conducted any first-hand investigations. (*See* Dkt. 424.2.) *Second,* as discussed above, Ms. Patrick employed the same approach to assessing the security of elections that is used by CISA. (*See supra* Section II.A.) Defendants cite to no authority for a requirement that these

_____

it was not appropriate for to state "in a very general manner" what an expert in another case said. *Id*. In line with *In re Liquidating Trust Litigation*, this Court should not allow Defendants to use the report of an expert not present in this case to corroborate their views of Ms. Patrick's testimony.

methods be subject to "peer review." *Am. Dairy Queen Corp. v. W.B. Mason Co.*, 543 F. Supp. 3d 695, 723 (D. Minn. 2021) (rejecting argument that expert's survey design must have been "published or subject to peer review" where it was based on accepted methods).

### B.    Patrick's Considered External Factors Related to Smartmatic.

Defendants argue that Ms. Patrick did not take into account other factors in opining on the harm from Defendants' defamation, including defamation by others. (Dkt. 423 at 11-12.) In fact, Ms. Patrick explained why she did (or did not) consider certain factors identified by Defendants at her deposition—Defendants just disagree with how she considered them. (*See* Dkt. 424.2 at 41:9-2; 181:25-184:22 (discussing consideration of Smartmatic's history).)

Nonetheless, whether or not Ms. Patrick considered external factors that Defendants contend are relevant to her analysis is not a basis to exclude Ms. Patrick's opinions. *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 823 (D. Minn. 2011) (allowing expert testimony where the alleged effect of certain un-controlled variables "goes to the factual basis of the opinion," not its admissibility). The appropriate time for Defendants to raise these challenges is on cross-examination at trial. *3M Innovative Properties Co. v. GDC, Inc.*, 2016 WL 3976589, at *6 (D. Minn. July 22, 2016) ("[t]he Court concludes that the competing testimony regarding the introduction of variables will be a topic for cross-examination and is not an appropriate basis for exclusion.").

### III.    Ms. Patrick's Opinions are Relevant to Falsity and Damages.

The Court must determine whether an expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue. Fed. R. Evid. 702. Under *Daubert*, an expert's opinion must have a "sufficient nexus" to the case in order to be considered relevant. *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 691 (8th Cir. 2001). Here, in a two-sentence section of their brief (Dkt. 423, Section III.C, at 12), Defendants wrongly claim that Ms. Patrick's opinions are not relevant and will not assist the trier of fact.

Ms. Patrick's first opinion, whether the 2020 Election was secure, goes directly to whether statements made by the Defendants were false, a key element of defamation. Ms. Patrick's second opinion, regarding Smartmatic's position in the marketplace following the 2020 Election, and her third opinion, regarding the impact of Defendants' defamatory statements in the election marketplace, directly relates to the harm that Smartmatic suffered from Defendants' statements. *Nutreance LLC v. Primark*, LLC, 2020 WL 3892995, at *13 (E.D. Mo. July 10, 2020) (assessing defamatory statements' impact on plaintiff's market share to determine harm). Ms. Patrick's testimony will assist the fact finder in understanding the industry and context in which to evaluate Defendants' defamatory conduct.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: December 13, 2024                Respectfully submitted,

                                        */s/ Timothy M. Frey*

                                        Christopher K. Larus
                                        Minnesota Bar No. 0226828
                                        CLarus@robinskaplan.com
                                        William E. Manske

Minnesota Bar No. 0392348
WManske@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice)*
EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice)*
NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*

17