# Exhibit 241

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | |
| *Plaintiffs/Counter-Defendants*, | Case No. 21-cv-445-CJN |
| vs. | |
| MY PILLOW, INC., *Defendant/Counter-Claimant*. | |
| MICHAEL J. LINDELL, *Defendant/Counter-Claimant/Third-Party Plaintiff*, | |
| vs. | |
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., SGO CORPORATION LIMITED, and HAMILTON PLACE STRATEGIES, LLC, | |
| *Third-Party Defendants*. | |

## SMARTMATIC DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

OVERVIEW OF ARGUMENTS ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

PROCEDURAL HISTORY .................................................................................................. 9

LEGAL STANDARD ......................................................................................................... 11

ARGUMENT ...................................................................................................................... 12

I.      The Complaint fails to state a Support and Advocacy claim. ................................. 12

    A.    Mr. Lindell's invocation of the Support and Advocacy Clause is unprecedented. ............... 12

    B.    Mr. Lindell fails to allege a conspiracy between Smartmatic and Dominion. ....................... 13

    C.    Mr. Lindell fails to allege facts showing use of "force, intimidation, or threat" against him. ................................................................................................................................. 16

    D.    Mr. Lindell fails to allege facts showing a violation of an underlying federal right. ............ 17

        1.  Section 1985(3) requires an underlying violation of federal law to give rise to a conspiracy claim. ......................................................................................................... 17

        2.  Mr. Lindell's Section 1985(3) claim fails because a First Amendment violation requires state action, and he alleges none here. ......................................................... 18

II.    The Complaint fails to state a civil conspiracy claim. ........................................... 20

    A.    Mr. Lindell's civil conspiracy claim fails because the "conspiracy" is non-actionable. ....... 20

    B.    Mr. Lindell's civil conspiracy claim fails because he cannot allege a predicate claim. ........ 22

    C.    Mr. Lindell's civil conspiracy claim fails because the Complaint insufficiently alleges a conspiracy between Smartmatic and Dominion. ................................................................. 23

III.   The Complaint fails to state a Section 1983 claim. ............................................... 24

IV.   The Complaint fails to state a RICO claim. .......................................................... 26

    A.    Mr. Lindell fails to allege any racketeering activity. ............................................................ 27

        1.  Mr. Lindell fails to establish extortion. ......................................................................... 28

i

2. Mr. Lindell fails to establish witness tampering or intimidation. .....................................30

3. Mr. Lindell fails to establish mail fraud. ...........................................................................32

B. Mr. Lindell fails to allege facts showing that Smartmatic "conducted or participated" in the alleged enterprise. .................................................................................................................34

C. Mr. Lindell fails to allege a RICO enterprise. ....................................................................35

1. The "common purpose" requirement of an association-in-fact enterprise is not met. .......36

2. The relationship requirement of an association-in-fact enterprise is not met. ..................39

3. The longevity requirement of an association-in-fact enterprise is not met. .....................43

D. Mr. Lindell fails to allege that Smartmatic and Dominion engaged in a RICO conspiracy. ..44

CONCLUSION .......................................................................................................................45

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abbott Labs. v. Adelphia Supply USA*,
No. 15-CV-5826, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ...................................................43

*Alliance Bank v. Dykes*,
No. A12-0455, 2012 WL 6734457 (Minn. Ct. App. Dec. 31, 2012) ......................................23

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ..................................................................................................................26

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
387 F. Supp. 3d 71 (D.D.C. 2019) ..........................................................................................34

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
406 F. Supp. 3d 72 (D.D.C. 2019) ..........................................................................................27

*Anderson v. USAir, Inc.*,
818 F.2d 49 (D.C. Cir. 1987) ..................................................................................................21

*Ardon v. Washington Humane Soc'y*,
No. CIV. A.96-CV1902RMU, 1997 WL 527336 (D.D.C. Aug. 18, 1997) ............................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................12, 25, 38, 39

*Atchison v. U.S. Dist. Cts.*,
190 F. Supp. 3d 78 (D.D.C. 2016) ......................................................................................5, 12

*Bates v. Nw. Hum. Servs., Inc.*,
466 F. Supp. 2d 69 (D.D.C. 2006) .............................................................................33, 34, 35

*Bates v. Nw. Human Servs., Inc.*,
583 F. Supp. 2d 138 (D.D.C. 2008) .........................................................................................26

*Bois v. Marsh*,
801 F.2d 462 (D.C. Cir. 1986) ..........................................................................................12, 13

*Boyle v. United States*,
556 U.S. 938 (2009) ..........................................................................................36, 40, 44

*Brady v. Livingood*,
360 F.Supp.2d 94 (D.D.C. 2004) .............................................................................................16

ii

*Brink v. Cont'l Ins. Co.*,
787 F.3d 1120 (D.C. Cir. 2015) ......................................................................27

*Brown v. Hill*,
174 F. Supp. 3d 66 (D.D.C. 2016) ..................................................................21

*Browning v. Flexsteel Indus., Inc.*,
955 F. Supp. 2d 900 (N.D. Ind. 2013) ......................................................44, 45

*Burnett v. Sharma*,
511 F. Supp. 2d 136 (D.D.C. 2007) ......................................................14, 15, 24

*Bush v. Butler*,
521 F.Supp.2d 63 (D.D.C. 2007) ..............................................................15, 16

*Carpenters v. Scott*,
463 U.S. 825 (1983).......................................................................................17

*Chow v. Johnson*,
No. C-07-4478 CW, 2008 WL 11396738 (N.D. Cal. Feb. 5, 2008)......................33

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ..........................................................36, 37, 38, 39

*Cockrum v. Donald J. Trump for President, Inc.*,
365 F. Supp. 3d 652 (E.D. Va. 2019) .................................................................12

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
No. 11 Civ. 7801, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012).........................41

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ..............................................................29

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018).............................................................................38

*D.A.B. v. Brown*,
570 N.W.2d 168 (Minn. Ct. App. 1997) ...........................................................23

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
941 F.2d 1220 (D.C. Cir. 1991) .......................................................................27

*De La Fuente v. DNC Servs. Corp.*,
No. CV 18-cv-336, 2019 WL 1778948 (D.D.C. Apr. 23, 2019) ................14, 15, 16

*Deck v. Engineered Laminates*,
349 F.3d 1253 (10th Cir. 2003) .......................................................................28

*del Canto v. ITT Sheraton Corp.*,
865 F. Supp. 927 (D.D.C. 1994) ......................................................................................23

*deLeon v. Wilkie*,
No. CV 19-1250 (JEB), 2020 WL 210089 (D.D.C. Jan. 14, 2020).........................................22

*\*Dodd v. Infinity Travel*,
90 F. Supp. 2d 115 (D.D.C. 2000) .....................................................................................41

*Doe v. State of Israel*,
400 F. Supp. 2d 86 (D.D.C. 2005) ................................................................................40, 41

*Dominion, Inc., et al. v. My Pillow Inc., et al.*,
Case No. 1:21-cv-445, ECF No. 54 (D.D.C. Aug. 11, 2021) ..................................................3

*Dunbar v. Wells Fargo Bank, N.A.*,
853 F. Supp. 2d 839 (D. Minn. 2012), *as amended* (Apr. 12, 2012), *aff'd*, 709 F.3d 1254 (8th
Cir. 2013)...............................................................................................................................24

*\*E. Sav. Bank, FSB v. Papageorge*,
31 F. Supp. 3d 1 (D.D.C. 2014) (Howell, J.) ................................................................ *passim*

*\*Elemary v. Philipp Holzmann A.G.*,
533 F. Supp. 2d 116 (D.D.C. 2008) .............................................................................34, 35

*Elkins v. D.C.*,
690 F.3d 554 (D.C. Cir. 2012) .........................................................................................25

*Elsevier v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010)..............................................................................43

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
749 A.2d 724 (D.C. 2000) ...........................................................................................22, 23

*Farah v. Esquire Magazine*,
736 F.3d 528 (D.C. Cir. 2017) ..........................................................................................5

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
20 F. Supp. 3d 451 (S.D.N.Y. 2014)...........................................................................28, 29

*Fiorani v. Chrysler Grp., LLC*,
No. 113CV346AJTIDD, 2014 WL 12527186 (E.D. Va. Jan. 30, 2014)...............................32

*\*Freedom Watch, Inc. v. Google, Inc.*,
368 F. Supp. 3d 30 (D.D.C. 2019) ...............................................................................19, 20

*G-I Holdings, Inc. v. Baron & Budd*,
179 F. Supp. 2d 233 (S.D.N.Y. 2001)................................................................................31

*Gentile v. Brunswick Cnty. Sheriff's Dep't*,
2014 WL 1331159 (E.D.N.C. Apr. 2, 2014)..................................................................30

*Gill v. Farm Bureau Life Ins. Co. of Mo.*,
906 F.2d 1265 (8th Cir. 1990) .........................................................................16, 17

*Goren v. New Vision Int'l, Inc.*,
156 F.3d 721 (7th Cir. 1998) ...................................................................................34

*Grant Thornton, LLP v. Off. of Comptroller of the Currency*,
514 F.3d 1328 (D.C. Cir. 2008)................................................................................35

*Graves v. United States*,
961 F. Supp. 314 (D.D.C. 1997)..............................................................................14

*Great Am. Fed. Savings & Loan Ass'n v. Novotny*,
442 U.S. 366 (1979)..................................................................................................18

*Griffin v. Breckenridge*,
403 U.S. 88 (1971)............................................................................................14, 17

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009)......................................................................35

*Harding v. Ohio Cas. Ins. Co. of Hamilton, Ohio*,
230 Minn. 327 (1950) ..............................................................................................23

*Harpole Architects, P.C. v. Barlow*,
668 F. Supp. 2d 68 (D.D.C. 2009) .....................................................................34, 35

*I.S. Joseph Co. v. J. Lauritzen A/S*,
751 F.2d 265 (8th Cir. 1984) ...................................................................................29

*J.T. v. de Blasio*,
500 F. Supp. 3d 137 (S.D.N.Y. 2020)................................................................40, 42

*Johnson v. United States*,
590 F. Supp. 2d 101 (D.D.C. 2008) .........................................................................25

*JSC Transmashholding v. Miller*,
70 F. Supp. 3d 516 (D.D.C. 2014) ...........................................................................12

*Karim-Panahi v. 4000 Mass. Apartments*,
302 F. Supp. 3d 330 (D.D.C. 2018) .........................................................................24

*Kurd v. Republic of Turkey*,
No. 18-cv-1117, 2019 WL 1243731 (D.D.C. Mar. 18, 2019) ...........................14, 15

*Lee v. Bradford*,
   No. CIVA 05-01450 HHK, 2006 WL 2520614 (D.D.C. Aug. 30, 2006)...............................24

*Liu v. Hopkins Cnty.*,
   No. 14-cv-1762, 2015 WL 4978682 (D.D.C. Aug. 20, 2015) ..................................38

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019)...................................................................26

*McCreary v. Heath*,
   No. 04-cv-623, 2005 WL 3276257 (D.D.C. Sept. 26, 2005)...........................14, 15

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ....................................41, 42, 43

*Nader v. Democratic Nat. Comm.*,
   567 F.3d 692 (D.C. Cir. 2009)........................................................23

*Nader v. McAuliffe*,
   593 F. Supp. 2d 95 (D.D.C. 2009) ...................................................26

*Nat'l Conservative Pol. Action Comm. (NCPAC) v. Kennedy*,
   563 F. Supp. 622 (D.D.C. 1983), *aff'd*, 729 F.2d 863 (D.C. Cir. 1984)...............16, 17, 18, 22

*NCAA v. Tarkanian*,
   488 U.S. 179 (1988)...................................................................20

*Ning Ye v. Holder*,
   644 F. Supp. 2d 112 (D.D.C. 2009) .................................................23

*Ocasio v. United States*,
   578 U.S. 282, 136 S.Ct. 1423 (2016)................................................30

*Occhino v. Lannon*,
   150 F.R.D. 613 (D. Minn. 1993), *aff'd*, 19 F.3d 23 (8th Cir. 1994).......................24

*Propst v. Ass'n of Flight Attendants*,
   546 F. Supp. 2d 14 (E.D.N.Y. 2008), *aff'd*, 330 F. App'x 304 (2d Cir. 2009).................40, 41

*Quick v. EDUCAP, Inc.*,
   318 F. Supp. 3d 121 (D.D.C. 2018) ................................................40, 44

