IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V. and SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 22-cv-00098-JMB-JFD<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF ROBERT BOWES

I, Robert Bowes, declare the following to be true and correct:

1. With over three decades of expertise in banking, cash flow forecasting, valuation forecasting, mergers, firm valuations, and impact analysis, I have a deep understanding of financial forecasting and its critical implications. Financial forecasting includes considerations, for example, of how events and leadership decisions can affect future cash flows and whether a business will likely grow, remain a going concern, or ultimately fail. I have conducted thousands of such analyses in my career.

2. A cornerstone of my career has been leveraging root cause analysis to dissect the factors affecting forecasts, particularly in relation to cash flows, valuations, debt repayment capacity, and claims settlement. Every analysis begins first with a company's financial statements and other financial documents. This analytical rigor has been pivotal in determining how changes in cash flows influence overall valuations and future predictions.

3. Recounting all the details of my work experience in a few lines is not possible but I can easily provide typical highlights. For example, during my tenure at Chase Manhattan Bank, I

DEFENDANT'S EXHIBIT A

designed and spearheaded internal training to equip corporate bankers with the skills to develop robust financial and cash flow forecasts.

4. My experience includes conducting complex forecasting for and on Fortune 100 companies such as AIG and for government entities like Fannie Mae. At Fannie Mae, I led the loss forecasting and financial forecasting team, responsible for evaluating the company's own financial conditions and assessing the financial health of banks and corporate entities indebted to Fannie Mae. This analysis was done quarterly over a span of eight years and encompassed the 50 largest financial institutions in the United States, including prominent entities like J.P. Morgan Chase.

5. In response to the 2008 mortgage crisis, the Federal Reserve implemented a requirement that bank's "stress test" their financial condition to evaluate the resilience of financial institutions under adverse conditions. I was hired by the Federal Reserve to design and establish the standards for these stress tests, ensuring that banks could assess their ability to survive without government bailouts and maintain the requisite regulatory capital. This role underscored my ability to navigate high-stakes financial scenarios and shape critical industry frameworks.

6. During my career I have conducted thousands of financial forecasts on private businesses for banks and financial institutions. My financial forecasts were not an academic exercise. Rather, I made my living on my ability to provide reliable forecasts for private institutions and government agencies who depended on my analysis to make real world decisions in the private sector and for the government across several agencies.

7. One objection lodged by Plaintiffs is that I am not qualified. I am more than qualified in the field of financial forecasting and no other expert in this case has the vast practical experience that I have. I do not purport to give an opinion as a CPA. I take a company's books as I

find them. Because the Plaintiffs' attorney misstates my opinions and my deposition testimony, it is necessary to correct him:

- The Plaintiffs' attorney makes the claim that I used "little intellectual rigor" because my adoption of Gorowsky's report consisted of "a couple of hours" review. If I thought I needed more time, I would have spent more time. My task was to determine whether I could adopt his report based on my expertise in reviewing the financials. I adopted it completely. If I thought I needed to speak with Gorowsky before that adoption I would have spoken with him. That I am able to analyze financial documents rapidly because of my experience is indicative of my skill set and not the lack of intellectual rigor.

- I did not include a "documents considered list" because I adopted Gorowsky's list. For my rebuttal report, I deemed it sufficient to include what I reviewed in my actual report and not set out a separate list. Where my report reviewed a document different than what was contained in Gorowsky's report or another expert's list, I inserted the bates number of the document.

- I stand by my responses to the three experts, Keller, Berger, and Patrick. All of them have engaged in components of forecasting analysis at one point or another in their reports. After all, this case is about Smartmatic's alleged damages which form the basis of any opinion about its future. All three experts state or imply that Smartmatic's future—whether as a brand or an ongoing concern—was damaged. This is relevant to a future forecast.

8. Another objection is that I was engaged in partisan advocacy. There was nothing political about my opinions. Plaintiffs' counsel was rude during the deposition because I did not waver from my opinions. The way I described Smartmatic's financial condition is the way I would describe any such failing company regardless of whether its leadership was Republican or Democrat and regardless of the political policy involved. What I described is what I believed to be true and absolutely supported by my analysis. As I indicated, I would have been fired for giving even a whiff of legitimacy to Smartmatic as a viable company.

9. As my deposition shows, I stated that I was an expert in financial forecasting and determining lost profits through root cause analysis. As part of that analysis, I have to take into account adverse events (including a statement damaging to reputation) that might have an impact

on future profits. However, where the financials show a clear financial picture at one point in time and then a later adverse event occurs at another irrelevant point in time, I have to determine whether the adverse event should be included or has an impact.

10. I am qualified to opine on whether Lindell's defamatory statements caused lost profits damage to Smartmatic. My report also does not attempt to offer a causation analysis of Lindell's statements specifically. I also did not believe it was reasonable to make the causal link because as I explained in my deposition, the real-world financials clearly shows that Smartmatic was not a viable business long *before* Lindell made his statements because the damage was self-inflicted.

Dated: December 13, 2024

By *Robert Bowes*
Robert Bowes