**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | Case No. 22-cv-0098-WMW-JFD |
| Plaintiffs, | |
| v. | |
| MICHAEL J. LINDELL and MY PILLOW, INC., | |
| Defendants. | |

**PLAINTIFFS' SIXTH SUPPLEMENTAL ANSWERS AND OBJECTIONS TO**
**DEFENDANT MY PILLOW, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33(b), Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited (collectively, "Smartmatic"), by and through undersigned counsel, hereby provide the following answers and objections to Defendant My Pillow Inc.'s ("MyPillow") First Set of Interrogatories (the "Interrogatories" and, individually, each an "Interrogatory"). Smartmatic's answers are hereby provided without waiver of any questions or objections to relevancy or admissibility as evidence. These answers are specifically made subject to objection during any part of these proceedings.

**GENERAL OBJECTIONS**

The following General Objections are incorporated into Smartmatic's responses as though fully set forth herein. The Specific Objections identified for the Interrogatories further identify additional objections specific to that Interrogatory. The General Objections are not waived, or in any way limited, by the Specific Objections. Smartmatic's agreement to provide any responsive and non-privileged information or documents in response to the Interrogatories shall not be

1

construed as a waiver of any right or objections to the Interrogatories or other discovery procedures. The production of any information or documents by Smartmatic shall be without prejudice to any objections Smartmatic may have as to the relevance or admissibility of any information or document at any hearing or trial.

1.      Smartmatic objects to the Interrogatories to the extent that they might be interpreted as requiring Smartmatic to concede the relevance, materiality, or admissibility of the information sought by the Interrogatories. All of the following objections, answers, and responses are given without prejudice to and with the express reservation of Smartmatic's right to supplement or modify its objections, answers, and responses to the extent required and permitted by applicable law, to incorporate later discovered information, and to rely upon any and all such information and documents at trial or otherwise.

2.      Smartmatic objects to the Interrogatories, including the Instructions and Definitions, to the extent that they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure, applicable case law, and the Court's orders in this case. Smartmatic specifically objects to the Interrogatories, including the Instructions and Definitions, to the extent that they purport to impose obligations different than or beyond those required by the Order Regarding Production of Electronically Stored Information (Dkt. 69).

3.      Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, joint defense privilege, or by any other applicable privilege or immunity from production. Nothing contained in Smartmatic's responses to these Interrogatories is intended to be, or in any way should be deemed to be, a waiver of any such privilege or immunity. Any inadvertent production of information protected by the attorney-client privilege, prepared in anticipation of litigation or trial,

or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or other basis for objecting to the production of such material or its subject matter. Smartmatic expressly reserves the right to object to the use or introduction of such information.

4.    Smartmatic objects to the Interrogatories to the extent that they seek information that is confidential or proprietary to Smartmatic or its customers. If Smartmatic provides confidential or proprietary information in response to the Interrogatories, such production will be subject to the protective order entered by the Court.

5.    Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure under any confidentiality or protective order, or under any other order or stipulation that Smartmatic has entered into or is subject to with respect to any past or present litigation or other matter.

6.    Smartmatic objects to the Interrogatories to the extent that they seek information of third parties protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. An agreement to produce documents or information does not constitute an agreement to produce documents or information protected from disclosure under confidentiality, non-disclosure, or other agreements with third parties.

7.    Smartmatic objects to the Interrogatories to the extent that they seek information, the disclosure of which is prohibited by law, regulation, or order of a court or other authority of a foreign jurisdiction in which such information is located.

8.    Smartmatic objects to the Interrogatories to the extent that they are overbroad, unduly burdensome, vague, and ambiguous, and/or fail to describe the information sought with reasonable particularity. Smartmatic further objects to the Interrogatories as overbroad and unduly burdensome to the extent that they fail to specify reasonable time limitations. When Smartmatic

responds to an Interrogatory that it will produce documents sufficient to show the requested information subject to its objections and a reasonable search, that reasonable search will be governed by the objections and conditions set forth in Smartmatic's Responses and Objections to MyPillow's First Set of Requests for Production.

9.      Smartmatic objects to the Interrogatories to the extent that they seek "any" or "all" information on the grounds that such Interrogatories are overbroad and unduly burdensome.

10.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is either irrelevant to the subject matter of this lawsuit or not reasonably calculated to lead to the discovery of relevant or admissible evidence.

11.     Smartmatic objects to the Interrogatories as overbroad and unduly burdensome to the extent they essentially require Smartmatic to provide information on the entire history of Smartmatic's business operations as it relates to its voting systems and technologies.

12.     Smartmatic objects to the Interrogatories to the extent that they call for a legal conclusion.

13.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is not in Smartmatic's possession, custody, or control.

14.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is already in MyPillow's possession, custody, or control, or is equally available to MyPillow.

15.     Smartmatic objects to the Interrogatories to the extent that the burden or expense of the proposed discovery outweighs its likely benefit.

16.     Smartmatic objects to the definition of "Smartmatic," "You" and "Your" as vague, ambiguous, overbroad, and unduly burdensome to the extent that it includes persons and entities

that are not parties to this Action and who do not possess responsive information. Smartmatic further objects to the definition of these terms as vague and ambiguous. Smartmatic will construe the terms "Smartmatic," "You" and "Your" to mean SGO Corporation Limited, Smartmatic International Holding B.V., and Smartmatic USA Corp., and their subsidiaries.

17.     Smartmatic objects to the Interrogatories to the extent that they use phrases or terms that have specific or technical definitions under state or federal regulations, and such phrases or terms are not specifically defined.

18.     Smartmatic's use of a given term in its Responses does not mean that the term is not vague and ambiguous, as used in the Interrogatories, or that Smartmatic endorses the use of the term.

19.     An agreement in Smartmatic's response to produce certain documents is not meant to state or imply that such documents exist.

20.     Smartmatic objects to the time frame for these Interrogatories as overbroad and overly burdensome.

21.     Smartmatic objects to the Interrogatories to the extent they are premature contention interrogatories. *See, e.g., In re Hardieplank Fiber Cement Siding Litig.*, 2014 WL 5654318, at *5 (D. Minn. Jan. 28, 2014) (deferring contention interrogatory responses until the end of discovery); *Frank v. Gold'n Plump Poultry, Inc.*, 2006 WL 8444696, at *3 (D. Minn Aug. 16, 2006) (same).

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**     In Paragraph 16 of the Complaint, You allege that "[a]t all relevant times hereto, Mr. Lindell was acting as MyPillow's agent and within the scope of his employment, including during and each and every appearance he made defaming Smartmatic." Set forth every fact and identify every person with knowledge supporting this allegation.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to the phrase "[s]et forth every fact" as used in this Interrogatory as overbroad and unduly burdensome to the extent this Interrogatory seeks information that is not material to any claim or defense. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the individuals likely to have discoverable information related to the claims asserted in Paragraph 16 are listed in Smartmatic's Rule 26 Initial Disclosures served on October 21, 2022 ("Smartmatic's Initial Disclosures"). Responding further, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 16 are listed in Complaint Paragraphs 3, 7, 14–19, 23, 54–55, 68–69, 71, 74, 76–77, and 81 and pages 36–51 of Plaintiffs' Omnibus Brief in Opposition to Michael J. Lindell and My Pillow, Inc.'s Motions to Dismiss, ECF Dkt. No. 41.

