IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V. and SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 22-cv-00098-JMB-JFD<br>)<br>)<br>)<br>)<br>)<br>) |

___

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF PETER KENT**
___

### INTRODUCTION

Plaintiffs repeatedly try to exclude Lindell's witnesses because, according to Plaintiffs, they do not analyze Lindell's alleged defamatory statements or assess whether said statements are the cause for Plaintiffs' alleged damages. Plaintiffs are mistaken in this approach for two reasons. First, no one (certainly not Lindell's experts) is required to argue Plaintiff's theory of the case or accept Plaintiff's claims. But they can advance a different theory that competes with Plaintiffs' claims or analyses. Second, Plaintiffs' case is frivolous because Smartmatic has no damages, no viable business model, no presence in the United States, and Lindell has a First Amendment right to express his political opinions about electronic voting systems that he will continue to do. Peter Kent does not (and should not)

parrot Plaintiffs' theory of the case because he considered alternatives that Plaintiffs refuse to acknowledge. Thus, it is hard to take Plaintiffs' claim that Peter Kent's report is irrelevant as a legitimate argument.

Plaintiffs' tendentious portrayal of Kent's opinion is simply inaccurate. Plaintiffs inaccurately assert that Kent's opinion only discusses (1) the number of times Smartmatic was searched on the internet, and (2) speculation about Lindell's statements as public debate. Pls. Mot. Exclude Kent, at p. 1. But Plaintiffs fail to mention that Kent researched the number of times "Smartmatic" appeared *before* the 2020 General Election finding very few mentions prior to this. Plaintiffs' omitted and excluded Kent's observation that there was a surge of Smartmatic surges *after* the 2020 general election described as "a groundswell of negative commentary" about Smartmatic—wherein Kent systematically catalogued the meteoric rise of derogatory comments all before Lindell's statements. See Kent Rpt., Ex. 692, Pls. Mot. Ex. A, at p. 13, ECF No. 411-1.

Plaintiffs assert here that, even if Smartmatic was mentioned one billion times, it would be irrelevant to the trier of fact for this case. The number of derogatory posts about Smartmatic *prior to Lindell ever mentioning Smartmatic* is indeed very relevant to establish the fact that Smartmatic did not have a positive reputation that could be damaged on February 5, 2021—the first time Lindell mentioned Smartmatic.

Further, defamation damage to a business is different than defamation of a person. Where a natural person can suffer economic and non-economic damages, a business entity can only suffer economic damages in the context of its business operations or lost profits. See *Lundell Mfg. Co. v. Am. Broad. Companies, Inc.*, 98 F.3d 351, 356 (8th Cir. 1996); see

also *Nelle v. WHO Television, LLC*, 342 F. Supp. 3d 879, 887 (S.D. Iowa 2018). Given that legal principle, Plaintiffs' argument is at best confused, and at worst a misrepresentation of the relevant legal principles. Plaintiffs assert that *no amount* of internet mentions about their company prior to Lindell's first utterance can "increase or decrease its potential reputational harm" and would have no bearing on the alleged "harm" Lindell purportedly caused them. Pls. Mot. Exclude Kent, at p. 4. Plaintiffs' theory here is pure speculation because they would have to prove that, but for Lindell's after-the-fact statements, they would have obtained business in the United States—business which Plaintiffs are not federally certified to do. *See* Defs. Br. Supp. Mot. Summ. Judgment, at pp. 31 – 34. Indeed, consistent with Kent's opinion, Smartmatic has *already previously alleged* that their reputation, "intellectual property and tangible assets" had already been destroyed—before Lindell ever mentioned Smartmatic.

Plaintiffs' lawsuit against Fox News was filed February 4, 2021—the day before Lindell made his statements. In their Fox New lawsuit, Plaintiffs claim the following:

> 515. Prior to the disinformation campaign, SGO Corporation's enterprise value was materially in excess of $2.7 billion, even assuming a modest multiplier. Indeed, Smartmatic Election's five-year pipeline of business opportunities was forecasted at over $3.1 billion in revenue prior to the disinformation campaign. . . . .
>
> 518. Moreover, due to the [Fox] Defendants' disparagement of Smartmatic's software and other products, *the value of its intellectual property and tangible assets has been nearly destroyed*. . . . The same harm has been inflicted on the value of Smartmatic's assets as has been inflicted on its enterprise value, *leaving little value beyond liquidation value of tangible assets*.
>
> 519. Smartmatic Elections alone has suffered at least $2.4 billion in reputational and enterprise value damages due to the disinformation concocted and spread by the [Fox] Defendants. In addition, Airlabs has suffered at least

> $224 million in enterprise value as a result of the expected loss of sales (both through Smartmatic and otherwise), resulting in a $105 million reduction in SGO Corporation's enterprise value through its partial ownership of Airlabs, and Folio likewise has lost another $215 million in enterprise value. For SGO Corporation, *the enterprise value of its subsidiaries has been decreased by at least $2.7 billion*.

