# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL J. LINDELL and MY PILLOW, INC., <br><br> Defendants. | Case No. 22-cv-0098-JMB-JFD |

## SMARTMATIC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 2

I.    **Defendants have not rebutted Smartmatic's evidence requiring partial summary judgment on its defamation claim.** .................................. 3

A.    Defendants concede summary judgment on publication. ............................ 3

B.    Defendants' arguments on "of and concerning" are legally and factually inaccurate. ................................................................ 4

C.    Defendants do not identify any evidence rebutting Smartmatic's proof that their statements were false. ....................................... 5

1.    Defendants' statements were false because Smartmatic machines were not used to rig the 2020 election. ........................... 7

2.    Defendants' statements were false because voting machines were not used to rig the 2020 election. ................................ 9

3.    Defendants' statements were false because Smartmatic's machines were not connected to the Internet and were neither hacked nor compromised. ............................................... 11

4.    Defendants' statements were false because Smartmatic's technology was not designed to rig elections. .................................. 13

D.    Defendants' arguments about an "opinion" defense are legally and factually inaccurate. ........................................................... 14

1.    Defendants misstate the law to create an "opinion" defense. .......... 14

2.    Defendants' statements are actionable as they are demonstrably and objectively false. ............................................... 16

3.    Defendants' statements are also actionable as "mixed opinion." ..... 20

E.    Defendants' arguments on defamation *per se* are legally inaccurate. ......... 21

II.   **Defendants have not rebutted Smartmatic's evidence entitling it to summary judgment on vicarious liability.** ........................................ 23

i

**III.    Defendants repeated their legally and factually inaccurate arguments regarding Smartmatic's claim pursuant to the MDTPA.** ................................... **24**

**CONCLUSION** ................................................................................................. **25**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boerner v. Brown & Williamson Tobacco Co.*,
    394 F.3d 594 (8th Cir. 2005) ........................................................................ 10

*Curtis Publ'g co. v. Butts*,
    388 U.S. 130 (1967) ...................................................................................... 2

*DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*,
    576 F.3d 820 (8th Cir. 2009) ...................................................................... 13

*Dominion Voting Systems v. Fox News Network*,
    293 A.3d 1002 (Del. Super. 2023) ......................................................... 6, 22

*Edgewater Motels, Inc. v. Gatzke*,
    277 N.W. 2d 11 (Minn. 1979) ..................................................................... 24

*Edmonds v. Minneapolis Pub. Sch. Special Sch. Dist. 1*,
    368 F. Supp. 3d 1329 (D. Minn. 2018) ...................................................... 13

*Enigma Software Group, USA, LLC v. Bleeping Computer LLC*,
    194 F.Supp.3d 263 (S.D.N.Y. 2016) .......................................................... 21

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ............................................................................. 14, 15

*Jadwin v. Minneapolis Start and Tribune Co.*,
    367 N.W.2d 476 (Minn. 1985) ...................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................... 25

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ................................................................... 2, 15, 16, 20

*Nunes v. Lizza*,
    12 F.4th 890 (8th Cir. 2021) ...................................................................... 16

*Popoalii v. Corr Med. Servs.*,
    512 F.3d 488 (8th Cir. 2008) ....................................................................... 7

*Price v. Viking Penguin, Inc.*,
    881 F.2d 1426 (8th Cir. 1989) ............................................................................ 15

*Schlieman v. Gannett Minn. Broadcasting, Inc.*,
    637 N.W.2d 297 (Minn. Ct. App. 2001) ....................................................... 8, 21

*Smartmatic U.S.A. v. Newsmax Media*,
    2024 WL 4165101 (Del. Super. Sept. 12, 2024) ............................................... 6

*Smartmatic USA Corp. v. Fox Corp.*,
    2022 WL 685407 (N.Y. Sup. Ct. Mar. 8, 2022) .............................................. 22

*Smartmatic USA Corp.. v. Newsmax Media, Inc.*,
    2023 WL 5551026 (Del. Super. Aug. 23, 2023) ............................................. 22

*Smartmatic v. Lindell*,
    Case No. 22-cv-0998, 2022 WL 4343299 (D. Minn. Sep. 19, 2022) ................. 6

*Stokes v. CBS Inc.*,
    25 F.Supp.2d 992 (D. Minn. 1998) ................................................................... 4

*Toney v. WCOO Television, Inc.*,
    85 F.3d 383 (8th Cir. 1996) ............................................................................ 16

*United States v. Brown*,
    315 F.3d 929 (8th Cir. 2003) .......................................................................... 10

## Other Authorities

Fed R. Evid. 802 ................................................................................................... 13

## INTRODUCTION

Defendants were not sued because Lindell believes voting machines should not be used in elections. Smartmatic sued Defendants because Lindell repeatedly stated and implied that Smartmatic voting machines were used to manipulate the outcome of the 2020 election and published others making similar accusations. These accusations that Lindell has championed for the last four years are demonstrably and objectively false. Defendants cannot avoid responsibility by recasting their accusations as non-actionable opinion.

***No Evidence.*** Summary judgment is the time to "put up or shut up." The "put up" means to come forward with evidence. Defendants failed the test. Defendants' opposition is long on exposition but short on evidence. Defendants do not identify any evidence showing that Smartmatic voting machines were used to change votes during the 2020 election. Nor do Defendants identify any evidence that Smartmatic machines were connected to the Internet, hacked, or compromised. That same is true with respect to voting machines in general. Defendants did not present any evidence corroborating what Lindell and others said during the Defamatory Publications.

