# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO EXCLUDE T HE
<u>OPINION AND TESTIMONY OF BENJAMIN COTTON</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT .................................................................................................... 3

    **A. Cotton Does Not Have the Requisite Expertise to Offer His Opinion and Testimony.** ................................................................ 3

    **B. Cotton's Opinion Is Not Based on Sufficient Facts or Data.** ............................................................................................................. 7

    **C. Cotton's Opinion Is Based on Speculation.** .............................................. 8

III. CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aspro, Inc. v. Comm'r of Internal Revenue*,
    32 F.4th 673 (8th Cir. 2022) ............................................................................... 8

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ......................................................................... 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ......................................................................................... 11

*Hays v. Blackpowder Prods., Inc.*,
    2020 WL 425646 (E.D. Ark. Jan. 27, 2020) ................................................... 11

*Metro. St. Louis Equal Hous. Opportunity Council v. Gordon A. Gundaker
Real Est. Co.*, 130 F. Supp. 2d 1074 (E.D. Mo. 2001) ...................................... 6

*Popoalii v. Corr. Med. Servs.*,
    512 F.3d 488 (8th Cir. 2008) ........................................................................... 11

*Schmidt v. City of Bella Villa*,
    557 F.3d 564 (8th Cir. 2009) ............................................................................. 4

*Smith v. Rasmussen*,
    57 F.Supp.2d 736 (N.D. Iowa 1999) ................................................................. 6

*United States v. Coutentos*,
    651 F.3d 809 (8th Cir. 2011) ............................................................................. 9

*Uribe v. Sofamor, S.N.C.*,
    1999 WL 1129703 (D.Neb., August 16, 1999) ................................................. 7

*In re Wholesale Grocery Prod. Antitrust Litig.*,
    946 F.3d 995 (8th Cir. 2019) ............................................................................. 8

I.  INTRODUCTION

Defendants' proffered expert Benjamin Cotton should be excluded from offering his opinion that Los Angeles County's VSAP system would be vulnerable to unauthorized access and vote manipulation through technical processes. His opinion and accompanying testimony are inadmissible because Defendants have failed to demonstrate that he is qualified to offer this opinion, that his opinion is grounded in facts and data, and that his opinion is not pure speculation.

Defendants' Opposition to Smartmatic's Motion only reinforced Smartmatic's assertions that Cotton is not qualified and that the opinion he offers in this matter is not reliable. (*See* Dkt. 463.) Instead of directly addressing the arguments made in Smartmatic's Motion, Defendants primarily use the Opposition as an attempt to critique Smartmatic's own electronic voting system expert, whom Defendants chose not to rebut, depose, or challenge with a *Daubert* motion. By focusing on Smartmatic's expert and not their own, it is evident that Defendants have little to say in support of Cotton.

Cotton does not have the expertise necessary to render his opinion in this case. Cotton has a general background in computer science, without any experience or particular knowledge related to electronic voting systems or election security. Cotton's experience is instead comprised of qualifications that he invented to apply to himself[1] and fabricated

---

[1] Cotton is the founder of CyFIR and lists in his own Curriculum Vitae that he is a CyFIR expert and is a certified CyFIR Forensics and Incident Response Examiner. (*See* Dkt. 416.2.)

1

stories (later conceded to be untrue) about data breaches he discovered.[2] And Cotton's only experience in assessing voting machines occurred after the 2020 election, when election conspiracy theorists asked him to conduct self-serving inspections of election systems that were stolen. (*See* Dkt. 416.3 at 106:16-107:9; 108:22-109:8; 111:14-112:11.)[3] Allowing Cotton to opine on the security of Voting Solutions for All People (VSAP) and Smartmatic's ballot marking device (BMD) (a component of VSAP) in the 2020 election—where he lacks the necessary expertise to analyze such things—will only lead to confusion for the jury and prejudice to Smartmatic.

---

[2] Cotton claims in his Curriculum Vitae and in his Second Expert Declaration that he discovered the largest breach in U.S. Government History at the Office of Personnel Management. However, as discussed in Cotton's deposition and in interviews given by Cotton, he did not actually discover the breach. (*See* Dkt. 416.3 at 199:1-200:9; Mitchell, Billy, How the OPM breach was really discovered, 2016, May 27, FedScoop, https://fedscoop.com/how-the-opm-breach-was-really-discovered/ ("CyTech CEO Ben Cotton told FedScoop that his company never claimed to have discovered the hack.")).

