IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>     Plaintiffs,<br>  v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>     Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S BRIEF IN SUPPORT OF PROPOSED ORDER FOR
<u>PERMANENT INJUNCTIVE RELIEF</u>**

1

## I. INTRODUCTION

This Court granted Smartmatic's Motion for Partial Summary Judgment in full on September 26, 2025 (hereinafter, the "SJ Order"). First, this Court granted summary judgment on the questions of publication, "of and concerning," falsity, and defamation *per se* on Smartmatic's defamation claim. (*See* ECF No. 522 at 39–55.) Second, this Court found that MyPillow is vicariously liable for Lindell's tortious conduct as a matter of law. (*Id.* at 55–57.) Finally, this Court granted summary judgment on the first two elements of Smartmatic's Minnesota Deceptive Trade Practices claim, determining that Smartmatic was entitled to injunctive relief, and invited Smartmatic to submit a proposed order requesting permanent injunctive relief. (*Id.* at 57–59, 63.) Smartmatic[1] therefore respectfully requests that this Court enter the Proposed Permanent Injunction Order filed contemporaneously herewith.

## II. BACKGROUND

As this Court recognized in its SJ Order (ECF No. 522), Smartmatic's role in the 2020 U.S. Presidential Election was limited to providing election technology in Los Angeles County, California. (*Id.* at 3.) Specifically, Smartmatic provided the county with ballot-marking devices ("BMDs") that printed paper ballots reflecting voters' selections. (*Id.* at 3–4.) It is "mathematically impossible" for any (hypothetical) flaw in Smartmatic's BMDs to have affected the results of Los Angeles County, much less the nationwide general election. (*Id.* at 53.) Smartmatic's BMDs were not connected to the internet during

---

[1] "Smartmatic" collectively refers to Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation, Limited.

the 2020 election (*id.* at 54), nor is there any evidence that BMDs were hacked by foreign entities (*id.*). Finally, there is no evidence—in the record of this case or otherwise—that Smartmatic designed its BMDs to manipulate ballots in the 2020 U.S. Presidential Election or other elections. (*Id.*) Smartmatic's machines are designed to be secure and fully auditable. (*Id.*)

Shortly after the results of the 2020 election were finalized, Defendant Michael J. Lindell began a campaign to blame Smartmatic for President Donald J. Trump's loss, sponsoring a multi-city "March for Trump" tour sponsored by Defendant My Pillow, Inc. ("MyPillow"). (*Id.* at 5.) In February 2021, Lindell's disinformation campaign began in earnest with the publication of the first of four "documentaries" blaming voting machine companies, including Smartmatic, for stealing the 2020 election from President Trump. (*See id.*) Lindell's four documentaries, related media appearances, and a three-day live symposium all featured defamatory statements that Smartmatic rigged or hacked the 2020 election. (*See generally id.* at 6–25 (listing fifty-one actionable statements).)

In response to unrelenting attacks by Lindell, Smartmatic filed this lawsuit on January 18, 2022 (ECF No. 1) and supplemented its complaint with additional disparaging statements on April 7, 2023 (ECF No. 125). Smartmatic's suit sought relief under Minnesota common law of defamation and under the Minnesota Deceptive Trade Practices Act ("MDTPA"). (*See* ECF No. 125 ¶¶ 380–86.) On November 13, 2025, Smartmatic moved for partial summary judgment on both of its claims. (ECF No. 388.) Smartmatic moved for summary judgment on publication, "of and concerning," falsity, and the *per se*

3

nature of the statements at issue in its defamation claim. (*Id.*)² This Court found in favor of Smartmatic on these elements. (*Id.*)

Smartmatic additionally moved for summary judgment on two elements of its MDTPA claim: (1) that Defendants disparaged Smartmatic's goods, services, and business through false representations of fact; and (2) that Lindell was acting in his capacity as CEO and spokesman of MyPillow when he made the disparaging statements.³ As this Court explained in its ruling, a MDTPA claim has two elements: (1) the defendant "disparage[d] the [plaintiff's] goods, services, or business . . . by false or misleading representation of fact"; and (2) did so "in the course of [their] business, vocation, or occupation." Minn. Stat. § 325D.44, subd. 1(8). To obtain injunctive relief on the claim, a plaintiff must show that it is "likely to be damaged by" the defendant's disparagement but need not prove "monetary damage, loss of profits, or intent to deceive." Minn. Stat. § 325D.45, subd. 1.

