IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>      Plaintiffs,<br><br>  v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>      Defendants. | Case No. 22-cv-0098-JMB-JFD |

**SMARTMATIC'S REPLY BRIEF IN SUPPORT OF PROPOSED ORDER FOR <u>PERMANENT INJUNCTIVE RELIEF</u>**

## Table of Contents

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT..........................................................................................................................2

I. The Court Has Already Ruled on the Merits As It Pertains to Injunctive Relief ................................................................................................2

II. Defendants' Opposition is An Improper and Untimely Motion for Reconsideration ................................................................................................3

III. The First Amendment Does not Prohibit The Issuance of An Injunction..........................................................................................................6

IV. Defendants' Argument That An Adequate Remedy At Law Exists is Specious And Inconsistent with Their Active Conduct ..........................................8

CONCLUSION ....................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Training Sys., Inc. v. Caswell Equip. Co.*,
  352 N.W.2d 1 (Minn. 1984) .................................................................................... 7

*AMP v. Hubbard Broadcasting, Inc.*,
  216 F. Supp. 2d 933 (D. Minn. 2001) ..................................................................... 8

*Erickson v. Sawyer*,
  650 F. Supp. 3d 758 (D. Minn. 2023) ..................................................................... 7

*Fields v. Emmerich*,
  2014 WL 3828170 (D. Minn. Aug. 4, 2014) ........................................................... 5

*Gardner v. First Am Title Ins. Co.*,
  296 F. Supp. 2d 1011 (D. Minn. 2003) ................................................................... 9

*Gertz v. Welch*,
  418 U.S. 323 (1974) ................................................................................................ 6

*L1 Technologies, Inc. v. Chekanov*,
  2023 WL 5618942 (S.D. Cal. Aug. 30, 2023) ........................................................ 7

*McCarthy v. Fuller*,
  810 F.3d 456 (7th Cir. 2015) ......................................................................... 6, 9, 11

*Minnesota Supply Co. v. Raymond Corp.*,
  472 F.3d 524 (8th Cir. 2006) ................................................................................... 4

*Minnesota Voters Alliance v. Ellison*,
  749 F.Supp.3d 983 (D. Minn. 2024) .................................................................... 6, 7

*Superior Edge, Inc. v. Monsanto Co.*,
  964 F.Supp.2d 1017 (D. Minn. 2013) .................................................................... 9

*US v. Bautista et. al.*,
  Case No. 24-cv-20343-CR-WILLIAMS, Dkt. No. 264 ............................................ 5

*Wagner Equipment Co. v. Wood*,
  893 F.Supp.2d 1157 (D.N.M. 2012) ....................................................................... 7

**Statutes**

Minn. Stat. §325D.44 subd. 1 ................................................................................. 3, 6, 9

Minnesota Deceptive Trade Practices Act ............................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 59(e) ....................................................................................................... 4

Fed. R. Civ. P. 60(b) ....................................................................................................... 4

Local Rule 7.1(j) ............................................................................................................. 4

## INTRODUCTION

On November 19, 2025, pursuant to the Court's ruling on Summary Judgment (ECF No. 522), Smartmatic[1] followed the Court's directive and submitted a Proposed Order on Injunctive Relief (ECF No. 525) and a Brief in Support setting forth the justification for the scope of the Proposed Order (ECF No. 526). Defendants have now objected to that Proposed Order in full. (ECF No. 528, "Defendants' Opposition"). But Defendants' Opposition does not engage with the actual language of the Proposed Order. Rather, Defendants improperly attempt to relitigate settled questions and evade the consequences of this Court's adjudication at summary judgment by seeking to deny injunctive relief in total.

Defendants' Opposition fails for four reasons. First, Defendants deliberately ignore that the merits underlying Smartmatic's claim for injunctive relief pursuant to the Minnesota Deceptive Trade Practices Act ("MDTPA") have already been determined by the Court as a matter of law. Second, Defendants' attempt to introduce "new evidence" to undercut that determination is both procedurally wrong and, even if it were proper, does not show compelling circumstances requiring reconsideration. Third, because the Court has already found Defendants' statements to be false and disparaging as matter of law and the proposed Order is narrowly tailored to such statements, there are no First Amendment concerns. Finally, as set forth in Smartmatic's Brief in Support, extraordinary

---

[1] Smartmatic collectively refers to Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation, Limited.

circumstances exist here such that there is no adequate remedy at law and injunctive relief is necessary.

