# BERENS | MILLER
### P.A.

80 South Eighth Street, 3720 IDS Center, Minneapolis, MN 55402
Barbara Podlucky Berens, Esq.
612-349-6171 / bberens@berensmiller.com

**By ECF**                                                      August 10, 2026

The Honorable Jeffrey M. Bryan
United States District Court
316 North Robert Street - Suite 100
St. Paul, MN 55101

> Re:    *Smartmatic USA Corp., et al.  v. Michael J. Lindell & My Pillow, Inc.*,
>        Case No.  22-cv-0098-JMB/JFD

Dear Judge Byran:

Defendants request leave, pursuant to D. Minn. LR7.1(j), to file a motion to reconsider, pursuant to the court's inherent power[1] or Fed. R. Civ. P. 54(b),[2] a ruling in the Court's September 26, 2025 Order, specifically that fifty-one statements attributed to Defendants are false as a matter of law. *See* Order at 52-55 (Dkt. No. 522) ("Order"). Central to this conclusion was the Court's express finding that "there is simply no evidence in the record presented to support a finding that Smartmatic designed its computer-based devices to manipulate ballots or that Smartmatic machines have been used to do so," and that "the only evidence in the record concerning design shows that Smartmatic has not designed any of its election technology to manipulate ballots or steal elections." *Id*. at 54-55.

There is, however, newly available evidence, specifically a CIA report that was declassified on July 1, 2026, and released on July 16, 2026 (the "CIA Report"), which calls into question Plaintiffs' representations to the Court and raises material fact disputes on the finding of falsity of those challenged statements, which the Court stated fall into three categories: (1) Smartmatic machines stole the 2020 presidential election or manipulated ballots to change the outcome; (2) its ballot marking devices connected to the internet, thus allowing hacking; and (3) it designed its machines to manipulate ballots and change election results. Order at 52-53.

*First*, the CIA Report reveals that despite Smartmatic's claims to the contrary, Smartmatic's technology was capable of being manipulated to influence election results. *See* CIA Report at 1 (confirming that CIA "intelligence established that Venezuelan government

---

[1] *See Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co*., 48 F.3d 1066, 1070 (8th Cir. 1995) (courts have "inherent power to reconsider and modify an interlocutory order any time" before final judgment).

[2] Defendants submit this letter out of an excess of caution although this Court has indicated that these motions are not covered by LR 7.1(j). *See Hanson v. Loparex, Inc.*, No. 09-1070 (SRN/FLN), 2011 U.S. Dist. LEXIS 77945, at *5 n.1 (D. Minn. July 18, 2011)(providing that "the Court does not understand this Local Rule [requiring express permission] to govern a motion for modification under Rule 54(b)").

**BERENS | MILLER**
P.A.

The Honorable Jeffrey M. Bryan
August 10, 2026
Page 2

officials developed sustained interest and likely some capability in manipulating electronic voting systems, including Smartmatic technology, to influence electoral outcomes in Venezuela"). *Second*, it concludes "that certain capabilities [redaction in original] regarding electronic voting manipulation were technically possible and operationally feasible." *Id*. at 2.[3] *Third*, it indicates Smartmatic worked with Venezuela's intelligence services and national election council "to develop plans to manipulate election results using preprogramed voting machines." *Id. Fourth*, it reports that Venezuelan national elections were actually manipulated with "Smartmatic's direct involvement." *Id*. at 3. *Fifth*, it refers to "solid intelligence regarding Venezuelan government intent to influence US politics." *Id*. at 2. *Sixth*, it reveals "Smartmatic's ties to Venezuela posed a national security threat." *Id*. at 1. *Seventh*, it disclosed a technique used to hide election manipulation, which included "mimic[king real voting machines," mak[ing] altered votes" appear legitimate, and employing virtual machine technology "to evad[e] detection through standard audit procedures." *Id*. at 3. These disclosures raise fact disputes about the statements at issue which fall in the second or third categories called out by the Court. Defendants thus ask the Court to reconsider its ruling that they are false as a matter of law.

As to the challenged statements falling in the first category recognized by the Court, i.e., those related to the 2020 U.S. presidential election, the CIA Report states that "neither Smartmatic nor the Venezuelan Government had the capability … to manipulate the outcome of an election outside of Venezuela in a predictable fashion." *Id*. at 4. Smartmatic also has a small footprint in the domestic election picture. However, the CIA Report acknowledges that Smartmatic's prior ownership of Sequoia Voting Systems, a U.S. based company which had contracts with approximately four hundred counties, posed a risk to national security interests. *Id.* at 3. As a result, Smartmatic was forced to sell Sequoia, *id*., which was subsequently acquired by a voting machine company which plays a far larger role in providing election hardware and software technology in the U.S. The continued use of Smartmatic's demonstrably manipulatable technology in the U.S. raises red flags. This is particularly true where the CIA Report details a number of techniques that were developed to hide election manipulations. Given that, Defendants seek the opportunity to introduce this newly discovered evidence which, when combined with existing evidence, raises material fact disputes regarding the truth of the challenged statements relating to the 2020 presidential election.

Very truly yours,

Barbara Podwicky Berens

---

[3] A Cybersecurity and Infrastructure Security Agency Report, also released on July 16th, discloses issues in the election system, including "election software, like any complex system, contains a spectrum of vulnerabilities," *id*. at 3; various "constraints produce environments where known, documented vulnerabilities persist for months or years on production election systems, increasing exposure to opportunistic and targeted threats, *id*.; and "weak identity management, limited logging, and insufficient segmentation exacerbate the risk that a cyber threat actor could access or disrupt mission critical election IT components." *Id*. at 1.