*Raney v. Allstate Ins. Co.*,
   370 F.3d 1086 (11th Cir. 2004) .....................................................28

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)...............................................................34, 35

*Robertson v. Cartinhour*,
  867 F. Supp. 2d 37 (D.D.C. 2012) ........................................................32

*S. Snow Mfg. Co. v. Snowizard Holdings, Inc.*,
  912 F. Supp. 2d 404 (E.D. La. 2012) ...................................................29

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003) ..............................................................................29

*Sekhar v. United States*,
  570 U.S. 729 (2013) ..............................................................................30

*Shahin v. Darling*,
  606 F. Supp. 2d 525 (D. Del. 2009), *aff'd*, 350 F. App'x 605 (3d Cir. 2009) ........................32

*Sheikh v. Wheeler*,
  790 Fed. Appx. 793 (7th Cir. 2019) .............................................37, 38, 40

*Singh v. NYCTL 2009-A Trust*,
  No. 14 Civ. 2558, 2016 WL 3962009 (S.D.N.Y. July 20, 2016) ............................43

*Stankevich v. Kaplan*,
  156 F. Supp. 3d 86 (D.D.C. 2016) ................................................36, 37

*The Pen v. DC Radio Assets*,
  LLC, 181 F. Supp. 3d 49 (D.D.C. 2014) ...............................19, 20, 21

*Turner v. N.J. State Police*,
  No. CV085163KMJBC, 2017 WL 1190917 (D.N.J. Mar. 29, 2017) ....................32

*U.S. v. Pendergraft*,
  297 F.3d 1198 (11th Cir. 2002) ...........................................................28

*United States v. Eiland*,
  738 F.3d 338 (D.C. Cir. 2013) ..............................................................36

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..................................................30

*US Dominion, Inc., et al. v. My Pillow, Inc., et al.*,
  Case No. 21-cv-445 ..............................................................................10

*Vemco, Inc. v. Camardella*,
  23 F.3d 129 (6th Cir. 1994) ..................................................................29

*Wiggins v. Philip Morris, Inc.*,
  853 F. Supp. 458 (D.D.C. 1994) ..........................................................18

*Williams v. United States*,
  396 F.3d 412 (D.C. Cir. 2005) ..................................................................26

*\*Woytowicz v. George Washington Univ.*,
  327 F. Supp. 3d 105 (D.D.C. 2018) ..........................................................21

*In re Yelverton*,
  2014 WL 7141938 (Bankr. D.D.C. Dec. 12, 2014) ....................................37

*Zamora v. Fit Int'l Grp. Corp.*,
  834 F. App'x 622 (2d Cir. 2020) .........................................................37, 38

**STATUTES**

18 U.S.C. § 1512 ...........................................................................................31, 32

18 U.S.C. § 1951 ................................................................................................29

18 U.S.C. § 1961 ................................................................................................36

18 U.S.C. § 1962 .......................................................................27, 34, 38, 45

18 U.S.C. § 1964 ................................................................................................27

42 U.S.C. § 1983 ......................................................................................... *passim*

42 U.S.C. § 1985 ......................................................................................... *passim*

**OTHER AUTHORITIES**

Charles Allan Wright & Arthur R. Miller, 5A Fed. Prac. & Proc. Civ. § 1336.3 (4th ed.) .............3

Fed. R. Civ. P. 9 ..........................................................................................33, 34

Fed. R. Civ. P. 11 ................................................................................................3

Fed. R. Civ. P. 12 ......................................................................................5, 11, 12

Fed. R. Civ. P. 15 ......................................................................................9, 10, 11

## INTRODUCTION

Fiction. Presenting fiction as fact outside the courtroom can result in a defamation lawsuit. Presenting fiction as fact inside the courtroom should result in dismissal and sanctions. The First Amendment allows Mr. Lindell to espouse his fictional views about the 2020 U.S. election outside the courtroom with the understanding that he will face legal consequences for doing so. But the Federal Rules of Civil Procedure do not allow Mr. Lindell and his attorneys to present fictitious claims inside the courtroom. Mr. Lindell's claims against Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") are fictitious. No court has ever found a claim based on the "facts" alleged against Smartmatic.

## OVERVIEW OF ARGUMENTS

Mr. Lindell asserts five claims against Smartmatic: (1) violation of the Support and Advocacy Clause; (2) participation in a civil conspiracy with US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, and Hamilton Place Strategies, LLC (collectively, "Dominion"); (3) violation of the Equal Protection Clause and the Due Process Clause under 42 U.S.C. § 1983; (4) violation of the First Amendment under Section 1983; and (5) violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"). These claims are as farcical as they appear. They are all foreclosed by existing law, and Mr. Lindell alleges no facts to satisfy their elements. Each claim also centers on the idea that Mr. Lindell was "punished" for speaking out about the 2020 U.S. election. But he does not identify a single act by Smartmatic targeting or related to him, much less an act that prevented him from speaking out.

***Support and Advocacy Clause*** **(Count IV)**. Mr. Lindell fails to state a claim against Smartmatic for violation of the Support and Advocacy Clause under 42 U.S.C. § 1985(3). First, this statute requires a conspiracy, and Mr. Lindell's allegations of a conspiracy between Dominion and Smartmatic are insufficient. Second, none of the defendants' alleged acts rises to the level of

"force, intimidation, or threat," which Mr. Lindell must show to state a claim. Third, Section 1985(3) is remedial and requires violation of an underlying, substantive right. The only right Mr. Lindell claims the defendants violated is his exercise of free speech under the First Amendment. But such a violation requires state action, and none is alleged here. Each of these pleading deficiencies justifies dismissal of Count IV.

***Civil conspiracy*** (**Count VII**). Mr. Lindell fails to state a claim against Smartmatic for civil conspiracy with Dominion. At the threshold, Mr. Lindell's claim fails because he alleges a conspiracy between Dominion and Smartmatic "to deprive [him] of his constitutional rights under the First Amendment." (Compl. ¶¶ 181, 183.) Such a conspiracy cannot exist as a matter of law because it requires a governmental actor's participation, which is absent here. Mr. Lindell's claim is also defective because (a) he has no viable underlying claim, and (b) he has insufficiently alleged a conspiracy between Smartmatic and Dominion.

***First, Fifth, and Fourteenth Amendments Under § 1983*** (**Counts V, VI**). Mr. Lindell fails to state a claim against Smartmatic under 42 U.S.C. § 1983. He premises these claims on alleged violations of his First, Fifth, and Fourteenth Amendment rights. But Mr. Lindell alleges no interaction between himself and Smartmatic, much less a deprivation of his constitutional rights. Mr. Lindell also erroneously assumes that Smartmatic is a "state actor" and fails to connect any purported "state action" to his alleged injuries.

***RICO*** (**Count III**). Mr. Lindell fails to state a RICO claim against Smartmatic. To plead a RICO violation, he must plausibly allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. At a minimum, the Complaint insufficiently alleges the first, second, and fourth elements. Mr. Lindell fails to allege any facts to show that Smartmatic and

Dominion: committed any predicate act of racketeering; "conducted or participated" in the alleged enterprise; or that an "enterprise" existed.[1] Count III can be dismissed on any of these grounds.

<div align="center">***</div>

At their core, all of Mr. Lindell's claims are predicated on three facts: (1) Dominion sent letters requesting certain individuals and organizations to "cease and desist" from defaming the company; (2) Dominion filed lawsuits against some of those individuals and organizations, including Mr. Lindell, for defamation; and (3) Smartmatic filed lawsuits against certain individuals and organizations for defaming the company and disparaging its product and services.[2] No court has ever found such actions to constitute "racketeering activity," a violation of the Support and Advocacy Clause, or an infringement of the U.S. Constitution, and for good reason. They are actions companies and lawyers take every day across the country. The judicial system would serve little purpose if parties who believe they are aggrieved cannot file a lawsuit to address grievances.

---

[1] Smartmatic focuses on the racketeering, conduct, and enterprise elements of Mr. Lindell's RICO claim because he cannot possibly (forget plausibly) satisfy them. But the Complaint also fails to allege a pattern of racketeering, causation and cognizable damages under RICO. Smartmatic has refrained from scorching every facet of Mr. Lindell's baseless claims in order to comply with its duty to mitigate under Fed. R. Civ. P. 11. *See* 5 Charles Allan Wright & Arthur R. Miller, 5A Fed. Prac. & Proc. Civ. § 1336.3 (4th ed.) ("A party who believes that he or she is being subjected to sanctionable behavior has a duty to mitigate costs and to prevent his opponent's behavior from having unnecessary or excessive consequences."). Smartmatic will be seeking sanctions against Mr. Lindell and his counsel for bringing this action, including recovery of the legal fees Smartmatic had to expend to prepare this motion to dismiss against his "$2 billion" complaint. (*See* Compl. ¶ 138, ECF No. 87.)

[2] Smartmatic has not yet filed a defamation and disparagement claim against Mr. Lindell or his company, MyPillow, but will be doing so. As alleged in the Complaint, Dominion has done so. (Compl. ¶ 106.) The Court can take judicial notice of the fact that Mr. Lindell's and MyPillow's motion to dismiss that complaint was denied in full. *Dominion, Inc., et al. v. My Pillow Inc., et al.*, Case No. 1:21-cv-445, ECF No. 54 (D.D.C. Aug. 11, 2021).

<div align="center">3</div>

## STATEMENT OF FACTS

The gravamen of Mr. Lindell's Third-Party Complaint ("Complaint") is that Dominion and Smartmatic have "weaponize[ed] the litigation process" against Mr. Lindell "to suppress the revelation and public discussion of [certain] truths." (Compl. ¶¶ 1, 20, 21, 138 (ECF No. 87).)[3] As proof of this "lawfare" — a term of art he borrows from Wikipedia[4] — Mr. Lindell points to two acts: (1) Dominion's service of cease-and-desist letters upon him; and (2) Dominion's filing of a suit against him and his company, MyPillow, Inc. (*Id.* ¶ 136.)

Notably, however, Mr. Lindell does not allege that Smartmatic has engaged in any "lawfare" against him. Indeed, Smartmatic and Mr. Lindell had never been parties to the same litigation until *he* sued *Smartmatic* in case number 21-cv-2296 (D.D.C.). More broadly speaking, Mr. Lindell does not allege to have had any interaction with Smartmatic outside this litigation. Smartmatic has never sent him any "threatening letter," "intimidating" communication, or "threat" of any kind. (*See id.* ¶¶ 128, 129, 132.)

So why has Mr. Lindell sued Smartmatic? Well, according to his Complaint, he wanted to "fight back" against Smartmatic for a lawsuit it filed in New York against "Fox News; journalists Lou Dobbs, Maria Bartiromo, and Jeanine Pirro; and former Trump attorneys Rudy Giuliani and Sydney Powell," and for its other lawsuits against One America News and Newsmax.[5] (*See id.*

---

[3] All internal quotations and citations have been omitted, and emphasis added, unless otherwise noted.

[4] (*See* Compl. ¶ 22 fn. 49) ("Lawsuit Warfare = Lawsuit + Warfare = Lawfare.")

[5] The Complaint cites Smartmatic's litigation against Fox News and others. (Compl. ¶ 16.) However, Mr. Lindell did not attach a copy of Smartmatic's complaint as an exhibit to his Complaint. The Court "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice" in ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Farah v. Esquire Magazine*, 736

4

¶¶ 16, 36, 137, 140.) Mr. Lindell cops to this objective in his pleading. Having had no direct contact with Smartmatic himself, he needed a way to link Smartmatic to Dominion, so he could hold Smartmatic responsible for what Dominion allegedly did to him.

Mr. Lindell's Complaint advances two plotlines to create this link.

**No. 1: "United in a Common Purpose."** The first story Mr. Lindell tells is that Smartmatic and Dominion were "unit[ed] in a common purpose" following the 2020 election to stifle any criticism of "electronic voting machines." (*Id*. ¶¶ 1–5, 11–12, 21, 136–37.) He begins with the premise that Smartmatic's "electronic voting machines and software" are "vulnerable to cyberattacks" and "hacking." (*Id.* ¶¶ 3, 8.) Then, at some undetermined point, Smartmatic allegedly became "desperate to cover up" not only the "gross security flaws" in its "electronic voting systems," but also "information showing cyber attacks and hacking in the November 2020 election." (*Id.* ¶ 21.) To accomplish its "cover up," Smartmatic allegedly joined forces with Dominion to "silence [Mr. Lindell's] and others' political speech about election fraud and the role of electronic voting machines in it." (*Id.* ¶ 36.)