**INTERROGATORY NO. 2:**       In Paragraph 26 of the Complaint, You allege that "[s]ince 2003, Smartmatic's election technology has processed more than 5 billion secure votes worldwide without a single security breach. Smartmatic has provided election services and implemented election technologies for election commissions in more than 25 countries on five continents." Identify each of the "more than 25 countries on five continents," and set forth every fact and identify every person with knowledge supporting the allegation that there has not been "a single security breach" in the more than 5 billion votes processed by Smartmatic since 2003.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a

premature contention interrogatory. Smartmatic objects to the scope of this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to the phrase "[s]et forth every fact" as used in this Interrogatory as overbroad and unduly burdensome to the extent this Interrogatory seeks information that is not material to any claim or defense. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic states that it has previously provided or is currently under contract to provide voting machines, technology, or services to jurisdictions in the following countries: Albania, Argentina, Armenia, Australia, Belgium, Bolivia, Brazil, Bulgaria, Canada, Chile, Colombia, Curacao, Ecuador, El Salvador, Estonia, Georgia, Germany, Haiti, Honduras, Italy, Kenya, Mali, Mexico, Nigeria, Norway, Oman, Pakistan, the Philippines, Sierra Leone, Singapore, the United Kingdom, the United States, Uganda, Venezuela, and Zambia. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 26 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 26: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 3:**    In Paragraph 35 of the Complaint, You allege that Los Angeles County has a "high bar for certification requirements." For each Smartmatic product or service used in Los Angeles County in the 2020 Presidential Election, identify each certification requirement and set forth how Smartmatic met each requirement.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable

privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce the certification Consultant's Testing Reports issued in connection with the technology Smartmatic developed for use in Los Angeles County in the 2020 Presidential Election.

**INTERROGATORY NO. 4:**        Explain how "Smartmatic machines are 'airgapped,'" but were capable of connection to a secure private network. *See Compl.*¶¶ 38(c), 50.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory on the grounds that it seeks premature expert discovery. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic states that this Interrogatory is counterfactual because it conflates allegations related to Smartmatic's Ballot Marking Device ("BMD") with allegations related to a new electronic pollbook manufactured by a different company. Responding further, Smartmatic states that it did not manufacture the electronic pollbook referenced in Paragraph 38(c). As

Smartmatic alleged in Complaint Paragraph 50, its BMD is "air-gapped" and does not connect to the internet.

**INTERROGATORY NO. 5:**      In Paragraph 69 of the Complaint, You allege that "Smartmatic was to one of the voting machine companies at the center of" a false narrative that included the following: "voting election technology is not secure, was hacked by China, and the voting election companies stole the election." Identify all material facts showing the falsity of the statements alleged by Paragraph 69 to be false, and identify all material facts showing that Mr. Lindell knew those statements were false when the statements were made.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the individuals likely to have discoverable information related to the claims asserted in Paragraph 16 are listed in Smartmatic's Initial Disclosures. Smartmatic further responds that based upon its current knowledge, the facts supporting the falsity of the referenced statements in Paragraph 69 are listed in Complaint Paragraphs 136–180.

**INTERROGATORY NO. 6:**      Provide the factual basis for basis for every allegation contained in Paragraph 134 of the Complaint and identify every person with knowledge about each such factual basis.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a

premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 134 are listed in Complaint Paragraphs 136–180. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 134 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 134: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**<u>INTERROGATORY NO. 7:</u>**    Provide the factual basis for every allegation contained in Paragraphs 138 through 141 of the Complaint and identify every person with knowledge about each such factual basis.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such factual basis," as

used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraphs 138–141 are listed in Complaint Paragraphs 140–141 and 349. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraphs 138–141 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:** Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraphs 138–141: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 8:** In Paragraph 137(b) of the Complaint, you allege that Mr. Lindell's alleged statement that Dominion, Smartmatic, and ES&S are "cousins" is false and defamatory. State all material facts that tend to show this statement is false and identify every person with knowledge about each such fact.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such fact," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of

Paragraph 137(b) are listed in Complaint Paragraphs 145–148.  Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 137(b) are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 137(b): Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 9:**    You allege several times in the Complaint that "individuals were led to believe," did believe, or "reasonable persons would believe" certain statements You attribute to Mr. Lindell. *See, e.g., Compl.* ¶¶ 91, 113, 114, 151, 159, 166, 171, 177, 349(a)-(d)), 349(c), 349(d). State the factual basis for these allegations and identify every person with knowledge about each such factual basis.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory on the grounds that it seeks premature expert discovery. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the referenced Smartmatic allegations are listed in Complaint Paragraphs 349–357. Responding

further, Smartmatic states that the individuals likely to have discoverable information related to

the referenced statements are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the

following individuals are the primary persons likely to have discoverable information related to

the referenced Smartmatic allegations: Antonio Mugica, Chief Executive Officer, Smartmatic;

Roger Piñate Jr., President, Smartmatic; Pedro Mugica, Global Sales President, Smartmatic; and

Samira Saba, Communications Director, Smartmatic.

**INTERROGATORY NO. 10:**    State the factual basis for your allegation that Mr.
Lindell "intended" for those who heard or read his statements to reach the conclusions alleged in
Paragraphs 138, 144, 151, 159, 166, 171, and 177 of the Complaint, and identify every person with
knowledge about each such factual basis.

Smartmatic incorporates by reference its General Objections as if fully stated herein.

Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the

attorney-client privilege, the attorney work product immunity, and/or any other applicable

privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a

premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent

it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further

objects to the phrase "identify every person with knowledge about each factual basis," as used in

this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and

without waiving the foregoing objections, and to the extent Smartmatic understands this

Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting its

allegations that Lindell "intended" to convey the falsehoods set forth in Paragraphs 138, 144, 151,

159, 166, 171, and 177 are listed in Complaint Paragraphs 3–5, 7–8, 15–19, 23, 53–55, 67–69, 71,

74, 76, 81, and 327–339. Responding further, Smartmatic states that the individuals likely to have

discoverable information related to the claims asserted in Paragraphs 138, 144, 151, 159, 166, 171, and 177 are listed in Smartmatic's Initial Disclosures.

**INTERROGATORY NO. 11:**    State the factual basis for your allegation that Mr. Lindell tried to "convince the general public that all voting technology machines are interchangeable and that they all participated in a criminal conspiracy to overturn the 2020 U.S. election," as alleged in Paragraph 142 of the Complaint, and identify every person with knowledge about each such factual basis.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about each such factual basis," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the contention that Mr. Lindell attempted to "convince the general public that all voting technology machines are interchangeable and that they all participated in a criminal conspiracy to overturn the 2020 election" are set forth in Paragraph 143. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 142 of the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 142: Eduardo Correia, Chief Technical Officer, Smartmatic;

James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; Roger Piñate Jr., President, Smartmatic; Pedro Mugica, Global Sales President, Smartmatic; and Samira Saba, Communications Director, Smartmatic.

**INTERROGATORY NO. 12:**    Is Smartmatic or has Smartmatic been "connected to Dominion or ES&S?" *See Compl.* ¶ 142. If it is not, state all material facts that tend to show the falsity of the statement and identify every person with knowledge about each such fact.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and overly burdensome to the extent it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic states that as it alleged in Paragraphs 145–148: (i) Smartmatic and Dominion have no corporate, business, or other relationship; (ii) Smartmatic and ES&S have no corporate, business, or other relationship; (iii) Smartmatic does not own Dominion or ES&S; (iv) Neither Dominion nor ES&S owns Smartmatic; (v) Dominion, Smartmatic, and ES&S are competitors; (vi) Smartmatic's election technology, hardware, and software was not used by Dominion or ES&S during the 2020 U.S. election; and (vii) Smartmatic's election technology and software were only used in Los Angeles County during the 2020 U.S. election,

and it has never leased, sold, assigned, licensed, or sub-licensed any intellectual property owned by Smartmatic to Dominion. Smartmatic further states that it has never leased, sold, assigned, licensed, or sub-licensed any intellectual property owned by Smartmatic to ES&S. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 142 of the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 142: Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**<u>INTERROGATORY NO. 13:</u>**    For each of Your parent, subsidiary, or affiliate entities, anywhere in the world, identify (a) the complete legal name of such entity, (b) its place of organization, (c) its principal place of business, and (d) its relationship to each of the Plaintiffs in this litigation. Your answer must include, at minimum, the subsidiaries referenced in footnote 9 of the Complaint and each entity identified in Paragraph 11 of the Complaint, including the identity of every entity "operating under the Smartmatic brand in" the two dozen countries referenced in Paragraph 11.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the unlimited timeframe for information sought with respect to this Interrogatory as overbroad and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic objects to this Interrogatory as overbroad and unduly burdensome to the extent that it seeks information regarding "each of Your parent, subsidiary, or

affiliate entities, anywhere in the world," regardless of that entity's relevance to the claims and defenses in this Action. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce organizational charts sufficient to show the corporate structure of Smartmatic from January 1, 2016 to the present.