Decl. Kacherouff, Ex. B, Fox News Complaint. This means, the day *before Lindell ever mentioned Smartmatic once,* Plaintiffs already admitted that their company's reputation was globally destroyed—including in the United States.[1]

Plaintiffs' damages theory requires them to speculate about winning future government contract awards in U.S. states they have *never* done business in, *cannot* legally do business in, and *may never* do business in because they have not obtained federal certifications required to conduct their voting business in U.S. states. *See* Defs. Br. Supp. Defs. Mot. Summ. Judg., ECF No. 436, at pp. 31 – 34. Plaintiffs' inability to obtain U.S. voting certifications occurred long before Lindell ever knew about Smartmatic, let alone mentioned them. *Id.* Plaintiffs admit that their business value was destroyed by Fox and others *before Lindell made any statements,* thus their admissions alone negate any *per se* damages presumption.

## LEGAL STANDARD

Federal Rule of Evidence 702 and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) govern this Court's gatekeeping function to ensure the "liberal admission of expert testimony." *Johnson v. Mead Johnson & Co.*, 754

---

[1] In this case, the international investor Plaintiffs have already jettisoned their international damages claim against Defendants, so the only damages Plaintiffs seek are for alleged damages in the United States.

F.3d 557, 562 (8th Cir. 2014); *see, e.g., United States v. Finch,* 630 F.3d 1057, 1062 (8th Cir.2011) (doubts about the usefulness of expert testimony resolved in favor of admissibility); *Robinson v. GEICO Gen. Ins. Co.,* 447 F.3d 1096, 1100 (8th Cir.2006) (expert testimony should be admitted if it "advances the trier of fact's understanding to any degree"); *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001) (Rule 702 "clearly is one of admissibility rather than exclusion"); *Wood v. Minn. Mining & Mfg. Co.,* 112 F.3d 306, 309 (8th Cir.1997) (holding that exclusion of expert's opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury").

The 8th Circuit Court of Appeals has explained the process this Court should follow:

> Rule 702's "screening requirement" has been "boiled down to a three-part test." *Id.* at 561. First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant. *See id.* Second, the expert must be qualified to assist the finder of fact. *Id.* Third, the testimony must be reliable or trustworthy in an evidentiary sense. *Id.*

*In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*, 9 F.4th 768, 777 (8th Cir. 2021).

In *Lauzon v. Senco Prods., Inc.*, the Eighth Circuit also clarified the application of the *Daubert* factors emphasizing flexibility in assessing reliability. The expert's opinion and testimony should demonstrate that it:

- Relates to specialized knowledge that assists the finder of fact;
- Is based on sufficient facts or data;
- Is the product of reliable principles and methods; and
- Applies those principles and methods to the facts of the case in a reliable manner

*Lauzon,* 270 F.3d at 686. Peter Kent's expert report and testimony satisfies all these criteria.

ARGUMENT

**1. Peter Kent's opinion and analysis is relevant to this matter under Rule 26(b)(1).**

Peter Kent's analysis addresses key aspects of the public discourse surrounding Smartmatic, particularly before and during the time Lindell made the alleged defamatory statements at issue in this matter. Kent Rpt., Pls. Mot. Exclude Kent, Ex. A, ECF No. 411-1. His findings regarding public "mentions" of Smartmatic in search engine or social media commentaries *prior to* February 2021 provide critical context to assess Plaintiffs' alleged causation and damages. *See id.*

Kent demonstrates the existence of pre-existing public discourse about Smartmatic in voting controversies that predated a single statement by Lindell. *Id.* His data shows a surge in mentions *immediately after* the 2020 election, linked to multiple sources, none of which were Lindell's statements at this time because Lindell had not made statements about Smartmatic. This further supports Lindell's argument that his statements occurred within an already active discourse.