***Undisputed Evidence.*** Smartmatic introduced four categories of evidence to show why Defendants' statements at issue were demonstrably and objectively false: (1) Smartmatic machines were not used to rig the 2020 election, (2) voting machines were not used to rig the 2020 election, (3) Smartmatic machines were not connected to the Internet, hacked or compromised, and (4) Smartmatic did not design machines to rig elections. Defendants did not identify any evidence rebutting these points. Thus, these are the four reasons—based on undisputed evidence—that all the statements at issue are false.

1

*Opinion.* Defendants structure their so-called "opinion" defense on a misstatement of the law. The U.S. Supreme Court rejected the framework that Defendants present in *Milkovich*. The dispositive question is whether the statements at issue are sufficiently factually to be proven true or false. All the statements are capable of being proven false (and have been proven false) because they all convey that Smartmatic machines were used to manipulate the outcome of the 2020 election. That is an accusation about a historical event that did not happen. All the statements are actionable.

## ARGUMENT[1]

Defendants spend several pages discussing the guardrails that have been erected around speech on matters of public concern, and there are many. (Opp. at 4-8.[2]) But the U.S. Supreme Court has limited those guardrails in two important ways. First, the Court has instructed that there is no constitutional value to false statements of fact. They debase, not further, debate. (SMMT Opp. at 2-3.) Second, the actual malice standard provides defendants all the protection they need when it comes to being held responsible for their speech on matters of public concern. *See Curtis Publ'g co. v. Butts*, 388 U.S. 130, 153 (1967). Smartmatic's claims against Defendants are well within the guardrails because

---

[1] Internal citations and quotations are omitted and emphasis added throughout.

[2] "Br." refers to Smartmatic's memorandum in support of its motion for partial summary judgment (ECF No. 390). "Opp" refers to Defendants' opposition to Smartmatic's motion for partial summary judgment (ECF No. 459). "SMMT Opp." refers to Smartmatic's opposition to Defendants' motion for summary judgment (ECF No. 456).

Defendants published demonstrably false facts and Smartmatic will prove Defendants acted with actual malice.

## I. Defendants have not rebutted Smartmatic's evidence requiring partial summary judgment on its defamation claim.

The Defendants spend much of their opposition fighting how Smartmatic catalogues the statements at issue. (Opp. at 25-31.) But how the statements are categorized does not matter. Defendants are liable because Lindell falsely stated and implied that Smartmatic machines were used to manipulate the outcome of the 2020 election and Defendants published statements by others conveying the same message. Indeed, the purpose of the Defamatory Publications was for Lindell to present his alleged "evidence" that Smartmatic voting machines were used to alter the results of the 2020 election. There was no such evidence.

### A. Defendants concede summary judgment on publication.

Appendix A[3] sets forth how Defendants published each of the statements at issue either because they were the publisher of the Defamatory Publication or Lindell made the statement on a program produced by someone else. Defendants do not respond to that analysis and do not dispute they published the statements at issue. (Br. at 26-27; Opp. at 4 n.1.) Thus, the Court should enter summary judgment for Smartmatic on the publication element. Moreover, the fact that Defendants published the statements at issue undermines

---

[3] Appendices A through D were attached to Smartmatic's motion for partial summary judgment (ECF Nos. 391-94).

two of the excuses they offer in their opposition to distance themselves from responsibility for those statements.

First, Defendants argue that some of the statements were spoken by someone other than Lindell during the documentaries and symposium Defendants published. (Opp. at 25.) But the speaker is irrelevant. Defendants are responsible for all statements made during the programs they published. Defendants are responsible for those statements because they are the publisher of the statement. *See Stokes v. CBS Inc.*, 25 F.Supp.2d 992, 1004-05 (D. Minn. 1998) (finding media company defendant could be liable where it published the statement of a third party). Defendants cite no case to the contrary.

Second, Defendants argue that Lindell was simply repeating what he had heard from others when making his statements. (Opp. at 25, 26, 29.) But that is not a defense. The law does not draw a distinction between the original speaker of a defamatory statement and someone who repeats the defamatory statement. (Br. at 26 (collecting cases).) Defendants cite no case to the contrary. Defendants are responsible for all the statements at issue.

**B.    Defendants' arguments on "of and concerning" are legally and factually inaccurate.**

Appendix B establishes how and why each of the statements at issue were "of and concerning" Smartmatic because (1) Smartmatic is mentioned specifically in the statement, (2) Smartmatic is mentioned during the Defamatory Publication as being one of the voting machines being used and the statement is about voting machines, and/or (3) Smartmatic is identified as the software being used by other voting machines during the Defamatory Publication and the statement is about the software used by voting machines. (Br. at 28-

30.) Defendants do not dispute this analysis so summary judgment should be entered for Smartmatic on the "of and concerning" element too.

The arguments raised by Defendants are nonstarters. First, Defendants argue the Court cannot find the statements to be "of and concerning" Smartmatic because "there is a genuine dispute of material fact about whether all the statements identified by Plaintiffs are truly statements of fact." (Opp. at 32.) Defendants are mixing elements. A statement is "of and concerning" the plaintiff so long as a reader or listener "would understand the statement to be directed at the plaintiff." (Br. at 28 (collecting cases).) Defendants cite no case for the notion that whether a statement is "of and concerning" the plaintiff turns on whether the statement is an assertion of fact.