[3] Cotton's involvement with the illegal review of voting machines was further documented by news sources. *See* Macdonald-Evoy, Jerod, Senate 'Audit' Leaders Doug Logan and Ben Cotton are Facing a Michigan Criminal Probe, AZ Mirror, https://azmirror.com/briefs/senate-audit-leaders-doug-logan-and-ben-cotton-are-facing-a-michigan-criminal-probe/ ("The petition says that DePerno was present when Cotton, Logan, James Penrose and Jeffery Lenberg "broke into the tabulators and performed 'tests' on the equipment.") Layne, Nathan, Republican Clerk, pro-Trump lawyer charged in Michigan voting-system breach, 2022, Aug. 8, Reuters, https://www.reuters.com/world/us/republican-clerk-charged-michigan-voting-system-breach-2024-05-09/ ("Reuters reported on the potential violation in 2022, detailing Scott's sharing of a file containing confidential voter data with Benjamin Cotton"); Report: Michigan AG seeks special prosecute in 2020 probe, 2022, Aug. 8, Associated Press, https://apnews.com/article/2022-midterm-elections-voting-michigan-attorney-generals-office-f6899c90531fc29f2d7f7a66207d41f1 ("Ben Cotton, Jeff Lenberg, Douglas Logan and James Penrose broke into the tabulators and performed 'tests' on the equipment. Cotton, Lenberg, Logan and Penrose have all been involved in efforts to question the 2020 election.").

Cotton's lack of expertise is magnified by the dearth of facts and data that could support his opinion, and the unreliable methodology he used to reach his conclusions. Cotton's entire Expert Declaration is devoid of citations and is based on personal experience without reference to factual support. It is self-evident from the lack of support for his opinion that he did not employ the level of academic rigor that is required under the *Daubert* inquiry. In addition, because Cotton does not identify the factual support (if any) for his opinion, Smartmatic was unable to assess the validity of its underpinnings—creating prejudice to Smartmatic.

Cotton's entire opinion about VSAP and Smartmatic's BMD hinges on his review of electronic voting systems used by *other jurisdictions* and created by *other manufacturers*. Cotton asserts that the issues he observed in the other electronic voting systems must also be present in VSAP—and in the same breath, Cotton asserts that he could not reach conclusions about VSAP without a full forensic examination. Either assertion is evidence that Cotton's opinion is, at best, speculative and not tied to the facts of this case. Allowing Cotton to offer this opinion would only run the risk of confusing the jury about electronic voting machines and manufacturers that are not at issue in this case.

## II.  ARGUMENT

### A.  Cotton Does Not Have the Requisite Expertise to Offer His Opinion and Testimony.

Cotton does not possess the expertise required to provide an admissible opinion on the security of electronic voting machines. Defendants do not contest the reality that Cotton lacks any training, education, certificates, or publications that relate to electronic voting

3

machines. (*See* Dkt. 416 at 5-6.) Nor do Defendants contest that Mr. Cotton's only experience with voting machines is recent, and only involved examination of parts of electronic voting systems—for the first time—following the 2020 election. (*Id*. at 6.) Defendants instead focus on Cotton's general background in computer science and attempt to draw a comparison between his qualifications and the qualifications of Smartmatic's own electronic voting machine expert, Dr. Alan Sherman. Neither of these arguments made by Defendants remotely disprove Smartmatic's assertion that Cotton is wholly unqualified to offer an opinion on the security of VSAP or Smartmatic's BMD.

*First*, Defendants emphasize Cotton's background in "forensic cybersecurity examinations."[4] (Dkt. 463 at 6-8.) But this background is not sufficient to support his proffered opinion in this case: Defendants are required to demonstrate that their expert's background has a nexus with the opinion being offered. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) ("For an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion."). Defendants' only attempt to create such a nexus between Cotton's experience and the opinions he is offering is their assertion (without citation) that a voting machine "is nothing more than a computer system." (Dkt. 463 at 1.) As discussed in Smartmatic's Motion, Cotton's general experience in computer forensics does not make him an expert in electronic voting systems,

---

[4] Defendants also attempt to bolster Cotton's qualifications with new information regarding his experience in the Second Expert Declaration of Benjamin Cotton attached to Defendants' Opposition. (Dkt. 464.) As will be discussed below and in Smartmatic's forthcoming motion to exclude, the Second Expert Declaration (offered after the close of discovery) is improper and should not be considered by this Court.