In granting summary judgment on Smartmatic's MDTPA claim, the Court referred to its findings as to the relevant elements of Smartmatic's defamation claim that Lindell disparaged Smartmatic's goods, services, or business. (ECF No. 522 at 59.) This reasoning included the Court's findings that all of Lindell's statements actionably state or imply a representation of fact (*id.* 41–47), are defamatory *per se* (*id.* at 48–51), and are false (*id.*

---

² Smartmatic also moved for summary judgment on the question of MyPillow's vicarious liability for Lindell's statements. (*See* ECF No. 390 at 41–45.)

³ To obtain attorney's fees and costs, a plaintiff must show that the defendant acted willfully in making disparaging statements of fact. Minn. Stat. § 325D.45(3). Smartmatic did not move for summary judgment on the question of willfulness or on the appropriateness of fees and Defendants did not argue willfulness was required before permanent injunctive relief could be obtained under the MDTPA. (*See* ECF No. 522 at 59 n.27.)

51–55). And in determining that Lindell disparaged Smartmatic in the course of his business and occupation as CEO of MyPillow, the Court referred to its findings that MyPillow is vicariously liable for Lindell's defamatory statements. (*Id.* at 59.) This determination recognized Smartmatic's undisputed evidence that MyPillow was aware of Lindell's conduct (*id.* at 56–57) and that Lindell used MyPillow employees and resources to publish his statements (*id.* at 57.) Ultimately, the Court concluded that no genuine issues of material fact remain for either element, finding summary judgment. The Court also requested Smartmatic submit a proposed order for permanent injunctive relief.

### III. THE PROPOSED PERMANENT INJUNCTION IS WARRANTED AND APPROPRIATE

Smartmatic submits its Proposed Order for a Permanent Injunction for this Court's review, which states, in relevant part:

> "Defendants Michael J. Lindell and MyPillow, Inc. are **PERMANENTLY ENJOINED** from publishing, causing others to publish, and/or assisting in others' publication of: (a) any statements that state or imply that Smartmatic participated in altering the outcome of the 2020 presidential election or manipulating ballots that altered the outcome of the 2020 election, (b) any statements that state or imply that Smartmatic's BMDs were connected to the internet during the 2020 presidential election and, therefore, susceptible to hacking, or (c) any statements that state or imply that Smartmatic designed its machines to manipulate ballots and change election results, or (d) any of the Actionable Statements adjudged false and defamatory in the Courts' September 26, 2025 Order and Opinion (ECF No. 522). For purposes of this Permanent Injunction, those "Actionable Statements" shall be defined to mean the statements set forth in **Appendix A**, *infra*, which are taken from the Court's Order and Opinion dated September 26, 2025 (ECF No. 522)."

For the below reasons, Smartmatic requests that the Court enter the accompanying Proposed Order. The proposed injunction provides clear guidance by prohibiting only specific categories of statements already judicially found to be demonstrably false, while

preserving Lindell's right to advocate for election security that does not falsely implicate Smartmatic specifically. This precision ensures Lindell can readily distinguish between prohibited false statements about Smartmatic and protected speech about broader election issues, making the injunction both enforceable and constitutionally sound. *See, e.g., McCarthy v. Fuller*, 810 F.3d 456, 462 (7th Cir. 2015) ("Most courts would agree . . . that defamatory statements can be enjoined . . . 'provided that the injunction is not broader than necessary to provide relief to plaintiff while minimizing the restriction of expression.'" *citing Balboa Island Village Inn, Inc. v. Lemen*, 156 P.3d 339, 347-49 (Cal. 2007)); *see also Wagner Equipment Co. v. Wood*, 893 F.Supp.2d 1157, 1164 (D.N.M. 2012) ("an injunction prohibiting a defendant from repeating a statement determined by a judge or jury to be defamatory would not constitute a prohibited prior restraint of speech under . . . the First Amendment").