## ARGUMENT

I.  **THE COURT HAS ALREADY RULED ON THE MERITS AS IT PERTAINS TO INJUNCTIVE RELIEF**

Defendants' Opposition repeatedly suggests this Court has not ruled on the merits. (ECF No. 528 at 14.) Defendants' argument mischaracterizes the Summary Judgment Order. There, this Court explicitly found, as a matter of law, that the undisputed facts proved Smartmatic prevailed on certain elements of its claim for defamation, but more importantly here, that Smartmatic had proven as a matter of law that Defendants had violated the MDTPA which entitled Smartmatic to injunctive relief. (ECF No. 522 at 57-59.)[2] Critically, Smartmatic need not prove actual malice to obtain injunctive relief under the MDTPA (ECF No. 522 at 59, fn. 27); nor is the relief sought pursuant to its not-yet-fully-adjudicated claim for defamation. As such, Defendants' arguments that there has been no decision on the merits of actual malice is a red herring.

---

[2] Defendants' bare assertion that there "is substantial evidence" that MyPillow is not vicariously liable for Lindell's statements that was not presented at summary judgment (ECF No. 528 at 1, fn. 1) is untimely, improper, and completely unsupported. The only "evidence" Defendants now proffer is an *ipse dixit* statement from Mr. Lindell that "I am aware of substantial evidence indicating that the statements challenged in this litigation were made by me personally and not on behalf of MyPillow." (ECF No. 530, ¶ 2.) But Defendants responded to Smartmatic's motion for summary judgment as to vicarious liability (EFC No. 459 at 33-36) and did not raise any such evidence. Nor, without Mr. Lindell actually disclosing what "evidence" he refers to can its relevancy even be addressed as to the issue of vicarious liability.

2

The Court's grant of summary judgment on Smartmatic's MDTPA claim provides the complete foundation for injunctive relief. An MDTPA violation requires: (1) disparagement of goods, services, or business through false or misleading representations of fact; and (2) conduct in the course of business, vocation, or occupation. Minn. Stat. §325D.44 subd. 1(8). The Court found both elements satisfied as a matter of law. (ECF No. 522 at 57-59.) Critically, the MDTPA provides that injunctive relief may be issued upon a showing that the plaintiff is "likely to be damaged" by the disparagement—no requirement exists to prove monetary damages, loss of profits, or intent to deceive. Minn. Stat. §325D.45 subd. 1; (*see also* ECF No. 522 at 59, fn. 27.) Defendants' failure to address this statutory framework reveals the hollowness of their Opposition. The merits of Smartmatic's claim as it pertains to the sought injunction have been determined. As set forth below, they should not be reconsidered.

## II.   DEFENDANTS' OPPOSITION IS AN IMPROPER AND UNTIMELY MOTION FOR RECONSIDERATION

The Summary Judgment Order conclusively established every element necessary for MDTPA injunctive relief. In seeking to introduce new evidence and relitigate findings, Defendants ignore that the Court explicitly found: (1) Lindell disparaged Smartmatic's goods and services through statements that state or imply a representation of fact, (2) these statement are defamatory *per se*, (3) the statements are factually false, and (4) the statements were made in the course of Lindell's business and occupation as MyPillow's CEO, with MyPillow's knowledge and using MyPillow's resources. (ECF No. 522 at 41-47, 48-51, 51-55, 55-59.) These findings establish all elements of the claim and are all that

are required before granting injunctive relief under the MDTPA. (*Id.* at 59, n. 27.) Defendants' Opposition challenges neither the Court's application of the statute nor the factual findings supporting it; rendering their opposition facially deficient.

Defendants' request to the Court to reconsider its findings and deny injunctive relief based on "evidence which postdates the Court's Order," (ECF No. 528 at 3 n.2) is improper and untimely under the Federal Rules and this Court's Local Rules. The Federal Rules of Civil Procedure and this Court's Local Rules set forth mechanisms by which a party may seek reconsideration of a ruling on a dispositive motion. Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment within 28 days, and Federal Rule of Civil Procedure 60(b) provides a mechanism by which a party may seek relief from a judgment or order, including based on "newly discovered evidence." Local Rule 7.1(j) states that a party may not seek reconsideration without leave of Court and that it must "show compelling circumstances to obtain such permission." (D. Minn. Local Rule 7.l(j).)