The key to this plotline is what Mr. Lindell *does not* allege. Mr. Lindell acknowledges the one jurisdiction in which Smartmatic operated during the 2020 election—Los Angeles County, California—but alleges no problems there. (*Id.* ¶ 54.) He does not even identify the technology or services Smartmatic provided to Los Angeles County. (*Id.*) Mr. Lindell similarly glosses over the alleged "gross security flaws" and cyberattack "vulnerabilities" in Smartmatic's systems. (*Id.* ¶¶ 3, 20, 21.) His Complaint identifies no particular security flaw or "vulnerability" in any elections solution Smartmatic has ever provided. While Mr. Lindell repeatedly alleges that "electronic

F.3d 528, 534 (D.C. Cir. 2017). The court may also "take judicial notice of publicly filed documents in related litigation." *Atchison v. U.S. Dist. Cts*., 190 F. Supp. 3d 78, 84 (D.D.C. 2016).

voting machines and software can be hacked," he never alleges that Smartmatic actually suffered a hack during the 2020 U.S. election in Los Angeles County or, for that matter, at any time in its history. Overall, Mr. Lindell presents no concrete information to explain why Smartmatic would have teamed up with Dominion to "silence" him. (*See id.* ¶ 20.) And he never identifies any "truth" Smartmatic "desperate[ly]" needed to "cover up." (*Id.* ¶ 21.) His entire tale is made up.

**No. 2: "Inextricable Intertwinement."** Seeking to paper over the holes in his first plotline, Mr. Lindell introduces a second one, still aiming to link Smartmatic to Dominion. He claims that Dominion and Smartmatic are so "inextricably intertwined" that the Court can deduce "their coordinated actions at issue in this lawsuit." (*Id.* ¶ 55.) To show this "intertwinement," Mr. Lindell relies on four aspects of the companies' "corporate history" — each more specious than the last. (*Id.* ¶¶ 17, 50.)

First, Mr. Lindell alleges that Dominion and Smartmatic did business with each other *over a decade ago*. (*Id.* ¶ 61.) Back "in 2009," Smartmatic allegedly licensed scanners from Dominion to scan ballots in an election Smartmatic helped administer in the Philippines. (*Id.* ¶¶ 61, 78.) That is the sum total of Dominion's and Smartmatic's alleged prior business relationship. Mr. Lindell does not identify any other transaction between Smartmatic and Dominion.

Second, Mr. Lindell alleges that Dominion and Smartmatic have both held ownership interests in Sequoia Voting Systems ("Sequoia"), a voting machine technology company headquartered in the U.S. In or about 2005, Smartmatic obtained a majority interest in Sequoia. (*Id.* ¶ 57.) Smartmatic sold the company back to its "U.S.-based management" in 2007. (*Id.* ¶ 58.) Then, *several years later*, Dominion acquired Sequoia from *those who had purchased it from Smartmatic*. (*Id.* ¶ 60.) None of this information is revelatory; it has all been in the public record, and Mr. Lindell offers nothing new. While Mr. Lindell alleges "upon information and belief" that

Smartmatic "eventually licensed" "software" to Dominion, he does not identify the "software," when Dominion used it, or anything about the purported licensing agreement.[6] (*See id.* ¶¶ 15, 60). Nor does Mr. Lindell allege that Smartmatic holds any interest in Sequoia. And he certainly does not allege that Smartmatic or Dominion own any part of each other. Rather, as he acknowledges, Smartmatic and Dominion are separate corporations held by distinct ownership with principal places of business in different locations. (*Id.* ¶¶ 24–31.) Dominion and Smartmatic are competitors, not co-owners. (*Id.* ¶¶ 40, 50.)

Third, Mr. Lindell alleges a "cross-pollination" of six "former Smartmatic employees" into Dominion. Six people. Two of them left Smartmatic over a decade ago after it divested itself of Sequoia. (*Id.* ¶ 62.) The Complaint draws no connection between either person and Mr. Lindell's claims against Smartmatic. The other four people the Complaint identifies have less relevance. (*Id.*) Mr. Lindell alleges that they are "*shown* as employees of Dominion Voting Systems at Smartmatic's Boca Raton, Florida business address," at least according to unspecified "public internet searches." (*Id.* ¶ 50.) But Mr. Lindell does not allege that these individuals, or anyone else, work for both Smartmatic and Dominion. The companies do not share employees; Mr. Lindell cannot in good faith allege otherwise.

---

[6] The sole "fact" Mr. Lindell cites to show that Dominion "licensed" software from Smartmatic is a quotation about Sequoia that Mr. Lindell alters to say Smartmatic. (*See* Compl. ¶ 17 fn. 37 (citing Dominion Voting Systems, Inc., *State of Colorado Uniform Voting System Request for Proposal, RFP # CDOS-UVS-2013-01*, at 17–18 (Dec. 4, 2013) ("Cook County and the City of Chicago selected Sequoia Voting Systems as their voting system vendor of choice and implemented a blended pollsite based voting system, consisting of the Insight PCOS and the EDGE 2+ DRE, and the HAAT (hybrid activator accumulator transmitter), which provides remote cellular transmission of results to Election Central. Dominion continues to support and improve this system today."), *available at* https://www.sos.state.co.us/pubs/elections/VotingSystems/RFI/proposals/DominionVotingSyste msColoradoUVSProposal.pdf.

Finally, Mr. Lindell purports to link Smartmatic and Dominion through the Chinese government. (*See id.* ¶¶ 65–67.) Who knows what Mr. Lindell aims to accomplish through these allegations. On the one hand, he claims that Dominion received a capital investment from a Chinese bank in 2020. (*Id.* ¶ 65.) On the other hand, Mr. Lindell alleges that Smartmatic "began using" a Chinese company to test and certify "its voting machine hardware and software" in 2015. (*Id.* ¶ 66.) From these allegations, he leapfrogs to the tinfoil-hat conclusion that "Chinese government-related entities, Chinese technology companies, and powerful Chinese financial interests had direct or indirect ownership of and near-total access to Dominion's and Smartmatic's voting machine technology." (*Id.* ¶ 67.) Even if these allegations were true (they are not),[7] they have no relevance to Mr. Lindell's claims. He does not allege that the Chinese government controls Dominion and Smartmatic and directed them to wage "lawfare" against him. Mr. Lindell's allegations about China are nothing more than clickbait within his Complaint.

Ultimately, Mr. Lindell relies on these historical "connections" because he cannot tie Smartmatic back to his claims against Dominion and has no viable claim against Smartmatic itself. The linchpin of his case against Smartmatic is its alleged "coordination" with Dominion to "weaponiz[e] the court system and litigation process" against him. (*Id.* ¶ 166.) But he fails to allege a single fact to show such coordination. He does not allege that Smartmatic played any role in the litigation between himself and Dominion or in their pre-litigation communications. He does not allege that Dominion had any involvement in Smartmatic's filing of civil suits following the 2020 election. He does not allege that Smartmatic sued him or even interacted with him prior to *his* lawsuit against Smartmatic. And he does not allege any communications or "coordinated action"

---

[7] Factual inaccuracies pervade Mr. Lindell's Complaint, including regarding publicly verifiable information.

between Smartmatic and Dominion in the past decade regarding any topic, much less him. In short, Mr. Lindell's claims against Smartmatic do not stem from fact, but from fiction. His fable has no place in this forum.

## PROCEDURAL HISTORY

Mr. Lindell's Complaint against Smartmatic should be treated as an amended pleading filed in contravention of this Court's Orders and Fed. R. Civ. P. 15. Mr. Lindell commenced this action alleging RICO and conspiracy claims against Smartmatic over six months ago in the United States District Court for the District of Minnesota. (*See* Case No. 21-cv-1332, ECF No. 1 (filed June 3, 2021).) In August 2021, the suit was transferred to this Court. (Case No. 21-cv-2296.) The Court thereafter ordered Smartmatic to respond to the Complaint by October 27, 2021, which Smartmatic did.

While Smartmatic was briefing its Motion to Dismiss, this Court stayed Mr. Lindell's claims against Dominion in Case No. 21-cv-2296 pending resolution of issues in this matter, Case No. 21-cv-445. (*See* Minute Order, Case No. 21-cv-2296 (Oct. 18, 2021).) Mr. Lindell then filed a Motion for Clarification of Stay Order, or in the Alternative, Motion for Extension of Time. (ECF No. 82, Case No. 21-cv-2296 (Nov. 3, 2021).) He asked the Court to clarify whether he needed to respond to Smartmatic's Motion to Dismiss, or if the stay entered as to Dominion's claims also applied to Smartmatic. Mr. Lindell's "position" was "that the entirety of this action [Case No. 21-cv-2296] was stayed," meaning he had no obligation to respond to Smartmatic's Motion to Dismiss. (*Id.* at 2.) In the alternative, Mr. Lindell requested additional time to respond.

The Court addressed Mr. Lindell's Motion for Clarification with two orders. On November 10, 2021, the Court denied Mr. Lindell's motion to stay his briefing deadline and directed him to respond to Smartmatic's Motion to Dismiss "on or before December 1, 2021." (Minute Order, Case No. 21-cv-2296.) In that same Minute Order, the Court noted that it would "soon enter an

order clarifying deadlines in some of the cases currently listed on the docket as related." *Id.* Then, on November 15, 2021, the Court ordered Mr. Lindell and My Pillow, Inc. to "coordinate and refile their affirmative claims *as counterclaims*" in Case No. 21-cv-445 by December 2, 2021. (ECF No. 84 ¶ 2, Case No. 21-cv-2296.) The Court further qualified: "*Plaintiffs* shall respond to those counterclaims within 21 days of their filing[.]" (*Id.*) The "Plaintiffs" to which the Court referred could only have been Dominion. Smartmatic was not a party to Case No. 21-cv-445 and had not sued Mr. Lindell, so he could not "refile" any "counterclaims" against Smartmatic.

Mr. Lindell circumvented these Orders and violated Fed. R. Civ. P. 15 in two respects. First, he ignored the Court's November 10, 2021 Order requiring him to respond to Smartmatic's Motion to Dismiss (ECF No. 81, Case No. 21-cv-2996) by December 1, 2021. Instead of filing his response, Mr. Lindell repackaged his claims against Smartmatic as third-party claims in *US Dominion, Inc., et al. v. My Pillow, Inc., et al.*, Case No. 21-cv-445. (ECF No. 87.) Mr. Lindell had no authority to add Smartmatic as a third-party defendant in this matter. The Court's November 15, 2021 Order directed him to file his "counterclaims" in Case No. 21-cv-445. Nothing in that Order granted Mr. Lindell leave to add third-party defendants or file third-party claims in Case No. 21-cv-445. Mr. Lindell took advantage of the Order to dodge the briefing deadline the Court had entered over his opposition in Case No. 21-cv-2296.

Second, Mr. Lindell violated the Court's November 15, 2021 Order and Fed. R. Civ. P. 15 by improperly amending his claims. (*See* Ex. A, Redline Comparison.)[8] At most, Mr. Lindell received permission to "*refile*" his claims. (*See* ECF No. 84 ¶ 2, Case No. 21-cv-2296.) The Court

---

[8] The document comparison omits the case captions, ECF stamps, and material extraneous to Mr. Lindell's Complaint against Smartmatic to focus on his revisions to his allegations. *See* Standing Order ¶ 8(b) ("Exhibits shall be properly edited to exclude irrelevant material and to direct the Court's attention to pertinent portions.").

never granted Mr. Lindell leave to ***amend*** his claims. There is a difference between "refiling" a pleading and amending it. Under Rule 15(a)(1), a party may amend its pleading once, as a matter of course, within "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." All of these periods expired before Mr. Lindell amended his claims. Consequently, under Rule 15(a)(2), Mr. Lindell could amend his claims against Smartmatic "only with [its] written consent or the court's leave." Mr. Lindell deprived Smartmatic of its right to consent to his amended pleading. He never requested it, and Smartmatic never provided it. Nor did the Court grant him leave to amend. Just the opposite, the Court *ordered him to respond* to Smartmatic's motion to dismiss by December 1, 2021. Whatever permission the Court gave Mr. Lindell on November 15, 2021, he abused it by amending his allegations and claims against Smartmatic without consent or leave.