**SUPPLEMENTAL ANSWER:** Responding further, and pursuant to the Court's order dated April 15, 2024 (Dkt. 266), Smartmatic provides the following information relating to its corporate entities from 2001 to 2004.

| Legal Name | Place of Organization | Principal Place of Business | Relationship to Plaintiffs |
|---|---|---|---|
| Smartmatic USA Corp. (f/k/a Smartmatic Corporation) | Delaware | Boca Raton, FL | As described in Complaint paragraphs 10-13. |
| Tecnología Smartmatic de Venezuela C.A. | Venezuela | Venezuela | Subsidiary of Smartmatic USA Corp. |
| Smartmatic de Mexico | Mexico | Mexico | Subsidiary of Smartmatic USA Corp. |

Responding further, Smartmatic identifies, by beginning Bates label, the following documents containing responsive information from 2016 onward:

| |
|---|
| SMARTMATIC-LINDELL00064566 |
| SMARTMATIC-LINDELL00064567 |
| SMARTMATIC-LINDELL00064568 |
| SMARTMATIC-LINDELL00064569 |
| SMARTMATIC-LINDELL00064570 |
| SMARTMATIC-LINDELL00064571 |
| SMARTMATIC-LINDELL00064572 |
| SMARTMATIC-LINDELL00064573 |
| SMARTMATIC-LINDELL00064574 |
| SMARTMATIC-LINDELL00064575 |
| SMARTMATIC-LINDELL00064576 |

| |
|---|
| SMARTMATIC-LINDELL00064577 |
| SMARTMATIC-LINDELL00064578 |
| SMARTMATIC-LINDELL00064579 |
| SMARTMATIC-LINDELL00064580 |
| SMARTMATIC-LINDELL00064581 |
| SMARTMATIC-LINDELL00064582 |
| SMARTMATIC-LINDELL00064583 |
| SMARTMATIC-LINDELL00064584 |
| SMARTMATIC-LINDELL00064587 |
| SMARTMATIC-LINDELL00064588 |
| SMARTMATIC-LINDELL00064589 |
| SMARTMATIC-LINDELL00064591 |
| SMARTMATIC-LINDELL00064592 |
| SMARTMATIC-LINDELL00064593 |
| SMARTMATIC-LINDELL00064597 |
| SMARTMATIC-LINDELL00064598 |
| SMARTMATIC-LINDELL00064599 |
| SMARTMATIC-LINDELL00064600 |
| SMARTMATIC-LINDELL00064601 |
| SMARTMATIC-LINDELL00064602 |
| SMARTMATIC-LINDELL00064603 |
| SMARTMATIC-LINDELL00064608 |
| SMARTMATIC-LINDELL00064609 |
| SMARTMATIC-LINDELL00064610 |
| SMARTMATIC-LINDELL00064611 |
| SMARTMATIC-LINDELL00064612 |
| SMARTMATIC-LINDELL00064614 |
| SMARTMATIC-LINDELL00064550 |
| SMARTMATIC-LINDELL00064551 |
| SMARTMATIC-LINDELL00064552 |
| SMARTMATIC-LINDELL00064557 |
| SMARTMATIC-LINDELL00064556 |
| SMARTMATIC-LINDELL00064553 |
| SMARTMATIC-LINDELL00064558 |
| SMARTMATIC-LINDELL00064560 |
| SMARTMATIC-LINDELL00064563 |
| SMARTMATIC-LINDELL00064615 |
| SMARTMATIC-LINDELL00064618 |
| SMARTMATIC-LINDELL00064621 |
| SMARTMATIC-LINDELL00064622 |

| |
|---|
| SMARTMATIC-LINDELL00064625 |
| SMARTMATIC-LINDELL00064626 |
| SMARTMATIC-LINDELL00064627 |
| SMARTMATIC-LINDELL00064633 |
| SMARTMATIC-LINDELL00064631 |
| SMARTMATIC-LINDELL00064634 |
| SMARTMATIC-LINDELL00064641 |
| SMARTMATIC-LINDELL00064637 |
| SMARTMATIC-LINDELL00064643 |
| SMARTMATIC-LINDELL00064644 |
| SMARTMATIC-LINDELL00064647 |
| SMARTMATIC-LINDELL00064648 |
| SMARTMATIC-LINDELL00064650 |
| SMARTMATIC-LINDELL00064653 |
| SMARTMATIC-LINDELL00064654 |
| SMARTMATIC-LINDELL00064655 |
| SMARTMATIC-LINDELL00064658 |
| SMARTMATIC-LINDELL00064659 |
| SMARTMATIC-LINDELL00064660 |
| SMARTMATIC-LINDELL00064662 |
| SMARTMATIC-LINDELL00064663 |
| SMARTMATIC-LINDELL00064665 |
| SMARTMATIC-LINDELL00064666 |
| SMARTMATIC-LINDELL00064668 |
| SMARTMATIC-LINDELL00064670 |
| SMARTMATIC-LINDELL00064676 |
| SMARTMATIC-LINDELL00064673 |
| SMARTMATIC-LINDELL00064677 |
| SMARTMATIC-LINDELL00064678 |
| SMARTMATIC-LINDELL00064683 |
| SMARTMATIC-LINDELL00064681 |
| SMARTMATIC-LINDELL00064684 |
| SMARTMATIC-LINDELL00064687 |
| SMARTMATIC-LINDELL00064690 |
| SMARTMATIC-LINDELL00064688 |
| SMARTMATIC-LINDELL00064691 |
| SMARTMATIC-LINDELL00064693 |
| SMARTMATIC-LINDELL00064698 |
| SMARTMATIC-LINDELL00064694 |
| SMARTMATIC-LINDELL00064699 |

| |
|---|
| SMARTMATIC-LINDELL00064705 |
| SMARTMATIC-LINDELL00064702 |

**INTERROGATORY NO. 14:**    In paragraph 155 of the Complaint, You allege that Smartmatic's "election technology, hardware, and software were not used by any other voting technology company during the 2020 U.S. election." Identify every person with knowledge about the truth of that statement, and provide the factual basis for the allegation.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about the truth of that statement," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 155 are listed in Complaint Paragraphs 272–284. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 155 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 155: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**SECOND SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the factual basis for its allegation that its "election technology, hardware, and software were not used by any other voting technology company during the 2020 U.S. election," is as follows. Smartmatic exclusively contracted with Los Angeles County to provide its election technology, hardware, and software for use in the 2020 U.S. election.  Smartmatic did not authorize, whether by contract or other means, any voting technology company, including but not limited to Dominion Voting Systems, to use Smartmatic's election technology, hardware, or software for any purpose related to the 2020 U.S. election.  Smartmatic is also unaware of any instances in which its election technology, hardware, or software were used by a different voting technology company for any purpose related to the 2020 U.S. election without Smartmatic's authorization.