Next, Kent's findings about online mentions of Smartmatic before and during Lindell's statements provide a factual basis for understanding causation and reputational harm. The number and reach of pre-existing mentions establish a critical baseline for assessing whether Lindell's statements uniquely or disproportionately affected Smartmatic's reputation. By analyzing the volume and spread of mentions, Kent's findings counter the assertion that Lindell's statements alone caused reputational damage. Notably because Smartmatic has already admitted in public filings that their reputation was already damaged before Lindell's first mention of Smartmatic. *See* Defs. Ex. B. This information is vital for

determining the proportional impact of Lindell's statements, especially where Plaintiffs have already admitted that other people destroyed their business before Lindell's statements appeared.

In defamation cases, causation between defamatory statements and reputational harm is required. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 258 (Minn. 1980). Kent's analysis reveals that the narrative surrounding Smartmatic predated Lindell's actions, weakening the causal link between Lindell's statements and the specific harm Smartmatic alleges they suffered *as a result* of Lindell's statements. This evidence diminishes the link between Lindell's statements and any specific reputational harm Smartmatic claims to have suffered. Therefore, Kent's analysis is vital for determining the proportional impact of Lindell's statements within an already active discourse. Excluding Kent would be highly prejudicial to Defendants.

**2.   Plaintiffs fail to establish the high showing necessary to exclude Kent's opinion and testimony under Rule 26(b).**

Smartmatic asserts that Kent's analysis of pre-campaign mentions is irrelevant because the jury must decide whether Lindell's statements caused harm after February 5, 2021. This criticism overlooks and omits how public discourse prior to Lindell influenced Smartmatic's reputation without any connection to Lindell or My Pillow. This provides critical context for assessing whether, and to what extent, Smartmatic suffered any reputational injuries *as a result* of Lindell rather than those they suffered prior to Lindell's statements.

Additionally, Minnesota law supports the admissibility of Kent's findings to show

analysis and factual trends that provide the finder of fact with required context to assess any damages findings. *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019).

    A.    <u>The contextual evidence Peter Kent provides is relevant to damages</u>.

Kent's findings help establish that Smartmatic's reputational harm cannot be solely attributed to Lindell. His analysis of pre-2021 commentary demonstrates that Smartmatic's reputation and public perception were already subjects of scrutiny, thus diluting claims that Lindell's statements were the primary driver of harm.

In defamation cases, Minnesota courts allow evidence of a plaintiff's prior reputation or pre-existing harm when assessing the impact of the defendant's statements. *Id.* This ensures that damages are not unfairly attributed to the defendant alone. In this case, it is clear that Plaintiffs sued Fox News the day before Lindell mentioned Smartmatic. *See* Defs. Ex. B. In that Fox News case, Plaintiffs claimed that that there was no more value to their brand or their business. *Id.* A jury is entitled to hear this information, and the opinions of Kent, to determine the applicable context of public discourse about Plaintiff prior to Lindell's statements.

    B.    <u>Lindell's statements at issue in this case were made in the context of nationwide broad public discourse regarding election integrity</u>.

Kent's findings that Smartmatic was extensively mentioned in online discourse *before* the start of Michael Lindell's statements criticism of computerized voting provide critical context to Plaintiffs' damages and causation claims. His analysis shows that allegations and criticisms of Smartmatic were neither novel nor exclusive to Lindell. *See* Kent Rpt., Pls. Ex. A. For instance, other prominent figures such as Sidney Powell and Rudy

Giuliani discussed Smartmatic in highly visible settings, as indicated by Kent's report, prior to Lindell's statements. *Id.* This demonstrates that public perceptions of Smartmatic were shaped by various contributors, not solely by Lindell's statements. *Id.*

The continuation of ongoing public debate themes in Lindell's statements also highlights that Lindell's comments were not uniquely harmful but part of an existing narrative and public discourse on matters of clear public concern. This, too, undermines Smartmatic's claims that Lindell's statements caused disproportionate harm.

Minnesota courts recognize that an alleged defamatory statement must be considered in the context of the broader discourse. *Tholen v. Assist America, Inc.*, 528 F. Supp. 3d 1017, 1024 (D. Minn. 2021). Kent's findings demonstrate that Lindell's statements were part of a larger, ongoing public debate about voting machine companies, further challenging the causal link between his statements and any alleged harm.