Second, Defendants argue that some of the statements are not "of and concerning" Smartmatic because Smartmatic is not mentioned in the statement. (Opp. at 32.) But that myopic view is not the way it works. Whether a statement is "of and concerning" plaintiff depends on the totality of the publication. (Br. at 28.) Appendix B explains how each of the statements relate to Smartmatic based on what else was said during the Defamatory Publication. Defendants do not dispute any of that analysis; and, do not identify a single statement that was not "of and concerning" Smartmatic based on the context of the Defamatory Publication. (Opp. at 32.)

## C.    Defendants do not identify any evidence rebutting Smartmatic's proof that their statements were false.

Appendix C establishes why each of the statements at issue was demonstrably and objectively false. Each statement was false because (1) Smartmatic machines were not used

to rig the 2020 election, (2) voting machines were not used to rig the 2020 election, (3) Smartmatic machines were not connected to the internet or hacked, and (4) Smartmatic machines were not designed to rig elections. Smartmatic introduced evidence to establish each of these facts. (Br. at 31-38.) Defendants identified **zero** evidence in response to these points. (Opp. at 25-31.)

Defendants challenge Smartmatic's categorization of some of the statements at issue as opposed to identifying evidence that any of their statements were true. (*Id.*) But that misses the point. "A statement or communication is false if it is not substantially accurate, and a statement or communication is not substantially accurate if its essence is not true." (Br. at 31 (quoting *Smartmatic v. Lindell*, Case No. 22-cv-0998, 2022 WL 4343299, at *3 (D. Minn. Sep. 19, 2022).) The four categories of evidence offered by Smartmatic – which Defendants do not dispute – establish why the "essence" of each statement was "not substantially accurate."

This is a consequential issue. Every court that has been asked to rule on whether voting machines were used to manipulate the outcome of the 2020 election has rule that there is no such evidence. *See, e.g., Smartmatic U.S.A. v. Newsmax Media*, 2024 WL 4165101, at *22 (Del. Super. Sept. 12, 2024) ("[S]tatements regarding Smartmatic software or voting machines altering the results of the Election are factually false."); *Dominion Voting Systems v. Fox News Network*, 293 A.3d 1002 (Del. Super. 2023) ("The evidence developed in this civil proceeding demonstrates that is CRYSTAL clear that none of the Statements relating to Dominion about the 2020 election are true"). Defendants have failed to present evidence necessary to raise a genuine issue of material fact, and this Court should

not be the first court in the country to rule that there is a disputed issue of fact regarding whether the outcome of the 2020 election was manipulated by voting machines.

### 1. Defendants' statements were false because Smartmatic machines were not used to rig the 2020 election.

It does not matter that Lindell did not use the word "rig" or "rigged" during the Defamatory Publications. (Opp. at 25.) That is not the point. The point is Smartmatic introduced evidence establishing that its machines were only used in Los Angeles County, its machines did not switch or change any votes, and post-election audits confirmed the absence of manipulation of the vote in Los Angeles County. (Br. at 31-34.) Defendants identified *zero* evidence countering these points.[4] The record before this Court is undisputed that Smartmatic machines were not used to alter the results of the 2020 election or switch, change, or manipulate any vote.

That conclusion means that the "essence" of every statement at issue was not "substantially accurate." (*See* Appendix C.) Each of the Defamatory Publications involved Lindell and others talking about how the outcome of the 2020 election had been manipulated. Every statement about Smartmatic in the context of the Defamatory

---

[4] Defendants argue that there is a disputed issue of fact over whether Smartmatic's BMDs were involved in counting votes. (Opp. at 24.) The only source that Defendants cite on this issue is a declaration of their expert, Benjamin Cotton, disclosed for the first time with their opposition brief as attached to a separate opposition to a motion to exclude Cotton. (*Id.*) The Court must disregard the Cotton declaration as untimely because the opinions expressed in the declaration were not previously disclosed. *See Popoalii v. Corr Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) (affirming lower court's decision to strike an expert affidavit that was provided at summary judgment and contained new information). But, ultimately, it does not matter whether or not the BMDs were involved with counting votes because there is *no evidence* of them being used to manipulate a single vote.

Publications conveyed that Smartmatic technology was used to accomplish that outcome – to manipulate the outcome of the 2020 election. There was no reason to talk about Smartmatic during a Defamatory Publication about manipulation of the 2020 election other than to convey that Smartmatic's machines were one of the tools used to manipulate the outcome.

In response, Defendants argue that "Lindell has never stated nor implied that Smartmatic or any voting machine rigged the election or switched votes in the 2020 election." (Opp. at 25.) But the focus is not on individual words. "In determining whether a communication is defamatory, words must be construed in context." *Schlieman v. Gannett Minn. Broadcasting, Inc.*, 637 N.W.2d 297, 305 (Minn. Ct. App. 2001) (*citing Jadwin,* 367 N.W.2d at 492.) Such context includes "statements preceding and following the alleged defamatory statement," "the omission of certain facts [to] create[] a defamatory meaning," "linkage of statements [to] create[] a defamatory meaning," and "whether the statement is an opinion that is based on defamatory facts." *Id.* (finding jury instruction that prevented jury from considering these factors to be erroneous).

Here, based on their context, the statements at issue conveyed that Smartmatic machines were used to manipulate the outcome of the 2020 election. That was the entire point of the Defamatory Publications. Moreover, Appendix C1 highlights the language that was used by Lindell and others during the Defamatory Publications to convey that Smartmatic technology and other voting machines were used to manipulate the outcome of the 2020 election. The undisputed fact that Smartmatic machines were not used to rig the 2020 election means that the "essence" of each statement was not "substantially accurate."