4

generally, and Smartmatic's BMDs, specifically. (*See* Dkt. 416 at 6-8.) And Defendants neglect to respond to various critical shortcomings raised by Smartmatic: they do not rebut Smartmatic's assertion that Cotton's familiarity with "operating systems" is insufficient on its own, where operating systems are only *one part* of an electronic voting machine system. (*Id*. at 7.) Nor do they rebut that Cotton himself testified that his experience with operating systems is not specific to electronic voting systems. (*Id*.) Defendants also do not rebut that voting system security goes beyond just the hardware and software of the machines but also encompasses things like voting machine certification standards—something Cotton is admittedly not an expert in. (*Id*. at 5-6.)

Additionally, Defendants do not rebut that while Cotton has assessed certain aspects of electronic voting systems, that experience is limited—and by its nature, insufficient to support his opinion in this case. Cotton first examined a portion of an electronic voting system in 2021; and as Smartmatic explained in its Motion, courts have found that where an expert lacks formal training in an area, just a few years of experience is insufficient to qualify them as an expert. (*Id*. at 6.) Defendants also do not contest that his limited experience is entirely unrelated to the BMDs manufactured by Smartmatic for Los Angeles County. (*Id*.) In short, Smartmatic has raised various inadequacies in Cotton's qualifications, and Defendants have largely ignored those shortcomings.

*Second*, in an attempt to distract from Cotton's lack of qualifications, Defendants use several pages of its opposition to attack Smartmatic's electronic voting system expert, Dr. Alan Sherman. (*See* Dkt. 463 at 2-4, 8.) It should be noted that Defendants declined to take the deposition of Dr. Sherman and did not move to exclude the opinions of Dr.

5

Sherman. (Frey Declaration at ¶¶ 3-4.) A deposition or a motion to exclude would have been the correct venue to assess Dr. Sherman's qualifications—not the opposition to Smartmatic's Motion to Exclude Cotton. But if Defendants want to compare the credentials of their respective electronic voting system experts, it becomes abundantly clear that Dr. Sherman is the paragon and Cotton falls woefully short.

Dr. Sherman has a Ph.D. in computer science from the Massachusetts Institute of Technology and is currently a tenured professor of computer science at the University of Maryland, Baltimore County. (Dkt. 416.6 at ¶¶ 10, 11.) In his role as a professor, Dr. Sherman has taught courses on electronic voting, cybersecurity, and cryptology. (*Id*. at ¶ 12.) Cryptology is a technique for securing data that is used in designing and developing voting systems. (*Id*. at ¶ 37-41.) Dr. Sherman's research has focused on cryptology and voting system security, including high-integrity elections using end-to-end voter-verifiable technologies and software, and has been funded by the U.S. Election Assistance Commission. (*Id*. at ¶¶ 9, 15.) Dr. Sherman has designed and built *three* electronic voting systems, one of which, Scantegrity, was deployed in elections in Takoma Park, Maryland. (*Id*. at ¶¶ 16, 17, 18.) Dr. Sherman has also published more than sixty peer-reviewed research papers on topics such as vote verification technologies, high-integrity election systems, and cryptology. (*Id*. at Exhibit A at 20-30.) Dr. Sherman's resume demonstrates what the nexus between computer science and electronic voting machines should look like for a qualified expert.

Defendants have failed to demonstrate that Cotton's experience in computer science makes him qualified to opine on the security of electronic voting systems, which

6

necessarily requires that his opinion and testimony be excluded. *Metro. St. Louis Equal Hous. Opportunity Council v. Gordon A. Gundaker Real Est. Co.*, 130 F. Supp. 2d 1074, 1088 (E.D. Mo. 2001) (finding that expert in statistical analysis of geographic data was not qualified to offer opinions based on statistical analysis of racial steering); *Smith v. Rasmussen*, 57 F.Supp.2d 736, 766 (N.D. Iowa 1999) (collecting cases in which persons were found to be an expert in one field but not qualified to testify as an expert in another field); *Uribe v. Sofamor, S.N.C.*, 1999 WL 1129703 (D.Neb., August 16, 1999) (in a "bone screw" case, medical expert found to be qualified as an expert on the topic of spinal bone fusion but not on the topic of bone screw fixation devices or instrumented spinal surgery).