IV.   **LEGAL STANDARD FOR PERMANENT INJUNCTIVE RELIEF**

   A.   **SMARTMATIC SATISFIES THE REQUIREMENTS UNDER THE MDTPA**

Under the MDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Minn. Stat. § 325D.45, subd. 1. A party seeking relief under the MDTPA must demonstrate a likelihood of future harm because the statute provides relief only "from future damage, not past damage." *Gardner v. First Am. Title Ins. Co.*, 296 F.Supp.2d 1011, 1020 (D. Minn. 2003) (citation omitted) (internal quotation marks omitted), *cited in Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1327 (D.

6

Minn. 2018). Because this Court has conclusively determined that Lindell's statements are false as a matter of law, Defendants cannot relitigate these findings, providing a solid foundation for prospective injunctive relief. *See Maxfield v. Cintas Corp., No. 2*, 487 F.3d 1132, 1134–35 (8th Cir. 2007) (citing *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. And Urban Dev.*, 807 F.2d 1433, 1440–41 (8th Cir. 1986) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.").

Smartmatic is entitled to permanent injunctive relief because it has met the two requisite elements of the MDTPA and because it is likely to sustain future harm without equitable relief. *First*, this Court has already found that Lindell disparaged Smartmatic's goods, services and business, and he did so within the scope of his role as MyPillow's CEO and to the benefit of MyPillow. *Second*, Smartmatic is likely to be harmed if Mr. Lindell continues to disparage Smartmatic.

Lindell has repeatedly stated—both publicly and under oath—that he will never stop disparaging Smartmatic.[4] During his deposition in this case, Lindell stated:

> I am going to continue to preach to get rid of all machine companies in [] these elections. If somebody asked me if [Smartmatic's machines] were used to rig the 2020 election, I will say yes, until -- forever. You guys -- you can't change history. You guy[s] did it, and that you were part of it, and that's it.

(ECF No. 390-1 at 340:5–11.)

---

[4] *See* Declaration of Julie M. Loftus ("Loftus Decl.") Exhibit 1, Ben Terris, *Mike Lindell won't give it a rest*, The Washington Post (July 17, 2024) ("Despite the legal threats hanging over him, Lindell says he has no intention of shutting up. 'Remember, defamation is you're doing something maliciously that you know isn't true, right?' he said. 'I know it's true.'")

7

Indeed, even this Court's findings that Lindell's statements are false as a matter of law have not deterred Lindell from making further disparaging statements. Lindell is currently disparaging Smartmatic to fundraise for a "whistleblower" to help him "expose the truth about these machines" to "put Smartmatic back in its place and defend free speech." (Loftus Decl. Ex. 2, October 24, 2025 web capture of Lindell's GiveSendGo fundraising page). Lindell further accuses Smartmatic—and this Court—of "intimidation and lawfare." (*Id.*) Lindell could not be clearer that he will continue to blame Smartmatic for "rig[ging]" the 2020 election "until . . . forever." (ECF No. 390-1 at 340:8–9.)

It is hard to imagine a more definite risk of future harm than a party found to have disparaged another under the MDTPA saying that he will do so "until forever" and fundraising in support of his ability to do so. Legal remedies are wholly inadequate here. Requiring piecemeal defamation lawsuits for each new false statement would be inefficient and ultimately futile given Lindell's vow to continue this campaign.