All of these mechanisms—which impose various time limitations and burdens[3]—were available to Defendants in the event they wanted to properly seek relief from this Court's Summary Judgment Order. Defendants have failed to invoke any of these

---

[3] For instance, a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(2) requires the moving party to establish that "1) the evidence was only discovered after the summary judgment hearing, 2) the moving party exercised due diligence before the hearing, 3) the evidence is material and not merely cumulative or impeaching, and 4) consideration of the new evidence would likely produce a different result." *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006).

mechanisms or establish any proper grounds for reconsideration.[4] As this Court has previously recognized, fact discovery in this litigation lasted for more than two years—not closing until June 11, 2024—nearly four years after the 2020 U.S. election. (ECF No. 505.) Defendants had more than ample time to accumulate all evidence they deemed necessary to defend against this case. Indeed, Smartmatic moved for discovery relief on multiple occasions seeking to pin down Defendants' alleged evidence of falsity to avoid this precise situation. (*See* ECF No. 449 at 7 (seeking relief for Defendants' failure to follow a Court order to identify all facts and documents claimed to support that Defendants' statements were true)).

Defendants' attempt to skirt these requirements by filing an opposition to a Court-requested proposed injunction in which they raise "new evidence" is improper and should be rejected. *See Fields v. Emmerich*, 2014 WL 3828170, at *2 (D. Minn. Aug. 4, 2014) ("Although an order for summary judgment can be reconsidered, parties must follow the procedures delineated in the local rules."). There are no grounds upon which the Court should reconsider its prior ruling on Summary Judgment, nor have Defendants made a proper showing that such grounds exist.

---

[4] To the extent Defendants file a proper procedural motion for relief from judgment, Smartmatic will respond in full. However, Smartmatic notes that any such motion would fail, especially as the indictment referred to by Defendants constitutes allegations only and is in no way related to any allegations of election-rigging whatsoever. *See US v. Bautista et. al.*, Case No. 24-cv-20343-CR-WILLIAMS, Dkt. No. 264.

5

## III. THE FIRST AMENDMENT DOES NOT PROHIBIT THE ISSUANCE OF AN INJUNCTION

Defendants' First Amendment arguments ignore the statutory architecture of the MDTPA itself. The statute authorizes injunctive relief when a defendant disparages another's business "through false or misleading representation of fact." Minn. Stat. §325D.44 subd. 1(8); §325D.45 subd. 1. This statutory predicate—falsity—already filters out protected speech. The Court has determined as a matter of law that Lindell's statements are false. Because false statements of fact receive no First Amendment protection, an injunction prohibiting their repetition does not implicate the First Amendment at all.

As set forth in Smartmatic's Brief in Support, the requested injunction is narrowly tailored to only prohibit Defendants from publishing statements that this Court has already determined to be false and disparaging as a matter of law under the MDTPA. (ECF No. 526 at 5-6, 8-10.) Accordingly, Defendants' First Amendment concerns are unfounded. *See Gertz v. Welch,* 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in uninhibited, robust, and wide-open debate on public issues."); *Minnesota Voters Alliance v. Ellison*, 749 F.Supp.3d 983, 991 (D. Minn. 2024).

Smartmatic's Brief in Support identified numerous cases in which courts condoned granting injunctive relief prohibiting publication of statements that had already been adjudicated to be false. (ECF No. 526 at 6, 9 citing *e.g., McCarthy v. Fuller*, 810 F.3d 456, 462 (7th Cir. 2015) ("Most courts would agree . . . that defamatory statements can be enjoined . . . 'provided that the injunction is not broader than necessary to provide relief to

6

plaintiff while minimizing the restriction of expression.'")); *Wagner Equipment Co. v. Wood*, 893 F.Supp.2d 1157, 1164 (D.N.M. 2012) ("an injunction prohibiting a defendant from repeating a statement determined by a judge or jury to be defamatory would not constitute a prohibited prior restraint of speech under . . . the First Amendment"); *Minnesota Voters Alliance v. Ellison*, 749 F.Supp.3d at 991; *Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 11 (Minn. 1984); *L1 Technologies, Inc. v. Chekanov*, 2023 WL 5618942, at *8 (S.D. Cal. Aug. 30, 2023)). Defendants make no attempt to distinguish any of these cases. (*See* ECF No. 528.)