In short, Mr. Lindell manipulated this Court's Orders and Rule 15 to take a free shot at amending his pleading. He tried to fix his old claims and concoct new ones, but he failed. They are all defective and incurable. His Complaint should be dismissed with prejudice.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Atchison v. U.S. Dist. Cts.*, 190 F. Supp. 3d 78, 93 (D.D.C. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. "While the Court must 'assume [the] veracity' of any 'well-pleaded factual allegations' in the complaint, conclusory allegations 'are not entitled to the assumption of truth.'" *JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 521 (D.D.C. 2014). "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements" do not state a claim and cannot survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    The Complaint fails to state a Support and Advocacy claim.

#### A.    Mr. Lindell's invocation of the Support and Advocacy Clause is unprecedented.

Count IV of the Complaint alleges that Smartmatic harmed Mr. Lindell under 42 U.S.C. § 1985(3), which was "enacted during the Reconstruction Era under § 2 of the Civil Rights Act of 1871—the so-called Ku Klux Klan Act." *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 660–61 (E.D. Va. 2019).  The Ku Klux Klan Act was "[p]assed in response to Ku Klux Klan anti-Reconstruction activity" and "provides for various civil rights remedies…." *Bois v. Marsh*, 801 F.2d 462, 475 (D.C. Cir. 1986) (Wald, J., concurring). "When Congress enacted § 1985(3), its purpose was to combat the Klan's efforts 'to resist and to frustrate the intended affects of the Thirteenth, Fourteenth, and Fifteenth Amendments.'" *Cockrum*, 365 F. Supp. 3d at 660–61.

"Section 1985(3)'s conspiracy prohibition" — which Mr. Lindell invokes here — was "one of several ways for victims to enforce the newly-passed Civil War Amendments." *Bois*, 801 F.2d at 475. The provision provides in full:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or

more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985(3) is comprised of several clauses, but Mr. Lindell asserts violations of only one of them: the "Support and Advocacy Clause," as underlined above.

Before addressing the deficiencies in his claim, however, we pause to consider the chutzpah it took for Mr. Lindell to allege Count IV. He is asking the Court to grant him relief under law the federal government passed to effectuate the Thirteenth, Fourteenth, and Fifteenth Amendments after the Civil War. While Mr. Lindell fancies himself a martyr (Compl. ¶ 36), no public-interest, egalitarian motive animates his case. He did not file suit "to safeguard voting rights" and strengthen our democracy, as the law review article into which he leans urges. (*See id.* ¶ 165 (citing Note, "The Support and Advocacy Clause of § 1985(3), HARVARD LAW REVIEW 133:1382, 1384–86 (2020)"). To the contrary, Mr. Lindell is using our courts as another platform to propagate his "election fraud" theories and delegitimize our democratic institutions. (*See* Compl. ¶¶ 8, 12, 36, 110.) It is no wonder that Mr. Lindell's Complaint resembles no suit that has stated a cause of action under Section 1985(3). *See, e.g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971) (recognizing Section 1985(3) claim that alleged defendants "beat" plaintiffs with "deadly weapons" and "block[ed]" their passage upon the highways "because of their race").

### B.    Mr. Lindell fails to allege a conspiracy between Smartmatic and Dominion.

"A plaintiff suing under § 1985(3) must allege" facts to establish a conspiracy. *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997). The elements of a conspiracy "are (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to

the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 143 (D.D.C. 2007). Importantly, "[c]onclusory allegations of an agreement will not suffice." *Id.* (dismissing Section 1985(3) claim because plaintiff's allegations "as to the existence of a conspiracy [were] conclusory at best"); *accord Kurd v. Republic of Turkey*, No. 18-cv-1117, 2019 WL 1243731, at *19 (D.D.C. Mar. 18, 2019) (same, because the plaintiffs "provide[d] no additional support for the existence of an agreement," even if the defendants allegedly "had the common goal" of "curtail[ing]" the plaintiffs' First Amendment rights); *McCreary v. Heath*, No. 04-cv-623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (same, where "plaintiff repeatedly ma[de] the conclusory statement that a conspiracy exists and surmise[d] that all" of his alleged injuries "occurred as a result of the conspiracy"); *Graves*, 961 F. Supp. at 321 (same, where plaintiff failed to specify "any facts showing the existence or establishment of an agreement").

"At the very least, the complaint must allege when or how such an agreement was brokered…." *De La Fuente v. DNC Servs. Corp.*, No. CV 18-cv-336, 2019 WL 1778948, at *9 (D.D.C. Apr. 23, 2019); *see also McCreary*, 2005 WL 3276257, at *5 (rejecting conspiracy claim where the plaintiff's "162–page complaint fail[ed] to allege the existence of any *events, conversations, or documents* indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants"); *Bush v. Butler*, 521 F.Supp.2d 63, 68–69 (D.D.C. 2007) (same, where plaintiff's allegation of an agreement "provide[d] no description of the [specific] *persons involved in the agreement*, the *nature* of the agreement, [or] *what particular acts were taken* to form the conspiracy").

Here, Mr. Lindell alleges that Dominion and Smartmatic formed a conspiracy "to silence him" (Compl. ¶ 138), but he alleges no facts to show "when or how such an agreement was

brokered." *De La Fuente*, 2019 WL 1778948, at *9. Rather, Mr. Lindell asserts that Smartmatic, Dominion, HPS, and Dominion's counsel, Clare Locke LLP, "had a meeting of the minds to agree on the common purpose of silencing speech, dissent, and opposition to the use of electronic voting machines in the 2020 Presidential Election and the exposure of such machines' vulnerability to cyber-attacks and election tampering." (Compl. ¶ 166.) But this allegation of an "agreement" is nowhere close to sufficient. The Complaint "fails to allege the existence of any *events, conversations, or documents* indicating that there was ever an agreement or 'meeting of the minds' between" Smartmatic and any other defendant. *McCreary,* 2005 WL 3276257, at *5. Nor does Mr. Lindell describe "the [specific] persons involved in the agreement, the nature of the agreement, [or] what particular acts were taken to form the [alleged] conspiracy" against him. *Bush*, 521 F.Supp.2d at 68–69.

In this District, courts routinely dismiss conspiracy claims for failure to allege facts to demonstrate an agreement. *See De La Fuente*, 2019 WL 1778948, at *9; *Kurd*, 2019 WL 1243731, at *19; *Bush*, 521 F.Supp.2d at 68–69; *Burnett*, 511 F. Supp. 2d at 143; *McCreary*, 2005 WL 3276257, at *5. The same outcome should obtain here. Mr. Lindell's "general allegation of conspiracy is not sufficiently detailed to state a Section 1985 claim." *De La Fuente*, 2019 WL 1778948, at *9; *accord Bush*, 521 F. Supp. 2d at 69 (holding that "Plaintiff has failed to plead sufficient facts from which the Court could infer the existence of a conspiracy between the defendants" because "[t]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law"); *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) ("A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss."). The Court should dismiss Count IV for failure to allege an agreement.

C.     **Mr. Lindell fails to allege facts showing use of "force, intimidation, or threat" against him.**

The Support and Advocacy Clause makes unlawful not just any agreement, but a conspiracy "to prevent by force, intimidation, or threat, any citizen…from giving his support or advocacy in a legal manner…or to injure any citizen in person or property on account of such support or advocacy…." Accordingly, "a necessary element of a claim under the advocacy and voting provisions of section 1985(3)" is that the defendant's alleged actions must "rise to the level of 'force, intimidation, or threat.'" *Nat'l Conservative Pol. Action Comm. (NCPAC) v. Kennedy*, 563 F. Supp. 622, 627 (D.D.C. 1983), *aff'd*, 729 F.2d 863 (D.C. Cir. 1984).

This requirement emanates from the history and objective of the statute. "Viewed in the light of its origin as a reaction against the murders, whippings, and beatings committed by rogues in white sheets in the postbellum South, the Ku Klux Klan Act obviously meant to its framers, when it spoke of 'force, intimidation, or threat' something much more serious and terrifying than…economic injury." *Gill v. Farm Bureau Life Ins. Co. of Mo.*, 906 F.2d 1265, 1269 (8th Cir. 1990) (dismissing Section 1985(3) claim because "the victim 'injured in his person or property' was surely contemplated by Congressmen in 1871 as suffering something more severe than loss of commissions" or the "cancellation of a contract"); *Kennedy*, 563 F. Supp. at 627 (same, because "warnings" to broadcasters that they "could be held liable for defamatory statements" do not "rise to the level of 'force, intimidation, or threat'").

Indeed, the "*central concern*" of Section 1985(3) was "combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended affects of the Thirteenth, Fourteenth, and Fifteenth Amendments." *Carpenters v. Scott*, 463 U.S. 825, 837 (1983) (refusing to construe § 1985(3) as "provid[ing] a remedy for every concerted effort by one political group to nullify the influence or do other injury to a competing group by use of otherwise unlawful

16

means"); *accord id.* at 839 (Blackmun, J., dissenting) ("The Ku Klux Klan Act was the Reconstruction Congress' response to *politically motivated mob violence* in the postbellum South."); *Griffin*, 403 U.S. at 103 (holding that "claims of *detention*, *threats*, and *battery*" run to "the core of the coverage intended by Congress" through Section 1985(3)).

In this case, "the lack of 'force, intimidation, or threat'" of physical violence defeats Mr. Lindell's claim. Mr. Lindell does not allege that Smartmatic conspired to use violence or threats of violence to "suppress [his] free speech and extort silence." (Compl. ¶ 137.) Rather, he predicates his Section 1985(3) claim on *non-violent, purely economic* means: "the litigation process," which Mr. Lindell coins "Smartmatic's weapon of choice." (*Id.*) While Mr. Lindell may construe litigation as a "weapon," Section 1985(3) does not.[9] *See Kennedy*, 563 F. Supp. at 625–27 (concluding that economic injury does not qualify as "force, intimidation, or threat"); *Gill*, 906 F.2d at 1269 (same). Count IV should be dismissed because the alleged conspiracy lacks the "force, intimidation, or threat" that Section 1985(3) requires.

### D. Mr. Lindell fails to allege facts showing a violation of an underlying federal right.

#### 1. Section 1985(3) requires an underlying violation of federal law to give rise to a conspiracy claim.

"In order to plead a viable cause of action under 42 U.S.C. § 1985(3)," Mr. Lindell must "allege an underlying violation of federal law." *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 458, 466–67 (D.D.C. 1994). Alleging a conspiracy under Section 1985(3), by itself, does not support a claim because "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates*." Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442

---

[9] Mr. Lindell similarly bases his Section 1985(3) claim against Dominion on its use of "aggressive litigation, threats of litigation, and publicization of these activities" and the attendant economic injury he allegedly suffered. (Compl. ¶ 130; *see also id.* ¶¶ 136, 140.)

U.S. 366, 372 (1979) (holding that Title VII cannot be a "basis for a cause of action under § 1985(3)"); *accord Wiggins*, 853 F. Supp. at 466 ("absent the violation of a substantive federal right that prohibits purely private conduct there can be no cause of action under 42 U.S.C. § 1985(3)"); *Kennedy,* 563 F. Supp. at 626 (Section 1985(3) "provides a remedy, in the form of a civil action for damages, for the deprivation of various federal rights. However, it does not create any rights of itself.").

Here, the substantive federal right Mr. Lindell seeks to vindicate is his freedom of speech under the First Amendment. He alleges that the "purpose of the conspiracy was to silence those like [Plaintiff] who supported President Donald J. Trump and advocated for investigations into voting machine fraud…." (Compl. ¶ 166.) He further claims that "[t]he First Amendment guarantees the right of citizens such as Lindell to express political dissent and espouse beliefs…." (*Id.* ¶ 7; *see also id.* ¶¶ 10, 135.) Accordingly, the viability of Mr. Lindell's Section 1985(3) claim hinges on whether he states a claim under the First Amendment.

### 2. Mr. Lindell's Section 1985(3) claim fails because a First Amendment violation requires state action, and he alleges none here.

The absence of state action eliminates any possibility of a First Amendment violation and forecloses Mr. Lindell's Section 1985(3) claim. "[T]o trigger First Amendment protection, the infringement upon speech must have arisen *from state action of some kind*." *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019) (dismissing First Amendment claim against the defendants, "private businesses," because "[i]t is axiomatic that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state"). Throughout our constitutional jurisprudence, "[t]he First Amendment has never been read to require private parties to guarantee freedom of speech to other private parties." *The Pen v. DC Radio Assets*, *LLC*, 181 F. Supp. 3d 49, 53 (D.D.C. 2014).