**INTERROGATORY NO. 15:**    In paragraph 156 of the Complaint, you allege that "Smartmatic did not work with or assist any other voting technology company during the 2020 U.S. election."  Identify every person with knowledge about the truth of that statement, and provide the factual basis for that allegation.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about the truth of that statement," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that it provided the factual basis for the referenced allegation in the subsequent allegations in Paragraph 156. Responding further, Smartmatic states that based

upon its current knowledge, the facts supporting the allegations of Paragraph 156 are listed in Complaint Paragraphs 145–148. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 156 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:** Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in Paragraph 156: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**SECOND SUPPLEMENTAL ANSWER**: Responding further, Smartmatic states that the factual basis for its allegation that "Smartmatic did not work with or assist any other voting technology company during the 2020 U.S. election," is as follows. Smartmatic exclusively contracted with Los Angeles County to provide its election technology, hardware, and software for use in the 2020 U.S. election. Smartmatic did not contract with a voting technology company, including but not limited to, Dominion Voting Systems, to provide assistance relating to that company's facilitation or administration of voting in the 2020 U.S. election. Nor did Smartmatic provide any such assistance on an informal basis. To the extent that any entity, other than Smartmatic, that contracted with Los Angeles County for purposes of its VSAP initiative is considered a "voting technology company," Smartmatic may have assisted that entity in some capacity with its obligations related to the VSAP initiative.

**INTERROGATORY NO. 16:** Footnote 1 and Paragraphs 6 and 49 of the Complaint reference Smartmatic's "election technology, hardware, and software." Identify every person or entity to whom Smartmatic's "election technology, hardware, and software" was licensed, sold, leased, or loaned for use in any election held anywhere in the world between 2010 and the present.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the timeframe for information sought with respect to this Interrogatory as overbroad and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic identifies the following jurisdictions in which electoral management bodies purchased or contracted to purchase electoral technology or services from Smartmatic from January 1, 2018 to the present: Albania; Argentina; Armenia; Australia; Canada; Brazil; Belgium; Bulgaria; El Salvador; Estonia; Georgia; Germany; Honduras; Kenya; Los Angeles County, California; Mexico; Norway; Pakistan; the Philippines; Sierra Leone; Singapore; Uganda; the United Kingdom; and Zambia.

**INTERROGATORY NO. 17:**    In Paragraph 374 of the Complaint, You alleged that "Defendants knew that their factual assertions about Smartmatic were deceptive, as stated in [P]aragraphs 194-299" and that the statements were made "willfully."  Identify every person with knowledge of these allegations, and provide the factual basis for the allegations.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a

premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge of these allegations," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 374 are listed in Complaint Paragraphs 194–299. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in Paragraph 374 are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that to the extent this Interrogatory seeks information about the fact that the statements alleged in Paragraph 374 are false, the following individuals are the primary persons likely to have discoverable information: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**<u>INTERROGATORY NO. 18:</u>**    In Paragraph 359 of the Complaint, You claim that "[f]rom February through June 2021, Defendants published false statements and implications that (1) Smartmatic was widely used in the 2020 U.S. election in order to attack the election; (2) Smartmatic had a corrupt relationship with Dominion and/or ES&S during the 2020 U.S. election in order to attack the election; (3) Smartmatic stole the 2020 U.S. election; (4) Smartmatic's election technology or software was compromised or hacked by China; (5) Smartmatic's election technology was connected to the Internet during the 2020 U.S. election in order to attack the election; (6) Smartmatic is engaged in a widespread criminal enterprise; and (7) Smartmatic's technology was designed to steal elections." Identify every person with knowledge of the allegations, and provide the factual basis for the allegations.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable

privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge of the allegations," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that based upon its current knowledge, the facts supporting the allegations of Paragraph 359 are set forth in Paragraphs 134–180, which provide Mr. Lindell's false statements and the factual bases for Smartmatic's claims that the statements are false. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in the Complaint: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; and Roger Piñate Jr., President, Smartmatic.

**INTERROGATORY NO. 19:**    Also in Paragraph 359 of the Complaint, you claim that the "false statements . . . pleaded in paragraphs 137, 143, 150, 158, 165, 170, 176 . . . were misleading due to material omissions, by presenting misleading juxtapositions of statements, and when taking into account the context of each publication." Identify every person with knowledge about the truth of this allegation and the factual basis for this allegation, stating what "juxtapositions of statements" occurred and what "context of each publication" You intend to allege at trial.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable

privilege or immunity. Smartmatic further objects to this Interrogatory on the grounds that it is a premature contention interrogatory. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the phrase "identify every person with knowledge about the truth of this allegation," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that Mr. Lindell's false statements and misleading juxtapositions of statements are reflected in Paragraphs 134–180. Responding further, as described in Paragraphs 91, 96, 103, and 108, a reasonable viewer of the relevant defamatory programs would understand, based on the context of Mr. Lindell's statements and Mr. Lindell's juxtapositions of statements, that all references to "the machines" included Smartmatic. Responding further, Smartmatic states that the individuals likely to have discoverable information related to the claims asserted in the Complaint are listed in Smartmatic's Initial Disclosures.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic states that the following individuals are the primary persons likely to have discoverable information related to the claims asserted in the Complaint: Eduardo Correia, Chief Technical Officer, Smartmatic; James Long, U.S. Voting Systems Director, Smartmatic; Antonio Mugica, Chief Executive Officer, Smartmatic; Roger Piñate Jr., President, Smartmatic; Pedro Mugica, Global Sales President, Smartmatic; and Samira Saba, Communications Director, Smartmatic.

**INTERROGATORY NO. 20:**    Provide an itemized list of all damages that You allege the Defendants have caused You, identifying for each item of damages the amount and all material facts tending to show that You suffered these damages. If You claim loss of profits for any item of damages, your answer must also identify all persons and jurisdictions whom You allege would have purchased Smartmatic Products but did not do so as a result of any act by Defendants, the dates that you allege these persons or jurisdictions would have purchased Smartmatic Products, and the act(s) by Defendants that you allege caused these persons or jurisdictions not to purchase Smartmatic Products.

Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic objects to the phrases "identifying" and "identity," as used in this Interrogatory, as vague and ambiguous. Smartmatic further objects to this Interrogatory on the grounds that it seeks premature expert discovery. Subject to and without waiving the foregoing objections, and to the extent that Smartmatic understands this Interrogatory, Smartmatic's damages include lost sales, revenues, profits, and damage to its brand name, business value, reputation, and goodwill. Responding further, Smartmatic states that its investigation of its damages as a result of Defendants' disinformation campaign is ongoing and Smartmatic will produce responsive documents and timely disclose expert opinions identifying the information sought by this Interrogatory pursuant to Federal Rules of Civil Procedure, applicable case law, and any Scheduling Order entered by the Court.

**SUPPLEMENTAL ANSWER:**    Responding further, Smartmatic identifies the following jurisdictions for which it believes electoral management bodies may not do business with Smartmatic due to the Defamatory Statements, or which have expressed concerns about doing business with Smartmatic or regarding the Defamatory Statements: Afghanistan; Albania; Angola; Argentina; Armenia; Australia; Bangladesh; Barbados; Benin; Bosnia and Herzegovina; Brazil; Canada; Clackamas County, Oregon; Colombia; Cambodia; Costa Rica; Cyprus; Czech Republic; Denmark; Dominican Republic; Democratic Republic of the Congo; DuPage County, Illinois; Ecuador; Finland; Ghana; Greece; Guatemala; Haiti; Honduras; Hungary; Indonesia; Iowa; Iraq; Italy; Jamaica; Kazakhstan; Kentucky; Kenya; Kyrgyzstan; Liberia; Lithuania; Virginia; Louisiana; Maryland; Mexico; Marion County, Oregon; Mongolia; Myanmar; Nepal; New Jersey;

New Zealand; Nigeria; North Macedonia; Oklahoma; Panama; Paraguay; the Philippines; Portugal; Rhode Island; San Francisco, California; Shelby County, Tennessee; Singapore; South Korea; Spain; Sri Lanka; Switzerland; Taiwan; Thailand; Thurston County, Washington; Tippecanoe County, Indiana; Turkey; Uganda; the United Kingdom; Vermont; Yakima County, Washington. Smartmatic's investigation of its damages as a result of Defendants' disinformation campaign is ongoing and Smartmatic expressly reserves the right to supplement this response as additional information becomes available.