Excluding Kent's findings would obscure the full scope of Smartmatic's reputational challenges, making it appear as if Lindell's campaign alone caused harm. The pre-existing commentary about Smartmatic provides a broader view of its public perception landscape. Understanding this helps differentiate the impact of Lindell's actions from that of others.

### III. Peter Kent has more than sufficient qualifications, experience, and a high degree of reliability to offer his opinion and testimony in this matter.

Peter Kent's qualifications and methodology are generally not acceptable grounds to exclude expert testimony prior to trial. See *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (addressing that Minnesota law favors a liberal approach to admitting expert testimony, leaving most concerns about methodology to cross-examination rather than

preclusion).

    A. <u>Peter Kent has extensive qualifications in the field that he provides analysis and opinion on in this matter</u>.

Kent's four decades of experience in internet technologies, digital media analysis, and social media strategy qualify him to analyze trends in online discourse. *See* Kent Rpt., Pls. Ex. A. His expertise aligns directly with his assignment to evaluate the volume, reach, and timing of mentions of Smartmatic.

    B. <u>Peter Kent's methodology has been well-recognized as sufficient and reliable in the field of information and network technologies and digital media analysis</u>.

Kent used a data driven analysis with well-established tools, including, but not limited to, Google Trends, BuzzSumo, and Infegy Atlas, to analyze mentions of Smartmatic. *Id.* Methodologies such as those used with tools like BuzzSumo and Infegy Atlas are standard in social media and content analysis, reflecting trends and patterns, even without sentiment analysis. These tools are standard in the industry for tracking online engagement and have been deemed reliable in similar contexts. *Id.* Even though Plaintiffs assert that Kent did not analyze sentiment, the core of his analysis (tracking instances of mentions and tracking engagement) is valid for understanding the volume and reach of discourse.

While sentiment analysis could add depth, it is not a prerequisite for evaluating the relevance and frequency of "Smartmatic" mentions. Volume and reach remain critical metrics for understanding public awareness and dissemination. Even assuming that sentiment analysis is necessary—it is not—Minnesota courts allow expert testimony that provides partial but relevant insights, leaving gaps to be addressed during cross-examination. See *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 797

(D. Minn. 2000).

    C. <u>Peter Kent's opinion and testimony will offer relevant and necessary assistive value to the jury</u>.

Minnesota law emphasizes that expert testimony need only provide *helpful*, not conclusive, information to the jury. *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 591 (1993)). Kent's findings assist the jury in understanding the broader context of public discourse and assessing whether Lindell's campaign disproportionately harmed Smartmatic.

By quantifying mentions and reach, Kent contributes evidence that other sources widely disseminated allegations about Smartmatic. This is helpful (and relevant) because it demonstrates that Lindell's statements did not occur in a vacuum but were part of an ongoing broader discourse.

## CONCLUSION

Kent's testimony directly supports the Defendants' argument that Lindell's statements did not uniquely or disproportionately damage Smartmatic. By demonstrating the widespread nature of pre-existing allegations and commentary, Kent's findings challenge the causation link between Lindell's actions and Smartmatic's alleged damages.

Peter Kent's testimony meets the standards for admissibility under *Daubert*, federal law, and Rule 702. His findings are directly relevant to assessing causation and damages, his methodology is reliable, and his expertise qualifies him to offer opinions on digital trends and public discourse. Excluding Kent's testimony would deprive the jury of crucial context necessary to evaluate the proportionality of the harm allegedly caused by Lindell's statements. Minnesota courts favor the inclusion of such evidence to ensure a fair and

comprehensive assessment of the claims at issue.

Dated: December 13, 2024.

        Respectfully submitted,

        **MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**

        By */s/ Christopher I. Kachouroff*
        Christopher I. Kachouroff* (Bar No. 44216)
        13649 Office Place, Suite 101
        Woodbridge, Virginia 22192
        Telephone: (703) 621-3300
        chris@mck-lawyers.com

        Douglas G. Wardlow (MN Bar #339544)
        Jeremiah D. Pilon (MN Bar #392825)
        1550 Audubon Rd.
        Chaska, MN 55318
        Telephone: (952) 826-8658
        doug@mypillow.com
        jpilon@mypillow.com

        **ATTORNEY FOR MY PILLOW, INC. AND MICHAEL LINDELL**

        *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court of Minnesota by using the CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By /s/ *Christopher I. Kachouroff*
Christopher I. Kachouroff (VSB# 44216)
**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
703.365.9900
chris@mck-lawyers.com