8

Even Lindell knows this to be true. During his deposition, Lindell admitted that he identified Smartmatic as being involved in the election fraud in all the documentaries and the symposium. (Ex.1 at 131:17-132:8, 259:18-24, 274:21-275:6, 275:7-17, 280:17-281:6.) Lindell made his intent clear during his deposition:

> If somebody asked me if Smartmatic was used – if their machines were used to rig the 2020 election, I will say yes, until – forever. You guys – *you can't change history*. *You guys did it, and that you were part of it*, and that's it.

(*Id.* at 340:6-11.) Defendants' argument – that the Defamatory Publications did not convey that Smartmatic and other voting machines were used to manipulate the 2020 election – is revisionist history that not even Lindell believes to be true.

### 2. Defendants' statements were false because voting machines were not used to rig the 2020 election.

Smartmatic introduced evidence that voting machines were not used to manipulate the outcome of the 2020 election. (Br. at 34-36.) Smartmatic also introduced evidence that Smartmatic technology, including its software, was not used by any other voting machine company and not used outside Los Angeles County. (*Id.* at 31-34.) Defendants identified *zero* evidence to counter these points. Accordingly, it is undisputed that voting machines were not used to manipulate the outcome of the 2020 election and, even if they were, that would not implicate Smartmatic because its technology was not used in any other voting machine.

In response, Defendants argue that the evidence cited by Smartmatic is hearsay. (Opp. at 21 n.4.) Defendants cite *zero* case law in support of their characterization of the evidence as hearsay – and for a reason. The evidence is not hearsay as it falls under the

Public Records exception. Reports prepared by a government agency that was under a legal obligation to prepare the information is admissible under the public records exception. *See, e.g.*, *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 600–01 (8th Cir. 2005) (admitting Surgeon General's report on tobacco use amongst young people). So too is data and information routinely collected by a government agency. *United States v. Brown*, 315 F.3d 929, 931 (8th Cir. 2003) (collecting cases).

Moreover, the record before this Court includes declarations and reports of Alan Sherman and Tammy Patrick. Dr. Sherman is an election technology specialist. (Ex.54¶1.) Ms. Patrick has served for over 20 years in a variety of roles as an election administrator. (Ex.255 ¶1). Dr. Sherman and Ms. Patrick both concluded that there was no evidence of outcome determinative vote manipulation during the 2020 election by voting machines. (Ex.54¶8-9, 12-13, Ex.55¶¶5-7; Ex.255, Appendix A at 74-75.) Any such manipulation would have been detected, among other ways, through the post-election audits. (*Id.*) Thus, the record establishes with undisputed evidence that voting machines were not used to manipulate the outcome of the 2020 election.

That undisputed fact further reinforces that the message conveyed by the Defamatory Publications was not "substantially accurate." Each Defamatory Publication conveyed that voting machines were used to manipulate the outcome of the 2020 election (Appendix C1) and Smartmatic was identified as one of those voting machines being used (Appendix A). Given that it is undisputed that voting machines were not used to manipulate the outcome of the 2020 election, it was not "substantially accurate" for Smartmatic to be

identified as one of the voting machines that were used to manipulate the outcome of the 2020 election.

> ### 3. Defendants' statements were false because Smartmatic's machines were not connected to the Internet and were neither hacked nor compromised.

Smartmatic introduced evidence that the only machines it supplied for the 2020 election were BMDs for Los Angeles County. (Br. at 3-4, 37.) Smartmatic also introduced evidence establishing that its BMDs were (1) not connected to the Internet, (2) not compromised during the 2020 election, and (3) not hacked during the 2020 election. (*Id.*) Defendants introduced **zero** evidence in response to these points. (Opp. at 27-30.) That means the undisputed evidence establishes that Smartmatic's machines were not connected to the Internet and were neither hacked nor compromised during the 2020 election. That is yet another reason many of the statements at issue were not substantially accurate.

One of the primary messages conveyed during the Defamatory Publications was that the voting machines, including Smartmatic's machines, were "hacked" or "attacked" by enemies of the United States and that the voting machines were, thus, compromised and votes were switched. (*See* Appendix C (Stmt. Nos. 1, 4, 5, 7-10, 12, 13, 15, 16, 18, 20, 22, 25, 26, 29-31, 35, 37, 38, 40, 41, 44, 46-49, 54).) And, as a prerequisite to this message, Lindell and others stated during the Defamatory Publications that the machines were connected to the Internet even though they were not supposed to be connected to the

Internet. (*See* Appendix C (Stmt. Nos. 5, 9, 10, 11, 13, 17[5], 35, 37, 39, 41).)  But, based on the undisputed record, those statements were not "substantially accurate" because Smartmatic's machines were not connected to the Internet and were neither hacked nor compromised during the 2020 election.

Defendants do not deny this conclusion but, instead, set up a strawman. Defendants argue that "Lindell has never stated or implied that Smartmatic machines (or any voting machines) hacked the 2020 election." (Opp. at 27.) But that is not the basis of Smartmatic's claim. The false accusations that Defendants published were that the voting machines— including Smartmatic machines—were (1) connected to the Internet and (2) hacked or compromised during the election. It is irrelevant who was doing the hacking or compromising. Smartmatic's reputation for providing technology used for secure and accurate elections was undermined by the notion that (1) its machines were connected to the Internet and (2) its machines were hacked or compromised during the election.