### B.     Cotton's Opinion Is Not Based on Sufficient Facts or Data.

In its Motion, Smartmatic emphasized three ways in which it is evident that Cotton's opinions are not based on sufficient facts or data. (*See* Dkt. 416 at Section II.) First, Cotton does not provide any support for the claims made in his Declaration—every assertion lacks a citation. (*Id*. at 9.) Second, Cotton relied on personal knowledge and experience without any supporting analysis or citations. (*Id*. at 9-10.) And third, Cotton claims to have relied heavily on his experience reviewing non-Smartmatic voting machines but provided no support or citations. (*Id*. at 10-11.)

In response, Defendants only reiterate that Cotton's "conclusions derive from an analysis of patterns and vulnerabilities he has personally observed in multiple voting systems." (Dkt. 463 at 9.) But this is precisely the issue Smartmatic has raised: personal observations without support leave Smartmatic unable to assess the validity of those personal experiences. (Dkt. 416 at 9-11.) And the jury would be in the same position

7

(unable to assess the support for his opinions) which would only serve to confuse and mislead them. Additionally, Defendants' assertion still does not address the fact that if Cotton intends to rely on his experience from observing other voting systems, he must pinpoint documents or specifics about those systems that allowed him to reach his conclusion. (*Id*. at 10-11.)

Without providing support for his opinion and testimony, Cotton would necessarily have to ask the jury to blindly accept his conclusions, which is a sufficient basis on its own to exclude this opinion. *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) ("a court should not admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (internal citation omitted). Cotton has failed to "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Aspro, Inc. v. Comm'r of Internal Revenue*, 32 F.4th 673, 676 (8th Cir. 2022).

### C. Cotton's Opinion Is Based on Speculation.

As detailed in Smartmatic's Motion, Cotton's opinion is based entirely on speculation. (*See* Dkt. 416 at Section III.) Cotton's entire opinion relies on his conjecture that the issues he identified during his review of other electronic voting systems would be present in VSAP and Smartmatic's BMD. Cotton himself admitted that he could not offer opinions on VSAP without a full examination of the system. (*Id*. at 13-14.) Defendants further agreed with this assertion, stating, "Indeed, a true forensic examination is required to assess whether there was an intrusion into a system." (Dkt. 463 at 3.) Defendants then,

in the same breath, attempt to offer Cotton's testimony regarding the security of VSAP and Smartmatic's BMD.

Defendants attempt to get around this conundrum by making three arguments in their Opposition. *First*, Defendants assert that Smartmatic has not allowed Cotton to review the VSAP system and BMD that were used in the 2020 election. (Dkt. 463 at 3-4, 9.) As explained in Smartmatic's Motion, Smartmatic offered Defendants the opportunity to inspect the Smartmatic BMD that was reviewed by Smartmatic's own voting machine expert, but Defendants declined that invitation, and the Court denied Defendants' motion to compel an inspection of the VSAP system used by Los Angeles County in the 2020 election. (Dkt. 416 at 14.) Defendants chose to offer Cotton as an expert, knowing that he did not and would not have access to all of the information he deemed necessary to offer a reliable opinion. This choice should not be rewarded by allowing Cotton to provide a speculative opinion about VSAP to the jury. *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) (due to an expert's perceived authority, a court should exclude evidence pursuant to Rule 403 when it offers little probative value and risks confusing or misleading the jury).

*Second*, Defendants argue that a "walkaround" to view the outside of Smartmatic's BMD would not have been sufficient for Cotton to form his opinion and was not sufficient for Smartmatic's own expert, Dr. Sherman, to form his opinions on Smartmatic's BMD. (Dkt. 463 at 3-4.) This argument does not move the needle for Defendants because, ultimately, they are asserting that with a review or no review, Cotton would still not have all of the necessary information to form an opinion regarding the BMD. Additionally, as

9

stated above, this Court denied Defendants' request to do a full inspection of the BMD used in the 2020 election in Los Angeles County. (Dkt. 266.) As such, the only review available to Cotton was of the exemplar BMD reviewed by Dr. Sherman. (Dkt. 416 at 14.) Defendants declined to conduct that review. (*Id*.)