### B. THE INJUNCTION RAISES NO FIRST AMENDMENT CONCERNS

The requested permanent injunction bears no First Amendment concerns. When judicial orders are "narrowly tailored, based upon a continuing course of repetitive speech and granted only after a final adjudication on the merits that the speech is unprotected," they do "not constitute unlawful prior restraints." *Minnesota Voters Alliance v. Ellison*, 2024 WL 4222829, at *6 (D. Minn. Sep. 17, 2024). Longstanding Supreme Court case law instructs that "there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in uninhibited, robust, and wide-open debate on public issues." *Gertz v. Welch*, 418 U.S. 323, 340 (1974).

8

Courts regularly enjoin repetition of specific false statements after adjudication. *See, e.g, Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 11 (Minn. 1984); *Wagner Equipment Co. v. Wood*, 893 F.Supp.2d 1157, 1164 (D.N.M. 2012); *McCarthy v. Fuller*, 810 F.3d 456, 462 (7th Cir. 2015); *L1 Technologies, Inc. v. Chekanov*, 2023 WL 5618942, at *8 (S.D. Cal. Aug. 30, 2023).

The public interest strongly supports this injunction. The public benefits from accurate information about election systems, while false statements about election technology undermine confidence in democratic processes. Because this Court has determined these statements are false as a matter of law, they have "no constitutional value" and constitute unprotected speech subject to injunctive relief. Moreover, Lindell's statements constitute commercial speech because they were made to promote his business, documentaries, and fundraising efforts. Commercial speech receives reduced First Amendment protection, particularly when—as here—the speech is demonstrably false and misleading. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980).

The requested injunction is narrowly tailored to prohibit only specific categories of those false statements about Smartmatic this Court has adjudicated, while preserving Lindell's ability to advocate for election security generally. The injunction is content-neutral, targeting falsity rather than viewpoint, and represents the least restrictive means to prevent ongoing irreparable harm. Less restrictive alternatives—such as new proceedings for each violation—would prove inadequate given Lindell's expressed intent to continue his disparagement campaign indefinitely. *See McCarthy v. Fuller*, 810 F.3d at 462 ("if

9

defamation can never be enjoined, [Defendants] will be free to repeat all their defamatory statements with impunity. [Plaintiffs] will have no remedy except to sue for damages and obtain another money judgment that they won't be able to collect.") An injunction preventing Lindell from repeating statements adjudicated to be false, defamatory and disparaging is precisely the type of narrowly-tailored relief courts may issue without running afoul of the First Amendment.

Lindell's continued false statements after this Court's SJ Order—including his fundraising to "put Smartmatic back in its place"—demonstrate that voluntary compliance is impossible and prospective relief is necessary. This pattern of defiance distinguishes this case from concerns about chilling protected speech, as Lindell has made clear he will persist in making statements this Court has determined to be false as a matter of law.

## V.     CONCLUSION

Lindell's vow to continue his disparagement campaign against Smartmatic "until forever" and active fundraising following this Court finding his Smartmatic-related statements in connection with the 2020 U.S. election to be false as a matter of law demonstrates a clear and definite risk of future harm to Smartmatic. This situation presents extraordinary circumstances that warrants permanent injunctive relief. Smartmatic respectfully requests this Court enter the Proposed Permanent Injunction Order against Defendants filed contemporaneously herewith.

Dated: November 19, 2025

Respectfully submitted,

*/s/ Julie M. Loftus*

Christopher K. Larus
   Minnesota Bar No. 0226828
   Christopher.Larus@thompsonhine.com
William E. Manske
   Minnesota Bar No. 0392348
   William.Manske@thompsonhine.com
**THOMPSON HINE LLP**
800 Nicollet Avenue, Suite 2925
Minneapolis, MN 55402
Telephone: (612) 605-5900

J. Erik Connolly (admitted *pro hac vice)*
   EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice)*
   NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
   TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
   JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
   JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*