Defendants do cite several cases for the general proposition that injunctive relief prohibiting speech requires a heavy burden, but the cited cases in which injunctive relief was denied are readily distinguishable from the case at hand especially where, as here, the Court has already found injunctive relief appropriate. (ECF No. 522 at 59, n. 27.) For instance, in *Erickson v. Sawyer,* 650 F. Supp. 3d 758, 770-71 (D. Minn. 2023), the court granted default judgment to a counterclaimant as to defamation, but declined to grant an injunction requiring the removal of past statements and prohibiting either future statements or court filings based, in part, on the fact that the movant had not demonstrated how the requested relief would be workable or effective. This case is distinguishable on multiple grounds, including the procedural posture of the case (summary judgment vs. default judgment), the nature of the claim at issue (the MDTPA vs. defamation only), and the scope of the injunctive relief. Critically, here, the proposed injunction does not require removal of past statements—part of the aspect that troubled the *Erickson* court because of practical republication issues. *Id.* at 771 ("The counterclaim includes numerous allegations

7

regarding the extensive republication of Erickson's statements and others' extensive publication of their own, similar defamatory statements . . . it is difficult to imagine how the injunctive relief requested as to Erickson might make any practical difference.").

Similarly, in *AMP v. Hubbard Broadcasting, Inc.*, 216 F. Supp. 2d 933 (D. Minn. 2001), the court was not considering injunctive relief following adjudication on the merits, but rather whether to enjoin a news broadcast—which was not even in the record—from airing pursuant to a motion for temporary restraining order. *Id.* at 934-35. Unlike in *AMP* where the court "without knowing the substance of the news broadcast at issue . . . [could] not determine with any certainty that [plaintiff] will be harmed by it," *id.* at 395, here, the Court knows the precise metes and bounds of the statements published—and likely to be repeated—by Defendants should the injunction not issue.

In this case, there has been final adjudication on the merits of Smartmatic's claim for violation of the MDTPA. The Court found, as a matter of law and based on all of the facts developed over more than two years of discovery, that Defendants violated the statute by making false and disparaging statements about Smartmatic, that those statements would be harmful as a matter of law, and that an injunction should issue. (ECF No. 57–59, 63.) There are no First Amendment restrictions on granting a narrowly-tailored injunction under these circumstances.

## IV. DEFENDANTS' ARGUMENT THAT AN ADEQUATE REMEDY AT LAW EXISTS IS SPECIOUS AND INCONSISTENT WITH THEIR ACTIVE CONDUCT

Defendants' argument that monetary damages provides an adequate remedy at law fundamentally misunderstands both MDTPA jurisprudence and the circumstances

8

presented here. The MDTPA itself contemplates that monetary damages are often inadequate—that is why the statute explicitly authorizes equitable relief through injunctions. Minn. Stat. § 325D 45, subd. 1; *see also Superior Edge, Inc. v. Monsanto Co.*, 964 F.Supp.2d 1017, 1041 (D. Minn. 2013) (holding that the statutory remedy for deceptive trade practices is injunctive relief). Indeed, the intent of the MDTPA is to provide relief from *future damage*, not past damage. *Gardner v. First Am Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003). Courts similarly recognize that disparagement causing irreparable harm—particularly when a defendant has vowed to continue the conduct indefinitely—cannot be adequately remedied through successive damage awards. *McCarthy v. Fuller*, 810 F.3d 456, 462 (7th Cir. 2015). Smartmatic has not only established its right to relief under the MDTPA, but also has provided compelling evidence of exactly this scenario.

Defendants argue an adequate legal remedy exists: monetary damages. (ECF No. 528 at 20.) This argument collapses under the weight of the MDTPA and Defendants' own conduct. Defendants' position is contradicted by Lindell's own deposition testimony and his demonstrated refusal to comply with monetary sanctions.