Mr. Lindell does not dispute that his Section 1985(3) claim requires state action. Instead, he tries to satisfy this requirement by alleging that "[v]oting machine companies, including Dominion and Smartmatic, are state actors…." (Compl. ¶¶ 6, 7, 54, 137–40.) To support this contention, Mr. Lindell alleges that Smartmatic "administered, collected, counted, recorded, and audited the ballot results for Los Angeles County, California." (*Id.* ¶ 54.) Mr. Lindell infers from these allegations that Los Angeles County "outsourced" its "Constitutional obligations" to Smartmatic, even though the sources his cites refute his conclusion.[10]

Mr. Lindell's allegations of state action are insufficient, as they ignore the criteria that determine whether a person qualifies as a state actor. "[A]n entity can only be a 'state actor' if 'there is a sufficiently close nexus *between the State and the challenged action* of the regulated entity so that the action of the latter may fairly be treated as that of the State itself.*" Freedom Watch*, 368 F. Supp. 3d at 40 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). "In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat *that decisive conduct* as state action." *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988); *see also The Pen*, 181 F. Supp. 3d at 53 ("[T]he test for when a private party becomes a governmental actor looks at the extent to which the actor relies on governmental assistance and benefits, whether the

---

[10] (*See* Compl. ¶ 54 fn. 83 (citing Saul Gonzalez, *The Company Behind LA's New Election Infrastructure*, KRCW (Oct. 5, 2018), *available at* https://www.kcrw.com/news/articles/the-company-behind-las-new-election-infrastructure ("L.A. County's Dean Logan said his office will be in full control of new election hardware and software developed by Smartmatic, not the company…. '[A]t the end of the day, once that equipment is built and the system exists, it will belong to L.A. County,' he said. '*Smartmatic won't be running our elections*.'"); *Voting Solutions for All People*, Smartmatic (last visited Dec. 3, 2021), *available at* https://www.smartmatic.com/en/elections/e-voting/los-angeles-vsap-solution/ ("The machine features a vote tally system, *developed, owned and operated by the county*.").)

actor is performing a traditional governmental function, and *whether the injury caused is aggravated in a unique way by the incidents of governmental authority*.").

Mr. Lindell's Section 1985(3) founders because no connection exists between the State and the acts he attributes to Smartmatic and Dominion. Mr. Lindell bases his Complaint upon Defendants' alleged use of "the litigation process" against him (by Dominion) and against other non-parties (by Smartmatic). But the Complaint fails to allege that the ***State*** participated in this "litigation process." Mr. Lindell does not allege any governmental role in Dominion's or Smartmatic's filing of civil suits or issuance of cease-and-desist letters. (*See* Compl. ¶ 129.) Those acts are the "decisive steps" Mr. Lindell alleges suppressed his expression of political speech. But he cannot forge any nexus between them and the State, such that they "may fairly be treated as that of the State itself." *Freedom Watch*, 368 F. Supp. 3d at 40. No plausible argument can be made that the State had any involvement, much less "sufficient[] involve[ment]," to render Smartmatic's and Dominion's civil suits "state action." *Tarkanian*, 488 U.S. at 192. Nor can Dominion's or Smartmatic's pre-litigation demands be considered "incident[s] of governmental authority." *The Pen*, 181 F. Supp. 3d at 53. No state action is alleged.

In brief, Mr. Lindell's Section 1985(3) claim has no legal or factual basis. It should never have been brought and should be dismissed.

## II.     The Complaint fails to state a civil conspiracy claim.

### A.     Mr. Lindell's civil conspiracy claim fails because the "conspiracy" is non-actionable.

Count VII of the Complaint collapses on itself. Mr. Lindell alleges that Smartmatic is liable in civil conspiracy with Dominion for "collu[ding] and agree[ing]" "to deprive [him] *of his constitutional rights under the First Amendment*." (Compl. ¶¶ 181, 183.) Such a conspiracy, of course, is impossible without a governmental actor's participation. *See Woytowicz v. George*

*Wash. Univ.*, 327 F. Supp. 3d 105, 120 (D.D.C. 2018) ("Courts in this Circuit have held that First… Amendment violation claims require a showing of governmental action, and therefore a plaintiff who alleges conspiracy to interfere with First…Amendment rights…must also sufficiently plead that defendants were governmental actors."); *Brown v. Hill*, 174 F. Supp. 3d 66, 74 (D.D.C. 2016) (dismissing claim for conspiracy to violate plaintiff's constitutional rights because the conspiracy lacked a state actor, and "collusion between private entities is not state action").

The conspiracy in Count VII is non-actionable because it contains no governmental actors. In his Complaint, Mr. Lindell admits that Dominion and Smartmatic are private corporations. (Compl. ¶¶ 24–31.) They therefore are not governmental actors. *See Anderson v. USAir, Inc.*, 818 F.2d 49, 56 (D.C. Cir. 1987) ("a private corporation[] is not a state actor"); *Ardon v. Washington Humane Soc'y*, No. CIV. A.96-CV1902RMU, 1997 WL 527336, at *1 (D.D.C. Aug. 18, 1997) ("The defendant is a federally created private corporation, and not a state actor, to whom prohibitions of the Constitution apply.").

Mr. Lindell's theory that Smartmatic and Dominion "act[ed] under color of state law and as [] state actor[s]" does not save his claim. (Compl. ¶ 183.) A private corporation does not act "under color of state law" or "as a state actor" when it files a civil lawsuit or sends a cease-and-desist letter on its own behalf, to vindicate its own rights, against another private party. Neither of those actions can be attributed to the State and thus considered "under color of state law." *See deLeon v. Wilkie*, No. CV 19-1250 (JEB), 2020 WL 210089, at *9 (D.D.C. Jan. 14, 2020) ("when [a] private decision may in no way be attributed to a state rule or a state decision, the private parties are not state actors"). Indeed, even governmental employees do not qualify as state actors when they partake in private activities. *See Kennedy*, 563 F. Supp. at 626 ("It is not enough [under the First Amendment] that the defendants be 'federal officers.' It is necessary that *the actions*

*complained* of be committed by the defendants under color of the authority vested in them as federal officers.").

Without any governmental action, a conspiracy to violate Mr. Lindell's First Amendment rights cannot form. Count VII is intrinsically flawed and should be dismissed.

### B. Mr. Lindell's civil conspiracy claim fails because he cannot allege a predicate claim.

If the Court dismisses Mr. Lindell's underlying claims, his civil conspiracy claim must be dismissed as well. In the District of Columbia, "there is no recognized independent tort action for civil conspiracy ...." *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000).[11] Rather, "it is a means for establishing vicarious liability for the underlying tort." *Id.* As a result, "civil conspiracy depends on performance of some underlying tortious act." *Id.* A "claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied." *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009) ("With the last of the common-law claims dismissed, the plaintiffs' conspiracy claim has no predicate; therefore, the court must dismiss it as well."); *accord del Canto v. ITT Sheraton Corp.*, 865 F. Supp. 927, 934 (D.D.C. 1994) (same). Accordingly, if the Court dismisses Mr. Lindell's underlying claims against Smartmatic and Dominion, his civil conspiracy claim must also fail.

---

[11] Smartmatic applies D.C. law to Count VII because it alleges a violation "of [Mr. Lindell's] constitutional rights under the First Amendment…." (Compl. ¶ 181.) If Mr. Lindell applies Minnesota law to his claim, the outcome will be the same. No substantive difference exists between D.C. law and Minnesota law regarding civil conspiracy. *See Harding v. Ohio Cas. Ins. Co. of Hamilton, Ohio*, 230 Minn. 327, 337 (1950) (stating that the elements of a civil-conspiracy claim are (1) a combination of two or more people (2) to commit an unlawful act or a lawful act by unlawful means). Minnesota, like D.C., requires the existence of an agreement. *Alliance Bank v. Dykes*, No. A12-0455, 2012 WL 6734457, at *11 (Minn. Ct. App. Dec. 31, 2012). Minnesota also recognizes that civil conspiracy is not an independent cause of action. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997).

### C. Mr. Lindell's civil conspiracy claim fails because the Complaint insufficiently alleges a conspiracy between Smartmatic and Dominion.

Mr. Lindell has failed to plead facts showing that Smartmatic and Dominion conspired against him. First, the Complaint does not allege facts to establish the existence of an agreement. In Section I(B) of this Argument, Smartmatic identified deficiencies in Mr. Lindell's allegations of a conspiratorial agreement, as they bear on his Section 1985(3) claim. All of those deficiencies apply equally to his civil conspiracy claim. For both claims, Mr. Lindell relies on conclusory statements that Dominion and Smartmatic "had a meeting of the minds" to "silenc[e] [his] dissent" and "depriv[e] [him] of his constitutional rights under the First Amendment." (*See* Compl. ¶¶ 166, 181.) But he provides no specific facts regarding how or when Smartmatic and Dominion brokered this alleged agreement. Mr. Lindell's "formulaic recitation" of an agreement is insufficient. *See Ning Ye v. Holder*, 644 F. Supp. 2d 112, 119 (D.D.C. 2009) (dismissing civil conspiracy claim because "Plaintiff ma[de] only the conclusory allegation that [defendants] were 'acting apparently in an unwritten agreement, meeting of minds, to commit [ ] serious civil rights offense[s]'"); *Karim-Panahi v. 4000 Mass. Apartments*, 302 F. Supp. 3d 330, 338 (D.D.C. 2018) ("[C]ourts in this Circuit have repeatedly held that [t]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law.").[12]

Second, Lindell must also show that the agreement was formed "to participate" either in (a) "an unlawful act," or (b) "a lawful act in an unlawful manner." *See Burnett*, 511 F. Supp. 2d at

---

[12] *Accord Occhino v. Lannon*, 150 F.R.D. 613, 623 (D. Minn. 1993), *aff'd*, 19 F.3d 23 (8th Cir. 1994) ("Allegations of a conspiracy, absent supporting facts, do not establish a claim upon which relief may be granted."); *Dunbar v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 839, 849 (D. Minn. 2012), *as amended* (Apr. 12, 2012), *aff'd*, 709 F.3d 1254 (8th Cir. 2013) (dismissing claim for civil conspiracy where plaintiff asserted only conclusory allegations and the court had no facts to infer the existence of an agreement).

143. Neither type of act is alleged here. The three activities that give rise to the Complaint are all incontrovertibly lawful: (1) Dominion's service of cease-and-desist letters; (2) Dominion's filing of civil complaints, including against Mr. Lindell; and (3) Smartmatic's filing of civil complaints. None of these acts violates any law. Countless persons do them every day.

Likewise, the Complaint fails to allege when or how Smartmatic and Dominion agreed to participate in "a lawful act in an unlawful manner." *See Lee v. Bradford*, No. CIVA 05-01450 HHK, 2006 WL 2520614, at *2 (D.D.C. Aug. 30, 2006) (The "complaint fails to allege any agreement whatsoever between [the] defendants, much less an agreement to participate in an unlawful act, or in a lawful act in an unlawful manner."). Even if Dominion could be viewed as acting in an "unlawful manner" toward Mr. Lindell, he alleges no facts to support an inference that Smartmatic agreed for or helped Dominion to do so. There is no allegation that Smartmatic agreed to have Dominion: file suit against Mr. Lindell (Compl. ¶ 183(a)); "defam[e]" him (*id.* ¶183(b)); "extort [him]" (*id.* ¶ 183(c)); or engage in any other conduct toward him. All of these alleged conspiracies are inadequately alleged. *See Johnson v. United States*, 590 F. Supp. 2d 101, 107 (D.D.C. 2008) (dismissing conspiracy claims that "allege[d] various conspiracies without specifying the factual bases for the allegations, rendering the defendants unable to prepare a proper defense to these claims"). For all of these reasons, Count VII must be dismissed.

## III. The Complaint fails to state a Section 1983 claim.

In Counts V and VI, Mr. Lindell alleges that Smartmatic is liable under 42 U.S.C. § 1983 for violating his First, Fifth, and Fourteenth Amendment rights. (Compl. ¶¶ 169–79.) *See Elkins v. D.C.*, 690 F.3d 554, 564 (D.C. Cir. 2012) (Section 1983 "provides a remedy in damages to those deprived of 'any rights, privileges, or immunities secured by the Constitution and laws' by persons acting under color of state law or the law of the District of Columbia."). Mr. Lindell's Section 1983 claims are frivolous for several reasons.