**SECOND SUPPLEMENTAL ANSWER:** Responding further, Smartmatic states that its investigation of its damages as a result of Defendants' disinformation campaign is ongoing and that the full scope of damages will be the subject of expert discovery. As detailed in the Supplemental Complaint, Smartmatic seeks to recover the economic and noneconomic damage caused by Defendants' disinformation campaign, as well as punitive damages. Smartmatic's damages from defamatory statements about Smartmatic include historical and future lost sales, revenues, and profits; damage to its brand name, business value, reputation, and goodwill; and additional expenses for security, cybersecurity, employee retention, public relations, cost of capital, legal expenses, and other items. Among other things, the enterprise value of SGO Corporation Limited, Smartmatic B.V., and Smartmatic USA has been damaged and deflated as a result of Defendants' disinformation campaign. A measure of the enterprise value damage/deflation caused by Defendants' disinformation can be estimated through a comparison of the enterprise value of the entity but for Defendants' disinformation campaign and the enterprise value of the entity as impacted by Defendants' disinformation campaign. As enterprise value is based on multiple factors, and changes over time, the amount of damage/deflation caused by Defendants' disinformation campaign changes over time. By way of example only, at the time

Plaintiffs filed the Complaint, Plaintiffs believed the enterprise value of SGO Corporation Limited prior to any defamation of Smartmatic following the 2020 Presidential Election exceeded $3 billion based on its business, prospects, and various factors relevant to estimating enterprise value. To continue with the example, Plaintiffs estimate that, at the present time, the value of SGO Corporation is approximately $400 million. Defendants' disinformation campaign was a substantial cause of the decrease/deflation of estimated enterprise value for SGO Corporation. These estimates, created by and at the direction of litigation counsel in anticipation of litigation, are based upon projections incorporating anticipated market demand for automated election technology and analyses of Smartmatic's sales pipeline and related forecasting prior to and following Defendants' publication of defamatory statements.

Responding further, Smartmatic states that it does not have knowledge sufficient to identify each and every entity that will not do business with Smartmatic in the future as a result of defamatory statements about Smartmatic. Based on its current information and belief, Smartmatic identifies the following jurisdictions for which it believes the operative electoral management bodies or other government entities will not do business with Smartmatic as a result of defamatory statements about Smartmatic: Angola; Bolivia; Brazil; Colombia; Denmark; Democratic Republic of the Congo; Ecuador; El Salvador; Ghana; Guatemala; Haiti; Jamaica; Kazakhstan; Louisiana; Maryland; North Macedonia; Paraguay; Peru; Singapore; Spain; and Taiwan. Smartmatic further identifies the following additional jurisdictions for which it believes Smartmatic's business prospects or opportunities have been harmed or diminished as a result of defamatory statements about Smartmatic: Argentina; Armenia; Australia; Bangladesh; Bulgaria; Canada; Costa Rica; Chile; Czech Republic; the Dominican Republic; France; Greece; Honduras; Indonesia; Iraq; Kenya; Kyrgyzstan; Liberia; Mexico; Nepal; New Zealand; Nigeria; Panama; the Philippines;

Puerto Rico; Portugal; Sri Lanka; Thailand; Sierra Leone; Uganda; the United Kingdom; the United States; and Zambia.

Responding further, Smartmatic states that is does not have knowledge sufficient to identify each and every entity that has expressed concerns about doing business with Smartmatic as a result of defamatory statements about Smartmatic. Based on its current information and belief, Smartmatic identifies the following jurisdictions for which individuals associated with the operative electoral management body or other government officials have expressed concerns about doing business with Smartmatic as a result of defamatory statements about Smartmatic: Albania; Angola; Argentina; Armenia; Australia; Bolivia; Brazil; Canada; Clackamas County, Oregon; Colombia; Costa Rica; Cyprus; Dominican Republic; Democratic Republic of the Congo; DuPage County, Illinois; Ecuador; El Salvador; Ghana; Greece; Guatemala; Haiti; Honduras; Iowa; Iraq; Jamaica; Kazakhstan; Kentucky; Kenya; Louisiana; Maryland; Mexico; Marion County, Oregon; New Jersey; New Zealand; Nigeria; North Macedonia; Oklahoma; Panama; Paraguay; Peru; the Philippines; Portugal; Rhode Island; San Francisco, Shelby County, Tennessee; Singapore; South Korea; Spain; Switzerland; Taiwan; Thailand; Thurston County, Washington; Tippecanoe County, Indiana; Uganda; Vermont; Virginia; Yakima County, Washington; and Zambia.

Responding further, Smartmatic refers to Appendix A, attached hereto, which provides specific customer information from Smartmatic's customer relationship management (CRM) database.

**THIRD SUPPLEMENTAL ANSWER**: Responding further, Smartmatic states that it does not have knowledge sufficient to identify each and every jurisdiction that will not or may not do business with Smartmatic as a result of defamatory statements about Smartmatic. Based on its current information and belief, Smartmatic identifies the following jurisdictions for which it

believes the operative electoral management bodies or other government entities will not or may not do business with Smartmatic as a result of defamatory statements about Smartmatic: Angola; Argentina; Azerbaijan; Bolivia; Brazil; Bulgaria; Canada; Chile; Colombia; Costa Rica; Democratic Republic of the Congo; Dominican Republic; Ecuador; El Salvador; Greece; Guatemala; Honduras; Indonesia; Iraq; Kazakhstan; Kyrgyzstan; Mexico; Nigeria; North Macedonia; Pakistan; Paraguay; Peru; Puerto Rico; Spain; Taiwan; Turkey; and multiple jurisdictions within the United States, including, Hawaii; Idaho; Illinois; Kansas; Louisiana; New Hampshire; New Jersey; Ohio; Oregon; Rhode Island; Tennessee; Washington; West Virginia; and Wisconsin.

Responding further, Smartmatic refers Defendants to the Excel file entitled "Smartmatic Impacted International Opportunities Estimated Revenues and Risk Adjusted Profits_2.15.24.xlsx," which is incorporated herein by reference, attached as Exhibit A, and designated Attorneys' Eyes Only Discovery Material under the Court's Protective Order Governing the Production and Exchange of Confidential Information. Exhibit A sets forth international opportunities that were negatively impacted (through being lost, at a lower probability of winning, or at a reduced scope) as a direct and proximate result of the disinformation campaign that Defendants participated in against Smartmatic.

**FOURTH SUPPLEMENTAL ANSWER:** Smartmatic amends and responds further that Smartmatic intends on seeking damages for (1) harm to their reputation and standing in the community, (2) economic loss caused by the defamatory statements, including loss of presently existing advantage and failure to realize a reasonable expectation of financial gain, (3) attorneys' fees and costs incurred in connection with the litigation, and (4) punitive damages. With respect to economic losses caused by the defamatory statements, Smartmatic does not intend to claim that

the defamatory statements made by these Defendants are a legal cause of the economic losses associated with the international opportunities discussed in the prior responses to this Interrogatory.

Reputational Harm and U.S.-Based Economic Loss

Under Minnesota law, harm to Smartmatic's reputation is presumed once it is established that Defendants acted with actual malice. A reasonable proxy and estimate of Smartmatic's reputational harm is the negative impact the disinformation campaign has had on Smartmatic's ability to win market share and business in the United States. As described in greater detail below, Smartmatic's ability to win market share and additional business in the United States was negatively impacted by approximately $163 million. This is a fair estimate for reputational harm and/or economic loss that Smartmatic seeks from these Defendants.