Defendants also argue that "the network access all voting machines companies admit they have [Cite?] [*sic*] create intrinsic vulnerabilities that could be susceptible to hacking, especially if election workers fail to properly secure their election systems." (Opp. at 28.) Defendants also discuss a so-called "national discussion questioning the integrity of electronic voting systems." (*Id.* at 9-11.) But Defendants miss the point again. The

---

[5] Appendix C and Smartmatic's Opening Brief inadvertently referred to Statement 17 as occurring on a taping of the *War Room* podcast on February 6, 2021, and attached a transcript from February 6 (Ex.33). This statement occurred at the February 5, 2021 *War Room* episode. The transcript of the February 5, 2021 appearance is attached as Exhibit 268. Appendix E provides citations for each Defamatory Statement.

statements at issue did not convey that voting machines, including Smartmatic's machines, could theoretically be hacked or compromised. The statements at issue conveyed that the voting machines, including Smartmatic machines, were hacked and compromised. The latter was not "substantially accurate."

### 4. Defendants' statements were false because Smartmatic's technology was not designed to rig elections.

Smartmatic introduced evidence to establish that its technology was not designed to rig elections but, rather, were designed to enable election stakeholders to audit the entire process. (Br. at 38.) Smartmatic also introduced evidence to establish that the integrity of Smartmatic's technology has been validated by post-election audits around the world and by world renowned institutions. (*Id.*) Defendants identified *zero* evidence in response to these points. That means it is undisputed that Smartmatic technology was not designed to rig elections, nor was it used to rig elections outside the United States.

The only "evidence" that Defendants offered in response are described as a 2010 letter "from Obama Lawyer John Bonifaz" and 2008 report "by Obama Lawyer John Bonifaz." (Opp. at 31.) Several problems with these documents. One, Defendants have not laid any foundation for what the documents purport to be, nor have the documents been authenticated in any way. *See DG&G, Inc. v. FlexSol Packaging Corp.*, 576 F.3d 820, 825-26 (8th Cir. 2009). Two, they constitute inadmissible hearsay. *See* Fed R. Evid. 802. Three, one of the documents was not previously produced in discovery, nor referenced in Defendants' answer or disclosures. *See Edmonds v. Minneapolis Pub. Sch. Special Sch. Dist. 1*, 368 F. Supp. 3d 1329, 1338 (D. Minn. 2018) ("[a] party who fails to disclose or

supplement required discovery 'is not allowed to use that information . . . to supply evidence on a motion"). Defendants cannot use inadmissible evidence to manufacture a disputed issue of fact.

Based on the record before this Court, it is undisputed—based on admissible evidence—that Smartmatic technology was not designed to rig elections and did not rig elections outside the United States. This provides yet another reason to find some of the statements at issue false. Defendants published accusations that voting machines, including Smartmatic machines, were used to manipulate the 2020 election as they had been designed to do and had done elsewhere. (*See* Appendix C (Nos. 1, 2, 5, 6, 9, 14, 19, 20-24, 27-31, 33-35, 37, 39, 42, 45, 50-52).) Those statements were not "substantially accurate" because Smartmatic machines were not designed to rig elections and had never been used to rig elections.

### D. Defendants' arguments about an "opinion" defense are legally and factually inaccurate.

Lindell has spent the last four years claiming that he has "100% proof" that voting machines were used to manipulate the outcome of the 2020 election. Now, faced with a summary judgment motion, Defendants are reversing course and claiming Lindell never asserted any facts about voting machines. The course reversal is a ruse.

### 1. Defendants misstate the law to create an "opinion" defense.

Nearly everything the Defendants say about the so-called "opinion" defense is wrong. Defendants say that "expressions of opinions cannot give rise to actionable defamation." (Opp. at 5 (citing *Gertz*, 418 U.S. 323).) Wrong. They say that actionable

versus non-actionable statements is based on a "fact/opinion distinction." (Opp. at 6-7 (citing *Price v. Viking Penguin, Inc.*, 881 F.2d 1426 (8th Cir. 1989).) Nope. And, Defendants say, again relying on *Price*, that "even some false statements of fact must be protected" in the political area. (Opp. at 6.) Not so. The "opinion" defense as articulated by Defendants was rejected by the U.S. Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), issued the year after *Price.*

In *Milkovich*, the U.S. Supreme Court rejected establishing a constitutional safeguard "for defamatory statements which are characterized as opinion as opposed to fact." *Id.* at 18. In doing so, the Court explained that *Gertz* did not "create a wholesale defamation exemption for anything that might be labeled opinion." *Id.* Such a rule would ignore "the fact that expressions of opinion may often imply an assertion of objective fact." *Id.* The "breathing space which freedoms of expression require in order to survive is adequately protected by existing constitutional doctrine without the creation of an artificial dichotomy between opinion and fact." *Id.* at 19. "[A] statement on matters of public concern" is actionable where it is "provable as false." *Id.*

The critical inquiry after *Milkovich* is whether the statement at issue is "sufficiently factual to be susceptible of being proved true or false." *Id.* at 21. In making that determination, the *Janklow* factors are still relevant, but the most important question is whether the statement is factual and provable.

> In *Milkovich*, the Supreme Court rejected 'the number of factors developed by lower courts' used to provide constitutional protection for opinion . . . . Instead, for a statement to be actionable, the inquiry is whether the statement is factual and provable. Accordingly even if *Janklow* or *Price* suggested that implications are constitutionally

suspect, *Milkovich* made clear that implications, like plain statements, may give rise to a defamation claim.