Additionally, the assertion that Dr. Sherman could not have formed his opinion without a forensic examination is without merit.[5] Dr. Sherman stated in his report that the review he conducted of materials and the inspection of the model BMD was, in fact, sufficient to reach his opinion. (Dkt. 416.6 at Section E.) As noted above, Defendants chose not to depose Dr. Sherman and chose not to file a *Daubert* motion challenging the opinions of Dr. Sherman. (Frey Decl. at ¶¶ 3-4.) As such, Defendants have no basis in their Opposition to assert that the methods Dr. Sherman used to reach his opinions about VSAP and Smartmatic's BMD were insufficient. And ultimately, Defendants' alleged challenges to Dr. Sherman's opinions have no affect on the admissibility of Cotton's opinion.

*Third*, in their Opposition, Defendants improperly attempt to bolster Cotton's opinions regarding VSAP and Smartmatic's BMD and discredit Smartmatic's expert, Dr.

---

[5] In making this argument about Dr. Sherman, Defendants assert that a forensic examination is particularly necessary in this case because "L.A. County's system suffered a breach during the November 2020 election." This is a bizarre assertion given this is both irrelevant and false. *First*, the alleged breach was not of VSAP. Instead, LA County accused one of its contractors (Konnech) of taking data about poll workers and sending that data to China. The alleged wrongdoing "only involved poll workers, not voting machines or vote counts and didn't alter election results." Los Angeles County to Pay $5M settlement over arrest of election technology company founder, 2024, Jan. 23, Associated Press, https://ny1.com/nyc/all-boroughs/ap-top-news/2024/01/24/los-angeles-county-to-pay-5m-settlement-over-arrest-of-election-technology-company-founder. *Second*, the charges were later dropped was baseless, and Los Angeles County paid $5 million to the owner of Konnech to settle his wrongful prosecution suit against the County. *Id*.

10

Sherman, by submitting a Second Expert Declaration. (Dkt. 464.) At the top of this new declaration, Cotton indicates that it is a supplemental declaration to his September 22, 2023 Declaration, and a rebuttal to the declaration submitted by Dr. Sherman in support of Smartmatic's Motion for Partial Summary Judgment. (Dkt. 464.)

Despite being given the opportunity to submit a rebuttal report to Dr. Sherman's expert report during the course of discovery, Cotton and Defendants chose not to. (Frey Decl. ¶ 5.) Now, for the first time, after the close of discovery and in dispositive briefing, Cotton offers a rebuttal. In addition to this, Cotton's new declaration expands upon his opinion on VSAP in direct response to Smartmatic's criticism in its Motion of his earlier opinions and testimony. As it will be further detailed in Smartmatic's forthcoming motion to exclude, Cotton's Second Declaration of December 12, 2024 is wholly improper and prejudicial to Smartmatic. As such, it should not be considered by this Court. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) (affirming lower court's decision to strike an expert affidavit that was provided at summary judgment and contained new information that contradicted prior testimony); *Hays v. Blackpowder Prods., Inc.*, 2020 WL 425646, at *2 (E.D. Ark. Jan. 27, 2020) (finding that expert's affidavit that was attached to dispositive briefing after discovery closed was prejudicial and declined to consider it).

Based on the above, it is evident that Cotton's opinion is solely based on his review of other electronic voting systems and his speculation that his findings might apply to VSAP and Smartmatic's BMD. Under *Daubert,* the expert testimony proffered in a case must be sufficiently tied to the facts of the case so as to aid the jury in resolving a factual

11

dispute. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). Here, Defendants have failed to demonstrate how Cotton's past inspections fit with the facts of this case. *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1055 (8th Cir. 2000) (affirming exclusion of an expert's opinions where proffered opinions required "too great an analytical gap between the data and the opinion offered."). Cotton's opinion is not only unhelpful to the jury, but it runs the risk of confusing the jury and prejudicing Smartmatic because he will be extensively relying on information relating to electronic voting systems and manufacturers that are not at issue in this case. Cotton should not be allowed to even suggest (or allude to a suggestion) that any potential issue with another electronic voting system implicates Smartmatic. The only way to prevent this is to exclude his opinion and testimony in their entirety.

### III.  CONCLUSION

For the foregoing reasons, Smartmatic respectfully requests that this Court exclude the opinion and testimony of Benjamin Cotton.

Dated: December 27, 2024                     Respectfully submitted,

*/s/ Timothy M. Frey*

Christopher K. Larus
Minnesota Bar No. 0226828
CLarus@robinskaplan.com
William E. Manske
Minnesota Bar No. 0392348
WManske@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

12

J. Erik Connolly (admitted *pro hac vice)*
EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice)*
NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*

13