First, as explained by Smartmatic in its Brief in Support, there is no adequate remedy at law where, as here, the Defendant indicates that he will never stop making the false and disparaging statements regardless of litigation outcome. (ECF No. 526 at 7-8 citing, *e.g.*, Lindell's deposition testimony that "If somebody asked me if [Smartmatic's machines] were used to rig the 2020 election, I will say yes, until – forever".) Such conduct has continued not only following the Court's ruling on summary judgment, but also following

9

Smartmatic's submission of the Proposed Order. For instance, just last month, on December 9, 2025, Lindell TV published to X statements regarding a "whistleblower letter" allegedly stating that "Smartmatic systems were used to manipulate elections, especially where no opposition observers were present and the same tech is now used in the United States." (Frey Decl. ¶ 3, Ex. A.) This conduct demonstrates Defendants' commitment to continued violations—rendering any monetary award nothing more than a license fee for defamation.

Second, Defendants' refusal to pay over $142,000 in court-ordered sanctions proves no adequate legal remedy exists. Defendants owe not only $85,785.00 in this case from contempt sanctions ordered in August 2025, but also $56,369.00 from sanctions ordered in the District of Columbia. In both instances, Defendants are taking the position that they will not pay the Court-ordered awards solely due to financial inability to pay. (Frey Decl. at ¶¶ 4-6.)

Lindell's conduct demonstrates why legal remedies fail here. Lindell has stated under oath that he will disparage Smartmatic "until forever" regardless of litigation outcomes. (ECF No. 390-1 at 340:5-11.) No monetary judgment can change this stated intention. Even after the Court's Summary Judgment ruling finding his statements false as a matter of law, Lindell continued disparaging Smartmatic and actively fundraised to support his campaign. (ECF No. 526 at 8.) Legal findings have not and will not deter Lindell. He refuses to pay sanctions awarded in multiple courts, claiming financial inability despite maintaining active fundraising operations. Future damage judgments may be equally uncollectible. For Lindell, continued defamation serves fundraising purposes. Even

10

if Smartmatic occasionally recovers damages, the calculation favors continued disparagement. Only prospective injunctive relief eliminates this perverse incentive. This is the paradigmatic case for injunctive relief—a defendant who has promised to persist; demonstrated willingness to defy court orders; claimed inability to pay judgments; and benefits financially from the misconduct.

In short, Defendants have demonstrated that they will: (1) continue publishing false and disparaging statements regarding Smartmatic despite litigation, and (2) refuse to pay monetary sanctions. This is precisely the circumstance that warrants injunctive relief. *See McCarthy*, 810 F.3d at 462 (7th Cir. 2015).

## **CONCLUSION**

For the reasons stated herein and in Smartmatic's Brief in Support (ECF No. 526), Smartmatic respectfully requests this Court enter the Proposed Permanent Injunction Order against Defendants. Given Defendants' demonstrated pattern of non-compliance and continued defamation, Smartmatic respectfully requests the Court enter the proposed injunction without delay.

Dated: January 14, 2026                                  Respectfully submitted,

*/s/ Timothy M. Frey*
Christopher K. Larus
   Minnesota Bar No. 0226828
   Christopher.Larus@thompsonhine.com
William E. Manske
   Minnesota Bar No. 0392348
   William.Manske@thompsonhine.com
**THOMPSON HINE LLP**
800 Nicollet Avenue, Suite 2925

11

Minneapolis, MN 55402
Telephone: (612) 605-5900

J. Erik Connolly (admitted *pro hac vice)*
  EConnolly@beneschlaw.com
Illinois ARDC No. 6269558
Nicole E. Wrigley (admitted *pro hac vice)*
  NWrigley@beneschlaw.com
Illinois ARDC No. 6278749
Timothy M. Frey (admitted *pro hac vice*)
  TFrey@beneschlaw.com
Illinois ARDC No. 6303335
Julie M. Loftus (admitted *pro hac vice*)
  JLoftus@beneschlaw.com
Illinois ARDC No. 6332174
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

James R. Bedell (admitted *pro hac vice*)
  JBedell@beneschlaw.com
Ohio Bar No. 97921
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500

*Attorneys for the Plaintiffs*