24

First, the Complaint does not allege any interaction between Mr. Lindell and Smartmatic. It is black-letter law that "[o]nly those who cause a violation of a right secured by the Constitution are liable." *Id.* Even after reworking his pleading, Mr. Lindell still cannot allege any contact he has had with Smartmatic. Until this case, Mr. Lindell and Smartmatic had never been parties to the same litigation or had any communication with one another. Mr. Lindell has no colorable basis to allege that Smartmatic did anything to him, never mind deprive him of his constitutional rights. *See id.* at 566 (affirming dismissal of § 1983 claim against official who "was not involved" in "decision to seize documents or…seek a search warrant" that ostensibly violated the Constitution); *cf. Iqbal*, 556 U.S. at 676 (A § 1983 "plaintiff must plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution.").

Second, Mr. Lindell's Section 1983 claims erroneously assume that Smartmatic is a state actor. Mr. Lindell bases this assumption on one contract through which Smartmatic provided voting technology to Los Angeles County in the 2020 U.S. election. But one public contract does not make a person a state actor for all purposes for all of time. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1932 (2019) ("If [a government contract] sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be…subject to a variety of constitutional constraints on their activities. As this Court's many state-action cases amply demonstrate, *that is not the law*."); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.").

Third, there is no nexus between the electoral services Smartmatic provided in Los Angeles County and any alleged deprivation of Mr. Lindell's constitutional rights. *See* Section I(D)(2), *supra* (explaining that Smartmatic's actions are not fairly attributable to Los Angeles County).

25

Courts in this Circuit reject § 1983 claims predicated on conduct unrelated to the State or its authority. *See Nader v. McAuliffe*, 593 F. Supp. 2d 95, 102 n.5 (D.D.C. 2009) (dismissing § 1983 claims notwithstanding whether elections are exclusively public functions because "the allegedly unconstitutional conduct here consisted of filing" ballot eligibility challenges "*rather than actually conducting or regulating an election*"); *Williams v. United States*, 396 F.3d 412, 415 (D.C. Cir. 2005) (affirming dismissal of § 1983 claim where federal officer's "arrest of [plaintiff] cannot be fairly treated as that of the District of Columbia, and thus cannot be called D.C. action"); *Bates v. Nw. Human Servs., Inc.*, 583 F. Supp. 2d 138, 145 (D.D.C. 2008) (dismissing § 1983 claim for lack of state action and noting that "whether an act is fairly attributable to the state should be based upon the challenged action and the specific conduct of which the plaintiff complains *rather than the defendant's general status*"). Any of these deficiencies warrants dismissal of Mr. Lindell's Section 1983 claims.

## IV.    The Complaint fails to state a RICO claim.

"Congress enacted the RICO statute, 18 U.S.C. §§ 1961–1968, as Title IX of the Organized Crime Control Act of 1970…to combat criminal organizations at large in the American commercial republic." *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1224 (D.C. Cir. 1991) (noting that RICO "was designed specifically to remove the tentacles of organized crime from legitimate business"). RICO aims to achieve this objective through its "principal operative section," 18 U.S.C. § 1962, which "creates four new federal crimes." *Id.* At issue here is the crime under Section 1962(c), which provides, in pertinent part: "It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, through a pattern of racketeering activity...." RICO also creates a private right of action for a person who is 'injured in his business

26

or property by reason of a violation of section 1962." *See* 18 U.S.C. § 1964(c); (Compl. ¶ 153 (claiming that Mr. Lindell "is entitled to recover under" Section 1964).)

To state a violation of Section 1962, a plaintiff must plausibly "allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015); *accord Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 83 (D.D.C. 2019) (citing *Limestone Dev. Corp v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (Posner, J.) (applying *Twombly* pleading standard to a RICO claim, as a "defendant should not be forced to undergo costly discovery [inherent in RICO cases] unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case"). In this case, Count III must be dismissed because Mr. Lindell does not plausibly allege *any aspect* of a RICO claim.

### A. Mr. Lindell fails to allege any racketeering activity.

The Complaint fails to identify an activity by Smartmatic or Dominion that qualifies as a predicate "racketeering" act. Mr. Lindell alleges that Defendants have "engaged in numerous related acts of racketeering activity that amount to or pose a threat of continued criminal activity." (Compl. ¶ 158.) "Specifically," he points to the fact that: (1) Smartmatic has filed defamation lawsuits against certain non-parties; (2) Dominion sent "cease and desist" letters to various individuals and organizations; and (3) Dominion filed lawsuits alleging defamation against Mr. Lindell and others. (*Id.* ¶¶ 125–38, 158, 160.) Mr. Lindell alleges that these actions "threaten the recipients with ruinous litigation" and therefore "constitute *extortion*, *witness tampering*, *witness intimidation*, and *mail fraud* for purposes of establishing the requisite 'predicate acts' for a civil RICO claim." (*Id.* ¶ 158.) The Complaint fails to demonstrate any of these crimes.

### 1. Mr. Lindell fails to establish extortion.

The litigation activities Mr. Lindell describes are not "extortion." *Compare* (Compl. ¶ 158), *with E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) (Howell, J.) (dismissing RICO claim based upon "defendants' litigation strategies" because "recognizing litigation as a form of extortion would transform[] a state common-law action into a federal crime"); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014) ("The courts of appeals which have addressed the question *have all agreed* that the instigation of meritless litigation does not establish the predicate RICO act of extortion."); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087–88 (11th Cir. 2004) (holding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" lacked RICO predicates); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (holding that meritless litigation is not a predicate act of extortion under RICO); *U.S. v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (dismissing RICO claim because "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system"); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) (dismissing RICO count and noting that "[a] threat of litigation if a party fails to fulfill even a fraudulent contract, moreover, does not constitute extortion").

Mr. Lindell's allegation that cease-and-desist letters "constitute extortion" ignores what that crime requires. (*See* Compl. ¶ 158.) First, extortion requires the "wrongful use of actual or threatened force, violence or fear." 18 U.S.C. § 1951(b)(2). Dominion's issuance of "cease and desist" letters do not qualify as "the wrongful use of actual or threatened force, violence or fear." *See I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) (holding that threatening to file a lawsuit does not constitute force, violence or fear under §1951); *S. Snow Mfg. Co. v. Snowizard Holdings, Inc.*, 912 F. Supp. 2d 404, 423 (E.D. La. 2012) (dismissing RICO claim

28

because sending cease and desist letters "clearly do[es] not constitute extortion under federal or state law"). It is difficult to imagine the chaos that would unfold if potential civil plaintiffs could face RICO claims, or be *criminally prosecuted*, every time they sent cease and desist letters to potential civil defendants. *See Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq*., 758 F. Supp. 2d 153, 176 (E.D.N.Y. 2010) (dismissing civil RICO claims and reasoning that permitting such claims on legal positions taken by litigation adversaries "would result in the inundation of federal courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any victorious litigant immediately sues opponents for RICO violations"); *FindTheBest.com*, 20 F. Supp. 3d at 457 (explaining the "sound policy reasons" that militate "against recognizing the instigation of meritless litigation as a RICO predicate act").

Second, extortion requires "the obtaining of property from another, with his consent." 18 U.S.C. § 1951(b)(2). To "obtain" property means to acquire it. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003). "[T]he property extorted must therefore be *transferable*" and "capable of passing from one person to another." *Sekhar v. United States*, 570 U.S. 729, 734 (2013) (emphasis in original). The extortion defendant "must pursue something of value from the victim that can be exercised, transferred, or sold." *Id.* at 736. It is equally important that the property be transferred with the alleged victim's consent. "Consent" signifies "the taking of property under circumstances falling short of robbery." *See Ocasio v. United States*, 578 U.S. 282, 136 S.Ct. 1423, 1435 (2016); *see also United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 483 (E.D.N.Y. 2007) (finding predicate act of extortion insufficiently alleged, while noting that "the Government cite[d] no authority for the proposition that extortion…may be pleaded without…indicating that *some* use or threat of force, however indirect, was used to compel [the victims'] consent to part with property") (emphasis in original); *Gentile v. Brunswick Cnty.*

*Sheriff's Dep't*, 2014 WL 1331159, at *18 (E.D.N.C. Apr. 2, 2014) (same, where the plaintiffs "failed to allege any conduct that could plausibly be interpreted extortionate—that defendants attempted to obtain property from [p]laintiffs with [p]laintiffs' consent").

The Complaint fails to allege any property that Dominion or Smartmatic obtained from Mr. Lindell with his consent. The Complaint alleges that the purpose of Dominion's cease and desist letters was to "ensure that everyone . . . knows they will be punished if they speak against Dominion, and anyone could be the next victim of a Dominion billion-dollar-lawsuit." (Compl. ¶ 133.) But the Complaint does not allege that Mr. Lindell, or anyone else, *transferred property* to Dominion or Smartmatic. And, the Complaint does not allege that Mr. Lindell, or anyone else, transferred property to Dominion or Smartmatic *with his/her consent.* These deficiencies doom Mr. Lindell's attempt to predicate his RICO claim on the federal crime of extortion.

### 2. Mr. Lindell fails to establish witness tampering or intimidation.

Mr. Lindell's new witness tampering accusations do not save his RICO claim. Although his original complaint alleged only extortion, he now asserts that Dominion (not Smartmatic) violated 18 U.S.C. § 1512 by sending cease-and-desist letters to "[m]ore than a few individuals in Pennsylvania." (Compl. ¶ 19.) Mr. Lindell alleges that the letters deterred those individuals from "participat[ing]" in the Pennsylvania state Senate's "forensic audit of recent elections" by "threaten[ing] ruinous litigation" if they "spoke publicly about what they witnessed." (*Id.*) To be sure, the Complaint does not say who those individuals are, whether any of them are part of the audit, what they allegedly "witnessed," how their personal knowledge bears on the audit, or how Dominion "threatened" their "participation."

Regardless, even if Mr. Lindell's vague allegations were true, they do not show racketeering. First, as another court in this District as held, "[a]busive or sham litigation does not constitute" witness tampering under § 1512 or any other "RICO predicate act." *See E. Sav. Bank*,

31 F. Supp. 3d at 13 (rejecting alleged § 1512 violation—which was based on "obstructive, abusive, and fraudulent tactics in connection with the multiple suits between the parties"—as a predicate RICO act because the plaintiffs did "not allege[] that that any defendant killed, threatened, corruptly persuaded, intimidated, or intentionally harassed a witness"); *accord G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 266 (S.D.N.Y. 2001) (noting that courts have "rejected claims that threats of future litigation, or the initiation of actual litigation, constitute witness tampering…because such litigation is not 'force, intimidation or threat,' and to hold otherwise would chill the right of private parties to petition the government").

Second, Mr. Lindell "cannot establish the requisite causation between" any alleged witness tampering and his "asserted injur[ies]." *E. Sav. Bank*, 31 F. Supp. 3d at 12. "The plaintiff in a civil RICO suit must…show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Id.* at 11–12 (citing *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10–11 (2010)). "Where the set of actions alleged to have caused the harm to the plaintiff" are "entirely distinct from the alleged RICO violation," the Supreme "Court [has] held that the injury [is] too attenuated to state a RICO claim." *Id.* at 15. And that is the case here. Mr. Lindell fails to allege any connection between his injuries and even one instance of Dominion's purported witness tampering, let alone but-for or proximate causation. Mr. Lindell's newfound reliance on Section 1512 does not fix his deficient RICO claim. *See id.* (dismissing RICO claim where the plaintiff's alleged damages were "wholly removed from the alleged predicate acts" of extortion and witness tampering); *see also Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 55 (D.D.C. 2012) (same, because plaintiff "lack[ed] standing to bring any of [his] RICO claims since he has not been injured by the conduct constituting the [RICO] violation"); *Fiorani v. Chrysler Grp., LLC*, No. 113CV346AJTIDD, 2014 WL 12527186, at *3 (E.D. Va. Jan. 30, 2014) (same,

where plaintiff failed to "plausibly allege[]that he was injured in his business or property by virtue of the" predicate act).