Smartmatic planned on using the success of Los Angeles County in the 2020 Election to expand to different jurisdictions across the United States. As described, for example, in the September 22, 2023 Expert Report of Tammy Patrick, success in Los Angeles County should have opened up more business opportunities for Smartmatic in the United States. Likewise, as described in the September 28, 2023 deposition testimony of Antonio Mugica, Smartmatic planned on investing $10-$15 million to expand its U.S. business prior to the disinformation campaign. (9/28/23 A. Mugica Dep. 301, 316.)

According to a 2021 study by the Election Infrastructure Initiative, approximately $53 billion over the next 10 years is needed to modernize the U.S. election infrastructure.[1] Using that as a proxy, an average of approximately $5 billion a year is needed to be spent on U.S. elections. According to publicly available information, the market size for private U.S. elections technology

---

[1] *Available at* https://www.modernizeourelections.org/s/50-States-Of-Need.pdf.

and services was $407.5 million in 2020. *See, e.g.,* SMARTMATIC-LINDELL05062317–05062343 at SMARTMATIC-LINDELL05062323; SMARTMATIC-LINDELL05438820–23 at SMARTMATIC-LINDELL05438822; SMARTMATIC-LINDELL05438824–26 at SMARTMATIC-LINDELL05438825; SMARTMATIC-LINDELL05438827–30 at SMARTMATIC-LINDELL05438829; SMARTMATIC-LINDELL05438831–36 at SMARTMATIC-LINDELL05438836. Based on those figures, approximately 8% of the total U.S. election market was addressable in 2020 by companies such as Smartmatic, which is based on dividing the $407.5 million market size for private U.S. elections technology and services by the approximate $5 billion total U.S. market size for elections.

In 2020, Smartmatic USA earned approximately $86.7 million in revenue, which represents a 21.3% market share of revenue for the market addressable by companies such as Smartmatic. Smartmatic believed prior to the disinformation campaign that the addressable market would expand from approximately 8% in 2020 to 15% in 2025. Assuming a flat $5 billion total U.S. market size from 2020 to 2025 and a modest 1.4% increase each year in the addressable market from 2020 to 2025 (9.5% in 2021, 10.9% in 2022, 12.3% in 2023, 13.6% in 2024, 15.0% in 2025), that addressable market would have grown from $407 million in 2020 to $750 million in 2025 ($476 million in 2021, $544.5 million in 2022, $613 million in 2023, $681.5 million in 2024, $750 million in 2025). Assuming Smartmatic maintained a 21.3% market share in 2021–2025, Smartmatic would have earned, but for the disinformation campaign that Defendants participated in, approximately $652.1 million in revenue from 2021–2025 ($101.3 million in 2021, $115.8 million in 2022, $130.4 million in 2023, $145 million in 2024, $159.6 million in 2025). Smartmatic USA's actual revenue from 2021 to 2023 was $68 million ($21.7 million in 2021, $38.5 million in 2022, and $9.5 million in 2023), and is estimated to be $39 million for 2024 and 2025, meaning

that Smartmatic's actual and current estimated revenue for 2021–2025 is approximately $109 million. By taking the estimated but-for revenue and subtracting the actual/current estimated revenue, Smartmatic lost approximately $543 million in revenue. Assuming a 30% profit margin as a conservative estimate based on Smartmatic's prior financial history, Smartmatic's ability to win market share and additional business was negatively impacted by approximately $163 million.

As described in the September 22, 2023 Expert Report of Tammy Patrick, the disinformation campaign that Defendants participated in harmed Smartmatic's ability to compete in the voting technology marketplace. (Patrick Rpt. 84-98.) In addition, as described in the September 22, 2023 Expert Report of Kevin Keller, Defendants' participation in the disinformation campaign harmed Smartmatic's brand and business and has contributed to lingering reputational harm to Smartmatic. (Keller Rpt. 58-81.) Also, as described in the September 22, 2023 Expert Report of Jonah Berger, Defendants' participation in the disinformation campaign (1) was extensive and pervasive, (2) featured content that is likely damaging to Smartmatic, (3) was promoted on various media outlets, reaching a large and unique audience, and (4) contributed to the public's negative associations with Smartmatic. (Berger Rpt. 7–81.) Further, as described in the September 27, 2023 deposition of Antonio Mugica, potential U.S. customers are less likely to do business with Smartmatic as a result of Defendants' participation in the disinformation campaign (*See* 9/27/23 A. Mugica Dep. 159-162.)

Additional evidence that Defendants' defamatory statements impacted Smartmatic's ability to win market share and business in the United States includes internal communications at the Company regarding Defendants' ongoing defamation campaign long after other actors had stopped. *See, e.g.* SMARTMATIC-LINDELL0011498; SMARTMATIC-LINDELL00190359; SMARTMATIC-LINDELL00117652; SMARTMATIC-LINDELL00118005; SMARTMATIC-

LINDELL00219209–SMARTMATIC-LINDELL00219214,           at           LINDELL00219209;
SMARTMATIC-LINDELL00119527–SMARTMATIC-LINDELL00119541                                at
SMARTMATIC-LINDELL00119532; SMARTMATIC-LINDELL00120191– SMARTMATIC-
LINDELL0020192. Furthermore, Smartmatic employees received threatening messages regarding
Defendants' defamatory publications. *See, e.g.* SMARTMATIC-LINDELL01247817;
SMARTMATIC-LINDELL00189976.

<u>Attorney's Fees and Costs</u>

Defendants' false and defamatory statements concerning Smartmatic constitute deceptive
trade practices in violation of Minnesota Law, M.S.A § 325D.44(8). First, Defendants' false and
defamatory statements constituted disparagement of Smartmatic's goods, services, and business
by false and misleading representations of fact.  As detailed in Smartmatic's First Supplemental
Complaint and Demand for Jury Trial, and the exhibits thereto, Defendants falsely stated and
implied that (1) Smartmatic's election technology and software were widely used in the 2020  U.S.
election in order to attach the election, (2) Smartmatic had a corrupt relationship with Dominion
and ES&S during the 2020 U.S. election in order to attack the election, (3) Smartmatic stole the
2020 U.S. election for Joe Biden and Kamala Harris, (4) Smartmatic's election technology,
hardware, and software were compromised or hacked by China or other foreign countries during
the 2020 U.S. election, (5) Smartmatic machines were connected to the Internet during the 2020
U.S. election in order to attack the election, (6) Smartmatic was engaged in a widespread criminal
conspiracy to steal the 2020 U.S. election and (7) Smartmatic's election technology, hardware, and
software were designed to steal elections and have stolen elections before.

Second, Defendants made these disparaging statements about Smartmatic's goods and
services in the course of their business in order to promote their business.  For instance, on

35

December 6, 2020, Mr. Lindell spoke at a Des Moines, Iowa stop on the "March for Trump" tour and said "Donald Trump got so many votes that they didn't expect that it broke the algorithms in those machines." *How 'The Women for America First' Bus Tour Led to the Capital Coup Attempt*, BuzzFeed News (January 26, 2021) (Exhibit 129 to the First Supplemental Complaint). The MyPillow logo appeared on the bus itself. *See also* DEF047983.00013 (Lindell telling one of the tour coordinators, "I think I will use mypillow logo on the bus too," and "[w]e can co-sponsor the whole thing.").

Not only did Mr. Lindell actively promote MyPillow while making disparaging remarks about Smartmatic, he also repeatedly pronounced his affiliation with the Company while doing so. For example, Mr. Lindell's documentary *Absolute Proof* opens with Mr. Lindell saying, "Hello everyone, this is Mike Lindell, the CEO of MyPillow." That video contains the following statements:

- Lindell: "I think it was like January 9th, all of a sudden, these people, they brought me some, a piece of evidence, that's 100% proved. It's like a print of inside the machine of the timestamp that showed another county, other countries attacking us, hacking into our election through these machines, and it shows a vote's flipped. And I'm going wow, I got to get this out there. And from that point on, I started putting it out there."