*Toney v. WCOO Television, Inc.*, 85 F.3d 383, 394 (8th Cir. 1996). After *Milkovich,* "the *Janklow* factors no longer control our analysis, and [] the proper inquiry is whether the statement or implication 'is factual and provable." *Nunes v. Lizza*, 12 F.4th 890, 898 (8th Cir. 2021).

### 2. Defendants' statements are actionable as they are demonstrably and objectively false.

Smartmatic did not bring its claims against Defendants for believing voting machines should not be used in elections. (Opp. at 14-15, 28.) Smartmatic brought its claims because Defendants stated and implied that voting machines, including Smartmatic machines, were used to manipulate the outcome of the 2020 election. That did not happen. Their statements are actionable because they are "sufficiently factual to be susceptible of being proved true or false." *Milkovich*, 497 U.S. at 21.

***Context.*** Defendants published the statements in the context of having (allegedly) conducted a thorough investigation into manipulation of the 2020 election results. Four of the Defamatory Publications were presented as "documentaries" where Lindell and others presented "proof" that the results of the 2020 election was manipulated by voting machines. (Defamatory Publications 1, 9, 12, 16.) One of the Defamatory Publications was presented as a "symposium" where Lindell and others presented "evidence" of the cyber-attack on voting machines that changed the results of the 2020 election. (Defamatory Publication 17.) And the other Defamatory Publications consisted of Lindell appearing on programs to

reveal the findings of his investigation into voting machines and the 2020 election. (Defamatory Publications 2-8, 10-11, 13-15, 18.)

It matters not that Defendants published their statements as part of a so-called "national discussion" about election security. (Opp. at 9-12.) What matters is that the Defendants presented the statements as being facts. For example:

- "We have, we're going to have cyber forensic experts, we're going to have 100%, you're going to see all this evidence that by the time you're done seeing it you're going to go wow, 100%, it proves exactly what happened, that these machines were used to steal our election by other countries, including China." (Ex.29 at 3:5-10.)

- "You know, what I put out in this documentary, Steve, is like one-one thousandth of what we have. It's 100 percent proof in any court of law, you hold up, here it is." (Ex.33 at 4:13-16.)

- Okay, that's what they're doing. Steve, and it isn't just a different cast of experts. It's the evidence, the hard evidence in this, in this documentary these are the facts. There's nothing subjective, there's no subjectivity. It's all here's the facts, here's what happened on the first, second, third, fourth here's what happened each day, a print of what happened. So yeah, Dominion, Smartmatic both here. Come on, can we please include Smartmatic so they can sue me too?" (Ex.33 at 5:20-6:3.)

- "I want you to see tonight is 100% fact and that's what I'm going to put out there. But whatever reason they did it, that will all come out, that's, that's a, you know that's all going to come out." (A Screening and Conversation of Absolute Proof, Ex.35 at 22:2-5.)

- "I have, I have 100%, not 99%, 100% evidence that of everything that they did Smartmatic did, ES&S, all of those machines did and stoled our country and stoled [sic] our election." (Ex.36 at 6:12-20.)

- "But these aren't just to make an opinion of this. These are facts. These are like a cyber print from cyber forensics." (Ex.36 at 19:14-20.)

- "I have proof, 100% proof that our country was attacked by China, by communism coming in, this foreign interference to our elections, through the machines, Dominion, Smartmatic, ES&S, all of them. (Ex.43 at 6:15-18.)

17

- "[S]ince then I've been obviously just fighting every day to get this, to tell the nation and everybody, the world these machines where it got hacked, Dominion, Smartmatic, Hart, all of them are the same, ES&S. You just say Dominion, but it's all machines. China hacked into our election and flipped millions upon millions of votes. And we have 100% evidence so I put out the two, three movies now, Absolute Proof, Scientific Proof." Pearson Sharp: "Irrefutable? Is it irrefutable truth?" Lindell: "It's absolute, I mean, that's even higher than irrefutable." (Ex.45 at 4:10-20.)

At no point did Lindell or anyone else appearing on the Defamatory Publications indicate that their statements about voting machines were speculative guesswork that should not be believed by anyone. Defendants presented their statements as facts.

**Specific Accusation.** Defendants argue that some of the statements at issue are too vague and ambiguous to be actionable – pretending that no reasonable person would understand what Lindell and others were saying about voting machines. (Opp. at 25-31.) The argument rings hollow given the context in which the statements were made. The entire purpose of the "documentaries" and "cyber symposium" was to present evidence showing that voting machines, including Smartmatic's machines, were used to manipulate the outcome of the 2020 election. (Defamatory Publications 1, 9, 12, 16, 17.) The entire purpose of Lindell's appearances on the other Defamatory Publications was for him to explain what he learned from his investigation into voting machines being used to manipulate the outcome of the election. (Defamatory Publications 2-8, 10-11, 13-15, 18.)

Every statement at issue must be read in the context of Lindell and others telling people what they purportedly learned about voting machines being used to manipulate the outcome of the election. The words that Defendants now claim are vague and ambiguous

are anything but when read/heard in the context of a discussion about voting machines being used to manipulate the outcome of the election. For example:

- Defendants argues that the terms "using" and "through" machines is "far too imprecise to be an assertion of fact." (Opp. at 28.) But the context in which the terms are used make clear that the terms were used to convey that outcome of the 2020 election was manipulated by people "using" voting machines or "through" the voting machines. Those are factual assertions that are demonstrably false because there was no manipulation of the election results.