Third, Mr. Lindell cannot show a Section 1512 violation because the "proceeding" Mr. Lindell identifies—the Pennsylvania Senate ballot audit (Compl. ¶ 19)—is state, not federal. "The reach of the witness tampering statute, 18 U.S.C. § 1512, is limited to tampering that affects an official *federal* proceeding or investigation." *Shahin v. Darling*, 606 F. Supp. 2d 525, 537 (D. Del. 2009) (dismissing RICO claim "because all acts as alleged by plaintiff took place in state court proceedings," so "the alleged conduct would not be indictable under § 1512 and, therefore," not qualify as "predicate acts"), *aff'd*, 350 F. App'x 605 (3d Cir. 2009); *Turner v. N.J. State Police*, No. CV085163KMJBC, 2017 WL 1190917, at *29 (D.N.J. Mar. 29, 2017) (rejecting plaintiff's reliance on § 1512 to demonstrate a predicate act because that statute "ha[s] a federal-nexus requirement" and does not apply to alleged obstruction, tampering, or interference "with a State proceeding"); *Chow v. Johnson*, No. C-07-4478 CW, 2008 WL 11396738, at *5–*6 (N.D. Cal. Feb. 5, 2008) (same, where "there [was] not even a suggestion of a potential federal investigation in which Plaintiffs were prevented from participating," and "Plaintiffs [did] not cite and the Court [was] not aware of any case in which the witness tampering provision was applied to a situation in which there was no potential for a federal investigation"). Mr. Lindell's allegations of "witness tampering" do not satisfy the racketeering requirement of his claim.

### 3. Mr. Lindell fails to establish mail fraud.

Mr. Lindell's mail fraud allegation is the type of conclusory smear Rule 9(b) is designed to eliminate. "It is well-settled in this and other Circuits that" where acts of mail fraud "constitute the alleged predicate racketeering [activity], these acts are subject to the heightened pleading requirement of [Federal Rule of Civil Procedure] 9(b)." *Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 88 (D.D.C. 2006) [hereinafter *Bates I*]. "Rule 9(b) is designed, in part, to allow a

District Court to distinguish valid from invalid claims...and to terminate needless litigation early in the proceedings…." *Id.* "Plaintiffs alleging mail and wire fraud must satisfy two essential elements: (1) a scheme to defraud; and (2) use of the mails or wires for the purpose of executing the scheme." *Id.* at 89. In satisfying these elements, a plaintiff must "state the time, place and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud." *Id.* "Courts have been particularly sensitive to [Rule 9(b)'s] pleading requirements in RICO cases in which the 'predicate acts' are mail fraud…and have further required specific allegations as to which defendant caused what to be mailed...and when and how each mailing...furthered the fraudulent scheme." *Id.*

Mr. Lindell satisfies none of these requirements. His Complaint identifies no scheme to defraud. *See E. Sav. Bank*, 31 F. Supp. 3d at 14 (rejecting RICO claim predicating mail fraud on a demand letter because the plaintiff did "not state[], nor even impl[y], that the claims made in the letters…were untrue or how those letters me[t] the standard for mail fraud"). Instead, Mr. Lindell alleges that Dominion sent *cease-and-desist* letters requesting that recipients *preserve documents*. (*See* Compl. ¶¶ 128, 132.) Mr. Lindell has samples of letters, including ones he received, but still fails to identify any misrepresentations within them. Nor does he allege that he or anyone else was "deceived by [Dominion's] alleged misrepresentations made through the mail." *See Bates I*, 466 F. Supp. 2d at 88 (dismissing RICO claim predicated on alleged mail fraud because the plaintiffs' allegations were "plainly deficient under Rule 9(b)" for failure to plead mail fraud with particularity); *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 82 (D.D.C. 2019) (same, because plaintiff's "allegations fail to identify any fraud, much less state fraud with particularity"). Mr. Lindell threw mail fraud into his Complaint without having any basis for doing so. His RICO claim should be dismissed for lack of a predicate act.

**B.      Mr. Lindell fails to allege facts showing that Smartmatic "conducted or participated" in the alleged enterprise.**

Mr. Lindell's RICO claim should be dismissed because the Complaint cannot satisfy the "conduct" requirement under Section 1962(c). In *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), the Supreme Court "held that this element of § 1962(c) requires the defendant to 'have some part in directing [the enterprise's] affairs' by 'participat[ing] in the operation or management of the enterprise itself." *See Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 75 (D.D.C. 2009) (dismissing RICO claim because plaintiffs provided no "further factual enhancement to support their naked allegation that [defendant] played a part in directing [the enterprise's] affairs"); *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 140 (D.D.C. 2008) (same, where the plaintiff "offer[ed] no facts linking [the defendant's alleged] conduct to [the alleged enterprise's] operation or management"); *accord Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (same, because the complaint did "not contain any factual allegations that would lead to the conclusion that any of these defendants were involved in directing the affairs of…the alleged enterprise" in accordance with *Reves*).

In this case, the Complaint fails to plead *any* facts to show that Smartmatic "played a part in directing" the alleged enterprise's "affairs." *Harpole Architects*, 668 F. Supp. 2d at 75. Whatever the purported enterprise may be, the Complaint is silent regarding Smartmatic's role in directing it. *See Elemary*, 533 F. Supp. 2d at 140 (dismissing RICO claim where plaintiff "offer[ed] no discernible link between [the defendant's] alleged threats and his role in operating and managing" the alleged enterprise). The sole activity Mr. Lindell attributes to Smartmatic is its filing of civil complaints against certain non-parties. (*See* Compl. ¶ 137.) That activity is insufficient because it merely shows that Smartmatic was conducting its own affairs. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 498 (S.D.N.Y. 2009) (dismissing civil RICO claim where "[p]laintiffs' factual allegations

demonstrate that the [defendants] were participating in or conducting their *own* affairs rather than the affairs of an illegal enterprise") (emphasis in original); *Bates I*, 466 F. Supp. 2d at 86 (same, because a RICO complaint must provide sufficient detail "to determine whether any of the defendants were conducting something other than their own, usual business activities in the course of perpetrating the alleged" crime).

And, even if Smartmatic's suit contributed to the purported "collective enterprise" (Compl. ¶ 137), the Complaint sheds no light on any "directive role" Smartmatic assumed within the enterprise. *Cf. Grant Thornton, LLP v. Off. of Comptroller of the Currency*, 514 F.3d 1328, 1333 (D.C. Cir. 2008) (applying *Reves* to vacate an administrate order because the defendant played an insufficient "directive role in [the enterprise-equivalent's] affairs"). Nor can Mr. Lindell allege any directive role: he cannot plausibly plead that Smartmatic directed Dominion's litigation decisions against him or anyone else in any way. Because Mr. cannot satisfy the "conduct" requirement, his RICO claim must be dismissed.

### C. Mr. Lindell fails to allege a RICO enterprise.

The enterprise Mr. Lindell concocts is deficiently pled. A RICO enterprise is defined as "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). According to the Complaint, Dominion and Smartmatic formed an *association-in-fact* enterprise, to which Mr. Lindell refers as either the "Dominion Enterprise" or the "Dominion/Smartmatic Enterprise." (Compl. ¶¶ 155–61.) An association-in-fact enterprise is demonstrated by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 944–45 (2009). To plead an association-in-fact enterprise, a plaintiff must allege facts to demonstrate "three structural features": (1) a "purpose"; (2) "relationships among those associated with the enterprise"; and (3) "longevity

sufficient to permit these associates to pursue the enterprise's purpose." *United States v. Eiland*, 738 F.3d 338, 360 (D.C. Cir. 2013) (applying the *Boyle* test in a criminal RICO action); *see also Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 94 (D.D.C. 2016) (referring to the touchstones of an association-in-fact enterprise as "(1) a common purpose among the participants, (2) organization, and (3) continuity").

Critically, "[i]t is not enough for a group of individuals to commit [predicate acts]; plaintiff must assert that those individuals were organized together in some way, and that there was a structure to the association." *Id.* While "the very concept of an association in fact is expansive," the requisite structural features "make pleading an association-in-fact enterprise more challenging." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020); *accord Stankevich*, 156 F. Supp. 3d at 94 ("[T]o successfully state a claim under RICO, a plaintiff must plead facts identifying the common purpose and organizational and decisionmaking structure of the alleged enterprise.").

In this case, each structural feature is deficiently pled. Mr. Lindell pays lip service to the common purpose, relationship, and longevity requirements. (*See* Compl. ¶¶ 155–56.) His Complaint offers no facts to demonstrate any of them, and the facts he does allege belie any notion that Smartmatic and Dominion formed an enterprise.

### 1. The "common purpose" requirement of an association-in-fact enterprise is not met.

Nothing in the Complaint shows that Dominion and Smartmatic shared a common purpose. To survive dismissal, a RICO claim must allege facts that support "a plausible inference that the defendants worked together for the same unlawful purpose." *Sheikh v. Wheeler*, 790 Fed. Appx. 793, 796 (7th Cir. 2019); *see also Cisneros*, 972 F.3d at 1211 ("The purpose prong contemplates a common purpose of engaging in a…particular criminal course of conduct."); *Zamora v. Fit Int'l*

*Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020) ("As to the purpose requirement, a plaintiff must demonstrate that the members of the association share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.").

Mr. Lindell has alleged no facts that plausibly support the inference that Smartmatic and Dominion were "collectively trying" to accomplish anything, let alone a criminal endeavor. *See Cisneros*, 972 F.3d at 1211 (dismissing RICO claim because the complaint lacked "concrete facts giving rise to the inference" that the defendants banded together to pursue "a common purpose of fraud"); *see also Stankevich*, 156 F. Supp. 3d at 94 (same, where plaintiff "failed to identify the common purpose and shared organizational structure between defendants"); *In re Yelverton*, 2014 WL 7141938, at *13 (Bankr. D.D.C. Dec. 12, 2014) (same, because "[w]ithout a common purpose" uniting the defendants, the plaintiff could not "sufficiently allege a RICO enterprise"); *Sheikh*, 790 F. App'x at 796 (same, where plaintiff "failed to plausibly plead the existence of even an informal enterprise").

To be sure, Mr. Lindell asserts that Smartmatic and Dominion had "the common purpose of suppressing speech and dissent to the use of electronic voting machines and suppressing demands for investigations into the possible use of electronic voting machines to artificially manipulate voting, vote tabulations, and election results reporting in the 2020 Presidential Election." (Compl. ¶ 156.) But he provides no facts to support this conclusory statement. *See Zamora*, 834 F. App'x at 625 (rejecting plaintiff's allegation that the defendant "shared in the alleged RICO enterprise's common purpose" because the allegation was "little more than a naked assertion devoid of further factual enhancement") (applying *Iqbal*, 556 U.S. at 678).

For example, the Complaint identifies no "specific interactions" between Smartmatic and Dominion. *See Cisneros*, 972 F.3d at 1213; *Liu v. Hopkins Cnty.*, No. 14-cv-1762, 2015 WL

4978682, at *4 (D.D.C. Aug. 20, 2015) (dismissing § 1962(c) claim because the complaint "contain[ed] only conclusory allegations that the [d]efendants acted in concert" and presented "no facts to suggest that any single [d]efendant ever communicated in any way with any other [d]efendant about [p]laintiff"). Mr. Lindell never alleges when or how Smartmatic and Dominion came together either to form or to effectuate their common purpose. *See Cisneros*, 972 F.3d at 1213 (stressing the absence of allegations "regarding the origins or scope of the alleged scheme"). Indeed, the Complaint does not allege that Smartmatic "was even aware" of the litigation or cease-and-desist letters Dominion was considering or pursued. *See Liu*, 2015 WL 4978682, at *4 (finding an enterprise was inadequately alleged because no "allegations suggest[ed] that any [d]efendant was even aware of the purported racketeering activity"); *D'Addario v. D'Addario*, 901 F.3d 80, 102 (2d Cir. 2018) (same). Nor does the Complaint suggest that Smartmatic (a) had any "purposeful involvement" in Dominion's affairs (or vice versa), or (b) controlled or participated in Dominion's decisions to pursue litigation or send cease-and-desist letters. *See Cisneros*, 972 F.3d at 1213.

Taking a step back, "there is nothing inconsistent or even particularly suspicious about" the conduct Mr. Lindell targets in his Complaint. *Cisneros*, 972 F.3d at 1213 (finding that the complaint failed to make out "a RICO-qualifying common purpose" because no "concrete factual allegations" showed any criminality in the defendants' business activities). As Mr. Lindell alleges, Smartmatic and Dominion have filed separate lawsuits to obtain redress for harm they respectively suffered; neither Smartmatic nor Dominion is requesting relief for one another.

- Smartmatic filed a complaint against Fox News and others in the Supreme Court of the State of New York, County of New York. (Ex. B.) Smartmatic is the only plaintiff. Smartmatic seeks relief only for the damage caused to Smartmatic, not for any damage to Dominion.