- Col. Phil Waldron: "So a critical capability for any of this to happen are the inherent vulnerabilities that were built into ES&S and Dominion software, which is, you know, again, we've proven through [] our work that this is all related directly back to the soft, Smartmatic, Smartmatic, SGO Smartmatic software core . . . the board of SGO Smartmatic, because they own a, an air purification company. So just think

about it, if you get to pick an administration that is favorable to your company, say

if they [passed] the Green New Deal, and you're going to make billions and billions

of dollars off of government-mandated air purification systems and public buildings

. . . you would spend quite a bit of money on the frontside to make sure the election

was done."

On February 6, 2021, the day after *Absolute Proof* was released, Mr. Lindell went on Steve

Bannon's *War Room* to promote the video, at one point stating: "And my employees go, I want to

tell you this, all my employees have just stepped it up, and one of them even said, Mike, why don't

you do, you're going on the show today, use promo code proof. So if you want to, any of the

listeners out there, if you want to use promo code proof, save up to 66% off my stuff on

mypillow.com." (Exhibit 11 to First Supplemental Complaint, at 33:19–24.)

Also following the release of *Absolute Proof*, Mr. Lindell noted that MyPillow advertisers

were plugging the video. *See* DEF034384.00018-19. In a single day following the video's release,

MyPillow received 38,000 orders, which was purportedly record sales for the company. *See*

DEF082645. Lindell exclaimed, "Who said being crazy in the news isn't good :)." *Id.*

Mr. Lindell thereafter made a habit of taking the appearances he was given as a result of

his false claims about Smartmatic and using those opportunities to promote MyPillow. For

example:

- On a February 24, 2021 appearance on *The Pete Santilli Show*, Mr. Lindell spoke

  at length about the election, including stating, "it's not just Dominion, it's a, and not

  just Smartmatic, and not just the machine. Look at what they're doing. They're all

  part of this attack on our country." (Exhibit 16 to First Supplemental Complaint, at

2.)  The segment was immediately followed by an advertisement for MyPillow. (*Id*. at 24–25.)

- On a March 30, 2021 appearance on *The Eric Metaxas Show*, Mr. Lindell again made statements such as "They came in and stole this election through these machines, Dominion and Smartmatic."  (Exhibit 20 to First Supplemental Complaint, at 5:19–20.)  MyPillow produced a promo code specifically for the show, and host Eric Metaxas said, "Folks, please go to MyPIllow.com, MyStore.com use the code, Eric." (*Id.* at 15–16.)

- On an April 1, 2021 appearance on *Indivisible with John Stubbins*, Mr. Lindell stated, "And what you're gonna find is every state in this country that had machines--Dominion, Smartmatic, and ES&S, they're all cousins, and they all they all have that rated waste feature. And they all were done voting flipped in this last election. We can never have machines again, in any election, here or anywhere in the world, they need to go bye bye. Because yes, not just because you cannot rely on their technicians, or their IP people or their whatever their computer geeks being better than good."  (Exhibit 22 to First Supplemental Complaint, at 16:14–22.)  Mr. Lindell promoted his memoir on the show, saying "Right, you can bet best place to get is mypillow.com. Use promo code ML66, and you'll get them for $9.97, free shipping." (*Id*. at 6:2–4.)

- On an April 8, 2021 appearance on Greg Hunter's *USA Watchdog*, Mr. Lindell said, "Not only that, they're, you know what they did to our country them and Smartmatic, let's not forget Smartmatic, they're like the mothership of this. And for not only being involved in the biggest crime against our country, probably in

history." (Exhibit 24 to First Supplemental Complaint, at 30:20–24.) Greg Hunter stated, "Okay. Mike Lindell, the inventor and the CEO of My Pillow. Mike Lindell I'll put up the links to your site, your your sales page. . . ." to which Lindell responded "Yeah, yeah, thanks. If you put it up, you can use ml 33. And everybody can save a lot on the website up to up to 66%." (*Id*. at 38.)

Mr. Lindell also made sure to take other avenues of attention he received from his false statements about Smartmatic and direct his audience's attention to MyPillow. For example:

- When creating flyers for his MAGA Frank Rally, Lindell instructed an employee to include a MyPillow promo code on the flyer. *See* DEF083005.000133-134.

- When preparing for his Cyber Symposium, MyPillow created a webpage within the MyPillow website to promote the event. On the page, Lindell states "To help support this Cyber Symposium event, I am offering some of the best prices ever on MyPillow products, but they're only offered on FrankSpeech.com. Go to FrankSpeech.com now to receive these exclusive MyPillow offers!" *See* https://www.mypillow.com/frankspeech.

Further, as described in the September 22, 2023 Expert Report of Doug Bania, Defendants' disinformation campaign against Smartmatic allowed Defendants to save between $16.3 and $16.6 million in advertising costs. Because Defendants engaged in deceptive trade practices in violation of Minnesota Law, M.S.A § 325D.44(8), Smartmatic is entitled to recover its costs of litigation, including reasonable attorney's fees, pursuant to M.S.A/ § 325D.45(2). To date, Smartmatic has suffered in excess of $6.3 million in attorney's fees and $571,000 in costs in connection with this litigation.

<u>Punitive Damages</u>

Smartmatic also intends to seek punitive damages against Defendants. Defendants acted with a deliberate disregard for the rights of Smartmatic because they knew about facts or intentionally ignored facts that created a high probability of injury to the rights of Smartmatic and deliberately act with a conscious or intentional disregard or with indifference to the high probability of injury to the rights of Smartmatic. In the weeks following the 2020 election, federal officials assured the public that conspiracy theories concerning the outcome of the election were, in fact, frivolous, and the election had been secure. At all relevant times, Defendants were well-aware that Cybersecurity and Infrastructure Agency Director Krebs and Attorney General William Barr had rejected the conspiracy theories being disseminated about the election.  Indeed, on December 1, 2020, i.e., the date that Attorney General Barr reported that the DOJ had not seen any evidence of widespread fraud, Lindell's mother sent him a text message in which she stated: "so I see Barr is giving up on Trump." DEF049003.150-151. Lindell, acknowledging that he was aware of Barr's statement, responded that he "[couldn't] explain why [Barr] has turned on the President," and he exclaimed without any basis that "Barr hasn't done any investigation…!!" *Id.* Lindell also knew that CISA Director Krebs had rejected the conspiracy theories that the election had been hacked.  On November 30, 2020, Lindell texted an acquaintance "[s]ome confidential stuff" about the election.  DEF047408.00049.  The "confidential stuff" included statements that the federal government, state governments, and foreign nations had used "cyber weapons" to steal the election from President Trump.  *Id.*  Additionally, Lindell told his acquaintance that "Chris Krebs at CISA committed treason and is part of the coup." *Id.*  Then, in February 2021, Lindell appeared on Pete Santili's podcast, where Santili referenced the statements made by Barr and Krebs.  (Supp'l Compl. Ex. 17 at 8.)

Defendants also knew that elected officials rejected their conspiracy theories. On December 20, 2020, Lindell told Trump's Chief of Staff, Mark Meadows, that he was aware that Trump rejected election fraud conspiracy theorist Sidney Powell's proposed plan to "seiz[e]" voting machines, and Lindell was "sickened" by all of the politicians, judges, and media who similarly did not want to "see the truth." DEF035368. On January 10, 2021, Lindell admitted to podcast host Eric Metaxas that Trump legal team member, Jenna Ellis, was "NOT on board" and "seems to seriously dislike Sidney [Powell]." DEF035263. On January 15, 2021, President Trump, himself, rejected Lindell's conspiracy theories. *See MyPillow Guy Presents Trump With "China" Election-Fraud Theory, Lawyers Send Him Packing*, Asawing Suebsaeng, The Daily Beast, January 16, 2021, *available at* https://www.thedailybeast.com/mypillow-guy-presents-trump-with-china-election-fraud-theory-lawyers-send-him-packing. Similarly, after Republican Senator Lindsay Graham encouraged Vice President Pence to certify President Biden's victory, Lindell told Senator Graham's assistant that Senator Graham "should be ashamed of himself letting our country be stole from us with the election fraud!" DEF83940. Lindell knew that that these prominent Republicans rejected the idea that the election had been stolen from Trump.