- Defendants argue that the term "tool" is not a "precise enough term to support Plaintiffs' theory as a matter of law." (Opp. at 29.) But the context in which the term is used makes clear that Lindell was conveying that China and others used voting machines as their "tool" to manipulate the election results. That is a factual assertion that is demonstrably false because there was no manipulation of the election results.

- Defendants argue that Lindell's use of the phrase – "the biggest crime in our country" – is "too imprecise to render these statements assertions of fact." (Opp. at 29.) But the false statement is not whether manipulating the 2020 election was the biggest, second biggest, or third biggest crime. The statement is actionable because, in context, Lindell conveyed that machines were used to manipulate the outcome of the 2020 election – which would be a crime had it happened. The totality of the statement is actionable because it is demonstrably false to say voting machines were used to commit any crime (regardless of relative size).

- Defendants argue that phrase – "They're built as a tool to take countries" – is imprecise in its meaning. (Opp. at 31.) But the statement is made in the context of talking about voting machines, including Smartmatic machines, being used manipulate votes and that is how they are used to "take countries." The statement is not ambiguous, but rather demonstrably false, in that context because the machines were not used to take countries by changing election outcomes.

Context matters. Occasionally, speakers might use words that appear imprecise and vague in isolation, but their meaning becomes clear in context. Every statement at issue was made during Defamatory Publications discussing the singular topic of the 2020 election results being inaccurate due manipulation using voting machines.

***Demonstrably false.*** The most obvious reason that the statements at issue are actionable is because they are demonstrably and objectively false. Smartmatic machines were not used to manipulate the outcome of the 2020 election – whether through hacking, being compromised, switching votes, stealing votes, or otherwise. *Infra* at I.C. Nor were any other voting machines. *Id*. Defendants did not identify any evidence to the contrary regarding Smartmatic or voting machines in general. The undisputed fact that the central message conveyed during the Defamatory Publications is demonstrably and objectively false is dispositive of whether the statements at issue are actionable.

### 3. Defendants' statements are also actionable as "mixed opinion."

Defendants put the "cart before the horse" in arguing that they cannot be held liable for Lindell expressing his opinion during the Defamatory Publications based on the information provided by "experts" and "other knowledgeable people." (Opp. at 17-19.) The statements at issue – implying that voting machines, including Smartmatic machines, were used to manipulate the outcome of the 2020 election – are not "opinions." The statements at issue are "sufficiently factual to be susceptible of being proved true or false." *Milkovich*, 497 U.S. at 21. That makes them actionable regardless of whether Defendants disclosed other information during the Defamatory Publications.

Defendants' argument is a strawman. Defendants are trying to frame the statements at issue as being about whether voting machines *should* be used during elections. But that is not the subject of the statements at issue. The main message conveyed by the statements at issue, in the context of the Defamatory Publications, is that voting machines, including Smartmatic machines, were used to manipulate the outcome of the 2020 election. That is a

far cry from an academic debate over whether machines should be used in elections. The statements at issue were affirmative declarations about a historical event—manipulation of the 2020 election—that did not take place.

Moreover, Defendants are simply wrong that the underlying "facts" disclosed during the Defamatory Publications create immunity for the conclusion expressed based on those facts. Even under *Janklow*, "a publisher [] may not disclose facts which he knows to be false to support his defamatory opinion." *Janklow*, 788 F.2d at 1305. Even statements that qualify as "opinion" are actionable as "mixed opinion" when the underlying facts disclosed in the publication are inaccurate or incomplete. *Schlieman v. Gannett Minnesota Broadcasting, Inc.*, 637 N.W.2d 297, 305 (Minn. Ct. App. 2001) (highlighting Minnesota Jury Instruction Guide direction that "when defamatory meaning is not apparent on [statement's] face, the jury should be instructed that it can take into account whether . . . the statement is an opinion that is based on defamatory facts"); *see also Enigma Software Group, USA, LLC v. Bleeping Computer LLC*, 194 F.Supp.3d 263, 287 (S.D.N.Y. 2016) (the pure opinion rule "does not apply where the disclosed facts are themselves false"). Here, Smartmatic established that many (if not all) of the underlying facts disclosed during the Defamatory Publications by individuals other than Lindell were factually inaccurate. (*See* Appendix C (Nos. 1-5, 9-11, 13-15, 28-31, 35, 37, 39, 40-42, 49, 51-53).)

**E.    Defendants' arguments on defamation *per se* are legally inaccurate.**

Defendants argue that the Court cannot find the actionable statements to be defamation *per se* without first finding actual malice.  (Opp. at 13, 15-16.) Defendants cite ***zero*** cases to support that argument because it is wrong. Courts routinely find actionable

statements to be defamation *per se* before finding actual malice and without any consideration of actual malice. *See, e.g., Smartmatic USA Corp. v. Fox Corp.*, 2022 WL 685407, at *20, 22, 23, 28 (N.Y. Sup. Ct. Mar. 8, 2022) (finding statements about Smartmatic machines being used to change the outcome of the 2020 election to constitute defamation *per se*); *Smartmatic USA Corp.. v. Newsmax Media, Inc.*, 2023 WL 5551026, at *4 (Del. Super. Aug. 23, 2023) ("All five overarching points support a single cause of action: defamation *per se* for false statements and implications by Newsmax in the wake of the 2020 Presidential Election"); *Dominion Voting Systems v. Fox News Network*, 293 A.3d 1002, 1053 (finding statements about Dominion machines being used to change the outcome of the 2020 election to constitute defamation *per* se).