- Smartmatic filed a complaint against One America News in this Court. (Case No. 21-cv-2900, ECF No. 1.) Smartmatic is the only plaintiff. Smartmatic seeks relief only for the damage caused to Smartmatic, not for any damage to Dominion.

- Smartmatic filed a complaint against Newsmax in the Superior Court of the State of the Delaware. (Ex. C.) Smartmatic is the only plaintiff. Smartmatic seeks relief only for the damage caused to Smartmatic, not for any damage to Dominion.

- Dominion filed complaints against Mr. Lindell, MyPillow, Sidney Powell, Rudy Giuliani, Patrick Byrne, Fox News, One America News, and Newsmax. (Compl. ¶ 131.) Dominion is the only plaintiff. Dominion seeks relief only for the damage caused to Dominion, not for any damage to Smartmatic.

- Dominion sent cease-and-desist letters to several individuals and organizations. (*Id.* ¶¶ 128, 132.) Dominion's letters request that the recipient "cease and desist" from defaming Dominion. (*Id.* ¶ 128.) The letters make no reference to Smartmatic.

"Nothing about" these activities "remotely suggests" criminal conduct. *Cisneros*, 972 F.3d at 1212. To infer an "enterprise" from them would not only defy the plausibility standard under *Iqbal*, but expose "countless law-abiding companies" to RICO liability through no fault of their own. *Id.*

In the end, Mr. Lindell's allegation that Smartmatic and Dominion forged a criminal enterprise is insufficient. His Complaint contains no facts that support the inference that Smartmatic and Dominion "worked together for the same unlawful purpose." *Sheikh*, 790 F. App'x at 796. Count III should be dismissed on this basis alone.

### 2. The relationship requirement of an association-in-fact enterprise is not met.

To satisfy the "relationship" prong of an association-in-fact enterprise, "a plaintiff must demonstrate the relationships between the various members and their roles in the purported RICO scheme." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 167 (S.D.N.Y. 2020). Alleging "independent, albeit similar, activities" is not enough because it does not show that the actors "functioned as a unit or that they were associated together for a common purpose of engaging in a course of conduct." *Propst v. Ass'n of Flight Attendants*, 546 F. Supp. 2d 14, 25 (E.D.N.Y. 2008), *aff'd*, 330 F. App'x 304 (2d Cir. 2009) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *see also*

*Boyle*, 556 U.S. at 947 n.4 (2009) (noting that allegations that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates – for example, bribery or extortion…would not be enough to show that the individuals were members of an enterprise"); *Quick v. EDUCAP, Inc*., 318 F. Supp. 3d 121, 142 (D.D.C. 2018) (dismissing RICO claim because "Plaintiffs' allegations belie[d] interconnectedness among all Defendants" in the alleged enterprise).

Even if Smartmatic and Dominion had the same alleged purpose in mind (Compl. ¶ 156), no allegations show that they had a relationship to pursue that purpose. There is no indication that Smartmatic and Dominion maintained any organization (formal or informal), coordinated any decisions, or held any defined or undefined role. *See Doe v. State of Israel*, 400 F. Supp. 2d 86, 119–20 (D.D.C. 2005) ("It is not enough for a group of individuals to commit acts enumerated by § 1961(1); plaintiff must assert that those individuals were organized together in some way, and that there was a structure to the association."). The Complaint makes no attempt to explain how Smartmatic and Dominion "associated or operated together, or were otherwise organized into an enterprise with a shared decision-making infrastructure." *Id.* at 120. And the Complaint "never links" Smartmatic to Dominion "through allegations of common orders or control." *Id.* at 119–20 (dismissing RICO claim because the plaintiff's allegations were insufficient to satisfy "the 'organization' element for a criminal enterprise under RICO").

In other words, all of the hallmarks that reflect a relationship in an association-in-fact enterprise are missing here. This deficiency regularly results in dismissal of a RICO claim. *See, e.g., Doe*, 400 F. Supp. 2d at 119–20 ("The most palpable deficiency here is the lack of any inference of 'organization.'"); *Dodd v. Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000) (dismissing RICO claim for "failure to plead facts identifying the common purpose and

organizational and decisionmaking structure of the alleged enterprise"); *see also Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017) (same, because plaintiff did not "describe[] with any specificity the personal relationships among the" entities comprising the alleged enterprise, "let alone how those entities coordinate their activities so as to advance a collective goal outside of their own discrete pecuniary objectives"); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801, 2012 WL 1231775, at *5–*6 (S.D.N.Y. Apr. 12, 2012) (dismissing RICO claim for failure to "make any concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate defendants functioned as a unit").

Instead, all Mr. Lindell has alleged is "independent, albeit similar activities." *Propst*, 546 F. Supp. 2d at 26 (dismissing RICO claim and denying leave to amend because the complaint was "entirely deficient in pleading the element of 'enterprise'"); *Moss*, 258 F. Supp. 3d at 301 (same, because the complaint lacked "facts [that] support an inference that the [defendants] were acting in any way but in their own independent interests"). Every act the Complaint attributes to Smartmatic and Dominion following the 2020 U.S. election shows that they were pursuing "their own independent interests." In February and November 2021, Smartmatic filed lawsuits. (Compl. ¶ 16.) Separately, Dominion filed lawsuits and sent out cease and desist letters. (*Id.* ¶¶ 128, 132.) Smartmatic sought no relief on behalf of or for Dominion; Dominion sought no relief on behalf of or for Smartmatic. The lawsuits were filed at different times by different lawyers. Mr. Lindell alleges no facts that hint at coordination between Smartmatic and Dominion regarding these acts.

What is more, the facts Mr. Lindell *does allege* underscore the lack of a RICO relationship. One, the Complaint alleges that Dominion "voting machines utilize Smartmatic software (or software previously designed, created, modified, and sold by Smartmatic)…." (Compl. ¶ 156.)

Even if this allegation were true (it isn't), it says nothing about how Smartmatic and Dominion are allegedly associated or acting together for a common *criminal* purpose. *See Rao v. BP Prods. N. Am.*, Inc., 589 F.3d 389, 400 (7th Cir. 2009) (dismissing RICO claim where plaintiff alleged "different actors for each event" and "d[id] not indicate how the different actors [were] associated" or "act[ed] together for a common purpose"); *de Blasio*, 500 F. Supp. 3d at 169 (same, because plaintiff could not "plausibly" allege that the defendants "bonded together" over an illicit purpose "or that they acted together as a unit to achieve that purpose").

Two, Mr. Lindell alleges that Dominion and Smartmatic "share common employees or contractors" and "co-working space." (Compl. ¶ 156.) Presumably, Mr. Lindell is referring either (a) to the two individuals he claims once worked for Smartmatic, or (b) to the "at least four additional employees" who purportedly work for Dominion at Smartmatic's Florida office. (*See id.* ¶ 62.) These allegations do not move the needle. Mr. Lindell makes no attempt to link any of the people he identifies to the alleged enterprise. Nor does he describe any "personal relationships" between the defendants "with any specificity," "let alone how [the defendants] coordinate[d] their activities so as to advance a collective goal outside of their own discrete pecuniary objectives." *Moss*, 258 F. Supp. 3d at 301; *see also Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) (dismissing RICO claim because the complaint lacked "factual allegations showing" that the defendants "had an interpersonal relationship in which they worked together for a common illicit interest"). Mr. Lindell's allegation of a co-working space fares no better. Accepting the (inaccurate) allegation at face value, nothing in the Complaint explains how that location played any role in the purported enterprise. *See Elsevier v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (dismissing RICO claim even though the defendants shared the same

address because the plaintiffs did not "specifically contend that [defendants] used [the] address in furtherance of the fraud").

Last, Mr. Lindell relies on the alleged "historical and functional connections to Sequoia and other legacy voting systems" to show an association-in-fact. (Compl. ¶ 156.) But, again, Mr. Lindell draws no connection between those alleged "connections" and any criminal organization. He also offers no information to suggest that Smartmatic's divestiture of Sequoia a decade ago somehow connects it to Dominion's litigation activities today. *See* Compl. ¶ 58; *see also Moss*, 258 F. Supp. 3d at 305 (dismissing RICO claim in the absence of "anything indicating coordination . . . beyond that of an ordinary business relationship"); *Abbott Labs*, 2017 WL 57802, at *7 (same, because "no factual allegations suggest[ed]" more "than an arm's-length business relationship"); *Singh v. NYCTL 2009-A Trust*, No. 14 Civ. 2558, 2016 WL 3962009, at *10 (S.D.N.Y. July 20, 2016) ("Without a discernible organization or at least some unitary function, the mere existence of routine business relationships among the defendants is insufficient to establish an 'enterprise' under RICO."). Smartmatic has no relationship with Dominion, and Mr. Lindell cannot allege otherwise. His RICO claim fails.

### 3. The longevity requirement of an association-in-fact enterprise is not met.

The "longevity" requirement "merely means that the 'relationships'" that bind the enterprise "persist long enough to accomplish the 'purpose' of the enterprise." *See Browning v. Flexsteel Indus., Inc*., 955 F. Supp. 2d 900, 912 (N.D. Ind. 2013) (explaining "the post-Boyle enterprise requirement" and dismissing a RICO claim for failing to meet it); *see also Boyle*, 556 U.S. at 941, 951 (finding sufficient longevity in a conspiracy to commit dozens of bank thefts spanning over a decade); *Quick*, 318 F. Supp. 3d at 142 (dismissing RICO claim because "the so-

43

called [enterprise] did not share the same purpose, did not have mutually dependent relationships, and did not have the longevity to pursue the alleged purposes").

Mr. Lindell cannot demonstrate sufficient "longevity" here for two reasons. First, longevity presumes that a common purpose exists, and that relationships have formed among the associates to achieve it. But neither of these structural features is present here, so the Court cannot advance to the next step of examining their longevity. Second, Mr. Lindell recognizes that the lack of a current relationship means he must dredge the past for anything resembling a connection and contend that it still exists. And, indeed, he identifies "connections" from a decade ago: a 2009 agreement in which Smartmatic leased optical scanning technology from Dominion, Smartmatic's 2007 divestiture of Sequoia, and Dominion's 2010 acquisition of Sequoia. (Compl. ¶¶ 58, 60–62.) But Mr. Lindell alleges no facts to link those "historical[]" (*Id.* ¶ 61) events to the litigation Smartmatic and Dominion have independently pursued this past year.

Absent any "continuity" between the "connections" between Smartmatic and Dominion (*Id.* ¶¶ 60–62, 156) and the alleged association-in-fact, Mr. Lindell cannot fashion an enterprise. *See Browning*, 955 F. Supp. 2d at 913 (finding no enterprise where the complaint alleged an "interpersonal relationship" more than ten years prior, and those allegations "establish only that [the defendants] were employed together…not that they worked toward a common criminal purpose"). As a result, Mr. Lindell's RICO claim is deficiently pled and must be dismissed.

### D. Mr. Lindell fails to allege that Smartmatic and Dominion engaged in a RICO conspiracy.

Mr. Lindell's RICO conspiracy claim fails for the same reasons his substantive RICO claim fails. The RICO conspiracy provision makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of" 18 U.S.C. § 1962. *See* 18 U.S.C. § 1962(d). Because Mr. Lindell has failed to plead facts supporting a plausible RICO violation under 18

U.S.C. § 1962(c), his claim under § 1962(d) must fail. *See E. Sav. Bank*, 31 F. Supp. 3d at 15–16

(dismissing claim for conspiracy to violate RICO "because there was no violation in which the

defendant could have conspired").

## CONCLUSION

Mr. Lindell's Complaint, at bottom, is a crusade without a claim. It is a stunt. His claims

against Smartmatic have no basis in fact or law. Accordingly, Smartmatic respectfully respects

that the Court grant Smartmatic's Motion to Dismiss in its entirety.


Dated: December 8, 2021

<div style="margin-left:40%">

*/s/ J. Erik Connolly*

J. Erik Connolly
  D.C. Bar No. IL0099
   Email: econnolly@beneschlaw.com
Nicole E. Wrigley
  D.C. Bar No. IL00101
   Email: nwrigley@beneschlaw.com
Emily Newhouse Dillingham
  D.C. Bar No. IL0043
   Email: edillingham@beneschlaw.com
Martin V. Sinclair, Jr.
  D.C. Bar No. Bar ID: IL0097
   Email: msinclair@beneschlaw.com

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: 312.212.4949

*Counsel for Defendants Smartmatic USA Corp.,*
*Smartmatic International Holding B.V., and SGO*
*Corporation Limited*

</div>