Defendants also knew and disregarded information provided by Smartmatic's competitor, Dominion Voting Systems ("Dominion"), demonstrating that: the election had not been rigged by voting machines; Dominion and Smartmatic are not related; and Defendants' sources stating otherwise were not credible. On December 23, 2020, Dominion sent a cease and desist letter to Lindell regarding his "patently false accusations that Dominion has somehow rigged or otherwise improperly influenced the recent U.S. presidential election." DEF001068 at 1. Dominion informed Lindell that his "implausible attacks against Dominion have no basis in reality" and he had "participated in the vast and concerted misinformation campaign to slander Dominion." *Id.*

On January 8, 2021, Dominion sent Defendants a retraction demand in which it cited statements by several prominent officials from battleground states that the election had not been rigged. DEF010156 at 2. For example, Dominion cited the statement by Maricopa County Board of Supervisors Chairman Clint Hickman that there is "no evidence of fraud or misconduct" in the vote in Maricopa County, Arizona, and the statement by Georgia's Voting System Implementation Manager, Gabriel Sterling, that the election in Georgia had been secure. *Id.* On February 4, 2021, *i.e.,* one day before Lindell published *Absolute Proof*, Dominion sent Defendants another retraction demand. DEF004727. Dominion informed Lindell that "there is no legitimate evidence [of election fraud]," and it understood that, in *Absolute Proof*, Lindell intended to "amplify perjurers, con artists, non-experts, and other facially unreliable sources." *Id.* at DEF004728.000004. Dominion explained why each of Lindell's sources had no credibility. For example, it showed that the "raw data analytics" that Lindell had cited as evidence that voting machines had been hacked was nonsensical. *Id.* at DEF004728.00002–03. Dominion also explained that Lindell's sources, including Sidney Powell, Russell Ramsland, and Dennis Montgomery had no credibility. *Id.* at DEF004728.000010–11. On February 22, 2021, Dominion sued Defendants for defamation. Dominion explained in its complaint that Trump's and Lindell's claims that the 2020 election was rigged were false. *See generally* (Dominion Complaint).) For example, Dominion repeated what Lindell already knew:

> While Trump falsely claimed that the election had been stolen from him, by November 12, 2020, Trump's own Cybersecurity & Infrastructure Security Agency ("CISA")— then led by a Trump appointee Chris Krebs—confirmed that there was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."

*Id*. ¶ 33. It also clarified that, instead of conspiring with Smartmatic to rig elections, it *competes* with Smartmatic. *Id.* ¶ 41. Finally, on March 10, 2021, one of Lindell's primary sources of

information, Mary Fanning, forwarded Lindell a retraction demand that Dominion had sent her. DEF013183.00001.  In its letter, Dominion explained that Fanning's publications concerning the election—including her publications that Lindell had touted as evidence of election fraud—were all false, and her principal source, Montgomery, was a known "fraudster."  *Id.* at DEF013184.00002–05.  Lindell consciously disregarded all of this information when he defamed Smartmatic.

Defendants further knew that their statements were false based on information from conservative news outlets. On February 2, 2021, Lindell appeared on Newsmax to discuss his suspension from Twitter for posting falsehoods about the election. (Feb. 3, 2021 CBS News article).)  When Lindell began spreading more disinformation about the election, Newsmax host, Bob Sellers, told him on the air: "We at Newsmax have not been able to verify any of those kinds of allegations . . . We just want to let people know that there's nothing substantive that we have seen." *Id.*  Sellers then stated, "[t]he election results in every state were certified" and "[t]he courts have also supported that view." *Id.*  On February 3, 2021, Newsmax told Lindell before he appeared on a Newsmax program, "[n]o mention of stolen election or [D]ominion." DEF047364.00002.  Similarly, on February 16, 2021, a producer for the Fox show, Hannity, warned Lindell: "No mention of Dominion or other actors that have been discussed in the election discussions . . . ." DEF081073.00003. Based on Lindell's dealings with Newsmax and Fox, he knew that not even conservative news platforms would publish the lie that Smartmatic's voting technology had been used to rig the election or that Smartmatic conspired to rig the election.

Defendants further knew that their principal source, Dennis Montgomery, was not credible. Former CIA contractor Dennis Montgomery was one of Lindell's primary sources for his false statements that China and other foreign nations interfered in the 2020 election.  Lindell's Motion

to Compel Compliance and Supporting Affidavit (ECF No. 1, 3), M.D. Fla. Case No. 2:23-mc-0003-SPC-KCD. Lindell's close associates and confidants warned Lindell that Montgomery was not credible. *See* DEF023750; DEF029266.00001; DEF019135; DEF035985.185; DEF121794.00001. By September 2022, Lindell was still promoting Montgomery's lies and claiming that "Montgomery's information will be the final nail in the coffin for THE PROOF that electronic voting machines are stealing your voice!" DEF009346.

MyPillow is also liable for punitive damages because Lindell is an executive who acted in the scope of his employment, and used his lies about the election to sell pillows. Indeed, on January 27, 2021, Lindell reported to others that MyPillow was its "busiest in [its] history," having gone "from 8000 orders a day to 40,000 orders a day." DEF034749.2. He then published his defamatory documentaries, which he used as a springboard to generate even more sales for MyPillow. On February 5, 2021, he published *Absolute Proof*, where he and his guest speakers claimed that China infiltrated the 2020 U.S. election through voting machine technology, including Smartmatic's. (Suppl. Compl. Ex. 1, 2.) Lindell believed that *Absolute Proof* was so important to MyPillow's business that he made it the lead story in the company's monthly newsletter and he encouraged his employees to watch it. DEF001576. On the following day, Lindell appeared on Steve Bannon's podcast to promote *Absolute Proof* and MyPillow. (Suppl. Compl. Ex. 11.) When MyPillow's Marketing Director informed Lindell that other MyPillow advertisers were "plugg[ing] the Documentary," Lindell exclaimed "Awesome!!!" DEF034384.00018-19. On February 22, 2021, Lindell's son and the COO of MyPillow, Darren Lindell, told Lindell that MyPillow received "38,000 orders yesterday," which "[s]hattered every record." DEF082645. Lindell replied: **"**[w]ho said being crazy in the news isn't good :)". *Id.* at 25.

As noted in Smartmatic's Amended Initial Disclosures, while juries have significant discretion in determining the amount of punitive damages, a reasonable estimate of Smartmatic's punitive damages would be nine times its recoverable compensatory damages.

Dated: June 3, 2024

/s/ *Timothy M. Frey*

Christopher K. Larus
   Minnesota Bar No. 0226828
   CLarus@robinskaplan.com
William E. Manske
   Minnesota Bar No. 0392348
   WManske@robinskaplan.com
Emily J. Tremblay
   Minnesota Bar No. 0395003
   ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
   EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
   Tfrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
   JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
   JBedell@beneschlaw.com

Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 3, 2024, a true and correct copy of the

foregoing **Plaintiffs' Sixth Supplemental Answers to Defendant My Pillow, Inc.'s First Set of**

**Interrogatories** was served via email on the following attorneys of record:

**Christopher Kachouroff**
McSweeney, Cynkar and Kachouroff, PLLC
13649 Office Place
Ste 101
Woodbridge, VA 22192
703-621-3300
Email: chris@mck-lawyers.com

**Douglas G Wardlow**
1550 Audubon Rd.
Chaska, MN 55318
612-826-8658
Email: doug@mypillow.com

**Jeremiah David Pilon**
1550 Audubon Rd
Chaska, MN 55318
612-357-2218
Email: jeremiah@pilonlawfirm.com

/s/ *Timothy M. Frey*
Timothy M. Frey