Courts will find an actionable statement is defamation *per se* when the statement "disgraces and degrades the plaintiff, holds him up to public hatred, contempt or ridicule" or "harm[s] the plaintiff's reputation and lower[s] the plaintiff in the estimation of the community." (Br. at 39-40 (collecting cases).) Defendants stated and implied that Smartmatic's machines were used to change the outcome of the 2020 election. *Infra* at I.C.1-2. That accusation qualifies as defamation *per se* because it undermines Smartmatic's reputation for providing machines that ensure accurate and reliable election results. (Ex.254¶19; Br. at 40.) Defendants do not argue otherwise. (Opp. at 13, 15-16.)

Defendants attempt to create confusion about presumed damages instead of arguing that their statements were not defamatory *per se*. (*Id.*) Smartmatic is entitled to presumed damages for two reasons: (1) Defendants' statements were defamatory *per se* and (2) Defendants acted with actual malice. Smartmatic is entitled to summary judgment on the

first prong; and, Defendants did not provide any legal or factual basis for the Court not to grant summary judgment on the first prong. Smartmatic will establish the second prong – actual malice – at trial; and, the jury will be instructed to presume damage only if it finds Smartmatic has established actual malice. The fact that actual malice remains to be decided by the jury does not preclude the Court from narrowing the issues for trial by finding that the actionable statements were defamatory *per se.*

## II.    Defendants have not rebutted Smartmatic's evidence entitling it to summary judgment on vicarious liability.

Smartmatic seeks to hold MyPillow liable for the tortious conduct of its CEO, Lindell, because he used the disinformation campaign as a means of promoting MyPillow and selling MyPillow products. To support its claim, in its opening brief, Smartmatic identified evidence establishing that (1) MyPillow was aware of Lindell's use of the disinformation campaign as a tool to market and promote MyPillow products (Br. at 42-44) and (2) the disinformation campaign was carried out by MyPillow employees, beyond Lindell, during regular business hours and using business resources (*Id.* at 44-45). Defendants identify ***zero*** evidence in response to these points. (Opp. at 33-36.) Instead, Defendants misrepresent the arguments and evidence presented by Smartmatic.

Defendants argue that Smartmatic is not entitled to summary judgment on MyPillow's vicarious liability because—they claim—Smartmatic's argument "focuses entirely on foreseeability" and ignores the relationship between the tortious conduct and Lindell's duties. (Opp. at 33–36.) That is simply not true. Smartmatic introduced evidence showing that (1) Lindell was MyPillow's primary spokesman and he used the

disinformation campaign to sell MyPillow products by including MyPillow advertisements and promotions; (2) MyPillow's CTO published defamatory publications on FrankSpeech and ran the Cyber Symposium; (3) MyPillow's marketing director promoted his defamatory publications to MyPillow's advertisers and other media companies, and (4) MyPillow's warehouse staff stored and shipped Absolute Proof DVDs and inserted election fraud flyers into outgoing MyPillow customer orders. (Br. at 43-45.)

It matters not that Lindell engaged in the disinformation campaign while he was off property. Executives are "at work" for purposes of the work-related time and space element whenever an executive acts in furtherance of their responsibilities and their employers' objectives. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W. 2d 11, 17 (Minn. 1979) (finding vicarious liability where executive negligently started a fire in his hotel room while he filled out expense reports because he was performing work related to his corporate responsibilities). Lindell was likewise performing work related to his corporate responsibilities during the disinformation campaign because he promoted and sold MyPillow during the Defamatory Publications and he used MyPillow resources to produce and promote the Defamatory Publications. Defendants identify no evidence to the contrary.

## III. Defendants repeated their legally and factually inaccurate arguments regarding Smartmatic's claim pursuant to the MDTPA.

In its opening brief, Smartmatic established that it is entitled to partially summary judgment on the first and second element of its MDTPA claim. (Br. at 46.) Specifically, Smartmatic is entitled to summary judgment on the first element because Defendants disparaged Smartmatic's goods, services, and business. (*Id.*) Smartmatic is entitled to

summary judgment on the second element because Lindell was acting in his capacity as CEO and spokesman for MyPillow when disparaging Smartmatic's goods, services, and business. (*Id.*) Defendants offered **zero** evidence in response to these points.

Instead, in their opposition, Defendants repeat the arguments they made in their motion for summary judgment. Defendants argue that Smartmatic lacks standing and has not suffered an injury in the State. (Opp. at 36-38.) Smartmatic already addressed these arguments in its opposition to Defendants' motion. (SMMT Opp. at 42-44.) Defendants are legally incorrect on the standing argument and factually incorrect on the injury argument. *(Id.)*. Thus, given that Defendants did not offer any evidence to create a disputed issue of material fact, the Court should enter summary judgment in Smartmatic's favor on the first and second elements.

## CONCLUSION

For these reasons, Smartmatic respectfully requests that the Court enter partial summary judgment in its favor. Defendants failed to rebut Smartmatic's evidence; and, a disputed issue of material fact cannot exist where Defendants do not offer any countervailing evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Summary judgment was the time for Defendants to "put up" evidence if it existed to support their positions. They did not do so.


Dated: December 27, 2024                    Respectfully submitted,

                                          /s/ *J. Erik Connolly*

Christopher K. Larus
    Minnesota Bar No. 0226828
    CLarus@robinskaplan.com
William E. Manske
    Minnesota Bar No. 0392348
    WManske@robinskaplan.com
Emily J. Tremblay
    Minnesota Bar No. 0395003
    ETremblay@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

J. Erik Connolly (admitted *pro hac vice*)
    EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice*)
    NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
    TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
    JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
    JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*

26